FILED

1  Jane Doe

2  11151 Valley Blvd #4886,

3  El Monte, CA 91734

4  626-208-9665

5  Plaintiff in Pro Se

2020 FEB 18  PM 1:30

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY_____

6

7

8  **UNITED STATES DISTRICT COURT**

9  **CENTRAL DISTRICT OF CALIFORNIA**

10  SACV20-00322-ODW(PJW)

11  JANE DOE,                                     No.

12            Plaintiff,

13      v.                                        **COMPLAINT FOR DAMAGES AND
                                                  DECLARATORY AND INJUNCTIVE**
14  COUNTY OF ORANGE; DON BARNES;                 **RELIEF**
    WILLIAM BAKER; JOE BALICKI;
15  MARK STICHTER; and DOES 1 - 10,
    inclusive,
16

17            Defendants.                         **JURY TRIAL IS HEREBY DEMANDED**

18

19      Plaintiff Jane Doe alleges and complains the following, on information and belief except

20  for information identified as being based on personal knowledge, which allegations are likely to

21  have evidentiary support after a reasonable opportunity for further discovery.

22

23                              **INTRODUCTION**

24      1.      This is an action for declaratory and injunctive relief, damages, and punitive

25  damages for violations of Plaintiff's constitutional rights resulting from application of the County

26  of Orange's and the Sheriff's policies, practices, and customs concerning custody operations.

27      2.      Defendants' policies, practices, and customs violated Plaintiff's rights secured to

28

1

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

1   her by the Fourth and Fourteenth Amendments to the U.S. Constitution and entitle Plaintiff to

2   recover damages under the Federal Civil Rights Act (42U.S.C. § 1983).

3       3.      Additionally, Plaintiff includes supplemental claims under California state law

4   against Defendants: 1) for violation of California Penal Code § 4030 which requires all strip

5   searches be conducted in an area of privacy and pre-approved in writing by a supervisor, and

6   provides for minimum damages of $1,000 for each illegal search; and, 2) for violation of the

7   Unruh Civil Rights Act (California Civil Code §§ 52 and 52.1) pursuant to which Plaintiff is

8   entitled to recover a minimum of $4,000 for each violation.

9

10                                  **PARTIES**

11      4.      Plaintiff, Jane Doe ("Plaintiff"), at all times herein mentioned, was a resident of

12   the County of Los Angeles, State of California. She was a pretrial detainee in Women's Central

13   Jail (the "Jail") in custody of Orange County Sheriff's Department ("OCSD"). Plaintiff was

14   arrested in August 2019 by Santa Ana Police Department ("SAPD") on misdemeanor charges

15   (vandalism under $400 and unlawful dissemination of private photos) that had nothing to do with

16   contraband or weapon. Plaintiff has been subsequently indicted on those charges. OCSD has

17   never charged Plaintiff with any jail infractions.

18      5.      Defendant, County of Orange ("the County"), is a municipal corporation located in

19   the Central District of California. OCSD is a law enforcement agency funded and operated by the

20   County. The County owns and, through OCSD, operates the Women's Central Jail (the "Jail")

21   which is located at 44 Civic Center Plaza, Santa Ana, CA 92703. The County has responsibility

22   for funding the operations of the said jail.

23      6.      Defendants Don Barnes, William Baker, Joe Balicki, Mark Stichter, and Does 1-10

24   are referred collectively as OCSD Officers/personnel. At all times relevant herein, OCSD

25   Officers were acting under color of law, under the color of statutes, ordinances, regulations,

26   policies, customs, practices and usages of Defendant the County, its Sheriff's department, and/or

27   the State of California.

28      7.      At all times herein mentioned, Plaintiff is informed and believes, and thereon

                                    2
                COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

1    alleges that individual Defendant Sheriff Don Barnes ("Barnes") is an elected public official who

2    has responsibility for the security and custody operations of county jails, which include Women's

3    Central Jail, and to protect the safety of persons in the jails. At all times relevant hereto, Plaintiff

4    alleges Barnes served as the highest official for the OCSD and has at all times been personally

5    involved in the formulation and implementation of policies at County Jails. As Sheriff of the

6    County, Barnes holds the command and policy making position with regard to County Jails,

7    including Women's Central Jail. Barnes has caused, created, authorized, condoned, ratified,

8    approved or knowingly acquiesced in the unconstitutional and inhumane conditions, actions,

9    policies, customs and practices that prevail at the Jail, as described fully below. Barnes has,

10   wholly or in part, directly and proximately caused and, in the absence of the injunctive relief

11   which Plaintiff seeks in this Complaint, will continue in the future to proximately cause, the

12   injuries and violations of rights set forth fully below.

13       8.       Defendant Assistant Sheriff William Baker ("Baker") is, and at all times relevant

14   to this Complaint was, the Assistant Sheriff of the County in charge of custody operations which

15   includes Women's Central Jail. As Assistant Sheriff of the County in charge of custody

16   operations, Baker has at all times relevant to this Complaint held a command and policy making

17   position with regard to County Jails, including Women's Central Jail. Baker has caused, created,

18   authorized, condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional,

19   and inhumane conditions, actions, policies, customs and practices that prevail at the Jail, as

20   described fully below. Baker has, wholly or in part, directly and proximately caused and, in the

21   absence of the injunctive relief which Plaintiff seeks in this Complaint, will continue in the future

22   to proximately cause, the injuries and violations of rights set forth fully below.

