Jane Doe

11151 Valley Blvd #4886,

El Monte, CA 91734

626-208-9665

Plaintiff in Pro Se

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JANE DOE,<br><br>                Plaintiff,<br><br>    v.<br><br>COUNTY OF ORANGE; DON BARNES;<br>WILLIAM BAKER; JOE BALICKI;<br>MARK STICHTER; REYNA RIVERA;<br>DEVONNA FALCONER; KASSANDRA<br>MAYER; ELIA RODRIGUEZ; RACHEL<br>ADDINGTON; and DOES 1 - 10,<br>inclusive,<br><br>               Defendants. | No. 8:20-cv-00322-ODW-PJW<br><br>**THIRD AMENDED COMPLAINT FOR<br>DAMAGES AND FOR DECLARATORY<br>AND INJUNCTIVE RELIEF**<br><br><br><br>**JURY TRIAL IS HEREBY DEMANDED** |

Plaintiff Jane Doe alleges and complains the following, on information and belief except for information identified as being based on personal knowledge, which allegations are likely to have evidentiary support after a reasonable opportunity for further discovery.

## <u>INTRODUCTION</u>

1.　　This is an action for declaratory and injunctive relief, damages, and punitive damages for violations of Plaintiff's constitutional rights resulting from application of the County

1

THIRD AMENDED COMPLAINT FOR DAMAGES AND FOR DECLARATORY AND INJUNCTIVE RELIEF

1    of Orange's and the Sheriff's policies, practices, and customs concerning custody operations.

2         2.    Defendants' policies, practices, and customs violated Plaintiff's rights secured to

3    her by the First, Fourth, and Fourteenth Amendments to the U.S. Constitution and entitle Plaintiff

4    to recover damages under the Federal Civil Rights Act (42 U.S.C. § 1983).

5         3.    Additionally, Plaintiff includes supplemental claim under California state law

6    against Defendants for violation of California Penal Code § 4030 which requires all strip searches

7    be conducted in an area of privacy and pre-approved in writing by a supervisor and provides for

8    minimum damages of $1,000 for each illegal search.

9         4.    How Plaintiff was treated as a pre-trial detainee, details described below, is an

10   absolute abuse of power and authority.

11

12                                        **PARTIES**

13        5.    Plaintiff, Jane Doe ("Plaintiff"), at all times herein mentioned, was a resident of

14   the County of Los Angeles, State of California. She was a pretrial detainee in Women's Central

15   Jail ("WCJ") in custody of Orange County Sheriff's Department ("OCSD"). Plaintiff was arrested

16   in August 2019 by Santa Ana Police Department ("SAPD") on misdemeanor charges (vandalism

17   under $400 and unlawful dissemination of private photos) that had nothing to do with contraband

18   or weapon. Plaintiff has been subsequently indicted on those charges. OCSD has never charged

19   Plaintiff with any jail infractions.

20        6.    Defendant, County of Orange ("the County"), is a municipal corporation located in

21   the Central District of California. OCSD is a law enforcement agency funded and operated by the

22   County. The County owns and, through OCSD, operates WCJ which is located at 44 Civic Center

23   Plaza, Santa Ana, CA 92703. The County has responsibility for funding the operations of WCJ.

24        7.    Defendants Don Barnes, William Baker, Joe Balicki, Mark Stichter, Reyna Rivera,

25   Devonna Falconer, Kassandra Mayer, Elia Rodriguez, Rachel Addington, and Does 1-10 are

26   referred to collectively as OCSD Officers/personnel. At all times relevant herein, OCSD Officers

27   were acting under color of law, under the color of statutes, ordinances, regulations, policies,

28   customs, practices and usages of Defendant the County, its Sheriff's department, and/or the State

                                             2

THIRD AMENDED COMPLAINT FOR DAMAGES AND FOR DECLARATORY AND INJUNCTIVE RELIEF

1  of California.

2          8.      At all times herein mentioned, Plaintiff is informed and believes, and thereon

3  alleges that individual Defendant Sheriff Don Barnes ("Barnes") is an elected public official who

4  has responsibility for the security and custody operations of county jails, which include WCJ, and

5  to protect the safety of persons in the jails. At all times relevant hereto, Plaintiff alleges Barnes

6  served as the highest official for OCSD and has at all times been personally involved in the

7  formulation and implementation of policies at County Jails. As Sheriff of the County, Barnes

8  holds the command and policy making position with regard to County Jails, including WCJ.

9  Barnes has the final authority over the jail capacity and condition, distribution of hygienic

10  supplies, and unconstitutional policy of strip searches of inmates. Barnes has caused, created,

11  authorized, condoned, ratified, approved or knowingly acquiesced in the unconstitutional and

12  inhumane conditions, actions, policies, customs and practices that prevail at WCJ, as described

13  fully below. Barnes has, wholly or in part, directly and proximately caused and, in the absence of

14  the injunctive relief which Plaintiff seeks in this Complaint, will continue in the future to

15  proximately cause, the injuries and violations of rights set forth fully below.

16          9.      Defendant Assistant Sheriff William Baker ("Baker"), at all times relevant to this

17  Complaint was, the Assistant Sheriff of OCSD in charge of custody operations which include

18  WCJ. According to OCSD Policy, as Assistant Sheriff in charge of custody operations, Baker was

19  responsible for the **planning, directing, coordinating, and controlling** of all activities of

20  OCSD's custody operations, and the **formulation of rules and procedures** necessary to carry out

21  the policies and directives of Barnes. Baker established the rules and procedures of the

22  unconstitutional strip searches of inmates that caused the deprivation of Plaintiff's federally

23  protected rights. *Argueta v. U.S. Immigration and Customs Enforcement*, 2010 WL 398839,

24  *8(D.N.J., Jan 27, 2010) (supervisors who "wrote the policy, implemented it, and monitored its

25  progress" could be held liable under *Iqbal*). Baker should have known the overcrowding

26  condition in WCJ but he **failed to** take any measure. Under California EVIDENCE CODE

27  DIVISION 5 CHAPTER 3 Presumptions and Inferences, **it is presumed that official duty has**

28  **been regularly performed**.

THIRD AMENDED COMPLAINT FOR DAMAGES AND FOR DECLARATORY AND INJUNCTIVE RELIEF

10.     Defendant Joe Balicki ("Balicki") is, and at all times relevant to this Complaint was, the Commander in Charge of OCSD's custody operations which include WCJ. According to OCSD Policy, as the Commander in Charge of custody operations, Balicki is responsible for ensuring that commands under his control are meeting OCSD and command standards of operation. Balicki is responsible and liable for policy utilization and implementation (including strip search and hygienic supplies), continued operation of the unconstitutional strip searches of inmates and the practice of overcrowding. *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010), cert. denied, 131 S. Ct. 2150 (2011) (holding, under *Iqbal*, plaintiff may establish § 1983 liability of supervisory official by showing: (1) defendant (supervisor) promulgated, created, implemented, or possessed responsibility for continued operation of policy that (2) caused the complained of constitutional harm, and (3) acted with state of mind required to establish alleged constitutional deprivation). See also *Walton v. Gomez* (In re Estate of Booker), 745 F.3d 405, 435–36 (10th Cir. 2014); *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767, 771 (10th Cir. 2013).

