

Office of the Clerk
**United States Court of Appeals for the Ninth Circuit**
Post Office Box 193939
San Francisco, California 94119-3939
415-355-8000

Molly C. Dwyer
Clerk of Court

March 28, 2022

---

No.:　　　22-70056
D.C. No.:　8:20-cv-00322-JWH-GJS
Short Title: Jane Doe v. USDC-CASA

---

Dear Petitioner/Counsel

A petition for writ of mandamus and/or prohibition has been received in the Clerk's Office of the United States Court of Appeals for the Ninth Circuit. The U.S. Court of Appeals docket number shown above has been assigned to this case. Always indicate this docket number when corresponding with this office about your case.

If the U.S. Court of Appeals docket fee has not yet been paid, please make immediate arrangements to do so. If you wish to apply for in forma pauperis status, you must file a motion for permission to proceed in forma pauperis with this court.

Pursuant to FRAP Rule 21(b), no answer to a petition for writ of mandamus and/or prohibition may be filed unless ordered by the Court. If such an order is issued, the answer shall be filed by the respondents within the time fixed by the Court.

Pursuant to Circuit Rule 21-2, an application for writ of mandamus and/or prohibition shall not bear the name of the district court judge concerned. Rather, the appropriate district court shall be named as respondent.

No. 22-_____

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

JANE DOE,

*Petitioner*,

v.

UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA

*Respondent*.

COUNTY OF ORANGE, ET AL

*Real Parties in Interest*

On Petition for a Writ of Mandamus to the United States District
Court for the Central District of California
No. 8:20-cv-00322-JWH-GJS

_____

**PETITION FOR WRIT OF MANDAMUS**

_____

JANE DOE
11151 Valley Blvd #4886,
El Monte, CA 91734

*Petitioner in Pro Se*

1

## CERTIFICATE OF INTERESTED PARTIES

Petitioner is not aware of any other entity or person that has a financial or other interest in the outcome of the proceedings other than the real parties in interest.

Date:  Mar 28, 2022

*/s/ JANE DOE*
JANE DOE

*Petitioner in Pro Se*

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PARTIES ................................................................. 2

TABLE OF CONTENTS ............................................................................................... 3

TABLE OF AUTHORITIES .......................................................................................... 4

INTRODUCTION .......................................................................................................... 6

RELIEF SOUGHT ......................................................................................................... 6

JURISDICTIONAL STATEMENT ............................................................................... 7

ISSUES PRESENTED ................................................................................................... 7

STATEMENT OF FACTS ............................................................................................. 8

ARGUMENT ............................................................................................................... 11

    I.      APPLICATION OF THE CALIFORNIA CONSTITUTIONAL RIGHT TO PRIVACY IN THE CONTEXT OF CIVIL DISCOVERY ......................... 11

          A.      Standards for Determining Invasion of Privacy Under Article I, Section 1 ........................................................................................... 13

          B.      Application of the Elements of Invasion of Privacy to This Petition ........................................................................................................... 18

    II.     A WRIT MAY BE APPROPRIATE TO ADDRESS A DISTRICT COURT'S DENIAL OF CONSTITUTIONAL PROTECTION ............... 24

          A.      Clear Error (The Third *Bauman* Factor) ......................................... 25

          B.      The First and Second *Bauman* Factors ............................................ 27

          C.      The Fourth and Fifth *Bauman* Factors ............................................ 29

CONCLUSION ............................................................................................................ 29

STATEMENT OF RELATED CASE(S) ......................................................................... 2

CERTIFICATE OF COMPLIANCE .............................................................................. 3

CERTIFICATE OF SERVICE ........................................................................................ 4

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Admiral Ins. Co. v. United States Dist. Court*, 881 F.2d 1486 (9th Cir. 1989) ........... 25, 28

*Bauman v. U.S. Dist. Court*, 557 F.2d 650 (9th Cir. 1977) ......................................... 25, 29

*Board of Medical Quality Assurance v. Gherardini* (1979) 93 Cal.App.3d 669 [156 Cal.Rptr. 55] ................................................................................................. 19

*Britt v. Superior Court*, 20 Cal.3d 844 (Cal. 1978) ..................................................... 17, 21

*Caesar v. Mountanos*, 542 F.2d 1064 (9th Cir. 1976) ....................................................... 21

*Christensen v. U.S. Dist. Ct.*, 844 F.2d 694 (9th Cir. 1988) .............................................. 25

*City of Carmel-by-the-Sea v. Young* (1970) 2 Cal.3d 259 [85 Cal.Rptr. 1, 466 P.2d 225, 37 A.L.R.3d 1313] .............................................................................................. 26

*Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*, 586 F.3d 703 (9th Cir. 2009) ...................... 26

*Cole v. U.S. Dist. Ct. for Dist. of Idaho*, 366 F.3d 813 (9th Cir. 2004) ........................... 27

*Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602 (1993) ................................................................................................... 26

*Cooper v. F.A.A*, 596 F.3d 538 (9th Cir. 2010) ................................................................ 20

*Credit Suisse v. United States District Court for the Central District of California*, 130 F.3d 1342 (9th Cir. 1997) ..................................................................................... 25

*Doyle v. State Bar* (1982) 32 Cal.3d 12, 20 [184 Cal.Rptr. 720 P.2d 942] ...................... 27

*Ex parte Fahey*, 332 U.S. 258 (1947) ................................................................................ 24

*Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal.4th 1 (Cal. 1994) ...................... 12, 13, 15, 18

*In re Boon Glob. Ltd.*, 923 F.3d 643 (9th Cir. 2019) ........................................................ 25

*In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002) .......................................................... 26, 27

*In re Grice*, 974 F.3d 950 (9th Cir. 2020) ........................................................................ 26

*In re Lifschutz*, 2 Cal.3d 415 (Cal. 1970) ................................................................... 21, 22

*In re Swift Transp. Co. Inc*., 830 F.3d 913 (9th Cir. 2016) .............................................. 26

*Leonel v. Am. Airlines, Inc.*, 400 F.3d 702 (9th Cir. 2005) ................................ 12

*N. Am. Acceptance Corp. Sec. Cases v. Arnall, Golden & Gregory*, 593 F.2d 642 (5th Cir. 1979)........................................................................................................... 28

*Plante v. Gonzalez*, 575 F.2d 1119 (5th Cir. 1978) ......................................... 14

*San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096 (9th Cir. 1999) ............... 27

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984) ........................................ 13

*Shoen v. Shoen*, 48 F.3d 412 (9th Cir. 1995)..................................................... 6

*Skinner v. Railway Labor Executives' Assn.* (1989) 489 U.S. 602 [103 L.Ed.2d at pp. 665-666]................................................................................................................. 15

*Southern Calif. Gas Co. v. Public Utilities Comm'n*, 784 P.2d 1373 (Cal. 1990)............. 23

*Thorne v. City of El Segundo*, 726 F.2d 459 (9th Cir. 1983) ............................. 23

*Urbaniak v. Newton* (1991) 226 Cal.App.3d 1128 [277 Cal.Rptr. 354] ........................ 14

*Valley Bank of Nevada v. Superior Court* (1975) 15 Cal.3d 652 [125 Cal.Rptr. 553, 542 P.2d 977]........................................................................................................ 26

*Whalen v. Roe*, 429 U.S. 589 (1977) .................................................... 14, 15, 19

*Wilkinson v. Times Mirror Corp.* (1989) 215 Cal.App.3d 1034 [264 Cal.Rptr. 194]....... 19

*Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*, 231 F.3d 1215 (9th Cir. 2000)..... 27

**Statutes**

28 U.S.C. § 1651 ....................................................................................... 7, 24

42 U.S.C. § 1983 ........................................................................................... 8

# INTRODUCTION

The firmly established constitutional precepts cannot be ignored merely because the issue of compelled disclosure arises in the context of litigation discovery.

JANE DOE ("Petitioner") does not cease to be a person, with rights under State Constitution, when she walks into a federal court room. Here, despite deposition is a fully viable alternative to satisfy the objective of facilitating the ascertainment of truth in legal proceedings, the district court fails to balance the harm and probative value of involuntary disclosure, orders Petitioner to sign a medical records authorization release form for the release of her entire lifetime mental health records, alcohol and drug records, and HIV test results, and refuses to quash unlimited subpoenas without regard to whether the health conditions have any bearing on the present litigation.

The district court's decision is based on a clear error of law. The Ninth Circuit held that the litigant is entitled to requested discovery notwithstanding a valid assertion of qualified privilege . . . only upon a showing that the requested material is: (1) unavailable despite exhaustion of all reasonable alternative sources; (2) noncumulative; and (3) clearly relevant to an important issue in the case. *Shoen v. Shoen*, 48 F.3d 412, 416 (9th Cir. 1995) ("*Shoen II*"). Under the circumstances, mandamus relief is the only relief available to Petitioner.

# RELIEF SOUGHT

Petitioner seeks a writ of mandamus that (1) vacates the district court's March 23, 2022 Order requiring Petitioner to sign a medical records authorization release form for the release of her entire lifetime mental health records, alcohol and drug records, and HIV test results, and (2) directs the district court to quash all unfulfilled subpoenas issued to Petitioner's health care providers, in the alternative, limit the scope of the subpoenas.

## JURISDICTIONAL STATEMENT

This Court has authority to issue a writ of mandamus pursuant to 28 U.S.C. § 1651 and Rule 21 of the Federal Rules of Appellate Procedure.

## ISSUES PRESENTED

Where a plaintiff's health care providers can be deposed, does a court order requiring the plaintiff to sign a medical records authorization release form violate both federal and state constitutional rights to privacy and constitute unreasonable search and seizure where such form requires the release of the plaintiff's entire lifetime mental health records, including her HIV test results and alcohol and drug records?

Are Defendants entitled to the discovery of a plaintiff's injuries not caused by Defendants' misconduct based on mere relevance while Defendants provided no reliable or credible expert opinion, objective measure, or methodology concerning how to assess the effect of a patient's pre-existing anxieties on her current alleged injuries?

Are Defendants entitled to a plaintiff's entire medical files over seven years prior to exhaustion of all reasonable alternative sources where deposition is a fully viable alternative to satisfy the objective of facilitating the ascertainment of truth in legal proceedings?

Did the district court properly balance the probative value and harm of non-consensual disclosure of a plaintiff's entire medical records for over seven years while Defendants identified no objective measurement or methodology to evaluate injuries?

## STATEMENT OF FACTS

In August 2019, Petitioner was arrested on misdemeanor charges and incarcerated at the Orange County Women's Central Jail ("WCJ") for four days before being released on her own recognizance waiting for trial. During her brief but horrible stay at WCJ Petitioner was on period, she was strip searched seven times and subjected to other senseless indignities for no legitimate reason. About one week later after Petitioner was released from WCJ, she went to the emergency room for dysfunctional menstrual bleeding--her first time in life ever at the emergency room. About two weeks later, she was transported to the hospital and was put on suicide watch. Three months later, she attempted suicide by attempting to overdose sleeping pills. Petitioner claims that the strip searches and inhumane conditions at the jail caused her lasting psychological and physical harm. ER 180.

Petitioner brings this action under 42 U.S.C. § 1983, alleging that

Defendants Orange County ("County"), Orange County Sheriff Don Barnes, Assistant Sheriff William Baker, Commander Joe Balicki, and Captain Mark Stichter violated her Fourth and Fourteenth Amendment rights by adopting, implementing, and maintaining policies, practices, and customs in the jail which caused jail personnel to repeatedly strip search her without cause over four days and forced her to endure inhumane conditions, including overcrowding and loss of sleep. Petitioner also brings this action against Defendants Orange County and Defendants Deputies Rivera, Falconer, Mayer, Rodriguez, and Addington, as well as additional unnamed deputies, alleging that they conducted midnight cell searches in retaliation for the inmates not being quiet enough during the day, in violation of Petitioner's Fourth Amendment rights against unreasonable searches and First Amendment rights to free expression. She asserts that these unconstitutional acts stemmed from Orange County's failure to train and supervise its deputies. Petitioner also asserts various state civil rights and tort claims. She seeks compensatory and punitive damages. ER 180.

On May 26, 2021 the County served eight subpoenas upon Petitioner's five medical providers requesting both Petitioner's billing and medical records since Jan 1, 2016 to present related to Petitioner's each and every organ. ER 132. In those subpoenas the County requests any and all records from January 1, 2016 to present, without regard to whether the health conditions have any bearing on the present litigation, including but not limited to statements of accounts, writings, any

9

payments made or received, any credits, adjustments, write-offs, reconciliations, contract price payments or reduction, payments by any health insurance entity, personal payments by or to patient from any source, HMO, PPO, Medi-Cal, Medicare or contract payments by any entity, billing ledgers, reports and/or statements of charges rendered and any insurance records; medical reports, including doctor's entries, nurses' charts, progress reports, physical therapy records, pathology reports, x-ray reports, lab reports, case history, emergency room records, counseling records, admitting sheets, special tests, inpatient and outpatient records, any sign-in sheets pertaining to the care and treatment, diagnosis, prognosis, condition, discharge, including but not limited to, any records/documents that may be stored digitally and/or electronically, including orders and results and specifically for any discharge orders, all detailed screen shots within any computer system; any and all film/radiology records, original x-ray films, MRI's, CT scans. ER 107-108.

Petitioner is completely willing, through deposition of her health care providers, to provide defendants with medical information which relates in any way to the physical or emotional injuries for which she seeks recovery in the underlying action. ER 127. There is no evidence suggesting that Petitioner's health care providers would be untruthful. However, since Apr 22, 2021, almost one year ago, Defendants have possessed all the information of Petitioner's health care providers necessary to take depositions of fact witnesses, Defendants made no

10

single attempt to depose any of Petitioner's health care providers. ER 005.

On Jun 15, 2021 Petitioner sought from the district court an order quashing eight subpoenas served upon Petitioner's five health care providers. ER 085-135. Oral arguments were heard on Jul 7, 2021. Despite Petitioner identified feasible precaution or safeguard by deposing her health care providers, her motion was denied by the magistrate judge. ER 083. On Jul 16, 2021 Petitioner sought review by the district judge. ER 072. Defendants filed their opposition. ER 058. The district court denied Petitioner's motion on Dec 14, 2021. ER 056.

On Mar 18, 2022 due to its failure to receive all the medical records subject to the subpoenas the County filed an ex parte application to compel Petitioner to sign an authorization disclosure required by the Los Angeles County Department of Mental Health ("LACDMH") and extend the discovery cut-off date. ER 017. The authorization release form does not specify any time period and requires disclosure of Petitioner's entire lifetime mental health records, including her HIV test results and alcohol and drug records. ER 039. Petitioner opposed. ER 005. On Mar 23, 2022 the district court orders Petitioner to sign the authorization form or subject to terminating sanctions. ER 003.

## ARGUMENT

## I.   APPLICATION OF THE CALIFORNIA CONSTITUTIONAL RIGHT TO PRIVACY IN THE CONTEXT OF CIVIL DISCOVERY

Petitioner has a right of privacy under both federal and California constitutions. The Ninth Circuit has held that Article I, section I of the California Constitution contains an explicit guarantee of the right of "privacy" which is broader and more protective in scope than that of the United States Constitution. *Leonel v. Am. Airlines, Inc*., 400 F.3d 702, 711 (9th Cir. 2005). Article I, section 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." (Italics added.) The phrase "and privacy" was added to California Constitution, article I, section 1 by an initiative adopted by the voters on November 7, 1972 (the Privacy Initiative or Amendment). Privacy Initiative affords protection against both private and governmental action. *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal.4th 1, 18-20 (Cal. 1994).

"Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes. Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c). It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants

12

and third parties." Civil discovery is "the coerced production of information" backed by the government power. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-35 (1984).

## A. Standards for Determining Invasion of Privacy Under Article I, Section 1

### 1. <u>Elements of Invasion of the State Constitutional Right of Privacy</u>

Based on the Privacy Initiative, a plaintiff alleging an invasion of privacy in violation of the state constitutional right to privacy must establish each of the following: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy. *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal.4th 1, 39-40 (Cal. 1994).

#### a. A Legally Protected Privacy Interest

Legally recognized privacy interests are generally of two classes: (1) interests in precluding the dissemination or misuse of sensitive and confidential information ("informational privacy"); and (2) interests in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference ("autonomy privacy"). *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal.4th 1, 35 (Cal. 1994).

#### b. Reasonable Expectation of Privacy

"The extent of [a privacy] interest is not independent of the circumstances." *Plante v. Gonzalez*, 575 F.2d 1119, 1135 (5th Cir. 1978). Customs, practices, and physical settings surrounding particular activities may create or inhibit reasonable expectations of privacy. Unpleasant invasions of privacy are most likely associated with many facets of health care. *Whalen v. Roe*, 429 U.S. 589, 602 (1977).

A "reasonable" expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms. The presence or absence of opportunities to consent voluntarily to activities impacting privacy interests affects the expectations of the participant.

Obviously, sensitive personal information may be misused even if its disclosure is limited. Particularly when professional or fiduciary relationships premised on confidentiality are at issue (such as doctor and patient or psychotherapist and client), the state constitutional right to privacy may be invaded by a less-than-public dissemination of information. See, e.g., *Urbaniak v. Newton* (1991) 226 Cal.App.3d 1128, 1138 [277 Cal.Rptr. 354] [complaint stated cause of action against physicians for nonpublic disclosure of positive status for human immunodeficiency virus.]

    c.  Serious Invasion of Privacy Interest

No community could function if every intrusion into the realm of private action, no matter how slight or trivial, gave rise to invasion of privacy. The extent

and gravity of the invasion is an indispensable consideration in assessing an

alleged invasion of privacy. *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal.4th 1, 37

(Cal. 1994).

      2. <u>Justification of Invasion of the State Constitutional Right of Privacy</u>

The diverse and somewhat amorphous character of the privacy right

necessarily requires that privacy interests be specifically identified and carefully

compared with competing or countervailing privacy and nonprivacy interests in a

"balancing test." The comparison and balancing of diverse interests is central to the

privacy jurisprudence of both common and constitutional law. *Hill v. Nat'l*

*Collegiate Athletic Ass'n*, 7 Cal.4th 1, 37 (Cal. 1994).

Confronted with a justification based on countervailing interests, the

plaintiff may undertake the burden of demonstrating the availability and use of

protective measures, safeguards, and alternatives to the defendant's conduct that

would minimize the intrusion on privacy interests. *Whalen*, supra, 429 U.S. at pp.

600-602 [106 L.Ed.2d at pp. 498-500]; *Skinner v. Railway Labor Executives' Assn*.

(1989) 489 U.S. 602, 626, fn. 7 [103 L.Ed.2d at pp. 665-666]. For example, if

intrusion is limited and confidential information is carefully shielded from

disclosure except to those who have a legitimate need to know, privacy concerns

are assuaged. On the other hand, if sensitive information is gathered and feasible

safeguards are slipshod or nonexistent, or if defendant's legitimate objectives can

be readily accomplished by <u>alternative means</u> having little or no impact on privacy interests, the prospect of actionable invasion of privacy is enhanced.

Judicial assessment of the relative strength and importance of privacy norms and countervailing interests may differ in cases of private, as opposed to government, action.

First, the pervasive presence of coercive government power in basic areas of human life typically poses greater dangers to the freedoms of the citizenry than actions by private persons. "The government not only has the ability to affect more than a limited sector of the populace through its actions, it has both economic power, in the form of taxes, grants, and control over social welfare programs, and physical power, through law enforcement agencies, which are capable of coercion far beyond that of the most powerful private actors." Sundby, Is Abandoning State Action Asking Too Much of the Constitution? (1989) 17 Hastings Const.L.Q. 139, 142-143 [hereafter Sundby].

Second, "an individual generally has greater choice and alternatives in dealing with private actors than when dealing with the government." Sundby, supra, 17 Hastings Const.L.Q. at p. 143. Initially, individuals usually have a range of choice among landlords, employers, vendors and others with whom they deal. To be sure, varying degrees of competition in the marketplace may broaden or narrow the range.

16

Third, private conduct, particularly the activities of voluntary associations of persons, carries its own mantle of constitutional protection in the form of freedom of association. Private citizens have a right, not secured to government, to communicate and associate with one another on mutually negotiated terms and conditions. Freedom of association is also protected by the First Amendment and extends to all legitimate organizations, whether popular or unpopular. (*Britt v. Superior Court* (1978) 20 Cal.3d 844, 854 [143 Cal.Rptr. 695, 574 P.2d 766]; see also Tribe, American Constitutional Law (2d ed. 1988) § 18-2, p. 1691 [noting rationale of federal constitutional requirement of state action protects "the freedom to make certain choices, such as choices of the persons with whom [one associates]" which is "basic under any conception of liberty"].)

These generalized differences between public and private action may affect privacy rights differently in different contexts. If, for example, a plaintiff claiming a violation of the state constitutional right to privacy was able to choose freely among competing public or private entities in obtaining access to some opportunity, commodity, or service, his or her privacy interest may weigh less in the balance. In contrast, if a public or private entity controls access to a vitally necessary item, it may have a correspondingly greater impact on the privacy rights of those with whom it deals.

A defendant may justify an invasion of state constitutional privacy by negating any of the three elements just discussed or by proving that the invasion of privacy substantively furthers one or more countervailing interests. The plaintiff, in turn, may rebut a defendant's assertion of countervailing interests by showing there are feasible and effective alternatives to defendant's conduct which have a lesser impact on privacy interests.

The existence of a sufficient countervailing interest or an alternative course of conduct present threshold questions of law for the court. The relative strength of countervailing interests and the feasibility of alternatives present mixed questions of law and fact. Again, in cases where material facts are undisputed, adjudication as a matter of law may be appropriate. *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal.4th 1, 40 (Cal. 1994).

### B. Application of the Elements of Invasion of Privacy to This Petition

The district court's March 23, 2022 Order and unlimited subpoenas issued by the County impact legally protected privacy interests. First, by compelling Petitioner to sign a medical records authorization release form and refusing to quash subpoenas, Petitioner's independence in making an important decision whether to disclose sensitive medical information is deprived. Second, by collecting Petitioner's medical records the County obtains information about the internal medical state of Petitioner's body of her entire life that is regarded as

18

personal and confidential. *Board of Medical Quality Assurance v. Gherardini* (1979) 93 Cal.App.3d 669, 678 [156 Cal.Rptr. 55] ["A person's medical profile is an area of privacy infinitely more intimate, more personal in quality and nature than many areas already judicially recognized and protected."]; see also *Wilkinson v. Times Mirror Corp.* (1989) 215 Cal.App.3d 1034, 1048 [264 Cal.Rptr. 194].

The compelled disclosure of medical information may cause harassment and embarrassment to Petitioner. The first implicates autonomy privacy — an interest in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference. The second implicates informational privacy — an interest in limiting disclosure of confidential information about bodily condition. The distinction between the two interests is not sharply drawn. But the identification of these privacy interests is the beginning, not the end, of the analysis.

1. Reasonable expectations of privacy

The interest in independence in making certain kinds of important decisions involves issues of personal freedom of action and autonomy in individual encounters with government. *Whalen v. Roe*, 429 U.S. 589, 598-600 (1977). A patient has reasonable expectation of privacy in a decision without interference in the disclosure of her medical records and files. See *Board of Medical Quality Assurance v. Gherardini* (1979) 93 Cal.App.3d 669, 678 [156 Cal.Rptr. 55] [A

person's medical profile is an area of privacy infinitely more intimate, more personal in quality and nature than many areas already judicially recognized and protected.]

An individual's confidential medical records often contain some of the most sensitive and intimate information about one's physical, mental, and emotional well-being, and sexual orientation. *Cooper v. F.A.A*, 596 F.3d 538, 546 (9th Cir. 2010). Petitioner's interest in the privacy of medical treatment and medical information is a protectable interest under the Privacy Initiative. The collection of the entire medical records and files presents greater risk to privacy. The documents will be handled and kept by attorney service, First Legal, which is unclear what procedures they have designed to safeguard such sensitive documents. The protective order entered for this litigation governing confidential documents does not eliminate Petitioner's privacy concerns simply because the medical records will not be disseminated to third parties. The confidential information from the medical records, such as HIV test results, can be easily disseminated orally even without the actual dissemination of medical records.

"The psychiatric patient confides more utterly than anyone else in the world. He exposes to the therapist not only what his words directly express; he lays bare his entire self, his dreams, his fantasies, his sins, and his shame. Most patients who undergo psychotherapy know that this is what will be expected of them, and that

they cannot get help except on that condition. . . . It would be too much to expect them to do so if they knew that all they say — and all that the psychiatrist learns from what they say — may be revealed to the whole world from a witness stand." *In re Lifschutz*, 2 Cal.3d 415, 431 (Cal. 1970).

   2.  Seriousness of invasion

The extent of the intrusion on Petitioner's privacy presented by the question must be considered in light of the expectations of privacy in the context of psychotherapist-patient privilege and physician-patient privilege. See *Caesar v. Mountanos*, 542 F.2d 1064, 1067 n. 9 (9th Cir. 1976), cert. denied, 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 804 (1977) (right to privacy encompasses doctor-patient relationship).

   3.  Competing interests

Petitioner is "entitled to retain the confidentiality of all unrelated medical or psychotherapeutic treatment they may have undergone in the past." *Britt v. Superior Court*, 20 Cal.3d 844, 864 (Cal. 1978). The wholesale disclosure of Petitioner's medical records deprives her of such entitlement.

To justify the compelled disclosure of Petitioner's entire lifetime medical records the important interest is to facilitate the ascertainment of truth in legal proceedings. However, a patient is not obligated to sacrifice all privacy to seek redress for a specific [physical,] mental or emotional injury; the scope of the

inquiry permitted depends upon the nature of the injuries which the patient-litigant himself has brought before the court. *In re Lifschutz*, 2 Cal.3d 415, 435 (Cal. 1970).

Deposition is a fully viable alternative to solicit whatever information necessary for defendants' defense that could nonetheless fully satisfy the objective of facilitating the ascertainment of truth in legal proceedings. Health care provider can describe Petitioner's condition without releasing unnecessary details. Social norms validate the distinction between the mere questioning of health care providers and the direct and purposeful collection of the entire lifetime medical records and files. The collection of Petitioner's entire lifetime medical records and files, including her HIV test results and alcohol and drug records, is collecting and stockpiling unnecessary information about Petitioner or misusing information gathered for one purpose in order to serve other purposes or to embarrass or harass Petitioner. During the deposition of Petitioner's physicians, psychiatrists, and therapists, Petitioner is still able to maintain some level of control and instruct them not to answer irrelevant or improper questions. The production of Petitioner's entire lifetime mental health records leaves Petitioner no protection at all.

In the civil discovery context, backed by the government power, the Fourth Amendment protection against unreasonable searches and seizures should have generally been interpreted to require more than facilitating the ascertainment of

truth in legal proceedings to justify the release of Petitioner's entire medical records and files, including her HIV test results and alcohol and drug records.

It is true that "[p]rivileged communications do not become discoverable simply because they are related to issues raised in the litigation." *Southern Calif. Gas Co. v. Public Utilities Comm'n*, 784 P.2d 1373, 1381 (Cal. 1990) (internal quotation omitted).

The government may seek and use information covered by the right to privacy if it can show that its use of the information would advance a legitimate state interest and that its actions are narrowly tailored to meet the legitimate interest. *Thorne v. City of El Segundo*, 726 F.2d 459, 469-71 (9th Cir. 1983), cert. denied, 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 315 (1984). The more sensitive the information, the stronger the government interest must be. Id. at 469.

First, the County failed to identify what method and measure it intended to use to assess injuries. The County's eight subpoenas are disturbing because they not only demand information of Petitioner's past and current injuries for a period of over seven years but also all sensitive and confidential information in general because a patient's complete medical file may include family history and other intimate and sensitive details even they are not really concerning the treatment as health care providers usually collect broad information about a patient's life, e.g. when a patient's first menstruation came. The County's subpoenas seek Petitioner's entire medical files and all privileged communication irrelevant to her

23

pre-incident condition and treatment related to her each and every organ. There is nothing to justify the discovery of the medical history of Petitioner's family members. Such discovery is intrusive, harassing, and unnecessary. By filing a claim asking for recovery from mental and emotional distress caused by Defendants' misconduct, Petitioner did not totally waived all doctor-patient and psychotherapist-patient privileges for records for a period of over seven years. By walking into a court room, Petitioner did not waive her privacy interest in avoiding disclosure of personal matters not directly relevant to injuries caused by Defendants' misconduct, including but not limited to her entire lifetime history.

## II.  A WRIT MAY BE APPROPRIATE TO ADDRESS A DISTRICT COURT'S DENIAL OF CONSTITUTIONAL PROTECTION

Under the All Writs Act, "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The writ of mandamus is a "drastic and extraordinary" remedy "reserved for really extraordinary causes." *Ex parte Fahey*, 332 U.S. 258, 259–60 (1947).

In deciding whether to grant mandamus relief, courts consider five factors: (1) whether the petitioner has other adequate means, such as a direct appeal, to attain the relief he or she desires; (2) whether the petitioner will be damaged or prejudiced in a way not correctable on appeal; (3) whether the district court's order is clearly erroneous as a matter of law; (4) whether the district court's order makes

an "oft-repeated error," or "manifests a persistent disregard of the federal rules"; and (5) whether the district court's order raises new and important problems, or legal issues of first impression. Id. at 841 (quoting *Bauman v. U.S. Dist. Court*, 557 F.2d 650, 654–55 (9th Cir. 1977)). A petitioner need not satisfy all factors. Id. Not every factor is relevant in every case, and the writ may issue even if some of the factors point in different directions. *Christensen v. U.S. Dist. Ct.*, 844 F.2d 694, 697 (9th Cir. 1988); see also *Credit Suisse v. United States District Court for the Central District of California*, 130 F.3d 1342, 1345 (9th Cir. 1997) ("In fact, rarely will a case arise where all these guidelines point in the same direction or where each guideline is even relevant or applicable.").

The applications of *Bauman* factors is by no means precise. There are frequently questions of degree, and conflicting indicators must often be balanced. See *Admiral Ins. Co. v. United States Dist. Court*, 881 F.2d 1486, 1491 (9th Cir. 1989) ("The factors serve as guidelines, a point of departure for our analysis of the propriety of mandamus relief.") (citation omitted).

## A.    Clear Error (The Third *Bauman* Factor)

Analysis of whether to grant a writ usually begins with the third *Bauman* factor of "clear error, because the absence of the third factor is dispositive." *In re Boon Glob. Ltd.*, 923 F.3d 643, 649 (9th Cir. 2019) (quotation omitted). "The clear error standard is significantly deferential and is not met unless the reviewing court is left with a 'definite and firm conviction that a mistake has been committed.'"

25

*Cohen v. U.S. Dist. Ct. for N. Dist. of Cal*., 586 F.3d 703, 708 (9th Cir. 2009)

(quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for*

*S. Cal.*, 508 U.S. 602, 623 (1993)). A ruling usually cannot be clearly erroneous if

there is no Ninth Circuit authority on point, or the question has not been addressed

by any circuit court. See *In re Grice*, 974 F.3d 950, 955 (9th Cir. 2020); *In re Swift*

*Transp. Co. Inc*., 830 F.3d 913, 916-17 (9th Cir. 2016) (per curiam). But a decision

can still be clearly erroneous in the absence of controlling precedent if the "plain

text of the statute prohibits the course taken by the district court." *Cohen*, 586 F.3d

at 710; see also *In re Cavanaugh*, 306 F.3d 726, 731 (9th Cir. 2002) (granting a

writ petition because the district court had gone "off the statutory track").

It is patently insufficient to permit a court to strike the balance in favor of

the compelled wholesale disclosure of Petitioner's lifetime mental health history.

See *City of Carmel-by-the-Sea v. Young* (1970) 2 Cal.3d 259, 268-269 [85

Cal.Rptr. 1, 466 P.2d 225, 37 A.L.R.3d 1313] ("less drastic means" analysis

derived from federal freedom of speech and association cases applied to financial

disclosure by political candidates; no reference to burden of proof; need for

balancing acknowledged); *Valley Bank of Nevada v. Superior Court* (1975) 15

Cal.3d 652, 656-657 [125 Cal.Rptr. 553, 542 P.2d 977] (bank customer has

reasonable expectation of privacy in bank records referring to customer's financial

affairs; right of privacy must be balanced against civil litigant's right to discover

facts); *Doyle v. State Bar* (1982) 32 Cal.3d 12, 20 [184 Cal.Rptr. 720, 648 P.2d

942] (State Bar subpoena for trust account records; clients' privacy interest "is not absolute but must be balanced against the need for disclosure").

## B.     The First and Second *Bauman* Factors

"The first *Bauman* factor highlights the need for mandamus to be used only when no other realistic alternative is (or was) available to a petitioner." *Cole v. U.S. Dist. Ct. for Dist. of Idaho*, 366 F.3d 813, 817 (9th Cir. 2004). The second *Bauman* factor is similar but focuses on whether the harm to the petitioner cannot be corrected on a direct appeal. *San Jose Mercury News, Inc. v. U.S. Dist. Ct*., 187 F.3d 1096, 1099 (9th Cir. 1999). These factors are usually considered together. *Id*.

Here, Petitioner has no realistic alternative to challenge the district court's decision absent mandamus relief. An interlocutory appeal under the collateral order doctrine is unavailable for an order requiring Petitioner to sign a medical records authorization release form or refusing to quash subpoenas. *Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*, 231 F.3d 1215, 1218-19 (9th Cir. 2000) (holding that the order is not subject to interlocutory appeal "because it is not a conclusive, immutable determination of the issue" and because adequacy and typicality are "intimately involved with the merits" (quotation omitted)). Without the availability of an interlocutory appeal, "it is fair to conclude that the plaintiffs do not have an adequate remedy, other than mandamus, from the district court's order." *In re Cavanaugh*, 306 F.3d 726, 740 (9th Cir. 2002) (Wallace, J. concurring).

Even if Petitioner could technically challenge the district court's order on

direct appeal, *Z-Seven Fund*, 231 F.3d at 1219; cf. *N. Am. Acceptance Corp. Sec. Cases v. Arnall, Golden & Gregory*, 593 F.2d 642, 645 (5th Cir. 1979) (holding that a motion to disqualify class counsel "is, in effect, a claim that the class was not adequately represented. And the requirement that the class be adequately represented is reviewable on appeal from a final judgment"), the harm to Petitioner will not be meaningfully corrected on appeal.

Claims of doctor-patient and psychotherapist-patient privilege may, in appropriate situations, constitute valid grounds for the exercise of the court's mandamus powers. In *Admiral Ins. Co. v. United States Dist. Court*, 881 F.2d 1486 (9th Cir. 1989), the court reviewed an order of the district court requiring the production of statements claimed to be protected by the attorney client privilege. Here, Petitioner does not have other satisfactory means of appeal. As in *Admiral*, "mandamus is the only method available to [petitioner] . . . to obtain review, prior to final judgment, of the district court's order compelling production of a statement [petitioner] . . . contends is privileged." *Admiral*, 881 F.2d at 1491.

Unnecessary disclosure of the confidential information and privileged communications will subject Petitioner to damages not correctable on appeal. This Court has held that it is important to protect the attorney client privilege and that an appeal after privileged communications are disclosed is an inadequate remedy. See id. at 1491. If the privileged communications are erroneously forced to be produced, Petitioner "will be injured in a way not correctable on appeal." Id.

28

Petitioner has no plain, speedy, or adequate remedy at law other than this petition. Threatened loss of privacy is recognized as an appropriate issue for writ relief.

### C.    The Fourth and Fifth *Bauman* Factors

"[T]he fourth and fifth *Bauman* factors are often mutually exclusive." *San Jose Mercury News*, 187 F.3d at 1103. The fourth factor looks to whether the case involves an "oft-repeated error," while the fifth factor considers whether the petition raises new and important problems or issues of first impression. *Bauman*, 557 F.2d at 655. Here, the fifth factor weighs in favor of mandamus relief because Petitioner raises issues, sufficiently novel and important, about how courts balance the harm and probative value of involuntary disclosure of sensitive medical records and files.

### CONCLUSION

For the foregoing reasons, this court should issue a peremptory writ of mandamus directing district court to vacate its Mar 23, 2022 order requiring Petitioner to sign a medical records authorization release form and Dec 14, 2021 order denying Petitioner's motion to review, and to enter a new order granting Petitioner's motion to quash subpoenas, or in the alternative, limit the scope of the subpoenas.

Date: Mar 28, 2022          */s/ JANE DOE*
                            JANE DOE
                            *Petitioner in Pro Se*

# DECLARATION

I, JANE DOE, declare and state as follows:

1.  I am the petitioner in this case. I have personal knowledge of the facts stated herein. I would testify if called upon by the court.

2.  I have prepared the foregoing Petition for Writ of Mandamus and know its contents. The facts alleged in this petition are within my own personal knowledge, and I know these facts to be true. All excerpts of records filed concurrently herewith this Petition are true and correct copies of original documents on file with the District Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on Mar 28, 2022, in El Monte, California.

Date: Mar 28, 2022

*/s/ JANE DOE*
*Petitioner in Pro Se*

# STATEMENT OF RELATED CASE(S)

There is no related case within the meaning of Circuit Rule 28-2.6.

Date: Mar 28, 2022

/s/ JANE DOE
JANE DOE

*Petitioner in Pro Se*

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 21(d)(1) because this brief contains 5,927 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word 2010 Times New Roman 14-point font.

Date:  Mar 28, 2022

*/s/ JANE DOE*
 JANE DOE

*Petitioner in Pro Se*

# CERTIFICATE OF SERVICE

I certify that on Mar 28, 2022, a notice of the filing of the foregoing (including a complete copy of the foregoing along with excerpt of records) is filed in underlying proceeding in the United States District Court for the Central District of California in compliance with Federal Rule of Appellate Procedure 21(a)(1), and that all parties to the proceeding will be served with that notice through the district court's CM/ECF system.

Date: Mar 28, 2022

*/s/ JANE DOE*
JANE DOE

*Petitioner in Pro Se*

No. 22-_____

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

JANE DOE,

*Petitioner*,

v.

UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA

*Respondent.*

COUNTY OF ORANGE, ET AL

*Real Parties in Interest*

On Petition for a Writ of Mandamus to the United States
District Court for the Central District of California
No. 8:20-cv-00322-JWH-GJS

_____

## PETITIONER'S EXCERPTS OF RECORD

_____

JANE DOE
11151 Valley Blvd #4886,
El Monte, CA 91734

*Petitioner in Pro Se*

ER 001

INDEX

| Name of Document | Filing Date | USDC Dkt. No. | ER No. |
|---|---|---|---|
| Order (requiring Plaintiff to sign medical records release form) | 3/23/2022 | 120 | 3 |
| Opposition to Ex Parte Application | 3/21/2022 | 119 | 5 |
| Ex Parte Application to Compel Plaintiff to Sign Medical Records Release Form | 3/18/2022 | 118 | 17 |
| Order (denying Plaintiff's Motion for Review) | 12/14/2021 | 114 | 56 |
| Opposition to Plaintiff's Motion for Review By District Judge | 07/23/2021 | 90 | 58 |
| Plaintiff's Motion for Review By District Judge | 07/16/2021 | 87 | 72 |
| Order (denying Plaintiff's Motion to Quash subpoenas) | 07/07/2021 | 83 | 83 |
| Plaintiff's Supplemental Brief to Joint Stipulation | 06/23/2021 | 76 | 85 |
| Joint Stipulation Re: Plaintiff's Motion To Quash Subpoenas | 06/15/2021 | 75 | 105 |
| Defendants' Answer to Fourth Amended Complaint | 12/14/2020 | 57 | 136 |
| Fourth Amended Complaint | 12/01/ 2020 | 56 | 180 |
| Civil Docket for Case No. 8:20-cv-00322-JWH-GJS | | | 208 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:20-cv-00322-JWH-GJS | Date | March 23, 2022 |
|---|---|---|---|
| Title | Jane Doe v. County of Orange et al | | |

| Present: | Hon. Gail J. Standish, United States Magistrate Judge |
|---|---|

| Holidae Crawford | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| None present | None present |

**Proceedings:** Order Re: Ex Parte Application To Continue To Extend Fact Deposition Cut-Off Date And Compel Plaintiff To Sign Authorization To Release Medical Records From LACDMH [118]

Defendants' Ex Parte Application is hereby GRANTED as follows:

1. The Court extends the fact discovery cutoff by 60 days, to June 6, 2022. THERE WILL BE NO FURTHER EXTENSIONS, so the parties are admonished to schedule and take depositions within the time allotted regardless of the status of third-party document discovery. Should third parties not comply with properly served subpoenas, the Court may consider other remedies *upon the timely filing of a fully noticed motion to compel* by Defendants (NOT by way of ex parte application). Any motion to compel must be scheduled to be heard prior to the discovery cutoff.

2. Further, Plaintiff is ordered to sign any required authorization forms for medical institutions that were included in the subpoenas issued prior to the District Judge's December Order affirming this Court's ruling related to medical records (i.e., subpoenas that were included in the related motion practice). Plaintiff is required to sign (and return to Defendants) such authorization(s) on or before Wednesday, March 30, 2022. Should Plaintiff fail to sign such authorization(s), she will be deemed in violation of this Court's order and to have failed to cooperate in

| | 00:00 |
|---|---|
| Initials of Preparer | hc |

**ER 003**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | 8:20-cv-00322-JWH-GJS | Date | March 23, 2022 |
|----------|----------------------|------|----------------|
| Title | Jane Doe v. County of Orange et al | | |

discovery, and will be subject to sanctions, potentially including the presentation of a recommendation or proposed order to the District Judge that includes preclusionary or terminating sanctions.

IT IS SO ORDERED.

cc: District Judge

| | 00:00 |
|---|---|
| Initials of Preparer | hc |

**ER 004**

1   JANE DOE

2   11151 Valley Blvd #4886,

3   El Monte, CA 91731

4

5   Plaintiff in Pro Se

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11  JANE DOE,                           No. 8:20-cv-00322-JWH-GJS

12           Plaintiff,                  **PLAINTIFF'S OPPOSITION TO**
                                         **DEFENDANTS' SECOND EX PARTE**
13           v.                          **APPLICATION TO EXTEND FACT CUT-**
                                         **OFF DATE (Dkt. 118)**
14  COUNTY OF ORANGE, et al

15           Defendants.                 Action Filed: Feb 18, 2020
                                         Trial Date: Not set
16

17

18

19       TO THE COURT AND TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

20       JANE DOE ("Plaintiff") hereby submits her opposition to Defendants' second ex parte

21  application to extend fact cut-off date (Dkt. 118) as follows:

22  **I.    INTRODUCTION**

23       This is Defendant's second ex parte attempt to extend the fact discovery cut-off date. Since

24  Apr 22, 2021, almost one year ago, Defendants have possessed all the information of Plaintiff's

25  health care providers necessary to take depositions of fact witnesses. Doe Decl. ¶ 2. Defendants

26  made no single attempt to depose any of Plaintiff's health care providers.

27       Since Dec 15, 2021, three months ago, Defendants have had every chance to obtain the

28  requested records, including those do not require authorization form. Since Jan 19, 2022, two

                                         1

1   months ago, Defendants already have possessed the LACDMH disclosure authorization form

2   (time stamp on the top of the page). Doe Decl. ¶ 4. Defendants are responsible for the failure to

3   diligently manage the case.

4       Defendants not only subpoena any and all Plaintiff's medical records from January 1, 2016

5   to Present, without limiting to Plaintiff's alleged injuries, regarding Plaintiff's each and every

6   organ. Outrageously enough, Defendants even request Plaintiff's HIV test result, alcohol and drug

7   records that are wholly irrelevant to this litigation. Doe Decl. ¶ 4. Defendants' pursue of

8   Plaintiff's medical records is harassing and illegal. This court's previous ruling goes against

9   California Constitution. This court should not compel Plaintiff to sign any authorization form or

10  compel LACDMH to produce the records without/over Plaintiff's authorization.

11  **II.   ARGUMENT**

12  A.  <u>DEFENDANTS SEEK EX PARTE RELIEF DUE TO THEIR OWN INEXCUSABLE</u>

13      <u>NEGLECT IN BRINGING THEIR INTENDED RELIEF SOONER</u>

14      "Ex parte motions are rarely justified...." *Mission Power Eng'g Co. v. Continental Cas. Co*.,

15  883 F. Supp. 488, 490 (C.D. Cal. 1995). To justify ex parte relief, the moving party must, at a

16  minimum, show: (1) its "cause will be irreparably prejudiced if the underlying motion is heard

17  according to regular noticed motion procedures"; and (2) "the moving party is without fault in

18  creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable

19  neglect." Id. at 492.

20      Here, Defendants first blamed their attorney service, First Legal. However, First Legal is

21  under counsel's full supervision. Secretarial negligence, if it exists, is chargeable to counsel. See

22  *Rodgers v. Watt*, 722 F.2d 456, 460 (9th Cir. 1983) (en banc). By the same token, any negligence

23  from attorney service is chargeable to counsel. Under this circuit's precedent, a client is ordinarily

24  chargeable with his counsel's negligent acts. Clients are "considered to have notice of all facts

25  known to their lawyer-agent." *Ringgold Corp. v. Worrall*, 880 F.2d 1138, 1141-42 (9th Cir.

26  1989). Therefore, Defendants are responsible for negligence of both counsel and attorney service.

27      Since Apr 22, 2021, almost one year ago, Defendants have possessed all the information of

28  Plaintiff's health care providers necessary to take depositions of fact witnesses. Doe Decl. ¶ 2.

2

1  Defendants made no single attempt to depose any of Plaintiff's health care providers. Failing to

2  diligently pursue discovery in the past is sufficient reason to deny further discovery. See *Nidds v.*

3  *Schindler Elevator Corp.*, 113 F.3d 912, 921 (9th Cir. 1997).

4      Since Dec 15, 2021, three months ago, Defendants have had every chance to obtain the

5  requested records, including those <u>do not require authorization form</u>. Defendants offered no

6  reasonable explanation why they still have not received the records that do not require

7  authorization form other than blaming their attorney service. Defendants cannot show they are

8  without fault in creating the "crisis." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp.

9  488, 493 (C.D. Cal. 1995). For this reason, their application should be denied.

10     On Feb 1, 2022, almost 50 days after Dec 15, 2021 which does not show due diligence,

11  Defendants served a new subpoena to Greater El Monte Hospital and the production date was set

12  on Feb 22, 2022. Doe Decl. ¶ 5. Nearly a month after the production date, despite no

13  authorization form was required, Defendants claim they still have not received any records or

14  updates. Defendants cannot claim to have been prejudiced by their own lack of due diligence.

15      Defendants also blamed the LACDMH disclosure authorization form. However, since Jan

16  19, 2022, two months ago, Defendants already have possessed the LACDMH disclosure

17  authorization form (time stamp on the top of the page). Doe Decl. ¶ 4. Defendants are responsible

18  for the failure to diligently manage the case.

19   B.  <u>DEFENDANTS FAILED TO IDENTIFY GOOD CAUSE TO EXTEND THE FACT CUT-</u>

20      <u>OFF DATE A SECOND TIME</u>

21     To establish "good cause," the party seeking to modify the scheduling order must generally

22  show that even with the exercise of due diligence, they cannot meet the scheduling order's

23  timetable. See *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

24     The law makes clear that carelessness is incompatible with a finding of diligence and offers

25  no reason for a grant of relief. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087-88 (9th Cir.

26  2002) (finding that a party moving to modify the pretrial scheduling order to extend discovery

27  was not diligent and thus failed to demonstrate good cause in part because the party did not seek

28  to modify the scheduling order until four months after it was issued); *Matrix Motor Co. v. Toyota*

3

1  *Jidosha Kabushiki Kaisha*, 218 F.R.D. 667, 671 (C.D. Cal. 2003) (denying motion to reopen

2  discovery and modify scheduling order because plaintiff failed to show diligence).

3      Defendants' implication is false that they have not received all of the records subpoenaed

4  through no fault of their own. Defendants did not diligently pursue discovery by deposing

5  Plaintiff's health care providers for Plaintiff's injury information. Nor did Defendants act with

6  due diligence to collect Plaintiff's medical records.

7      This case was filed almost two years ago. Plaintiff has an interest in timely resolution of her

8  claims, and as such, Plaintiff wishes to maintain the present schedule. Defendants cannot make

9  the court and plaintiff work with their schedule while they did not diligently pursue discovery.

10 Defendants' reasons supporting modification are unpersuasive, illogical, and unreasonable.

11 Defendants' proposed amendment would create further unnecessary delay. Therefore,

12 Defendants' request to amend the discovery cut-off date lacks any factual circumstances that

13 would establish good cause to do so.

14     As stated above, Defendants' decision to file their second Ex Parte Application is due to

15 their own neglect in failing to depose Plaintiff's health care providers prior to discovery cut-off

16 and seek a noticed motion within the ample amount of time provided to them. Defendants failed

17 to demonstrate that they acted diligently in managing the case and seeking the desired

18 amendment. Defendants had ample time and opportunities to avoid this crisis but they failed to do

19 so.

20 C.  PLAINTIFF SHOULD NOT BE COMPELLED TO SIGN THE LACDMH

21     AUTHORIZATION DISCLOSURE FORM

22     This court's previous ruling goes against California Constitution. Had the order denying

23 Plaintiff's motion to quash Defendants' subpoenas been appealable Plaintiff would have sought

24 appellate review. Defendants not only subpoena any and all Plaintiff's medical records from

25 January 1, 2016 to Present, without limiting to Plaintiff's alleged injuries, regarding Plaintiff's

26 each and every organ. Outrageously enough, Defendants even request Plaintiff's HIV test result,

27 alcohol and drug records that are wholly irrelevant to this litigation. Doe Decl. ¶ 4. Defendants'

28 pursue of Plaintiff's medical records is harassing and illegal. This court should not compel

1   Plaintiff to sign any authorization form or compel LACDMH to produce the records without/over

2   Plaintiff's authorization.

3   **III.    CONCLUSION**

4       Based on the foregoing, Plaintiff respectfully requests this Court deny Defendants' second

5   ex parte application to extend discovery cut-off date, compel plaintiff to sign authorization form,

6   and/or compel LACDMH to produce the records without/over Plaintiff's authorization.

7       Dated: March 21, 2022

8       Respectfully submitted.

9                                                               */s/ JANE DOE*

10                                                              JANE DOE, Plaintiff in Pro Se

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# DECLARATION OF PLAINTIFF JANE DOE

I, JANE DOE, declare and state:

1.  I am the plaintiff in this case and I have personal knowledge of all facts stated herein. If called as a witness, I could and would competently testify thereto.

2.  On Apr 22, 2021 in response to Defendants' discovery requests I provided all the names and contact information of my health care providers.

3.  On May 26, 2021, over a month after Defendants received the above discovery response, defense counsel subpoenaed my medical records.

4.  Since Jan 19, 2022 Defendants already has possessed the LACDMH disclosure authorization form (time stamp on the top of the page). In this form, Defendants even request my HIV test result, alcohol and drug records that are wholly irrelevant to this litigation. A true and correct copy of the LACDMH disclosure authorization with time stamp is attached hereto as Exhibit 1.

5.  On Feb 1, 2022 Defendants served a new subpoena to Greater El Monte Hospital and the production date was set on Feb 22, 2022. A true and correct copy of the subpoena is attached hereto as Exhibit 2.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 21, 2022

*/s/ JANE DOE*

JANE DOE, Plaintiff in Pro Se

6

**CERTIFICATE OF SERVICE**

I, JANE DOE, declare and say as follows:

I am over the age of eighteen years of age and am a party to this action. I reside in the County of Los Angeles, State of California. My business address is 11151 Valley Blvd #4886, El Monte, CA 91734, in said county and state.

On March 21, 2022 I electronically filed the following document(s):

Plaintiff's Opposition to Defendants' Second Ex Parte Application (Dkt. 118)

with the United States District Court, Central District of California. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Dated: March 21, 2022

*/s/ JANE DOE*

JANE DOE

Plaintiff in Pro Se

PLAINTIFF'S OPPOSITION TO DEFENDANTS' SECOND EX PARTE APPLICATION

ER 011

EXHIBIT 1

ER 012

To: +18778237488    Page: 03 of 13    2022-01-19 15:03:29 PST    LA County Mental Health    From: Central Business Office (DCFS/CBO) 47 of 251

Case 2:20-cv-02291-DOC-KES Document 1213-1 Filed 03/30/22 Page 47 of 251 Page ID #:1641

**\*\*REDACTED\*\***

# LOS ANGELES COUNTY DEPARTMENT OF MENTAL HEALTH
## AUTHORIZATION FOR USE OR DISCLOSURE OF
## PROTECTED HEALTH INFORMATION

**CLIENT**:

Jane Doe/ ████████████████     ████████

Name of Client/Previous Name        Birth Date        Client Number

_____
Name of Legal Representative (If applicable)

_____
Street Address           City, State  ZIP Code

| **AUTHORIZES**: | **USE OR DISCLOSURE OF PROTECTED HEALTH INFORMATION TO**: |
|---|---|
| Los Angeles Department of Mental Health | County of Orange c/o Collins + Collins LLP |
| Name of Agency | Name of Health Care Provider/Other |
| 695 S Vermont Ave., Suite 900 | 750 The City Drive, Suite 400 |
| Street Address | Street Address |
| Los Angeles, CA 90020 | Orange, CA 92868 |
| City, State  ZIP Code | City, State ZIP Code |
| | First Legal, 600 W. Santa Ana Blvd., Santa Ana, CA 92701 |

**INFORMATION TO BE RELEASED**:

[X] Assessment/Evaluation    [X] Psychological Test Results    [X] Diagnosis

[X] Laboratory Results    [X] Medication History/Current Medication    [X] Treatment

[X] Entire Record (Justify): _____

[X] Other (Specify): ____Billing____

**NOTE**: Records may include information related to alcohol or drug use and HIV or AIDS. However, treatment records from drug and alcohol facilities or results of HIV test will not be disclosed unless specifically requested.

Check all that apply:    [X] Alcohol or Drug Records      [X] HIV Test Results

Method of delivery of requested records:

[ ] Mail    [ ] Pickup    [X] Electronic Device (CD, USB)

**PURPOSE OF USE OR DISCLOSURE**: (Check applicable category)   Electronic production to First Legal receiving@firstlegal.com

[ ] Client Request

[X] Other (Specify): ____Litigation____

Will the agency receive any benefits for the use or disclosure of information? [ ] Yes [X] No

I understand that my Protected Health Information used or disclosed pursuant to this Authorization may no longer be protected by federal law and could be further used or disclosed by the recipient without my authorization. I also understand that once my information is used or disclosed, it may not be possible to recall.

**EXPIRATION DATE**: This Authorization is valid until _____ / _____ / _____.

                                   Month    Day    Year

Case 2:20-cv-03222-JWH-KES Document 142-2 Filed 03/30/22 Page 48 of 251 Page ID #:1600

## LOS ANGELES COUNTY DEPARTMENT OF MENTAL HEALTH
## AUTHORIZATION FOR USE OR DISCLOSURE OF
## PROTECTED HEALTH INFORMATION

**YOUR RIGHTS WITH RESPECT TO THIS AUTHORIZATION**:

**Right to Receive a Copy of Authorization** - I understand that if I agree to sign this Authorization, which I am not required to do, I must be provided with a signed copy of the form.

**Right to Revoke Authorization** - I understand that I have the right to revoke this Authorization at any time by notifying LACDMH in writing.  I may use the Revocation of Authorization at the bottom of this form and mail or deliver the revocation to:

| | |
|---|---|
| Contact Person | Agency Name |
| Address | City, State  ZIP Code |

I also understand that a revocation will not affect the ability of LACDMH or any health care provider to use or disclose the health information for reasons related to the prior reliance on this Authorization or otherwise allowed by law.

**Conditions**: I understand that I may refuse to sign this Authorization without affecting my ability to obtain treatment. However, LACDMH may condition the provision of research-related treatment on obtaining an authorization to use or disclose protected health information created for that research-related treatment. (In other words, if this Authorization is related to research that includes treatment, you will not receive that treatment unless this Authorization form is signed.)

I have had an opportunity to review and understand the content of this Authorization form. By signing this Authorization, I am confirming that it accurately reflects my wishes.

✗ _____    ✗ _____

Signature of Client/Legal Representative                   Date

If signed by someone other than the client, state relationship and authority:

✗ _____

---

## REVOCATION OF AUTHORIZATION

_____

Name of Client

_____    _____

Signature of Client/Legal Representative                   Date

If signed by someone other than the client, print name and state relationship and authority.

Printed Name: _____

Relationship and Authority: _____

---

EXHIBIT 2

ER 015

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

## for the
### EASTERN DISTRICT of CALIFORNIA

| | |
|---|---|
| __JANE DOE__ | ) |
| *Plaintiff* | ) |
| *v.* | )     Civil Action No. SACV 20-00322-JWH (GJS) |
| | ) |
| __COUNTY OF ORANGE__ | ) |
| *DEFENDANT* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

TO: **Custodian of Records for: GREATER EL MONTE COMMUNITY HOSPITAL**
    **1701 Santa Anita Ave.**
    **South El Monte, CA 91733**

[X] *Production:* **YOU ARE COMMANDED** to produce at the time, date and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

    **See Attachment to Subpoena in a Civil Case.**

| Place: <br> **First Legal Records** <br> **600 W Santa Ana Blvd, Santa Ana, CA 92701** | **Phone: (877) 591-9979** | Date and Time: <br> **2/22/2022 10:00 AM** |
|---|---|---|

[ ] *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached -- Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: __February 1, 2022__

*CLERK OF COURT*        OR    *REBECCA J. CHMURA, ESQ.*

_____      **/s/ REBECCA J. CHMURA, ESQ.**
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* DEFENDANT COUNTY OF ORANGE, who issues or requests this subpoena, are:

**REBECCA J. CHMURA, ESQ.**
**Collins + Collins LLP**
**750 The City Drive, Suite 400,  Orange, CA 92868**
**(714) 823-4100**

---

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO88B/141654-01

**ER 016**

Michael L. Wroniak (State Bar No. 210347)
Rebecca J. Chmura (State Bar. 319106)
**COLLINS + COLLINS LLP**
**750 The City Drive, Suite 400**
**Orange, CA 92868**
**(714) 823-4100 – FAX (714) 823-4101**
Email: mwroniak@ccllp.law
Email: rchmura@ccllp.law

Attorneys for Defendant
COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE
BALICKI; MARK STICHTER; REYNA RIVERA; DEVONNA FALCONER;
KASSANDRA MAYER; ELIA RODRIGUEZ; and RACHEL ADDINGTON

## UNITED STATES DISTRICT COURT

## DISTRICT OF CALIFORNIA, CENTRAL DISTRICT

| | |
|---|---|
| JANE DOE, | CASE NO. 8:20-cv-00322-JWH (GJS) |
| Plaintiffs, | *[Assigned to Judge John W. Holcomb Courtroom 2]* |
| vs. | **DEFENDANTS' OPPOSED *EX PARTE* APPLICATION TO EXTEND FACT DEPOSITION CUT-OFF DATE AND COMPEL PLAINTIFF TO SIGN AUTHORIZATION TO RELEASE MEDICAL RECORDS FROM LACDMH** |
| COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI; MARK STICHTER; and DOES 1-10, inclusive, | |
| Defendants. | Complaint Filed: 2/18/20 |
| | Trial Date:        None |

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

**PLEASE TAKE NOTICE** that Defendants County of Orange, Don Barnes,
William Baker, Joe Balicki, Mark Stichter, Reyna Rivera, Devonna Falconer,
Kassandra Mayer, Elia Rodriquez, and Rachel Addington (collectively, "Defendants")
hereby apply *ex parte* and seek an order (1) pursuant to F.R.C.P. 16(b)(4) from this
Court extending and modifying the fact deposition cut-off date set by this Courts'

*FILE # 22348*

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

September 30, 2021, Order (Doc. 113) and the ruling on Plaintiff's Motion to Quash the County's subpoenas for her medical records from December 14, 2021 (Doc. 114); and (2) pursuant to F.R.C.P. 37(a) to compel Plaintiff Jane Doe ("Plaintiff") to sign the authorization disclosure required by the Los Angeles County Department of Mental Health ("LACDMH") (or Arcadia Mental Health Center) to produce Plaintiff's medical records (which this Court already ordered that Defendants were entitled to on December 14, 2021) or, in the alternative, a Court order permitting LACDMH to produce the records without/over said authorization.

First, good cause exists to extend this date to take depositions of fact witnesses, including Plaintiff, as by no fault of Defendants, they have not received the medical, billing, and film/radiology records from the providers which were the subject of the Court's December 14, 2021 order. This includes: Arcadia Mental Health/LACDMH (medical, billing, and film/radiology); Greater El Monte Hospital (medical); Heredia Physical Therapy Group (medical, billing, and film/radiology); and Pacific Clinics (billing and film/radiology). There is no time estimate on when Defendants expect to receive these records and Defendants have attempted to get these records diligently and in good faith. Moreover, Plaintiff refuses to sign the authorization form from LACDMH, which will further delay and prevent Defendants from getting the records they are so entitled. Given these delays, Defendants request that the fact deposition cut-off date be extended to allow additional time to receive the records, and then take any necessary depositions of Plaintiff.

Second, Defendants are seeking a court order to compel Plaintiff to sign the required authorization form from LACDMH to release her records. LACDMH was a subpoena included in Plaintiff's motion to quash attempts and denied by this Court on December 14, 2021. (Doc. 114). Thus, Plaintiff's refusal to sign the authorization form is without merit and goes against this Court's previous ruling. Her failure to sign the authorization is causing undue delay and preventing Defendants from receiving the records this Court has already determined they are entitled to.

*FILE # 22348*

**COLLINS + COLLINS** LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4940
Fax (714) 823-4101

1    Defendants attempted to meet and confer with Plaintiff on March 16, 2022,

2    regarding these two issues. (Declaration of Rebecca J. Chmura ["Chmura Decl.,"], ¶ 3;

3    Exhibit "1.") At the very last minute on March 17, 2022, Plaintiff responded to

4    Defendants' meet and confer attempt and stated that she would not agree to sign the

5    LACDMH authorization form and would not stipulate to extend or modify the fact

6    deposition cut-off date. (Chmura Decl., ¶ 4; Exhibit "3.")  Given Plaintiff's refusal to sign

7    the form or stipulate to an extension, this *ex parte* application became necessary. On

8    March 18, 2022, per L.R. 7-19.1, despite their attempts to resolve these issues outside of

9    judicial intervention, Defendants gave notice that they intended to move *ex parte* on these

10   issues and anticipated that Plaintiff will oppose. (Chmura Decl., ¶ 5; Exhibit "4.")

11   This *ex parte* Application is based on this Notice, the attached Memorandum of

12   Points and Authorities, the Declaration of Rebecca J. Chmura, the [Proposed] Order,

13   and exhibits thereto, all pleadings, records, and files in this action, and on such other

14   evidence and argument as may be presented at the time of the hearing on this matter.

16   DATED:      March 18, 2022          COLLINS + COLLINS LLP

19   By:  _____

        REBECCA J. CHMURA
20      MICHAEL L. WRONIAK
        Attorneys for Defendant COUNTY OF
21      ORANGE; DON BARNES; WILLIAM
        BAKER; JOE BALICKI; MARK
22      STICHTER; REYNA RIVERA;
        DEVONNA FALCONER; KASSANDRA
23      MAYER; ELIA RODRIGUEZ; RACHEL
        ADDINGTON

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

*FILE # 22348*

3

NTC & DEFTS' *EX PARTE* APP EXTEND DEPO. CUT-OFF & COMPEL SIGN. LACDMH

EX 019

## MEMORANDUM OF POINTS & AUTHORITIES

## I.    INTRODUCTION

Defendants County of Orange, Don Barnes, William Baker, Joe Balicki, Mark Stichter, Reyna Rivera, Devonna Falconer, Kassandra Mayer, Elia Rodriquez, and Rachel Addington (collectively, "Defendants") hereby respectfully apply *ex parte* to (1) extend and modify the fact deposition cut-off date of April 6, 2022, set by this Court (Docs. 113-114); and (2) compel Plaintiff Jane Doe ("Plaintiff") to sign the authorization disclosure required by the Los Angeles County Department of Mental Health ("LACDMH") (or Arcadia Mental Health Center) to produce Plaintiff's medical records (which this Court already ordered that Defendants were entitled to on December 14, 2021) or, in the alternative, a Court order permitting LACDMH to produce the records without/over said authorization.

Per F.R.C.P. 16(b)(4) good cause exists to extend the fact deposition cut-off date as Defendants, by no fault of their own, and despite their good faith and diligent efforts, have not yet received all medical records pursuant to its subpoenas issued to Arcadia Mental Health/LACDMH (medical, billing, and film/radiology); Greater El Monte Hospital (medical); Heredia Physical Therapy Group (medical, billing, and film/radiology); and Pacific Clinics (billing and film/radiology), which were the subject of Plaintiff Jane Doe's ("Plaintiff") Motion to Quash which was denied on December 14, 2021 (Doc. 114). Defendants do not anticipate that they will receive all the missing records on or before April 6, 2022, the deposition cut-off date, and have no timeframe or indication of when the records will be received. Further, Plaintiff's refusal to sign the authorization form required by LACDMH is causing further unnecessary and unfounded delay in Defendants' ability to get these records.

Thus, should the deposition date not be continued, extended, or modified, Defendant's will suffer prejudice as they will lack the ability to fully investigate and defend itself against Plaintiff's claims; will lack the ability to take a meaningful deposition of Plaintiff's damages and/or medical treatment; and may necessitate that

*FILE # 22348*

750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4940
Fax (714) 823-4101

**COLLINS + COLLINS**

4

NTC & DEFTS' *EX PARTE* APP EXTEND DEPO. CUT-OFF & COMPEL SIGN. LACDMH

1  Defendants spend additional time, money, and effort to later ask to reopen discovery to

2  take another deposition of Plaintiff after they receive the records. Moreover,

3  Defendants' ability to determine expert witnesses, has been impacted and thus,

4  Defendants will be prejudiced should they be required to disclose experts or bring

5  dispositive motions without this critical information. Plaintiff will suffer no prejudice

6  as the Court has already ordered that Defendants are entitled to this information.

7  Moreover, per F.R.C.P. 37(a) there is good cause to compel Plaintiff to sign the

8  authorization form from LACDMH to release her records. LACDMH/Arcadia was a

9  subpoena included in Plaintiff's motion to quash attempts and denied by this Court on

10  December 14, 2021. (Doc. 114). Thus, Plaintiff's refusal to sign the authorization form

11  is without merit and goes against this Court's previous ruling. Her failure to sign the

12  authorization is causing undue delay and preventing Defendants from receiving the

13  records this Court has already determined they are entitled to.

14  In Defendants' attempts to meet and confer with Plaintiff regarding a mutual

15  stipulation to extend this date and sign the authorization form, Plaintiff expressed she

16  refused to do either, without citing any valid reason to oppose. (Declaration of Rebecca

17  J. Chmura ["Chmura Decl.,"], ¶¶ 3-4; Exhibits "1-3.")

18  Defendants' *ex parte* application is proper on the basis that they will suffer prejudice

19  and irreparable harm as the fact and fact deposition cut-off dates would pass if this relief

20  was sought under a noticed motion. Defendants are unable to determine a timetable of

21  when it will receive the medical records pursuant to subpoena and based on Plaintiff's

22  refusal, Defendants need judicial intervention to compel Plaintiff to sign the LACDMH

23  authorization form. For these reasons, Defendants' *ex parte* application is supported by

24  good cause. As such, Defendants respectfully request that this Court grant Defendants'

25  application; (1) extend or modify the fact deposition cut-off date from April 6, 2022, to

26  June 6, 2022, or to a date thereafter amendable to the Court; and (2) compel Plaintiff to

27  sign the LACDMH authorization disclosure form within one (1) week of this Court's

28  ruling, or, in the alternative, a Court order permitting LACDMH to produce the records

FILE # 22348

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone  (714) 823-4100
Fax    (714) 823-4101

5

NTC & DEFTS' *EX PARTE* APP EXTEND DEPO. CUT-OFF & COMPEL SIGN LACDMH

ER 024

1  without/over said authorization.

2  ## II.   RELEVANT PROCEDURAL BACKGROUND

3  On or about July 7, 2021, Plaintiff filed a Motion to Quash County's subpoenas

4  and this motion was denied by Judge Standish. (Docs. 74 and 83.) Shortly thereafter, on

5  or about July 16, 2021, Plaintiff filed a Motion for Review by the District Court Judge

6  John Holcomb of her Motion to Quash County's Subpoenas. (Doc. 87.) Defendant

7  County opposed Plaintiff's motion. (Doc. 90.) Judge John W. Holcomb denied Plaintiff's

8  Motion to Quash on December 14, 2021, and ruled that Defendants are entitled to the

9  discovery of Plaintiff's medical records. (Doc. 114.) On September 30, 2021, Judge Gail

10  Standish ordered that the new fact deposition cut-off date would occur 113 days from the

11  ruling on Plaintiff's Motion to Quash (Doc. 87). (Doc. 113.) Thus, the fact deposition cut-

12  off is scheduled to occur on April 6, 2022.

13  On or about February 9, 2022, Defendants were informed by First Legal that to for

14  LACDMH to disclose the records, it would need either (1) a Court order or (2) a signed

15  authorization form from the patient (i.e., Plaintiff). (Chmura Decl., ¶ 8.) As such, the same

16  day, Defendants sent a copy of the Court's order Doc. 114, in which ordered that

17  Defendants were entitled to the records from LACDMH. (*Id.*) Defendants did not hear

18  back from First Legal until February 28, 2022, that Doc. 114 would not suffice and

19  authorization form from the patient would be required, and received the form only

20  recently. (*Id.*) As soon as reasonably possible, Defendants sent it to Plaintiff for her

21  signature on March 16, 2022. (Chmura Decl., ¶¶ 3, 8; Exhibits "1-2.") On March 17, 2022,

22  Plaintiff stated that she refused to sign the form. (Chmura Decl., ¶ 4; Exhibit "3.")

23  Defendants are still missing records from Arcadia Mental Health/LACDMH (medical,

24  billing, and film/radiology); Greater El Monte Hospital (medical); Heredia Physical

25  Therapy Group (medical, billing, and film/radiology); and Pacific Clinics (billing and

26  film/radiology), by no fault of their own and despite their attempts to get the records.

27  (Chmura Decl., ¶ 10.)

28  Given that the fact deposition cut-off date is approaching, and they still do not

*FILE # 22348*

COLLINS + COLLINS LLP
750 The City Drive, Suite 400
Orange, CA 92868-4940
Phone   (714) 823-4100
Fax   (714) 823-4101

6

**NTC & DEFTS' *EX PARTE* APP EXTEND DEPO. CUT-OFF & COMPEL SIGN. LACDMH**

EX. 02

have all of Plaintiff's medical records, by no fault of their own, Defendants attempted to meet and confer with Plaintiff on March 16, 2022, to inquire if she would stipulate to continuing the fact deposition cut-off date, and if she would sign the authorization form from LACDMH. (Chmura Decl., ¶ 3; Exhibits "1-2.") On March 17, 2022, Plaintiff responded that she would not sign the authorization form and would not stipulate to extend the fact deposition cut-off date. (Chmura Decl., ¶ 4; Exhibit "3.") As such, the instant application became necessary.

## III. GOOD CAUSE SUPPORTS DEFENDANTS' *EX PARTE* APPLICATION

The court is permitted to grant *ex parte* relief upon a showing of "good cause." (*Mission Power Engineering Co. v Continental Cas.*, (C.D. Cal. 1995) 883 F. Supp. 488, 492.) Further, an *ex parte* application is "justified only when there is a threat of immediate or irreparable injury…" (*Horne v. Wells Fargo Bank, N.A.*, (C.D. Cal. 2013) 969 F. Supp. 2d 1203, 1205.) Courts utilize a sliding scale to measure the threat of prejudice. "If the threatened prejudice would not be severe, then it must be apparent that the underlying motion has a high likelihood of success on the merits. If drastic harm is threatened, then it is sufficient to show that there are close issues that justify the court's review before the party suffers the harm." (*Mission Power*, 883 F. Supp. at 492.)

Here, good cause exists to apply *ex parte* as Defendants would suffer drastic harm and prejudice should it be required to wait for the time for a noticed motion under F.R.C.P. 6. Specifically, should Defendants not be granted *ex parte relief*, their deadline to notice fact witness depositions, compel fact discovery (including compelling Plaintiff to sign the LACDMH authorization disclosure form), and complete Plaintiff's deposition regarding her damages and medical treatment, would pass during the time under the current Scheduling Order (Docs. 113-114) and the time needed under F.R.C.P. 6 required for noticed motions. Through no fault of their own, Defendants have not received all of the records subpoenaed to Plaintiff's medical providers. (Chmura Decl., ¶¶ 6-10.) Defendants also did not receive the required authorization form from LACDMH in

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone  (714) 823-4100
Fax    (714) 823-4101

a timely manner to bring a noticed motion, and did not receive a further status update from First Legal that it still had no records from Heredia Physical Therapy until March 16, 2022. (Chmura Decl., ¶¶ 8-9.) Moreover, Defendants were not informed until March 17, 2022, that Plaintiff was refusing to sign the form. (Chmura Decl., ¶ 4.) Thus, there is no time to bring a noticed motion before the fact discovery cut-off, and *ex parte* relief is warranted. Moreover, Defendants will suffer irreparable harm should they be required to proceed in this litigation and take Plaintiff's deposition without the records, or be prevented from receiving the records from LACDMH because of Plaintiff's refusal to sign the authorization, which this Court determined it was entitled to. As such, Defendants' desired *ex parte* relief is supported by good cause.

## IV.  GOOD CAUSE SUPPORTS EXTENDING THE FACT DEPOSITION CUT-OFF DATE

Per F.R.C.P. 16(b)(4), a Scheduling Order "may be modified only for good cause with the judge's consent." To establish good cause, the moving party must demonstrate that it acted diligently in managing the case and seeking the desired amendment. (*Masterpiece Leaded Windows Corp. v. Joslin*, (S.D. Cal. 2009) 2009 WL 1456418, *citing John v. Mammoth Recreations,* (9th Cir. 1992) 975 F. 2d 604.) "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." (*Id.*)

As previously stated, there is good cause to extend fact deposition cut-off date as Defendants will suffer irreparable harm should they be required to proceed in this litigation and take the deposition of Plaintiff without receiving all the medical records, Defendants have acted diligently in attempting to get the records from its subpoenas by regularly following up with the process servers and quickly providing the process servers and providers with the information needed to get the records from the providers. (Chmura Decl., ¶¶ 6-10.) Defendants reopened the request for the subpoenas to receive the records within two days of receiving the ruling of Plaintiff's Motion for Review for

*FILE # 22348*

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4940
Fax (714) 823-4101

8

NTC & DEFTS' *EX PARTE* APP EXTEND DEPO. CUT-OFF & COMPEL SIGN. LACDMH

her Motion to Quash and have continued to follow up regularly with the attorney service, First Legal, handling the subpoenas. (*Id.*) Defendants have also followed the provider's requirements as soon as possible to get the records. (*Id.*) Despite following the provider's requirements and instructions and following up with the attorney service regularly for updates, Defendants still have not received records from Arcadia Mental Health/LACDMH (medical, billing, and film/radiology); Greater El Monte Hospital (medical); Heredia Physical Therapy Group (medical, billing, and film/radiology); and Pacific Clinics (billing and film/radiology), which were the subject of Plaintiff Jane Doe's ("Plaintiff") Motion to Quash which was denied on December 14, 2021 (Doc. 114). (*Id.*)

Additionally, there is delay, for which Defendants are not responsible, in receiving the records from LACDMH, which requires that Plaintiff sign a disclosure authorization to release the records, or a court order. (Chmura Decl., ¶ 8.) Defendants attempted to receive the records by providing a copy of the Court's ruling on Plaintiff's Motion to Quash (Doc. 114) however, LACDMH stated that this was not sufficient and would need a signed authorization form from Plaintiff. (*Id.*) As soon as possible, Defendants asked Plaintiff to sign the form however, she refused claiming only that the subpoena was "unconstitutionally overbroad." (Chmura Decl., ¶ 4.) The requirement of this form has further caused delay in Defendants' receipt of the medical records, which is outside of Defendants' control. (*Id.*) Given the above, it has been out of Defendants' control to prevent a necessary extension of the fact deposition cut-off date.

Moreover, Plaintiff will not suffer any prejudice should the fact deposition cut-off date be extended. Defendants are entitled to take her deposition as to her damages and treatment in this action. In fact, she will also benefit by the extension so as to avoid having to appear for two separate depositions (one now and a second deposition when Defendants eventually receive all the medical records).

///

///

*FILE # 22348*

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

9

NTC & DEFTS' *EX PARTE* APP EXTEND DEPO. CUT-OFF & COMPEL SIGN. LACDMH

ER 025

## V. PLAINTIFF SHOULD BE COMPELLED TO SIGN THE LACDMH AUTHORIZATION DISCLOSURE FORM

Plaintiff should be compelled to sign the form, or a Court Order issued to permit LACDMH to release the records over such authorization, because this Court has already ruled that Defendants are entitled to the records from LACDMH. (Docs. 74, 83, and 114.) The requirement of the patient (i.e., Plaintiff) signing an authorization form is therefore just a procedural requirement imposed by LACDMH. Plaintiff is wrongfully refusing to sign without providing any justification for her refusal, except that the subpoena is "unconstitutionally overbroad," an argument which has already been denied by this Court. (Chmura Decl., ¶ 4.)

Per F.R.C.P. 37(a), Plaintiff should be compelled to sign the LACDMH disclosure authorization form given that Defendants are entitled to these records. Similarly, in *Archie v. Pop Warner Little Scholars, Inc.,* (C.D. Cal. June 13, 2019), 2019 WL 13020441, at *1, the Court held that the plaintiff should be compelled to sign the authorizations for the sought after records because the Court concluded that the documents are relevant and proportional to the needs of the case. (C*iting "See Larson v. Bailiff*, (S.D. Cal. Jul. 17, 2015) 2015 WL 4425660, at *6 wherein the court ordered plaintiff to execute and provide defendants with releases for medical records, noting that '[a] party may be required to produce a document that is in the possession of a nonparty entity if the party has the legal right to obtain the document' (citation omitted)); *Roberson v. Bair*, 242 F.R.D. 130, 136 (D. D.C. 2007) (compelling plaintiff to produce medical records in her possession and to sign authorizations for release to defendant of medical information); *Puckett v. Dyer*, 2007 WL 2462162, at *2 (E.D. Cal. Aug. 29, 2007) (ordering plaintiff to sign authorization for Social Security Administration to release plaintiff's medical records to defense counsel); *Elias v. Napolitano*, 2011 WL 2609862, at *3 (C.D. Cal. June 30, 2011) (ordering plaintiff to execute release of medical records that court found to be relevant to the issues in the case).")

///

*FILE # 22348*

**COLLINS + COLLINS** LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

## VI. CONCLUSION

Given the above, and given that there is good cause under F.R.C.P. 16(b)(4) and 37(a), Defendants respectfully request that this Court grant its *ex parte* application and issue an order (1) extending the fact deposition cut-off date extended from April 6, 2022, to June 6, 2022, or to a date thereafter amendable to the Court; and (2) to sign the authorization disclosure required by LACDMH, within one week of this Court's ruling on this application, or, in the alternative, a Court order permitting LACDMH to produce the records without/over said authorization.

DATED:      March 18, 2022          COLLINS + COLLINS LLP

By: _____
REBECCA J. CHMURA
MICHAEL L. WRONIAK
Attorneys for Defendant COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI; MARK STICHTER; REYNA RIVERA; DEVONNA FALCONER; KASSANDRA MAYER; ELIA RODRIGUEZ; RACHEL ADDINGTON

**COLLINS + COLLINS** LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone   (714) 823-4100
Fax      (714) 823-4101

*FILE # 22348*

11

**NTC & DEFTS' *EX PARTE* APP EXTEND DEPO. CUT-OFF & COMPEL SIGN. LACDMH**

ER 027

**PROOF OF SERVICE**

**(CCP §§ 1013(a) and 2015.5; FRCP 5)**

State of California,       )
                           )  ss.
County of Orange.          )

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 750 The City Drive, Suite 400, Orange, California 92868.

On this date, I served the foregoing document described as **DEFENDANTS' EX PARTE APPLICATION TO EXTEND FACT DEPOSITION CUT-OFF DATE AND COMPEL PLAINTIFF TO SIGN AUTHORIZATION TO RELEASE MEDICAL RECORDS FROM LACDMH** on the interested parties in this action by placing same in a sealed envelope, addressed as follows:

Jane Doe
Courtproceeding9@gmail.com
PLAINTIFF IN PRO SE

☐ **(BY MAIL)** - I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail in Orange, California to be served on the parties as indicated on the attached service list. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Orange, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **(BY CERTIFIED MAIL)** – I caused such envelope(s) with postage thereon fully prepaid via Certified Mail Return Receipt Requested to be placed in the United States Mail in Orange, California.

☐ **BY EXPRESS MAIL OR ANOTHER METHOD OF DELIVERY PROVIDING FOR OVERNIGHT DELIVERY**

☒ **(BY ELECTRONIC FILING AND/OR SERVICE)** – – I served a true copy, with all exhibits, electronically on Plaintiff Jane Doe at the email address on file with the Court which is redacted herein per request of Plaintiff Jane Doe through the Court's CM/ECF Electronic Filing system on:

☐ **FEDERAL EXPRESS** - I caused the envelope to be delivered to an authorized courier or driver authorized to receive documents with delivery fees provided for.

☐ **(BY FACSIMILE)** - I caused the above-described document(s) to be transmitted to the offices of the interested parties at the facsimile number(s) indicated on the attached Service List and the activity report(s) generated by facsimile number (714) 823-4101 indicated all pages were transmitted.

☐ **(BY PERSONAL SERVICE)** - I caused such envelope(s) to be delivered by hand to the office(s) of the addressee(s).

Executed on March 18, 2022 at Orange, California.

☐ **(STATE)** - I declare under penalty of perjury under the laws of the State of California that the above is true and correct

☒ **(FEDERAL)** - I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Jazmin Ruiz
jruiz@ccllp.law

FILE # 22348

12

NTC & DEFTS' *EX PARTE* APP EXTEND DEPO. CUT-OFF & COMPEL SIGN LACDMH    EX. 02

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax    (714) 823-4101

Michael L. Wroniak (State Bar No. 210347)
Rebecca J. Chmura (State Bar. 319106)
**COLLINS + COLLINS LLP**
**750 The City Drive, Suite 400**
**Orange, CA  92868**
**(714) 823-4100 – FAX (714) 823-4101**
**Email:  mwroniak@ccllp.law**
**Email:  rchmura@ccllp.law**

Attorneys for Defendant
COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE
BALICKI; MARK STICHTER; REYNA RIVERA; DEVONNA FALCONER;
KASSANDRA MAYER; ELIA RODRIGUEZ; and RACHEL ADDINGTON

## UNITED STATES DISTRICT COURT

## DISTRICT OF CALIFORNIA, CENTRAL DISTRICT

| | |
|---|---|
| JANE DOE,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI; MARK STICHTER; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. 8:20-cv-00322-JWH (GJS)<br>*[Assigned to Judge John W. Holcomb Courtroom 2]*<br><br>**DECLARATION OF REBECCA J. CHMURA IN SUPPORT OF DEFENDANTS' OPPOSED *EX PARTE* APPLICATION TO EXTEND FACT DEPOSITION CUT-OFF DATE AND COMPEL PLAINTIFF TO SIGN AUTHORIZATION TO RELEASE MEDICAL RECORDS FROM LACDMH**<br><br>Complaint Filed: 2/18/20<br>Trial Date:        None |

## <u>DECLARATION OF REBECCA J. CHMURA</u>

I, Rebecca J. Chmura, declare as follows:

1.    I make this Declaration in support of Defendants County of Orange, Don Barnes, William Baker, Joe Balicki, Mark Stichter, Reyna Rivera, Devonna Falconer, Kassandra Mayer, Elia Rodriquez, and Rachel Addington's (collectively,

FILE # 22348

**COLLINS + COLLINS** LLP
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone   (714) 823-4100
Fax       (714) 823-4101

1

**CHMURA DECL. ISO *EX PARTE* APP TO EXTD DEPO CUT OFF & SIGN LACDMH**          ER 029

1   "Defendants") *ex parte* application to (1) extend and modify the fact deposition

2   cut-off date set by this Courts' September 30, 2021, Order (Doc. 113) and the

3   ruling on Plaintiff's Motion to Quash the County's subpoenas for her medical

4   records from December 14, 2021 (Doc. 114); and (2) compel Plaintiff Jane Doe

5   ("Plaintiff") to sign the authorization disclosure required by the Los Angeles

6   County Department of Mental Health ("LACDMH") (or Arcadia Mental Health

7   Center) to produce Plaintiff's medical records (which this Court already ordered

8   that Defendants were entitled to on December 14, 2021) or, in the alternative, a

9   Court order permitting LACDMH to produce the records without/over said

10   authorization.

11   2.    I am an attorney duly licensed to practice law in the State of California and in all

12         of the United States Federal District Courts in California. I, and this law firm,

13         Collins + Collins, LLP, represent Defendants in the above captioned action. I

14         have personal knowledge as to the matters declared herein.

15   3.    On March 16, 2022, I attempted to meet and confer with Plaintiff Jane Doe

16         ("Plaintiff"), in *pro per*, regarding her agreeance to a mutual stipulation to

17         continue the fact deposition cut-off date and sign the LACDMH authorization

18         disclosure form, that is allegedly required from LACDMH to disclose Plaintiff's

19         records. Attached hereto as Exhibit "1" is a true and correct copy of my March

20         16, 2022, meet and confer email correspondence regarding a stipulate to extend

21         and modify the deposition fact discovery cut-off date and sign the LACDMH

22         form. Attached hereto as Exhibit "6" is a true and correct copy of the LACDMH

23         disclosure authorization form I received from First Legal. Attached hereto as

24         Exhibit "2" is a true and correct copy of the LACDMH disclosure authorization

25         form I received from First Legal, and added the necessary information to facilitate

26         getting Plaintiff's signature, and was attached to Exhibit "1" which I sent to

27         Plaintiff.

28   4.    On March 17, 2022, at 4:56 p.m., Plaintiff responded to my email stating that she

*FILE # 22348*

COLLINS + COLLINS LLP
750 The City Drive, Suite 400
Orange, CA 92868-4940
Phone   (714) 823-4100
Fax     (714) 823-4101

**CHMURA DECL. ISO *EX PARTE* APP TO EXTD DEPO CUT OFF & SIGN LACDMH**

1    would not stipulate to an extension of the face deposition cut-off date claiming
2    that Defendants have caused the delay, without any factual basis for her
3    argument, and that the subpoena to LACDMH was "unconstitutionally broad."
4    Attached hereto as Exhibit "3" is a true and correct copy of March 16, 2022, email
5    I received from Plaintiff in response to Defendants' meet and confer efforts.

6    5.  On March 18, 2022, in response to Plaintiff's unwillingness to stipulate or sign
7        the form, I informed Plaintiff that Defendants intended to move *ex parte* for relief.
8        Attached hereto as Exhibit "4" is a true and correct copy of the March 18, 2022
9        email correspondence between Plaintiff and myself regarding these issues.

10   6.  Defendants have acted diligently in attempting to get the records from its
11       subpoenas by regularly following up with the process servers and quickly
12       providing the process servers and providers with the information needed to get
13       the records from the providers. My office utilizes First Legal, an attorney service,
14       for facilitating subpoenas and getting records from medical providers in the
15       ordinary course of business. Defendants' subpoenas in this matter were being
16       handled by First Legal. While waiting for the ruling on Plaintiff's motion to
17       quash/motion for review, on or about September 1, 2021, Defendants were
18       informed by First Legal, that the subpoenas were being cancelled due inactivity
19       and could be reopened once the motion to quash issue was settled. On December
20       17, 2021, only two days after the receipt of the ruling on Plaintiff's Motion for
21       Review of her Motion to Quash (Doc. 114) (which is dated December 14, 2021,
22       but was served to the parties, on December 15, 2021), Defendants instructed First
23       Legal to reopen the subpoenas and attempt to get the records from all providers
24       at issue.

25   7.  On January 11, 2021, my office followed up and received an update from First
26       Legal regarding the subpoenas in this matter. First Legal informed me that there
27       were no records received from Arcadia Mental Health/LACDMH, Heredia
28       Physical Therapy, or Pacific Clinics. As to Greater El Monte Hospital, First Legal

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone  (714) 823-4100
Fax    (714) 823-4101

FILE # 22348

3

CHMURA DECL. ISO *EX PARTE* APP TO EXTD DEPO CUT OFF & SIGN LACDMH

informed my office for the first time that the request had been canceled and would need to be resubmitted. On January 12, 2022, my office instructed First Legal to reopen the subpoena to Greater El Monte Hospital. It was not until on or about February 1, 2022, that First Legal told our office that to resubmit the request to Greater El Monte Hospital, we would need to reissue a new subpoena. As such, on or about February 1, 2022, I drafted and submitted an identical subpoena to Greater El Monte Hospital pursuant to First Legal's instruction. It was served to Plaintiff on February 1, 2022. My office has not received any records or update as to the status of the medical records from Greater El Monte Hospital since this date. Attached hereto as Exhibit "5" is a true and correct copy of the February 1, 2022 email correspondence between Plaintiff and myself regarding the reissued subpoena to Greater El Monte Hospital.

8. Additionally, there is additional delay, for which Defendants are not responsible, in receiving the records from Arcadia Mental Health/LACDMH, which requires that Plaintiff sign a disclosure authorization to release the records, or a court order. I first became aware that this form or a Court order was required on or about February 9, 2022, when First Legal informed our office that LACDMH would need either a signed disclosure authorization or a Court order to release the records. The same day we forwarded First Legal a copy of the Court's Order regarding this subpoena (Doc. 114), assuming that it would suffice because the Court had ordered that Defendants were entitled to the records per the Court's December 14, 2021 Order, and the records would be released without further delay. We did not hear back from LACDMH until February 28, 2022, in which case they stated that the order we provided was not sufficient. I received the disclosure authorization form related to this provider recently. Defendants forwarded the form and asked Plaintiff to sign as soon as reasonably possible, which Plaintiff has indicated that she refuses to sign. Nevertheless, the requirement of this form has further caused delay in Defendants' receipt of the medical records, which is outside of Defendants' control.

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

9.  On March 16, 2022, First Legal informed my office that it was still following up with Heredia Physical Therapy Group as to the status of the records with the provider. Despite our attempts to receive a status update, we have not received any information on the timeframe on when we expect to receive the missing records from Arcadia Mental Health/LACDMH; Greater El Monte Hospital; Heredia Physical Therapy Group; and Pacific Clinics.

10. As of March 18, 2022, Defendants still have not received records from Arcadia Mental Health/LACDMH (medical, billing, and film/radiology); Greater El Monte Hospital (medical); Heredia Physical Therapy Group (medical, billing, and film/radiology); and Pacific Clinics (billing and film/radiology), which were the subject of Plaintiff Jane Doe's ("Plaintiff") Motion to Quash which was denied on December 14, 2021 (Doc. 114). I am aware of this information as I have personally reviewed Defendants' file in this action; personally reviewed the records we have received pursuant to Defendants' subpoenas; and have kept track of and been on top of following the subpoenas and records received.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. This Declaration was executed on March 18, 2022, at Orange, California.

By: _____

REBECCA J. CHMURA

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone  (714) 823-4100
Fax     (714) 823-4101

FILE # 22348

5

CHMURA DECL. ISO *EX PARTE* APP TO EXTD DEPO CUT OFF & SIGN LACDMH

**PROOF OF SERVICE**

**(CCP §§ 1013(a) and 2015.5; FRCP 5)**

State of California,  )
                      )  ss.
County of Orange.     )

     I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 750 The City Drive, Suite 400, Orange, California 92868.

     On this date, I served the foregoing document described as **DECLARATION OF REBECCA J. CHMURA IN SUPPORT OF DEFENDANTS' OPPOSED EX PARTE APPLICATION TO EXTEND FACT DEPOSITION CUT-OFF DATE AND COMPEL PLAINTIFF TO SIGN AUTHORIZATION TO RELEASE MEDICAL RECORDS FROM LACDMH** on the interested parties in this action by placing same in a sealed envelope, addressed as follows:

Jane Doe
Courtproceeding9@gmail.com
PLAINTIFF IN PRO SE

☐  **(BY MAIL)** - I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail in Orange, California to be served on the parties as indicated on the attached service list. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Orange, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐  **(BY CERTIFIED MAIL)** – I caused such envelope(s) with postage thereon fully prepaid via Certified Mail Return Receipt Requested to be placed in the United States Mail in Orange, California.

☐  **BY EXPRESS MAIL OR ANOTHER METHOD OF DELIVERY PROVIDING FOR OVERNIGHT DELIVERY**

☒  **(BY ELECTRONIC FILING AND/OR SERVICE)** – – I served a true copy, with all exhibits, electronically on Plaintiff Jane Doe at the email address on file with the Court which is redacted herein per request of Plaintiff Jane Doe through the Court's CM/ECF Electronic Filing system on:

☐  **FEDERAL EXPRESS** - I caused the envelope to be delivered to an authorized courier or driver authorized to receive documents with delivery fees provided for.

☐  **(BY FACSIMILE)** - I caused the above-described document(s) to be transmitted to the offices of the interested parties at the facsimile number(s) indicated on the attached Service List and the activity report(s) generated by facsimile number (714) 823-4101 indicated all pages were transmitted.

☐  **(BY PERSONAL SERVICE)** - I caused such envelope(s) to be delivered by hand to the office(s) of the addressee(s).

Executed on March 18, 2022 at Orange, California.

☐  **(STATE)** - I declare under penalty of perjury under the laws of the State of California that the above is true and correct

☒  **(FEDERAL)** - I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

_Jazmin Ruiz_

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4940
Fax (714) 823-4101

FILE # 22348

6

**CHMURA DECL. ISO *EX PARTE* APP TO EXTD DEPO CUT OFF & SIGN LACDMH**

# EXHIBIT 1

ER 035

| | |
|---|---|
| **From:** | Rebecca J. Chmura |
| **To:** | Jane Doe |
| **Cc:** | Michael L. Wroniak; Jazmin Ruiz |
| **Subject:** | 22348: Jane Doe v. County of Orange - Meet and Confer re Form and Deposition |
| **Date:** | Wednesday, March 16, 2022 3:51:00 PM |
| **Attachments:** | LACDMH Disclosure Authorization.pdf |

Good Afternoon Ms. Doe,

I am writing to you to meet and confer regarding two separate issues:

1. **LACDMH Authorization Form**

Our process server advised us that the Los Angeles County Department of Mental Health could not release records without the attached authorization form signed by the patient. Given that on December 14, 2021, the Court denied your motion to quash this subpoena and determined that defendants are entitled to these records, please sign and return the attached form so we can facilitate the receipt of these records.

2. **April 6, 2022 Deposition Deadline**

Additionally, we still intend to take your deposition as it pertains to your damages and medical treatment. By no fault of defendants, we still have not yet received all records from four providers (including LACDMH) pursuant to our subpoenas which were upheld on December 14, 2021. We do not anticipate that we will receive these records prior to April 6, 2022, the present deposition cut-off date. Please let us know if you will stipulate to an extension (approximately 60 days) of the deposition cut-off from April 6, 2022 to June 6, 2022. Defendants will suffer prejudice should it not have all records prior to the deposition and also necessitate additional depositions of you once defendants receive those records.

Please (1) sign and return the second page of the attached form and (2) let us know if you will stipulate to an extension of the deposition cut-off date to June 6, 2022 no later than, **tomorrow, March 17, 2022 at 5:00 p.m**. If not, defendants will have no choice but to seek *ex parte* relief with the Court. We appreciate your cooperation and professional courtesy on these issues. Please contact me by email or phone if you wish to discuss further.

Thank you,

**Rebecca J. Chmura**
Attorney at Law

**T**: 714-823-4100 | **C**: 626-840-9484
**F**: 714-823-4101
750 The City Drive, Suite 400
Orange, CA 92868
rchmura@ccllp.law

# COLLINS + COLLINS LLP

www.ccllp.law
Pasadena 626-243-1100 - Orange 714-823-4100 - San Diego 760-274-2110
Northern California 510-844-5100 - Inland Empire 909-581-6100

PLEASE NOTE: The information contained in this e-mail transmission is intended to be sent only to the stated recipient of the e-mail. If the reader of this message is not the intended recipient or the intended recipient's agent, you are hereby notified that we do

not intend to waive any privilege that might ordinarily attach to this communication and that any dissemination, distribution, or copying of the information contained in this e-mail is therefore prohibited. You are further asked to notify us of any such error in transmission as soon as possible at the telephone number shown below and to delete the e-mail. Thank you for your cooperation.

ER 037

**EXHIBIT 2**

ER 038

Case 8:20-cv-00322-JWH-GJS  Document 442-21  Filed 06/30/22  Page 73 of 251  Page ID #:1677

**REDACTED**

# LOS ANGELES COUNTY DEPARTMENT OF MENTAL HEALTH
## AUTHORIZATION FOR USE OR DISCLOSURE OF
## PROTECTED HEALTH INFORMATION

**CLIENT**:

Jane Doe/ ▮▮▮▮▮▮▮▮▮▮    ▮▮▮▮▮▮▮▮
_____        _____    _____
Name of Client/Previous Name        Birth Date        Client Number

_____
Name of Legal Representative (If applicable)

_____        _____
Street Address        City, State  ZIP Code

| **AUTHORIZES**: | **USE OR DISCLOSURE OF PROTECTED HEALTH INFORMATION TO**: |
|---|---|
| Los Angeles Department of Mental Health | County of Orange c/o Collins + Collins LLP |
| Name of Agency | Name of Health Care Provider/Other |
| 695 S Vermont Ave., Suite 900 | 750 The City Drive, Suite 400 |
| Street Address | Street Address |
| Los Angeles, CA 90020 | Orange, CA 92868 |
| City, State  ZIP Code | City, State ZIP Code |
|  | First Legal, 600 W. Santa Ana Blvd., Santa Ana, CA 92701 |

**INFORMATION TO BE RELEASED**:

- [X] Assessment/Evaluation
- [X] Psychological Test Results
- [X] Diagnosis
- [X] Laboratory Results
- [X] Medication History/Current Medication
- [X] Treatment
- [X] Entire Record (Justify): _____
- [X] Other (Specify): ___Billing_____

**NOTE**: Records may include information related to alcohol or drug use and HIV or AIDS. However, treatment records from drug and alcohol facilities or results of HIV test will not be disclosed unless specifically requested.

<u>Check all that apply</u>:    [X] Alcohol or Drug Records        [X] HIV Test Results

<u>Method of delivery of requested records</u>:
[ ] Mail    [ ] Pickup    [X] Electronic Device (CD, USB)

**PURPOSE OF USE OR DISCLOSURE**: (Check applicable category)    Electronic production to First Legal receiving@firstlegal.com

- [ ] Client Request
- [X] Other (Specify): ___Litigation___

Will the agency receive any benefits for the use or disclosure of information? [ ] Yes [X] No

I understand that my Protected Health Information used or disclosed pursuant to this Authorization may no longer be protected by federal law and could be further used or disclosed by the recipient without my authorization. I also understand that once my information is used or disclosed, it may not be possible to recall.

**EXPIRATION DATE**: This Authorization is valid until _____ / _____ / _____.
                                                    Month    Day    Year

## LOS ANGELES COUNTY DEPARTMENT OF MENTAL HEALTH
## AUTHORIZATION FOR USE OR DISCLOSURE OF
## PROTECTED HEALTH INFORMATION

**YOUR RIGHTS WITH RESPECT TO THIS AUTHORIZATION**:

**Right to Receive a Copy of Authorization** - I understand that if I agree to sign this Authorization, which I am not required to do, I must be provided with a signed copy of the form.

**Right to Revoke Authorization** - I understand that I have the right to revoke this Authorization at any time by notifying LACDMH in writing. I may use the Revocation of Authorization at the bottom of this form and mail or deliver the revocation to:

_____　　_____
Contact Person　　　　　　　　　　　　Agency Name

_____　　_____
Address　　　　　　　　　　　　　　　City, State ZIP Code

I also understand that a revocation will not affect the ability of LACDMH or any health care provider to use or disclose the health information for reasons related to the prior reliance on this Authorization or otherwise allowed by law.

**Conditions**: I understand that I may refuse to sign this Authorization without affecting my ability to obtain treatment. However, LACDMH may condition the provision of research-related treatment on obtaining an authorization to use or disclose protected health information created for that research-related treatment. (In other words, if this Authorization is related to research that includes treatment, you will not receive that treatment unless this Authorization form is signed.)

I have had an opportunity to review and understand the content of this Authorization form. By signing this Authorization, I am confirming that it accurately reflects my wishes.

**✗**_____　　　　**✗**_____
Signature of Client/Legal Representative　　　　　　Date

If signed by someone other than the client, state relationship and authority:
**✗**_____

---

## REVOCATION OF AUTHORIZATION

_____
Name of Client

_____　　　　_____
Signature of Client/Legal Representative　　　　Date

If signed by someone other than the client, print name and state relationship and authority.

Printed Name: _____

Relationship and Authority: _____

# EXHIBIT 3

ER 041

| From: | Jane Doe |
|---|---|
| To: | Rebecca J. Chmura |
| Cc: | Michael L. Wroniak; Jazmin Ruiz |
| Subject: | Re: 22348: Jane Doe v. County of Orange - Meet and Confer re Form and Deposition |
| Date: | Thursday, March 17, 2022 4:56:26 PM |

Dear Ms Chmura,

Below please find Plaintiff's response to your meet and confer:

1. **LACDMH Authorization Form**

Since your subpoenas are unconstitutionally overbroad Plaintiff will not sign any authorization form.

2. **April 6, 2022 Deposition Deadline**

It is defendants' fault by not making any attempts to receive the records at issue since December 14, 2021. Defendants cannot claim to have been prejudiced by their lack of due diligence. Plaintiff will not stipulate any extension of discovery.

Defendants are not entitled to ex parte relief.

Regards,

Doe


On Wed, Mar 16, 2022 at 3:51 PM Rebecca J. Chmura <rchmura@ccmslaw.com> wrote:

Good Afternoon Ms. Doe,


I am writing to you to meet and confer regarding two separate issues:


1. **LACDMH Authorization Form**


Our process server advised us that the Los Angeles County Department of Mental Health could not release records without the attached authorization form signed by the patient. Given that on December 14, 2021, the Court denied your motion to quash this subpoena and determined that defendants are entitled to these records, please sign and return the attached form so we can facilitate the receipt of these records.


2. **April 6, 2022 Deposition Deadline**


Additionally, we still intend to take your deposition as it pertains to your damages and

medical treatment. By no fault of defendants, we still have not yet received all records from four providers (including LACDMH) pursuant to our subpoenas which were upheld on December 14, 2021. We do not anticipate that we will receive these records prior to April 6, 2022, the present deposition cut-off date. Please let us know if you will stipulate to an extension (approximately 60 days) of the deposition cut-off from April 6, 2022 to June 6, 2022. Defendants will suffer prejudice should it not have all records prior to the deposition and also necessitate additional depositions of you once defendants receive those records.

Please (1) sign and return the second page of the attached form and (2) let us know if you will stipulate to an extension of the deposition cut-off date to June 6, 2022 no later than, **tomorrow, March 17, 2022 at 5:00 p.m.** If not, defendants will have no choice but to seek *ex parte* relief with the Court. We appreciate your cooperation and professional courtesy on these issues. Please contact me by email or phone if you wish to discuss further.

Thank you,

**Rebecca J. Chmura**
Attorney at Law

**T**: 714-823-4100 | **C**: 626-840-9484
**F**: 714-823-4101
750 The City Drive, Suite 400
Orange, CA 92868
rchmura@ccllp.law

# COLLINS + COLLINS LLP

www.ccllp.law
Pasadena 626-243-1100 - Orange 714-823-4100 - San Diego 760-274-2110
Northern California 510-844-5100 - Inland Empire 909-581-6100

PLEASE NOTE: The information contained in this e-mail transmission is intended to be sent only to the stated recipient of the e-mail. If the reader of this message is not the intended recipient or the intended recipient's agent, you are hereby notified that we do not intend to waive any privilege that might ordinarily attach to this communication and that any dissemination, distribution, or copying of the information contained in this e-mail is therefore prohibited. You are further asked to notify us of any such error in transmission as soon as possible at the telephone number shown below and to delete the e-mail. Thank you for your cooperation.

# EXHIBIT 4

ER 044

| From: | Jane Doe |
|---|---|
| To: | Rebecca J. Chmura |
| Cc: | Michael L. Wroniak; Jazmin Ruiz |
| Subject: | Re: 22348: Jane Doe v. County of Orange - Meet and Confer re Form and Deposition |
| Date: | Friday, March 18, 2022 10:22:44 AM |

Why were you not informed until recently that LACDMH required a patient authorization form?

On Fri, Mar 18, 2022 at 10:14 AM Rebecca J. Chmura <rchmura@ccmslaw.com> wrote:

My apologies, the orders for the records were reinstated on December 17, 2022 (two days after the December 14, 2021 Order), which was served to the parties on December 15, 2021.

**Rebecca J. Chmura**
Attorney at Law

**T**: 714-823-4100 | **C**: 626-840-9484
**F**: 714-823-4101
750 The City Drive, Suite 400
Orange, CA 92868
rchmura@ccllp.law

**COLLINS + COLLINS** LLP

www.ccllp.law
Pasadena 626-243-1100 - Orange 714-823-4100 - San Diego 760-274-2110
Northern California 510-844-5100 - Inland Empire 909-581-6100

PLEASE NOTE: The information contained in this e-mail transmission is intended to be sent only to the stated recipient of the e-mail. If the reader of this message is not the intended recipient or the intended recipient's agent, you are hereby notified that we do not intend to waive any privilege that might ordinarily attach to this communication and that any dissemination, distribution, or copying of the information contained in this e-mail is therefore prohibited. You are further asked to notify us of any such error in transmission as soon as possible at the telephone number shown below and to delete the e-mail. Thank you for your cooperation.

**From:** Rebecca J. Chmura
**Sent:** Friday, March 18, 2022 10:07 AM
**To:** Jane Doe <courtproceeding9@gmail.com>
**Cc:** Michael L. Wroniak <mwroniak@ccmslaw.com>; Jazmin Ruiz <JRuiz@ccmslaw.com>
**Subject:** RE: 22348: Jane Doe v. County of Orange - Meet and Confer re Form and Deposition

Ms. Doe,

You are incorrect. We reinstated the orders for the records on December 15, 2021, the date after the denial of your motions to quash/motion or review. We were not informed until recently that LACDMH required a patient authorization form to release those records. As such, at no fault of Defendants, the providers have failed to produce the records, you now are

**ER 045**

refusing to sign the authorization form, and Defendants are entitled to *ex parte* relief as the date for fact discovery and fact depositions would pass with a noticed motion.

**Rebecca J. Chmura**
Attorney at Law

**T**: 714-823-4100 | **C**: 626-840-9484
**F**: 714-823-4101
750 The City Drive, Suite 400
Orange, CA 92868
rchmura@ccllp.law

# COLLINS + COLLINS LLP

www.ccllp.law
Pasadena 626-243-1100 - Orange 714-823-4100 - San Diego 760-274-2110
Northern California 510-844-5100 - Inland Empire 909-581-6100

PLEASE NOTE: The information contained in this e-mail transmission is intended to be sent only to the stated recipient of the e-mail. If the reader of this message is not the intended recipient or the intended recipient's agent, you are hereby notified that we do not intend to waive any privilege that might ordinarily attach to this communication and that any dissemination, distribution, or copying of the information contained in this e-mail is therefore prohibited. You are further asked to notify us of any such error in transmission as soon as possible at the telephone number shown below and to delete the e-mail. Thank you for your cooperation.

---

**From:** Jane Doe <courtproceeding9@gmail.com>
**Sent:** Friday, March 18, 2022 10:01 AM
**To:** Rebecca J. Chmura <rchmura@ccmslaw.com>
**Cc:** Michael L. Wroniak <mwroniak@ccmslaw.com>; Jazmin Ruiz <JRuiz@ccmslaw.com>
**Subject:** Re: 22348: Jane Doe v. County of Orange - Meet and Confer re Form and Deposition

You are not entitled to ex parte relief because you waited three months since December 14, 2021 to bring up the issues.

On Fri, Mar 18, 2022 at 8:44 AM Rebecca J. Chmura <rchmura@ccmslaw.com> wrote:

> Ms. Doe,
>
> This Court has already denied your motion to quash the subpoenas for medical records to five providers, including LAC/Los Angeles County Department of Mental Health, on December 14, 2021 and ordered that Defendants are entitled to these records. Moreover, your refusal to return the form supports that, at no fault of their own, Defendants have been prevented from receiving all medical records before the deposition cut-off date and thus, an extension or modification of this date is necessary.
>
> In light of the below, **please take notice** that Defendants will be moving *ex parte* today for

an Order (1) to extend and modify the fact deposition cut-off date; and (2) Compelling you to sign the form required by LAC/Los Angeles County Department of Mental Health for the disclosure of your records, or, in the alternative, a Court order permitting production over such authorization.

Based on your response below, we anticipate you will oppose.

Thank you,

**Rebecca J. Chmura**
Attorney at Law

**T**: 714-823-4100 | **C**: 626-840-9484
**F**: 714-823-4101
750 The City Drive, Suite 400
Orange, CA 92868
rchmura@ccllp.law

# COLLINS + COLLINS LLP

www.ccllp.law
Pasadena 626-243-1100 - Orange 714-823-4100 - San Diego 760-274-2110
Northern California 510-844-5100 - Inland Empire 909-581-6100

PLEASE NOTE: The information contained in this e-mail transmission is intended to be sent only to the stated recipient of the e-mail. If the reader of this message is not the intended recipient or the intended recipient's agent, you are hereby notified that we do not intend to waive any privilege that might ordinarily attach to this communication and that any dissemination, distribution, or copying of the information contained in this e-mail is therefore prohibited. You are further asked to notify us of any such error in transmission as soon as possible at the telephone number shown below and to delete the e-mail. Thank you for your cooperation.

**From:** Jane Doe <courtproceeding9@gmail.com>
**Sent:** Thursday, March 17, 2022 4:56 PM
**To:** Rebecca J. Chmura <rchmura@ccmslaw.com>
**Cc:** Michael L. Wroniak <mwroniak@ccmslaw.com>; Jazmin Ruiz <JRuiz@ccmslaw.com>
**Subject:** Re: 22348: Jane Doe v. County of Orange - Meet and Confer re Form and Deposition

Dear Ms Chmura,

Below please find Plaintiff's response to your meet and confer:

1. **LACDMH Authorization Form**

Since your subpoenas are unconstitutionally overbroad Plaintiff will not sign any authorization form.

2. **April 6, 2022 Deposition Deadline**

It is defendants' fault by not making any attempts to receive the records at issue since December 14, 2021. Defendants cannot claim to have been prejudiced by their lack of due diligence. Plaintiff will not stipulate any extension of discovery.

Defendants are not entitled to ex parte relief.

Regards,

Doe

On Wed, Mar 16, 2022 at 3:51 PM Rebecca J. Chmura <rchmura@ccmslaw.com> wrote:

Good Afternoon Ms. Doe,

I am writing to you to meet and confer regarding two separate issues:

1. **LACDMH Authorization Form**

Our process server advised us that the Los Angeles County Department of Mental Health could not release records without the attached authorization form signed by the patient. Given that on December 14, 2021, the Court denied your motion to quash this subpoena and determined that defendants are entitled to these records, please sign and return the attached form so we can facilitate the receipt of these records.

2. **April 6, 2022 Deposition Deadline**

Additionally, we still intend to take your deposition as it pertains to your damages and medical treatment. By no fault of defendants, we still have not yet received all records from four providers (including LACDMH) pursuant to our subpoenas which were upheld on December 14, 2021. We do not anticipate that we will receive these records prior to April 6, 2022, the present deposition cut-off date. Please let us know if you will stipulate to an extension (approximately 60 days) of the deposition cut-off from April 6, 2022 to June 6, 2022. Defendants will suffer prejudice should it not have all records prior to the deposition and also necessitate additional depositions of you once defendants receive those records.

Please (1) sign and return the second page of the attached form and (2) let us know if you will stipulate to an extension of the deposition cut-off date to June 6, 2022 no later than, **tomorrow, March 17, 2022 at 5:00 p.m**. If not, defendants will have no choice but to seek *ex parte* relief with the Court. We appreciate your cooperation and professional courtesy on these issues. Please contact me by email or phone if you wish to discuss further.


Thank you,


**Rebecca J. Chmura**
Attorney at Law

**T**: 714-823-4100 | **C**: 626-840-9484
**F**: 714-823-4101
750 The City Drive, Suite 400
Orange, CA 92868
rchmura@ccllp.law


# COLLINS + COLLINS LLP

www.ccllp.law
Pasadena 626-243-1100 - Orange 714-823-4100 - San Diego 760-274-2110
Northern California 510-844-5100 - Inland Empire 909-581-6100

PLEASE NOTE: The information contained in this e-mail transmission is intended to be sent only to the stated recipient of the e-mail. If the reader of this message is not the intended recipient or the intended recipient's agent, you are hereby notified that we do not intend to waive any privilege that might ordinarily attach to this communication and that any dissemination, distribution, or copying of the information contained in this e-mail is therefore prohibited. You are further asked to notify us of any such error in transmission as soon as possible at the telephone number shown below and to delete the e-mail. Thank you for your cooperation.

# EXHIBIT 5

ER 050

| From: | Rebecca J. Chmura |
|---|---|
| To: | Jane Doe |
| Cc: | Michael L. Wroniak; Jazmin Ruiz |
| Subject: | 22348: RE: 141654.COURTESY COPY OF SDT; CASE: JANE DOE VS. COUNTY OF ORANGE |
| Date: | Wednesday, February 2, 2022 9:53:00 AM |

Good Morning Ms. Doe,

You are correct that the subpoena is identical to one that we served previously to this provider. Given the long wait on a ruling to your Motion to Quash related to this subpoena, the process server canceled our subpoena order and asked that we reissue a new identical subpoena so that we may receive the records. Please let me know if you have any other questions.

Thank you,

**Rebecca J. Chmura**
Attorney at Law

**T**: 714-823-4100 | **C**: 626-840-9484
**F**: 714-823-4101
750 The City Drive, Suite 400
Orange, CA 92868
rchmura@ccllp.law

**COLLINS + COLLINS** LLP

www.ccllp.law
Pasadena 626-243-1100 - Orange 714-823-4100 - San Diego 760-274-2110
Northern California 510-844-5100 - Inland Empire 909-581-6100

PLEASE NOTE: The information contained in this e-mail transmission is intended to be sent only to the stated recipient of the e-mail. If the reader of this message is not the intended recipient or the intended recipient's agent, you are hereby notified that we do not intend to waive any privilege that might ordinarily attach to this communication and that any dissemination, distribution, or copying of the information contained in this e-mail is therefore prohibited. You are further asked to notify us of any such error in transmission as soon as possible at the telephone number shown below and to delete the e-mail. Thank you for your cooperation.

**From:** Jane Doe <courtproceeding9@gmail.com>
**Sent:** Wednesday, February 2, 2022 9:48 AM
**To:** Rebecca J. Chmura <rchmura@ccmslaw.com>
**Subject:** 141654.COURTESY COPY OF SDT; CASE: JANE DOE VS. COUNTY OF ORANGE

Ms Chmura,

Could you let me know what is this about? You already issued the subpoena before why did you issue it again?

Thanks.

---------- Forwarded message ---------
From: **Suporn Sokolowski** <ssokolowski@firstlegal.com>
Date: Tue, Feb 1, 2022 at 10:09 PM
Subject: 141654.COURTESY COPY OF SDT; CASE: JANE DOE VS. COUNTY OF ORANGE
To: Courtproceeding9@gmail.com <Courtproceeding9@gmail.com>

Cc: Denise Cruz <dcruz@firstlegal.com>, Mani Phommasaysy <mphommasaysy@firstlegal.com>, Naomi O'Brien <nobrien@firstlegal.com>, Susan Elias <selias@firstlegal.com>, OE Prep <oeprep@firstlegal.com>, FRR Orders <frrorders@firstlegal.com>

Hello,

RE:

CASE: JANE DOE VS. COUNTY OF ORANGE

Please accept via electronic service of the attached Notice of Issuance of Subpoena for Production of Documents, Information, or Objects pertaining to the above matter.

(Reference work order number: 141654.01)

Sincerely,



**Suporn Sokolowski** | Order Entry Specialist
ssokolowski@firstlegal.com | Direct: 213.254.4126
**First Legal | Records**
Office: 877.591.9979 ext:1809 | Fax: 213.802.0810
https://www.firstlegal.com

**File Thru Trial**TM
Private Investigator Licenses: CA PI: 24171 AZ PI: 1551710 NV PI-PS: 1452

This email (including any attachments) contains confidential information intended solely for the use of named addressee, and is protected by law. If you are not the intended recipient, you should delete it immediately and are hereby notified that disclosure, copying, distribution, or reuse of this message or any information contained therein by any other person is strictly prohibited.

# EXHIBIT 6

ER 053

## LOS ANGELES COUNTY DEPARTMENT OF MENTAL HEALTH
## AUTHORIZATION FOR USE OR DISCLOSURE OF
## PROTECTED HEALTH INFORMATION

**CLIENT**:

_____     _____     _____
Name of Client/Previous Name                 Birth Date           Client Number

_____
Name of Legal Representative (If applicable)

_____     _____
Street Address                               City, State  ZIP Code

**AUTHORIZES**:                              **USE OR DISCLOSURE OF**
                                             **PROTECTED HEALTH INFORMATION TO**:

_____     _____
Name of Agency                               Name of Health Care Provider/Other

_____     _____
Street Address                               Street Address

_____     _____
City, State  ZIP Code                        City, State ZIP Code

**INFORMATION TO BE RELEASED**:

☐ Assessment/Evaluation          ☐ Psychological Test Results          ☐ Diagnosis
☐ Laboratory Results          ☐ Medication History/Current Medication          ☐ Treatment
☐ Entire Record (Justify): _____
☐ Other (Specify): _____

**NOTE**: Records may include information related to alcohol or drug use and HIV or AIDS. However, treatment records from drug and alcohol facilities or results of HIV test will not be disclosed unless specifically requested.

<u>Check all that apply</u>:     ☐ Alcohol or Drug Records          ☐ HIV Test Results

<u>Method of delivery of requested records</u>:
          ☐ Mail          ☐ Pickup          ☐ Electronic Device (CD, USB)

**PURPOSE OF USE OR DISCLOSURE**: (Check applicable category)

☐ Client Request
☐ Other (Specify): _____

Will the agency receive any benefits for the use or disclosure of information? ☐ Yes ☐ No

I understand that my Protected Health Information used or disclosed pursuant to this Authorization may no longer be protected by federal law and could be further used or disclosed by the recipient without my authorization.  I also understand that once my information is used or disclosed, it may not be possible to recall.

**EXPIRATION DATE**: This Authorization is valid until _____ / _____ / _____.
                                                        Month     Day     Year

MH 602 (09/2016)                                                    ER 083   Page 1 of 2

## LOS ANGELES COUNTY DEPARTMENT OF MENTAL HEALTH
## AUTHORIZATION FOR USE OR DISCLOSURE OF
## PROTECTED HEALTH INFORMATION

**YOUR RIGHTS WITH RESPECT TO THIS AUTHORIZATION**:

**Right to Receive a Copy of Authorization** - I understand that if I agree to sign this Authorization, which I am not required to do, I must be provided with a signed copy of the form.

**Right to Revoke Authorization** - I understand that I have the right to revoke this Authorization at any time by notifying LACDMH in writing.  I may use the Revocation of Authorization at the bottom of this form and mail or deliver the revocation to:

_____        _____
Contact Person                                          Agency Name

_____        _____
Address                                                   City, State  ZIP Code

I also understand that a revocation will not affect the ability of LACDMH or any health care provider to use or disclose the health information for reasons related to the prior reliance on this Authorization or otherwise allowed by law.

**Conditions**: I understand that I may refuse to sign this Authorization without affecting my ability to obtain treatment. However, LACDMH may condition the provision of research-related treatment on obtaining an authorization to use or disclose protected health information created for that research-related treatment. (In other words, if this Authorization is related to research that includes treatment, you will not receive that treatment unless this Authorization form is signed.)

I have had an opportunity to review and understand the content of this Authorization form. By signing this Authorization, I am confirming that it accurately reflects my wishes.

✗ _____        ✗ _____
Signature of Client/Legal Representative        Date

If signed by someone other than the client, state relationship and authority:
✗ _____

---

## REVOCATION OF AUTHORIZATION

_____
Name of Client

_____        _____
Signature of Client/Legal Representative        Date

If signed by someone other than the client, print name and state relationship and authority.

Printed Name: _____

Relationship and Authority: _____

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## CIVIL MINUTES—
## GENERAL

| Case No. | 8:20-CV-00322-JWH-GJS | Date | December 14, 2021 |
|---|---|---|---|
| Title | *Jane Doe v. County of Orange, et al.* | | |

Present: The Honorable    JOHN W. HOLCOMB, UNITED STATES DISTRICT JUDGE

| Irene Vazquez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiffs: | Attorney(s) Present for Defendants: |
|---|---|
| None Present | None Present |

**Proceedings:   ORDER (IN CHAMBERS) RE: MOTION FOR REVIEW [ECF No. 87]**

Before the Court is the motion of Plaintiff Jane Doe for review of the order of the magistrate judge denying Doe's motion to quash pursuant to 28 U.S.C. § 636(b)(1) and L.R. 72-2.[1]  Defendants opposed the Motion on July 23, 2021.[2] The Court finds this matter appropriate for resolution without a hearing.  *See* Fed. R. Civ. P. 78; L.R. 7-15.

On July 7, 2021, Magistrate Judge Standish denied Doe's motion to quash Defendants' subpoenas for Doe's medical records.[3]  In accordance with the provisions of 28 U.S.C. § 636(b)(1), this Court has conducted a *de novo* review of the Order.  Having carefully reviewed the entire file, including Doe's objections to the Order in the instant Motion, the Court finds that the Order is supported by the record and proper legal analysis.  Doe's objections are premised upon the argument that Doe alleges only a limited physical injury and, therefore, that Defendants are

---

[1]    Pl.'s Mot. for Review (the "<u>Motion</u>") [ECF No. 87].

[2]    Defs.' Opp'n to the Motion [ECF No. 90].

[3]    *See* Minute of Motion Hearing re Motion to Quash (the "<u>Order</u>") [ECF No. 83].

**CIVIL MINUTES— GENERAL**      Initials of Deputy Clerk <u>iv</u>

**ER 056**

not entitled to obtain her medical records related to unrelated medical issues.[4]  As Magistrate Judge Standish correctly observed, however, Doe's claims put at issue both her physical and mental status, both before and after the alleged incident. Doe's claims for damages detail specific and physical and mental consequences that she alleges were caused by Defendants' actions.  At the same time, however, Doe admits to certain preexisting mental health issues and conditions that are relevant to the issue of causation and the extent of damages that are recoverable. Accordingly, Defendants are entitled to discovery of Doe's medical records for the limited five-year period requested by Defendants in their subpoenas.

For the foregoing reasons, the Court **AFFIRMS** Magistrate Judge Standish's Order.  Doe's instant Motion is **DENIED**.

**IT IS SO ORDERED.**

---

[4]      *See* Motion 3:10–10:5.

**CIVIL MINUTES—GENERAL**          Initials of Deputy Clerk <u>iv</u>

ER 057

Michael L. Wroniak (State Bar No. 210347)
Rebecca J. Chmura (State Bar. 319106)
**COLLINS + COLLINS LLP**
**750 The City Drive, Suite 400**
**Orange, CA 92868**
**(714) 823-4100 – FAX (714) 823-4101**
Email: mwroniak@ccllp.law
Email: rchmura@ccllp.law

Attorneys for Defendants
COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE
BALICKI; MARK STICHTER; REYNA RIVERA; DEVONNA FALCONER;
KASSANDRA MAYER; ELIA RODRIGUEZ; and RACHEL ADDINGTON

# UNITED STATES DISTRICT COURT

## DISTRICT OF CALIFORNIA, CENTRAL DISTRICT

| | |
|---|---|
| JANE DOE, | ) CASE NO. SACV 20-00322-JWH (GJS) |
| Plaintiffs, | ) *[Assigned to Judge John W. Holcomb* |
| | ) *Courtroom 2]* |
| vs. | ) |
| | ) **DEFENDANT COUNTY OF ORANGE'S** |
| | ) **OPPOSITION TO PLAINTIFF JANE** |
| COUNTY OF ORANGE; DON | ) **DOE'S NOTICE OF MOTION AND** |
| BARNES; WILLIAM BAKER; JOE | ) **MOTION FOR REVIEW BY DISTRICT** |
| BALICKI; MARK STICHTER; and | ) **JUDGE OF ORDER REGARDING** |
| DOES 1-10, inclusive, | ) **DEFENDANT COUNTY OF ORANGE'S** |
| | ) **SUBPOENAS FOR PLAINTIFF'S** |
| Defendants. | ) **MEDICAL RECORDS** |
| | ) |
| | ) Complaint Filed: 2/18/20 |
| | ) Trial Date: None |
| | ) |
| | ) |
| | ) |
| | ) |

///

///

*FILE # 22348*

1

**COUNTY'S OPPOSITION TO PLAINTIFF'S MOTION FOR REVIEW RE SUBPOENAS**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This action arises from Plaintiff Jane Doe's ("Plaintiff") four-day incarceration in Women's Central Jail ("WCJ") in or around August 2019 which is operated by Defendant County of Orange ("County"). Plaintiff claims that as a result of her incarceration at WCJ she suffered severe emotional distress including restlessness, attempts at taking her own life, menstruation problems, among other injuries.

In order to investigate her injuries and claims she directly placed  at issue in this action, the County issued a total of eight subpoenas for Plaintiff's medical records to five medical providers that Plaintiff had identified in her written discovery. These subpoenas requested medical and billing records for a limited, five-year period; the information from these subpoenas is directly relevant and related to explore Plaintiff's claims and injuries, as well as the injuries to which she admits to having prior to her incarceration. Plaintiff subsequently filed a motion to quash the subpoenas and it was denied by the Magistrate Judge, Gail Standish, on the grounds that the information sought is directly relevant to Plaintiff's claims and the County is entitled to this information.

Despite Judge Standish's proper ruling, Plaintiff now continues to attempt to impede the discovery process and brings this motion for a review of Judge Standish's ruling. Plaintiff argues that (1) the records are not relevant to her alleged injuries; (2) there are less intrusive means by which to get this information; and (3) the County is

COLLINS + COLLINS..
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone   (714) 823-4100
Fax      (714) 823-4101

FILE # 22348

2

not permitted to obtain third-party witness information that may be found within these records. Essentially, Plaintiff is asking this Court to engage in unequal discovery and prevent the County from getting information by which it is entitled. She is asking this Court to permit her to recover damages from the County for her alleged injuries and not allow the County to obtain in discovery the information which will help it prove and/or disprove her alleged injuries. However, she cannot "have her cake, and eat it too."

The County urges this Court that Plaintiff's contentions are entirely misconceived and unsupported by any case law or authority. Subpoenaing Plaintiff's medical records for a limited time period prior to and after her incarceration are routine and basic aspects of civil discovery. Because Plaintiff placed her mental and physical condition at issue by bringing this suit, and she admits to having preexisting conditions, the information in these records is highly relevant and probative to assist the County in investing Plaintiff's claims and preparing its defenses. Moreover, as the Judge Standish indicated, at this stage in discovery, the information is simply discoverable and does not automatically mean admissible.

Plaintiff however incorrectly argues that the County is not entitled to the records whatsoever and the County only can get this information by way of deposition, by which she has indicated that she will instruct her physicians not to answer the questions and thereby impede upon the County's ability to get this information. If the County is denied the information in Plaintiff's records, the County will be greatly prejudiced and unable to equally investigate Plaintiff's claims and injuries and defend itself in this action.

**COLLINS + COLLINS**
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone  (714) 823-4100
Fax      (714) 823-4101

1  Given the following, the County respectfully requests that this Court deny Plaintiff's

2  Motion to Review the Magistrate Court Judge's Ruling regarding the County's

3

4  subpoenas and order the records be produced.

5  **II.     BRIEF PROCEDURAL BACKGROUND**

6

7         At central issue in this motion are the County's subpoenas for medical records to

8  Plaintiff's medical providers. On May 26, 2021, the County issued eight subpoenas

9  pursuant to Federal Rule of Civil Procedure ("FRCP") Rule 45 to five medical

10

11  providers, including, Pacific Clinics, LAC/USC Medical Center, Heredia Therapy

12  Group, Greater El Monte Community Hospital, and Arcadia Mental Health, which

13  Plaintiff disclosed in her responses to the County's discovery. To prevent the County

14

15  from receiving the records responsive to the subpoenas, on June 15, 2021, Plaintiff filed

16  a Motion to Quash the County's subpoenas improperly arguing that this information

17  was not discoverable, intrusive, and privileged.

18

19         At a hearing related to this motion, on July 7, 2021, the Judge Standish, denied

20  Plaintiff's Motion to Quash. Judge Standish correctly reasoned that Plaintiff's mental

21  and physical status before and after the alleged incident were directly placed at issue

22  when she filed her suit. Moreover, Plaintiff's claims are more than just "garden variety"

23

24  claims for emotional distress and she has admitted to having preexisting mental health

25  issues and conditions that are relevant to causation and the extent of Plaintiff's damages.

26  The Court urged that denying the County the opportunity to review Plaintiff's medical

27

28  records, would deny it critical information that is needed to defend against Plaintiff's

*FILE # 22348*

**COLLINS + COLLINS**LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone   (714) 823-4100
Fax      (714) 823-4101

4

claims. Further, the Court added that the records were subject to the protective order in place in this matter and there was no risk of her confidential medical details being disclosed publicly. As such, the records are relevant and therefore should be produced.

## III.   LEGAL ANALYSIS

### a.   The County's Subpoenas are Directly Relevant to Plaintiff's Claims and Plaintiff Placed a Laundry List of Physical and Emotional Conditions at Issue Which Favors Production of the Records

Despite Plaintiff's contentions, the County's subpoenas for Plaintiff's medical records are directly related and relevant to the medical conditions and treatment Plaintiff has placed at issue in this litigation. As such, the County is entitled to this information as a regular part of civil discovery in order to investigate Plaintiff's claims and prepare its defenses in this matter. Further, Plaintiff has asserted more than just "abnormal menstrual bleeding" in her action and has put at issue a laundry list of emotional and physical injuries which she claims were caused or exacerbated by her short stay at WCJ.

It is basic practice that the County is entitled to all information potentially relevant to Plaintiff's claims. (*Oppenheimer Fund, Inc. v. Sanders,* (1978) 437 U.S. 340, 351, which held that " relevant information includes 'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'") Time and time again, the County has argued that the information in her medical records is directly relevant to her allegations of injury and were put at issue by Plaintiff when she filed this suit. The County needs the information related to Plaintiff's

*FILE # 22348*

COLLINS + COLLINS..
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone   (714) 823-4100
Fax      (714) 823-4101

5

**COUNTY'S OPPOSITION TO PLAINTIFF'S MOTION FOR REVIEW RE SUBPOENAS**

self-admitted pre-existing conditions and post-incident treatment in order to access her mental and physical state prior to going into the WCJ and therefore determine which injuries, if any, were caused and/or exacerbated by her time in the WCJ. Without this information, there is no practical way for the County to explore the nature and extent of Plaintiff's claimed injuries or prepare its defenses and it will be severely prejudiced. Moreover, obtaining this information from her medical records is the least intrusive method and most reliable method to receive truthful information related to Plaintiff's injuries. As such, the information sought in the County's subpoenas directly aligns with FRCP Rule 26 and should be produced.

The present case is similar to the case of *Baptiste v. Lids*, 2013 WL 5708201. *Baptiste* involved a lawsuit by the plaintiff against his former employer in which he alleged that he continued to suffer severe emotional distress as a result of the discrimination and harassment he faced. (*Id.* at *1.) Defendants in that case subpoenaed records from any medical providers that plaintiff received treatment from prior to his employment for conditions he claims were exacerbated by his employment and any treatment which he claims was necessary because of his employment. (*Id.*) Plaintiff was asked to sign a waiver to release such records and refused, claiming that such records were privileged. (*Id.*) However, the *Baptiste* Court disagreed with plaintiff and held that plaintiff "put his mental and emotional condition directly in issue and it will be significant component of the damages he seeks. (*Id.* at *2.) Moreover, the Court held that "[p]laintiff has waived the psychotherapist-patient privilege with respect to his

*FILE # 22348*

COLLINS + COLLINS...
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

6

**COUNTY'S OPPOSITION TO PLAINTIFF'S MOTION FOR REVIEW RE SUBPOENAS**

mental health records." (*Id.*)

This case, like *Baptiste*, favors the production of Plaintiff's medical records as they are relevant, and she waived any privileges when she put her mental state at issue by filing this suit. The County's subpoenas are limited in time and do not seek a full disclosure of Plaintiff's entire medical history, but rather only the time period shortly before and after the incident. Specifically, Plaintiff's Fourth Amended Complaint ("FAC") alleges that she suffered injuries including, but not limited to, dysfunctional menstrual bleeding, insufficient sleep duration, loss of trust, comfort, care, protection, and support, pain and suffering, debilitating psychological damage, insomnia, fatigue, loss of focus, suicidal thoughts, memory loss, fear, depression, nightmares, PTSD, feels numb and distant, no longer speaks to family or friends, and is no longer able to emotional connect with family and close friends. (FAC, ¶¶ 71, 84, 114, 119, 143-45.) Similar to *Baptiste,* her medical records and treatment will be a central component of her damages there is no privilege which outweighs the County's need for this information. As such, should the County's subpoenas be quashed, the County will not be able to explore Plaintiff's claims or prepare its defenses in this action and will be severely prejudiced.

Further, Plaintiff spends approximately three full pages educating this Court on her version of how therapy works and the type of information that is disclosed in therapy. In doing so, she attempts to negate the relevancy and need of the information related to Plaintiff's medical history sought in the County's subpoenas. However, she

*FILE # 22348*

COLLINS + COLLINS...
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone   (714) 823-4100
Fax      (714) 823-4101

7

**COUNTY'S OPPOSITION TO PLAINTIFF'S MOTION FOR REVIEW RE SUBPOENAS**

fails to provide any authority or case law which supports her position that the records are irrelevant whatsoever. Moreover, Plaintiff is not a doctor or expert and therefore cannot apprise on the correlation of and/or impact of her alleged past traumas to her current injuries. Additionally, Plaintiff also gives her unsupported and unqualified opinion of how Plaintiff's pre-existing conditions provide no probative value as to her current alleged injuries. Once again, Plaintiff is misguided.

Plaintiff further argues that the County should not be entitled to information in Plaintiff's medical records as it may contain information related to the "sexual abuse of Plaintiff, … financial affairs, her general health, the health of her spouse, children, parents, and siblings, and relationships between Plaintiff and her coworkers, friends, neighbors, family members, and more." (Motion, Page 7, Lines 19-21.) Plaintiff further admits that she had "preexisting anxieties" and acknowledges that her preexisting injuries may somehow connect to her alleged injuries. (Motion, Page 7, Lines 22-24.)

Oddly enough, although she is urging this Court that her preexisting anxieties are irrelevant, Plaintiff herself demonstrates the exact way in which these records are especially relevant and reasonably calculated to lead to the discovery of admissible evidence in this matter. FRCP Rule 26(b)(1) "provides for discovery in civil actions of 'any matter, not privileged, which is relevant to the subject matter involved.... The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. Moreover, the 'information is 'relevant' if it relates to the claim or defense of the party seeking

FILE # 22348

8

COLLINS + COLLINS...
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

discovery or any other party, or to the credibility of any witness." (*Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.*, (C.D. Cal. 1997) 175 F.R.D. 646, 650.) Although Plaintiff tries to argue the opposite, her past medical traumas and treatment is highly relevant and probative to determine what injuries were alleged by caused by the County. Thus, despite Plaintiff's contention, Plaintiff's medical records are relevant and should be produced for purposes of investigating this lawsuit.

Additionally, there is a protective order in place in this matter which would limit the disclosure of Plaintiff's medical records to the County's attorneys only and will not permit public disclosure of such records. As such, there is no possibility that Plaintiff's potentially sensitive medical records will be disclosed outside of this litigation. Thus, Plaintiff's medical records should be produced.

    **b.**   <u>**The County is Entitled to Both Obtain Medical Records and Take Oral Depositions and Does not Have to Pick and Choose as Plaintiff Contends**</u>

Plaintiff claims that she is entitled to self-determine which method of discovery the County is permitted to use and thereby which method is the least intrusive into her personal details. Plaintiff is mistaken and misguided if she is under the impression that she is able to determine they ways in which the County may defend itself in this case. As an individual with six separate ongoing litigations in both Federal and state court, Plaintiff should be well versed in discovery and its application in litigation.

Plaintiff's alleged "less intrusive" alternative to disclosing the medical records is

*FILE # 22348*

9

**COUNTY'S OPPOSITION TO PLAINTIFF'S MOTION FOR REVIEW RE SUBPOENAS**

COLLINS + COLLINS..
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

to take the oral depositions of her treating physicians. Plaintiff has now put the County in the position where they have to "pick and choose" which methods of discovery it would like to utilize. However, per the FRCP, the County is entitled to take <u>both</u> oral depositions of Plaintiff's medical providers and receive documents that are relevant to Plaintiff's claims. (FRCP Rules 26 and 30.) The County is not obligated to pick and choose one method of discovery it may utilize under the FRCP, as it is entitled to both. Moreover, Plaintiff is not permitted to choose the methods or procedures by which the County and its attorneys find necessary to defend itself in this case.

Further, even assuming *arguendo* that the County utilized depositions rather than subpoenas to receive information related to Plaintiff's medical treatment, Plaintiff has admitted that she will misuse the discovery process and deter her doctors from answering the questions straightforwardly. Plaintiff has admitted that during these depositions she will instruct her medical providers not to answer when it comes to potentially sensitive information. Moreover, it is common knowledge that the medical records are likely a more reliable and trustworthy source of information related to Plaintiff's injuries and treatment as Plaintiff's doctors' memories' may fade regarding the particulars of her treatment.

### c. <u>Plaintiff's Argument regarding Disclosure of Third-Party Information is Misguided and Incorrect</u>

Plaintiff argues that the protective order in place in this matter only works in favor of the County. (Motion, Page 8, Lines 3 and 8.) However, Plaintiff's argument is

*FILE # 22348*

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone  (714) 823-4100
Fax     (714) 823-4101

10

COUNTY'S OPPOSITION TO PLAINTIFF'S MOTION FOR REVIEW RE SUBPOENAS

incorrect and absurd. The protective order is specifically in place in order to protect all parties and protect the confidential information that may be disclosed in this litigation. Judge Standish informed Plaintiff that the documents produced pursuant to subpoena would be for "attorney's eyes only" and would not be publicly disclosed. Plaintiff also signed and agreed to these terms; she is therefore bound by this order and its terms.

Further, Plaintiff contends that her medical records may contain information about third parties who may have information related to Plaintiff's claims. Plaintiff claims that the County is not entitled to such information on the basis that she was previously denied third-party contact information. (8:20-cv-00322-JWH-GJS, Doc. 71.) In support of this position, Plaintiff asserts that the protective order in place allegedly only works to protect the County but prevents Plaintiff from seeking information related to third-party inmates' contact information which she requested in a previous motion. (Motion, Page 8, 8-11.) Plaintiff's contention is comparing apples and oranges and is blatantly inapplicable.

On one hand, Plaintiff's previous motion to compel was related to her attempt to compel third-party contact information from other inmates that were housed in the WCJ at the same time as Plaintiff. (8:20-cv-00322-JWH-GJS, Doc. 60-61.) Judge Standish correctly denied Plaintiff's request for this contact information, stating that the request was too cumbersome to the County and improperly violated third-parties' rights to privacy. (8:20-cv-00322-JWH-GJS, Doc. 71.) Namely, it follows that the disclosure of an arrestees personal or identifying information may have a negative impact on their

*FILE # 22348*

**COLLINS + COLLINS...**
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

**COUNTY'S OPPOSITION TO PLAINTIFF'S MOTION FOR REVIEW RE SUBPOENAS**

employment or that might subject them to "embarrassment," "more serious reputational harm," or even potentially compromise investigations or safety of investigators and witnesses. (See *Lahr* v. *National Transp. Safety Bd*. 569 F.3d 964, 974 (quoting, in part, *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, (1989) 489 U.S. 749, 756.) Plaintiff was however given the list of inmates housed at the same time as her.

On the other hand, Plaintiff is now attempting to use this denial of third-party information to prevent the disclosure of her own medical records. This comparison simply does not make sense. In Plaintiff's motion, she was seeking personal, sensitive, contact information related to third parties. However, in this motion, the County is seeking information directly from Plaintiff, who is a first party to this litigation and has a stake in the litigation and not specifically from third parties who do not have a stake in the matter. Any information related to third-party witnesses that is uncovered by the County from the subpoenas is incidental and a permitted part of civil discovery. (*See Puerto v. Superior Ct.*, (2008) 158 Cal. App. 4th 1242, 1254.) Plaintiff's attempt however to get confidential information out of third parties with no interest in the matter is improper and an extreme violation of privacy. Thus, although Plaintiff attempts to convolute the protective order and confuse this Court, her argument is entirely incorrect and misguided once again.

Finally, as a procedural matter, her arguments as to preventing the disclosure of third-party contact information is not ripe in this present motion because she failed to

*FILE # 22348*

COLLINS + COLLINS
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

12

COUNTY'S OPPOSITION TO PLAINTIFF'S MOTION FOR REVIEW RE SUBPOENAS

seek review of Judge Standish's prior ruling when it was made. Thus, Plaintiff's ability to raise such an argument now is improper and untimely and should not be considered.

## IV.   **CONCLUSION**

Given the above, the County respectfully requests that this Court deny Plaintiff's Motion to Review the Magistrate Court Judge's Ruling regarding the County's Subpoenas and order that the records be produced immediately.


DATED: July 23, 2021                    COLLINS + COLLINS LLP


By: _____
REBECCA J. CHMURA
MICHAEL L. WRONIAK
Attorneys for Defendants COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI; MARK STICHTER; REYNA RIVERA; DEVONNA FALCONER; KASSANDRA MAYER; ELIA RODRIGUEZ; RACHEL ADDINGTON

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone  (714) 823-4100
Fax      (714) 823-4101

*FILE # 22348*

13

**COUNTY'S OPPOSITION TO PLAINTIFF'S MOTION FOR REVIEW RE SUBPOENAS**

**PROOF OF SERVICE**

**(CCP §§ 1013(a) and 2015.5; FRCP 5)**

State of California,    )
                        )  ss.
County of Orange.       )

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 750 The City Drive, Suite 400, Orange, California 92868.

On this date, I served the foregoing document described as **COUNTY'S OPPOSITION TO PLAINTIFF'S MOTION FOR REVIEW RE SUBPOENAS** the interested parties in this action by placing same in a sealed envelope, addressed as follows:

Jane Doe
Courtproceeding9@gmail.com

==REMEMBER TO REDACT ANY IDENTIFYING INFO FROM EXHIBITS/PLEADINGS/OR ANYTHING ELSE THAT WILL BE FILED WITH THE COURT.==

PLAINTIFF IN PRO SE

☐ **(BY MAIL)** - I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail in Orange, California to be served on the parties as indicated on the attached service list. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Orange, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **(BY CERTIFIED MAIL)** – I caused such envelope(s) with postage thereon fully prepaid via Certified Mail Return Receipt Requested to be placed in the United States Mail in Orange, California.

☐ **BY EXPRESS MAIL OR ANOTHER METHOD OF DELIVERY PROVIDING FOR OVERNIGHT DELIVERY**

☒ **(BY ELECTRONIC FILING AND/OR SERVICE)** – – I served a true copy, with all exhibits, electronically on Plaintiff Jane Doe at the email address on file with the Court which is redacted herein per request of Plaintiff Jane Doe through the Court's CM/ECF Electronic Filing system on:

☐ **FEDERAL EXPRESS** - I caused the envelope to be delivered to an authorized courier or driver authorized to receive documents with delivery fees provided for.

☐ **(BY FACSIMILE)** - I caused the above-described document(s) to be transmitted to the offices of the interested parties at the facsimile number(s) indicated on the attached Service List and the activity report(s) generated by facsimile number (714) 823-4101 indicated all pages were transmitted.

☐ **(BY PERSONAL SERVICE)** - I caused such envelope(s) to be delivered by hand to the office(s) of the addressee(s).

Executed on July 23, 2021 at Orange, California.

☐ **(STATE)** - I declare under penalty of perjury under the laws of the State of California that the above is true and correct

☒ **(FEDERAL)** - I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Elizabeth G. Austin
Eaustin@ccllp.law

**COUNTY'S OPPOSITION TO PLAINTIFF'S MOTION FOR REVIEW RE SUBPOENAS**

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone  (714) 823-4940
Fax     (714) 823-4101

1   JANE DOE

2   11151 Valley Blvd #4886,

3   El Monte, CA 91731

4

5   Plaintiff in Pro Se

6

7

8                  **UNITED STATES DISTRICT COURT**

9                  **CENTRAL DISTRICT OF CALIFORNIA**

10

11  JANE DOE,                           No. 8:20-cv-00322-JWH-GJS

12              Plaintiff,              **PLAINTIFF'S NOTICE OF MOTION AND
                                        MOTION FOR REVIEW BY DISTRICT**
13      v.                              **JUDGE OF ORDER (Dkt. 83)**

14  COUNTY OF ORANGE, et al             Date: Friday Aug 13, 2021
                                        Time: 9:00am
15              Defendants.             Judge: Hon. John W. Holcomb
                                        Action Filed: Feb 18, 2020
16                                      Trial Date: Not set

17

18

19

20      TO THE COURT AND TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

21      NOTICE IS HEREBY GIVEN that on Aug 13, 2021, at 9:00am, or as soon thereafter as the

22  matter may be heard, in Courtroom 2 of this court located at 3470 12th St., Riverside, CA 92501,

23  JANE DOE("Plaintiff"), will and hereby does move the court for a review of discovery order

24  (Dkt. 83) in this matter pursuant to Rule 72-2.1 of the Federal Rules of Civil Procedure and 28

25  U.S.C. § 636(b)(1).

26      This Motion is made and based upon this Notice, the attached Memorandum of Points and

27  Authorities, Plaintiff's declaration, the documents and pleadings on file with this Court, and any

28  other matters on which the Court may take Judicial Notice, and the arguments of counsel at the

                                        1

1    hearing on this Motion.

2    **I.    INTRODUCTION**

3         This action arose out of the four-day incarceration of JANE DOE  ("Plaintiff") in Women's

4    Central Jail ("WCJ") operated by Orange County Sheriff's Department ("OCSD"). In her

5    operative complaint, Plaintiff alleges First, Fourth, Fourteenth Amendments, and other violations,

6    and requests damages on various grounds. On May 26, 2021 Defendant County of Orange

7    ("County") served eight subpoenas upon Plaintiff's five medical providers requesting both

8    Plaintiff's billing and medical records since Jan 1, 2016 to present and demanding production on

9    Jun 25, 2021. In those subpoenas the County requests any and all records from January 1, 2016 to

10   Present, including but not limited to statements of accounts, writings, any payments made or

11   received, any credits, adjustments, write-offs, reconciliations, contract price payments or

12   reduction, payments by any health insurance entity, personal payments by or to patient from any

13   source, HMO, PPO, Medi-Cal, Medicare or contract payments by any entity, billing ledgers,

14   reports and/or statements of charges rendered and any insurance records; medical reports,

15   including doctor's entries, nurses' charts, progress reports, physical therapy records, pathology

16   reports, x-ray reports, lab reports, case history, emergency room records, counseling records,

17   admitting sheets, special tests, inpatient and outpatient records, any sign-in sheets pertaining to

18   the care and treatment, diagnosis, prognosis, condition, discharge, including but not limited to,

19   any records/documents that may be stored digitally and/or electronically, including orders and

20   results and specifically for any discharge orders, all detailed screen shots within any computer

21   system; any and all film/radiology records, original x-ray films, MRI's, CT scans.

22        On Jun 15, 2021 Plaintiff filed a motion to quash subpoenas and a hearing was held by the

23   magistrate judge on Jul 7, 2021. Plaintiff now moves for a review by district judge of the order

24   (Dkt. 83), entered on Jul 7, 2021, denying Plaintiff's motion to quash subpoenas, pursuant to Rule

25   72-2.1 of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1).

26        The courts and the protections of the law are open to everybody. Courts are fundamentally

27   important to the cause of justice for all. Our courts serve as a safe haven for the peaceful

28   resolution of disputes and protect the rights of people who can't protect themselves. Courts

1 embody notions of equal treatment and fair play. Courts, each day, strive to ensure the fair,

2 impartial and independent administration of justice so that each citizen is treated with respect,

3 dignity and fairness, and receives a "fair shake" in the application of our laws. Therefore, our

4 society requires courts to function in a manner which will foster public confidence in the judicial

5 system which is supposed to ensure justice is served in a fair manner. Unfortunately, Plaintiff in

6 this case was denied to have critical witnesses' contact information to establish her claims (See

7 Dkt. 60) but Defendants were entitled to explore Plaintiff's entire private life to mount their

8 defense.

9 **II.    ARGUMENT**

10   A.   The Only Physical Injury At Issue Is Plaintiff's Abnormal Menstrual Bleeding

11      Plaintiff did not waive her privilege protection as to the injuries not caused by Defendants'

12 conduct. The County served eight subpoenas upon Plaintiff's five health care providers seeking

13 any and all records, including but not limited to billing records, medical reports, doctor's entries,

14 nurses' charts, film/radiology records, original x-ray films, MRI's, CT scans etc, from January 1,

15 2016 to Present, including Plaintiff's heart disease, pneumonia, stomach problem, kidney disease,

16 arm injury, ulcers, arthritis, head injury, leg injury, constipation, mammogram, fever, allergies,

17 diabetes, colon cancer, hyperthyroid, hepatitis B, and literally every health issue of each part of

18 Plaintiff's body **while the only physical injury at issue is Plaintiff's abnormal menstrual**

19 **bleeding and Plaintiff had no prior menstrual problem**.

20      Plaintiff's unrelated medical records are protected from discovery by the California

21 Constitution and well-settled Case Law. The California Constitution right to privacy protects a

22 party's medical history. *Jones v. Superior Court of Alameda County* (1981) 119 Cal, App. 3d 534,

23 548-549. In *Heda v. Superior Court*, the Court of Appeals stated:

24      A person's medical profile is an area of privacy infinitely more intimate, more
       personal inquality and nature than many areas already judicially recognized and
       protected.. .The information that may be recorded in a doctor's files is
25      broadranging. The chronology of ailments and treatments is potentially sensitive.
       Patients may disclose highly personal details of lifestyle and information
26      concerning sources of stress and anxiety. These are matters of great sensitivity
       and going to the core of the concerns for the privacy of information about an
27      individual.

28   *Heda v. Superior Court* (1998) 225 Cal. App. 3d 525, 529 (internal citation omitted,

3

1    emphasis added); see also *Puerto v. Superior Court* (2008) 158 Cal. App. 4th 1242, 1253 (noting

2    the sensitive nature of a person's medical details). "A person's medical history undoubtedly falls

3    within the recognized zones of privacy."

4        Plaintiff is not compelled, as a condition to entering the courtroom, to discard entirely her

5    mantle of privacy." *Vinson v. Sup. Ct*. (1987) 43 Cal. 3d 833, 841-42. Rather, a defendant is

6    required to make an actual showing that the information is directly relevant and must demonstrate

7    that the need for such information is compelling. Id. (emphasis added)

8        A defendant is permitted to discovery of information and records relating only to the

9    medical conditions in question in the litigation, and that the filing of a personal injury lawsuit

10   does not open all of a plaintiff's past medical history to scrutiny. See *Hallendorfv. Superior Court*

11   (1978), 85 Cal. App. 3d 553, 556-557; Jones, supra, 119 Cal. App. 3d at 546-547; see also *Simek*

12   *v. Superior Court* (1981) 117 Cal. App. 3d 169, 173-175. This holding has been applied by the

13   California Supreme Court and courts of appeal in many different contexts with plaintiffs suffering

14   many different degrees of injury.

15   B.  The County Provided No Acceptable Measurement Or Methodology That Would Warrant

16       Intrusive Discovery Of Plaintiff's Medical History

17       Plaintiff did not waive her privilege protection as to the injuries not caused by Defendants'

18   conduct. The County hypothetically alleged that Plaintiff talked about her preexisting injury on

19   day one when she saw her therapist and talked about the injury at issue on day two. So that they

20   could assess the intensity of Plaintiff's preexisting injury and the injury at issue. Unfortunately

21   that is not how the therapy works. A heavy focus on telling the traumatic story reflects outdated

22   notions of what trauma does to people and how to treat it. Traumatic memories are not stored in a

23   way that they can be deeply accessed by verbal interactions based on cognitive or logical

24   processes.

25       First, how many times or days Plaintiff talked about her injuries do not correctly reflect the

26   actual level of pain and suffering. Even during the same therapy session Plaintiff would talk about

27   multiple traumas with her therapists and Plaintiff's therapists did not time how many minutes of

28   the talking for each trauma. The frequency and length of talking about a trauma have no

4

1  correlation with the intensity of the traumatic effect. Contrary to the common misconception,

2  many therapists avoid talking about patients' traumas when they are not ready to process the

3  traumas. Research has found that telling the trauma story is ineffective in bringing relief from

4  symptom of trauma and sometimes can be harmful (retraumatizing). The County provided no

5  reliable, reasonable, and acceptable principle and measurement to assess the degree of

6  aggravation of a pre-existing condition.

7      Second, even if a patient did not talk about an event with her therapist, it does not

8  necessarily mean the event does not affect the patient. There are many reasons for a patient not

9  being able to talk about every traumatic event, such as the time limit of the therapy session, the

10  patient is not ready to process the trauma, the patient feels shame to talk about it, or the patient is

11  still in denial mode of the traumatic event or has not even realized the wrongfulness of the event.

12  Many Veterans find they have PTSD symptoms even 50 or more years after their wartime

13  experience for many reasons, such as symptoms do not necessarily begin immediately following

14  the trauma, many veterans suffer from PTSD for years without realizing that they have it, or they

15  feel shame in relation to their post-traumatic stress and avoid reporting these feelings.

16      Third, The County argued that they were entitled to assess Plaintiff's preexisting condition

17  by scouring her medical records and compare her prior with the current condition. For example, if

18  Plaintiff's medical records show that she lost three nights of sleep per week prior to her

19  incarceration in Women's Central Jail ("WCJ") and she still lost three nights of sleep per week

20  after her release, can Defendants conclude that Plaintiff's suffered nothing from her experience of

21  incarceration in WCJ? Of course not. Without being treated like an animal in WCJ Plaintiff could

22  have lost two nights of sleep per week but because of Defendants' conduct Plaintiff could not

23  make any progress in her treatment. Plaintiff can also argue she could have suffered loss of sleep

24  for one year but after her incarceration in WCJ she now has to suffer loss of sleep for two years.

25  Allowing such argument simply confuses the jury and would cause a big waste of time. In order

26  to use Plaintiff's preexisting condition as a benchmark to assess the exacerbation of Plaintiff's

27  preexisting condition Defendant should first provide the supposed symptoms and treatments of

28  Plaintiff's preexisting condition. For example, based on Plaintiff's preexisting condition she

1    should see therapy for 12 months and take 60 ml of medication but now she has been seeing

2    therapist for over 12 months and is taking 80 ml of medication. It is undisputed that the County

3    cannot provide such thing. Emotional injury is a far cry from physical injury. A physician may

4    estimate that it would take two weeks to heal a leg injury but no psychiatrist can ever estimate

5    how long it would take and how many medications it would need to treat PTSD or depression.

6    Even a patient suffered depression caused by only one event her symptoms not always manifest

7    the same frequency and intensity because triggers of flashback and panic attack do not come at

8    the same time each day or every other day. Then the comparison of Plaintiff's preexisting

9    condition with current condition provides no probative value. The harm of disclosure of

10   Plaintiff's medical records substantially outweighs the little to no probative value of the

11   disclosure.

12        Fourth, mental or emotional harm does not have a quantified measurement, such as blood

13   pressure, blood sugar, cholesterol, carcinoembryonic antigen, triglycerides, serum ferritin, white

14   blood cell count, Blood Urea Nitrogen etc. While there is truly no purely objective way to

15   determine a plaintiff's preexisting condition – there is no blood test, x-ray, MRI or other objective

16   diagnostic test that can reveal many of the common psychological injuries - the burden, expense,

17   or intrusiveness of that discovery clearly outweighs the likelihood that the information sought will

18   lead to the discovery of admissible evidence." See also, *Irvington-Moore, Inc. v. Superior Court*

19   (1993) 14 Cal. App. 4th 3 733.

20        "Exposure to embarrassment, humiliation, and the denial of basic respect can and does

21   cause psychological and physiological trauma to its victims." *Croker v. Boeing Co*., 662 F.2d, at

22   1002 (Aldisert, J., with whom Higginbotham, J., joined, dissenting in part). Pain and suffering is

23   personal and subjective, and there is no quantified or objective measurement for that. Through the

24   details of how Plaintiff was treated like an animal in WCJ and the nature of the events being

25   outside the range of usual human experience, the trier of fact can utilize their life experience to

26   assess the level of Plaintiff's emotional harm suffered at the hands of the people who were

27   supposed to protect the community. "[C]ompensatory damages may be awarded for humiliation

28   and emotional distress established by testimony or inferred from the circumstances, whether or

6

1  not plaintiffs submit evidence of economic loss or mental or physical symptoms." *Johnson v.*

2  *Hale*, 13 F.3d 1351, 1352 (9th Cir. 1994).

3    To say that Plaintiff has put "all" of her "mental conditions" at issue in this litigation is

4  without basis. The County's argument seems to imply that by sustaining numerous injuries as a

5  result of multiple perpetrators, Plaintiff has somehow "waived" her right to privacy to records

6  having to do with unrelated parts of her body and conditions. Such reasoning is baseless. See

7  *Heda v. Superior Court* (1998) 225 Cal. App. 3d 525, 530 (holding that waivers of constitutional

8  rights "are not lightly found").The County has not made any actual showing that the information

9  is directly relevant or has not demonstrated that the need for such information is compelling.

10  C.  The County Provided No Evidence To Support its Speculation That The Testimony Of

11    Plaintiff's Treating Physicians, Psychiatrists And Therapists Is Not Reliable

12    The County provided no credible evidence to support its assertion that there is no other less

13  intrusive means to obtain relevant information. Nor did they ever make any attempts.

14    The County provided no evidence to support its speculation that the testimony of Plaintiff's

15  treating physicians, psychiatrists and therapists is not reliable. Neither did they provide any

16  authority suggesting that medical record is the only evidence to prove or disprove an injury.

17  D.  Public Policy Lies In Favor Of Non-Disclosure

18    Were the Court to accept defendants' proposition, arguably a defendant might pry not only

19  into the sexual abuse of Plaintiff, but into her financial affairs, her general health, the health of

20  her spouse, children, parents and siblings, and the relationships between Plaintiff and her

21  coworkers, friends, neighbors, family members, and more. Problems in any of these areas might

22  have caused preexisting emotional upset. Defendants' argument, that plaintiff's claimed injury of

23  severe emotional distress is somehow apportionable between preexisting anxieties and the mental

24  trauma caused by the defendants' alleged conduct, would allow inquiry into anything and

25  everything that might conceivably cause some measure of distress or anxiety without regard to its

26  protected nature. It creates the very Catch-22 the Legislature was seeking to avoid. The

27  Legislature has emphatically stated that such inquiry would at most generate results of minimal

28  probative value and should be discouraged. Such intrusive discovery also undoubtedly and unduly

7

1  deters plaintiffs from instituting lawsuits by the fear of exposure of their private life and

2  activities, especially victims of sexual abuse.

3      E.  <u>A Protective Order Works Only In Favor Of Defendants In This Case</u>

4          The County alleged that Plaintiff's medical records would be safe to disclose because there

5  is a protective order in place (Dkt. 59).

6          First, privacy interests do not shelter witnesses' identity and contact information from

7  disclosure and the protective order in this case will sufficiently address any privacy concerns.

8  However, this protective order seems to work only in favor of Defendants. Defendants are

9  entitled to explore Plaintiff's entire life with this protective order but Plaintiff was denied to

10  discover critical witnesses' contact information to establish her claims even though there was the

11  same protective order in place (See Dkt. 60). The personal information sought is clearly relevant

12  and potentially imperative to a party's claim, it is often accepted that a protective order can

13  adequately address the privacy interest and discovery is permitted. See *Oakes v. Halverson*

14  *Marine, Ltd.*, 179 F.R.D. 281, 284 (C.D. Cal. 1998). Plaintiff "seeks to contact witnesses who

15  may have direct knowledge of the issues in this case. She is entitled to do so." *Gavin v. Hilton*

16  *Worldwide, Inc.*, No. 12-cv-00307-CRB (NJV), at *2 (N.D. Cal. May 8, 2013); *Puerto v.*

17  *Superior Court*, 158 Cal. App. 4th 1242 (2008) (requiring consent by opt-in letters before

18  disclosing witness contact information advantages employer and "unnecessarily hamstrings"

19  plaintiffs "in their conduct of legitimate discovery by making their statutory entitlement to

20  percipient witness discovery entirely dependent" on other parties' willingness to participate in the

21  discovery); *McArdle v. AT&T Mobility LLC*, 2010 U.S. Dist. LEXIS 47099, *5, *10-*11 (N.D.

22  Cal. Apr. 16, 2010) (applying *Pioneer* and finding that requiring notice where many of the

23  complaining customers could be considered percipient witnesses, would "make no sense here, as

24  witnesses cannot choose to 'opt out' of civil discovery"); *Puerto v. Superior Court*, 70 Cal. Rptr.

25  3d 701, 703 (Cal. Ct. App. 2004) (where the constitutional right of privacy is involved, the court

26  must apply a balancing of countervailing interests); *Pioneer Electronics, Inc.*, 150 P.3d at 206

27  (customer identifying information was a proper area of discovery because the court found these

28  consumers could provide information that pertained to the plaintiff's claims); *Hill v. National*

8

1   *Collegiate Athletic Ass'n*, 865 P.2d 633, 656 (Cal. 1994) ("Conduct alleged to be an invasion of

2   privacy is to be evaluated based on the extent to which it furthers legitimate and important

3   competing interests."). If "there is no serious invasion of privacy," courts generally find "no

4   balancing of opposing interests is required." *Puerto*, 70 Cal. Rptr. 3d at 711. The court did not

5   believe employees would want their identities withheld from a plaintiff seeking relief for wrongs

6   that occurred at their shared workplace. *Puerto*, 70 Cal. Rptr. 3d at 709 (citing *Belaire-West*

7   *Landscape, Inc. v. Superior Court*, 57 Cal. Rptr. 3d 197, 202 (Cal. Ct. App. 2007)). "The fact that

8   we generally consider residential telephone and address information private does not mean that

9   the individuals would not want it disclosed under these circumstances." Id.; see also *Pioneer*, 53

10   Cal. Rptr. 3d at 516 (the plaintiff's "proposed disclosure" (the contact information of the

11   defendant's consumers who had filed complaints with regard to the defendant's commercial

12   products) "was not 'particularly sensitive' as it involved disclosing neither one's personal medical

13   history or current medical condition nor details of disclosing one's personal finances or other

14   financial information , but merely called for disclosure of contact information already voluntarily

15   disclosed to [the defendant]"); *McArdle*, 2010 WL 1532334 at * 3 ("Here, like in *Pioneer*, release

16   of the customer identifying information would be limited to Plaintiff and his counsel in this

17   case . . . [and] involves disclosure of contact information already voluntarily disclosed to

18   Defendants . . . [and] will help [p]laintiff learn the names of other persons who might assist in

19   prosecuting this case, and [ ] involves no revelation of personal or intimate activities, or similar

20   private information ."). The court in *Puerto* found this factor weighed in favor of disclosure.

21   *Puerto*, 70 Cal. Rptr. 3d at 709; *Becker v. Wells Fargo Bank, NA, Inc*., No. 2:10-cv-02799 TLN

22   KJN PS, at *7 (E.D. Cal. Sep. 24, 2013) (Fairness requires such interpretation in this particular

23   case, which involves a pro se plaintiff attempting to navigate through the discovery process, and

24   also given that defendant has not suggested any alternative discovery vehicle by which to obtain

25   the information requested. Contact information for 36 percipient witnesses is indisputably

26   relevant to plaintiff's case.)

27        Second, simply have a protective order does not necessarily mean the County is entitled to

28   any privileged information. Our Supreme Court has observed that "adequate protections against

9

public disclosure do not obviate constitutional concerns as privacy interests are still implicated when the government accesses personal information without disseminating it." (*Lewis v. Superior Court* (2017) 3 Cal.5th at p. 577, 220 Cal.Rptr.3d 319, 397 P.3d 1011.) The protective order entered for this litigation does not eliminate Plaintiff's privacy concerns simply because the highly sensitive and confidential information will not be disseminated to third parties.

## III.    CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the court grant Plaintiff's motion to quash subpoenas.

Dated: Jul 16, 2021

Respectfully submitted.

*/s/ JANE DOE*

JANE DOE, Plaintiff in Pro Se

1

**CERTIFICATE OF SERVICE**

2

3      I, JANE DOE, declare and say as follows:

4      I am over the age of eighteen years of age and am a party to this action. I reside in the

5  County of Los Angeles, State of California. My business address is 11151 Valley Blvd #4886, El

6  Monte, CA 91734, in said county and state.

7      On Jul 16, 2021 I electronically filed the following document(s):

8      Plaintiff's Notice of Motion and Motion for Review by District Judge of order (Dkt. 83)

9      with the United States District Court, Central District of California. Participants in the

10  case who are registered CM/ECF users will be served by the CM/ECF system.

11

12      Dated: Jul 16, 2021

13

14                                                              */s/ JANE DOE*

15                                                              JANE DOE

16                                                              Plaintiff in Pro Se

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR REVIEW BY DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | 8:20-cv-00322-JWH-GJS | Date | July 7, 2021 |
|---|---|---|---|
| Title | Jane Doe v. County of Orange et al | | |

Present: The Honorable    GAIL J. STANDISH, U.S. MAGISTRATE JUDGE

| E. Carson | ZOOM |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Jane Doe | Rebecca Chmura |

**Proceedings:**    Plaintiff's Motion to Quash [74]; Order

The case is called, and appearances are stated for the record.

The Court confers with the parties regarding Plaintiff's Motion.  Plaintiff's Motion to Quash is DENIED for the reasons set forth in detail on the record.  The following is a short summary of the Court's reasoning.

Plaintiff's claims put both her physical and mental status before and after the alleged incident directly at issue.  Her claims for damages are not "garden variety" claims for emotional distress damages; rather they detail specific physical and mental consequences that she alleges were caused by Defendants' actions.  Plaintiff admits, however, to certain preexisting mental health issues and conditions that are relevant to both causation and the extent of any damages she may contend are related to Defendants' alleged actions.  To deny Plaintiff's medical records – for the limited 5-year period requested by Defendants in their subpoenas – would deny Defendants critical evidence that they need to defend against Plaintiff's claims that Defendants cannot

|  | : | 34 |
|---|---|---|
| Initials of Preparer | | efc |

| CV-90 (10/08) | CIVIL MINUTES - GENERAL | Page 1 of 2 |
|---|---|---|

ER 083

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 8:20-cv-00322-JWH-GJS | Date | July 7, 2021 |
|---|---|---|---|
| Title | Jane Doe v. County of Orange et al | | |

obtain by any other means.[1]

The Court recognizes that most, if not all, of the requested records, would otherwise be subject to the doctor-patient and psychotherapist-patient privileges. Given Plaintiff's claims, however, she has waived the protections of those privileges in discovery. Any documents produced by third parties are to be marked "Attorney's Eyes Only" and are subject to the strictures of the Protective Order in this case. Should Defendants intend to file any such documents in Court, they are to be filed under seal with reference to the Protective Order and this Order in the application for filing under seal.

The Court informed Plaintiff and notes here that a finding that the records are relevant and must be produced is *not* a finding that they will ultimately be admissible. Such a determination is for the District Judge.

**IT IS SO ORDERED.**

---

[1] Plaintiff proposes that Defendants be allowed to depose certain of her medical providers but that they not be allowed to see the medical records that support or refute the providers' (or Plaintiff's) testimony. Neither the spirit or the letter of the Federal Rules allows for such one-sided discovery. Moreover, if Plaintiff permitted a medical provider to testify regarding her physical or mental condition and whether her condition was affected by Defendants alleged actions, she would be explicitly waiving whatever privilege protections she might otherwise have. It is hornbook law that privileged may not be used as both shield and sword in legal proceedings.

|  | : | 34 |
|---|---|---|
| Initials of Preparer | | efc |

ER 084

1    JANE DOE

2    11151 Valley Blvd #4886,

3    El Monte, CA 91731

4    Plaintiff in Pro Se

5

6

7

8                **UNITED STATES DISTRICT COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

10

11    JANE DOE,                   No. 8:20-cv-00322-JWH-GJS

12           Plaintiff,

13        v.                    **PLAINTIFF'S SUPPLEMENTAL BRIEF**

14    COUNTY OF ORANGE, et al        **TO JOINT STIPULATION (Dkt. 75)**

15          Defendants.

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## I. PLAINTIFF DID NOT WAIVE PSYCHOTHERAPIST-PATIENT PRIVILEGE UNRELATED TO THE INJURIES AT ISSUE

The Supreme Court has recognized a psychotherapist-patient testimonial privilege, holding that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure. . . ." *Jaffee v. Redmond*, 518 U.S. 1, 15, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). Plaintiff did not waive psychotherapist-patient privilege as to her injuries not caused by Defendants' actions. The County cited no authority allowing federal law of privilege to override California Constitution's protection of privacy but simply asserts that California Constitution right to privacy is not relevant or determinative to privilege analysis. Contrary to the County's assertion, the Supreme Court has assured that the State's promise of confidentiality would be honored in a federal court. *Jaffee v. Redmond*, 518 U.S. 1, 13 (1996).

Because Plaintiff sees her therapists and psychiatrists on a regular basis according to their availability instead of the County's suspected changes in need, the dates of Plaintiff's treatment for the last 5 years have little to no value for the County to assess whether Plaintiff has increased her course of treatment as a result of the incident or if there are significant changes in the occurrences of her treatment as a result of the incident. The County is only entitled to the dates that Plaintiff's sought treatment related to her injury caused by Defendants' actions.

## II. THE COUNTY FAILS TO SHOW CAUSE AS TO WHY SEEKING PLAINTIFF'S ENTIRE MEDICAL RECORDS OVER FIVE YEARS IS THE ONLY POSSIBLE MEANS TO OBTAIN RELEVANT INFORMATION

Plaintiff offered to depose her health care providers and Plaintiff indicated that she would instruct her treating physicians not to answer any questions not related to the injuries not cause by her incarceration in WCJ. However, Plaintiff's statement was misrepresented and used as the County's blatant refusal to compromise despite Plaintiff's best efforts to avoid Court involvement. Plaintiff also offered to submit herself to a forensic psychiatric evaluation but the County refused to consider at all.

The County's assumption is baseless that if Plaintiff testifies that she had never

2

1  contemplated suicide before the subject incident, yet she had told her treating physician she had,

2  without obtaining the medical records, the County will have no way to verify or dispute

3  Plaintiff's testimony. The truth is, on Aug 8, 2019, prior to strip searches and all other traumatic

4  events in WCJ, when Plaintiff was admitted in WCJ she was asked by WCJ medical staff if she

5  had been hospitalized for mental health issues. This is a routine medical screen question but now

6  the County made it all up that Plaintiff might have had suicide attempt before being incarcerated

7  in WCJ. The County could have verified with WCJ's medical staff for that information. The

8  County provided no factual information as to why such verification cannot be asked during

9  deposition but only Plaintiff's entire medical records over five years serve that purpose. Even

10 Plaintiff had contemplated suicide in 2018 she was not allowed to contemplate suicide in 2019

11 due to her experience in WCJ? The County fails to show cause as to why seeking Plaintiff's

12 medical records, such an intrusion into the therapeutic relationship, is the only possible means to

13 obtain relevant information. The County also fails to provide any legal authority to support its

14 assertion that disclosure of medical records is a must based on an assumption that Plaintiff's

15 friends and treating physicians may be unreliable and cannot be corroborated. Contrary to the

16 County's assertion, the disclosure of Plaintiff's medical records is redundant when Plaintiff

17 herself, Plaintiff's friends and treating physicians offer to testify. Plaintiff's privacy interest

18 outweighs the County's suspected reliability of testimony by multiple witnesses. Further, if the

19 testimony by Plaintiff's friends and treating physicians is unreliable and cannot be corroborated,

20 it might be thought that Plaintiff was doing defendants a favor rather than a disservice.

21 **III.    THE LIKELY EVIDENTIARY BENEFIT THAT WOULD RESULT FROM THE**

22 **DENIAL OF THE PRIVILEGE IS MINIMAL**

23      The truth of Plaintiff's contention as to whether she is emotionally upset because of the

24 defendants' conduct can be tested by the recount of the events Plaintiff experienced in WCJ. Such

25 as, when Plaintiff announced she was cold to death and politely requested a blanket to keep

26 warm, she was told "This is jail. Don't come to jail next time." After being continuously exposed

27 to low temperature Plaintiff's heartbeat dropped from 90 to 57. For seven times in four days,

28 Plaintiff was ordered to pull down her underwear, lift up her period pad with period blood, twist it

in front of a group of strangers, and put the same period pad back in her underwear but nothing was found. The 24 hr jail logs the County provided show that nothing was ever found during group strip searches during the entire one month period before Plaintiff was incarcerated. Since Plaintiff turned four she was never completely naked in front of her own mother, not to mention a bunch of strangers. Plaintiff was ordered to shower in front of a bunch of strangers and that was the only shower Plaintiff ever took in four days in WCJ. Plaintiff was also ordered to be completely naked with a bunch of naked inmates simply because that was the only way she could get her own clothing back before release. The source of Plaintiff's alleged injuries and the true cause, nature and extent of Plaintiff's injuries and damages can clearly be determined by the events Plaintiff experienced in WCJ alone. The County showed no factual information as to why the graphic details of how Plaintiff was treated in WCJ like an animal in a degrading and humiliating manner are insufficient to determine Plaintiff's injury, including but not limited to fears, personal humiliation, embarrassment, mental anguish and emotional distress. See *Chalmers v. City of Los Angeles*, 762 F.2d 753, 761 (9th Cir. 1985) (upholding damages based solely on testimony); *Johnson v. Hale*, 13 F.3d 1351, 1352 (9th Cir. 1994) (noting that emotional damages may be awarded based on testimony alone or appropriate inference from circumstances). All the County has been trying to do is to explore Plaintiff's private life and gather information so that it can distract the jury from the inhumane treatments in WCJ to Plaintiff's other life events which would be prejudiced to Plaintiff.

Before the County can explore Plaintiff's prior health condition the County must establish the direct relevance between the prior injury and current injury at issue. Senator Moynihan said, "[q]uite often an individual may suffer from excruciating, debilitating pain that is impossible to measure objectively. " Pain is subjective and cannot be described in precise terms." *Bibeau v. Pacific Northwest Research Foundation Inc.*, 188 F.3d 1105, 1108 (9th Cir. 1999) For example, Plaintiff had a bitter divorce in 2018 and sought therapy. What is the measurement of the stress, pain, and suffering? How would the County measure and assess any exacerbations or worsening of Plaintiff's conditions after the bitter divorce as a result of the incidents in WCJ? What is the basis that Plaintiff might suffer nothing or less pain because of defendants' conduct since she just

1   experienced a bitter divorce? What is the reasoning method that Plaintiff's emotional stress was

2   caused solely by her bitter divorce instead of how she was treated like an animal in WCJ? The

3   County is unable to articulate the measurement and correlation between Plaintiff's bitter divorce

4   and her experience in WCJ but simply asserts that Plaintiff's prior life events are critical

5   information with substantial probative value and demands Plaintiff's medical records for over

6   five years from January 1, 2016 to Present. If the disclosure of Plaintiff's medical records were

7   allowed it would give a green light for the County to use any Plaintiff's prior life events to

8   humiliate Plaintiff at trial.

9   **IV.   THE DISCLOSURE OF PLAINTIFF'S MEDICAL RECORDS WOULD CAUSE**

10  **HARM AND PREJUDICE**

11      Plaintiff's medical, psychological, and/or psychiatric records enjoy the highest levels of

12  privacy protection, much higher than other inmates' contact information. Plaintiff's discovery of

13  critical witnesses' contact information was rejected due to privacy issue even though the

14  probative value of critical witnesses' contact information is much higher than Plaintiff's medical,

15  psychological, and/or psychiatric records. It is undisputed that the disclosure of Plaintiff's

16  medical, psychological, and/or psychiatric records would cause much more harm than the

17  disclosure of other inmates' contact information.

18  **V.   EVEN THE SUBPOENAS ARE NARROWLY TAILORED PLAINTIFF'S**

19  **HEALTH CARE PROVIDERS WOULD BE PUT IN A DIFFICULT POSITION**

20  **TO MAKE REDACTIONS**

21      Even the subpoenas are narrowly tailored, Plaintiff's health care providers would be put in a

22  difficult position to decide what confidential information is relevant by scouring hundreds of

23  pages of records. For instance, the date of Plaintiff's first period came is relevant or irrelevant?

24  Some sessions of therapy only discussed soothing methods instead of any traumatic events. Some

25  sessions discussed Plaintiff's upbringings and childhood while a therapist tried to get to know the

26  patient as a person in general. Some sessions discussed multiple traumatic events. Plaintiff's

27  health care providers may not have enough resources to scour each page of records, balance the

28  need of disclosure and privacy protection, and make redactions accordingly.

## VI. THE ANTICIPATED HARM FROM DISCLOSURE WARRANTS THE WITHDRAWAL OF A COURT ORDER

If this Court issues a court order specifically describing the disclosable records, the records may only be produced directly to the court instead of the County. Pursuant to National Association Social Workers ("NASW") Code of Ethics 1.07 Privacy and Confidentiality (j), social workers should protect the confidentiality of clients during legal proceedings to the extent permitted by law. When a court of law or other legally authorized body orders social workers to disclose confidential or privileged information without a client's consent and such disclosure could cause harm to the client, social workers should request that the court withdraw the order. Even after the Court rejects Plaintiff's motion to quash the County's subpoenas and orders Plaintiff's confidential records to be released, social workers will still request the Court to withdraw the order absent Plaintiff's consent given the harm associated with the release of the confidential information.

## VII. CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court grant her motion in all aspects.

Dated: Jun 23, 2021

Respectfully submitted.

*/s/ JANE DOE*

JANE DOE, Plaintiff in Pro Se

6

1                                      **CERTIFICATE OF SERVICE**

2

3         I, JANE DOE, declare and say as follows:

4         I am over the age of eighteen years of age and am a party to this action. I reside in the

5 County of Los Angeles, State of California. My business address is 11151 Valley Blvd #4886, El

6 Monte, CA 91734, in said county and state.

7         On Jun 23, 2021 I electronically filed the following document(s):

8         PLAINTIFF'S SUPPLEMENTAL BRIEF TO JOINT STIPULATION (Dkt. 75)

9         with the United States District Court, Central District of California. Participants in the

10 case who are registered CM/ECF users will be served by the CM/ECF system.

11

12         Dated: Jun 23, 2021

13

14                                                  */s/ JANE DOE*

15                                         JANE DOE, Plaintiff in Pro Se

16

17

18

19

20

21

22

23

24

25

26

27

28

Michael L. Wroniak (State Bar No. 210347)
Rebecca J. Chmura (State Bar. 319106)
**COLLINS + COLLINS LLP**
**750 The City Drive, Suite 400**
**Orange, CA 92868**
**(714) 823-4100 – FAX (714) 823-4101**
**Email: mwroniak@ccllp.law**
**Email: rchmura@ccllp.law**

Attorneys for Defendants
COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE
BALICKI; MARK STICHTER; REYNA RIVERA; DEVONNA FALCONER;
KASSANDRA MAYER; ELIA RODRIGUEZ; and RACHEL ADDINGTON

## UNITED STATES DISTRICT COURT

## DISTRICT OF CALIFORNIA, CENTRAL DISTRICT

| | |
|---|---|
| JANE DOE, | CASE NO. SACV 20-00322-JWH (GJS) |
| Plaintiffs, | *[Assigned to Judge John W. Holcomb Courtroom 2]* |
| vs. | **DEFENDANT COUNTY OF ORANGE'S OPPOSITION TO PLAINTIFF JANE DOE'S NOTICE OF MOTION AND MOTION FOR REVIEW BY DISTRICT JUDGE OF ORDER REGARDING DEFENDANT COUNTY OF ORANGE'S SUBPOENAS FOR PLAINTIFF'S MEDICAL RECORDS** |
| COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI; MARK STICHTER; and DOES 1-10, inclusive, | |
| Defendants. | |
| | Complaint Filed: 2/18/20 |
| | Trial Date: None |

///

///

FILE # 22348

1

**COUNTY'S OPPOSITION TO PLAINTIFF'S MOTION FOR REVIEW RE SUBPOENAS**

**COLLINS + COLLINS**
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I.   **INTRODUCTION**

This action arises from Plaintiff Jane Doe's ("Plaintiff") four-day incarceration in Women's Central Jail ("WCJ") in or around August 2019 which is operated by Defendant County of Orange ("County"). Plaintiff claims that as a result of her incarceration at WCJ she suffered severe emotional distress including restlessness, attempts at taking her own life, menstruation problems, among other injuries.

In order to investigate her injuries and claims she directly placed  at issue in this action, the County issued a total of eight subpoenas for Plaintiff's medical records to five medical providers that Plaintiff had identified in her written discovery. These subpoenas requested medical and billing records for a limited, five-year period; the information from these subpoenas is directly relevant and related to explore Plaintiff's claims and injuries, as well as the injuries to which she admits to having prior to her incarceration. Plaintiff subsequently filed a motion to quash the subpoenas and it was denied by the Magistrate Judge, Gail Standish, on the grounds that the information sought is directly relevant to Plaintiff's claims and the County is entitled to this information.

Despite Judge Standish's proper ruling, Plaintiff now continues to attempt to impede the discovery process and brings this motion for a review of Judge Standish's ruling. Plaintiff argues that (1) the records are not relevant to her alleged injuries; (2) there are less intrusive means by which to get this information; and (3) the County is

*FILE # 22348*

2

COLLINS + COLLINS..
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone  (714) 823-4100
Fax      (714) 823-4101

not permitted to obtain third-party witness information that may be found within these records. Essentially, Plaintiff is asking this Court to engage in unequal discovery and prevent the County from getting information by which it is entitled. She is asking this Court to permit her to recover damages from the County for her alleged injuries and not allow the County to obtain in discovery the information which will help it prove and/or disprove her alleged injuries. However, she cannot "have her cake, and eat it too."

The County urges this Court that Plaintiff's contentions are entirely misconceived and unsupported by any case law or authority. Subpoenaing Plaintiff's medical records for a limited time period prior to and after her incarceration are routine and basic aspects of civil discovery. Because Plaintiff placed her mental and physical condition at issue by bringing this suit, and she admits to having preexisting conditions, the information in these records is highly relevant and probative to assist the County in investing Plaintiff's claims and preparing its defenses. Moreover, as the Judge Standish indicated, at this stage in discovery, the information is simply discoverable and does not automatically mean admissible.

Plaintiff however incorrectly argues that the County is not entitled to the records whatsoever and the County only can get this information by way of deposition, by which she has indicated that she will instruct her physicians not to answer the questions and thereby impede upon the County's ability to get this information. If the County is denied the information in Plaintiff's records, the County will be greatly prejudiced and unable to equally investigate Plaintiff's claims and injuries and defend itself in this action.

*FILE # 22348*

COLLINS + COLLINS..
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

**COUNTY'S OPPOSITION TO PLAINTIFF'S MOTION FOR REVIEW RE SUBPOENAS**

Given the following, the County respectfully requests that this Court deny Plaintiff's Motion to Review the Magistrate Court Judge's Ruling regarding the County's subpoenas and order the records be produced.

## II.  BRIEF PROCEDURAL BACKGROUND

At central issue in this motion are the County's subpoenas for medical records to Plaintiff's medical providers. On May 26, 2021, the County issued eight subpoenas pursuant to Federal Rule of Civil Procedure ("FRCP") Rule 45 to five medical providers, including, Pacific Clinics, LAC/USC Medical Center, Heredia Therapy Group, Greater El Monte Community Hospital, and Arcadia Mental Health, which Plaintiff disclosed in her responses to the County's discovery. To prevent the County from receiving the records responsive to the subpoenas, on June 15, 2021, Plaintiff filed a Motion to Quash the County's subpoenas improperly arguing that this information was not discoverable, intrusive, and privileged.

At a hearing related to this motion, on July 7, 2021, the Judge Standish, denied Plaintiff's Motion to Quash. Judge Standish correctly reasoned that Plaintiff's mental and physical status before and after the alleged incident were directly placed at issue when she filed her suit. Moreover, Plaintiff's claims are more than just "garden variety" claims for emotional distress and she has admitted to having preexisting mental health issues and conditions that are relevant to causation and the extent of Plaintiff's damages. The Court urged that denying the County the opportunity to review Plaintiff's medical records, would deny it critical information that is needed to defend against Plaintiff's

*FILE # 22348*

**COUNTY'S OPPOSITION TO PLAINTIFF'S MOTION FOR REVIEW RE SUBPOENAS**

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone  (714) 823-4100
Fax  (714) 823-4101

claims. Further, the Court added that the records were subject to the protective order in place in this matter and there was no risk of her confidential medical details being disclosed publicly. As such, the records are relevant and therefore should be produced.

## III. <u>LEGAL ANALYSIS</u>

### a. <u>The County's Subpoenas are Directly Relevant to Plaintiff's Claims and Plaintiff Placed a Laundry List of Physical and Emotional Conditions at Issue Which Favors Production of the Records</u>

Despite Plaintiff's contentions, the County's subpoenas for Plaintiff's medical records are directly related and relevant to the medical conditions and treatment Plaintiff has placed at issue in this litigation. As such, the County is entitled to this information as a regular part of civil discovery in order to investigate Plaintiff's claims and prepare its defenses in this matter. Further, Plaintiff has asserted more than just "abnormal menstrual bleeding" in her action and has put at issue a laundry list of emotional and physical injuries which she claims were caused or exacerbated by her short stay at WCJ.

It is basic practice that the County is entitled to all information potentially relevant to Plaintiff's claims. (*Oppenheimer Fund, Inc. v. Sanders,* (1978) 437 U.S. 340, 351, which held that " relevant information includes 'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'") Time and time again, the County has argued that the information in her medical records is directly relevant to her allegations of injury and were put at issue by Plaintiff when she filed this suit. The County needs the information related to Plaintiff's

COLLINS + COLLINS..
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

self-admitted pre-existing conditions and post-incident treatment in order to access her mental and physical state prior to going into the WCJ and therefore determine which injuries, if any, were caused and/or exacerbated by her time in the WCJ. Without this information, there is no practical way for the County to explore the nature and extent of Plaintiff's claimed injuries or prepare its defenses and it will be severely prejudiced. Moreover, obtaining this information from her medical records is the least intrusive method and most reliable method to receive truthful information related to Plaintiff's injuries. As such, the information sought in the County's subpoenas directly aligns with FRCP Rule 26 and should be produced.

The present case is similar to the case of *Baptiste v. Lids*, 2013 WL 5708201. *Baptiste* involved a lawsuit by the plaintiff against his former employer in which he alleged that he continued to suffer severe emotional distress as a result of the discrimination and harassment he faced. (*Id.* at *1.) Defendants in that case subpoenaed records from any medical providers that plaintiff received treatment from prior to his employment for conditions he claims were exacerbated by his employment and any treatment which he claims was necessary because of his employment. (*Id.*) Plaintiff was asked to sign a waiver to release such records and refused, claiming that such records were privileged. (*Id.*) However, the *Baptiste* Court disagreed with plaintiff and held that plaintiff "put his mental and emotional condition directly in issue and it will be significant component of the damages he seeks. (*Id.* at *2.) Moreover, the Court held that "[p]laintiff has waived the psychotherapist-patient privilege with respect to his

*FILE # 22348*

**COUNTY'S OPPOSITION TO PLAINTIFF'S MOTION FOR REVIEW RE SUBPOENAS**

COLLINS + COLLINS...
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4940
Fax (714) 823-4101

mental health records." (*Id.*)

This case, like *Baptiste*, favors the production of Plaintiff's medical records as they are relevant, and she waived any privileges when she put her mental state at issue by filing this suit. The County's subpoenas are limited in time and do not seek a full disclosure of Plaintiff's entire medical history, but rather only the time period shortly before and after the incident. Specifically, Plaintiff's Fourth Amended Complaint ("FAC") alleges that she suffered injuries including, but not limited to, dysfunctional menstrual bleeding, insufficient sleep duration, loss of trust, comfort, care, protection, and support, pain and suffering, debilitating psychological damage, insomnia, fatigue, loss of focus, suicidal thoughts, memory loss, fear, depression, nightmares, PTSD, feels numb and distant, no longer speaks to family or friends, and is no longer able to emotional connect with family and close friends. (FAC, ¶¶ 71, 84, 114, 119, 143-45.) Similar to *Baptiste,* her medical records and treatment will be a central component of her damages there is no privilege which outweighs the County's need for this information. As such, should the County's subpoenas be quashed, the County will not be able to explore Plaintiff's claims or prepare its defenses in this action and will be severely prejudiced.

Further, Plaintiff spends approximately three full pages educating this Court on her version of how therapy works and the type of information that is disclosed in therapy. In doing so, she attempts to negate the relevancy and need of the information related to Plaintiff's medical history sought in the County's subpoenas. However, she

COLLINS + COLLINS...
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

fails to provide any authority or case law which supports her position that the records are irrelevant whatsoever. Moreover, Plaintiff is not a doctor or expert and therefore cannot apprise on the correlation of and/or impact of her alleged past traumas to her current injuries. Additionally, Plaintiff also gives her unsupported and unqualified opinion of how Plaintiff's pre-existing conditions provide no probative value as to her current alleged injuries. Once again, Plaintiff is misguided.

Plaintiff further argues that the County should not be entitled to information in Plaintiff's medical records as it may contain information related to the "sexual abuse of Plaintiff, … financial affairs, her general health, the health of her spouse, children, parents, and siblings, and relationships between Plaintiff and her coworkers, friends, neighbors, family members, and more." (Motion, Page 7, Lines 19-21.) Plaintiff further admits that she had "preexisting anxieties" and acknowledges that her preexisting injuries may somehow connect to her alleged injuries. (Motion, Page 7, Lines 22-24.)

Oddly enough, although she is urging this Court that her preexisting anxieties are irrelevant, Plaintiff herself demonstrates the exact way in which these records are especially relevant and reasonably calculated to lead to the discovery of admissible evidence in this matter. FRCP Rule 26(b)(1) "provides for discovery in civil actions of 'any matter, not privileged, which is relevant to the subject matter involved…. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. Moreover, the 'information is 'relevant' if it relates to the claim or defense of the party seeking

*FILE # 22348*

**COUNTY'S OPPOSITION TO PLAINTIFF'S MOTION FOR REVIEW RE SUBPOENAS**

COLLINS + COLLINS
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

discovery or any other party, or to the credibility of any witness." (*Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.*, (C.D. Cal. 1997) 175 F.R.D. 646, 650.) Although Plaintiff tries to argue the opposite, her past medical traumas and treatment is highly relevant and probative to determine what injuries were alleged by caused by the County. Thus, despite Plaintiff's contention, Plaintiff's medical records are relevant and should be produced for purposes of investigating this lawsuit.

Additionally, there is a protective order in place in this matter which would limit the disclosure of Plaintiff's medical records to the County's attorneys only and will not permit public disclosure of such records. As such, there is no possibility that Plaintiff's potentially sensitive medical records will be disclosed outside of this litigation. Thus, Plaintiff's medical records should be produced.

     **b.** <u>**The County is Entitled to Both Obtain Medical Records and Take Oral Depositions and Does not Have to Pick and Choose as Plaintiff Contends**</u>

Plaintiff claims that she is entitled to self-determine which method of discovery the County is permitted to use and thereby which method is the least intrusive into her personal details. Plaintiff is mistaken and misguided if she is under the impression that she is able to determine they ways in which the County may defend itself in this case. As an individual with six separate ongoing litigations in both Federal and state court, Plaintiff should be well versed in discovery and its application in litigation.

Plaintiff's alleged "less intrusive" alternative to disclosing the medical records is

*FILE # 22348*

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

9

**COUNTY'S OPPOSITION TO PLAINTIFF'S MOTION FOR REVIEW RE SUBPOENAS**

to take the oral depositions of her treating physicians. Plaintiff has now put the County in the position where they have to "pick and choose" which methods of discovery it would like to utilize. However, per the FRCP, the County is entitled to take <u>both</u> oral depositions of Plaintiff's medical providers and receive documents that are relevant to Plaintiff's claims. (FRCP Rules 26 and 30.) The County is not obligated to pick and choose one method of discovery it may utilize under the FRCP, as it is entitled to both. Moreover, Plaintiff is not permitted to choose the methods or procedures by which the County and its attorneys find necessary to defend itself in this case.

Further, even assuming *arguendo* that the County utilized depositions rather than subpoenas to receive information related to Plaintiff's medical treatment, Plaintiff has admitted that she will misuse the discovery process and deter her doctors from answering the questions straightforwardly. Plaintiff has admitted that during these depositions she will instruct her medical providers not to answer when it comes to potentially sensitive information. Moreover, it is common knowledge that the medical records are likely a more reliable and trustworthy source of information related to Plaintiff's injuries and treatment as Plaintiff's doctors' memories' may fade regarding the particulars of her treatment.

   c. <u>Plaintiff's Argument regarding Disclosure of Third-Party Information is Misguided and Incorrect</u>

Plaintiff argues that the protective order in place in this matter only works in favor of the County. (Motion, Page 8, Lines 3 and 8.) However, Plaintiff's argument is

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

incorrect and absurd. The protective order is specifically in place in order to protect all parties and protect the confidential information that may be disclosed in this litigation. Judge Standish informed Plaintiff that the documents produced pursuant to subpoena would be for "attorney's eyes only" and would not be publicly disclosed. Plaintiff also signed and agreed to these terms; she is therefore bound by this order and its terms.

Further, Plaintiff contends that her medical records may contain information about third parties who may have information related to Plaintiff's claims. Plaintiff claims that the County is not entitled to such information on the basis that she was previously denied third-party contact information. (8:20-cv-00322-JWH-GJS, Doc. 71.) In support of this position, Plaintiff asserts that the protective order in place allegedly only works to protect the County but prevents Plaintiff from seeking information related to third-party inmates' contact information which she requested in a previous motion. (Motion, Page 8, 8-11.) Plaintiff's contention is comparing apples and oranges and is blatantly inapplicable.

On one hand, Plaintiff's previous motion to compel was related to her attempt to compel third-party contact information from other inmates that were housed in the WCJ at the same time as Plaintiff. (8:20-cv-00322-JWH-GJS, Doc. 60-61.) Judge Standish correctly denied Plaintiff's request for this contact information, stating that the request was too cumbersome to the County and improperly violated third-parties' rights to privacy. (8:20-cv-00322-JWH-GJS, Doc. 71.) Namely, it follows that the disclosure of an arrestees personal or identifying information may have a negative impact on their

*FILE # 22348*

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

11

**COUNTY'S OPPOSITION TO PLAINTIFF'S MOTION FOR REVIEW RE SUBPOENAS**

employment or that might subject them to "embarrassment," "more serious reputational harm," or even potentially compromise investigations or safety of investigators and witnesses. (See *Lahr* v. *National Transp. Safety Bd*. 569 F.3d 964, 974 (quoting, in part, *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, (1989) 489 U.S. 749, 756.) Plaintiff was however given the list of inmates housed at the same time as her.

On the other hand, Plaintiff is now attempting to use this denial of third-party information to prevent the disclosure of her own medical records. This comparison simply does not make sense. In Plaintiff's motion, she was seeking personal, sensitive, contact information related to third parties. However, in this motion, the County is seeking information directly from Plaintiff, who is a first party to this litigation and has a stake in the litigation and not specifically from third parties who do not have a stake in the matter. Any information related to third-party witnesses that is uncovered by the County from the subpoenas is incidental and a permitted part of civil discovery. (*See Puerto v. Superior Ct.*, (2008) 158 Cal. App. 4th 1242, 1254.) Plaintiff's attempt however to get confidential information out of third parties with no interest in the matter is improper and an extreme violation of privacy. Thus, although Plaintiff attempts to convolute the protective order and confuse this Court, her argument is entirely incorrect and misguided once again.

Finally, as a procedural matter, her arguments as to preventing the disclosure of third-party contact information is not ripe in this present motion because she failed to

**COUNTY'S OPPOSITION TO PLAINTIFF'S MOTION FOR REVIEW RE SUBPOENAS**

COLLINS + COLLINS
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

seek review of Judge Standish's prior ruling when it was made. Thus, Plaintiff's ability to raise such an argument now is improper and untimely and should not be considered.

## IV.   <u>CONCLUSION</u>

Given the above, the County respectfully requests that this Court deny Plaintiff's Motion to Review the Magistrate Court Judge's Ruling regarding the County's Subpoenas and order that the records be produced immediately.

DATED:  July 23, 2021                     COLLINS + COLLINS LLP

By: _____
REBECCA J. CHMURA
MICHAEL L. WRONIAK
Attorneys for Defendants COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI; MARK STICHTER; REYNA RIVERA; DEVONNA FALCONER; KASSANDRA MAYER; ELIA RODRIGUEZ; RACHEL ADDINGTON

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone   (714) 823-4100
Fax      (714) 823-4101

1   JANE DOE

2   11151 Valley Blvd #4886,

3   El Monte, CA 91734

4   626-208-9665

5   Plaintiff in Pro Se

6

7

8               **UNITED STATES DISTRICT COURT**

9               **CENTRAL DISTRICT OF CALIFORNIA**

10

11  JANE DOE,                          No. 8:20-cv-00322-JWH-GJS

12          Plaintiff,

13      v.                             **JOINT STIPULATION RE: PLAINTIFF'S**
                                       **MOTION TO QUASH SUBPOENAS**
14  COUNTY OF ORANGE, et al
                                       Judge: Hon. Gail J. Standish
15          Defendants.                Action Filed: Feb 18, 2020
                                       Fact Discovery cutoff date: Oct 6, 2021
16                                     Pretrial-conference date: None Set
                                       Trial date: None Set
17

18

19          Pursuant to Rule 37 of the Federal Rules of Civil Procedure and Local Rule 37-2 of the

20  Local Rules of this Court, JANE DOE ("Plaintiff") and Defendant County of Orange ("County")

21  respectfully submit the following Joint Stipulation Regarding Plaintiff's Motion to Quash

22  Subpoenas. The Parties have attempted unsuccessfully to resolve their disputes after they met and

23  conferred on May 28, 2021 through a telephonic conference lasted approximately 30 minutes, and

24  therefore respectfully seek the assistance of the Court.

25      ///

26      ///

27      ///

28      ///

                                            1

# Table of Content

I.     INTRODUCTION ................................................................................. 3

A.     Plaintiff's Introductory Statement ............................................... 3

B.     The County's Introductory Statement ......................................... 5

II.    DISCOVERY REQUESTS IN DISPUTE AND THE PARTIES' POSITION ................... 7

A.     Documents Requests to LAC/USC Medical Center, Arcadia Mental Health Center, Pacific Clinics, Greater El Monte Community Hospital, Heredia Therapy Group .................................... 7

PLAINTIFF'S POSITION: ................................................................................. 8

THE COUNTY'S POSITION: ........................................................................... 19

JOINT STIPULATION RE: PLAINTIFF'S MOTION TO QUASH SUBPOENAS

ER 106

## I.   INTRODUCTION

A. Plaintiff's Introductory Statement

Plaintiff seeks an order quashing eight subpoenas served upon Plaintiff's five health care providers. This action arose out of the four-day incarceration of JANE DOE  ("Plaintiff") in Women's Central Jail ("WCJ") operated by Orange County Sheriff's Department ("OCSD"). In her operative complaint, Plaintiff alleges First, Fourth, Fourteenth Amendments, and other violations, and requests damages on various grounds.

By commencing this action, Plaintiff did not place her entire physical, psychological and physiological health and treatment at issue in this matter, specifically those were not caused by the incidents detailed in Plaintiff's operative complaint. Plaintiff has placed her physical and psychological condition at issue only to the extent it was caused by Defendants' actions. Waiver of the psychotherapist-patient privilege entails more than an invasion of privacy; it threatens access to treatment by breaking the "imperative need for confidence and trust" upon which psychotherapy is rooted. *Jaffee v. Redmond*, 518 U.S. at 10, 116 S.Ct. 1923. (In *Jaffee*, the Supreme Court repeatedly analogized the psychotherapist-patient privilege to the attorney-client privilege.) For policy reasons, a waiver of the psychotherapist-patient privilege should not be broadly applied, particularly in civil rights cases where Congress has placed much importance on litigants' access to the courts and the remedial nature of such suits. Congress provided for recovery of attorney's fees in cases such as this were the plaintiff to prevail. The purpose of fee-shifting provision in civil rights legislation is "to ensure 'effective access to the judicial process.'" *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (citation omitted). That purpose would be defeated were the broad or uncertain test of waiver applied and suits vindicating civil rights and seeking recovery for general damages thereby deterred.

On May 26, 2021 the County served subpoenas upon Plaintiff's five medical providers requesting both Plaintiff's billing and medical records since Jan 1, 2016 to present and demanding production on Jun 25, 2021. In those subpoenas the County requests any and all records from January 1, 2016 to Present, including but not limited to statements of accounts, writings, any payments made or received, any credits, adjustments, write-offs, reconciliations, contract price

3

1 payments or reduction, payments by any health insurance entity, personal payments by or to
2 patient from any source, HMO, PPO, Medi-Cal, Medicare or contract payments by any entity,
3 billing ledgers, reports and/or statements of charges rendered and any insurance records; medical
4 reports, including doctor's entries, nurses' charts, progress reports, physical therapy records,
5 pathology reports, x-ray reports, lab reports, case history, emergency room records, counseling
6 records, admitting sheets, special tests, inpatient and outpatient records, any sign-in sheets
7 pertaining to the care and treatment, diagnosis, prognosis, condition, discharge, including but not
8 limited to, any records/documents that may be stored digitally and/or electronically, including
9 orders and results and specifically for any discharge orders, all detailed screen shots within any
10 computer system; any and all film/radiology records, original x-ray films, MRI's, CT scans.

11      The County previously admitted that the information sought was to differentiate Plaintiff's
12 previous injuries from ones that stem from this lawsuit by seeking Plaintiff's medical records.
13 First, the County does not need psychological records to differentiate injuries caused by sexual
14 assault from ones caused by Defendants' actions, neither the jurors do. For instance, a reasonable
15 person would not need medical records to differentiate a lung cancer from liver cancer. As Justice
16 Traynor explained in the court's unanimous opinion in State Rubbish etc. *Assn. v. Siliznoff* (1952)
17 38 Cal.2d 330, at page 338, the jurors are best situated to determine whether and to what extent
18 the defendant's conduct caused emotional distress, by referring to their own experience. "[T]he
19 testimony of the plaintiff alone can substantiate a jury's award of emotional distress damages."
20 *Harper v. City of Los Angeles*, 533 F.3d 1010, 1029 (9th Cir. 2008).The attempted distinction
21 between Plaintiff's previous injuries and ones that stem from this lawsuit merely clouds the issue.
22 There is no scientific evidence or formula showing that a person who has been emotionally
23 injured would suffer less pain from the current traumatic event. "To hold that a privileged
24 confidential communication should be disclosed in discovery simply because it is relevant to the
25 issues in dispute would essentially ameliorate the psychotherapist-patient privilege." *Buchholtz v.
26 Rogers Benefit Grp., Inc*., Civil No. 12-cv-2167-BEN (DHB), at *14 (S.D. Cal. Apr. 18, 2013).
27 "After *Jaffee*, a court cannot force disclosure of [psychotherapist-patient] communications solely
28 because it may be extremely useful to the finder of fact." *Crane v. Rodriguez*, No. 2:15-cv-0208

1   TLN KJN P, at *9 (E.D. Cal. Mar. 19, 2020). Second, the inquiry into Plaintiff's previous

2   emotional injuries exceeds the scope as to whether, and to what extent, Defendants' alleged

3   conduct caused Plaintiff to suffer emotional harm. Not only it confuses the jury but also distracts

4   the jury's attention from the damages Plaintiff suffered resulting from direct and unique injuries

5   inflicted by Defendants. Third, seeking Plaintiff's medical records over a span of five years is

6   clearly intrusive and unwarranted, especially when multiple third parties can offer testimony.

7   Even when discovery of private information is found directly relevant to the issues of ongoing

8   litigation, it will not be automatically allowed. See *Binder v. Superior Court* (1987) 196 Cal.

9   App.3d 893, 900 [242 Cal. Rptr. 231].

10  B.  The County's Introductory Statement

11      Plaintiff spends nearly 17 pages educating the Court on privacy and privilege without

12  accurately representing the case law and authority applicable to these circumstances.  Plaintiff's

13  position is confusing and repetitive. The simple truth is Plaintiff has put her physical and

14  psychological conditions at issue and therefore, Plaintiff has waived the privilege she alleges

15  prevents the County from requesting documents from her medical providers.

16      On or about May 26, 2021, the County issued eight subpoenas pursuant to Federal Rule of

17  Civil Procedure Rule 45 to the five medical providers Plaintiff identified in written discovery.

18  These subpoenas requested medical and billing records for a 5-year period from Plaintiff's

19  treating physicians for the physical *and* emotional injuries she allegedly sustained as a result of

20  this incident. The subpoenas seek records that are directly relevant Plaintiff's claims and injuries.

21      While the County does not dispute that some of the requested records are entitled to the

22  common law psychotherapist-patient privilege that has been recognized by this Court, Plaintiff

23  has clearly and indisputably waived that privilege. Plaintiff does not allege simple or "garden

24  variety" emotional distress, she contends that her emotional distress was so severe that she was

25  hospitalized and placed on suicide watch, she later attempted to take her own life, that, and that

26  her emotional distress manifested into physical injury related to her menstruation. She also brings

27  a cause of action for intentional infliction of emotional distress ("IIED"). Case law has repeatedly

28  held that when determining whether there is waiver under either the broad, middle or narrow

1    approach, an allegation of IIED coupled with a physical injury, specific psychiatric injury and/or

2    disorder or a claim of unusually severe emotional distress, and the fact that a plaintiff does not

3    dispute that the requested records contain the mental condition "at issue" constitutes waiver of the

4    psychotherapist-patient privilege. (*Fitzgerald v. Cassil*, 216 F.R.D. 632, 639–40 (N.D. Cal.

5    2003).) Plaintiff checks each of these "boxes". Plaintiff also has not stipulated or provided

6    confirmation that she will not rely on any treating physician to prove her emotional distress and

7    absent such confirmation, there is indication of affirmative reliance on the records which also

8    constitutes waiver. (*Id.*) Additionally, the County has not sought Plaintiff's entire medical or

9    psychological history, and instead, has sought 5-years of records which would allow the County

10   to assess Plaintiff's physical and mental health pre- and post- incident and assess any

11   exacerbations or worsening of her conditions as a result of the incident.

12          Nowhere in the Federal Rules of Civil Procedure does the discovery process require the

13   County to use the least, or even lesser intrusive means to seek the requested information,

14   especially when the reason for seeking such information through less intrusive means is the

15   comfort of Plaintiff. If Plaintiff had issue with discussing and bringing her injuries and claims to

16   light, Plaintiff should not have brought this action or sought recovery for such emotional injuries.

17   Additionally, Plaintiff has already indicated to counsel for the County that she will instruct her

18   treating physician and friends (which she has offered their testimony as an alternative to the

19   subpoenas) not to answer questions if it exceeds the scope of what she believes the County is

20   entitled to. That will result in further discovery issues and likely Court involvement. The

21   subpoenas eliminate future discovery disputes and Court involvement on this particular issues,

22   especially considering that they can be produced under the protective orders in place and do not

23   require on-going Court involvement. Plaintiff has not identified other treating physicians or

24   medical providers and thus, these requests would satisfy the County's request and discovery

25   needs at this time.

26          Plaintiff continues to place blockades every step of the way regarding the County's

27   discovery efforts particularly when related to her injuries and/or damages. Pursuant to Rule 26,

28   the County "may obtain discovery regarding any nonprivileged matter that is relevant to any

1  party's claim or defense and proportional to the needs of the case, considering the importance of

2  the issues at stake in the action, the amount in controversy, the parties' relative access to relevant

3  information, the parties' resources, the importance of the discovery in resolving the issues, and

4  whether the burden or expense of the proposed discovery outweighs its likely benefit. Information

5  within this scope of discovery *need not be admissible in evidence to be discoverable*." Plaintiff

6  discusses case law and authority regarding admissibility at trial and the requirements to prove

7  emotional damages at trial. Those arguments are not ripe and cloud the Court's ability to rule on a

8  simple issue: whether the County can properly subpoena the records of the injuries Plaintiff has

9  placed at issue in this litigation. Plaintiff should not be allowed to prevent the disclosure of

10 discoverable evidence that is imperative to the County's ability to assess Plaintiff's claims and

11 damages, particularly her intentional infliction of emotional distress cause of action. The

12 County's engagement in the proper discovery process, particularly requests for a reasonable

13 amount of time and limited to the providers Plaintiff has identified, does not amount to a fishing

14 expedition.

15       Plaintiff has waived the psychotherapist-patient privilege and that the subpoenas seek

16 relevant information that has substantial probative value and does not exceed the reasonable

17 scope of permissible discovery under either the Federal Rules of Civil Procedure or established

18 statutory or case law of this Court.

19 **II.**    **DISCOVERY REQUESTS IN DISPUTE AND THE PARTIES' POSITION**

20    A.  <u>Documents Requests to LAC/USC Medical Center, Arcadia Mental Health Center, Pacific</u>

21 <u>Clinics, Greater El Monte Community Hospital, Heredia Therapy Group</u>

22    1. Any and all medical DOCUMENTS from January 1, 2016 to Present, detailing, referring

23 to, describing or otherwise mentioning JANE DOE; DOB XXXXXX, including but not limited

24 to, medical reports, including doctor's entries, nurses' charts, progress reports, therapy records,

25 pathology reports, x-ray reports, lab reports, case history, emergency room records, counseling

26 records, admitting sheets, special tests, inpatient and outpatient records, any sign-in sheets

27 pertaining to the care and treatment, diagnosis, prognosis, condition, discharge, including but not

28 limited to, any records/documents that may be stored digitally and/or electronically, including

7

1    orders and results and specifically for any discharge orders, all detailed screen shots within any

2    computer system;

3        2. A disc of any and all film/radiology records from January 1, 2016 to Present, detailing,

4    referring to, describing or otherwise mentioning JANE DOE; DOB XXXXXX, including but not

5    limited to original x-ray films, MRI's, CT scans; and

6        3. Any and all billing DOCUMENTS from January 1, 2016 to Present detailing, referring to,

7    describing or otherwise mentioning JANE DOE; DOB XXXXXX, including but not limited to,

8    statements of accounts, writings, any payments made or received, any credits, adjustments, write-

9    offs, reconciliations, contract price payments or reduction, payments by any health insurance

10    entity, personal payments by or to patient from any source, HMO, PPO, Medi-Cal, Medicare or

11    contract payments by any entity concerning said patient, billing ledgers, reports and/or statements

12    of charges rendered and any insurance records. (This request for records includes any and all

13    evidence of any payments from any source regarding the account of this patient to or from any

14    person and/or entity, including but not limited to any records/documents that may be stored

15    digitally and/or electronically.

16    **PLAINTIFF'S POSITION:**

17        Plaintiff has a right of privacy under both federal and California constitutions. "Given the

18    importance of the patient's understanding that her communications with her therapist will not be

19    publicly disclosed, any State's promise of confidentiality would have little value if the patient

20    were aware that the privilege would not be honored in a federal court." *Jaffee v. Redmond*, 518

21    U.S. 1, 13 (1996). "Although federal law controls, the Court will also consider state law as to the

22    right of privacy to the extent it is not inconsistent with federal law. See *Soto v. City of Concord*,

23    162 F.R.D. at 618 (N.D.Cal.1995) (determining that California state constitutional right to

24    privacy is consistent with federal right to privacy)." *McClure v. Prisoner Transp. Servs. of Am.*,

25    No. 1:18-cv-00176-DAD-SKO, at *4 (E.D. Cal. Mar. 12, 2020). The Ninth Circuit has held that

26    Article I, section I of the California Constitution contains an explicit guarantee of the right of

27    "privacy" which is broader and more protective in scope than that of the United States

28    Constitution. *Leonel v. Am. Airlines, Inc.*, 400 F.3d 702, 711 (9th Cir. 2005), opinion amended on

denial of reh'g, No. 03-15890, 2005 WL *23 976985 (9th Cir. Apr. 28, 2005). A plaintiff's right

of privacy remains protected as to physical and mental conditions unrelated to the claim or injury

sued upon. The "patient-litigant exception [to the psychotherapist-patient privilege] allows only a

limited inquiry into the confidences of the psychotherapist-patient relationship, compelling

disclosure of only those matters directly relevant to the nature of the specific 'emotional or

mental' condition which the patient has voluntarily disclosed and tendered in his pleadings or in

answer to discovery inquiries. Furthermore, even when confidential information falls within this

exception, trial courts, because of the intimate and potentially embarrassing nature of such

communications, may utilize the protective measures at their disposal to avoid unwarranted

intrusions into the confidences of the relationship." (*In re Lifschutz*, 2 Cal.3d at p. 431, 85

Cal.Rptr. 829, 467 P.2d 557.)

In *Britt v. Superior Court* (1978) 20 Cal.3d 844, the Court stated that 'while the filing of a

lawsuit may implicitly bring about a partial waiver of one's constitutional right of associational

privacy, the scope of such "waiver" must be narrowly rather than expansively construed, so that

plaintiffs will not be unduly deterred from instituting lawsuits by the fear of exposure of their

private associational affiliations and activities.' (Id. at p. 859.) Therefore, the Court noted, an

implicit waiver of a party's constitutional rights encompasses only discovery directly relevant to

the plaintiff's claim and essential to the fair resolution of the lawsuit. [Citations.]" (*Vinson v.

Superior Court*, 43 Cal.3d at p. 842 (Cal. 1987), italics added.) See also *Cook v. Yellow Freight

Sys., Inc.*, 132 F.R.D. 548, 552 (E.D. Cal. 1990); *Estate of Sanchez v. Cty. of Stanislaus*, No.

118CV00977DADBAM, 2019 WL 1959579, at *5 (E.D. Cal. May 2, 2019) (same).

Where discovery involves matters encompassed by the right to privacy, courts recognize

that "judicial discovery orders inevitably involve state-compelled disclosure...." (*Britt v. Superior

Court* (1978) 20 Cal.3d 844, 856, fn. 3 [143 Cal. Rptr. 695, 574 P.2d 766], italics in original.)

Therefore, in reviewing a party's resistance to a discovery order, based on the claim that it

entrenches upon a constitutional right, courts treat the compelled disclosure as a product of state

action subject to constitutional constraints. (Ibid.) "`The constitutional right of privacy is "not

absolute"; it may be abridged when, but only when, there is a "compelling" and opposing state

9

1  interest.' ... The following guidelines assist in determining when disclosure of private information

2  may be compelled: `In an effort to reconcile these sometimes competing public values, it has been

3  adjudged that inquiry into one's private affairs will not be constitutionally justified simply

4  because inadmissible, and irrelevant, matter sought to be discovered might lead to other, and

5  relevant, evidence.['] [Citation.] "`When compelled disclosure intrudes on constitutionally

6  protected areas, it cannot be justified solely on the ground that it may lead to relevant

7  information."' [Citations.]

8      "And even when discovery of private information is found directly relevant to the issues of

9  ongoing litigation, it will not be automatically allowed; there must then be a 'careful balancing'

10  of the 'compelling public need' for discovery against the 'fundamental right of privacy'." (*Binder*

11  *v. Superior Court* (1987) 196 Cal. App.3d 893, 900 [242 Cal. Rptr. 231], italics in original.)

12      In balancing "compelling public need" against the "fundamental right of privacy," the

13  probative value of the sought-after information is a substantial consideration. Jefferson provides

14  an excellent yardstick for a determination of the issue of materiality and probative value: "This

15  involves the strength of the relationship between the evidence and inferences derived therefrom

16  and the issue upon which the evidence is offered, and whether such evidence tends to prove a

17  main issue or a collateral matter. If proffered evidence offers strong inferences on a main issue in

18  a case, its probative value is substantial. If the evidence affords only weak inferences of fact on a

19  major issue, its probative value is obviously weak or slight. Also, if such evidence tends to prove

20  some collateral, disputed issue, such as impeachment of a witness on a collateral matter, its

21  probative value is less than that of evidence offering substantial proof of a main issue." (1

22  Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 22.1, p. 589, italics added.)

23      Before a defendant can seek discovery of private information, it must first show that the

24  information is directly relevant to the litigation. The rules of discovery do not allow unrestricted

25  access to all species of information. The party seeking the constitutionally protected information

26  has the burden of establishing that the information sought is directly relevant to the claims. This

27  showing must actually be made, not merely by speculation, before the discovery can be

28  compelled. In other words, to obtain Plaintiff's private information Defendants must first show a

10

JOINT STIPULATION RE: PLAINTIFF'S MOTION TO QUASH SUBPOENAS

1  compelling interest in the discovery, and then must also show that the discovery will (not might)

2  elicit (not just lead to) evidence directly relevant to the matter at hand and there is no other, less

3  intrusive means of obtaining the necessary information.

4  When addressing discovery disputes courts will judge each individual request by weighing

5  the relevance of each request to the alleged claim, the extent of the burden associated with

6  production, and the benefit gained from obtaining such information.

7  Courts have repeatedly held that merely because an individual files a lawsuit in which

8  emotional distress is claimed, the plaintiff is not opened up to wholesale discovery of every

9  aspect of their life, even if it might have some bearing on emotional distress. (See, e.g., *Britt v.*

10  *Superior Court* (1978) 20 Cal.3d844.)

11  Relevance (much less "reasonably calculated") is not the standard when privacy rights are at

12  issue. The defendant's legitimate need for discovery must still be balanced against the individual

13  plaintiff's privacy rights, and the defendant must show a compelling interest for the discovery.

14  Inquiry into one's private affairs will not be constitutionally justified simply because

15  inadmissible, and irrelevant, matter sought to be discovered might lead to other, and relevant,

16  evidence. *Board of Trustees v. Superior Court* (1981) 119 Cal.App.3d 516, 525.

17  Courts have also held that when privacy rights are at issue, even if a compelling interest and

18  direct relevance are shown, if there is a less intrusive means of obtaining the discovery, it will be

19  preferred to the more intrusive means. In balancing these interests, courts should consider

20  whether " '[p]rotective measures, safeguards[,] and other alternatives may minimize the privacy

21  intrusion.' " (*Lewis v. Superior Court* (2017) 3 Cal.5th at p. 576, 220 Cal.Rptr.3d 319, 397 P.3d

22  1011.)

23  The California Supreme Court in *In re Lifschutz*, 2 Cal.3d 415 rejected the defendants'

24  contention that plaintiff, by filing a personal injury claim asking for recovery from "mental and

25  emotional distress," had totally waived psychotherapist-patient privilege for records relating to

26  the treatment of a mental ailment 10 years earlier. "The court construed § 1016 to require

27  disclosure <u>only</u> of information directly pertinent to issues raised by the patient in a lawsuit and

28  held that in applying the section, the psychotherapeutic privilege should be liberally construed in

11

1  favor of the patient." *Caesar v. Mountanos*, 542 F.2d 1064, 1067 (9th Cir. 1976), quoting *In re*

2  *Lifschutz*.

3       The court's analysis rested in part on right to privacy aspects of psychotherapeutic

4  communications. (Id. at pp. 431-432.) The court noted: "If the provision had as broad an effect as

5  is suggested by petitioner, it might effectively deter many psychotherapeutic patients from

6  instituting any general claim from mental suffering and damage out of fear of opening up all past

7  communications to discovery. This result would clearly be an intolerable and overbroad intrusion

8  into the patient's privacy, not sufficiently limited to the legitimate state interests embodied in the

9  provision and would create opportunities for harassment and blackmail." (Id. at p. 435.) Further,

10  "disclosure can be compelled only with respect to those mental conditions the patient-litigant has

11  'disclosed ... by bringing an action in which they are in issue' [citation]." (Ibid., italics in

12  original.)

13       In *Mendez v. Superior Court* (1988) 206 Cal. App. 3d 557 the Court rejected the defendants'

14  basic notion that plaintiff's claimed injury of severe emotional distress is somehow apportionable

15  between preexisting anxieties and the mental trauma caused by the defendants' alleged conduct.

16  The Court addressed emotional distress distinctly related to particular conduct separate and apart

17  from the turmoil created by life in general. Were the Court to accept defendants' proposition,

18  arguably a defendant might pry not only into the sexual affairs of the plaintiff and her spouse, but

19  into her financial affairs, her health (medical records) and the health of her spouse, children,

20  parents and siblings. Problems in any of these areas might have caused preexisting emotional

21  upset. The Court held that Defendants' argument, that plaintiff's claimed injury of severe

22  emotional distress is somehow apportionable between preexisting anxieties and the mental trauma

23  caused by the defendants' alleged conduct, would allow inquiry into anything that might

24  conceivably cause some measure of distress or anxiety without regard to its protected nature. It

25  creates the very Catch-22 the Legislature was seeking to avoid. The Legislature has emphatically

26  stated that such inquiry would at most generate results of minimal probative value and should be

27  discouraged. As such, Defendants' argument of exacerbation of preexisting emotional injury

28  failed.

The legislative statement of purpose compels the conclusion that because emotional distress is inextricably intertwined in the cause of action that to allow privacy intrusion in the ordinary case would have a chilling effect on the pursuit of a cause of action for invasion of privacy. Any other conclusion would render the statute meaningless in the face of a simple claim for damages involving consequential mental distress. Thus, the legislative requirement that only in extraordinary circumstances (as opposed to ordinary circumstances) is inquiry to be permitted, compels the conclusion that the Legislature did not intend, and its statement of purpose disavows, that a simple claim for derivative emotional trauma waives the right of privacy.

Fishing expedition is not allowed when dealing with constitutionally protected, private matters. Rather, constitutionally protected information is treated like privileged information in the discovery process. "The party seeking the constitutionally protected information has the burden of establishing that the information sought is directly relevant to the claims." (*Tylo v. Superior Court* (1997) 55 Cal.App.4th 1379, 1387.) Further: "Even when discovery of private information is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed ... The scope of any disclosure must be narrowly circumscribed, drawn with narrow specificity, and must proceed by the least intrusive manner." (*Davis v. Superior Court*, 7 Cal.App.4th at 1014 (Cal. Ct. App. 1992)). The party seeking information may raise in response whatever legitimate and important countervailing interests disclosure serves, while the party seeking protection may identify feasible alternatives that serve the same interests or protective measures that would diminish the loss of privacy. A court must then balance these competing considerations. (Id. at pp. 37-40.) See *Williams v Superior Court* (2017) 3 Cal.5th 531, 538.

Various matters which the courts have found to be constitutionally protected include: personnel files (*Board of Trustees v. Superior Court* (1981) 119 Cal.App.3d 516, 528-530); educational records (*Porten v. University of San Francisco* (1976) 64 Cal.App.3d 825, 829); medical records (*Board of Medical Quality Assurance v. Gherardini* (1979) 93 Cal.App.3d 669, 678); mental health/ psychological history (*Davis v. Superior Court*, 7 Cal.App.4th 1008 (Cal. Ct. App. 1992) at p. 1013-1014); sex life (*Vinson v. Superior Court* (1987) 43 Cal.3d 833, 841); (John B. v. Superior Court (Bridget B.) (2006) 38 Cal.4th 1177, 1198); and financial information

13

1     (*Moskowitz v. Superior Court* (1982) 137 Cal.App.3d 313).)

2       The courts recognize that a person's medical history is an especially private area, "infinitely

3 more intimate, more personal in quality and nature" than other areas protected by the

4 constitutional right to privacy. (*Board of Medical Quality Assurance v. Gherardini*, 93

5 Cal.App.3d 669 (Cal. Ct. App. 1979) at 678.) The purposes for zone of privacy surrounding

6 medical records are (1) 'to preclude humiliation of the patient that might follow disclosure of his

7 ailments' [Citations] and (2) to encourage the patient's full disclosure to the physician of all

8 information necessary for the effective diagnosis and treatment of the patient. (Citations.) (Ibid.)

9 Both these purposes would be severely undermined if courts allowed litigants to overstep privacy

10 rights by granting them unrestricted access to medical and psychiatric records. "If anything,

11 delving into a plaintiff's medical or psychiatric records is even more invasive than conducting a

12 medical or psychological examination[.]" *E.E.O.C. v. Serramonte*, 237 F.R.D. 220, 224 (N.D.

13 Cal. 2006).

14       "[T]he matters disclosed to the physician arise in most sensitive areas often difficult to

15 reveal even to the doctor." (*Board of Medical Quality Assurance v. Gherardini* (1979) 93

16 Cal.App.3d 669, 679, 156 Cal.Rptr. 55.) A patient's complete medical file may include

17 descriptions of symptoms, diagnoses, test results, family history, and other intimate and sensitive

18 details even they are not really concerning the treatment as health care providers usually collect

19 broad information about a patient's life, e.g. when a patient's first menstruation came. Relevant

20 portions of Plaintiff's medical and psychological history information can be easily obtained

21 through testimony. Here, Defendants never made any inquiries about Plaintiff's prior

22 menstruation problem. If Plaintiff responded to defendants' interrogatories under oath that she

23 never had menstruation problem prior to August 2019 which can be corroborated by Plaintiff's

24 friends and physician, seeking Plaintiff's medical records over the last five years is clearly a

25 fishing expedition. Defendants made no attempts to obtain relevant medical information through

26 less intrusive means and intended to seek Plaintiff's medical records over five years while they

27 provided no competent evidence to support their intended need other than a conclusory assertion

28 that Plaintiff's testimony was not reliable.

1        A plaintiff's right of privacy remains protected as to physical and mental conditions

2  unrelated to the claim or injury sued upon. (See id. at p. 864.) The burden is on the party seeking

3  the discovery to demonstrate that the information sought is directly relevant. (Id. at 859-862.)

4  Disclosure may only be ordered if it would serve a "compelling public interest." (*Britt*, supra, 20

5  Cal.3d at 855-856; *John B. v. Superior Court*, 38 Cal.4th 1177 (Cal. 2006) at 1199.)

6        The state Constitution expressly grants Californians a right of privacy. (Cal. Const., art. I, §

7  1.) Protection of informational privacy is the provision's central concern. (*Hill v. National

8  Collegiate Athletic Assn*. (1994) 7 Cal.4th 1, 35 [26 Cal.Rptr.2d 834, 865 P.2d 633].) The *Hill*

9  Court established a framework for evaluating potential invasions of privacy. The party asserting a

10  privacy right must establish a legally protected privacy interest, an objectively reasonable

11  expectation of privacy in the given circumstances, and a threatened intrusion that is serious. (Id.

12  at pp. 35-37.) The party seeking information may raise in response whatever legitimate and

13  important countervailing interests disclosure serves, while the party seeking protection may

14  identify feasible alternatives that serve the same interests or protective measures that would

15  diminish the loss of privacy. A court must then balance these competing considerations. (Id. at pp.

16  37-40.) See *Williams v Superior Court* (2017) 3 Cal.5th 531, 538.

17        In *Vasconcellos v. Cybex Intern., Inc*., 962 F. Supp. 701 (D. Md. 1997), quoted by *Doe v.

18  City of Chula Vista*, 196 F.R.D. 562 (S.D. Cal. 1999), even the court found that plaintiff had

19  waived the psychotherapist-patient privilege by seeking emotional distress damages in her

20  employment discrimination suit after she had been sexually assaulted at work, the court ruled that

21  Defendants may seek plaintiff's medical record if they can show cause as to why such an

22  intrusion into the therapeutic relationship is the <u>only possible means</u> to obtain relevant

23  information. In facts extremely similar to *Vasconcellos*, Plaintiff has a right to have discovery

24  limited to information that is directly relevant to the lawsuit. See *Vasconcellos v. Cybex Intern.,

25  Inc.*, 962 F. Supp. 701, 709 (D. Md. 1997).

26        With respect to federal litigation governed by the FRCP, Fourth Amendment protection

27  stands. Therefore, the Fourth Amendment protects civil litigants from unreasonable searches into

28  their private life. Any obligations or disclosures the FRCP compel must first comply with the

1   Fourth Amendment. See DeVeaux, at 1092 ("Civil [d]ocument [p]roduction [o]rders [c]onstitute

2   '[s]earches' [w]ithin the [m]eaning of the Fourth Amendment[.]"); Chad DeVeaux, A Tale of

3   Two Searches: Intrusive Civil Discovery Rules Violate the Fourth Amendment, 46 CONN. L.

4   REV. 1083, 1093 (2014) ("[Civil] [d]iscovery is the 'coerced production of information' . . .

5   backed by the power of the State." (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35–36

6   (1984)).

7         Fourth Amendment can inform courts about how best to analyze the reasonableness of a

8   certain disputed request. Just as the seizure of a certain item might be appropriate in one setting

9   and inappropriate in another, a certain discovery request might be satisfactory for one case, but

10  completely outside discovery's scope in the next. Courts evaluating appropriateness of discovery

11  request objections can learn from courts that have determined search and seizure appropriateness

12  after Fourth Amendment challenges.

13        Courts are required to "balance the following factors to determine whether the governmental

14  interest in obtaining information outweighs the individual's privacy interest: (1) the type of

15  information requested, (2) the potential for harm in any subsequent non-consensual disclosure, (3)

16  the adequacy of safeguards to prevent unauthorized disclosure, (4) the degree of need for access,

17  and (5) whether there is an express statutory mandate, articulated public policy, or other

18  recognizable public interest militating toward access." *Tucson Woman's Clinic v. Eden*, 371 F.3d

19  1173, 1193 (9th Cir. 2004).

20        Weighing the factors in the balancing test, the overall balance weighs in favor of non-

21  disclosure. First, the exact type of information requested is the first step to seek Plaintiff's

22  medical, psychological, and/or psychiatric records which enjoy the highest levels of privacy

23  protection, especially considering the information concerns sexual assault. Second, the potential

24  for harm in non-consensual disclosure would be extremely high, again, considering the sensitive

25  information the files contain and the fact that the information concerns sexual assault. "Effective

26  psychotherapy depends upon an atmosphere of confidence and trust, and therefore the mere

27  possibility of disclosure of confidential communications may impede development of the

28  relationship necessary for successful treatment. The privilege also serves the public interest, since

16

the mental health of the Nation's citizenry, no less than its physical health, is a public good of transcendent importance." *Jaffee v. Redmond*, 518 U.S. 1, 2 (1996). The disclosures of Plaintiff's medical and psychological records will adversely affect Plaintiff's psychiatric treatment by destroying the confidentiality of her relationship with her health care providers, especially when the treatment is still ongoing. Third, even with any safeguards in place to prevent unauthorized disclosure, the disclosure itself is intrusive and unnecessary. Fourth, the degree of need for access by Defendants is low. A plaintiff is not required to offer corroborating medical evidence in order to establish emotional distress damages. See *In re Dawson*, 390 F.3d 1139, 1149-50 (9th Cir. 2004). "Medical evidence of symptoms caused by the emotional distress is not required." *Hernandez v. Madrigal*, CIV. No. S-09-0413 MCE GGH, at *6 (E.D. Cal. Dec. 29, 2011). "Although Defendant notes that Plaintiff did not present any expert testimony regarding his emotional damages, the court is not aware of any precedent requiring such testimony." See *J.N. v. Hendrickson*, No. 2-14-cv-02428-DDP (PLAx), at *13 (C.D. Cal. June 12, 2017), quoting *Greisen v. Hanken*, No. 3:14-CV-1399-SI, 2017 WL 1967499, at *19 (D. Or. May 12, 2017) (rejecting argument that emotional damages verdict requires evidence from "psychologist, psychiatrist, or other mental health professional"). "The testimony of the plaintiff alone can substantiate a jury's award of emotional distress damages. See, e.g., Zhang, 339 F.3d at 1040; see also *Passantino v. Johnson Johnson Consumer Prods., Inc*., 212 F.3d 493, 513-14 (9th Cir. 2000)." *Smith v. City of Oakland*, 538 F. Supp. 2d 1217, 1240 (N.D. Cal. 2008). "The Ninth Circuit upheld awards of substantial damages based solely on the victim's testimony and circumstantial evidence." *U.S. Equal Emp't Opportunity Comm'n v. Pac. Fun Enters. LLC*, Civ. No. 17-00482 ACK-RT, at *30 (D. Haw. Jan. 7, 2020), quoting *Zhang v. Am. Gem. Seafoods, Inc*., 339 F.3d 1020, 1040-41 (9th Cir. 2003) (affirming §1981 emotional distress damages of $223, 155 or $123,155 solely on plaintiff's testimony about being hurt and humiliated by the damage to his reputation caused by discrimination); *Passantino v. Johnson & Johnson Consumer Prods., Inc*., 212 F.3d 493, 510-14 (9th Cir. 2000) (upheld $1,000,000 compensatory emotional distress damages for retaliatory discharge of employee who complained of sex discrimination). The evidentiary need for the contents of the confidential conversations was diminished in this

1  case because there were numerous eyewitnesses to the traumatic events illustrated in Plaintiff's

2  operative complaint. "In contrast to the significant public and private interests supporting

3  recognition of the privilege, the likely evidentiary benefit that would result from the denial of the

4  privilege is modest. " *Jaffee v. Redmond*, 518 U.S. 1, 11 (1996). Such an intrusion into the

5  therapeutic relationship is not the only possible means to obtain relevant information. Where

6  Plaintiff intends to offer testimony, including but not limited to testimony of her friend, treating

7  psychiatrist and therapist, to support her claims, the production of medical or psychological

8  records is intrusive, unnecessary, cumulative and duplicative. While the privilege may bar access

9  to medical or psychological records, the defendant may cross-examine the plaintiff and her

10  witnesses, about other stressors or contributing factors that may explain or have contributed to the

11  alleged emotional distress. This example illustrates that Defendants have numerous avenues

12  through which it can make its case without delving into the plaintiff's confidential communication

13  with her psychiatrist and therapist. Cf. *Doubleday v. Ruh*, 149 F.R.D. 601, 607 (E.D.Cal.1993)

14  (noting that, to overcome qualified work product privilege, party must demonstrate " a

15  'substantial need' for the qualified work product, as well as an inability to obtain the information

16  from other sources without undue hardship"); Fed.R.Civ.P. 26(b)(3) (providing for qualified work

17  product privilege). Fifth, there is express statute and regulation forbidding Defendants from

18  accessing the records. "Confidential communications between a licensed psychotherapist and her

19  patients in the course of diagnosis or treatment are protected from compelled disclosure under

20  Rule 501 of the Federal Rules of Evidence." *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996).

21      Our Supreme Court has observed that "adequate protections against public disclosure do not

22  obviate constitutional concerns as privacy interests are still implicated when the government

23  accesses personal information without disseminating it." (*Lewis v. Superior Court* (2017) 3

24  Cal.5th at p. 577, 220 Cal.Rptr.3d 319, 397 P.3d 1011.) The protective orders entered for this

25  litigation do not eliminate Plaintiff's privacy concerns simply because the confidential

26  information will not be disseminated to third parties.

27      The County's documents requests are vague, ambiguous, overbroad, and confusing as to the

28  terms "any and all medical documents", "any and all film/radiology records", and "from January

1    1, 2016 to Present". Further, the requests are overly burdensome, harassing, and oppressive

2    because the County seeks documents unrelated to Plaintiff's injury at issue which violates

3    Plaintiff's privacy rights.

4            Lanterman-Petris-Short Act, California Welfare and Institutions Code, Section 5328 et seq.

5    (LPS Act) has been interpreted narrowly to allow the release of information only directly to a

6    court pursuant to a court order. See *Riverside County v. Superior Court*, 42 Cal.App.3d 478

7    (1974) (disclosure not permitted to State Board of Chiropractic Examiners, because the language

8    of the exception applies to "courts"). Mental health information is subject to protection under the

9    LPS Act, nothing less than a court order will suffice to compel disclosure of the patient's records.

10   The LPS Act only permits production in response to a valid authorization from the patient or a

11   court order (unless another exception permitting disclosure applies). Even if a court order is

12   obtained, the records may only be produced directly to the court.

13   **THE COUNTY'S POSITION:**

14           The County properly issued eight subpoenas under Federal Rule of Civil Procedure

15   ("FRCP") Rule 45 to the five medical providers Plaintiff identified in written discovery pursuant

16   to a previous Court Order (Dkt No. 71). These subpoenas request medical and billing records

17   directly related to the injuries and damages (both physical and emotional) that Plaintiff has placed

18   at issue in this subject lawsuit. Each subpoena seeks "any and all records" related to Plaintiff's

19   medical and billing for a 5-year time period, specifically January 1, 2016 to present with specific

20   examples of what constitutes "any and all" records. There is nothing vague or ambiguous about

21   these requests. These requests are also reasonable in both timeframe and scope pursuant to FRCP

22   Rule 26 because they are not "fishing" for Plaintiff's entire medical and/or psychological history

23   and narrowly tailored to allow the County to assess Plaintiff's alleged injuries as a result of the

24   incident and the general and special damages associated with those injuries.  More importantly,

25   Plaintiff contents her conditions were either caused by or exacerbated by her incarceration. In that

26   respect, Plaintiff admits that she has emotional injuries caused by other traumas. Without

27   obtaining records of Plaintiff's pre-incident condition and treatment, Defendants cannot assess

28   and determine the true nature and extent of Plaintiff's injuries and damages relating to this

1    incident. This is critical information with substantial probative value because Plaintiff has

2    multiple lawsuits pending against a number of different defendants related to separate and distinct

3    incidents, yet she alleges similar damages in each. Therefore, the records are necessary to assist in

4    determining the true cause of her alleged injuries and measure of damages. Additionally, as a

5    preliminary matter, during the meet and confer, Defendants offered to limit the subpoenas in

6    either timeframe or scope and Plaintiff stated that she would not agree to any limitation of

7    timeframe or scope. This is a blatant refusal to compromise despite the County's best efforts to

8    avoid Court involvement.

9        Most importantly, Plaintiff has waived the common law psychotherapist-patient privilege

10   outlined in *Jaffee v. Redmond*, 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996) [like other

11   testimonial privileges, the patient may of course waive the protection].) Plaintiff's position relies

12   heavily on the assertions set forth in *Jaffee* and that the requested records are protected without

13   discussing waiver of such privilege that is discussed in the subsequent cases. *Jaffee,* the pivotal

14   case that recognized common law psychotherapist-patient privilege, also held that because

15   privileges can be determined on a case-by-case basis "it is neither necessary nor feasible to

16   delineate its full contours in a way that would "govern all conceivable future questions in this

17   area." (*Id*., at 18.)  The Court in *Jaffee* explicitly held that the constraints, limitations, and minute

18   details of the privilege and potential waiver were not discussed meaning that relying on *Jaffee*

19   only is not sufficient to determine whether the County is entitled to the subpoenaed records.

20       Privileges asserted in response to discovery requests in federal question cases are

21   determined under federal law, not the law of the forum state. (Fed.R.Evid. 501; *United States v.*

22   *Zolin*, 491 U.S. 554, 562, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989).) In cases involving federal

23   civil rights and state law claims, "any asserted privileges relating to evidence relevant to both

24   state and federal claims are governed by federal common law." 6 James Wm. Moore et al.,

25   Moore's Federal Practice § 26.47[4], at 26–334.1 (3d ed.2013); see *Fitzgerald v. Cassil*, 216

26   F.R.D. 632, 635 (N.D.Cal.2003) (applying federal law of privilege to alleged violations of Fair

27   Housing Act, 42 U.S.C. § 3604, and various state law claims); *Stallworth v. Brollini*, 288 F.R.D.

28

439, 442 (N.D.Cal.2012) (applying federal common law to resolve claims of privilege in an action alleging § 1983 and state law claims). *I.R. v. City of Fresno*, No. 1:12-CV-00558-AWI, 2014 WL 1419305, at *4 (E.D. Cal. Apr. 11, 2014).) Thus, while Plaintiff discusses the California Constitution right to privacy, it is not relevant or determinative to this analysis.

A plaintiff waives privacy rights to mental health records if a plaintiff assets "more than a garden-variety claim of emotional distress." (*Turner v. Imperial Stores,* 161 F.R.D. 89, 97 (S.D.Cal.1995) (applying middle approach).) Here, Plaintiff has alleged more than a "garden-variety claim of emotional distress". There is nothing simple about Plaintiff's emotional distress claim. Plaintiff's Fourth Amended Complaint alleges a cause of action for Intentional Inflection of Emotional Distress which means that Plaintiff has directly placed her mental and psychological health in controversy which has waived the federal common law privilege. (*Fitzgerald v. Cassil*, 216 F.R.D. at 633, 638–39 (adopting narrow approach and finding no waiver of privacy when plaintiff did not allege "cause of action for intentional or negligent infliction of emotional distress" or "specific psychiatric injury or disorder or unusually severe emotional distress extraordinary in light of the allegations"). Plaintiff's operative pleading and the discovery conducted to date further evidence that she has not alleged a "garden-variety claim" for emotional distress. Plaintiff alleges specific psychiatric injuries including depression and PTSD. Plaintiff also alleges that she suffered physical injury as a result of her emotional distress (she ended up in the ER for dysfunctional menstrual bleeding), that she was placed on suicide watch for 5 days and later attempted to commit suicide. Not only are there physical injuries associated with her emotional distress, she claims that the emotional distress was so severe that she attempted to take her own life. This is indisputably "unusually severe emotional distress" as a result of a 4-day detention at the Women's Central Jail. Taking into consideration established case law, Plaintiff has met all marks to have waived the common law privilege.

Unlike in *Fitzgerald*, which held that there was no waiver, the facts and circumstances at hand indicate there is waiver even under the most narrow approach. Plaintiff has not indicated that she will not affirmatively rely on her treating therapist or physicians (and in fact has offered

their testimony in exchange for the physical medical records which is not sufficient for reasons set forth below), she has alleged more than "garden-variety" distress by bringing a claim for IIED, alleging specific psychiatrist injury and emotional injuries that are so severe she attempted to take her own life and manifested physical injury. Finally, the conditions within the requested records are at "in controversy" because they detail and describe the treatment Plaintiff sought as a result of the incident. Every single factor considered by the Court in *Fitzgerald* has been met under these circumstances. (See *Fitzgerald, supra,* 216 F.R.D. at p. 639–40.) This Court has even used the "broad view" of waiver and held that a plaintiff who seeks to recover for emotional distress damages is relying on her emotional condition as an element of her claim. (*Doe v. City of Chula Vista*, 196 F.R.D. 562, 568 (S.D. Cal. 1999).) The Court reasoned that plaintiff "can testify to her emotions near the incident, and defendant is free to cross examine her about the depth of her emotional damage and other factors in her life at that time. But to insure a fair trial, particularly on the element of causation, the court concludes that defendants should have access to evidence that Doe's emotional state was caused by something else. Defendants must be free to test the truth of Doe's contention that she is emotionally upset because of the defendants' conduct. Once Doe has elected to seek such damages, she cannot fairly prevent discovery into evidence relating to the element of her claim." (*Id*. at p. 569.) The Court further reasoned that defendants "Defendants are entitled to explore the truth of her allegation that the termination caused her psychological distress" allowing the defendant to seek information to differentiate prior emotional distress from the injuries alleged as a result of the incident at issue. (*Doe v. City of Chula Vista*, 196 F.R.D. 562, 566 (S.D. Cal. 1999).) To clarify on an assertion made by Plaintiff above, in *Vasconcellos v. Cybex Int'l, Inc.,* 962 F. Supp. 701, 709 (D. Md. 1997), the Court held that the subpoena issued was too broad and that "a new subpoena must be much more narrowly-tailored in order to avoid any greater infringement than is necessary on [plaintiff's] confidential relationship with [therapist]." The County has repeatedly stated that there is great cause in allowing Plaintiff's to access the information via subpoena as there is concerns regarding the

proffering of testimony and reliability of such testimony. To hold that Plaintiff has not waived this privilege would be in direct conflict with the established case law of this Court.

If the Court disagrees with the County's contention that Plaintiff has waived privilege, at the minimum, the occurrence and dates of any psychotherapy including that which occurred before the incident is not privileged and subject to discovery. (*Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225, 230 (D. Mass. 1997) ["Facts regarding the very occurrence of psychotherapy, such as the dates of treatment, are not privileged. And so, for example, if Plaintiff was seeing a psychotherapist before any actionable emotional injury allegedly occurred, the dates of such pre-existing treatment would be available to Defendants. The substance of the psychotherapist-patient communication is privileged. The fact that such communication took place is not."].) Plaintiff should be required to provide the dates of her treatment for the last 5 years (as requested in the subpoenas) and with what treating physician such that the County can at the minimum assess whether Plaintiff has increased her course of treatment as a result of the incident or if there are significant changes in the occurrences of her treatment as a result of the incident.

Curiously, Plaintiff offers deposition testimony in alternative of hard-copy records. If the privilege applied and Plaintiff was adamant in Defendants not obtaining the information requested via subpoena, Plaintiff's offer to provide the information through alternative means constitutes voluntary disclosure, which also waives the privilege. (See Federal Rules of Evidence Rule 502(a).) While the County does not agree to such alternative offer because the deposition testimony that Plaintiff offers (herself, friends and treating physician) may be unreliable and cannot be corroborated, without documentation. For example, if Plaintiff testifies that she had never contemplated suicide before the subject incident, yet she had told her treating physician she had, without obtaining the medical records, the County will have no way to verify or dispute Plaintiff's testimony. Furthermore, the County cannot forgo obtaining these records in lieu of deposition testimony because Plaintiff indicated in the meet that confer that she will instruct the deponent not to answer or will refuse to answer if she does not agree with the line of questioning. Plaintiff's "less-intrusive" alternatives to the subpoenas will result in additional Court

1   involvement and will not guarantee that the County will be able to gain the necessary information

2   to assess Plaintiff's injuries and damages without extensive delay, burden, and expense to the

3   County and this Court.

4        Next, Plaintiff alleges that her medical and psychological records are protected under the

5   Fourth Amendment. This is not entirely true. It is unclear whether the Fourth Amendment

6   protects informational privacy in medical records. Instead, controlling authority provides a

7   constitutional right to informational privacy in medical records only under other constitutional

8   provisions, such as the Fourteenth Amendment, which is not discussed by Plaintiff. (*Eckles v.*

9   *Kingston*, No. 317CV05492RBLDWC, 2019 WL 462780, at *3 (W.D. Wash. Jan. 4, 2019),

10  report and recommendation adopted, No. C17-5492 RBL, 2019 WL 461371 (W.D. Wash. Feb. 6,

11  2019) discussing *Whalen v. Roe*, 429 U.S. 589, 604 n.32 (1977) (declining to address privacy

12  interest in medical records under the Fourth Amendment); *Tucson Woman's Clinic v. Eden*, 379

13  F.3d 531, 551 (9th Cir. 2004) (citing Fourteenth Amendment cases when discussing informational

14  privacy right); *Yin v. California*, 95 F.3d 864, 870 (9th Cir. 1996) (noting privacy right in medical

15  records exists under the Fifth or Fourteenth Amendments). Neither the Ninth Circuit nor the U.S.

16  Supreme Court has stated that a Fourth Amendment right to privacy in medical records exists and

17  therefore, even if such a right exists, it is not clearly established. (*Eckles, supra,* at *3.)

18       Plaintiff further dilutes and misinforms the Court by providing significant case law (pages

19  15-17 of this Joint Stipulation) regarding the establishing of emotional distress damages *at trial*.

20  At this point, the County will not waste Court resources to assess these arguments because these

21  arguments are irrelevant and not ripe. We are not yet at trial. In fact, we are still in the early-to-

22  middle stages of the discovery phase. Pursuant to FRCP Rule 26, "[i]nformation within [the]

23  scope of discovery [under Rule 26] need not be admissible in evidence to be discoverable."

24  Whether or not the requested records are admissible is immaterial. At this point in time, the

25  County has subpoenaed the records to gain an understanding of Plaintiff's alleged injuries and

26  damages and begin assessing the damages component of Plaintiff's claims.

27       Moreover, the Lanterman-Petris-Short Act, codified as Welf. & Inst.C. §5000 et. seq., has

28  express exceptions that apply to the current circumstance. Section 5328(a)(6)] allows disclosure

1   of confidential information and records as necessary for the administration of justice in a pending

2   judicial action or proceeding. (*Mavroudis v. Sup.Ct. (Kaiser Found. Hospitals)* (1980) 102 CA3d

3   594, 602, 162 CR 724, 730; *County of Riverside v. Sup.Ct. (State Bd. of Chiropractic Examiners)*

4   (1974) 42 CA3d 478, 481, 116 CR 886, 888.) Here, there is a pending judicial action and

5   proceeding and the records are necessary for the administration of justice. Absent these records,

6   Defendants are required to take Plaintiff's allegations as truth without any ability to corroborate

7   the veracity of the claims through third party documents, determine credibility, or determine the

8   source of the alleged injuries to be related to the subject incident, as opposed to a wholly

9   unrelated incident. While Plaintiff continues to demand the County use "less intrusive means"

10  such as deposition testimony, Plaintiff has already indicated that she will instruct her treating

11  physicians not to answer any questions which will only result in more law and motion practice.

12  Thus, Plaintiff's "less intrusive means" appears to be her own testimony. Plaintiff is doing

13  anything and everything in her power to prevent Defendants from being able to assess damages

14  including further delay of the judicial process. Disclosure is also permitted where, upon a

15  showing of probable cause, disclosure is authorized by a court order that specifically describes the

16  records being sought. [Welf. & Inst.C. § 5328.01(b)]. The County has clearly established

17  probable cause throughout the above, and if this Court does not believe that the subpoenas the

18  County has issued are proper, this Court should issue a court order specifically describing the

19  records the County is entitled to.

20      Finally, Plaintiff has not followed the proper procedure. On or about Friday, May 28, 2021

21  at 9:21 p.m., Plaintiff served objections to the subpoenas. A party cannot object to a subpoena

22  duces tecum served on a nonparty, but rather, must seek a protective order or make a motion to

23  quash. Schwarzer, Tashima & Wagstaffe, California Practice Guide: Federal Civil Procedure

24  Before Trial, ¶ 11:2291 (2005 rev.) (emphasis in original); see also *Pennwalt Corp. v. Durand-*

25  *Wayland, Inc*., 708 F.2d 492, 494 n. 5 (9th Cir.1983); *Moon v. SCP Pool Corp*., 232 F.R.D. 633,

26  636 (C.D. Cal. 2005).  A nonparty's failure to timely make objections to a Rule 45 subpoena

27  duces tecum generally requires the court to find that any objections have been waived. *In re DG*

28  *Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir.1998); *Creative Gifts, Inc. v. UFO*, 183 F.R.D. 568,

1    570 (D.N.M.1998); Schwarzer, Tashima & Wagstaffe, California Practice Guide: Federal Civil

2    Procedure Before Trial, § 11:2293 (2005 rev.). None of the medical facilities have objected to the

3    subpoenas. The County interprets this as Plaintiff's attempt to delay the process and force the

4    County to spend additional resources to obtain relevant records it is rightfully entitled to as part of

5    the discovery process.

6          As a final thought, this Court has already granted two separate protective orders which

7    protect Plaintiff's private information and yet, she continues to argue that there are issues of

8    disclosure, which is unsubstantiated and not fair considering the parties' efforts to ensure there is

9    not invalid disclosure.

10         Thus, the County respectfully requests that this Court deny Plaintiffs' Motion to Quash

11   Subpoenas because Plaintiff has waived the applicable privilege and the records are indisputably

12   relevant to the County's defense and assessment, or if the Court disagrees that the Motion to

13   Quash is improper or the County's position, asks that the Court limit the subpoenas as needed

14   instead of requiring the County to use alternative means to seek the requested information related

15   to Plaintiff's injuries and damages.

16

17         Dated: Jun 15, 2021

18         Respectfully submitted.

19                                         */s/ JANE DOE*

20                                         JANE DOE, Plaintiff in Pro Se

21

22   DATED:  6/15/21                       COLLINS + COLLINS LLP

23

24

25                          By:

26                                         MARIAH A. WITT

27                          _____

28

1   JANE DOE

2   11151 Valley Blvd #4886,

3   El Monte, CA 91734

4   626-208-9665

5   Plaintiff in Pro Se

6

7

8                      **UNITED STATES DISTRICT COURT**

9                      **CENTRAL DISTRICT OF CALIFORNIA**

10

11  JANE DOE,                              No. 8:20-cv-00322-JWH-GJS

12           Plaintiff,

13      v.                                 **PLAINTIFF'S DECLARATION RE:**
                                           **MOTION TO QUASH SUBPOENAS**
14  COUNTY OF ORANGE, et al
                                           Judge: Hon. Gail J. Standish
15           Defendants.                   Action Filed: Feb 18, 2020
                                           Fact Discovery cut-off: Oct 6, 2021
16                                         Trial Date: Not set

17

18

19

20

21

22

23

24

25

26

27

28

                              1
                    MOTION TO QUASH SUBPOENAS

ER 131

**DECLARATION OF PLAINTIFF JANE DOE**

JANE DOE states:

1.    I am the plaintiff in this case and I have personal knowledge of all facts stated herein. If called as a witness, I could and would competently testify thereto.

2.    On May 26, 2021 the County served eight subpoenas upon five medical providers requesting both Plaintiff's billing and medical records since Jan 1, 2016 to present and demanding production on Jun 25, 2021. Subsequently I initiated a meet and confer for a motion to quash subpoenas. A true and correct copy of the meet and confer correspondence is attached hereto as Ex 1.

3.    On May 28, 2021 Parties held a telephonic conference that lasted approximately 30 minutes. No issues were resolved.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: Jun 9, 2021

                                        */s/ JANE DOE*___

                                        JANE DOE, Plaintiff in Pro Se

EXHIBIT 1

ER 133

 Gmail

Jane Doe <courtproceeding9@gmail.com>

## Jane Doe v. County of Orange, et al. (CCLLP File No. 22348)

**Jane Doe** <courtproceeding9@gmail.com>
To: "Mariah A. Witt" <MWitt@ccmslaw.com>
Cc: "Mariah G. Stephens" <MStephens@ccmslaw.com>, "Michael L. Wroniak" <mwroniak@ccmslaw.com>, Patrice Porter <pporter@ccmslaw.com>

Fri, May 28, 2021 at 9:19 PM

Ms Witt,

Thank you for taking the time to speak with me this afternoon. Below is the authority I promised to provide during our teleconference:

Lanterman-Petris-Short Act, California Welfare and Institutions Code, Section 5328 et seq. (LPS Act) has been interpreted narrowly to allow the release of information only directly to a court pursuant to a court order. See *Riverside County v. Superior Court*, 42 Cal.App.3d 478 (1974) (disclosure not permitted to State Board of Chiropractic Examiners, because the language of the exception applies to "courts"). Mental health information is subject to protection under the LPS Act, nothing less than a court order will suffice to compel disclosure of the patient's records. The LPS Act only permits production in response to a valid authorization from the patient or a court order (unless another exception permitting disclosure applies). Even if a court order is obtained, the records may only be produced directly to the court.

Attached please find my objections to the County's subpoenas. Should you have any questions please let me know.

Thank you.
Doe

> On Thu, May 27, 2021 at 9:23 AM Jane Doe <courtproceeding9@gmail.com> wrote:
> 4 pm tomorrow works for me. Talk to you then.

>> On Thu, May 27, 2021 at 8:54 AM Mariah A. Witt <MWitt@ccmslaw.com> wrote:
>> Doe,
>>
>> The subpoenas seek documents from the medical providers you identified and stated treated your mental or physical health as a result of this incident. As we have mentioned many times before, the County believes it is entitled to these documents because it goes to the nature and extent of your alleged injuries and other contributing factors. Additionally, during previous meet and confers, we agreed to limit the subpoenas to 5 years, which is only 3 years prior to the incident which is not overbroad.
>>
>> The County is not required to use less intrusive means to seek this information as a subpoena is a FRCP endorsed discovery process.
>>
>> However, I am available at 4 pm tomorrow if you would like to discuss this further.
>>
>> Mariah
>>
>> ---
>>
>> **From:** Jane Doe <courtproceeding9@gmail.com>
>> **Sent:** Wednesday, May 26, 2021 5:42 PM
>> **To:** Mariah G. Stephens
>> **Cc:** Mariah A. Wi; Michael L. W roniak; Patrice Porter
>> **Subject:** Re: Jane Doe v. County of Orange, et al. (CCLLP File No. 22348)
>>
>> Ms Witt,
>>
>> The purpose of this email is to request a teleconference regarding my intent to file a motion to quash subpoenas. Your subpoenas do not limit to injury at issue and the time span is overbroad. Plus, as I previously stated you did not try any less intrusive ways to obtain the information you desired. Please let me know your availability. I'm not available on Thursday between 11 am and 12 pm, 4 pm and 5:30 pm.
>>
>> Thank you.
>> Doe
>>
>>> On Wed, May 26, 2021 at 3:55 PM Mariah G. Stephens <MStephens@ccmslaw.com> wrote:
>>> Good afternoon Ms. Doe,
>>>
>>> Attached please find eight (8) notices of subpoenas and eight (8) subpoenas to produced documents, information, or objects or to permit inspection of premises in a civil action.
>>>
>>> Thank you.

**ER 134**

**Mariah G. Stephens**

Legal Assistant

**T**: 760-274-2110
**F**: 760-274-2111
2011 Palomar Airport Road, Suite 207
Carlsbad, CA 92011
mstephens@ccllp.law



www.ccllp.law

Pasadena 626-243-1100 - Orange 714-823-4100 - San Diego 760-274-2110
Northern California 510-844-5100 - Inland Empire 909-581-6100

PLEASE NOTE: The information contained in this e-mail transmission is intended to be sent only to the stated recipient of the

e-mail. If the reader of this message is not the intended recipient or the intended recipient's agent, you are hereby notified that we do not intend to waive any privilege that might ordinarily attach to this communication and that any dissemination, distribution, or copying of the information contained in this e-mail is therefore prohibited. You are further asked to notify us of any such error in transmission as soon as possible at the telephone number shown below and to delete the e-mail. Thank you for your cooperation.

**8 attachments**

📄 **Plaintiff's obj to supoena arcadia billing.pdf**
131K

📄 **Plaintiff's obj to supoena Heredia.pdf**
138K

📄 **Plaintiff's obj to supoena greater el monte billing.pdf**
131K

📄 **Plaintiff's obj to supoena arcadia medical.pdf**
134K

📄 **Plaintiff's obj to supoena greater el monte medical.pdf**
134K

📄 **Plaintiff's obj to supoena LAC USC billing.pdf**
131K

📄 **Plaintiff's obj to supoena LAC USC medical.pdf**
134K

📄 **Plaintiff's obj to supoena pacific.pdf**
138K

Michael L. Wroniak (State Bar No. 210347)
Mariah A. Witt (State Bar No. 328295)
**COLLINS COLLINS MUIR + STEWART LLP**
750 The City Drive, Suite 400
Orange, CA 92868
(714) 823-4100 – FAX (714) 823-4101
Email: mwroniak@ccmslaw.com
Email: mwitt@ccmslaw.com

Attorneys for Defendants
COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE
BALICKI; MARK STICHTER; REYNA RIVERA; DEVONNA FALCONER;
KASSANDRA MAYER; ELIA RODRIGUEZ; and RACHEL ADDINGTON

# UNITED STATES DISTRICT COURT

## DISTRICT OF CALIFORNIA, CENTRAL DISTRICT

| | |
|---|---|
| JANE DOE, | CASE NO. SACV 20-00322-JWH (GJS) |
| Plaintiffs, | *[Assigned to Judge John W. Holcomb Courtroom 2]* |
| vs. | |
| COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI; MARK STICHTER; and DOES 1-10, inclusive, | **DEFENDANTS COUNTY OF ORANGE ET. AL.'S ANSWER TO PLAINTIFF JANE DOE'S FOURTH AMENDED COMPLAINT** |
| Defendants. | |
| | Complaint Filed: 2/18/20 |
| | Trial Date:     None |

Defendants COUNTY OF LOS ANGELES ("County"), DON BARNES;

WILLIAM BAKER; JOE BALICKI; MARK STICHTER; REYNA RIVERA;

DEVONNA FALCONER; KASSANDRA MAYER; ELIA RODRIGUEZ; RACHEL

**COLLINS COLLINS
MUIR + STEWART** LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone  (714) 823-4100
Fax    (714) 823-4101

*FILE # 22348*

1

**DEFENDANTS' ANSWER TO PLAINTIFF'S FOURTH AMENDED COMPLAINT**

ADDINGTON (collectively the "Defendants") hereby answer the Fourth Amended Complaint ("FAC") filed by Plaintiff JANE DOE ("Plaintiff"), by admitting, denying, and alleging as follows:

1.      Answering paragraph 1 of Plaintiff's FAC, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

2.      Answering paragraph 2 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

3.      Answering paragraph 3 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

4.      Answering paragraph 4 of Plaintiff's FAC, Defendants admit that Plaintiff was a pre-trial detainee. Defendants allege the rest of said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone   (714) 823-4100
Fax      (714) 823-4101

**DEFENDANTS' ANSWER TO PLAINTIFF'S FOURTH AMENDED COMPLAINT**

form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

5.    Answering paragraph 5 of Plaintiff's FAC, Defendants are without sufficient knowledge or information to form a belief as to the truth that Plaintiff was a resident of the County of Los Angeles, State of California. Defendants admit Plaintiff was a pretrial detainee in Women's Central Jail ("WCJ") in custody of Orange County Sheriff's Department ("OCSD"); Plaintiff was arrested in August 2019 by Santa Ana Police Department ("SAPD") on misdemeanor charges (vandalism under $400 and unlawful dissemination of private photos) that had nothing to do with contraband or weapons; that Plaintiff has been subsequently indicted on those charges. Defendants are without sufficient knowledge or information to form a belief as to the truth whether OCSD has never charged Plaintiff with any jail infractions.

6.    Answering paragraph 6 of the Plaintiff's FAC, Defendants admit the allegations in said paragraph.

7.    Answering paragraph 7 of Plaintiff's FAC, Defendants admit that all persons identified as OCSD Officers were acting under color of law, under the color of statutes, ordinances, regulations, policies, customs, practices and usages of Defendant the County, its Sheriff's department, and/or the State of California.

8.    Answering paragraph 8 of Plaintiff's FAC, Defendants admit that Defendant Sheriff Don Barnes ("Barnes") was an elected public official who had responsibility for the security and custody operations of County jails, which include

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone  (714) 823-4100
Fax     (714) 823-4101

FILE # 22348

3

**DEFENDANTS' ANSWER TO PLAINTIFF'S FOURTH AMENDED COMPLAINT**

WCJ, and to protect the safety of persons in the jails, however, Defendants deny to the extent Plaintiff's allegation contends that Barnes is solely responsible. Defendants admit that Barnes is the highest official for OCSD and is personally involved in the formulation and implementation of policies at County Jails, however, Defendants deny to the extent Plaintiff's allegation contends that Barnes solely formulates and implements polices at County Jails. Defendants admit that Barnes holds the command and policy making position with regard to County Jails, including WCJ, however, Defendants deny to the extent that Barnes is the only person that holds the command and policy making position with regard to County Jails. Defendants deny each and every other allegation contained therein.

9.      Answering paragraph 9 of Plaintiff's FAC, Defendants admit that Assistant Sheriff William Baker ("Baker") was Assistant Sheriff of OCSD at the time of this complaint and in charge of custody operations which include WCJ. Defendants admit in part that Baker was responsible for the planning, directing, coordinating, and controlling of all activities of OCSD's custody operations, and the formulation of rules and procedures necessary to carry out the policies and directives of Barnes, but deny to the extent he does so alone. Defendants deny each and every other allegation contained therein.

10.      Answering paragraph 10 of Plaintiff's FAC, Defendants admit Defendant Joe Balicki ("Balicki") was the Commander in Charge of OCSD's custody operations which included WCJ at the times relevant to this complaint. Defendants admit in part

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone  (714) 823-4100
Fax     (714) 823-4101

that Balicki was responsible for ensuring that commands under his control are meeting OCSD and command standards of operation and for policy implementation, however, Defendants deny to the extent that he was solely responsible for these activities. Defendants deny each and every other factual allegation contained therein. Defendants allege the rest of said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

11.     Answering paragraph 11 of Plaintiff's FAC, Defendants admit that Defendant Mark Stichter was the Captain of the WCJ at all times relevant to this complaint. Defendants admit in part that Stichter planned, organized, controlled and directed the work of WCJ, however Defendants deny to the extent that he did not do so alone. Defendants admit Stichter was generally responsible for the daily conditions and operations of WCJ, including the training and supervision of floor deputies; that Stichter was regularly on the premises at WCJ; that it was his responsibility to be generally knowledgeable and familiar with the daily conditions and operations of the WCJ. Defendants deny each and every other allegation contained therein.

12.     Answering paragraph 12 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone   (714) 823-4100
Fax     (714) 823-4101

1    knowledge or information to form a belief as to the truth of the allegations contained in
2
3    said paragraph, and on that basis deny each and every allegation contained therein.

4        13.    Answering paragraph 13 of Plaintiff's FAC, Defendants are without
5
6    sufficient knowledge or information to form a belief as to the truth of the allegations
7    contained in said paragraph, and on that basis deny each and every allegation contained
8    therein.

9        14.    Answering paragraph 14 of Plaintiff's FAC, Defendants allege said
10
11   paragraph contains legal argument and to that extent, requires no response. To the extent
12   Defendants are required to admit and/or deny, Defendants are without sufficient
13   knowledge or information to form a belief as to the truth of the allegations contained in
14
15   said paragraph, and on that basis deny each and every allegation contained therein.

16       15.    Answering paragraph 15 of Plaintiff's FAC, Defendants allege said
17
18   paragraph contains legal argument and to that extent, requires no response. To the extent
19   Defendants are required to admit and/or deny, Defendants are without sufficient
20   knowledge or information to form a belief as to the truth of the allegations contained in
21
22   said paragraph, and on that basis deny each and every allegation contained therein.

23       16.    Answering paragraph 16 of Plaintiff's FAC, Defendants allege said
24   paragraph contains legal argument and to that extent, requires no response. To the extent
25
26   Defendants are required to admit and/or deny, Defendants are without sufficient
27   knowledge or information to form a belief as to the truth of the allegations contained in
28   said paragraph, and on that basis deny each and every allegation contained therein.

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone   (714) 823-4100
Fax       (714) 823-4101

17. Answering paragraph 17 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

18. Answering paragraph 18 of Plaintiff's FAC, Defendants admit the United States District Court for the Central District has proper jurisdiction.

19. Answering paragraph 19 of Plaintiff's FAC, Defendants admit to the extent liability is found, the United States District Court for the Central District may award damages for constitutional violations pursuant to 42 U.S.C. § 1983, and deny the rest of the allegations contained therein.

20. Answering paragraph 20 of Plaintiff's FAC, Defendants admit to the allegations in said paragraph.

21. Answering paragraph 21 of Plaintiff's FAC, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

22. Answering paragraph 22 of Plaintiff's FAC, Defendants admit that on August 8, 2019 at around 10:00 a.m.; that Plaintiff was arrested by SAPD on misdemeanor charges. Defendants are without sufficient knowledge or information to form a belief as to the rest of said paragraph, and on that basis deny each and every

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone   (714) 823-4100
Fax      (714) 823-4101

allegation contained therein.

23.     Answering paragraph 23 of Plaintiff's FAC, Defendants admit that Plaintiff arrived at the WCJ on August 8, 2019 and that the arresting police officer asked for Plaintiff's passcode to her cell phone but Plaintiff refused to submit. Defendants deny Plaintiff arrived around 10:50 a.m. Defendants are without sufficient knowledge or information to form a belief as to the rest of said paragraph, and on that basis deny each and every allegation contained therein.

24.     Answering paragraph 24 of Plaintiff's FAC, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

25.     Answering paragraph 25 of Plaintiff's FAC, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

26.     Answering paragraph 26 of Plaintiff's FAC, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

27.     Answering paragraph 27 of Plaintiff's FAC, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone  (714) 823-4100
Fax     (714) 823-4101

**DEFENDANTS' ANSWER TO PLAINTIFF'S FOURTH AMENDED COMPLAINT**

contained in said paragraph, and on that basis deny each and every allegation contained therein.

28.     Answering paragraph 28 of Plaintiff's FAC, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

29.     Answering paragraph 29 of Plaintiff's FAC, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

30.     Answering paragraph 30 of Plaintiff's FAC, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

31.     Answering paragraph 31 of Plaintiff's FAC, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

32.     Answering paragraph 32 of Plaintiff's FAC, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone   (714) 823-4100
Fax     (714) 823-4101

**DEFENDANTS' ANSWER TO PLAINTIFF'S FOURTH AMENDED COMPLAINT**

therein.

33.     Answering paragraph 33 of Plaintiff's FAC, Defendants deny that Plaintiff was subjected to a "strip search". Defendants are without sufficient knowledge or information to form a belief as to the truth of the rest of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

34.     Answering paragraph 34 of Plaintiff's FAC, Defendants deny that Plaintiff was subjected to a "strip search". Defendants are without sufficient knowledge or information to form a belief as to the truth of the rest of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

35.     Answering paragraph 35 of Plaintiff's FAC, Defendants deny that Plaintiff was subjected to a "strip search". Defendants are without sufficient knowledge or information to form a belief as to the truth of the rest of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

36.     Answering paragraph 36 of Plaintiff's FAC, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

37.     Answering paragraph 37 of Plaintiff's FAC, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

*FILE # 22348*

**DEFENDANTS' ANSWER TO PLAINTIFF'S FOURTH AMENDED COMPLAINT**

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone   (714) 823-4100
Fax      (714) 823-4101

38.     Answering paragraph 38 of Plaintiff's FAC, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

39.     Answering paragraph 39 of Plaintiff's FAC, Defendants deny that Plaintiff was subjected to a "strip search". Defendants are without sufficient knowledge or information to form a belief as to the truth of the rest of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

40.     Answering paragraph 40 of Plaintiff's FAC, Defendants deny that Plaintiff was subjected to a "strip search". Defendants are without sufficient knowledge or information to form a belief as to the truth of the rest of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

41.     Answering paragraph 41 of Plaintiff's FAC, Defendants deny that Plaintiff was subjected to a "strip search". Defendants are without sufficient knowledge or information to form a belief as to the truth of the rest of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

42.     Answering paragraph 42 of Plaintiff's FAC, Defendants deny that Plaintiff was subjected to a "strip search". Defendants are without sufficient knowledge or information to form a belief as to the truth of the rest of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

///

*FILE # 22348*

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone  (714) 823-4100
Fax     (714) 823-4101

11

**DEFENDANTS' ANSWER TO PLAINTIFF'S FOURTH AMENDED COMPLAINT**

43.     Answering paragraph 43 of Plaintiff's FAC, Defendants deny that Plaintiff was subjected to a "strip search". Defendants are without sufficient knowledge or information to form a belief as to the truth of the rest of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

44.     Answering paragraph 44 of Plaintiff's FAC, Defendants admit Plaintiff had court on August 12, 2019. Defendants deny that Plaintiff was subjected to a "strip search". Defendants are without sufficient knowledge or information to form a belief as to the truth of the rest of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

45.     Answering paragraph 45 of Plaintiff's FAC, Defendants deny that Plaintiff was subjected to a "strip search". Defendants are without sufficient knowledge or information to form a belief as to the truth of the rest of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

46.     Answering paragraph 46 of Plaintiff's FAC, Defendants admit that Plaintiff was entitled to release after her court appearance. Defendants deny that Plaintiff was subjected to a "strip search". Defendants are without sufficient knowledge or information to form a belief as to the truth of the rest of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

47.     Answering paragraph 47 of Plaintiff's FAC, Defendants admit that Plaintiff had obtained court approval to be released on her own recognizance. Defendants deny that Plaintiff was subjected to a "strip search". Defendants are without

FILE # 22348

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone   (714) 823-4100
Fax     (714) 823-4101

**DEFENDANTS' ANSWER TO PLAINTIFF'S FOURTH AMENDED COMPLAINT**

sufficient knowledge or information to form a belief as to the truth of the rest of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

48.     Answering paragraph 48 of Plaintiff's FAC, Defendants deny that Plaintiff was subjected to a "strip search". Defendants are without sufficient knowledge or information to form a belief as to the truth of the rest of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

49.     Answering paragraph 49 of Plaintiff's FAC, Defendants deny that Plaintiff was subjected to a "strip search". Defendants are without sufficient knowledge or information to form a belief as to the truth of the rest of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

50.     Answering paragraph 50 of Plaintiff's FAC, Defendants admit that Plaintiff underwent a four-day confinement as a pre-trial detainee. Defendants deny that Plaintiff was subjected to a "strip search". Defendants are without sufficient knowledge or information to form a belief as to the truth of the rest of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

51.     Answering paragraph 51 of Plaintiff's FAC, Defendants deny each and every allegation in said paragraph.

52.     Answering paragraph 52 of Plaintiff's FAC, Defendants admit Plaintiff was housed with forty other inmates in a module that she shared a single dayroom and included a bathroom with 2 showers and four toilets. Defendants deny each and every

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone  (714) 823-4100
Fax  (714) 823-4101

other allegation contained therein.

53.     Answering paragraph 53 of Plaintiff's FAC, Defendants deny that Plaintiff was subjected to a "strip search". Defendants are without sufficient knowledge or information to form a belief as to the truth of the rest of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

54.     Answering paragraph 54 of Plaintiff's FAC, Defendants deny the allegations in said paragraph.

55.     Answering paragraph 55 of Plaintiff's FAC, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

56.      Answering paragraph 56 of Plaintiff's FAC, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

57.     Answering paragraph 57 of Plaintiff's FAC, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

58.     Answering paragraph 58 of Plaintiff's FAC, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone  (714) 823-4100
Fax     (714) 823-4101

contained in said paragraph, and on that basis deny each and every allegation contained therein.

59.     Answering paragraph 59 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

60.     Answering paragraph 60 to Plaintiff's FAC, Defendants admit that Plaintiff was provided a free hygienic set of supplies by OCSD, deny to the extent it only included soap and toothpaste. Defendants admit shampoo was not included in the hygienic supplies; inmates are required to buy shampoo and conditioner at their own expense; admit that inmates cannot possess money during their confinement. Defendants deny purchase prices are higher than a regular store; that friends or family have to make purchases on behalf of inmates which causes unnecessary inconvenience.

61.     Answering paragraph 61 of Plaintiff's FAC, Defendants deny each and every allegation in said paragraph.

62.     Answering paragraph 62 of Plaintiff's FAC, Defendants deny each and every allegation in said paragraph.

63.     Answering paragraph 63 of Plaintiff's FAC, Defendants deny that they had a policy and practice of locking people in these inhumane conditions and subjected Plaintiff to serious psychological and physiological harm. Defendants are without

sufficient knowledge or information to form a belief as to the truth of the rest of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

64.     Answering paragraph 64 of Plaintiff's FAC, Defendants admit that on or about August 11, 2019 in the early hours after midnight, Reyna Rivera, Devonna Falconer, Kassandra Mayer, Elia Rodriguez, Rachel Addington conducted a search of Plaintiff's cell. Defendants deny that Defendants acted beyond the scope of their authority; agreed and began a concerted action against Plaintiff and other inmates; that Plaintiff and other inmates' bedding were searched without reasonable suspicion. Defendants allege the rest of said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

65.     Answering paragraph 65 of Plaintiff's FAC, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

66.     Answering paragraph 66 of Plaintiff's FAC, Defendants admit the cell search was conducted after midnight, deny the rest of the allegations in said paragraph.

///

FILE # 22348

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone   (714) 823-4100
Fax     (714) 823-4101

16

**DEFENDANTS' ANSWER TO PLAINTIFF'S FOURTH AMENDED COMPLAINT**

67.     Answering paragraph 67 of Plaintiff's FAC, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

68.     Answering paragraph 68 of Plaintiff's FAC, Defendants deny the OCSD intentionally release female inmates around midnight. Defendants are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

69.     Answering paragraph 69 of Plaintiff's FAC, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

70.     Answering paragraph 70 of Plaintiff's FAC, Defendants admit Plaintiff was released from OCSD custody. Defendants are without sufficient knowledge or information to form a belief as to the truth of the rest of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

71.     Answering paragraph 71 of Plaintiff's FAC, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

*FILE # 22348*

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone   (714) 823-4100
Fax     (714) 823-4101

**DEFENDANTS' ANSWER TO PLAINTIFF'S FOURTH AMENDED COMPLAINT**

72.    Answering paragraph 72 of Plaintiff's FAC, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

73.    Answering paragraph 73 of Plaintiff's FAC, Defendants deny each and every allegation in said paragraph.

74.    Answering paragraph 74 of Plaintiff's FAC, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

75.    Answering paragraph 75 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

76.    Answering paragraph 76 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

///

*FILE # 22348*

**DEFENDANTS' ANSWER TO PLAINTIFF'S FOURTH AMENDED COMPLAINT**

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone   (714) 823-4100
Fax       (714) 823-4101

77. Answering paragraph 77 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

78. Answering paragraph 78 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

79. Answering paragraph 79 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

80. Answering paragraph 80 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

///

*FILE # 22348*

**DEFENDANTS' ANSWER TO PLAINTIFF'S FOURTH AMENDED COMPLAINT**

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone  (714) 823-4100
Fax    (714) 823-4101

81.     Answering paragraph 81 of Plaintiff's FAC, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

82.     Answering paragraph 82 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

83.     Answering paragraph 83 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

84.     Answering paragraph 84 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

85.     Answering paragraph 85 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone  (714) 823-4100
Fax    (714) 823-4101

FILE # 22348

**DEFENDANTS' ANSWER TO PLAINTIFF'S FOURTH AMENDED COMPLAINT**

Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

86.     Answering paragraph 86 of Plaintiff's FAC, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

87.     Answering paragraph 87 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

88.     Answering paragraph 88 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

89.     Answering paragraph 89 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone   (714) 823-4100
Fax     (714) 823-4101

FILE # 22348

21

DEFENDANTS' ANSWER TO PLAINTIFF'S FOURTH AMENDED COMPLAINT

said paragraph, and on that basis deny each and every allegation contained therein.

90.     Answering paragraph 90 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

91.     Answering paragraph 91 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

92.     Answering paragraph 92 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

93.     Answering paragraph 93 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone  (714) 823-4100
Fax      (714) 823-4101

FILE # 22348

**DEFENDANTS' ANSWER TO PLAINTIFF'S FOURTH AMENDED COMPLAINT**

94. Answering paragraph 94 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

95. Answering paragraph 95 of Plaintiff's FAC, Defendants deny that Plaintiff was subjected to a "strip search". Defendants are without sufficient knowledge or information to form a belief as to the truth of the rest of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

96. Answering paragraph 96 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

97. Answering paragraph 97 of Plaintiff's FAC, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

98. Answering paragraph 98 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient

**COLLINS COLLINS MUIR + STEWART** LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

99.     Answering paragraph 99 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

100.    Answering paragraph 100 of Plaintiff's FAC, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

101.    Answering paragraph 101 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

102.    Answering paragraph 102 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants deny that Plaintiff was subjected to a "strip search" and Defendants are without sufficient knowledge or information to form a belief as to the truth of the rest of the allegations contained in said

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone  (714) 823-4100
Fax     (714) 823-4101

paragraph, and on that basis deny each and every allegation contained therein.

103.    Answering paragraph 103 of Plaintiff's FAC, Defendants deny each and every allegation in said paragraph.

104.    Answering paragraph 104 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

105.    Answering paragraph 105 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

106.    Answering paragraph 106 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

107.    Answering paragraph 107 of Plaintiff's FAC, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations regarding Plaintiff's loss of trust, comfort, care, protection, and support, and on that

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone  (714) 823-4100
Fax     (714) 823-4101

1    basis deny each and every allegation contained therein. Defendants deny the rest of the

2    allegations in said paragraph.

3        108. Answering paragraph 108 of Plaintiff's FAC, Defendants are without

4    sufficient knowledge or information to form a belief as to the truth of the allegations

5    contained in said paragraph, and on that basis deny each and every allegation contained

6    therein.

7        109. Answering paragraph 109 of Plaintiff's FAC, Defendants allege said

8    paragraph contains legal argument and to that extent, requires no response. To the extent

9    Defendants are required to admit and/or deny, Defendants are without sufficient

10   knowledge or information to form a belief as to the truth of the allegations contained in

11   said paragraph, and on that basis deny each and every allegation contained therein.

12       110. Answering paragraph 110 of Plaintiff's FAC, Defendants allege said

13   paragraph contains legal argument and to that extent, requires no response. To the extent

14   Defendants are required to admit and/or deny, Defendants deny that Plaintiff was

15   subjected to a "strip search" and Defendants are without sufficient knowledge or

16   information to form a belief as to the truth of the rest of the allegations contained in said

17   paragraph, and on that basis deny each and every allegation contained therein.

18       111. Answering paragraph 111 of Plaintiff's FAC, Defendants allege said

19   paragraph contains legal argument and to that extent, requires no response. To the extent

20   Defendants are required to admit and/or deny, Defendants are without sufficient

21   knowledge or information to form a belief as to the truth of the allegations contained in

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone   (714) 823-4100
Fax     (714) 823-4101

*FILE # 22348*

26

**DEFENDANTS' ANSWER TO PLAINTIFF'S FOURTH AMENDED COMPLAINT**

said paragraph, and on that basis deny each and every allegation contained therein.

112. Answering paragraph 112 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

113. Answering paragraph 113 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

114. Answering paragraph 114 of Plaintiff's FAC, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations in said paragraph, and on that basis deny each and every allegation contained therein.

115. Answering paragraph 115 of Plaintiff's FAC, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

116. Answering paragraph 116, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

*FILE # 22348*

27

**DEFENDANTS' ANSWER TO PLAINTIFF'S FOURTH AMENDED COMPLAINT**

117.    Answering paragraph 117 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

118.    Answering paragraph 118 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

119.    Answering paragraph 119 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

120.    Answering paragraph 120 of Plaintiff's FAC, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

121.    Answering paragraph 121, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

*FILE # 22348*

**DEFENDANTS' ANSWER TO PLAINTIFF'S FOURTH AMENDED COMPLAINT**

to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

122.   Answering paragraph 122 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

123.   Answering paragraph 123 of Plaintiff's FAC, Defendants deny that Plaintiff was subjected to a "strip search". Defendants are without sufficient knowledge or information to form a belief as to the truth of the rest of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

124.   Answering paragraph 124 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

125.   Answering paragraph 125 of Plaintiff's FAC, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

*FILE # 22348*

**DEFENDANTS' ANSWER TO PLAINTIFF'S FOURTH AMENDED COMPLAINT**

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone   (714) 823-4100
Fax     (714) 823-4101

126.   Answering paragraph 126 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

127.   Answering paragraph 127 of Plaintiff's FAC, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

128.   Answering paragraph 128 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

129.   Answering paragraph 129 of Plaintiff's FAC, Defendants deny that Plaintiff was subjected to a "strip search". Defendants are without sufficient knowledge or information to form a belief as to the truth of the rest of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

130.   Answering paragraph 130 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone  (714) 823-4100
Fax     (714) 823-4101

knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

131.    Answering paragraph 131, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

132.    Answering paragraph 132 of Plaintiff's FAC, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

133.    Answering paragraph 133 of Plaintiff's FAC, Defendants deny each and every allegation in said paragraph.

134.    Answering paragraph 134 of Plaintiff's FAC, Defendants deny each and every allegation in said paragraph.

135.    Answering paragraph 135 of Plaintiff's FAC, Defendants deny each and every allegation in said paragraph.

136.    Answering paragraph 136 of Plaintiff's FAC, Defendants deny each and every allegation in said paragraph.

137.    Answering paragraph 137 of Plaintiff's FAC, Defendants deny each and every allegation in said paragraph.

138.    Answering paragraph 138 of Plaintiff's FAC, Defendants deny each and every allegation in said paragraph.

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone    (714) 823-4100
Fax    (714) 823-4101

*FILE # 22348*

31

DEFENDANTS' ANSWER TO PLAINTIFF'S FOURTH AMENDED COMPLAINT

139. Answering paragraph 139 of Plaintiff's FAC, Defendants deny that Plaintiff was subjected to a "strip search". Defendants are without sufficient knowledge or information to form a belief as to the truth of the rest of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

140. Answering paragraph 140 of Plaintiff's FAC, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

141. Answering paragraph 141 of Plaintiff's FAC, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

142. Answering paragraph 142, Defendants deny that Plaintiff was subjected to a "strip search". Defendants are without sufficient knowledge or information to form a belief as to the truth of the rest of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

143. Answering paragraph 143, Defendants deny that Plaintiff was subjected to a "strip search". Defendants are without sufficient knowledge or information to form a belief as to the truth of the rest of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

144.   Answering paragraph 144, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

145.   Answering paragraph 145, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

146.   Answering paragraph 146, Defendants allege said paragraph contains legal argument and to that extent, requires no response. To the extent Defendants are required to admit and/or deny, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

## **AFFIRMATIVE DEFENSES**

## **FIRST AFFIRMATIVE DEFENSE**

1.   The doctrine of respondeat superior is not applicable to claims under 42 U.S.C. § 1983.

## **SECOND AFFIRMATIVE DEFENSE**

2.   Under 42 U.S.C. § 1983, simple negligence does not constitute a violation of federal civil rights.  *Parratt v. Taylor* (1981) 451 U.S. 527.

## **THIRD AFFIRMATIVE DEFENSE**

3.   Defendants and/or their agents and employees did not deprive Plaintiff of any of her rights, privileges, or immunities secured by the United States Constitution or

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone  (714) 823-4100
Fax      (714) 823-4101

FILE # 22348

33

DEFENDANTS' ANSWER TO PLAINTIFF'S FOURTH AMENDED COMPLAINT

laws of the United States.

## FOURTH AFFIRMATIVE DEFENSE

4.      Defendants' training policies were adequate to prevent violations of law by its agents and employees and to handle the usual and recurring situations with which they must deal.

## FIFTH AFFIRMATIVE DEFENSE

5.      The damages alleged were directly and proximately caused and contributed to by the negligence and/or fault of persons other than Defendants, and the extent of damages sustained, if any, should be reduced and proportioned to the amount of said negligence and/or fault.

## SIXTH AFFIRMATIVE DEFENSE

6.      A policy or custom of Defendants cannot be established by one act for a claim under *Monell v. Department of Social Services for the City of New York* (1978) 436 U.S. 658.

## SEVENTH AFFIRMATIVE DEFENSE

7.      Plaintiff's claims are barred by res judicata and/or collateral estoppel, including issue and claim preclusion.

## EIGHTH AFFIRMATIVE DEFENSE

8.      Defendants acted in an objectively reasonable manner and are entitled to qualified immunity as a defense to actions brought as civil rights violations under 42 U.S. § 1983.

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone   (714) 823-4100
Fax        (714) 823-4101

## NINTH AFFIRMATIVE DEFENSE

9.      Defendants are entitled to absolute immunity from liability for violations of civil rights under 42 U.S.C. § 1983.  Defendants' allege that as to any Section 1983 claims for relief, they are entitled to absolute immunity for their conduct that enjoys absolute immunity under common law principles.

## TENTH AFFIRMATIVE DEFENSE

10.     Reasonable suspicion was believed to have existed to justify custodial searches during Plaintiff's detention at the WCJ.

## ELEVENTH AFFIRMATIVE DEFENSE

11.     Exigent circumstances, including but not limited to immediate danger and/or substantial risk of harm, were believed to have existed to justify repeated searches during Plaintiff's detention.

## TWELFTH AFFIRMATIVE DEFENSE

12.     Plaintiff failed to mitigate or attempt to mitigate damages, therefore if in fact any damages have been sustained, any recovery by Plaintiff should be diminished or barred.

## THIRTEENTH AFFIRMATIVE DEFENSE

13.     The answering individual Defendants were employed by the County and acting in their respective official capacities. Their alleged actions, if any, were made in good faith, without malice and/or performed in the reasonable belief that those actions were authorized by and in accord with existing law and authority.

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone  (714) 823-4100
Fax     (714) 823-4101

## FOURTEENTH AFFIRMATIVE DEFENSE

14.     There is no imputed liability between public officers in actions under the Federal Civil Rights Act.

## FIFTEENTH AFFIRMATIVE DEFENSE

15.      Plaintiff's claims are barred to the extent that she has engaged in misconduct or otherwise subjected to the doctrine of unclean hands.

## SIXTEENTH AFFIRMATIVE DEFENSE

16.     Defendants did not have any expressly adopted official policies or widespread or longstanding practices of custom affecting any of the alleged acts giving rise to Plaintiff's constitutional claims.

## SEVENTEENTH AFFIRMATIVE DEFENSE

17.     Defendants were not deliberately indifferent to the substantial risk that its training policies were inadequate to prevent violations of law by its employees.

## EIGHTEENTH AFFIRMATIVE DEFENSE

18.     No wrongful action took place pursuant to custom, policy, or usage of the public entity.

## NINTEENTH AFFIRMATIVE DEFENSE

19.     Plaintiff is not exposed to any actual or immediate threat of irreparable injury.

## TWENTIETH AFFIRMATIVE DEFENSE

20.     There is no present case or controversy between Defendants and Plaintiff;

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone   (714) 823-4100
Fax      (714) 823-4101

*FILE # 22348*

36

**DEFENDANTS' ANSWER TO PLAINTIFF'S FOURTH AMENDED COMPLAINT**

1    Plaintiff's claims are moot.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

21.    Plaintiff's complaint is barred, in whole or in part, by the doctrine of judicial estoppel.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

22.    Plaintiff's FAC fails to state a claim against Defendants upon which relief can be granted.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

23.    Plaintiff's FAC fails to state a claim against Defendants upon which an award of damages can be based.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

24.    Plaintiff's FAC fails to state a claim against Defendants upon which an award of punitive damages can be based.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

25.    Plaintiff's FAC fails to provide any factual support for a claim of deliberate indifference to the rights of the Plaintiff.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

26.    Defendants are informed and believe and based thereon allege that all actions taken by Defendants, complained of herein were taken in accordance with established policies procedures, were in accordance with law and thereby privileged.

///

*FILE # 22348*

**COLLINS COLLINS MUIR + STEWART** LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone   (714) 823-4100
Fax     (714) 823-4101

**DEFENDANTS' ANSWER TO PLAINTIFF'S FOURTH AMENDED COMPLAINT**

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

27.    Defendants are informed and believe and based thereon allege that Plaintiff failed to exhaust her remedies available under State or Administrative law as to some or all of her claims.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

28.    Plaintiff's FAC fails to state a cause of action against the County under *Monell v. Department of Social Services for the City of New York*, 436 U.S. 658 (1978) because there can be no recovery for a federal civil rights violations where there is no constitutional deprivation caused by an expressly adopted official policy or longstanding practice or custom.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

29.    Plaintiff's FAC fails to establish any official custom or practice held by Defendant, the County, which posed a risk of harm to Plaintiff.

## THIRTIETH AFFIRMATIVE DEFENSE

30.    Plaintiff's FAC fails to establish a cause of action because Defendants did not act pursuant to an official government policy that violated Plaintiff and/or their decedent's constitutionally protected rights.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

31.    Plaintiff's FAC fails to establish that County had any policies or customs affecting any of the alleged acts giving rise to Plaintiff's constitutional claims.

///

*FILE # 22348*

**DEFENDANTS' ANSWER TO PLAINTIFF'S FOURTH AMENDED COMPLAINT**

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone   (714) 823-4100
Fax      (714) 823-4101

## THIRTY-SECOND AFFIRMATIVE DEFENSE

32.     Plaintiff's FAC and each count thereof, fails to establish causation under color of statute, ordinance, regulation, custom, or usage.

## THIRTY-THIRD AFFIRMATIVE DEFENSE

33.     Plaintiff's injuries, if any, were caused by persons other than Defendants.

## THIRTY-FOURTH AFFIRMATIVE DEFENSE

34.     The conduct of Defendants alleged in Plaintiff's FAC is privileged and immune under federal and state law.

## THIRTY-FIFTH AFFIRMATIVE DEFENSE

35.     Plaintiff's injuries, if any, are the result of her own negligence.

## THIRTY-SIXTH AFFIRMATIVE DEFENSE

36.     Neither a public entity nor a public employee is liable for any injury caused by the act or omission of another person.

## THIRTY-SEVENTH AFFIRMATIVE DEFENSE

37.     Plaintiff's claims and requests for relief are barred, in whole or in part, by the doctrine of laches.

## THIRTY-EIGHTH AFFIRMATIVE DEFENSE

38.     Defendants are not liable for damages proximately caused by the acts or omissions of third parties or Plaintiff.

## THIRTY-NINTH AFFIRMATIVE DEFENSE

39.     Defendants were not the proximate cause of Plaintiff's alleged deprivation

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone  (714) 823-4100
Fax     (714) 823-4101

of a constitutionally protected right, privilege, or immunity.

## FOURTIETH AFFIRMATIVE DEFENSE

40.     Any and all official conduct taken by Defendants was in good faith and without malicious intent to deprive Plaintiff of her constitutional rights or to cause other injury.

## FORTY-FIRST AFFIRMATIVE DEFENSE

41.     Defendants did not act in bad faith or with malicious intent.

## FORTY-SECOND AFFIRMATIVE DEFENSE

42.     Neither a public entity nor a public employee is liable for any injuries caused by the act or omission of a public employee while exercising due care in the execution or enforcement of any law.

## FORTY-THIRD AFFIRMATIVE DEFENSE

43.     Plaintiff's claims and requests for relief are barred, in whole or in part, by the Prison Litigation Reform Act.

## FORTY-FOURTH AFFIRMATIVE DEFENSE

44.     Plaintiff's request for attorneys' fees is limited, in whole or in part, by the Prison Litigation Reform Act.

## FORTY-FIFTH AFFIRMATIVE DEFENSE

45.     Neither a public entity nor its employees are liable for any injury caused by the failure to furnish or obtain medical care for a prisoner in its custody. (*Government Code* § 845.6).

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone  (714) 823-4100
Fax     (714) 823-4101

*FILE # 22348*

## FORTY-SIXTH AFFIRMATIVE DEFENSE

46.     Any and all acts or omissions of Defendants, which allegedly caused injuries at the time and place set forth in the FAC, which is the subject of this action, were the result of the exercise of discretion vested in them, and, therefore, Defendants are not liable to Plaintiff for any of the alleged damages. (*Government Code* § 820.2).

## FORTY-SEVENTH AFFIRMATIVE DEFENSE

47.     Defendants are not liable for the damages, if any, alleged in the FAC in that a public employee is not liable for an injury caused by the act or omission of another person. (*Government Code* § 820.8).

## FORTY-EIGHTH AFFIRMATIVE DEFENSE

48.     Defendants are not liable for the damages, if any, alleged in the FAC in that a public employee is not liable for an injury caused by his and/or her adoption of or failure to adopt an enactment or by his and/or her failure to enforce an enactment. (*Government Code* § 821).

## FORTY-NINTH AFFIRMATIVE DEFENSE

49.     Plaintiff's FAC, and the whole thereof, is barred by plaintiff's failure to comply with the requirements of the claim presentation requirements of the California Tort Claims Act. (*Government Code* §§ 945.4 and  950.2 et seq.)

## FIFTIETH AFFIRMATIVE DEFENSE

50.     The negligence of the third party or parties was a superseding, intervening cause of Plaintiff's injuries, if any.

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone  (714) 823-4100
Fax      (714) 823-4101

## FIFTY-FIRST AFFIRMATIVE DEFENSE

51.　Defendants are not liable pursuant to the doctrine assumption of the risk.

## FIFTY-SECOND AFFIRMATIVE DEFENSE

52.　Defendants did not have actual notice of any deficient policies, practices and customs, if there were any at all.

## FIFTY-THIRD AFFIRMATIVE DEFENSE

53.　Defendants did not have constructive notice of any deficient policies, practices and customs, if there were any at all.

## FIFTY-FOURTH AFFIRMATIVE DEFENSE

54.　Defendants provided all basic hygienic and life necessities that are required under the law and U.S. Constitution.

## FIFTY-FIFTH AFFIRMATIVE DEFENSE

55.　Defendants did not violate Plaintiff's Due Process rights under the Fourteenth Amendment of the U.S. Constitution.

## FIFTY-SIXTH AFFIRMATIVE DEFENSE

56.　Defendants' policies and procedures do not constitute an Eighth Amendment violation of the U.S. Constitution.

## FIFTY-SEVENTH AFFIRMATIVE DEFENSE

57.　Any and all searches and/or seizures Defendants subjected Plaintiff to during her detention at the WCJ were reasonable and did not violate the Fourth Amendment of the U.S. Constitution.

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone　(714) 823-4100
Fax　(714) 823-4101

*FILE # 22348*

**DEFENDANTS' ANSWER TO PLAINTIFF'S FOURTH AMENDED COMPLAINT**

## FIFTY-EIGHTH AFFIRMATIVE DEFENSE

58.     Defendants, or any of its agents, did not act in retaliation to Plaintiff's or any other inmates' behavior.

## FIFTY-NINTH AFFIRMATIVE DEFENSE

59.     Defendants did not violate Plaintiff's First Amendment rights of the U.S. Constitution.

## SIXTIETH AFFIRMATIVE DEFENSE

60.     Plaintiff had pre-existing medical and/or psychological conditions that are not causally related to any act/omission of Defendants and Plaintiff failed to reasonably treat such conditions.

## SIXTY-FIRST AFFIRMATIVE DEFENSE

61.     Defendants provide all persons within its custody at the WCJ a reasonable right to privacy.

## SIXTY-SECOND AFFIRMATIVE DEFENSE

62.     Defendants cannot fully anticipate all affirmative defenses that may be applicable to this action based upon the conclusory and general terms used in the Complaint.  Accordingly, Defendants reserve the right to assert the additional defenses as applicable.

WHEREFORE, Defendants pray for judgment as follows:

1.     That Plaintiff take nothing by this action;

2.     That the action be dismissed;

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone   (714) 823-4100
Fax       (714) 823-4101

*FILE # 22348*

**DEFENDANTS' ANSWER TO PLAINTIFF'S FOURTH AMENDED COMPLAINT**

3. That Defendants be awarded costs of suit; and

4. That Defendants be awarded such other and further relief as the Court may deem just and proper, including an award of attorney's fees pursuant to 42 U.S.C. § 1988.

DATED: December 14, 2020      COLLINS COLLINS MUIR + STEWART LLP


By: _____

MARIAH A. WITT
MICHAEL L. WRONIAK
Attorneys for Defendants COUNTY OF
ORANGE; DON BARNES; WILLIAM
BAKER; JOE BALICKI; MARK
STICHTER; REYNA RIVERA;
DEVONNA FALCONER; KASSANDRA
MAYER; ELIA RODRIGUEZ; RACHEL
ADDINGTON

COLLINS COLLINS
MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

*FILE # 22348*

**DEFENDANTS' ANSWER TO PLAINTIFF'S FOURTH AMENDED COMPLAINT**

1  Jane Doe

2  11151 Valley Blvd #4886,

3  El Monte, CA 91734

4  626-208-9665

5  Plaintiff in Pro Se

6

7

8  **UNITED STATES DISTRICT COURT**

9  **CENTRAL DISTRICT OF CALIFORNIA**

10

11  JANE DOE,                                    No. 8:20-cv-00322-JWH-GJS

12                    Plaintiff,

13        v.                                     **FOURTH AMENDED COMPLAINT FOR DAMAGES**

14  COUNTY OF ORANGE; DON BARNES;
15  WILLIAM BAKER; JOE BALICKI;
    MARK STICHTER; REYNA RIVERA;
16  DEVONNA FALCONER; KASSANDRA
17  MAYER; ELIA RODRIGUEZ; RACHEL          **JURY TRIAL IS HEREBY DEMANDED**
    ADDINGTON; and DOES 1 - 10,
18  inclusive,

19                    Defendants.

20

21        Jane Doe ("Plaintiff") alleges and complains the following, on information and belief

22  except for information identified as being based on personal knowledge, which allegations are

23  likely to have evidentiary support after a reasonable opportunity for further discovery.

24                                   **<u>INTRODUCTION</u>**

25        1.      This is an action for compensatory and punitive damages, and other appropriate

26  relief for violations of Plaintiff's constitutional rights resulting from application of the County of

27  Orange's and the Sheriff's policies, practices, and customs concerning custody operations.

28        2.      Defendants' policies, practices, and customs violated Plaintiff's rights secured to

1

1   her by the First, Fourth, and Fourteenth Amendments to the U.S. Constitution and entitle Plaintiff

2   to recover damages under the Federal Civil Rights Act (42U.S.C. § 1983).

3       3.      Additionally, Plaintiff includes supplemental claim under California state law

4   against Defendants for violation of California Penal Code § 4030 which requires all strip searches

5   be conducted in an area of privacy and pre-approved in writing by a supervisor and provides for

6   minimum damages of $1,000 for each illegal search.

7       4.      How Plaintiff was treated as a pre-trial detainee, details described below, is an

8   absolute abuse of power and authority.

9                                   **PARTIES**

10      5.      Plaintiff, Jane Doe ("Plaintiff"), at all times herein mentioned, was a resident of

11  the County of Los Angeles, State of California. She was a pretrial detainee in Women's Central

12  Jail ("WCJ") in custody of Orange County Sheriff's Department ("OCSD"). Plaintiff was arrested

13  in August 2019 by Santa Ana Police Department ("SAPD) on misdemeanor charges (vandalism

14  under $400 and unlawful dissemination of private photos) that had nothing to do with contraband

15  or weapon. Plaintiff has been subsequently indicted on those charges. OCSD has never charged

16  Plaintiff with any jail infractions.

17      6.      Defendant, County of Orange ("the County"), is a municipal corporation located in

18  the Central District of California. OCSD is a law enforcement agency funded and operated by the

19  County. The County owns and, through OCSD, operates WCJ which is located at 44 Civic Center

20  Plaza, Santa Ana, CA 92703. The County has responsibility for funding the operations of WCJ.

21      7.      Defendants Don Barnes, William Baker, Joe Balicki, Mark Stichter, Reyna Rivera,

22  Devonna Falconer, Kassandra Mayer, Elia Rodriguez, Rachel Addington, and Does 1-10 are

23  referred to collectively as OCSD Officers/personnel. At all times relevant herein, OCSD Officers

24  were acting under color of law, under the color of statutes, ordinances, regulations, policies,

25  customs, practices and usages of Defendant the County, its Sheriff's department, and/or the State

26  of California.

27      8.      The responsibility for operating county jails in California is placed by law upon

28  the sheriff. See Cal.Penal Code § 4000; *Brandt v. Board of Supervisors*, 84 Cal.App.3d 598, 601,

147 Cal.Rptr. 468 (1987). At all times herein mentioned, Plaintiff is informed and believes, and thereon alleges that individual Defendant Sheriff Don Barnes ("Barnes") was an elected public official who had responsibility for the security and custody operations of county jails, which include WCJ, and to protect the safety of persons in the jails. At all times relevant hereto, Plaintiff alleges Barnes served as the highest official for OCSD and had at all times been personally involved in the **formulation and implementation of policies** at County Jails. As Sheriff of the County, Barnes holds the command and policy making position with regard to County Jails, including WCJ. Barnes has the final authority over the jail capacity and condition, distribution of life necessities and hygienic supplies, 24-hour lock up and light on, over-crowding, and unconstitutional policy of strip searches of inmates. Barnes failed to take adequate measures to cure the serious problems of which he was aware, he was deliberately indifferent to Plaintiff's constitutional rights. A reasonable person in Barnes's position would know that his conduct constituted deliberate indifference. Barnes was in a position to rectify (or attempt to rectify) most of these serious problems, his failure to do so was causally related to the violation of Plaintiff's constitutional rights. Barnes has caused, created, authorized, condoned, ratified, approved or knowingly acquiesced in the unconstitutional and inhumane conditions, actions, policies, customs and practices that prevail at WCJ, as described fully below. Barnes has, wholly or in part, directly and proximately caused the injuries and violations of rights set forth fully below.

9. Defendant Assistant Sheriff William Baker ("Baker"), at all times relevant to this Complaint was, the Assistant Sheriff of OCSD in charge of custody operations which include WCJ. According to OCSD Policy, as Assistant Sheriff in charge of custody operations, Baker was responsible for the **planning, directing, coordinating, and controlling** of all activities of OCSD's custody operations, and the **formulation of rules and procedures** necessary to carry out the policies and directives of Barnes. Baker established the rules and procedures of distribution of life necessities and hygienic supplies, 24-hour lock up and light on, and the unconstitutional strip searches of inmates that caused the deprivation of Plaintiff's federally protected rights. *Argueta v. U.S. Immigration and Customs Enforcement*, 2010 WL 398839, *8(D.N.J., Jan 27, 2010) (supervisors who "wrote the policy, implemented it, and monitored its progress" could be held

3

1     liable under *Iqbal*). Baker should have known the overcrowding condition in WCJ but he failed to

2     take any measure. Under California Evidence Code Division 5 Chapter 3 Presumptions and

3     Inferences, **it is presumed that official duty has been regularly performed**. Baker allowed the

4     continuance of policies or custom under which unconstitutional practices occurred. Baker was

5     grossly negligent in supervising subordinates who committed the wrongful acts stated herein. Due

6     to Baker's culpable action or inaction in the training, supervision, or control of his subordinates

7     Plaintiff was inflicted constitutional injuries during her stay in WCJ. Baker supervised his

8     subordinates with deliberate indifference toward the possibility that deficient performance of the

9     task may contribute to a civil rights deprivation.

10         10.     Defendant Joe Balicki ("Balicki") is, and at all times relevant to this Complaint

11     was, the Commander in Charge of OCSD's custody operations which include WCJ. According to

12     OCSD Policy, as the Commander in Charge of custody operations, Balicki was responsible for

13     ensuring that commands under his control are meeting OCSD and command standards of

14     operation. Balicki was responsible and liable for **policy utilization and implementation**

15     (including but not limited to strip search, 24-hour lock up and light on, and distribution of life

16     necessities and hygienic supplies), continued operation of the unconstitutional strip searches of

17     inmates and the practice of overcrowding. *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir.

18     2010), cert. denied, 131 S. Ct. 2150 (2011) (holding, under *Iqbal*, plaintiff may establish § 1983

19     liability of supervisory official by showing: (1) defendant (supervisor) promulgated, created,

20     implemented, or possessed responsibility for continued operation of policy that (2) caused the

21     complained of constitutional harm, and (3) acted with state of mind required to establish alleged

22     constitutional deprivation). See also *Walton v. Gomez* (In re Estate of Booker), 745 F.3d 405,

23     435–36 (10th Cir. 2014); *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767,

24     771 (10th Cir. 2013). A reasonable person in Balicki's position would have known that his action

25     and inaction infringed the constitutional rights of Plaintiff. Balicki's conduct was causally related

26     to the constitutional violation committed by his subordinates.

27         11.     Defendant Mark Stichter ("Stichter"), at all times relevant to this Complaint, was

28     the Captain of Women's Central Jail. According OCSD Policy, as the captain with direct

supervision over WCJ, Stichter **planned, organized, controlled and directed** the work of WCJ, including but not limited to distribution of life necessities and hygienic supplies, 24-hour lock up and light on condition, and unconstitutional strip searches of inmates. Stichter was responsible for the daily conditions and operations of WCJ, including the training and supervision of floor deputies. Stichter was regularly, if not daily, on the premises at WCJ. It was his responsibility to be knowledgeable and familiar with the actual daily conditions and operations of WCJ. While WCJ was overcrowding along with other issues described below Stichter **failed to** take any measure. Stichter was grossly negligent in supervising subordinates who committed the wrongful acts stated herein. Due to Stichter's culpable action or inaction in the training, supervision, or control of his subordinates Plaintiff was inflicted constitutional injuries during her stay in WCJ. Stichter supervised his subordinates with deliberate indifference toward the possibility that deficient performance of the task may contribute to a civil rights deprivation.

12.     The County and OCSD Officers are together responsible, collectively and individually, for the conditions of confinement and health and safety of persons incarcerated at WCJ by providing appropriate funding, oversight, and corrective action to ensure adequate conditions. They are also responsible for ensuring that jail policies and practices do not violate individuals' substantive and procedural due process rights.

13.     Defendant DOES 1 through 10 are not known or identified at this time. On information and belief, Plaintiff alleges that each Doe is in some manner responsible for the wrongs alleged herein, and that each such Defendant advised, encouraged, participated in, ratified, and/or directed  the wrongful acts alleged herein.  When the true names and capacities of said Defendants become known, Plaintiff will seek relief to amend this complaint to show their true identities in place of their fictitious names as DOES 1 through 10. Defendants, and each of them, were the agents, employees and servants of every other Defendant.  Defendants acted in the course and scope of said agency, service and employment at all relevant times under color of law.

14.     At all times relevant, each individual Defendant was acting within the course and scope of their employment as law enforcement officer of the County, and under the color of state law, and as the employee, agent and representative of each and every other Defendant.

15.     Defendants, and each of them, did the acts and omissions hereinafter alleged in bad faith and with knowledge that their conduct violated well established and settled law.

16.     All Defendants are sued for damages arising from violations of 42 U.S.C. § 1983, and for violations of state law and California Constitution.

17.     Defendants OCSD Officers are sued in their individual capacities for their violations of Plaintiff's clearly established United States and California constitutional rights.

## JURISDICTION AND VENUE

18.     The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367(a) because this action arises under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

19.     The Court may award damages for constitutional violations pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 2201, and/or Federal Rules of Civil Procedure 57 and 65.

20.     Venue is proper in this district under 28 U.S.C. § 1391(b) because the events that give rise to this action occurred within this district and the Defendants reside in this district and state.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

21.     On or about April 6, 2019 Plaintiff was raped in South El Monte. Liliana Jara ("Jara") was a detective with Los Angeles County Sheriff's Department who was working on the rape investigation. Santa Ana Police Department ("SAPD") personnel set up with Jara so Jara lied to Plaintiff that she would conduct an interview with Plaintiff at City of Industry Station.

22.     On or about August 8, 2019 at around 10:00 am Plaintiff was arrested by SAPD personnel upon her arrival at City of Industry Station on misdemeanor charges. Plaintiff did not resist arrest and was not violent. During the arrest, JARA and SAPD personnel conducted a patdown search on Plaintiff. At all times relevant herein, SAPD personnel has full knowledge that Plaintiff is a rape victim.

_Unlawful punishment_

23.     Plaintiff arrived at WCJ at around 10:50 am on August 8, 2019. The arresting police officer demanded the pass code to Plaintiff's cell phone but Plaintiff refused to submit.

1 Because Plaintiff did not memorize any phone numbers, while she requested for her cell phone to

2 get friend or family's phone number the police officer denied her request because Plaintiff didn't

3 submit the pass code to her cell phone. Therefore, Plaintiff was not able to arrange bail through

4 friends or family and had to be housed as a pre-trial detainee which caused Plaintiff to spend four

5 days in hell.

6   24. After a brief interview Plaintiff was taken to an open area for medical screening.

7 Plaintiff told a deputy that she was on period and she would need to use the restroom. Plaintiff

8 was ordered to sit down but she explained she could not sit down because her pad was full and if

9 she sat down period blood would come out. The deputy didn't care and pushed Plaintiff's

10 shoulder to force her to sit down.

11   25. Plaintiff, a petite 100 lb soft-spoken woman, was arrested, helpless, shocked, and

12 frightened. She was also unarmed and defenseless, thus, in a vulnerable position in WCJ at the

13 hands of OCSD personnel who had the power to do anything to her.

14   26. After Plaintiff changed her pad she told a deputy (true name will be identified

15 through formal discovery) that she was cold to death and asked for blanket or clothing to keep

16 warm but the deputy maliciously replied "It's JAIL. Don't come to jail next time." even though

17 the deputy was well aware that Plaintiff was in great discomfort and denial of basic human needs

18 would cause harm which is no different than attempted murder.

19   27. Plaintiff was only 100 lbs and wearing a T-shirt at the time. The jail facility was

20 kept bone chillingly cold. It was worse than being in winter without heater. Plaintiff told herself

21 "This is not jail. This is hell."

22   28. Plaintiff told a female nurse (true name will be identified through formal

23 discovery) that she was cold to death but the nurse laughed at Plaintiff intentionally and stated

24 that she didn't feel cold even though the nurse was well aware that Plaintiff was in great

25 discomfort and denial of basic human needs would cause harm. Then Plaintiff was held in a

26 concrete icing cold holding cell while she was shaking from head to toe.

27   29. Later Plaintiff was transferred to another area and she told a male nurse (true name

28 will be identified through formal discovery) that she was cold to death. Again, the nurse was well

1    aware that Plaintiff was in great discomfort and denial of basic human needs would cause harm

2    but Plaintiff was ignored intentionally. Deliberate indifference to Plaintiff's repeated requests

3    demonstrates a willful rejection to issue blanket or clothing for Plaintiff to keep warm.

4         30.    After Plaintiff's arrival around 11 am she was not provided with lunch in WCJ.

5    Her last meal was a quick and small breakfast around 7 am. Between 5 pm and 9 pm Plaintiff

6    **repeatedly** requested food but her requests were denied by falsely being told three times she

7    would get food later but she didn't get any food until the next day morning. Each time when

8    Plaintiff requested food OCSD personnel (true name will be identified through formal discovery)

9    was well aware that Plaintiff was starving and food was life necessity. Such denial was malicious,

10   intentional, and no different than attempted murder.

11        31.    In simple and plain language Plaintiff told OCSD personnel what she needed and

12   why she was in need but their callous indifference to Plaintiff's need for life necessities was

13   malicious and widespread.

14       *Strip search (seven times in four days)*

15        32.    During initial mental health screening, OCSD personnel (true name will be

16   identified through formal discovery) had full knowledge that Plaintiff was a victim of sexual

17   assault and she was on medication. As Plaintiff was still trying to cope with the shock and fear of

18   being arrested she could not remember the dose of her medication.

19        33.    OCSD personnel knew or should have known about the risk to Plaintiff's mental

20   health because a rape victim had a special sense of privacy. However, after being forced to be

21   strip naked and a mandatory shower in the view and presence of OCSD personnel and other

22   inmates, between August 8 and 12, 2019 Plaintiff was strip searched for seven times:

23             a.   Before being housed in general population and after a mandatory shower in the

24                presence and view of OCSD personnel on August 8, 2019.

25             b.   Before going up to the patio on August 10, 2019.

26             c.   Upon return from the patio on August 10, 2019.

27             d.   Before leaving for court on August 12, 2019.

28             e.   Upon arrival at court on August 12, 2019.

f.  Upon return from court with approval of release on own recognizance on August 12, 2019.

g.  Right before leaving WCJ on August 12, 2019.

34.  The above searches were all conducted in open hall way, without privacy, under surveillance camera, and in the presence and view of other inmates. At each time of the search, OCSD personnel (true name will be identified through formal discovery) did not have probable cause or reasonable suspicion that Plaintiff was in the possession of contraband, any other substance or weapon that would justify or necessitate the strip searches.

35.  The person(s) who knowingly and willfully authorized the above strip searches will be identified through formal discovery.

36.  On August 8, 2019 Plaintiff was given towels for shower. Plaintiff asked if she could skip shower because she didn't want to shower in the presence of strangers but OCSD personnel told Plaintiff that she must take a shower.

37.  In the presence and view of OCSD personnel and other inmates, Plaintiff had to take off all of her clothing, being completely naked, hand over her clothing to OCSD personnel before going to shower. When Plaintiff's naked body being observed the distance between Plaintiff and OCSD personnel or other inmates was within two feet.

38.  After a mandatory shower with no privacy, in the presence and view of OCSD personnel and other inmates as usual, Plaintiff was required to change in jail uniform. After this mandatory shower Plaintiff didn't take any shower for four days until she got home due to the significant and negative impact on her grown out of the horrible shower experience she endured.

39.  The bra Plaintiff was given looked old and dirty so Plaintiff opted not to wear it. She didn't expect she would be subjected to strip search later on. Plaintiff was not previously informed that she would be forced to undergo a strip search. Strip searches under such circumstances are particularly unwarranted.

40.  Plaintiff was told to go upstairs with other inmates. Shoulder to shoulder, around 15 people lined up by the wall in front of several deputies in the hall way. Right before the first strip search Plaintiff was ordered to wear a bra but she was not allowed to do so by using the

9

FOURTH AMENDED COMPLAINT

restroom. Plaintiff had to wear a bra in the open hallway under surveillance camera in the presence and view of around 20 people. While Plaintiff was wearing a bra the distance between Plaintiff and the deputy (true name will be identified through formal discovery) was about three or four feet.

41.    During the strip search, since Plaintiff was menstruating she had to pull down her underwear, lift up her period pad in her underwear so that OCSD personnel (true name will be identified through formal discovery) could inspect underneath the pad. While the pad was lifted up Plaintiff had to twist it in front of OCSD personnel so that it could be inspected if there was anything in the pad. She was not provided with a new period pad or allowed to use the restroom before putting her underwear with the used pad back on. All of these occurred in the open hallway in a group of inmates under surveillance camera.

42.    During the first strip search Plaintiff didn't run her fingers through her hair properly so the deputy (true name will be identified through formal discovery) slapped her head.

43.    On August 10, 2019 Plaintiff was allowed to get some fresh air and sunlight on the patio after breakfast. The patio was located on the top of the jail house with no outside access. Plaintiff was strip searched in the hall way with other cell mates without any "reasonable suspicion" before she left for the patio. After spending less than one hour on the patio Plaintiff came back down to her cell and she was strip searched again in a group without any "reasonable suspicion". Plaintiff told her cell mate, "Had I known I had to be strip searched I wouldn't have wanted to go up to the patio." Both strip searches were unnecessary and deprivation of Plaintiff's rights secured to her by United States and California constitution.

44.    On August 12, 2019 before leaving for court Plaintiff was strip searched at WCJ. She was strip searched again without any "reasonable suspicion" upon her arrival at courthouse which means she was strip searched twice within 30 minutes. Between these two strip searches Plaintiff was under constant supervision of OCSD personnel.

45.    After a strip search at WCJ, when arriving at the courthouse, even though Plaintiff was menstruating she was told to pull down her underwear, bend forward at the waist, spread her legs, and cough multiple times until the deputy was satisfied. Again, Plaintiff had to pull down

10

FOURTH AMENDED COMPLAINT

1   her underwear, lift up her period pad in her underwear so that the deputy could inspect underneath

2   the pad. While the pad was lifted up Plaintiff had to twist it in front of deputy so that it could be

3   inspected if there was anything in the pad. Plaintiff was not provided with a new period pad or

4   allowed to use the restroom before putting her underwear with the used pad back on.

5       46.     After returning from court Plaintiff became entitled to release as a result of her

6   court appearance but she was strip searched any way. Even after Plaintiff was released on her

7   own recognizance, right before leaving WCJ she was strip searched without any "reasonable

8   suspicion".

9       47.     After Plaintiff had obtained court approval to be released on her own recognizance

10  she was still subjected to two strip searches.

11      48.     For each of seven strip searches, Plaintiff had to take off her clothing, pull down

12  her underwear, lift up her menstrual pad and twist it in front of deputies without any reasonable

13  suspicion, all occurred while other inmates were present. All seven strip searches were not

14  conducted due to Plaintiff's suspicious behavior.

15      49.     A rape victim has a special sense of privacy in her body. Involuntary exposure of

16  her body in the presence of other people in open hallway under surveillance camera is especially

17  demeaning and humiliating. Strip search inflicts serious psychological pain to sexual assault

18  victims and causes them lasting and permanent harm. Seven times of strip searches have re-

19  traumatized Plaintiff and resulted in suicide attempts.

20      50.     During Plaintiff's four-day confinement as a pre-trial detainee, despite she was in

21  serious psychiatric need she was cut out of medication. Plaintiff was strip searched seven times

22  and those searches were unnecessary and excessive without any reasonable suspicion and

23  legitimate prison interest.

24      51.     OCSD's unlawful strip search policy was the moving force behind Plaintiff's

25  constitutional injuries. The names of individual deputies authorized or conducted the above strip

26  searches are unknown to Plaintiff but Plaintiff will obtain those names through further discovery.

27  *Over-crowding with long lock-in time, sleep deprivation, and unconstitutional policy for*

28  *hygienic supplies*

11

FOURTH AMENDED COMPLAINT

52.     Forty inmates, including Plaintiff, were placed in an approximately 800-square foot windowless cell with bunk beds, sharing one dayroom, two stand-up shower stalls and four toilets. Each bunk bed was about one foot apart. The windowless dayroom was about 150 square foot which was located behind the toilets connected to the jail cell. Such condition provides the best opportunity for contagions and puts all inmates' health at risk since the infection may not show symptoms right away.

53.     Plaintiff was locked in this cramped jail cell 24 hours of every day and was permitted no sunlight, fresh air, exercise, clocks, and environmental stimulation. Defendants only allowed Plaintiff and other inmates to go up to the patio less than one hour per week which was Plaintiff's only access to fresh air and sunlight. This only chance to get fresh air and sunlight subjected Plaintiff to two times of strip search. This also means Plaintiff spent more than 48 consecutive hours locked down and another 48 consecutive hours locked down was followed by less than one hour of patio time.

54.     In the cell the lights were never off. Even at night some of the lights were off but some of the lights were 24-hour on and the lighting was bright enough to read. Plaintiff and other inmates were assumed to be able to sleep with 24-hour lights on in their cell.

55.     There was an informal rule to prohibit flushing toilets when deputy was present because the noise of flushing toilet was extremely loud. Every night the entire night there were people using toilet every 30 minutes or so. The noise of flushing toilets was non-stop and extremely loud which caused Plaintiff to stay awake the entire night for consecutive four nights.

56.     According to the Centers for Disease Control and Prevention, an adult between the ages of 18 and 60 needs 7 or more hours of sleep per night for good health. Not getting enough sleep is linked with many diseases and conditions.

57.     The daily sleep deprivation and disturbance had created significant negative impacts on Plaintiff's abilities to function at many levels. Such sleep deprivation caused more sensitivity to physical pain. Plaintiff was negatively impacted cognitively, functionally, and psychiatrically. Cognitive impairment has adversely impacted Plaintiff, as a pretrial detainee's, ability to assist in her legal defense. Plaintiff's overall health and immune systems has been

1   negatively impacted resulting in health issues including dysfunctional menstrual bleeding.

2       58.     As a direct result it imposed genuine privations and hardship, caused Plaintiff's

3   suffering from deprivation of sleep and degeneration, and threatened her mental and physical

4   well-being.

5       59.     In *Gray v. Hardy*, 826 F.3d 1000, 1006 (7th Cir. 2016), the court held that

6   "Hygienic supplies sufficient to meet basic needs are constitutionally required; it is not enough

7   for the prison to "allow" inmates to purchase them."

8       60.     However, only the first set of hygienic supplies (soap and toothpaste), enough for

9   two days in use, was provided by OCSD free of charge. Shampoo was not included in hygienic

10  supplies. Despite inmates' financial ability hygienic supplies were on their own expenses. The

11  purchase price set by OCSD is way higher than regular store. As inmates cannot possess money

12  during confinement they have to make purchase through their family or friends which causes

13  unnecessary inconvenience.

14      61.     Defendants imposed these harsh conditions on Plaintiff who had not been

15  convicted and was simply awaiting a court date which left Plaintiff feeling like worse than an

16  animal.

17      62.     Defendants have maintained a physical environment at WCJ that caused harm and

18  posed an unreasonable risk of serious harm to Plaintiff's health and safety by ignoring poor

19  facility housing and maintenance problems.

20      63.     Defendants, by its policy and practice of locking people in these inhumane

21  conditions, subjected Plaintiff to serious psychological and physiological harm. Especially

22  Plaintiff was already experiencing perceptible harm, including PTSD, anxiety, depression, social

23  withdrawal, paranoia, agitation, and suicidal ideation, and OCSD personnel was fully aware of

24  that. Plaintiff, with preexisting mental illness, has been suffering from more acute symptoms as a

25  result of these policies and practices.

26      *Harassing cell search during midnight*

27      64.     On or about August 11, 2019, in the early morning after midnight, Reyna Rivera,

28  Devonna Falconer, Kassandra Mayer, Elia Rodriguez, Rachel Addington, and other OCSD

personnel (true names will be identified through formal discovery) acting beyond the scope of their authority, agreed and began a concerted action against Plaintiff and all other inmates. Forty inmates in Plaintiff's cell, were awoken and locked up in the dayroom. While being locked up in the dayroom Plaintiff and all other inmates' bedding were searched **without reasonable suspicion** by Reyna Rivera #9890, Devonna Falconer #10050, Kassandra Mayer #10765, Elia Rodriguez #9052, Rachel Addington #10682, and other OCSD personnel (true names will be identified through formal discovery).

65.     During the shakedown one deputy loudly announced that such searches would continue regularly unless and until all inmates would keep quiet during the day. The deputy went on and declared in a degrading manner that dayroom and phone service would be shut down unless and until all inmates would shut up during the day. OCSD personnel are not happy with the fact that forty female inmates locked into a cramped cell talk to each other while they are awake.

66.     Cell search conducted **after midnight**, exercise of the agreement of a group of deputies, was for no purpose but to harass. Cell search conducted after midnight by a group of deputies was deliberately planned, organized, and carried out with joint effort for the purposes of retaliation of Plaintiff and other inmates' freedom of expression.

*Release*

67.     Before getting back her own clothing Plaintiff was forced to be completely naked in the presence and view of around 10 people, including OCSD personnel and other inmates. When Plaintiff's naked body being observed the distance between Plaintiff and OCSD personnel or other inmates was within two feet.

68.     Although Santa Ana is a city with high crime rate OCSD intentionally release female inmates around midnight. In 2018, 295 rapes were reported in Santa Ana while there were 273 rapes in 2017. (https://www.santa-ana.org/open-gov-data/police-department/crime-statistics)

69.     While in WCJ Plaintiff was told by different cell mates that one female inmate was raped on her way home after she was released by WCJ around midnight. OCSD place all female inmates in a high crime area around midnight any way regardless of the danger waiting for them.

14

FOURTH AMENDED COMPLAINT

ER 193

70.     Plaintiff was released around midnight but her cell phone was kept by SAPD. Plaintiff was released on the street without funds or other means to secure transportation to her residence in El Monte, California which was 40 miles away. Plaintiff was helpless and frightened, thus, in a vulnerable position even after she got her freedom back.

71.     On or about Aug 16, 2019, less than a week after her release, Plaintiff ended up in ER for dysfunctional menstrual bleeding. In Plaintiff's entire life it was her very first time to visit ER. On or about Aug 30, 2019 Plaintiff was transported to the hospital and put on suicide watch for five days.

72.     On Nov 28, 2019 Plaintiff attempted suicide by trying to overdose sleeping aid.

73.     The various acts alleged have caused Plaintiff serious harm outside of the inherent discomforts of confinement. In light of the various acts alleged, a reasonable jury could find that Plaintiff was subjected to punishment in violation of her constitutional rights. Until now Plaintiff still has a hard time comprehending her experience in WCJ.

## **FIRST CAUSE OF ACTION**

**Fourteenth Amendment (42 U.S.C. § 1983) – Outright denials of life necessities**

**Against COUNTY OF ORANGE and DOES 1-10**

74.     Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

75.     Under the Due Process Clause of Fourteen Amendment, pretrial detainees cannot be punished. They can only be detained to ensure their presence at trial. Plaintiff has a due process right to be free from unlawful punishment, severe restraints and hazards.

76.     The "parameters" of detainees' rights concerning conditions of confinement are "coextensive" with Eighth Amendment protections. *Surprenant v. Rivas*, 424 F.3d 5, 18 (1st Cir. 2005). Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, … the Eighth Amendment standard provides the benchmark for such claims. *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998). Even so, the Fourteenth Amendment is more protective than the Eighth Amendment "because the Fourteenth Amendment prohibits **all** punishment of pretrial detainees, while the Eighth Amendment only prevents the imposition of

15

1   cruel and unusual punishment of convicted prisoners." Demery, 378 F.3d at 1029 (citing Bell,

2   441 U.S. at 535 n.16) (emphasis added).

3       77.     The Supreme Court has listed as basic human needs "food, clothing, shelter,

4   medical care and reasonable safety" as well as "warmth [and] exercise." Deliberate indifference

5   to life necessity needs of pre-trial detainees constitutes the 'unnecessary and wanton infliction of

6   pain' proscribed by the Fourteenth Amendment.

7       78.     The Eighth Amendment entitles prisoners "not to be confined in a cell at so low a

8   temperature as to cause severe discomfort". *Dixon v. Godinez*, 114 F.3d 640, 644 (7th Cir. 1997).

9   Less than two hours' exposure to subfreezing outdoor weather without hats and gloves violated

10  the Eighth Amendment. *Gordon v. Faber*, 973 F.2d 686, 687-88 (8th Cir. 1992).

11      79.     Food is one of the basic necessities of life protected by the Eighth Amendment.

12  12-hour deprivation of food in police lockup, if intentional, was "obviously" unlawful. *Willis v.*

13  *Bell*, 726 F. Supp. 1118, 1121-22(N.D.Ill. 1989).

14      80.     20 plus hours without food along with 12 plus hours in bone chillingly cold

15  environment constituted unlawful punishment because Plaintiff's repeated requests for food and

16  clothing were intentionally denied by OCSD personnel. Plaintiff's life's necessities were denied

17  due to OCSD personnel's intentional indifference to Plaintiff's fundamental rights.

18                        **SECOND CAUSE OF ACTION**

19  **Fourteenth Amendment (42 U.S.C. § 1983) – Overcrowding and sleep deprivation**

20  **Against COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI;**

21                   **MARK STICHTER; and DOES 1-10**

22      81.     Plaintiff re-alleges and herein incorporates by reference the allegations set forth in

23  the paragraphs above.

24      82.     In May 2011, the U.S. Supreme Court ruled that overcrowding in California's

25  prisons resulted in cruel and unusual punishment in violation of the Eighth Amendment to the

26  U.S. Constitution.

27      83.     Since the Eighth Amendment standard defines what is unlawful punishment of

28  detainees the overcrowding in WCJ operated by OCSD has resulted in unlawful punishment in

                               16

1  violation of the Fourteenth Amendment to the U.S. Constitution due to Defendants' intentional

2  indifference to Plaintiff and other detainees' fundamental rights.

3       84.     By Defendants' policies and practices described above, Defendants subjected

4  Plaintiff to a substantial risk of serious harm and injury from the harmful and inhumane effects of

5  daily insufficient sleep duration.

6       85.     These policies and practices have been, and continue to be, implemented by

7  Defendants and their agents, officials, employees and all persons acting in concert with them

8  under color of state law, in their official capacities, and are the proximate cause of Plaintiff's

9  deprivation of due process rights secured by the United States Constitution under the Fourteenth

10  Amendments, are not rationally related to a legitimate nonpunitive governmental purpose or is

11  excessive in relation to any such nonpunitive governmental purpose.

12  **THIRD CAUSE OF ACTION**

13  **Fourth Amendment (42 U.S.C. § 1983) – Strip search and bodily privacy**

14  **Against COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI;**

15  **MARK STICHTER; and DOES 1-10**

16       86.     Plaintiff re-alleges and herein incorporates by reference the allegations set forth in

17  the paragraphs above.

18       87.     The Fourth Amendment protects "[t]he right of the people to be secure in their

19  persons . . . against unreasonable searches and seizures . . . ." U.S. Const. amend. IV.

20       88.     Jordan v. Gardner, 986 F.2d 1521, 1524 (9th Cir. 1993) (en banc) (the "Fourth

21  Amendment guarantees the right of the people to be secure against unreasonable searches, and its

22  protections are not extinguished upon incarceration"); Thompson v. Souza, 111 F.3d 694, 699

23  (9th Cir. 1997) (same).

24       89.     Allegation of a strip search that was unnecessary because it immediately followed

25  another strip search stated a Fourth Amendment claim. Hodges v. Stanley, 712 F.2d 34, 35 (2d

26  Cir. 1983). A second-strip search was unconstitutional because the inmate was under constant

27  supervision of guards since the first search. Jean-Laurent v. Wilkenson, 540 F. Supp. 2d 501

28  (S.D.N.Y 2008)

90.     In *Bell v. Wolfish*, 441 U.S. 520 (1979), the Supreme Court created a balancing test for determining if a person's Fourth Amendment right to be free from unreasonable searches in the carceral context has been violated. Courts assess the constitutionality of a strip search by balancing "the need for the particular search against the invasion of personal rights that the search entails." Id. at 559. This requires courts to weigh "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Id. Applying this balancing test, California courts have held that a blanket strip search policy for arrestees **after returning from court** is unconstitutional. Craft v. County of San Bernardino, 468 F. Supp. 2d 1172, 1179 (C.D. Cal. 2006) (policy of strip searching all arrestees who are returned to a jail facility from court violates the Fourth Amendment).  As to arrestees returning from court entitled to release, blanket policies of conducting strip searches violates the Fourth Amendment, Article 1, § 1 of the California Constitution, and Article 1, § 13 of the California Constitution. Craft v. County of San Bernardino, 468 F. Supp. 2d 1172 (C.D. Cal. 2006).

91.     Strip search without privacy presented a factual issue of reasonableness. Estes-El v. State of New York, 552 F.Supp. 885, 889 (S.D.N.Y. 1982). In Lopez v. Youngblood, 609 F. Supp. 2d 1125 (E.D. Cal. 2009), the court held it was unconstitutional to strip search detainees in a group.

92.     And strip searches being conducted in an open setting is a form of gratuitous humiliation that raises constitutional questions. See, e.g., Vaughan v. Ricketts, 859 F.2d 736, 741-42 (9th Cir. 1988) (searched in an open hallway). Evidence of searches conducted publicly without reason and against prison rules supported a constitutional claim. Mays v. Springborn, 575 F.3d at 649-50.

93.     The Ninth Circuit has, since 1963, recognized a Fourteenth Amendment right to bodily privacy. In the Ninth Circuit, "[i]t is clearly established that the Fourteenth Amendment protects a sphere of privacy, and the most `basic subject of privacy . . . the naked body.'" *Hydrick v. Hunter*, 500 F.3d 978, 1000 (9th Cir. 2007), cert. granted, judgment vacated on other grounds, 556 U.S. 1256 (2009) (quoting Grummet, 779 F.2d at 494); see also Sepulveda, 967 F.2d at 1416

18

ER 197

("The right to bodily privacy is fundamental. . . . and was clearly established at the time. . . .").

94.    Plaintiff's involuntary exposure in states of partial or total nudity was humiliating and degrading. A pre-trial detainee does not deserve any harm outside of the inherent discomforts of confinement. Loss of freedom is more than enough. Plaintiff, a pre-trial detainee in a vulnerable position, did not deserve what she went through in WCJ.

95.    Defendants could have established risk assessment mechanism. Defendants could have divided detainees by their level of risk. Defendants could have utilized body scanner instead of strip search. Defendants could have set up separate detention facility for non-dangerous and low-risk pre-trail detainees rather than throw all detainees and prisoners all together to provide opportunities for correctional officials' abuse of power and authority. Separating and dividing detainees is not only beneficial for prison safety but also cost effective. Imposing unnecessary and excessive blanket policy not only constitutes punishment but also a waste of tax dollars.

96.    Defendants' policies, practices, and customs complained of herein violated Plaintiff's rights to due process and privacy under the Fourteenth Amendment, and directly and proximately damaged Plaintiff as herein alleged, entitling Plaintiff to recover damages for said constitutional violations pursuant to 42 U.S.C. § 1983.

## FOURTH CAUSE OF ACTION

### Fourth Amendment (42 U.S.C. § 1983) – Harassing cell search

### Against COUNTY OF ORANGE, REYNA RIVERA, DEVONNA FALCONER, KASSANDRA MAYER, ELIA RODRIGUEZ, RACHEL ADDINGTON, and DOES 1-10

97.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

98.    The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures . . . ." U.S. Const. amend. IV.

99.    Cell search conducted during midnight for no purpose but to harass was not frivolous. Harassing cell search during midnight with no showing of misbehavior in jail constituted unreasonable search.

## FIFTH CAUSE OF ACTION

19

**First Amendment (42 U.S.C. § 1983) – Freedom of Expression**

**Against COUNTY OF ORANGE, REYNA RIVERA, DEVONNA FALCONER,**

**KASSANDRA MAYER, ELIA RODRIGUEZ, RACHEL ADDINGTON, and DOES 1-10**

100. Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

101. The harassing cell search during midnight was retaliation of Plaintiff and other inmates' expression during the day.

## SEVENTH CAUSE OF ACTION

**Municipal Liability for Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

**Against COUNTY OF ORANGE**Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

102. Plaintiff is informed and believes, and based thereon alleges, that on Aug 8, 2019, and for some time prior thereto, Defendant Orange County, with deliberate indifference towards the civil rights of detainees, knowingly and willfully did maintain, enforce, and apply a custom, practice, policy and usage tending to encourage, promote, sanction, tolerate and ratify the abuse of authority, the denial of life necessities, overcrowding condition, limited hygienic supplies, and the use of strip searches and harassing cell search.

103. Defendant Orange County also has several practices, customs, and/or policies that caused Plaintiff to be continuously deprived of the essential and human need for sleep.

104. Defendant Orange County, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above the defendant condoned, tolerated and through actions and inactions thereby ratified such policies. Said Defendant also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Plaintiff, and other individuals similarly situated.

105. Multiple deputies engaged in different types of deprivation of detainees' constitutional rights which is a norm in WCJ. By perpetrating, sanctioning, tolerating and

20

1  ratifying the outrageous conduct and other wrongful acts, Defendant acted with an intentional,

2  reckless, and callous disregard for Plaintiff's constitutional rights to be free from abuse.

3  Defendant's, actions were willful, wanton, oppressive, malicious, fraudulent, and extremely

4  offensive and unconscionable to any person of normal sensibilities.

5       106.    Furthermore, the policies, practices, and customs implemented and maintained and

6  still tolerated by Defendant, were affirmatively linked to and were a significantly influential force

7  behind the injuries of Plaintiff.

8       107.    By reason of the aforementioned acts and omissions of Defendant, Plaintiff has

9  suffered loss of trust, comfort, care, protection, and support. The supervisors who establish,

10 implement, and foster unconstitutional policy, custom, and practice should be held liable.

11 Accordingly, the Defendant, is liable to Plaintiff for compensatory damages under 42 U.S.C. §

12 1983.

13                        **EIGHTH CAUSE OF ACTION**

14       **Municipal Liability – Failure to Train and Supervise (42 U.S.C. § 1983)**

15                        **Against COUNTY OF ORANGE**

16      108.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in

17 the paragraphs above.

18      109.    While acting under the color of state law and within the course and scope of their

19 employment, Defendant's practice, deprived Plaintiff's rights secured to her by the Fourth and

20 Fourteenth Amendments, including her right to be free from unreasonable search and seizure.

21      110.    The training policies of the County were not adequate to train its personnel,

22 including but not limited to, OCSD Officers, with regards to using searches. As a result, OCSD

23 personnel, are not able to handle the usual and recurring situations with which they must deal.

24 These inadequate training policies existed prior to the date of this incident and continue to this

25 day.

26      111.    The Defendant Orange County was aware that failure to implement some sort of

27 training with regards to their officers' use of strip and cell searches, would result in continuing to

28 have numerous unreasonable officers involved violation of pretrial detainees' constitutional rights

21

FOURTH AMENDED COMPLAINT

ER 200

1    annually.

2          112.    The policies, practices and customs described above are the official policies,

3    practices and customs of Defendant Orange County, and are the direct and proximate cause of

4    Plaintiff being subjected to known risks of serious harms in violation of the Fourth and

5    Fourteenth Amendment. The policies, practices and customs described above include Defendant

6    Orange County's failure to train its staff in the face of an obvious need for training to prevent the

7    violations described above. In other words, Defendant's failure to train is so closely related to the

8    deprivation of the Plaintiff's rights as to be the moving force that caused the ultimate injury.

9          113.    By failing to provide and ensure adequate training, OCSD Officers, acted with an

10   intentional, reckless, and callous disregard for Plaintiff's constitutional rights. OCSD Officers,

11   each of their actions being willful, wanton, oppressive, malicious, offensive, and unconscionable

12   to any person of normal sensibilities.

13         114.    By reason of the aforementioned acts and omissions of OCSD Officers, Plaintiff

14   has suffered loss of trust, comfort, care, protection, and support.

15                              **<u>NINTH CAUSE OF ACTION</u>**

16              **Violation of Cal. Const. Art. I, § 7 – Denial of life necessities**

17                      **Against COUNTY OF ORANGE and DOES 1-10**

18         115.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in

19   the paragraphs above.

20         116.    20 plus hours without food along with 12 plus hours in bone chillingly cold

21   environment constituted an impermissible imposition of punishment, especially Plaintiff's

22   repeated requests for food and clothing were intentionally denied.

23         117.    By the policies and practices described herein, Defendants had deprived Plaintiff's

24   minimal civilized measure of life's necessities, and had violated her basic human dignity and her

25   right to be free from punishment and unusual conditions under California Constitution.

26         118.    The policies and practices complained of herein have been and continue to be

27   implemented by Defendants and their agents, officials, employees, and all persons acting in

28   concert under color of state law, in their official capacity.

119.   Defendants have been and are aware of all of the deprivations complained of herein, and have condoned or been deliberately indifferent to such conduct. Defendants had been deliberately indifferent to Plaintiff's pain and suffering.

## TENTH CAUSE OF ACTION

### Violation of Cal. Const. Art. I, § 7 – Overcrowding and sleep deprivation

### Against COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI; MARK STICHTER; and DOES 1-10

120.   Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

121.   Defendants, by deliberately preventing Plaintiff from being able to obtain adequate sleep both by limiting the available time for night time sleep with 24-hour light on policy and through overcrowding that interrupts, interferes, disrupts and disturbs night time sleep, imposed an atypical, substantial, and different hardship on Plaintiff in relation to the ordinary incidents of incarcerated life, so as to create a liberty interest protected by due process. By Defendants' policies and practices described above, Defendants subjected Plaintiff to a substantial risk of harm due to the denial of due process in relationship to the ordinary, human requirement of sleep. These policies and practices have been, and continue to be, implemented by Defendants and their agents or employees in their official capacities, and are the proximate cause of Plaintiff's deprivation of rights secured by the California Constitution, Article I, Section 7.

122.   Defendants have been and are aware of all of the deprivations complained of herein, and have condoned or been deliberately indifferent to such conduct.

## ELEVENTH CAUSE OF ACTION

### Violation of Cal. Const. Art. I, § 13 – Strip search

### Against COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI; MARK STICHTER; and DOES 1-10

123.   Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

124.   The unnecessary, demeaning, outrageous and intrusive strip searches to which

23

Plaintiff was subjected violated Plaintiff's rights to be secure in her person against unreasonable searches and seizures, as guaranteed by Article I, § 13 of the California Constitution.

## TWELFTH CAUSE OF ACTION

### Violation of Cal. Const. Art. I, § 13 – Harassing cell search

### Against COUNTY OF ORANGE, REYNA RIVERA, DEVONNA FALCONER, KASSANDRA MAYER, ELIA RODRIGUEZ, RACHEL ADDINGTON, and DOES 1-10

125.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

126.    The unnecessary, demeaning, retaliatory and outrageous cell search to which Plaintiff was subjected violated Plaintiff's rights to be secure in her person against unreasonable searches and seizures, as guaranteed by Article I, § 13 of the California Constitution.

## THIRTEENTH CAUSE OF ACTION

### Violation of Cal. Const. Art. I, § 2 – Freedom of expression

### Against COUNTY OF ORANGE, REYNA RIVERA, DEVONNA FALCONER, KASSANDRA MAYER, ELIA RODRIGUEZ, RACHEL ADDINGTON, and DOES 1-10

127.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

128.    The harassing cell search during midnight was retaliation of Plaintiff and other inmates' expression during the day.

## FOURTEENTH CAUSE OF ACTION

### Violation of Cal. Const. Art. I, § 1 – Right of Privacy

### Against all Defendants

129.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

130.    Unlawful strip searches violate an individual's right to privacy under Article 1, Section 1 of the California Constitution. See White v. Davis, 13 Cal. 3d. 757 (1975); Hill v. NCAA, 7 Cal.4th 1 (1994); American Airlines, Inc. v. Superior Court, 114 Cal. App. 4th 881 (2003).

131.     Plaintiff didn't even want to be naked in front of her mother, not to mention a
bunch of strangers. Being forced to be completely nude and take a shower in the view of OCSD
personnel and other inmates, being forced to wear a bra in the view of OCSD personnel and other
inmates, being strip searched seven times without privacy, being forced to be completely naked
before getting back her own clothing, all together not only violated Plaintiff's fundamental rights
but also put Plaintiff through hell.

### FIFTEENTH CAUSE OF ACTION

**Negligent Supervising, Training, Disciplining, and Retaining Employees**

**Against COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI;**

**MARK STICHTER; and DOES 1-10**

132.     Plaintiff re-alleges and herein incorporates by reference the allegations set forth in
the paragraphs above.

133.     Defendants COUNTY OF ORANGE, DON BARNES, WILLIAM BAKER, JOE
BALICKI, MARK STICHTER, and DOES 1 through 10 failed to provide adequate training,
supervision, oversight and/or retention of Defendants REYNA RIVERA, DEVONNA
FALCONER, KASSANDRA MAYER, ELIA RODRIGUEZ, RACHEL ADDINGTON, and
DOES 1 THROUGH 10 in spite of the known risk and foreseeable likelihood of breach of the
foregoing duties, which permitted the violations described above.

134.     At all times relevant herein, Defendants COUNTY OF ORANGE, DON
BARNES, WILLIAM BAKER, JOE BALICKI, MARK STICHTER, and DOES 1 through 10
maintained, enforced, tolerated, permitted, acquiesced in, and ratified the administrative policy,
practice and custom of assigning duties to REYNA RIVERA, DEVONNA FALCONER,
KASSANDRA MAYER, ELIA RODRIGUEZ, RACHEL ADDINGTON, and DOES 1 through
10 who are unable to competently discharge such duties due to their relative inexperience,
incomplete or inadequate training, lack of knowledge, etc., to be ready or able to competently
discharge their duties.

135.     Defendants COUNTY OF ORANGE, DON BARNES, WILLIAM BAKER, JOE
BALICKI, MARK STICHTER, and DOES 1 through 10 failed to adopt a procedure to properly

train and supervise their deputies to avoid constitutional violations.

136.    Defendants COUNTY OF ORANGE, DON BARNES, WILLIAM BAKER, JOE BALICKI, MARK STICHTER, and DOES 1 through 10 were aware of the obvious risks of not creating such an effective system and of not training deputies regarding detainees' civil rights.

137.    Defendants REYNA RIVERA, DEVONNA FALCONER, KASSANDRA MAYER, ELIA RODRIGUEZ, RACHEL ADDINGTON, and DOES 1 through 10 were, at the time each was hired and/or became unfit and/or incompetent to perform the work for which each was hired.

138.    The negligence of Defendants COUNTY OF ORANGE, DON BARNES, WILLIAM BAKER, JOE BALICKI, MARK STICHTER,  and DOES 1 through 10 in training/supervising and/or retaining Defendants REYNA RIVERA, DEVONNA FALCONER, KASSANDRA MAYER, ELIA RODRIGUEZ, RACHEL ADDINGTON, and DOES 1 THROUGH 10 was a substantial factor in causing Plaintiff's harm.

## SIXTEENTH CAUSE OF ACTION

### Violation of California Penal Code § 4030

**DON BARNES; WILLIAM BAKER; JOE BALICKI; MARK STICHTER; and DOES 1-10**

139.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

140.    Defendants' actions, policies, practices, and customs regarding the strip searches complained of herein violated rights secured to Plaintiff under California Penal Code § 4030 and directly and proximately damaged Plaintiff as herein alleged, entitling her to recover a minimum of $1,000 each pursuant to California Penal Code § 4030(o) in addition to other damages.

## SEVENTEENTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### Against all Defendants

141.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

142.    Plaintiff certainly didn't go into WCJ thinking she would be punished, denied life

26

1 necessities, strip searched, and harassed during midnight.

2   143. As a direct result of Defendants' unconstitutional policies and practice, Plaintiff is

3 suffering and continues to suffer from debilitating psychological damage. She suffers from

4 serious insomnia and continuous fatigue. She is preoccupied with fears of being strip searched

5 again and nightmares of seeing herself dying in a freezing cell.

6   144. Now Plaintiff cannot read more than a few paragraphs without losing focus and

7 needing to start over. She cannot maintain a normal life without interruption of suicidal thoughts,

8 anxiety, memory loss, fear, and depression. From time to time she also has nightmares seeing

9 herself die in jail. Plaintiff has been diagnosed with Post Traumatic Stress Syndrome as a direct

10 and proximate result of the unlawful treatment at the hands of Defendants.

11   145. Plaintiff feels numb and distant when she speaks to her family or spends time with

12 her friends. She is no longer able to emotionally connect with her family and close friends.

13   146. As a direct and proximate result of Defendants' actions and inactions, Plaintiff

14 suffered injuries entitling her to receive appropriate damages against Defendants and punitive

15 damages should be assessed for the purposes of punishment and for the sake of example.

16 **PRAYER**

17   WHEREFORE, Plaintiff prays judgment against Defendants and each of them, as follows:

18   AS TO EACH CAUSE OF ACTION AS APPLICABLE

19   1. For general damages according to proof;

20   2. For special damages according to proof;

21   3. For exemplary damages as provided by law, in an amount to be proved against each

22     individual Defendant;

23   4. For pre-judgment and post-judgment interests;

24   5. For civil penalties pursuant to Civil Code § 52;

25   6. For attorney's fees pursuant to 42 U.S.C. § 1988 and Civil Code §§ 52 and 52.1;

26   7. For reasonable costs of this suit;

27   8. For treble damages under Civil Code § 52.1;

28   9. For such other and further relief as the Court may deem just, proper, and appropriate.

27

FOURTH AMENDED COMPLAINT

**ER 206**

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury for all issues so triable.

Dated: Dec 1, 2020

_____

Jane Doe

Plaintiff in Pro Se

# Jane Doe v. County of Orange (8:20-cv-00322)

## District Court, C.D. California

🔍 Search this Docket (/?type=r&q=docket_id%3A16867269)    🏷 Tags ▾    [                    ] ▾

⧉ View on PACER (https://ecf.cacd.uscourts.gov/cgi-bin/DktRpt.pl?773593) ▾

Last Updated: March 25, 2022, 3:27 a.m. PDT

Assigned To: Otis D. Wright II (/person/3566/otis-d-wright-ii/)

Referred To: Gail J. Standish (/person/9067/gail-j-standish/)

Date Filed: Feb. 18, 2020

Date of Last Known Filing: March 23, 2022

Cause: 42:1983 Civil Rights Act (/?type=r&cause="42:1983 Civil Rights Act")

Nature of Suit: 440 Civil Rights: Other (/?type=r&nature_of_suit="440 Civil Rights: Other")

Jury Demand: Plaintiff (/?type=r&q=juryDemand:"Plaintiff")

Jurisdiction Type: Federal Question

| ▦ Docket Entries (/docket/16867269/jane-doe-v-county-of-orange/) | 🏛 Parties and Attorneys (/docket/16867269/parties/jane-doe-v-county-of-orange/) |

**Filed**

[ MM/DD/YYYY ]

**to**

[ MM/DD/YYYY ]

**Documents**                                                                    ⇅  ⇅

[                                                      ]

**to**

[                                                      ]

| | Date Filed | Description |
|---|---|---|
| 1 | Feb 18, 2020 | COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF filed against Defendants William Baker, Joe Balicki, Don Barnes, County of Orange, Does 1-10, inclusive, Mark Stichter Case assigned to Judge Otis D. Wright, II and referred to Magistrate Judge Patrick J. Walsh., filed by Defendant Jane Doe. (Attachments: # 1 Civil Cover Sheet, # 2 Summons for Defendant County of Orange, # 3 Summons for Defendant Don Barnes, # 4 Summons for Defendant William Baker, # 5 Summons for Defendant Joe Balicki, # 6 Summons for Defendant Mark Stichter) (et) (Entered: 02/20/2020) |
| | | Main Doc |
| 2 | Feb 18, 2020 | CERTIFICATION AND NOTICE of Interested Parties filed by Plaintiff Jane Doe. (et) (Entered: 02/20/2020) |
| | | Main Doc |
| 3 | Feb 18, 2020 | APPLICATION to Proceed In District Court Without Prepaying Fees or Costs (Short Form) filed by Plaintiff Jane Doe. (et) (Entered: 02/20/2020) |
| | | Main Doc                    Proceed In Forma Pauperis |
| 4 | Feb 18, 2020 | APPLICATION for Pro Se Litigant to electronically file documents in a specific case filed by Plaintiff Jane Doe. (et) (Entered: 02/20/2020) |
| | | Main Doc                    Pro Se Electronic Filing - CV-5 |
| 5 | Feb 18, 2020 | PLAINTIFF'S REQUEST for Protective Order and to Proceed Under a Pseudonym filed by Plaintiff Jane Doe. (Attachments: # 1 Proposed Order) (et) (Entered: 02/20/2020) |
| | | Main Doc (/docket/16867269/5/jane-doe-v-county-of-orange/)     Order |
| 6 | Feb 18, 2020 | REQUEST for Appointment of Counsel filed by Plaintiff Jane Doe. (et) (Entered: 02/20/2020) |

|  |  | Appointment of Counsel |
|---|---|---|
| 7 | Feb 18, 2020 | REQUEST for Service of Summons by United States Marshal Service filed by Plaintiff Jane Doe. (et) (Entered: 02/20/2020) |
|  |  | Main Doc        Order |
| 8 | Feb 18, 2020 | PLAINTIFF'S REQUEST to Extend time for Service upon Defendants Does 1-10 filed by Plaintiff Jane Doe. (et) (Entered: 02/20/2020) |
|  |  | Main Doc        Extension of Time to File Document |
| 9 | Feb 18, 2020 | NOTICE OF ASSIGNMENT to District Judge Otis D. Wright, II and referred to Magistrate Judge Patrick J. Walsh. (et) (Entered: 02/20/2020) |
|  |  | Main Doc |
| 10 | Mar 20, 2020 | MINUTE ORDER (IN CHAMBERS) Screening of Civil Rights Complaint (Doc. No. 1.) by Magistrate Judge Patrick J. Walsh: Before the Court is a civil rights complaint filed pursuant to 42 U.S.C. §§ 1983 by Plaintiff, who is proceeding in pro se, against Defendants County of Orange, Don Barnes, William Baker, Joe Balicki, Mark Stichter, and Does 1-10. For these reasons, Plaintiff may not proceed on her claims as pled against Baker, Balicki, and Stichter. The Court will give Plaintiff the opportunity to amend her Complaint to re-allege her claims against these Defendants by April 19, 2020. (See document for further details.) (es) (Entered: 03/23/2020) |
|  |  | Main Doc        Minutes of In Chambers Order/Directive - no (/docket/16867269/10/jane-        proceeding held doe-v-county-of-orange/) |
| 11 | Apr 2, 2020 | MINUTES (IN CHAMBERS) Plaintiff's Motions To File Documents Electronically (Doc. No. 4); For Appointment of Counsel (Doc. No. 6); For the Court to Order U.S. Marshal to Serve Defendants (Doc. No. 7); and For Extension of Time to Serve Defendants (Doc. No. 8) by Magistrate Judge Patrick J. Walsh: Plaintiff's motion for permission to use the electronic filing system is granted. Plaintiff's motion for appointment of pro bono counsel is denied without prejudice. Plaintiff's motion for the U.S. Marshal to serve Defendants is granted. Plaintiff's motion for an extension of time to serve Defendants is denied as moot. (See order for further details.) (es) (Entered: 04/03/2020) |
|  |  | Main Doc        Appoint Counsel |
| 12 | Apr 6, 2020 | FIRST AMENDED COMPLAINT against defendant(s) William Baker, Joe Balicki, Don Barnes, County of Orange, Does, Mark Stichter, R Rivera, D Falconer, K Mayer, E Rodriguez, R Addington amending Complaint - (Referred),, 1, filed by plaintiff Jane Doe(es) (Entered: 04/07/2020) |
|  |  | Main Doc |
| 13 | Apr 7, 2020 | 21 DAY Summons Issued re Amended Complaint, 12 as to Defendant(s) R Addington, William Baker, Joe Balicki, Don Barnes, County of Orange, D Falconer, K Mayer, R Rivera, E Rodriguez, Mark Stichter. (es) (Entered: 04/07/2020) |
|  |  | Main Doc |
| 14 | Apr 8, 2020 | (IN CHAMBERS) Order Plaintiff's First Amended Complaint (Doc. No. 12) by Magistrate Judge Patrick J. Walsh: Plaintiff has filed a First Amended Complaint. Unfortunately, none of the even-numbered pages (apparently, numbers 2-24) appear on the Court's docket. The Court directs Plaintiff to file a "Second Amended Complaint" that includes all of the pages. (es) (Entered: 04/08/2020) |
|  |  | Main Doc        Minutes of In Chambers Order/Directive - no proceeding held |
| 15 | Apr 8, 2020 | Second AMENDED COMPLAINT against all Defendants All Defendants amending Amended Complaint, 12, filed by Plaintiff Jane Doe (Attachments: # 1 Exhibit Rejection letter from OC)(Doe, Jane) (Entered: 04/08/2020) |
|  |  | Main Doc |
| 16 | Apr 8, 2020 | REQUEST for Extension of Time to File service upon Defendants DOES 1-10 filed by Plaintiff Jane Doe. (Doe, Jane) (Entered: 04/08/2020) |
|  |  | Main Doc        Extension of Time to File Document |
| 17 | Apr 27, 2020 | SERVICE UNDER FRCP 5(b)(2)(D) Executed by Plaintiff Jane Doe, upon Defendant County of Orange served on 4/27/2020, answer due 5/18/2020. Service of the Summons and Complaint were executed upon the Clerks Office in compliance with Federal Rules of Civil Procedure. Second amended complaint served (Doe, Jane) (Entered: 04/27/2020) |
|  |  | Main Doc |
| 18 | Apr 27, 2020 | SERVICE UNDER FRCP 5(b)(2)(D) Executed by Plaintiff Jane Doe, upon Defendant R Addington served on 4/27/2020, answer due 5/18/2020; William Baker served on 4/27/2020, answer due 5/18/2020; Joe Balicki served on 4/27/2020, answer due 5/18/2020; Don Barnes served on 4/27/2020, answer due 5/18/2020; D Falconer served on 4/27/2020, answer due 5/18/2020; K Mayer served on 4/27/2020, answer due 5/18/2020; R Rivera served on 4/27/2020, answer due 5/18/2020; E Rodriguez served on 4/27/2020, |

answer due 5/18/2020. Mark Stichter served on 4/27/2020, answer due 5/18/2020. Service of the Summons and Complaint were executed upon the Clerks Office in compliance with Federal Rules of Civil Procedure. Second amended complaint served (Doe, Jane) (Entered: 04/27/2020)

Main Doc

| 19 | Apr 28, 2020 | CASE MANAGEMENT ORDER by Magistrate Judge Patrick J. Walsh. (es) (Entered: 04/28/2020) |

Main Doc  Initial Order upon Filing of Complaint - form only

| 20 | May 18, 2020 | NOTICE OF MOTION AND MOTION to Dismiss Case filed by defendants R Addington, William Baker, Joe Balicki, Don Barnes, County of Orange, D Falconer, K Mayer, R Rivera, E Rodriguez, Mark Stichter. (Attachments: # 1 Proposed Order) (Attorney John Keeney added to party R Addington(pty:dft), Attorney John Keeney added to party William Baker(pty:dft), Attorney John Keeney added to party Joe Balicki(pty:dft), Attorney John Keeney added to party Don Barnes(pty:dft), Attorney John Keeney added to party County of Orange(pty:dft), Attorney John Keeney added to party D Falconer(pty:dft), Attorney John Keeney added to party K Mayer(pty:dft), Attorney John Keeney added to party R Rivera(pty:dft), Attorney John Keeney added to party E Rodriguez(pty:dft), Attorney John Keeney added to party Mark Stichter(pty:dft)) (Keeney, John) (Entered: 05/18/2020) |

Main Doc  Dismiss Case

| 21 | May 19, 2020 | Text Only Entry re NOTICE OF MOTION AND MOTION to Dismiss Case will be heard before Magistrate Judge Walsh. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (ev) TEXT ONLY ENTRY (Entered: 05/19/2020) |

Main Doc

| | May 19, 2020 | Generic Text Only Entry |

| 22 | May 22, 2020 | Third AMENDED COMPLAINT against all Defendants All Defendants amending Amended Complaint/Petition 15, filed by Plaintiff Jane Doe (Attachments: # 1 Exhibit OC rejection letter)(Doe, Jane) (Entered: 05/22/2020) |

Main Doc
(/docket/16867269/22/jane-doe-v-county-of-orange/)

Att 1  Exhibit OC rejection letter
(/docket/16867269/22/1/jane-doe-v-county-of-orange/)

| 23 | May 28, 2020 | SCHEDULING NOTICE TEXT ONLY ENTRY (IN CHAMBERS) by Magistrate Judge Patrick J. Walsh, telephone conference re Notice of Motion and Motion to Dismiss Case set for 6/2/2020 at 1:30 PM before Magistrate Judge Patrick J. Walsh. Call-in information emailed to the parties.THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (ev) TEXT ONLY ENTRY (Entered: 05/28/2020) |

Main Doc

| 24 | May 28, 2020 | SCHEDULING NOTICE TEXT ONLY ENTRY (IN CHAMBERS) by Magistrate Judge Patrick J. Walsh previously scheduled for June 15, 2020 1:30 p.m. has been terminated. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (ev) TEXT ONLY ENTRY (Entered: 05/28/2020) |

Main Doc

| | May 28, 2020 | Text Only Scheduling Notice |

| 25 | Jun 2, 2020 | MINUTES OF Telephonic Status Conference re: Defendants' Motion to Dismiss Second Amended Complaint (Doc. No. 20) held before Magistrate Judge Patrick J. Walsh: The case is called and appearances are made. The Court has received Plaintiff's Third Amended Complaint. No later than Friday, June 12, 2020, Defendants are to file a motion to dismiss. Plaintiff has until Friday, June 26, 2020 to file her opposition brief. Defendants have until Monday, July 6, 2020 to file their reply brief. The motion will then be taken under advisement and a decision will be issued as soon as practicable. The hearing on the motion, currently set for June 15, 2020, is hereby taken off calendar. Court Recorder: Digital Recording 6/2/20. (es) (Entered: 06/02/2020) |

Main Doc  ~Util - Terminate Hearings AND ~Util - Set/Reset Deadlines AND Status Conference - optional html form

| 26 | Jun 4, 2020 | EX PARTE APPLICATION for Temporary Restraining Order as to Discovery in violation of Rule 26(d)(1) filed by Plaintiff Jane Doe. (Attachments: # 1 Appendix, # 2 Memorandum, # 3 Exhibit, # 4 Exhibit, # 5 Proposed Order) (Doe, Jane) (Entered: 06/04/2020) |

Main Doc  Temporary Restraining Order

| 27 | Jun 4, 2020 | OPPOSITION re: EX PARTE APPLICATION for Temporary Restraining Order as to Discovery in violation of Rule 26(d)(1) 26 filed by Defendants R Addington, William Baker, Joe Balicki, Don Barnes, County of Orange, D Falconer, K Mayer, R Rivera, E Rodriguez, Mark Stichter. (Keeney, John) (Entered: 06/04/2020) |

Main Doc  Objection/Opposition (Motion related)

| 28 | Jun 4, 2020 | REPLY in response to Defendants' opposition to Plaintiff's ex parte application for a TRO filed by Plaintiff Jane Doe. (Doe, Jane) (Entered: 06/04/2020) |
| | | Main Doc      Reply (Motion related) |
| 29 | Jun 5, 2020 | MINUTES (IN CHAMBERS) by Judge Otis D. Wright, II: PLAINTIFF JANE DOE EX PARTE APPLICATION for Temporary Restraining Order as to Discovery in violation of Rule 26(d)(1) is DENIED 26 . (lc) Modified on 6/5/2020 (lc). (Entered: 06/05/2020) |
| | | Main Doc      Temporary Restraining Order |
| 30 | Jun 8, 2020 | EX PARTE APPLICATION for Order for Order for Seal Dkts. 20, 27 and show cause why counsel should not be held in contempt filed by Plaintiff Jane Doe. (Attachments: # 1 Exhibit #1, # 2 Exhibit #2) (Doe, Jane) (Entered: 06/08/2020) |
| | | Main Doc      Order<br>(/docket/16867269/30/jane-doe-v-county-of-orange/) |
| 31 | Jun 8, 2020 | PROTECTIVE ORDER by Magistrate Judge Patrick J. Walsh: The Court orders the following documents and information to be filed under seal in accordance with Civil L.R. 79-5: 1) All documents and information containing Plaintiff's true name. 2) All documents and information that reveal Plaintiff's date of birth, social security number, financial, and medical information. 5 *See order for details.* (es) (Entered: 06/08/2020) |
| | | Main Doc      For Order<br>(/docket/16867269/31/jane-doe-v-county-of-orange/) |
| 32 | Jun 9, 2020 | OPPOSITION in Opposition re: EX PARTE APPLICATION for Order for Seal Dkts. 20, 27 and show cause why counsel should not be held in contempt 30 filed by Defendants R Addington, William Baker, Joe Balicki, Don Barnes, County of Orange, D Falconer, K Mayer, R Rivera, E Rodriguez, Mark Stichter. (Attachments: # 1 Declaration in Support of Opposition to Ex Parte)(Keeney, John) (Entered: 06/09/2020) |
| | | Main Doc      Objection/Opposition (Motion related)<br>(/docket/16867269/32/jane-doe-v-county-of-orange/) |
| 33 | Jun 9, 2020 | DECLARATION of John S. Keeney in support of Opposition EX PARTE APPLICATION for Order for Seal Dkts. 20, 27 and show cause why counsel should not be held in contempt 30 filed by Defendants R Addington, William Baker, Joe Balicki, Don Barnes, County of Orange, D Falconer, K Mayer, R Rivera, E Rodriguez, Mark Stichter. (Keeney, John) (Entered: 06/09/2020) |
| | | Main Doc      Declaration (Motion related) |
| 34 | Jun 9, 2020 | REPLY Defendants' opposition to Plaintiff's ex parte application for redaction and sanction filed by Plaintiff Jane Doe. (Doe, Jane) (Entered: 06/09/2020) |
| | | Main Doc      Reply (Motion related) |
| 35 | Jun 11, 2020 | SCHEDULING NOTICE TEXT ONLY ENTRY (IN CHAMBERS) by Magistrate Judge Patrick J. Walsh re: EX PARTE APPLICATION for Order for Seal Dkts. 20, 27 and show cause why counsel should not be held in contempt 30 . Telephone Conference set for 6/15/2020 at 11:30 AM before Magistrate Judge Patrick J. Walsh. Call-in information emailed to the parties.THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (ev) TEXT ONLY ENTRY (Entered: 06/11/2020) |
| | | Main Doc |
| | Jun 11, 2020 | Text Only Scheduling Notice |
| 36 | Jun 12, 2020 | NOTICE OF MOTION AND MOTION to Dismiss Case filed by Defendants R Addington, William Baker, Joe Balicki, Don Barnes, County of Orange, D Falconer, K Mayer, R Rivera, E Rodriguez, Mark Stichter. Motion set for hearing on 7/20/2020 at 01:30 AM before Magistrate Judge Patrick J. Walsh. (Keeney, John) (Entered: 06/12/2020) |
| | | Main Doc      Dismiss Case<br>(/docket/16867269/36/jane-doe-v-county-of-orange/) |
| 37 | Jun 15, 2020 | NOTICE of Change of other firm name or address information Changing email address. Filed by Plaintiff Jane Doe. (Doe, Jane) (Entered: 06/15/2020) |
| | | Main Doc |
| 38 | Jun 15, 2020 | MINUTES OF Telephonic Hearing re: Plaintiff's Ex Parte Application for Order to Seal and Order to Show Cause Why Counsel Should Not Be Held in Contempt (Doc. No.30.) Hearing held before Magistrate Judge Patrick J. Walsh: The request is DENIED. Plaintiff has changed her email address for her CM/ECF |

account. (Doc. 36.) Pursuant to the Court's Protective Order (Doc. No. 31), the Court will redact Plaintiff's old email address from Doc. No. 20, at 27:10-11 and Doc. No. 27 at 27:8-9. Court Recorder: CS 6/15/20. (es) (Entered: 06/19/2020)

|  |  | Main Doc (/docket/16867269/38/jane-doe-v-county-of-orange/) | Motion Hearing AND For Order |
|----|----|----|----|
| 39 | Jun 26, 2020 | Main Doc | Reply (Motion related) |
| 40 | Jul 2, 2020 | Main Doc | Reply (Motion related) |
|  | Jul 20, 2020 | Text Only Scheduling Notice | |
| 42 | Aug 20, 2020 | Main Doc | Report and Recommendation (Issued) |
| 43 | Aug 20, 2020 | Main Doc | Notice of Report and Recommendation |
| 44 | Aug 24, 2020 | Main Doc | Chief Magistrate Judge Transferring Case (non-consent) |
| 45 | Aug 25, 2020 | Main Doc | Minutes of In Chambers Order/Directive - no proceeding held |
| 46 | Aug 26, 2020 | Main Doc | Notice of Appearance or Withdrawal of Counsel (G-123) |
| 47 | Sep 10, 2020 | Main Doc | Objection to Report and Recommendation |
| 48 | Sep 14, 2020 | Main Doc | Notice of Appearance or Withdrawal of Counsel (G-123) |
| 49 | Sep 21, 2020 | Main Doc | Joint Report Rule 26(f) Discovery Plan |
| 50 | Sep 27, 2020 | Main Doc | Chief District Judge Transferring Case |
| 51 | Nov 2, 2020 |  | ORDER ACCEPTING REPORT AND RECOMMENDATIONS by Judge John W. Holcomb for Report and Recommendation (Issued) 42 . The Third Amended Complaint is dismissed with leave to amend as set forth in the Report and this Order. If Plaintiff wishes to proceed in this action, within thirty (30) days of this Order, she must file and serve on the existing named Defendants a Fourth Amended Complaint that complies with this Order and the Report. Plaintiff is cautioned that no new claims or parties may be added absent first seeking and obtaining leave of Court. (efc) |
|  |  | Main Doc (/docket/16867269/51/jane-doe-v-county-of-orange/) | R&R - Accepting Report and Recommendations |
| 52 | Nov 24, 2020 | Main Doc | Protective Order |
| 53 | Nov 25, 2020 | Main Doc | Deficiency in Electronically Filed Documents (G-112A) - optional html form |
| 54 | Nov 25, 2020 | Main Doc | Response By Court to Notice of Deficiencies (G-112B) - optional html form |
| 55 | Nov 30, 2020 | Main Doc | Protective Order |
| 56 | Dec 1, 2020 | Main Doc | Amended Complaint/Petition |
| 57 | Dec 14, 2020 | Main Doc | Answer to Complaint (Referred) |
| 58 | Dec 16, 2020 | Main Doc | ~Util - Set/Reset Hearings AND Order |
| 59 | Dec 23, 2020 |  | STIPULATED PROTECTIVE ORDER by Magistrate Judge Gail J. Standish re Stipulation for Protective Order 55 . [See document for details.] (et) |
|  |  | Main Doc (/docket/16867269/59/jane-doe-v-county-of-orange/) | Protective Order |
| 60 | Feb 13, 2021 | Main Doc | Compel |
| 61 | Feb 13, 2021 | Main Doc | Joint Stipulation re Discovery Motion (Rule 37) |
|  | Feb 18, 2021 | Text Only Scheduling Notice | |
| 63 | Feb 20, 2021 | Main Doc | Supplement (Motion related) |
|  | Feb 22, 2021 | Generic Text Only Entry | |
| 65 | Feb 23, 2021 | Main Doc | Supplement re Discovery Matter |
| 66 | Mar 12, 2021 | Main Doc | Compel AND Motion Hearing |
| 67 | Mar 22, 2021 | Main Doc | Compel |

**ER 212**

| 68 | Mar 23, 2021 | Main Doc | Compel |
|---|---|---|---|
| 69 | Mar 23, 2021 | Main Doc | Striking Filed Documents (CV-80) |
| | Mar 24, 2021 | Text Only Scheduling Notice | |
| 71 | Apr 9, 2021 | Main Doc | Telephone Conference |
| | May 3, 2021 | Text Only Scheduling Notice | |
| 73 | May 7, 2021 | Main Doc | Telephone Conference |
| 74 | Jun 15, 2021 | Main Doc | Quash Subpoena |
| 75 | Jun 15, 2021 | Main Doc | Joint Stipulation re Discovery Motion (Rule 37) |
| 76 | Jun 24, 2021 | Main Doc | Supplement (Motion related) |
| 77 | Jun 28, 2021 | Main Doc | Leave |
| | Jun 29, 2021 | Text Only Scheduling Notice | |
| | Jun 30, 2021 | Generic Text Only Entry | |
| 81 | Jun 30, 2021 | Main Doc | Notice of Appearance or Withdrawal of Counsel (G-123) |
| 82 | Jun 30, 2021 | Main Doc | Notice of Appearance or Withdrawal of Counsel (G-123) |
| 83 | Jul 8, 2021 | Main Doc | Quash Subpoena AND Motion Hearing |
| 84 | Jul 8, 2021 | Main Doc | Stay Order (other) |
| 85 | Jul 9, 2021 | Main Doc | Response in Opposition to Motion |
| | Jul 9, 2021 | Text Only Scheduling Notice | |
| 87 | Jul 16, 2021 | Main Doc | Review |
| 88 | Jul 20, 2021 | Main Doc | Non-Opposition to Motion |
| 91 | Jul 29, 2021 | Main Doc | Leave |
| | Aug 6, 2021 | Text Only Scheduling Notice | |
| 93 | Aug 13, 2021 | Main Doc | Temporary Restraining Order |
| 94 | Aug 13, 2021 | Main Doc | Appointment of Counsel |
| 95 | Aug 16, 2021 | Main Doc | Response in Opposition to Motion |
| 96 | Aug 16, 2021 | Main Doc | Response in Opposition to Motion |
| 97 | Aug 16, 2021 | Main Doc | Response in Opposition to Motion |
| 98 | Aug 16, 2021 | Main Doc | Withdrawal (Document or Motion) |
| 99 | Aug 17, 2021 | Main Doc | Response in Opposition to Motion |
| 100 | Aug 17, 2021 | Main Doc | Withdrawal (Document or Motion) |
| 101 | Aug 17, 2021 | Main Doc | Response in Support of Motion |
| 102 | Aug 17, 2021 | Main Doc | Appoint Counsel |
| 103 | Aug 17, 2021 | Main Doc | Order |
| 104 | Aug 18, 2021 | Main Doc | Review |
| 105 | Aug 19, 2021 | Main Doc | Objection/Opposition (Motion related) |
| 106 | Aug 19, 2021 | Main Doc | Response in Support of Motion |
| 107 | Sep 7, 2021 | | ORDER ON (1) MOTION FOR TEMPORARY RESTRAINING ORDER [ECF No. 93 ]; and (2) MOTION FOR REVIEW [ECF No. 104 ] by Judge John W. Holcomb: For the foregoing reasons, the Court hereby ORDERS as follows: The Motion is DENIED. The Application is DENIED. IT IS SO ORDERED. (See document for further details) (yl) (Entered: 09/08/2021) |
| | | Main Doc | Review AND Temporary Restraining Order |
| 108 | Sep 15, 2021 | | EX PARTE APPLICATION for Order for Scheduling Order Dates filed by Defendants Rachel Addington, William Baker, Joe Balicki, Don Barnes, County of Orange, Devonna Falconer, Kassandra Mayer, Reyna Rivera, Elia Rodriguez, Mark Stichter. (Attachments: # 1 Declaration of Rebecca Chmura ISO Ex Parte Application to Extend Scheduling Order Dates, # 2 Proposed Order Granting Ex Parte Application to Extend Scheduling Order Dates) (Chmura, Rebecca). (Entered: 09/15/2021) |
| | | Main Doc | Order |
| 109 | Sep 15, 2021 | | OPPOSITION re: EX PARTE APPLICATION for Order for Scheduling Order Dates 108 filed by Plaintiff Jane Doe. (Doe, Jane). (Entered: 09/15/2021) |

| | | Main Doc | Objection/Opposition (Motion related) |
|---|---|---|---|

110 Sep 29, 2021    Proposed Order Granting in Part re: EX PARTE APPLICATION for Order for Scheduling Order Dates 108 (Chmura, Rebecca) (Entered: 09/29/2021)

Main Doc    Miscellaneous Document

111 Sep 30, 2021    Proposed Order Granting in Part re: re: EX PARTE APPLICATION for Order for Scheduling Order Dates 108 (Chmura, Rebecca) (Entered: 09/30/2021)

Main Doc (/docket/16867269/111/jane-doe-v-county-of-orange/)    Miscellaneous Document

112 Sep 30, 2021    OBJECTIONS to Miscellaneous Document 111 filed by Plaintiff Jane Doe. (Doe, Jane) (Entered: 09/30/2021)

Main Doc (/docket/16867269/112/jane-doe-v-county-of-orange/)    Objection

113 Sep 30, 2021    ORDER GRANTING DEFENDANTS' OPPOSED FIRST EX PARTE APPLICATION TO EXTEND SCHEDULING ORDER DATES 108 by Magistrate Judge Gail J. Standish: The Scheduling Order dates are, therefore, amended as follows: Last Day for Settlement Conference 7/30/2021. Fact Discovery Cut-Off 10/6/2021. Expert Designation 11/5/2021. Expert Rebuttal and Service of Expert Reports 12/7/2021. Dispositive Motion Cut-Off 12/17/2021. Expert Discovery Cut-Off 1/12/2022. [See document for further details.] (es) (Entered: 10/01/2021)

Main Doc (/docket/16867269/113/jane-doe-v-county-of-orange/)    For Order

114 Dec 14, 2021    MINUTE ORDER (IN CHAMBERS) RE: MOTION FOR REVIEW[ECF No. 87 ] (IN CHAMBERS) by Judge John W. Holcomb: For the foregoing reasons, the Court AFFIRMS Magistrate Judge Standish's Order. Does instant Motion is DENIED. IT IS SO ORDERED. (See document for further details) (yl) (Entered: 12/15/2021)

Main Doc (/docket/16867269/114/jane-doe-v-county-of-orange/)    Review

115 Jan 13, 2022    Joint STIPULATION to Continue SETTLEMENT CONFERENCE DATE from JANUARY 28, 2022 to APRIL 4, 2022 filed by Defendant County of Orange.(Chmura, Rebecca) (Entered: 01/13/2022)

Main Doc (/docket/16867269/115/jane-doe-v-county-of-orange/)    Continue

116 Feb 4, 2022    ORDER TO EXTEND SETTLEMENT CONFERENCE DATE by Magistrate Judge Gail J. Standish, IT IS HEREBY ORDERED: 1. The deadline for completing a Settlement Conference shall be extended to April 4, 2022, or to a date thereafter amenable to this Court. re Stipulation to Continue 115 . (es) (Entered: 02/04/2022)

Main Doc    ~Util - Set/Reset Deadlines AND Order

117 Feb 8, 2022    MINUTE ORDER (IN CHAMBERS) Order Re: Settlement Conference 115 by Magistrate Judge Gail J. Standish: The Court hereby refers the Settlement Conference in this matter to Magistrate Judge Maria Audero. The parties are directed to contact Judge Audero's CRD at MAA_Chambers@cacd.uscourts.gov to schedule the conference. In light of Judge Audero's schedule, the deadline for completing the Settlement Conference, which was previously continued to April 4, 2022 based on a stipulation of the parties, is now extended to May 15, 2022. re: Stipulation to Continue 115 (es) (Entered: 02/08/2022)

Main Doc    ~Util - Set/Reset Deadlines AND Minutes of In Chambers Order/Directive - no proceeding held

118 Mar 18, 2022    EX PARTE APPLICATION to Continue TO EXTEND FACT DEPOSITION CUT-OFF DATE AND COMPEL PLAINTIFF TO SIGN AUTHORIZATION TO RELEASE MEDICAL RECORDS FROM LACDMH filed by DEFENDANTS Rachel Addington, William Baker, Joe Balicki, Don Barnes, County of Orange, Devonna Falconer, Kassandra Mayer, Reyna Rivera, Elia Rodriguez, Mark Stichter. (Attachments: # 1 Declaration OF REBECCA J. CHMURA IN SUPPORT OF DEFENDANTS OPPOSED EX PARTE APPLICATION TO EXTEND FACT DEPOSITION CUT-OFF DATE AND COMPEL PLAINTIFF TO SIGN AUTHORIZATION TO RELEASE MEDICAL RECORDS FROM LACDMH, # 2 Proposed Order GRANTING DEFENDANTS EX PARTE APPLICATION TO EXTEND FACT DEPOSITION CUT-OFF DATE AND COMPEL PLAINTIFF TO SIGN AUTHORIZATION TO RELEASE MEDICAL RECORDS FROM LACDMH) (Chmura, Rebecca) (Entered: 03/18/2022)

Main Doc
(/docket/16867269/118/jane-
doe-v-county-of-
orange/)

Continue

Att 1
(/docket/16867269/118/1/jane-
doe-v-county-of-
orange/)

| 119 | Mar 21, 2022 | OPPOSITION to EX PARTE APPLICATION to Continue TO EXTEND FACT DEPOSITION CUT-OFF DATE AND COMPEL PLAINTIFF TO SIGN AUTHORIZATION TO RELEASE MEDICAL RECORDS FROM LACDMH 118 filed by Plaintiff Jane Doe. (Doe, Jane) (Entered: 03/21/2022) |

Main Doc
(/docket/16867269/119/jane-
doe-v-county-of-
orange/)

Response in Opposition to Motion

| 120 | Mar 23, 2022 | MINUTES (IN CHAMBERS) Order Re: Ex Parte Application To Continue To Extend Fact Deposition Cut-Off Date And Compel Plaintiff To Sign Authorization To Release Medical Records From LACDMH 118 by Magistrate Judge Gail J. Standish: Defendants' Ex Parte Application is hereby GRANTED as follows: 1. The Court extends the fact discovery cutoff by 60 days, to June 6, 2022. THERE WILL BE NO FURTHER EXTENSIONS. 2. Further, Plaintiff is ordered to sign any required authorization forms for medical institutions that were included in the subpoenas issued prior to the District Judge's December Order affirming this Court's ruling related to medical records (i.e., subpoenas that were included in the related motion practice). [See Order for additional information.] Granting 118 EX PARTE APPLICATION to Continue. (es) (Entered: 03/23/2022) |

Main Doc
(/docket/16867269/120/jane-
doe-v-county-of-
orange/)

Continue

**ER 215**



Office of the Clerk
**United States Court of Appeals for the Ninth Circuit**
Post Office Box 193939
San Francisco, California 94119-3939
415-355-8000

Molly C. Dwyer
Clerk of Court

---

## ATTENTION ALL PARTIES AND COUNSEL
## PLEASE REVIEW PARTIES AND COUNSEL LISTING

---

We have opened this appeal/petition based on the information provided to us by the appellant/petitioner and/or the lower court or agency. EVERY attorney and unrepresented litigant receiving this notice MUST immediately review the caption and service list for this case and notify the Court of any corrections.

Failure to ensure that all parties and counsel are accurately listed on our docket, and that counsel are registered and admitted, may result in your inability to participate in and/or receive notice of filings in this case, and may also result in the waiver of claims or defenses.

PARTY LISTING:
Notify the Clerk immediately if you (as an unrepresented litigant) or your client(s) are not properly and accurately listed or identified as a party to the appeal/petition. To report an inaccurate identification of a party (including company names, substitution of government officials appearing only in their official capacity, or spelling errors), or to request that a party who is listed only by their lower court role (such as plaintiff/defendant/movant) be listed as a party to the appeal/petition as an appellee or respondent so that the party can appear in this Court and submit filings, contact the Help Desk at http://www.ca9.uscourts.gov/cmecf/feedback/ or send a letter to the Clerk. If you or your client were identified as a party to the appeal/petition in the notice of appeal/petition for review or representation statement and you believe this is in error, file a motion to dismiss as to those parties.

COUNSEL LISTING:
In addition to reviewing the caption with respect to your client(s) as discussed above, all counsel receiving this notice must also review the electronic notice of docket activity or the service list for the case to ensure that the correct counsel are

listed for your clients. If appellate counsel are not on the service list, they must file a notice of appearance or substitution immediately or contact the Clerk's office.

NOTE that in criminal and habeas corpus appeals, trial counsel WILL remain as counsel of record on appeal until or unless they are relieved or replaced by Court order. *See* Ninth Circuit Rule 4-1.

REGISTRATION AND ADMISSION TO PRACTICE:
Every counsel listed on the docket must be admitted to practice before the Ninth Circuit AND registered for electronic filing in the Ninth Circuit in order to remain or appear on the docket as counsel of record. *See* Ninth Circuit Rules 25-5(a) and 46-1.2. These are two separate and independent requirements and doing one does not satisfy the other. If you are not registered and/or admitted, you MUST, within 7 days from receipt of this notice, register for electronic filing AND apply for admission, or be replaced by substitute counsel or otherwise withdraw from the case.

If you are not registered for electronic filing, you will not receive further notices of filings from the Court in this case, including important scheduling orders and orders requiring a response. Failure to respond to a Court order or otherwise meet an established deadline can result in the dismissal of the appeal/petition for failure to prosecute by the Clerk pursuant to Ninth Circuit Rule 42-1, or other action adverse to your client.

If you will be replaced by substitute counsel, new counsel should file a notice of appearance/substitution (no form or other attachment is required) and should note that they are replacing existing counsel. To withdraw without replacement, you must electronically file a notice or motion to withdraw as counsel from this appeal/petition and include your client's contact information.

To register for electronic filing, and for more information about Ninth Circuit CM/ECF, visit our website at http://www.ca9.uscourts.gov/cmecf/#section-registration.

To apply for admission, see the instructions and form application available on our website at https://www.ca9.uscourts.gov/attorneys/.