23       9.       Defendant Joe Balicki ("Balicki") is, and at all times relevant to this Complaint

24   was, the Commander in Charge of OCSD's custody operations which includes the Women's

25   Central Jail. As the Commander in Charge of custody operations, Balicki has at all times relevant

26   to this Complaint held a command and policy making position with regard to County Jails,

27   including Women's Central Jail. Balicki has caused, created, authorized, condoned, ratified,

28   approved or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions,

3

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

1    actions, policies, customs and practices that prevail at Women's Central Jail, as described fully

2    below. Balicki has, wholly or in part, directly and proximately caused and, in the absence of the

3    injunctive relief which Plaintiff seeks in this Complaint, will continue in the future to proximately

4    cause, the injuries and violations of rights set forth fully below.

5         10.    Defendant Mark Stichter ("Stickter") is, and at all times relevant to this Complaint

6    was, the Captain of Women's Central Jail. As the captain with direct supervision over the Jail,

7    Stickter is responsible for the daily conditions and operations of the Jail, including the training

8    and supervision of floor deputies. Stichter is regularly, if not daily, on the premises at the Jail. It

9    is his responsibility to be knowledgeable and familiar with the actual daily conditions and

10   operations of the Jail. Stichter has caused, created, authorized, condoned, ratified, approved or

11   knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies,

12   customs and practices that prevail at the Jail, as described fully below. Stichter has, wholly or in

13   part, directly and proximately caused and, in the absence of the injunctive relief which Plaintiff

14   seeks in this Complaint, will continue in the future to proximately cause, the injuries and

15   violations of rights set forth fully below.

16        11.    The County and OCSD Officers are together responsible for the conditions of

17   confinement and health and safety of persons incarcerated at the said jail by providing appropriate

18   funding, oversight, and corrective action to ensure adequate conditions. They are also responsible

19   for ensuring that jail policies and practices do not violate individuals' substantive and procedural

20   due process rights.

21        12.    Defendant DOES 1 through 10 are not known or identified at this time. On

22   information and belief, Plaintiff alleges that each Doe is in some manner responsible for the

23   wrongs alleged herein, and that each such Defendant advised, encouraged, participated in,

24   ratified, directed, or conspired to do, the wrongful acts alleged herein.  When the true names and

25   capacities of said Defendants become known, Plaintiff will seek relief to amend this complaint to

26   show their true identities in place of their fictitious names as DOES 1 through 10. Defendants,

27   and each of them, were the agents, employees and servants of every other Defendant.  Defendants

28   acted in the course and scope of said agency, service and employment at all relevant times.

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

13.     At all times relevant, each individual Defendant was acting within the course and scope of their employment as law enforcement officer of the County, and under the color of state law, and as the employee, agent and representative of each and every other Defendant.

14.     Defendants, and each of them, did the acts and omissions hereinafter alleged in bad faith and with knowledge that their conduct violated well established and settled law.

15.     All Defendants are sued in their official capacities for declaratory and injunctive relief as to all claims. All Defendants are also sued for damages arising from violations of 42 U.S.C. §§ 1983 and 1985, and for violations of state law and California Constitution.

16.     Defendants OCSD Officers are also sued in their individual capacities for their violations of Plaintiff's clearly established United States and California constitutional rights.

## JURISDICTION AND VENUE

17.     The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367(a) because this action arises under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983 and 1985.

18.     The Court may award damages and grant declaratory relief for constitutional violations pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 2201, and/or Federal Rules of Civil Procedure 57 and 65.

19.     Venue is proper in this district under 28 U.S.C. § 1391(b) because the events that give rise to this action occurred within this district and the Defendants reside in this district and state.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

20.     On or about April 6, 2019 Plaintiff was raped in South El Monte. Liliana Jara ("Jara") was a detective with Los Angeles County Sheriff's Department who was working on the rape investigation. Santa Ana Police Department ("SAPD") personnel set up with Jara so Jara lied to Plaintiff that she would conduct an interview with Plaintiff at City of Industry Station. On or about August 8, 2019 at around 10:00 am Plaintiff was arrested by SAPD personnel upon her

arrival at City of Industry Station on misdemeanor charges. At all times relevant herein, SAPD personnel had full knowledge that Plaintiff was a rape victim.

*Unlawful punishment*

21.    Plaintiff arrived at Women's Central Jail at around 10:50 am on August 8, 2019. The arresting police officer demanded pass code to Plaintiff's cell phone but Plaintiff refused to submit. Because Plaintiff did not memorize any phone numbers, while she requested for her cell phone to get friend or family's phone number the police officer denied her request because Plaintiff didn't submit her pass code. Therefore, Plaintiff was not able to arrange bail through friends or family and had to be housed as a pre-trial detainee which caused Plaintiff to spend four days in hell.

22.    After a brief interview Plaintiff was taken to an open area for check-up. Plaintiff told a deputy that she was on period and she would need to use the restroom. Plaintiff was ordered to sit down but she explained she could not sit down because her pad was full and if she sat down period blood would come out. The deputy didn't care and pushed Plaintiff's shoulder to force her to sit down.