11.     Defendant Mark Stichter ("Stickter"), at all times relevant to this Complaint, was the Captain of Women's Central Jail. According OCSD Policy, as the captain with direct supervision over WCJ, Stickter **planned, organized, controlled and directed** the work of WCJ, including distribution of hygienic supplies and unconstitutional strip searches of inmates. Stickter was responsible for the daily conditions and operations of WCJ, including the training and supervision of floor deputies. Stichter was regularly, if not daily, on the premises at WCJ. It was his responsibility to be knowledgeable and familiar with the actual daily conditions and operations of WCJ. While WCJ was overcrowding along with other issues described below Stickter **failed to** take any measure.

12.     The County and OCSD Officers are together responsible for the conditions of confinement and health and safety of persons incarcerated at WCJ by providing appropriate funding, oversight, and corrective action to ensure adequate conditions. They are also responsible for ensuring that jail policies and practices do not violate individuals' substantive and procedural due process rights.

THIRD AMENDED COMPLAINT FOR DAMAGES AND FOR DECLARATORY AND INJUNCTIVE RELIEF

13.     Defendant DOES 1 through 10 are not known or identified at this time. On information and belief, Plaintiff alleges that each Doe is in some manner responsible for the wrongs alleged herein, and that each such Defendant advised, encouraged, participated in, ratified, directed, or conspired to do, the wrongful acts alleged herein.  When the true names and capacities of said Defendants become known, Plaintiff will seek relief to amend this complaint to show their true identities in place of their fictitious names as DOES 1 through 10. Defendants, and each of them, were the agents, employees and servants of every other Defendant.  Defendants acted in the course and scope of said agency, service and employment at all relevant times.

14.     At all times relevant, each individual Defendant was acting within the course and scope of their employment as law enforcement officer of the County, and under the color of state law, and as the employee, agent and representative of each and every other Defendant.

15.     Defendants, and each of them, did the acts and omissions hereinafter alleged in bad faith and with knowledge that their conduct violated well established and settled law.

16.     All Defendants are sued in their official capacities for declaratory and injunctive relief as to all claims. All Defendants are also sued for damages arising from violations of 42 U.S.C. § 1983, and for violations of state law and California Constitution.

17.     Defendants OCSD Officers are also sued in their individual capacities for their violations of Plaintiff's clearly established United States and California constitutional rights.

## **JURISDICTION AND VENUE**

18.     The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367(a) because this action arises under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

19.     The Court may award damages and grant declaratory relief for constitutional violations pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 2201, and/or Federal Rules of Civil Procedure 57 and 65.

20.     Venue is proper in this district under 28 U.S.C. § 1391(b) because the events that give rise to this action occurred within this district and the Defendants reside in this district and

5

1    state.

2

3                    **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

4          21.    On or about April 6, 2019 Plaintiff was raped in South El Monte. Liliana Jara

5    ("Jara") was a detective with Los Angeles County Sheriff's Department who was working on the

6    rape investigation. Santa Ana Police Department ("SAPD") personnel set up with Jara so Jara lied

7    to Plaintiff that she would conduct an interview with Plaintiff at City of Industry Station.

8          22.    On or about August 8, 2019 at around 10:00 am Plaintiff was arrested by SAPD

9    personnel upon her arrival at City of Industry Station on misdemeanor charges. Plaintiff did not

10   resist arrest and she was not violent. At all times relevant herein, SAPD personnel has full

11   knowledge that Plaintiff is a rape victim.

12         *Unlawful punishment*

13         23.    Plaintiff arrived at WCJ at around 10:50 am on August 8, 2019. The arresting

14   police officer demanded pass code to Plaintiff's cell phone but Plaintiff refused to submit.

15   Because Plaintiff did not memorize any phone numbers, while she requested for her cell phone to

16   get friend or family's phone number the police officer denied her request because Plaintiff didn't

17   submit the pass code to her cell phone. Therefore, Plaintiff was not able to arrange bail through

18   friends or family and had to be housed as a pre-trial detainee which caused Plaintiff to spend four

19   days in hell.

20         24.    After a brief interview Plaintiff was taken to an open area for check-up. Plaintiff

21   told a deputy that she was on period and she would need to use the restroom. Plaintiff was

22   ordered to sit down but she explained she could not sit down because her pad was full and if she

23   sat down period blood would come out. The deputy didn't care and pushed Plaintiff's shoulder to

24   force her to sit down.

25         25.    Plaintiff, a petite 100 lb soft-spoken woman, was arrested, helpless, shocked, and

26   frightened. She was also unarmed and defenseless, thus, in a vulnerable position in WCJ at the

27   hands of OCSD personnel who had the power to do anything to her.

28         26.    After Plaintiff changed her pad she told a deputy (true name will be identified

                                                    6

THIRD AMENDED COMPLAINT FOR DAMAGES AND FOR DECLARATORY AND INJUNCTIVE RELIEF

through formal discovery) that she was cold to death and asked for blanket or clothing to keep warm but the deputy maliciously replied "It's JAIL. Don't come to jail next time." even though the deputy was well aware that Plaintiff was in great discomfort and denial of basic human needs would cause harm which is no different than attempted murder.

27.     Plaintiff was only 100 lbs and wearing a T-shirt at the time. The jail facility was kept bone chillingly cold. It was worse than being in winter without heater. Plaintiff told herself "This is not jail. This is hell."

28.     Plaintiff told a female nurse (true name will be identified through formal discovery) that she was cold to death but the nurse laughed at Plaintiff intentionally and stated that she didn't feel cold even though the nurse was well aware that Plaintiff was in great discomfort and denial of basic human needs would cause harm. Then Plaintiff was held in a concrete icing cold holding cell while she was shaking from head to toe.

29.     Later Plaintiff was transferred to another area and she told a male nurse (true name will be identified through formal discovery) that she was cold to death. Again, the nurse was well aware that Plaintiff was in great discomfort and denial of basic human needs would cause harm but Plaintiff was ignored intentionally. Deliberate indifference to Plaintiff's repeated requests demonstrates a willful rejection to issue blanket or clothing for Plaintiff to keep warm.

30.     After Plaintiff's arrival around 11 am she was not provided with lunch in WCJ. Her last meal was a quick and small breakfast around 7 am. Between 5 pm and 9 pm Plaintiff **repeatedly** requested food but her requests were denied by falsely being told three times she would get food later but she didn't get any food until the next day morning. Each time when Plaintiff requested food OCSD personnel (true name will be identified through formal discovery) was well aware that Plaintiff was starving and food was life necessity. Such denial was malicious, intentional, and no different than attempted murder.

31.     In simple and plain language Plaintiff told OCSD personnel what she needed and why she was in need but their callous indifference to Plaintiff's need for life necessities was malicious and wildspread.