23.    After Plaintiff changed her pad she told a deputy that she was cold to death and asked for blanket or clothing to keep warm but the deputy replied "It's JAIL. Don't come to jail next time." Plaintiff was only 100 lbs and wearing a T-shirt at the time. The jail facility was kept bone chillingly cold. It was worse than being in winter without heater. Plaintiff told herself "This is not jail. This is hell."

24.    Plaintiff told a female nurse that she was cold but the nurse laughed at Plaintiff and stated that she didn't feel cold. Then Plaintiff was held in a concrete icing cold holding cell shaking from head to toe.

25.    Later Plaintiff was transferred to another area and she told a male nurse that she was cold to death. Again, she was ignored. Deliberate indifference to Plaintiff's repeated requests demonstrates a willful rejection to issue blanket or clothing for Plaintiff to keep warm.

26.    Plaintiff repeatedly requested for food but her requests were denied by falsely being told three times she would get food later but she didn't get any food until the next day

6

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

1   morning.

2       27.    Defendants' deliberate indifference to Plaintiff's need for life necessities was so

3   wild spread.

4       *Strip search (seven times in four days)*

5       28.    During initial mental health screening, OCSD personnel had full knowledge that

6   Plaintiff was a victim of sexual assault and she was on medication. OCSD personnel knew or

7   should have known about the risk to her mental health. However, between August 8 and 12, 2019

8   Plaintiff was strip searched for seven times:

9       1. Before being housed on August 8, 2019.

10       2. Before going up to the patio on August 10, 2019.

11       3. Upon return from the patio on August 10, 2019.

12       4. Before leaving for court on August 12, 2019.

13       5. Upon arrival at court on August 12, 2019.

14       6. Upon return from court with approval of release on own recognizance on August

15       12, 2019.

16       7. Right before being released on own recognizance on August 12, 2019.

17       29.    The above searches were all conducted in open hall way, without privacy, under

18   surveillance camera, and in the presence and view of other inmates. At each time of the search,

19   OCSD personnel did not have probable cause or reasonable suspicion that Plaintiff was in the

20   possession of contraband, any other substance or weapon that would justify or necessitate the

21   strip searches.

22       30.    On August 8, 2019 Plaintiff was given towels for shower. Plaintiff asked if she

23   could skip shower because she didn't want to shower in the presence of strangers but OCSD

24   personnel told Plaintiff that she had to shower. After a mandatory shower with no privacy (in the

25   presence and view of OCSD personnel and other inmates), Plaintiff was required to change in jail

26   uniform. After this mandatory shower Plaintiff didn't take any shower for four days until she got

27   home.

28       31.    The bra Plaintiff was given looked old and dirty so Plaintiff opt not to wear it. She

7

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

didn't expect she would be subjected to strip search later on. Plaintiff was not previously informed that she would be forced to undergo a strip search. Strip searches under such circumstances are particularly unwarranted.

32.     Plaintiff was told to go upstairs with other inmates. Shoulder to shoulder, around 15 people lined up by the wall in front of several deputies in the hall way. Right before the first strip search Plaintiff was ordered to wear a bra but she was not allowed to do so by using the restroom. Plaintiff had to wear a bra in the open hallway under surveillance camera in the presence and view of around 20 people.

33.     During the strip search, since Plaintiff was menstruating she had to pull down her underwear, lift up her period pad in her underwear so that OCSD personnel could inspect underneath the pad. While the pad was lifted up Plaintiff had to twist it in front of OCSD personnel so that it could be inspected if there was anything in the pad. She was not provided with a new period pad or allowed to use the restroom before putting her underwear with the used pad back on. All of these occurred in the open hallway in a group of inmates under surveillance camera.

34.     During the first strip search Plaintiff didn't run her fingers through her hair properly so the deputy slapped her head.

35.     On August 10, 2019 Plaintiff was allowed to get some fresh air and sunlight on the patio after breakfast. The patio was located on the top of the jail house with no outside access. Plaintiff was strip searched without any "reasonable suspicion" before she left for the patio with other cell mates in the hall way. After spending less than one hour on the patio Plaintiff came back down to her cell and she was strip searched again in a group without any "reasonable suspicion". Plaintiff told her cell mate, "Had I known I had to be strip searched I wouldn't have wanted to go up to the patio." Both strip searches were unnecessary and deprivation of Plaintiff's rights secured to her by United States and California constitution.

36.     On August 12, 2019 before leaving for court Plaintiff was strip searched at jail. She was strip searched again without any "reasonable suspicion" upon her arrival at courthouse which means she was strip searched twice in 30 minutes. Between these two strip searches

8

1    Plaintiff was under constant supervision of OCSD personnel.

2        37.    After a strip search at jail, when arriving at the courthouse, even though Plaintiff

3    was menstruating she was told to pull down her underwear, bend forward at the waist, spread her

4    legs, and cough multiple times until the officer was satisfied.

5        38.    After returning from court Plaintiff became entitled to release as a result of her

6    court appearance but she was strip searched any way. Even after Plaintiff was released on her

7    own recognizance, right before leaving the jail she was strip searched without any "reasonable

8    suspicion".