*Strip search (seven times in four days)*

7

32.     During initial mental health screening, OCSD personnel (true name will be identified through formal discovery) had full knowledge that Plaintiff was a victim of sexual assault and she was on medication. As Plaintiff was still trying to cope with the shock and fear of being arrested she could not remember the dose of her medication.

33.     OCSD personnel knew or should have known about the risk to Plaintiff's mental health because a rape victim had a special sense of privacy. However, after being forced to be strip naked and a mandatory shower in the view and presence of OCSD personnel and other inmates, between August 8 and 12, 2019 Plaintiff was strip searched for seven times:

       a.   Before being housed in general population and after a mandatory shower in the presence and view of OCSD personnel on August 8, 2019.

       b.   Before going up to the patio on August 10, 2019.

       c.   Upon return from the patio on August 10, 2019.

       d.   Before leaving for court on August 12, 2019.

       e.   Upon arrival at court on August 12, 2019.

       f.   Upon return from court with approval of release on own recognizance on August 12, 2019.

       g.   Right before leaving WCJ on August 12, 2019.

34.     The above searches were all conducted in open hall way, without privacy, under surveillance camera, and in the presence and view of other inmates. At each time of the search, OCSD personnel (true name will be identified through formal discovery) did not have probable cause or reasonable suspicion that Plaintiff was in the possession of contraband, any other substance or weapon that would justify or necessitate the strip searches.

35.     The person(s) who knowingly and willfully authorized the above strip searches will be identified through formal discovery.

36.     On August 8, 2019 Plaintiff was given towels for shower. Plaintiff asked if she could skip shower because she didn't want to shower in the presence of strangers but OCSD personnel told Plaintiff that she must take a shower.

37.     In the presence and view of OCSD personnel and other inmates, Plaintiff had to

8

1    take off all of her clothing, being completely naked, hand over her clothing to OCSD personnel

2    before going to shower. When Plaintiff's naked body being observed the distance between

3    Plaintiff and OCSD personnel or other inmates was within two feet.

4         38.    After a mandatory shower with no privacy, in the presence and view of OCSD

5    personnel and other inmates as usual, Plaintiff was required to change in jail uniform. After this

6    mandatory shower Plaintiff didn't take any shower for four days until she got home due to the

7    significant and negative impact on her grown out of the horrible shower experience she endured.

8         39.    The bra Plaintiff was given looked old and dirty so Plaintiff opted not to wear it.

9    She didn't expect she would be subjected to strip search later on. Plaintiff was not previously

10   informed that she would be forced to undergo a strip search. Strip searches under such

11   circumstances are particularly unwarranted.

12        40.    Plaintiff was told to go upstairs with other inmates. Shoulder to shoulder, around

13   15 people lined up by the wall in front of several deputies in the hall way. Right before the first

14   strip search Plaintiff was ordered to wear a bra but she was not allowed to do so by using the

15   restroom. Plaintiff had to wear a bra in the open hallway under surveillance camera in the

16   presence and view of around 20 people. While Plaintiff was wearing a bra the distance between

17   Plaintiff and the deputy (true name will be identified through formal discovery) was about three

18   or four feet.

19        41.    During the strip search, since Plaintiff was menstruating she had to pull down her

20   underwear, lift up her period pad in her underwear so that OCSD personnel (true name will be

21   identified through formal discovery) could inspect underneath the pad. While the pad was lifted

22   up Plaintiff had to twist it in front of OCSD personnel so that it could be inspected if there was

23   anything in the pad. She was not provided with a new period pad or allowed to use the restroom

24   before putting her underwear with the used pad back on. All of these occurred in the open

25   hallway in a group of inmates under surveillance camera.

26        42.    During the first strip search Plaintiff didn't run her fingers through her hair

27   properly so the deputy (true name will be identified through formal discovery) slapped her head.

28        43.    On August 10, 2019 Plaintiff was allowed to get some fresh air and sunlight on the

9

THIRD AMENDED COMPLAINT FOR DAMAGES AND FOR DECLARATORY AND INJUNCTIVE RELIEF

patio after breakfast. The patio was located on the top of the jail house with no outside access. Plaintiff was strip searched in the hall way with other cell mates without any "reasonable suspicion" before she left for the patio. After spending less than one hour on the patio Plaintiff came back down to her cell and she was strip searched again in a group without any "reasonable suspicion". Plaintiff told her cell mate, "Had I known I had to be strip searched I wouldn't have wanted to go up to the patio." Both strip searches were unnecessary and deprivation of Plaintiff's rights secured to her by United States and California constitution.

44. On August 12, 2019 before leaving for court Plaintiff was strip searched at WCJ. She was strip searched again without any "reasonable suspicion" upon her arrival at courthouse which means she was strip searched twice within 30 minutes. Between these two strip searches Plaintiff was under constant supervision of OCSD personnel.

45. After a strip search at WCJ, when arriving at the courthouse, even though Plaintiff was menstruating she was told to pull down her underwear, bend forward at the waist, spread her legs, and cough multiple times until the deputy was satisfied. Again, Plaintiff had to pull down her underwear, lift up her period pad in her underwear so that the deputy could inspect underneath the pad. While the pad was lifted up Plaintiff had to twist it in front of deputy so that it could be inspected if there was anything in the pad. Plaintiff was not provided with a new period pad or allowed to use the restroom before putting her underwear with the used pad back on.

46. After returning from court Plaintiff became entitled to release as a result of her court appearance but she was strip searched any way. Even after Plaintiff was released on her own recognizance, right before leaving WCJ she was strip searched without any "reasonable suspicion".

47. After Plaintiff had obtained court approval to be released on her own recognizance she was still subjected to two strip searches.

48. A rape victim has a special sense of privacy in her body. Involuntary exposure of her body in the presence of other people in open hallway under surveillance camera is especially demeaning and humiliating. Strip search inflicts serious psychological pain to sexual assault victims and causes them lasting and permanent harm. Seven times of strip searches have re-

10

1   traumatized Plaintiff and resulted in suicide attempts.

2        49.    During Plaintiff's four-day confinement as a pre-trial detainee, despite she was in

3   serious psychiatric needs she was cut out of medication. Plaintiff was strip searched seven times

4   and those searches were unnecessary and excessive without any reasonable suspicion and

5   legitimate prison interest.

6        50.    OCSD's unlawful strip search policy was the moving force behind Plaintiff's

7   constitutional injuries. The names of individual deputies authorized or conducted the above strip

8   searches are unknown to Plaintiff but Plaintiff will obtain those names through further discovery.

9        *Over-crowding with long lock-in time, sleep deprivation, and unconstitutional policy for*

10        *hygienic supplies*

11        51.    Forty inmates, including Plaintiff, were placed in an approximately 800-square

12   foot windowless cell with bunk beds, sharing one dayroom, two stand-up shower stalls and four

13   toilets. Each bunk bed was about one foot apart. The windowless dayroom was about 150 square

14   foot which was located behind the toilets connected to the jail cell. Such condition provides the

15   best opportunity for contagions and puts all inmates' health at risk since the infection may not

16   show symptoms right away.