9        39.    After Plaintiff had obtained court approval to be released on her own recognizance

10    she was still subjected to two strip searches.

11        40.    A rape victim has a special sense of privacy in her body. Involuntary exposure of

12    her body in the presence of other people in open hallway under surveillance camera is especially

13    demeaning and humiliating. Strip search inflicts serious psychological pain to sexual assault

14    victims and causes them lasting and permanent harm. Seven times of strip searches have re-

15    traumatized Plaintiff and resulted in suicide attempts.

16        41.    During Plaintiff's four-day confinement as a pre-trial detainee, despite she was in

17    serious psychiatric needs she was cut out of medication. Defendants did not stop there. Plaintiff

18    was strip searched seven times.

19        *Over-crowding with long lock-in time and sleep deprivation*

20        42.    Forty inmates, including Plaintiff, were placed in an approximately 800-square

21    foot windowless cell with bunk beds, sharing one dayroom, two stand-up showers and four

22    toilets. Each bunk bed was about one foot apart. The windowless dayroom was about 150 square

23    foot which was located behind the toilets connected to the jail cell.

24        43.    Plaintiff was locked in this cramped jail cell 24 hours of every day and was

25    permitted no sunlight, fresh air, exercise, clocks, and environmental stimulation. Defendants only

26    allowed Plaintiff and other inmates to go up to the patio less than one hour a week which was

27    Plaintiff's only access to fresh air and sunlight. This only chance to get fresh air and sunlight

28    subjected Plaintiff to two times of strip search. This also means Plaintiff spent more than 48

1   consecutive hours locked down.

2       44.    In the cell the lights were never off. Even at night some of the lights were off but

3   some of the lights were 24-hour on and the lighting was bright enough to read. Plaintiff and other

4   inmates were assumed to be able to sleep with 24-hour lights in their cell.

5       45.    There was an informal rule to prohibit flushing toilets when deputy was present

6   because the noise of flushing toilet was extremely loud. Every night the entire night there were

7   people using toilet every 30 minutes. The noise of flushing toilets was non-stop and extremely

8   loud which caused Plaintiff to stay awake the entire night for consecutive four nights.

9       46.    According to the Centers for Disease Control and Prevention, an adult between the

10   ages of 18 and 60 needs 7 or more hours of sleep per night for good health. Not getting enough

11   sleep is linked with many chronic diseases and conditions.

12       47.    The daily sleep deprivation and disturbance had created significant negative

13   impacts on Plaintiff's abilities to function at many levels. Such sleep deprivation caused more

14   sensitivity to physical pain. Plaintiff was negatively impacted cognitively, functionally, and

15   psychiatrically. Cognitive impairment has adversely impacted Plaintiff, as a pretrial detainee's,

16   ability to assist in her legal defense. Plaintiff's overall health and immune systems has been

17   negatively impacted resulting in health issues including dysfunctional menstrual bleeding.

18       48.    As a direct result it imposed genuine privations and hardship, caused Plaintiff's

19   suffering from deprivation of sleep and degeneration, and threatened her mental and physical

20   well-being.

21       49.    Defendants imposed these harsh conditions on Plaintiff who had not been

22   convicted and was simply awaiting a court date which left Plaintiff feeling like worse than an

23   animal.

24       50.    Defendants have maintained a physical environment at the jail that caused harm

25   and posed an unreasonable risk of serious harm to Plaintiff's health and safety by ignoring poor

26   facility housing and maintenance problems.

27       51.    Defendants, by its policy and practice of locking people in these inhumane

28   conditions, subjected Plaintiff to serious psychological and physiological harm. Especially

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

1   Plaintiff was already experiencing perceptible harm, including PTSD, anxiety, depression, social

2   withdrawal, paranoia, agitation, and suicidal ideation, and OCSD personnel was fully aware of

3   that. Plaintiff, with preexisting mental illness, has been suffering from more acute symptoms as a

4   result of these policies and practices.

5   *Harassing cell search during midnight*

6          52.    On or about August 12, 2019, in the early morning after midnight, Plaintiff and all

7   other inmates were wakened up and locked up in the dayroom. Plaintiff and all other inmates'

8   bedding were searched without reasonable suspicion. Cell search conducted after midnight was

9   for no purpose but to harass.

10  *Release*

11         53.    Before getting back her own clothing Plaintiff was forced to be completely naked

12  in the presence and view of around 10 people, including OCSD personnel and other inmates.

13  Plaintiff was released around midnight but her cell phone was kept by SAPD. Plaintiff was

14  released on the street without funds or other means to secure transportation to her residence in El

15  Monte, California which was 40 miles away.

16         54.    On or about Aug 16, 2019 Plaintiff ended up in ER for dysfunctional menstrual

17  bleeding. In Plaintiff's entire life it was her very first time to visit ER. On or about Aug 30, 2019

18  Plaintiff was transported to the hospital and put on suicide watch for five days.

19         55.    On Nov 28, 2019 Plaintiff attempted suicide by trying to overdose sleeping aid.

20

21              **FIRST CAUSE OF ACTION**

22  **Fourteenth Amendment (42 U.S.C. § 1983) – Outright denials of life necessities**

23              **Against all Defendants**

24         56.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in

25  the paragraphs above.