17        52.    Plaintiff was locked in this cramped jail cell 24 hours of every day and was

18   permitted no sunlight, fresh air, exercise, clocks, and environmental stimulation. Defendants only

19   allowed Plaintiff and other inmates to go up to the patio less than one hour per week which was

20   Plaintiff's only access to fresh air and sunlight. This only chance to get fresh air and sunlight

21   subjected Plaintiff to two times of strip search. This also means Plaintiff spent more than 48

22   consecutive hours locked down and another 48 consecutive hours locked down was followed by

23   less than one hour of patio time.

24        53.    In the cell the lights were never off. Even at night some of the lights were off but

25   some of the lights were 24-hour on and the lighting was bright enough to read. Plaintiff and other

26   inmates were assumed to be able to sleep with 24-hour lights on in their cell.

27        54.    There was an informal rule to prohibit flushing toilets when deputy was present

28   because the noise of flushing toilet was extremely loud. Every night the entire night there were

THIRD AMENDED COMPLAINT FOR DAMAGES AND FOR DECLARATORY AND INJUNCTIVE RELIEF

people using toilet every 30 minutes or so. The noise of flushing toilets was non-stop and extremely loud which caused Plaintiff to stay awake the entire night for consecutive four nights.

55.     According to the Centers for Disease Control and Prevention, an adult between the ages of 18 and 60 needs 7 or more hours of sleep per night for good health. Not getting enough sleep is linked with many diseases and conditions.

56.     The daily sleep deprivation and disturbance had created significant negative impacts on Plaintiff's abilities to function at many levels. Such sleep deprivation caused more sensitivity to physical pain. Plaintiff was negatively impacted cognitively, functionally, and psychiatrically. Cognitive impairment has adversely impacted Plaintiff, as a pretrial detainee's, ability to assist in her legal defense. Plaintiff's overall health and immune systems has been negatively impacted resulting in health issues including dysfunctional menstrual bleeding.

57.     As a direct result it imposed genuine privations and hardship, caused Plaintiff's suffering from deprivation of sleep and degeneration, and threatened her mental and physical well-being.

58.     In *Gray v. Hardy*, 826 F.3d 1000, 1006 (7th Cir. 2016), the court held that "Hygienic supplies sufficient to meet basic needs are constitutionally required; it is not enough for the prison to "allow" inmates to purchase them."

59.     However, only the first set of hygienic supplies (soap and toothpaste), enough for two days in use, was provided by OCSD free of charge. Shampoo was not included in hygienic supplies. Despite inmates' financial ability hygienic supplies were on their own expenses. The purchase price set by OCSD is way higher than regular store. As inmates cannot possess money during confinement they have to make purchase through their family or friends which causes unnecessary inconvenience.

60.     Defendants imposed these harsh conditions on Plaintiff who had not been convicted and was simply awaiting a court date which left Plaintiff feeling like worse than an animal.

61.     Defendants have maintained a physical environment at WCJ that caused harm and posed an unreasonable risk of serious harm to Plaintiff's health and safety by ignoring poor

12

1    facility housing and maintenance problems.

2    62.    Defendants, by its policy and practice of locking people in these inhumane

3    conditions, subjected Plaintiff to serious psychological and physiological harm. Especially

4    Plaintiff was already experiencing perceptible harm, including PTSD, anxiety, depression, social

5    withdrawal, paranoia, agitation, and suicidal ideation, and OCSD personnel was fully aware of

6    that. Plaintiff, with preexisting mental illness, has been suffering from more acute symptoms as a

7    result of these policies and practices.

8    *Harassing cell search during midnight*

9    63.    On or about August 11, 2019, in the early morning after midnight, Reyna Rivera,

10   Devonna Falconer, Kassandra Mayer, Elia Rodriguez, Rachel Addington, and other OCSD

11   personnel (true names will be identified through formal discovery) acting beyond the scope of

12   their authority, agreed and began a concerted action against Plaintiff and all other inmates. Forty

13   inmates in Plaintiff's cell, including Plaintiff, were wakened up and locked up in the dayroom.

14   While being locked up in the dayroom Plaintiff and all other inmates' bedding were searched

15   **without reasonable suspicion** by Reyna Rivera #9890, Devonna Falconer #10050, Kassandra

16   Mayer #10765, Elia Rodriguez #9052, Rachel Addington #10682, and other OCSD personnel

17   (true names will be identified through formal discovery).

18   64.    During the shakedown one deputy loudly announced that such searches would

19   continue regularly unless and until all inmates would keep quiet during the day. The deputy went

20   on and declared in a degrading manner that dayroom and phone service would be shut down

21   unless and until all inmates would shut up during the day. OCSD personnel are not happy with

22   the fact that forty female inmates locked into a cramped cell talk to each other while they are

23   awake.

24   65.    Cell search conducted **after midnight**, exercise of the agreement of a group of

25   deputies, was for no purpose but to harass. Cell search conducted after midnight by a group of

26   deputies was deliberately planned, organized, and carried out with joint effort for the purposes of

27   retaliation of Plaintiff and other inmates' freedom of expression. All members of this conspiracy

28   should be held liable.

THIRD AMENDED COMPLAINT FOR DAMAGES AND FOR DECLARATORY AND INJUNCTIVE RELIEF

*Release*

66.    Before getting back her own clothing Plaintiff was forced to be completely naked in the presence and view of around 10 people, including OCSD personnel and other inmates. When Plaintiff's naked body being observed the distance between Plaintiff and OCSD personnel or other inmates was within two feet.

67.    Although Santa Ana is a city with high crime rate OCSD intentionally release female inmates around midnight. In 2018, 295 rapes were reported in Santa Ana while there were 273 rapes in 2017. (https://www.santa-ana.org/open-gov-data/police-department/crime-statistics)

68.    While in WCJ Plaintiff was told by different cell mates that one female inmate was raped on her way home after she was released by WCJ around midnight. OCSD place all female inmates in a high crime area around midnight any way regardless of the danger waiting for them.

69.    Plaintiff was released around midnight but her cell phone was kept by SAPD. Plaintiff was released on the street without funds or other means to secure transportation to her residence in El Monte, California which was 40 miles away. Plaintiff was helpless and frightened, thus, in a vulnerable position even after she got her freedom back.

70.    On or about Aug 16, 2019, less than a week after her release, Plaintiff ended up in ER for dysfunctional menstrual bleeding. In Plaintiff's entire life it was her very first time to visit ER. On or about Aug 30, 2019 Plaintiff was transported to the hospital and put on suicide watch for five days.

71.    On Nov 28, 2019 Plaintiff attempted suicide by trying to overdose sleeping aid.

72.    The various acts alleged have caused Plaintiff serious harm outside of the inherent discomforts of confinement. In light of the various acts alleged, a reasonable jury could find that Plaintiff was subjected to punishment in violation of her constitutional rights. Until now Plaintiff still has a hard time comprehending her experience in WCJ.

73.    Although Plaintiff was released from WCJ, once Plaintiff is convicted for the charges she was arrested for she will be subjected to WCJ's unconstitutional practice again. There is no guarantee that Plaintiff will not get arrested again. Even for a traffic stop Plaintiff may end up in WCJ again.