26         57.    Under the Due Process Clause of Fourteen Amendment, pretrial detainees cannot

27  be punished. They can only be detained to ensure their presence at trial. Plaintiff has a due

28  process right to be free from unlawful punishment, severe restraints and hazards.

11

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

58.    The "parameters" of detainees' rights concerning conditions of confinement are "coextensive" with Eighth Amendment protections. Surprenant v. Rivas, 424 F.3d 5, 18 (1st Cir. 2005). Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, … the Eighth Amendment standard provides the benchmark for such claims. Craig v. Eberly, 164 F.3d 490, 495 (10th Cir. 1998). Therefore, the Eighth Amendment standard defines what is unlawful punishment of detainees.

59.    The Supreme Court has listed as basic human needs "food, clothing, shelter, medical care and reasonable safety" as well as "warmth [and] exercise."

60.    The Eighth Amendment entitles prisoners "not to be confined in a cell at so low a temperature as to cause severe discomfort". Dixon v. Godinez, 114 F.3d 640, 644 (7th Cir. 1997). Less than two hours' exposure to subfreezing outdoor weather without hats and gloves violated the Eighth Amendment. Gordon v. Faber, 973 F.2d 686, 687-88 (8th Cir. 1992).

61.    Food is one of the basic necessities of life protected by the Eighth Amendment. 12-hour deprivation of food in police lockup, if intentional, was "obviously" unlawful. Willis v. Bell, 726 F. Supp. 1118, 1121-22(N.D.Ill. 1989).

62.    20 plus hours without food along with 12 plus hours in bone chillingly cold environment constituted unlawful punishment because Plaintiff's repeated requests for food and clothing were intentionally denied by OCSD personnel. Plaintiff's life's necessities were denied due to OCSD personnel's intentional indifference to Plaintiff's fundamental rights.

### SECOND CAUSE OF ACTION

**Fourteenth Amendment (42 U.S.C. § 1983) – Overcrowding and sleep deprivation**

**Against all Defendants**

63.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

64.    In May 2011, the U.S. Supreme Court ruled that overcrowding in California's prisons resulted in cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution.

12

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

65.     Since the Eighth Amendment standard defines what is unlawful punishment of detainees the overcrowding in Women's Central Jail of OCSD has resulted in unlawful punishment in violation of the Fourteenth Amendment to the U.S. Constitution due to Defendants' intentional indifference to Plaintiff and other detainees' fundamental rights.

66.     By Defendants' policies and practices described above, Defendants subjected Plaintiff to a substantial risk of serious harm and injury from the harmful and inhumane effects of daily insufficient sleep duration.

67.     These policies and practices have been, and continue to be, implemented by Defendants and their agents, officials, employees and all persons acting in concert with them under color of state law, in their official capacities, and are the proximate cause of Plaintiff's deprivation of due process rights secured by the United States Constitution under the Fourteenth Amendments, are not rationally related to a legitimate nonpunitive governmental purpose or is excessive in relation to any such nonpunitive governmental purpose.

## THIRD CAUSE OF ACTION

### Fourth Amendment (42 U.S.C. § 1983) – Strip search

### Against all Defendants

68.     Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

69.     The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures . . . ." U.S. Const. amend. IV.

70.     Jordan v. Gardner, 986 F.2d 1521, 1524 (9th Cir. 1993) (en banc) (the "Fourth Amendment guarantees the right of the people to be secure against unreasonable searches, and its protections are not extinguished upon incarceration"); Thompson v. Souza, 111 F.3d 694, 699 (9th Cir. 1997) (same).

71.     Allegation of a strip search that was unnecessary because it immediately followed another strip search stated a Fourth Amendment claim. Hodges v. Stanley, 712 F.2d 34, 35 (2d Cir. 1983). A second-strip search was unconstitutional because the inmate was under constant

13

1    supervision of guards since the first search. Jean-Laurent v. Wilkenson, 540 F. Supp. 2d 501

2    (S.D.N.Y 2008)

3       72.    In Bell v. Wolfish, 441 U.S. 520 (1979), the Supreme Court created a balancing

4    test for determining if a person's Fourth Amendment right to be free from unreasonable searches

5    in the carceral context has been violated. Courts assess the constitutionality of a strip search by

6    balancing "the need for the particular search against the invasion of personal rights that the search

7    entails." Id. at 559. This requires courts to weigh "the scope of the particular intrusion, the

8    manner in which it is conducted, the justification for initiating it, and the place in which it is

9    conducted." Id. Applying this balancing test, California courts have held that a blanket strip

10   search policy for arrestees **after returning from court** is unconstitutional. Craft v. County of San

11   Bernardino, 468 F. Supp. 2d 1172, 1179 (C.D. Cal. 2006) (policy of strip searching all arrestees

12   who are returned to a jail facility from court violates the Fourth Amendment). As to arrestees

13   returning from court entitled to release, blanket policies of conducting strip searches violates the

14   Fourth Amendment, Article 1, § 1 of the California Constitution, and Article 1, § 13 of the

15   California Constitution. Craft v. County of San Bernardino, 468 F. Supp. 2d 1172 (C.D. Cal.

16   2006).