THIRD AMENDED COMPLAINT FOR DAMAGES AND FOR DECLARATORY AND INJUNCTIVE RELIEF

74.     Once Plaintiff is convicted she may file Ex Parte application for a temporary restraining order enjoining WCJ's unconstitutional violations.

## FIRST CAUSE OF ACTION

**Fourteenth Amendment (42 U.S.C. § 1983) – Outright denials of life necessities**

**Against COUNTY OF ORANGE and DOES 1-10**

75.     Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

76.     Under the Due Process Clause of Fourteen Amendment, pretrial detainees cannot be punished. They can only be detained to ensure their presence at trial. Plaintiff has a due process right to be free from unlawful punishment, severe restraints and hazards.

77.     The "parameters" of detainees' rights concerning conditions of confinement are "coextensive" with Eighth Amendment protections. *Surprenant v. Rivas*, 424 F.3d 5, 18 (1st Cir. 2005). Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, … the Eighth Amendment standard provides the benchmark for such claims. *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998). Even so, the Fourteenth Amendment is more protective than the Eighth Amendment "because the Fourteenth Amendment prohibits **all** punishment of pretrial detainees, while the Eighth Amendment only prevents the imposition of cruel and unusual punishment of convicted prisoners." Demery, 378 F.3d at 1029 (citing Bell, 441 U.S. at 535 n.16) (emphasis added).

78.     The Supreme Court has listed as basic human needs "food, clothing, shelter, medical care and reasonable safety" as well as "warmth [and] exercise."

79.     The Eighth Amendment entitles prisoners "not to be confined in a cell at so low a temperature as to cause severe discomfort". *Dixon v. Godinez*, 114 F.3d 640, 644 (7th Cir. 1997). Less than two hours' exposure to subfreezing outdoor weather without hats and gloves violated the Eighth Amendment. *Gordon v. Faber*, 973 F.2d 686, 687-88 (8th Cir. 1992).

80.     Food is one of the basic necessities of life protected by the Eighth Amendment. 12-hour deprivation of food in police lockup, if intentional, was "obviously" unlawful. *Willis v.*

15

*Bell*, 726 F. Supp. 1118, 1121-22(N.D.Ill. 1989).

81.     20 plus hours without food along with 12 plus hours in bone chillingly cold environment constituted unlawful punishment because Plaintiff's repeated requests for food and clothing were intentionally denied by OCSD personnel. Plaintiff's life's necessities were denied due to OCSD personnel's intentional indifference to Plaintiff's fundamental rights.

## SECOND CAUSE OF ACTION

**Fourteenth Amendment (42 U.S.C. § 1983) – Overcrowding and sleep deprivation**

**Against COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI; MARK STICHTER; and DOES 1-10**

82.     Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

83.     In May 2011, the U.S. Supreme Court ruled that overcrowding in California's prisons resulted in cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution.

84.     Since the Eighth Amendment standard defines what is unlawful punishment of detainees the overcrowding in WCJ operated by OCSD has resulted in unlawful punishment in violation of the Fourteenth Amendment to the U.S. Constitution due to Defendants' intentional indifference to Plaintiff and other detainees' fundamental rights.

85.     By Defendants' policies and practices described above, Defendants subjected Plaintiff to a substantial risk of serious harm and injury from the harmful and inhumane effects of daily insufficient sleep duration.

86.     These policies and practices have been, and continue to be, implemented by Defendants and their agents, officials, employees and all persons acting in concert with them under color of state law, in their official capacities, and are the proximate cause of Plaintiff's deprivation of due process rights secured by the United States Constitution under the Fourteenth Amendments, are not rationally related to a legitimate nonpunitive governmental purpose or is excessive in relation to any such nonpunitive governmental purpose.

16

1

## THIRD CAUSE OF ACTION

2

**Fourth Amendment (42 U.S.C. § 1983) – Strip search and bodily privacy**

3

**Against COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI;**

4

**MARK STICHTER; and DOES 1-10**

5      87.     Plaintiff re-alleges and herein incorporates by reference the allegations set forth in

6   the paragraphs above.

7      88.     The Fourth Amendment protects "[t]he right of the people to be secure in their

8   persons . . . against unreasonable searches and seizures . . . ." U.S. Const. amend. IV.

9      89.     Jordan v. Gardner, 986 F.2d 1521, 1524 (9th Cir. 1993) (en banc) (the "Fourth

10  Amendment guarantees the right of the people to be secure against unreasonable searches, and its

11  protections are not extinguished upon incarceration"); Thompson v. Souza, 111 F.3d 694, 699

12  (9th Cir. 1997) (same).

13     90.     Allegation of a strip search that was unnecessary because it immediately followed

14  another strip search stated a Fourth Amendment claim. Hodges v. Stanley, 712 F.2d 34, 35 (2d

15  Cir. 1983). A second-strip search was unconstitutional because the inmate was under constant

16  supervision of guards since the first search. Jean-Laurent v. Wilkenson, 540 F. Supp. 2d 501

17  (S.D.N.Y 2008)

18     91.     In *Bell v. Wolfish*, 441 U.S. 520 (1979), the Supreme Court created a balancing test

19  for determining if a person's Fourth Amendment right to be free from unreasonable searches in

20  the carceral context has been violated. Courts assess the constitutionality of a strip search by

21  balancing "the need for the particular search against the invasion of personal rights that the search

22  entails." Id. at 559. This requires courts to weigh "the scope of the particular intrusion, the

23  manner in which it is conducted, the justification for initiating it, and the place in which it is

24  conducted." Id. Applying this balancing test, California courts have held that a blanket strip

25  search policy for arrestees **after returning from court** is unconstitutional. Craft v. County of San

26  Bernardino, 468 F. Supp. 2d 1172, 1179 (C.D. Cal. 2006) (policy of strip searching all arrestees

27  who are returned to a jail facility from court violates the Fourth Amendment).  As to arrestees

28  returning from court entitled to release, blanket policies of conducting strip searches violates the

1  Fourth Amendment, Article 1, §1 of the California Constitution, and Article 1, §13 of the

2  California Constitution. Craft v. County of San Bernardino, 468 F. Supp. 2d 1172 (C.D. Cal.

3  2006).

4         92.    Strip search without privacy presented a factual issue of reasonableness. Estes-El

5  v. State of New York, 552 F.Supp. 885, 889 (S.D.N.Y. 1982). In Lopez v. Youngblood, 609 F.

6  Supp. 2d 1125 (E.D. Cal. 2009), the court held it was unconstitutional to strip search detainees in

7  a group.

8         93.    And strip searches being conducted in an open setting is a form of gratuitous

9  humiliation that raises constitutional questions. See, e.g., Vaughan v. Ricketts, 859 F.2d 736, 741-

10  42 (9th Cir. 1988) (searched in an open hallway). Evidence of searches conducted publicly

11  without reason and against prison rules supported a constitutional claim. Mays v. Springborn, 575

12  F.3d at 649-50.

13         94.    The Ninth Circuit has, since 1963, recognized a Fourteenth Amendment right to

14  bodily privacy. In the Ninth Circuit, "[i]t is clearly established that the Fourteenth Amendment

15  protects a sphere of privacy, and the most `basic subject of privacy . . . the naked body.'" *Hydrick*

16  *v. Hunter*, 500 F.3d 978, 1000 (9th Cir. 2007), cert. granted, judgment vacated on other grounds,

17  556 U.S. 1256 (2009) (quoting Grummet, 779 F.2d at 494); see also Sepulveda, 967 F.2d at 1416

18  ("The right to bodily privacy is fundamental. . . . and was clearly established at the time. . . .").