17      73.    Strip search without privacy presented a factual issue of reasonableness. Estes-El

18   v. State of New York, 552 F.Supp. 885, 889 (S.D.N.Y. 1982). In Lopez v. Youngblood, 609 F.

19   Supp. 2d 1125 (E.D. Cal. 2009), the court held it was unconstitutional to strip search detainees in

20   a group.

21      74.    And strip searches being conducted in an open setting is a form of gratuitous

22   humiliation that raises constitutional questions. See, e.g., Vaughan v. Ricketts, 859 F.2d 736, 741-

23   42 (9th Cir. 1988) (searched in an open hallway). Evidence of searches conducted publicly

24   without reason and against prison rules supported a constitutional claim. Mays v. Springborn, 575

25   F.3d at 649-50.

26      75.    Defendants' policies, practices, and customs regarding the strip searches

27   complained of herein violated Plaintiff's rights to due process and privacy under the Fourteenth

28   Amendment, and directly and proximately damaged Plaintiff as herein alleged, entitling Plaintiff

14

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

1    to recover damages for said constitutional violations pursuant to 42 U.S.C. § 1983.

2

3                          **FOURTH CAUSE OF ACTION**

4            **Fourth Amendment (42 U.S.C. § 1983) – Harassing cell search**

5                              **Against all Defendants**

6        76.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in

7    the paragraphs above.

8        77.    The Fourth Amendment protects "[t]he right of the people to be secure in their

9    persons . . . against unreasonable searches and seizures . . . ." U.S. Const. amend. IV.

10       78.    Cell search conducted during midnight for no purpose but to harass was not

11   frivolous. Harassing cell search during midnight with no showing of misbehavior in jail

12   constituted unreasonable search.

13

14                          **FIFTH CAUSE OF ACTION**

15              **Civil Conspiracy in Violation of 42 U.S.C. § 1985**

16                              **Against all Defendants**

17       79.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in

18   the paragraphs above.

19       80.    Defendants engaged in a conspiracy among themselves and with others for the

20   purpose of depriving, directly or indirectly, Plaintiff's rights under the law in violation of 42

21   U.S.C. § 1985.

22       81.    The acts of defendants were unnecessary, objectively unreasonable and malicious.

23   Therefore, Defendants are liable to Plaintiff in damages pursuant to 42 U.S.C. § 1983, including

24   compensatory damages, costs, attorney's fees and punitive damages.

25

26                          **SIXTH CAUSE OF ACTION**

27       **Municipal Liability for Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

28                              **Against all Defendants**

                                          15
              COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

82.     Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

83.     Plaintiff is informed and believes, and based thereon alleges, that on Aug 8, 2019, and for some time prior thereto, Defendants, with deliberate indifference towards the civil rights of detainees, knowingly and willfully did maintain, enforce, and apply a custom, practice, policy and usage tending to encourage, promote, sanction, tolerate and ratify the abuse of authority, the denial of life necessities, overcrowding, and the use of strip searches and harassing cell search.

84.     Defendants also have several practices, customs, and/or policies that cause Plaintiff to be chronically deprived of the essential and human need for sleep.

85.     Defendants, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above these defendants condoned, tolerated and through actions and inactions thereby ratified such policies.  Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Plaintiff, and other individuals similarly situated.

86.     By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, Defendants acted with an intentional, reckless, and callous disregard for Plaintiff's constitutional rights. Defendants, each of their actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

87.     Furthermore, the policies, practices, and customs implemented and maintained and still tolerated by Defendants, were affirmatively linked to and were a significantly influential force behind the injuries of Plaintiff.

88.     By reason of the aforementioned acts and omissions of Defendants, Plaintiff has suffered loss of trust, comfort, care, protection, and support. Accordingly, all Defendants, each are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

### SEVENTH CAUSE OF ACTION

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

**Municipal Liability – Failure to Train and Supervise (42 U.S.C. § 1983)**

**Against all Defendants**

89.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

90.    While acting under the color of state law and within the course and scope of their employment, Defendants' practice, deprived Plaintiff's rights secured to her by the Fourth and Fourteenth Amendments, including her right to be free from unreasonable search and seizure.

91.    The training policies of the County were not adequate to train its personnel, including but not limited to, OCSD Officers, with regards to using searches. As a result, OCSD personnel, are not able to handle the usual and recurring situations with which they must deal. These inadequate training policies existed prior to the date of this incident and continue to this day.

92.    The COUNTY was aware that failure to implement some sort of training with regards to their officers' use of strip and cell searches, would result in continuing to have numerous unreasonable officers involved violation of pretrial detainees' constitutional rights annually.

93.    The policies, practices and customs described above are the official policies, practices and customs of Defendant the COUNTY, and are the direct and proximate cause of Plaintiff being subjected to known risks of serious harms in violation of the Fourth and Fourteenth Amendment. The policies, practices and customs described above include Defendant the COUNTY's failure to train its staff in the face of an obvious need for training to prevent the violations described above. In other words, Defendants' failure to train is so closely related to the deprivation of the Plaintiff's rights as to be the moving force that caused the ultimate injury.

94.    By failing to achieve adequate training, OCSD Officers, acted with an intentional, reckless, and callous disregard for Plaintiff's constitutional rights. OCSD Officers, each of their actions was willful, wanton, oppressive, malicious, offensive, and unconscionable to any person of normal sensibilities.