19         95.    Plaintiff's involuntary exposure in states of partial or total nudity was humiliating

20  and degrading.

21         96.    Defendants' policies, practices, and customs complained of herein violated

22  Plaintiff's rights to due process and privacy under the Fourteenth Amendment, and directly and

23  proximately damaged Plaintiff as herein alleged, entitling Plaintiff to recover damages for said

24  constitutional violations pursuant to 42 U.S.C. §1983.

25

26                              **FOURTH CAUSE OF ACTION**

27            **Fourth Amendment (42 U.S.C. §1983) – Harassing cell search**

28            **Against COUNTY OF ORANGE, REYNA RIVERA, DEVONNA FALCONER,**

THIRD AMENDED COMPLAINT FOR DAMAGES AND FOR DECLARATORY AND INJUNCTIVE RELIEF

1    **KASSANDRA MAYER, ELIA RODRIGUEZ, RACHEL ADDINGTON, and DOES 1-10**

2        97.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in

3    the paragraphs above.

4        98.    The Fourth Amendment protects "[t]he right of the people to be secure in their

5    persons . . . against unreasonable searches and seizures . . . ." U.S. Const. amend. IV.

6        99.    Cell search conducted during midnight for no purpose but to harass was not

7    frivolous. Harassing cell search during midnight with no showing of misbehavior in jail

8    constituted unreasonable search.

9

10                              **FIFTH CAUSE OF ACTION**

11                   **First Amendment (42 U.S.C. § 1983) – Freedom of Expression**

12            **Against COUNTY OF ORANGE, REYNA RIVERA, DEVONNA FALCONER,**

13        **KASSANDRA MAYER, ELIA RODRIGUEZ, RACHEL ADDINGTON, and DOES 1-10**

14        100.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in

15    the paragraphs above.

16        101.    The harassing cell search during midnight was retaliation of Plaintiff and other

17    inmates' expression during the day.

18

19                              **SIXTH CAUSE OF ACTION**

20                          **Civil Conspiracy (42 U.S.C. § 1983)**

21            **Against COUNTY OF ORANGE, REYNA RIVERA, DEVONNA FALCONER,**

22        **KASSANDRA MAYER, ELIA RODRIGUEZ, RACHEL ADDINGTON, and DOES 1-10**

23        102.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in

24    the paragraphs above.

25        103.    Defendants engaged in oral, written, and electronic communications, and/or

26    endorsement and support among themselves and with others regarding: a) their agreement to

27    conduct harassing cell search during midnight; b) actions taken to deprive Plaintiff and other

28    inmates of their rights secured to them under Fourteenth Amendment; and c) their effort to

1    support each other's unconstitutional actions.

2    104.    Defendants engaged in a conspiracy among themselves and with others for the

3    purpose of depriving, directly or indirectly, Plaintiff and other inmates' rights to be free from

4    unreasonable search in violation of Fourteenth Amendment, with the object of retaliation of

5    Plaintiff and other inmates' exercise of their First Amendment right.

6

7                            **SEVENTH CAUSE OF ACTION**

8    **Municipal Liability for Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

9    **Against COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI;**

10                    **MARK STICHTER; and DOES 1-10**

11   105.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in

12   the paragraphs above.

13   106.    Plaintiff is informed and believes, and based thereon alleges, that on Aug 8, 2019,

14   and for some time prior thereto, Defendants, with deliberate indifference towards the civil rights

15   of detainees, knowingly and willfully did maintain, enforce, and apply a custom, practice, policy

16   and usage tending to encourage, promote, sanction, tolerate and ratify the abuse of authority, the

17   denial of life necessities, overcrowding condition, limited hygienic supplies, and the use of strip

18   searches and harassing cell search.

19   107.    Defendants also have several practices, customs, and/or policies that caused

20   Plaintiff to be continuously deprived of the essential and human need for sleep.

21   108.    Defendants, together with various other officials, whether named or unnamed, had

22   either actual or constructive knowledge of the deficient policies, practices and customs alleged in

23   the paragraphs above. Despite having knowledge as stated above these defendants condoned,

24   tolerated and through actions and inactions thereby ratified such policies.  Said defendants also

25   acted with deliberate indifference to the foreseeable effects and consequences of these policies

26   with respect to the constitutional rights of Plaintiff, and other individuals similarly situated.

27   109.    Multiple deputies engaged in different types of deprivation of detainees'

28   constitutional rights which is a norm in WCJ. By perpetrating, sanctioning, tolerating and

THIRD AMENDED COMPLAINT FOR DAMAGES AND FOR DECLARATORY AND INJUNCTIVE RELIEF

1   ratifying the outrageous conduct and other wrongful acts, Defendants acted with an intentional,

2   reckless, and callous disregard for Plaintiff's constitutional rights to be free from abuse.

3   Defendants, each of their actions were willful, wanton, oppressive, malicious, fraudulent, and

4   extremely offensive and unconscionable to any person of normal sensibilities.

5       110.    Furthermore, the policies, practices, and customs implemented and maintained and

6   still tolerated by Defendants, were affirmatively linked to and were a significantly influential

7   force behind the injuries of Plaintiff.

8       111.    By reason of the aforementioned acts and omissions of Defendants, Plaintiff has

9   suffered loss of trust, comfort, care, protection, and support. The supervisors who establish,

10  implement, and foster unconstitutional policy, custom, and practice should be held liable.

11  Accordingly, all Defendants, each are liable to Plaintiff for compensatory damages under 42

12  U.S.C. § 1983.

13

14                          **EIGHTH CAUSE OF ACTION**

15      **Municipal Liability – Failure to Train and Supervise (42 U.S.C. § 1983)**

16  **Against COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI;**

17                  **MARK STICHTER; and DOES 1-10**

18      112.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in

19  the paragraphs above.

20      113.    While acting under the color of state law and within the course and scope of their

21  employment, Defendants' practice, deprived Plaintiff's rights secured to her by the Fourth and

22  Fourteenth Amendments, including her right to be free from unreasonable search and seizure.

23      114.    The training policies of the County were not adequate to train its personnel,

24  including but not limited to, OCSD Officers, with regards to using searches. As a result, OCSD

25  personnel, are not able to handle the usual and recurring situations with which they must deal.

26  These inadequate training policies existed prior to the date of this incident and continue to this

27  day.

28      115.    The COUNTY was aware that failure to implement some sort of training with

                                          21

1    regards to their officers' use of strip and cell searches, would result in continuing to have

2    numerous unreasonable officers involved violation of pretrial detainees' constitutional rights

3    annually.