95.    By reason of the aforementioned acts and omissions of OCSD Officers, Plaintiff

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

1  has suffered loss of trust, comfort, care, protection, and support.

2

3  **EIGHTH CAUSE OF ACTION**

4  **Violation of Cal. Const. Art. I, § 7 – Denial of life necessities**

5  **Against all Defendants**

6  96.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in

7  the paragraphs above.

8  97.    20 plus hours without food along with 12 plus hours in bone chillingly cold

9  environment constituted an impermissible imposition of punishment, especially Plaintiff's

10  repeated requests for food and clothing were intentionally denied.

11  98.    By the policies and practices described herein, Defendants had deprived Plaintiff's

12  minimal civilized measure of life's necessities, and had violated her basic human dignity and her

13  right to be free from punishment and unusual conditions under California Constitution.

14  99.    The policies and practices complained of herein have been and continue to be

15  implemented by Defendants and their agents, officials, employees, and all persons acting in

16  concert under color of state law, in their official capacity.

17  100.    Defendants have been and are aware of all of the deprivations complained of

18  herein, and have condoned or been deliberately indifferent to such conduct. Defendants had been

19  deliberately indifferent to Plaintiff's pain and suffering.

20

21  **NINTH CAUSE OF ACTION**

22  **Violation of Cal. Const. Art. I, § 7 – Overcrowding and sleep deprivation**

23  **Against all Defendants**

24  101.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in

25  the paragraphs above.

26  102.    Defendants, by deliberately preventing Plaintiff from being able to obtain adequate

27  sleep both by limiting the available time for night time sleep with 24-hour light on policy and

28  through overcrowding that interrupts, interferes, disrupts and disturbs night time sleep, imposed

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

1    an atypical, substantial, and different hardship on Plaintiff in relation to the ordinary incidents of

2    incarcerated life, so as to create a liberty interest protected by due process. By Defendants'

3    policies and practices described above, Defendants subjected Plaintiff to a substantial risk of

4    harm due to the denial of due process in relationship to the ordinary, human requirement of sleep.

5    These policies and practices have been, and continue to be, implemented by Defendants and their

6    agents or employees in their official capacities, and are the proximate cause of Plaintiff's

7    deprivation of rights secured by the California Constitution, Article I, Section 7.

8        103.    Defendants have been and are aware of all of the deprivations complained of

9    herein, and have condoned or been deliberately indifferent to such conduct.

10

11                                    **TENTH CAUSE OF ACTION**

12                        **Violation of Cal. Const. Art. I, § 13 – Strip search**

13                                       **Against all Defendants**

14       104.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in

15   the paragraphs above.

16       105.    The unnecessary, demeaning, outrageous and intrusive strip searches to which

17   Plaintiff was subjected violated Plaintiff's rights to be secure in her person against unreasonable

18   searches and seizures, as guaranteed by Article I, § 13 of the California Constitution.

19

20                                  **ELEVENTH CAUSE OF ACTION**

21                   **Violation of Cal. Const. Art. I, § 13 – Harassing cell search**

22                                       **Against all Defendants**

23       106.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in

24   the paragraphs above.

25       107.    The unnecessary, demeaning, and outrageous cell search to which Plaintiff was

26   subjected violated Plaintiff's rights to be secure in her person against unreasonable searches and

27   seizures, as guaranteed by Article I, § 13 of the California Constitution.

28

                                                    19
                    COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

1

**TWELFTH CAUSE OF ACTION**

2

**Violation of Cal. Const. Art. I, § 1 – Right of Privacy**

3

**Against all Defendants**

4  108.  Plaintiff re-alleges and herein incorporates by reference the allegations set forth in

5  the paragraphs above.

6  109.  Unlawful strip searches violate an individual's right to privacy under Article 1,

7  Section 1 of the California Constitution. See White v. Davis, 13 Cal. 3d. 757 (1975); Hill v.

8  NCAA, 7 Cal.4th 1 (1994); American Airlines, Inc. v. Superior Court, 114 Cal. App. 4th 881

9  (2003).

10  110.  Plaintiff didn't even want to be naked in front of her mother, not to mention a

11  bunch of strangers. Being forced to shower in the view of OCSD personnel and other inmates,

12  being forced to wear a bra in the view of OCSD personnel and other inmates, being strip searched

13  seven times without privacy, being forced to be completely naked before getting back her own

14  clothing, all together not only violated Plaintiff's fundamental rights but also put Plaintiff through

15  hell.

16

17

**THIRTEENTH CAUSE OF ACTION**

18

**Violation of California Penal Code § 4030**

19

**Against all Defendants**

20  111.  Plaintiff re-alleges and herein incorporates by reference the allegations set forth in

21  the paragraphs above.

22  112.  Defendants' policies, practices, and customs regarding the strip searches

23  complained of herein violated rights secured to Plaintiff under California Penal Code § 4030 and

24  directly and proximately damaged Plaintiff as herein alleged, entitling her to recover a minimum

25  of $1,000 each pursuant to California Penal Code § 4030(o) in addition to other damages.