4         116.   The policies, practices and customs described above are the official policies,

5    practices and customs of Defendant the COUNTY, and are the direct and proximate cause of

6    Plaintiff being subjected to known risks of serious harms in violation of the Fourth and

7    Fourteenth Amendment. The policies, practices and customs described above include Defendant

8    the COUNTY's failure to train its staff in the face of an obvious need for training to prevent the

9    violations described above. In other words, Defendants' failure to train is so closely related to the

10   deprivation of the Plaintiff's rights as to be the moving force that caused the ultimate injury.

11        117.   By failing to achieve adequate training, OCSD Officers, acted with an intentional,

12   reckless, and callous disregard for Plaintiff's constitutional rights. OCSD Officers, each of their

13   actions was willful, wanton, oppressive, malicious, offensive, and unconscionable to any person

14   of normal sensibilities.

15        118.   By reason of the aforementioned acts and omissions of OCSD Officers, Plaintiff

16   has suffered loss of trust, comfort, care, protection, and support.

17

18                  **NINTH CAUSE OF ACTION**

19          **Violation of Cal. Const. Art. I, §7 – Denial of life necessities**

20               **Against COUNTY OF ORANGE and DOES 1-10**

21        119.   Plaintiff re-alleges and herein incorporates by reference the allegations set forth in

22   the paragraphs above.

23        120.   20 plus hours without food along with 12 plus hours in bone chillingly cold

24   environment constituted an impermissible imposition of punishment, especially Plaintiff's

25   repeated requests for food and clothing were intentionally denied.

26        121.   By the policies and practices described herein, Defendants had deprived Plaintiff's

27   minimal civilized measure of life's necessities, and had violated her basic human dignity and her

28   right to be free from punishment and unusual conditions under California Constitution.

THIRD AMENDED COMPLAINT FOR DAMAGES AND FOR DECLARATORY AND INJUNCTIVE RELIEF

122.    The policies and practices complained of herein have been and continue to be implemented by Defendants and their agents, officials, employees, and all persons acting in concert under color of state law, in their official capacity.

123.    Defendants have been and are aware of all of the deprivations complained of herein, and have condoned or been deliberately indifferent to such conduct. Defendants had been deliberately indifferent to Plaintiff's pain and suffering.

## TENTH CAUSE OF ACTION

**Violation of Cal. Const. Art. I, §7 – Overcrowding and sleep deprivation**

**Against COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI; MARK STICHTER; and DOES 1-10**

124.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

125.    Defendants, by deliberately preventing Plaintiff from being able to obtain adequate sleep both by limiting the available time for night time sleep with 24-hour light on policy and through overcrowding that interrupts, interferes, disrupts and disturbs night time sleep, imposed an atypical, substantial, and different hardship on Plaintiff in relation to the ordinary incidents of incarcerated life, so as to create a liberty interest protected by due process. By Defendants' policies and practices described above, Defendants subjected Plaintiff to a substantial risk of harm due to the denial of due process in relationship to the ordinary, human requirement of sleep. These policies and practices have been, and continue to be, implemented by Defendants and their agents or employees in their official capacities, and are the proximate cause of Plaintiff's deprivation of rights secured by the California Constitution, Article I, Section 7.

126.    Defendants have been and are aware of all of the deprivations complained of herein, and have condoned or been deliberately indifferent to such conduct.

## ELEVENTH CAUSE OF ACTION

**Violation of Cal. Const. Art. I, §13 – Strip search**

THIRD AMENDED COMPLAINT FOR DAMAGES AND FOR DECLARATORY AND INJUNCTIVE RELIEF

1  **Against COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI;**
2  **MARK STICHTER; and DOES 1-10**

3      127.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in
4  the paragraphs above.

5      128.    The unnecessary, demeaning, outrageous and intrusive strip searches to which
6  Plaintiff was subjected violated Plaintiff's rights to be secure in her person against unreasonable
7  searches and seizures, as guaranteed by Article I, § 13 of the California Constitution.

8

9                        **TWELFTH CAUSE OF ACTION**
10             **Violation of Cal. Const. Art. I, § 13 – Harassing cell search**
11          **Against COUNTY OF ORANGE, REYNA RIVERA, DEVONNA FALCONER,**
12    **KASSANDRA MAYER, ELIA RODRIGUEZ, RACHEL ADDINGTON, and DOES 1-10**

13      129.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in
14  the paragraphs above.

15      130.    The unnecessary, demeaning, and outrageous cell search to which Plaintiff was
16  subjected violated Plaintiff's rights to be secure in her person against unreasonable searches and
17  seizures, as guaranteed by Article I, § 13 of the California Constitution.

18

19                       **THIRTEENTH CAUSE OF ACTION**
20            **Violation of Cal. Const. Art. I, § 2 – Freedom of expression**
21          **Against COUNTY OF ORANGE, REYNA RIVERA, DEVONNA FALCONER,**
22    **KASSANDRA MAYER, ELIA RODRIGUEZ, RACHEL ADDINGTON, and DOES 1-10**

23      131.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in
24  the paragraphs above.

25      132.    The harassing cell search during midnight was retaliation of Plaintiff and other
26  inmates' expression during the day.

27

28                      **FOURTEENTH CAUSE OF ACTION**

THIRD AMENDED COMPLAINT FOR DAMAGES AND FOR DECLARATORY AND INJUNCTIVE RELIEF

**Violation of Cal. Const. Art. I, §1 – Right of Privacy**

**Against all Defendants**

133.     Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

134.     Unlawful strip searches violate an individual's right to privacy under Article 1, Section 1 of the California Constitution. See White v. Davis, 13 Cal. 3d. 757 (1975); Hill v. NCAA, 7 Cal.4th 1 (1994); American Airlines, Inc. v. Superior Court, 114 Cal. App. 4th 881 (2003).

135.     Plaintiff didn't even want to be naked in front of her mother, not to mention a bunch of strangers. Being forced to be completely nude and take a shower in the view of OCSD personnel and other inmates, being forced to wear a bra in the view of OCSD personnel and other inmates, being strip searched seven times without privacy, being forced to be completely naked before getting back her own clothing, all together not only violated Plaintiff's fundamental rights but also put Plaintiff through hell.

**FIFTEENTH CAUSE OF ACTION**

**Negligent Supervising, Training, Disciplining, and Retaining Employees**

**Against COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI; MARK STICHTER; and DOES 1-10**

136.     Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

137.     Defendants COUNTY OF ORANGE, DON BARNES, WILLIAM BAKER, JOE BALICKI, MARK STICHTER, and DOES 1 through 10 failed to provide adequate training, supervision, oversight and/or retention of Defendants REYNA RIVERA, DEVONNA FALCONER, KASSANDRA MAYER, ELIA RODRIGUEZ, RACHEL ADDINGTON, and DOES 1 THROUGH 10 in spite of the known risk and foreseeable likelihood of breach of the foregoing duties, which permitted the violations described above.