26

27

**FOURTEENTH CAUSE OF ACTION**

28

**Violation of Unruh Civil Rights Act (Cal. Civil Code §§ 52 and 52.1)**

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

**Against all defendants**

113.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

114.    Defendants' policies, practices, and customs regarding their bad acts as complained of herein has violated Plaintiff's rights to due process of law and freedom from unreasonable searches and seizures as secured by the California State Constitution, Article I, § 1, § 7, and § 13, and directly and proximately damaged Plaintiff as herein alleged, entitling her to recover a minimum of $4,000 for each and every offense pursuant to California Civil Code § 52 and § 52.1, in addition to other damages.

## FIFTEENTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### Against all Defendants

115.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

116.    Plaintiff certainly didn't go into the Jail thinking she would be denied life necessities, strip searched, and harassed during midnight.

117.    As a direct result of Defendants' unconstitutional policies and practice, Plaintiff is suffering and continues to suffer from debilitating psychological damage. She suffers from serious insomnia and chronic fatigue. She is preoccupied with fears of being strip searched again and nightmares of seeing herself dying in a freezing cell.

118.    Now Plaintiff cannot read more than a few paragraphs without losing focus and needing to start over. She cannot maintain a normal life without interruption of suicidal thoughts, anxiety, memory loss, fear, and depression. From time to time she also has nightmares seeing herself die in jail.

119.    Plaintiff feels numb and distant when she speaks to her family or spends time with her friends. She is no longer able to emotionally connect with her family and close friends.

120.    As a direct and proximate result of Defendants' actions and inactions, Plaintiff

21

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

suffered injuries entitling her to receive compensatory and punitive damages against Defendants.

## **DECLARATORY RELIEF SOUGHT**

121.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

122.    Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this complaint. Plaintiff has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendants as alleged herein, unless Plaintiff is granted the relief she requests.

123.    Plaintiff respectfully prays for a declaratory judgment that declares that the conditions, acts, omissions, policies, and practices of Defendants and their agents, officials, and employees are in violation of the rights of Plaintiff under the Fourth and Fourteenth Amendments to the U.S. Constitution, Art. I, §§ 1, 7, 13 of the California Constitution, Cal. Civil Code § 51, and/or California common law.

## **INJUNCTIVE RELIEF SOUGHT**

124.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

125.    Plaintiff prays that the Court issue a permanent injunction against Defendants ordering them to:

   a.   Replace toilets that cause extreme loud flushing noise;

   b.   Prohibit over-head light and loud noise for at least a 7-hour period each night;

   c.   Provide all prisoners with the ability to have uninterrupted and undisturbed block of night time sleep of no less than 7 hours;

   d.   Resolve overcrowding condition, provide sufficient space and out-of-cell time;

   e.   Provide necessary privacy to all prisoners;

   f.   Prohibit unlawful strip searches and harassing cell searches; and

   g.   Properly train and supervise government employees concerning the unlawful

22

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

actions described above to prevent future violations.

## PRAYER

WHEREFORE, Plaintiff prays judgment against Defendants and each of them, as follows:

AS TO EACH CAUSE OF ACTION AS APPLICABLE

1.  For general damages according to proof;

2.  For special damages according to proof;

3.  For exemplary damages as provided by law, in an amount to be proved against each individual Defendant;

4.  For interest;

5.  For civil penalties pursuant to Civil Code § 52;

6.  For attorney's fees pursuant to 42 U.S.C. § 1988 and Civil Code §§ 52 and 52.1;

7.  For reasonable costs of this suit;

8.  For treble damages under Civil Code § 52.1;

9.  For such other and further relief as the Court may deem just, proper, and appropriate.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury for all issues so triable.


Dated:  Feb 18, 2020


_____

Jane Doe

Plaintiff in Pro Se

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

# EXHIBITS TO COMPLAINT

## TABLE OF CONTENTS

| Exhibit # | Document | Pages |
|-----------|----------|-------|
| 1 | Rejection letter from County of Orange | 26 |

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

EXHIBIT 1



**COUNTY OF ORANGE**
**COUNTY EXECUTIVE OFFICE**

* Safety & Loss Prevention Program
* Workers' Compensation Program
* Liability Claims Management Program
* Administration & Financial Management
* Insurance/Contracts & Commercial Insurance
* ADA II Public Access Compliance

**OFFICE OF RISK MANAGEMENT**

Telephone: (714) 285-5500
FAX: (714) 285-5599

February 10, 2020

P.O. Box 4886
El Monte CA

Re: Claimant:
    Date of Loss: 08/08/2019
    Claim Number: 20190910

Dear                    :

Please be advised that investigation of the above-matter has been completed. Investigation disclosed no negligence on behalf of the County of Orange. In view of the facts, we have no recourse but to disclaim any liability on behalf of the County of Orange.

Notice is hereby given that the claim you presented on behalf of                    on 12/26/2019, is rejected by operation of law.

WARNING: "Subject to certain exceptions, you have only six months from the date this
         notice was personally delivered or deposited in the mail to file a court
         action on this claim. See Government Code, Section 945.6."

You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately.

Sincerely,

Calvin Wong
Claims Representative

601 N. Ross Street, 5th Floor, Santa Ana, CA 92701 -- P.O. Box 327 Santa Ana, CA 92702