138.     At all times relevant herein, Defendants COUNTY OF ORANGE, DON

25

1    BARNES, WILLIAM BAKER, JOE BALICKI, MARK STICHTER, and DOES 1 through 10

2    maintained, enforced, tolerated, permitted, acquiesced in, and ratified the administrative policy,

3    practice and custom of assigning duties to REYNA RIVERA, DEVONNA FALCONER,

4    KASSANDRA MAYER, ELIA RODRIGUEZ, RACHEL ADDINGTON, and DOES 1 through

5    10 who are unable to competently discharge such duties due to their relative inexperience,

6    incomplete or inadequate training, lack of knowledge, etc., to be ready or able to competently

7    discharge their duties.

8          139.    Defendants COUNTY OF ORANGE, DON BARNES, WILLIAM BAKER, JOE

9    BALICKI, MARK STICHTER, and DOES 1 through 10 failed to adopt a procedure to train and

10   supervise their deputies to avoid constitutional violations.

11         140.    Defendants COUNTY OF ORANGE, DON BARNES, WILLIAM BAKER, JOE

12   BALICKI, MARK STICHTER, and DOES 1 through 10 were aware of the obvious risks of not

13   creating such an effective system and of not training deputies regarding detainees' civil rights.

14         141.    Defendants REYNA RIVERA, DEVONNA FALCONER, KASSANDRA

15   MAYER, ELIA RODRIGUEZ, RACHEL ADDINGTON, and DOES 1 through 10 were, at the

16   time each was hired and/or became unfit and/or incompetent to perform the work for which each

17   was hired.

18         142.    The negligence of Defendants COUNTY OF ORANGE, DON BARNES,

19   WILLIAM BAKER, JOE BALICKI, MARK STICHTER,  and DOES 1 through 10 in

20   training/supervising and/or retaining Defendants REYNA RIVERA, DEVONNA FALCONER,

21   KASSANDRA MAYER, ELIA RODRIGUEZ, RACHEL ADDINGTON, and DOES 1

22   THROUGH 10 was a substantial factor in causing Plaintiff's harm.

23

24                           **SIXTEENTH CAUSE OF ACTION**

25                      **Violation of California Penal Code §4030**

26   **Against COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI;**

27                        **MARK STICHTER; and DOES 1-10**

28         143.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in

                                          26

the paragraphs above.

144.   Defendants' policies, practices, and customs regarding the strip searches complained of herein violated rights secured to Plaintiff under California Penal Code §4030 and directly and proximately damaged Plaintiff as herein alleged, entitling her to recover a minimum of $1,000 each pursuant to California Penal Code §4030(o) in addition to other damages.

## SEVENTEENTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### Against all Defendants

145.   Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

146.   Plaintiff certainly didn't go into WCJ thinking she would be denied life necessities, strip searched, and harassed during midnight.

147.   As a direct result of Defendants' unconstitutional policies and practice, Plaintiff is suffering and continues to suffer from debilitating psychological damage. She suffers from serious insomnia and continuous fatigue. She is preoccupied with fears of being strip searched again and nightmares of seeing herself dying in a freezing cell.

148.   Now Plaintiff cannot read more than a few paragraphs without losing focus and needing to start over. She cannot maintain a normal life without interruption of suicidal thoughts, anxiety, memory loss, fear, and depression. From time to time she also has nightmares seeing herself die in jail.

149.   Plaintiff feels numb and distant when she speaks to her family or spends time with her friends. She is no longer able to emotionally connect with her family and close friends.

150.   As a direct and proximate result of Defendants' actions and inactions, Plaintiff suffered injuries entitling her to receive appropriate damages against Defendants and punitive damages should be assessed for the purposes of punishment and for the sake of example.

## DECLARATORY RELIEF SOUGHT

27

THIRD AMENDED COMPLAINT FOR DAMAGES AND FOR DECLARATORY AND INJUNCTIVE RELIEF

151.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

152.    Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this complaint. Plaintiff has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendants as alleged herein, unless Plaintiff is granted the relief she requests.

153.    Plaintiff respectfully prays for a declaratory judgment that declares that the conditions, acts, omissions, policies, and practices of Defendants and their agents, officials, and employees are in violation of the rights of Plaintiff under the First, Fourth, and Fourteenth Amendments to the U.S. Constitution, Art. I, §§ 1, 2, 7, 13 of the California Constitution, California Penal Code § 4030, and/or California common law.

## **INJUNCTIVE RELIEF SOUGHT**

154.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

155.    Plaintiff prays that this Court issue a permanent injunction against Defendants ordering them to:

a.  Cease all unconstitutional practice as described above;

b.  Replace toilets that cause extreme loud flushing noise;

c.  Prohibit over-head light and loud noise for at least a 7-hour period each night;

d.  Provide all prisoners with the ability to have uninterrupted and undisturbed block of night time sleep of no less than 7 hours;

e.  Resolve overcrowding condition, provide sufficient space and out-of-cell time;

f.  Include shampoo as hygienic supply and provide all inmates with hygienic supplies free of charge;

g.  Release female inmates before 8 pm;

h.  Provide necessary privacy to all prisoners;

i.  Prohibit unlawful strip searches and harassing cell searches; and

28

       j.    Properly train and supervise government employees concerning the unlawful actions described above to prevent future violations.

## **PRAYER**

WHEREFORE, Plaintiff prays judgment against Defendants and each of them, as follows:

AS TO EACH CAUSE OF ACTION AS APPLICABLE

1.    For general damages according to proof;

2.    For special damages according to proof;

3.    For exemplary damages as provided by law, in an amount to be proved against each individual Defendant;

4.    For interest;

5.    For civil penalties pursuant to Civil Code § 52;

6.    For attorney's fees pursuant to 42 U.S.C. § 1988 and Civil Code §§ 52 and 52.1;

7.    For reasonable costs of this suit;

8.    For treble damages under Civil Code § 52.1;

9.    For such other and further relief as the Court may deem just, proper, and appropriate.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury for all issues so triable.

Dated: May 22, 2020

_____

Jane Doe

Plaintiff in Pro Se

29

THIRD AMENDED COMPLAINT FOR DAMAGES AND FOR DECLARATORY AND INJUNCTIVE RELIEF

**EXHIBITS TO COMPLAINT**


**<u>TABLE OF CONTENTS</u>**


| Exhibit # | Document |
|-----------|----------|
| 1 | Rejection letter from County of Orange |

THIRD AMENDED COMPLAINT FOR DAMAGES AND FOR DECLARATORY AND INJUNCTIVE RELIEF

1

**CERTIFICATE OF SERVICE**

2

3          I, Jane Doe, declare and say as follows:

4          I am over the age of eighteen years of age and am a party to this action. I reside in the

5    County of Los Angeles, State of California. My business address is 11151 Valley Blvd #4886, El

6    Monte, CA 91734, in said county and state.

7          On May 22, 2020 I electronically filed the following document(s):

8          Third Amended Complaint

9          with the United States District Court, Central District of California by using the CM/ECF

10   system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF

11   system.

12

13          Dated: May 22, 2020

14

15                                                   _____

16                                                   Jane Doe

17                                                   Plaintiff in Pro Se

18

19

20

21

22

23

24

25

26

27

28

31