1
2
3
4
5
6

**Michael L. Wroniak (State Bar No. 210347)**
**Rebecca J. Chmura (State Bar. 319106)**
**COLLINS + COLLINS LLP**
**750 The City Drive, Suite 400**
**Orange, CA  92868**
**(714) 823-4100 – FAX (714) 823-4101**
**Email:  mwroniak@ccllp.law**
**Email:  rchmura@ccllp.law**

7
8
9

Attorneys for Defendants
COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI; MARK STICHTER; REYNA RIVERA; DEVONNA FALCONER; KASSANDRA MAYER; ELIA RODRIGUEZ; and RACHEL ADDINGTON

10
11

## UNITED STATES DISTRICT COURT

12

## DISTRICT OF CALIFORNIA, CENTRAL DISTRICT

| | |
|---|---|
| JANE DOE,<br><br>                              Plaintiffs,<br><br>          vs.<br><br>COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI; MARK STICHTER; and DOES 1-10, inclusive,<br><br>                              Defendants. | CASE NO. 8:20-cv-00322-JWH (GJS)<br>*[Assigned to Judge John W. Holcomb Courtroom 2]*<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>*[Filed concurrently with Notice; Joint Statement; Joint Exhibit, Exhibit Table of Contents; Request for Judicial Notice;[Proposed] Judgment; and [Proposed] Order]*<br>**Hearing**<br>**Date:      June 15, 2022**<br>**Time:      10:00 a.m.**<br>**Dept.:      640**<br><br>Complaint Filed: 2/18/20<br>Trial Date:      None. |

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COLLINS + COLLINS** LLP
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone   (714) 823-4100
Fax       (714) 823-4101

## TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................... 11

II.    STATEMENT OF FACTS ........................................................ 11

   A.     Plaintiff 's August 8 to 12, 2019 Incarceration at WCJ.................... 11

   B.     Relevant WCJ Policies and Procedures ............................................. 13

III.   LEGAL STANDARD FOR SUMMARY JUDGMENT AND PARTIAL SUMMARY JUDGMENT ............................................................. 14

IV.    PLAINTIFF'S FEDERAL CLAIMS FAIL ............................................ 15

   A.     Plaintiff Cannot Establish any Fourteenth Amendment Violation... 15

   B.     Body Searches were reasonable in Scope, Manner, Justification, & Place ............................................................................................. 21

   C.     Plaintiff's Claim for Harassing Cell Searches Fails ............................ 23

   D.     Plaintiff's Fifth Claim for Violations of the First Amendment fails because she Cannot Establish a Constitutional Violation .......................... 24

   E.     Individual and Deputy Defendants are Entitled to Qualified Immunity ............................................................................................................ 26

   F.     Individual Defendants have No Direct Involvement .......................... 27

   G.     A Public Entity is Not Liable Solely for Employing a Tortfeasor ..... 28

V.     PLAINTIFF'S MONELL CLAIMS AGAINST THE COUNTY FAIL ........ 28

   A.     Plaintiff cannot Show that she Suffered any Constitutional Violation 28

   B.     Plaintiff Does Not Identify any Custom, Policy, or Practice that amounts to Deliberate Indifference ..................................................... 29

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone   (714) 823-4100
Fax       (714) 823-4101

FILE # 22348

2

**DEFENDANTS' MEMO OF P&A ISO MSJ OR PARTIAL MSJ**

**C.**      **Individual and Deputy Defendants were Adequately Trained and Supervised** ....................................................................................... 30

**VI.**   **PLAINTIFF'S STATE LAW CAUSES OF ACTION FAIL** ........................ 31

**A.**      **Cal. Constitutional Causes of Action are Equivalent to Federal Analysis** ................................................................................................... 31

**B.**      **Individual Defendants are not Liable for Negligent Supervision/Training/ Hiring, and It is Barred against the County as it is not based on Statute** ................................................................... 31

**C.**      **Penal Code section 4030 Fails against Individual Defendants** ........... 32

**D.**      **Plaintiff's Claim for IIED Fails Against all Defendants** .................... 32

**E.**      **Deputy Defendants are Immune under Government Code § 820.2** .. 33

**F.**      **Individual and Deputy Defendants are Immune per Gov. Code § 820.8** .......................................................................................................... 34

**G.**      **The County is Immune from all State Causes of Action** .................... 35

**VII.**   **CONCLUSION** ........................................................................................ 35

**COLLINS + COLLINS** LLP
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone   (714) 823-4100
Fax      (714) 823-4101

*FILE # 22348*

**DEFENDANTS' MEMO OF P&A ISO MSJ OR PARTIAL MSJ**

1

## <u>TABLE OF AUTHORITIES</u>

2

**Federal Cases**........................................................................................ **Pages(s)**

3

*Alexander v. City of San Francisco,*

4

    29 F.3d 1355 (9th Cir. 1994) ................................................................29

5

*Anderson v. Liberty Lobby, Inc.,*

6

    477 U.S. 242 (1986) .........................................................................17

7

*Asbury v. Brown,*

8

    2017 WL 1837024 (E.D. Cal. May 8, 2017)................................26, 27

9

*Ashcroft v. Iqbal* (2009)

10

    556 U.S. 662 ....................................................................................29

11

*Backlund v. Burnhart,*

12

    778 F.2d 1386 (9th Cir. 1985) ......................................................29

13

*Balla v. Idaho State Bd. of Corr.,*

14

    869 F.2d 461 (9th Cir. 1989) .........................................................20

15

*Barsamian v. City of Kingsburg,*

16

    597 F. Supp. 2d 1054 (E.D. Cal. 2009) ........................................17

17

*Bd. of County Commis. of Bryan County, Okl. v. Brown,*

18

    520 U.S. 397 (1997) .......................................................................31

19

*Beard v. Banks,*

20

    548 U.S. 521 (2006) .......................................................................17

21

*Bell v. Wolfish,*

22

    441 U.S. 520 (1979) .............................................17, 81, 20, 25

23

*Blankenhorn v. City of Orange,*

24

    485 F.3d 463 (9th Cir. 2007) .........................................................32

25

*Brodheim v. Cry,*

26

    584 F.3d 1262 (9th Cir.2009) ........................................................27

27

*Bull v City & Cnty of San Francisco,*

28

    595 F.3d 964 (9th Cir. 2010) ...................................................24, 25

**COLLINS + COLLINS** LLP
750 The City Drive, Ste 400
Orange, CA 92868-4840
Phone   (714) 823-4100
Fax      (714) 823-4101

**DEFENDANTS' MEMO OF P&A ISO MSJ OR PARTIAL MSJ**

*Byrd v. Maricopa Cnty. Sheriff's Dep't,*

    629 F.3d 1135 (9th Cir. 2011) .................................................................23, 24

*Cabral v. Cty. of Glenn,*

    624 F. Supp. 2d 1184 (E.D. Cal. 2009) ..........................................................37

*Celotex Cop. v. Catrett,*

    477 U.S. 317 (1986) ........................................................................................17

*Cooper v. Sheriff of Lubbock Co.,*

    929 F.2d 1078 (5th Cir.1991) .........................................................................18

*Cotta v. Cty. of Kings,*

    79 F. Supp. 3d 1148 (E.D. Cal. 2015) ............................................................31

*Demery v. Arpaio,*

    378 F.3d 1020 (9th Cir. 2004) ........................................................................18

*Doe v. Kelly,*

    878 F.3d 710 (9th Cir. 2017) ..........................................................................18

*Elifritz v. Fender,*

    460 F. Supp. 3d 1088 (D. Or. 2020) ...............................................................30

*Farmer v. Brennan,*

    511 U.S. 825 (1994) ........................................................................................17

*Florence v. Board of Chosen Freeholders of County of Burlington,*

    566 U.S. at 318 ................................................................................................24

*Foster v. Runnels,*

    554 F.3d 807 (9th Cir. 2009) .....................................................................18, 19

*Frost v. Agnos,*

    152 F.3d 1124 (9th Cir.1998) ....................................................................18, 19

*Gillette v. Delmore,*

    979 F.2d 1342 (9th Cir.1992) .........................................................................31

*Graves v. Arpaio,*

    623 F.3d 1043 (9th Cir.2010) .........................................................................19

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone  (714) 823-4100
Fax  (714) 823-4101

*FILE # 22348*

**DEFENDANTS' MEMO OF P&A ISO MSJ OR PARTIAL MSJ**

*Harlow v. Fitzgerald*,

    457 U.S. 800 (1982) ..................................................................................... 28

*Harper v. Wallingford*,

    877 F.2d 728 (9th Cir.1989) ...................................................................... 17

*Holland v. City of San Francisco*,

    2010 WL 5071597 ....................................................................................... 36

*Hoptowit v. Ray*,

    682 F.2d 1237 (9th Cir.1982) ............................................................... 20, 32

*Hubbard v. De Ochoa*,

    2015 WL 1879983 (E.D.Cal. Apr. 23, 2015) ......................................... 35

*Hudson v. Palmer*,

    468 U.S. 517 (1984) ............................................................................. 25, 26

*Hunt v. Davis*,

    749 Fed. Appx. 552 (9th Cir. Sept. 17, 2018) ....................................... 30

*Hunter v. Bryant*,

    502 U.S. 224 (1991) ................................................................................... 28

*Ingram v. Sacramento Police Dep't*,

    2009 WL 2905774 (E.D. Cal. Sept. 4, 2009) ........................................ 28

*Keenan v. Hall*,

    83 F.3d 1083 (9th Cir. 1996) ............................................................. 19, 20

*Lancaster v. Tilton*,

    No. C 79-01630WHA, 2007 WL 4570185 (N.D. Cal. Dec. 21, 2007).............. 22

*Malley v Briggs*,

    475 U.S. 335 (1986) ................................................................................... 28

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

    475 U.S. 574 (1986) ............................................................................. 16, 17

*Merritt v. County of L.A,.*

    875 F.2d 765 (9th Cir. 1989) .................................................................... 32

*FILE # 22348*

**DEFENDANTS' MEMO OF P&A ISO MSJ OR PARTIAL MSJ**

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone   (714) 823-4100
Fax       (714) 823-4101

*Michenfelder v. Sumner*,

860 F.2d 328 (9th Cir.1988) .................................................................. 25

*Monell v. New York City Dept. of Social Services*,

436 U.S. 658 (1978) ...................................................... 31, 30, 31, 32

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,

429 U.S. 274 (1977) ......................................................................... 27

*Oviatt v. Pearce*,

954 F.2d 1470 (9th Cir. 1992) .......................................................... 32

*Pearson v. Callahan*,

555 U.S. 223 (2009) ......................................................................... 28

*People v. Collins*,

115 Cal. App. 4th 137 (2004) ........................................................... 33

*People v. Zepeda*,

87 Cal. App. 4th 1183 (2001) ........................................................... 33

*Pierce v. Cnty of Orange*,

526 F.3d 1190 (9th Cir. 2008) .......................................................... 17

*Pratt v. Rowland*,

65 F.3d 802 (9th Cir.1995) ............................................................... 27

*Rainwater v. McGinniss*,

No. 2:10-CV-1727 GGH P, 2012 WL 3276966 (E.D. Cal. Aug. 9,

2012) ................................................................................................. 20

*Rhodes v. Chapman*,

452 U.S. 337 (1982) ............................................................. 17, 18, 20

*Rhodes v. Robinson*,

408 F.3d 559 (9th Cir.2005) ............................................................. 27

*Rieco v. Moran*,

633 F. App'x 76 (3d Cir. 2015) .................................................. 18, 19

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone   (714) 823-4100
Fax      (714) 823-4101

**DEFENDANTS' MEMO OF P&A ISO MSJ OR PARTIAL MSJ**

*Robles v. Coughlin*,

    725 F.2d 12 (2d Cir.1983) ................................................................. 18

*Sanchez v. Lerdo Kern County Detention Facility*,

    2015 WL 1345808 (E.D. Cal. 2015) ................................................. 23

*Saucier v. Katz*,

    533 U.S. 194 (2001) ................................................................... 28, 29

*Scher v. Purkett*,

    758 F.Supp. 1316 (E.D.Mo. 1991) ................................................... 22

*Thompson v. Sousa*,

    111 F.3d 694 (9th Cir. 1997) ........................................................... 25

*Turner v. Safley*,

    482 U.S. 78 (1987) ..................................................................... 25, 26

*United States v. Robinson*,

    414 U.S. 218 (1973) ......................................................................... 25

*Walker v. Woodford*,

    454 F.Supp.2d 1007 (S.D. Cal. 2006), aff'd in part, 393 F.App'x 513

    (9th Cir. 2010) ................................................................................. 21

*Wesley v. Davis*,

    333 F. Supp. 2d 888 (C.D. Cal. 2004) ............................................. 29

*Whitely v. CDCR*,

    No. CV 18-1103-AG (AGR), 2018 WL 7269001 (C.D. Cal. Dec. 19,

    2018) ................................................................................................ 27

**California Cases**

*Bailey v. Loggins*,

    32 Cal. 3d 907 (1982) ...................................................................... 33

*Crouch v. Trinity Christian Center of Santa Ana, Inc.*,

    39 Cal.App.5th 995 (2019) .............................................................. 35

**COLLINS + COLLINS** LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone   (714) 823-4100
Fax       (714) 823-4101

**DEFENDANTS' MEMO OF P&A ISO MSJ OR PARTIAL MSJ**

*de Villers v. Cty. of San Diego*,

    156 Cal. App. 4th 238 (2007) ................................................................34

*Delfino v. Agilent Techs., Inc.*,

    145 Cal. App. 4th 790 (2006) .........................................................33, 34

*Eastburn v. Regional Fire Protection Authority*,

    31 Cal. 4th 1175 (2003) ...................................................................34

*Hughes v. Pair*,

    46 Cal.4th 1035 .............................................................................35

*Landau v. Superior Ct.*,

    81 Cal. App. 4th 191 (1998) ...............................................................33

*Okorie v. Los Angeles Unified School Dist.*,

    14 Cal.App.5th 574 (2017) ................................................................35

*People v. Baker*,

    88 Cal. App. 3d 115 (Ct. App. 1978) .....................................................33

*Potter v. Firestone Tire & Rubber Co.*,

    6 Cal. 4th 965 (1993) .....................................................................33

*Teter v. City of Newport Beach*,

    30 Cal. 4th 446 ...........................................................................37

*Thompson v. Cty. of Alameda*,

    27 Cal. 3d 741, 614 P.2d 728 (1980) .....................................................36

*Weaver v. State of Cal.*,

    63 Cal. App. 4th 188 (1998) ...............................................................36

*Wright v. State of California*

    122 Cal.App.4th 659 (2001) ..............................................................35

**Constitutions**

First Amendment ..............................................................24, 26, 27, 33

Fourth Amendment ........................................................23, 25, 26, 28, 33

Eighth Amendment ..........................................................................18

*FILE # 22348*

**DEFENDANTS' MEMO OF P&A ISO MSJ OR PARTIAL MSJ**

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone   (714) 823-4100
Fax       (714) 823-4101

Fourteenth Amendment ..........................................................................17, 19, 24, 25

California Constitution ...............................................................................................33

**Federal Statutes**

42 U.S.C. § 1983..............................................................................13, 29, 30, 31

F.R.C.P. 56(c) ...........................................................................................16, 17

**California Statutes**

California Tort Claims Act .......................................................................................34

Government Code § 815(a) ......................................................................................34

Government Code § 815.2(b) ...................................................................................37

Government Code § 820.2 ....................................................................................35, 36

Government Code § 820.8 ........................................................................................36

Government Code § 844 ...........................................................................................37

Government Code § 844.6 ........................................................................................37

Penal Code § 4030(e)...............................................................................................34

Penal Code § 4030 ...................................................................................................34

**Other Authorities**

Minimum Standards for Local Detention Facilities, Title 15............................16, 23

Minimum Standards for Local Detention Facilities, Title 24............................16, 22

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone   (714) 823-4100
Fax       (714) 823-4101

*FILE # 22348*

**DEFENDANTS' MEMO OF P&A ISO MSJ OR PARTIAL MSJ**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

From August 8 to 12, 2019, Plaintiff Jane Doe ("Plaintiff") was incarcerated at the Women's Central Jail ("WCJ") after she was arrested for vandalism, violating a restraining order, and intent to distribute private videos of another individual. Plaintiff claims she was subjected to unconstitutional jail conditions, strip searches, and a harassing cell search during her four-day stay at WCJ. She claims that as a result, she suffered emotional distress, insomnia, suicidal ideations, and abnormal menstrual bleeding. Despite admitting she suffered from the same conditions prior to her incarceration, Plaintiff now brings this civil rights action against the County of Orange ("County"); Sheriff Don Barnes, William Baker, Joe Balicki, and Mark Stichter ("Individual Defendants"), supervisors at the Orange County Sheriff's Department; and WCJ Deputies Reyna Rivera, Devonna Falconer, Kassandra Mayer, Elia Rodriquez, and Rachel Addington ("Deputy Defendants") (collectively, "Defendants").

As elaborated below, all of Plaintiff's claims fail and Defendants are entitled to Summary Judgment or Partial Summary Judgment. Her claims under 42 U.S.C. § 1983 fail because the indisputable facts show that her constitutional rights were not violated; the Individual Defendants and Deputy Defendants are entitled to qualified immunity; and there is no evidence of unconstitutional policies, practices, or customs and/or improperly trained or supervised staff to support a *Monell* claim. For similar reasons, Plaintiff's state law causes of action are also without merit. Defendants respectfully move for summary judgment on all of Plaintiff's claims, or in the alternative, for partial summary judgment on the grounds that Plaintiff's claims have no merit.

## II.   STATEMENT OF FACTS

### A. **Plaintiff 's August 8 to 12, 2019 Incarceration at WCJ**

Plaintiff was arrested by the Santa Ana Police on August 8, 2019, and taken to WCJ. Around 4:46 p.m., Plaintiff was booked into WCJ. (Fact 2.) Plaintiff claims that she was denied food in the intake/booking process. (Fourth Amended Complaint

COLLINS+COLLINS LLP
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone   (714) 823-4100
Fax       (714) 823-4101

**DEFENDANTS' MEMO OF P&A ISO MSJ OR PARTIAL MSJ**

["FAC"], ¶ 30.) Inmates are given meals three times a day at 5:00 a.m. (breakfast); 11:00 a.m. (lunch); and 4:00 p.m. (dinner). (Fact 1.) Because she was in the booking process after 4:00 p.m., she was given a meal at the next time, 5:00 a.m. (FAC, ¶ 30; Fact 3.)

When she was booked, she was provided a jail uniform, including a bra; was fingerprinted; and signed her booking paperwork acknowledging that she received the Jail Rules. Every new inmate is provided a sanitized mattress pad/mat, two clean sheets, one clean blanket, and one clean towel upon booking. Inmates are also provided clean and appropriate clothing, which is changed out two times per week. (Fact 11.) Inmates are required to remain in full jail issue uniform, which includes a bra for female inmates, while in the dayrooms, common areas, or outside their cell. After the intake process, Plaintiff was brought to the shower area where she showered, and changed into her jail uniform. Although Plaintiff was provided a bra, Plaintiff chose not to wear it. (Fact 38.) After changing into her jail uniform, Plaintiff was placed in a holding area with other inmates. Plaintiff remained in the holding area for several hours before going upstairs with other inmates; she was then escorted to Module G, Tank 2 (1,000 sq. ft.). (Fact 16.) This is the equivalent of Plaintiff's "cell" and contained twenty bunkbeds, two showers, a bathroom, and a 360 sq. ft. dayroom. (Fact 14.) Once upstairs in the Module, a deputy noticed Plaintiff was not wearing a bra, so she got a bra for her. (Facts 43-44.)

After putting on the bra, and admittedly after the booking process, Plaintiff and the other inmates were underwent a routine Extended Correctional Search. (Facts 39-40, 43-44.) An Extended Correctional Searches requires inmates to remove all garments down to, but not including the inmate's bra and panties. (Fact 40.) The search allows deputies to examine an inmate's outer garments and visually inspect an inmate's undergarments. (*Id*.) WCJ policy defines a "strip search" as a search that includes a visual inspection of an inmate's breasts, buttocks, or genitalia. (Fact 42.)

For all of the alleged searches at issue in this case, Plaintiff admittedly describes an Extended Correctional Search or a "body search" and not a strip search. At no point during any search was Plaintiff asked to remove her bra or underwear, her intimate areas

*FILE # 22348*

**DEFENDANTS' MEMO OF P&A ISO MSJ OR PARTIAL MSJ**

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone  (714) 823-4100
Fax    (714) 823-4101

were never touched, and the searches were observed and conducted by female deputies. (Fact 46-48.) Plaintiff was also never fully naked during any search, she was searched in a small group, and the searches were not unique or targeted to her. (Facts 45, 49.)

After the initial body search, Plaintiff was provided items including a toothbrush, toothpaste, soap, mattress, sheets, and a blanket. (Fact 30.) New inmates are provided a Welfare Pack which includes soap, toothbrush, toothpaste, and a comb. (Fact 31.) All other supplies can be purchased on commissary which comes approximately twice a week. Inmates without any funds can order a "Welfare Pack" of free hygiene items once per week. (Fact 34.) If an inmate runs out of allowable personal hygiene articles, articles from a Welfare Pack will be provided upon request. (Fact 35.)

On August 11, 2019, at approximately 12:16 a.m., Deputy Defendants conducted a routine Facility Assigned Search Team ("FAST") search of Module G, Tank 2. (Fact 52.) During this FAST search, the Deputy Defendants entered the tank and instructed all of the inmates to stand up in full jail issued clothing and file into the day room. Each bunk and surrounding areas were checked for weapons, contraband, or drugs. From this search it was found that three inmates had altered razors and were subsequently written up for this major jail rule violation. When the FAST search was completed, inmates were permitted to return to their respective bunks and continue to talk.

On August 12, 2019, Plaintiff was transported from WCJ to the Superior Court in Santa Ana. Plaintiff underwent a routine Extended Correctional Search or body search before being transported to the Court, upon arrival, and once returning to WCJ. (FAC, ¶ 33.) At around 3:28 p.m., the Superior Court issued a notice that Plaintiff was to be released on her own recognizance. After being transported back to WCJ, Plaintiff was processed and released. While in custody, Plaintiff never complained to any WCJ staff about the searches or WCJ's conditions. (Facts 18, 55.)

## B. Relevant WCJ Policies and Procedures

WCJ's policies and procedures are established in accordance with the Title 15 ("Title 15") and Title 24 ("Title 24") Minimum Standards for Local Detention

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone  (714) 823-4100
Fax     (714) 823-4101

**DEFENDANTS' MEMO OF P&A ISO MSJ OR PARTIAL MSJ**

Facilities, which are guidelines set by an independent statutory agency, the California Board of State and Community Corrections ("BSCC"), to ensure that local detention facilities policies' conform to applicable federal, state, and local guidelines. These policies were effective when Plaintiff was in custody. The County develops, implements, and actively trains its employees to avoid and prevent the violation of inmates' constitutional rights. All staff and deputies are trained according to and on topics per Title 15, WCJ policy, and applicable standards. (Fact 65.)

WCJ has an air conditioning system and exhaust fans in the restrooms and common areas to move fresh conditioned air throughout the building. (Fact 6.) The system is monitored and controlled by a computerized system. (Fact 7.) WCJ's temperature will vary throughout, with the average temperature being 70 degrees Fahrenheit. (Fact 8.) Inmates are offered an opportunity to have a minimum of three hours of outdoor recreation each week. (Fact 17.) Inmates are free to exercise inside at their own discretion. It is expected that dayrooms will generally be available for use from 6:00 a.m. to 11:00 p.m. every day. (Fact 14.) Between the hours of lights out and the morning, all inmates are required to remain on their bunks quietly, except they require use of the toilets. (Fact 19.) As to searches of inmates and cells, the objective is to detect, control, and prevent the intake and introduction of contraband into WCJ and preserve the security and safety of inmates and WCJ staff. (Fact 53.) Jail policy prohibits deputies from using searches to punish, harass, or embarrass an inmate. (Fact 64.)

### III.   LEGAL STANDARD FOR SUMMARY JUDGMENT AND PARTIAL

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories,… admissions on file, …[and] affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (F.R.C.P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).) The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).) A fact is material if it may affect the outcome. (*Id.* at 248.) If the

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone  (714) 823-4100
Fax     (714) 823-4101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact exists. (*Matsushita,* 475 U.S. at 586.) In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings but is required to tender evidence of support of its contention with specific facts in the form of affidavits, and/or admissible discovery material. (F.R.C.P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11.)

Summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. (*Celotex Cop. v. Catrett,* 477 U.S. 317, 323 (1986).) Mere disagreement or the bald assertion that a genuine issue of material fact exists does not preclude summary judgment. (*Harper v. Wallingford*, 877 F.2d 728 (9th Cir.1989).) The Supreme Court has noted: "[u]nless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." (*Beard v. Banks,* 548 U.S. 521, 530 (2006).) Further, "[a] motion for summary adjudication, sometimes referred to as a motion for partial summary judgment, is governed by the same standard as a typical motion for summary judgment." (*Barsamian v. City of Kingsburg*, 597 F. Supp. 2d 1054, 1061 (E.D. Cal. 2009).)

## IV.   **PLAINTIFF'S FEDERAL CLAIMS FAIL**

### A. **Plaintiff Cannot Establish any Fourteenth Amendment Violation**

The Fourteenth Amendment does not require a pretrial detainee's stay in jail to be comfortable. (*Farmer v. Brennan,* 511 U.S. 825, 832 (1994); *Rhodes v. Chapman,* 452 U.S. 337, 349 (1982).) Instead, a pretrial detainee merely has the right against jail conditions or restrictions that "amount to punishment." (*Bell v. Wolfish*, 441 U.S. 520, 535-37 (1979); *Pierce v. Cnty of Orange,* 526 F.3d 1190, 1205 (9th Cir. 2008).) When ruling on claims brought by pretrial detainees, many courts look to decisions involving claims under the Eighth Amendment. (*Doe v. Kelly*, 878 F.3d 710, 714 (9th Cir. 2017); *see also Frost v. Agnos,* 152 F.3d 1124, 1128 (9th Cir.1998).) "Not every disability

*FILE # 22348*

**DEFENDANTS' MEMO OF P&A ISO MSJ OR PARTIAL MSJ**

imposed during pretrial detention amounts to 'punishment' in the constitutional sense." (*Bell,* 441 U.S. at 537.) To be considered 'punishment', the imposed harm "must either significantly exceed, or be independent of, the inherent discomforts of confinement." (*Demery v. Arpaio,* 378 F.3d 1020 (9th Cir. 2004) *citing Bell*, 441 U.S. at 537) "[T]the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'" (*Id.*)

### i.   *Plaintiff was not Denied Access to Food or Life's Necessities*

Plaintiff alleges that she was denied food for over 20 hours at WCJ despite her repeated requests. (FAC ¶ 30.) She admits she received food the next morning and she ate three meals per day while in WCJ. (*Id.; Fact 3.*) Thus, her claim is limited to one meal. Being denied one meal is not a continuous and substantial denial that could constitute an unconstitutional denial of life's necessities. (*Rhodes*, 452 U.S. at 348.) Per the Ninth Circuit, "[t]he *sustained* deprivation of food can be cruel and unusual punishment when it results in pain without any penological purpose." (*Foster v. Runnels,* 554 F.3d 807, 814 (9th Cir. 2009) *citing Phelps v. Kapnolas*, 308 F.3d 180, 182 (2d Cir. 2002).)(Emphasis added). In *Foster*, the court held that a denial of sixteen meals over twenty-three days constitutes a serious and sustained deprivation. (*Id.*) Other circuits have found sufficiently serious deprivations involve an inmate being deprived of food for more than two consecutive days. (S*ee Cooper v. Sheriff of Lubbock Co.,* 929 F.2d 1078, 1082–83 (5th Cir.1991) (no food for twelve days); *Robles v. Coughlin,* 725 F.2d 12, 16 (2d Cir.1983) (no food for twelve days over a fifty-three-day period). "Deprivation of a single meal does not rise to the level of an Eighth Amendment violation because 'only a substantial deprivation of food to a prisoner' states a viable claim." (*Rieco v. Moran*, 633 F. App'x 76, 78 (3d Cir. 2015).)

Here, Plaintiff was booked into the jail at around 4:26 p.m. on August 8, 2019. (Fact 2.) Inmates are given meals three times per day at 5:00 a.m. (breakfast); 11:00 a.m. (lunch); and 4:00 p.m. (dinner). (Fact 1.) Thus, by time she had been booked into

*FILE # 22348*

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone   (714) 823-4100
Fax      (714) 823-4101

**DEFENDANTS' MEMO OF P&A ISO MSJ OR PARTIAL MSJ**

WCJ (4:26 p.m.), Plaintiff would have missed dinner time (4:00 p.m.). (Fact 2.) However, Plaintiff claims she ate the next morning after intake. (FAC, ¶ 30; Fact. ) She also claims she ate three meals per day the other days. (Fact 4.) Thus, Plaintiff was given food at the next available opportunity and does not allege she was denied food any other times. Like in *Foster* and *Rieco*, it is clear that being temporarily denied food for an alleged twenty hours, as Plaintiff claims, or one meal, is not a serious or sustained deprivation as to be a violation of her constitutional rights. Thus, Plaintiff's claim fails.

### ii. Plaintiff's Claim for Cold Temperatures and Denial of Clothing Fails

Plaintiff can offer no evidence that she was subjected to extreme temperatures in violation of the Fourteenth Amendment. The Constitution requires adequate heating, but not necessarily a "comfortable" temperature. (*Graves v. Arpaio,* 623 F.3d 1043, 1049 (9th Cir.2010); *see also Frost*, 152 F.3d 1124, holding that pretrial detainee's claim regarding temperature and other conditions of confinement failed because he did not show the conditions ultimately deprived him of the "minimal civilized measures of life's necessities".) "One measure of an inadequate, as opposed to merely uncomfortable, temperature is that it poses 'a substantial risk of serious harm.'" (*Id.* quoting *Farmer v. Brennan,* 511 U.S. at 834.) Further, summary judgment was proper where the inmate only alleged unconformable temperatures. (*Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996).)

Plaintiff alleges that WCJ was kept "bone-chillingly cold" and that she was in "great discomfort. "(FAC, ¶¶ 26, 28.) There are no facts which support that Plaintiff was deprived minimal measures of life's necessities as she admits that she was only cold in the booking process ("the first floor" as she calls it) and not while in general population. (Fact 5.) The booking process is a temporary part of her incarceration and as per *Keenan*, this temporary discomfort is not enough to rise to a constitutional violation. (*Id.* at 1091.) Further, the temperature in WCJ is not kept at any extreme condition and averages 70 degrees Fahrenheit. (Fact 8.) WCJ has a system in place to

FILE # 22348

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone   (714) 823-4100
Fax      (714) 823-4101

**DEFENDANTS' MEMO OF P&A ISO MSJ OR PARTIAL MSJ**

provide adequate heating and ventilation. (Facts 6-7 .) Plaintiff also admits to being given a blanket. (Fact 9.)

Next, as to clothing, during intake and before entering general population, Plaintiff was given a standard, jail-issued uniform. (Fact 10.) The jail clothes were swapped two-times per week for clean clothes. (Fact 11.) Summary judgment is proper because Plaintiff was provided with clothing at the onset of her incarceration, and she would have been given clean clothes twice per week. (*Rainwater v. McGinniss*, No. 2:10-CV-1727 GGH P, 2012 WL 3276966, at *13 (E.D. Cal. Aug. 9, 2012) which granted summary judgment when undergarments were exchanged once per week and undergarments twice per week.) While Plaintiff may have found that the temperature and clothes were uncomfortable, it does not rise to a level of constitutional violation.

### iii.    *Plaintiff's Second Claim regarding Overcrowding Fails*

Overcrowding in jails is not unconstitutional in itself. (*Rhodes*, 452 U.S. at 348, which held no constitutional violation when double-celling "did not lead to deprivations of essential food, medical care, or sanitation" and did not "increase violence among inmates or create other conditions intolerable for prison confinement".) Exclusive reliance on square footage or the jail's rated capacity is also insufficient to establish unconstitutional overcrowding. (*Hoptowit v. Ray,* 682 F.2d 1237, 1249 (9th Cir.1982).) Consideration must also be given to how much time inmates must spend in their cells each day and whether overcrowding has caused other constitutional deprivations. (*Id.*; *see Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 471 (9th Cir. 1989) which held that although prison was technically 50% overcrowded, this had no constitutional significance by itself; *Bell,* 441 U.S. at 537, holding that double-bunking pretrial detainees was not unconstitutional because they had adequate space for sleeping and were only required to spend seven or eight hours a night in cell.).

Here, Plaintiff alleges that WCJ was overcrowded, and the cell was too small. (FAC, ¶¶ 52-53.) However, Plaintiff's analysis is misguided. Like *Hoptowit*, her exclusive reliance on square footage is insufficient to establish overcrowding and the

**COLLINS & COLLINS** LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone  (714) 823-4100
Fax      (714) 823-4101

time inmates spend in their cell must be considered. Here, Plaintiff was not confined in her cell twenty-four hours a day. (Fact 12.) In Plaintiff's opposition, she calls the Module her "cell." She tries to confuse this Court by inferring that that her "cell" was a cramped, small area however, it was not; the Module was 1,000 sq. ft. (Fact 16.) Further, Plaintiff admits that she went outside on the roof patio during her stay at WCJ. (Fact 13.) WCJ policy also permits inmates the opportunity to go to the roof patio area for outdoor recreation at least three hours per week. (Fact 17.) Even if Plaintiff was not provided the opportunity to go outside, her claim still fails because she was provided meaningful indoor activities and stimulation. Plaintiff was allowed to use the 360 square foot dayroom which was available for use from 6:00 a.m. to 11:00 p.m. every day. (Fact 14.) That means she had access to the 360 square foot dayroom for almost 17 hours every day. Further, considering square footage, Plaintiff's Module held about 40 inmates during her incarceration, and the entire Module dorm is about 1,000 square feet. (Fact 15-16.) This is adequate space for sleeping and living. Finally, Plaintiff never complained about overcrowding during her incarceration. (Fact 18.) As such, Plaintiff's her claim fails.

### iv.    There were No Unconstitutional Sound or Light Violations

Plaintiff claims that her constitutional rights were violated as lights affected her ability to sleep during her short stay at WCJ and that she was kept awake by the constant sound of toilets flushing. (FAC, ¶¶ 54, 55.) As to lighting, "[n]either the Ninth Circuit nor, any other federal court have held that pretrial detainees have a right to sleep in complete darkness. Rather, other courts have held that continuous low-wattage lighting is permissible in jails or prisons." (*Walker v. Woodford*, 454 F.Supp.2d 1007, 1014 (S.D. Cal. 2006), aff'd in part, 393 F.App'x 513 (9th Cir. 2010)(explaining "Walker's claim that the night lights caused his insomnia is mere speculation insufficient to defeat summary judgment") Furthermore, "even if 24-hour lighting infringed on an inmate's Constitutional rights, it may nevertheless be valid if it is reasonably related to legitimate penological interests." (*Walker*, 454 F.Supp.2d at 1015.)

FILE # 22348

**DEFENDANTS' MEMO OF P&A ISO MSJ OR PARTIAL MSJ**

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone   (714) 823-4100
Fax      (714) 823-4101

Here, it is clear that the lighting at the WCJ did not violate Plaintiff's rights. First, Plaintiff testified that she could not sleep because she was scared, not because of the lights or sound. (Fact 25) Plaintiff also admits that lights were turned off at night (Fact 20), that other inmates were able to sleep (Fact 23), that she was able to get sleep during her time at WCJ (Fact 24), that she did not complain to any deputy or request to see a physician regarding the lights or her problems sleeping (Fact 26) and that she had sleeping issues prior to coming to WCJ (Fact 27). The evidence establishes that only low-wattage security lights remained on at night after the primary lights in the cell were turned off. (Fact 21, 28.) These lights remained on for safety of inmates and guards. (Fact 28.) Title 24 permits night lighting for supervision of inmates. (Fact 22.)

Plaintiff's claims of disruptive toilets also fails. "'Public conceptions of decency…. require that [inmates] be housed in an environment that, if not quiet, is at least reasonably free of excess noise." (*Lancaster v. Tilton*, No. C 79-01630WHA, 2007 WL 4570185, at *17 (N.D. Cal. Dec. 21, 2007).) "The level of noise is considered extreme when 'it adversely affects [prisoners' hearing and mental processes. Constant exposure to such a level of noise inflicts pain without penological justification.'" (*Id.*) Like *Lancaster*, the sound of toilet flushing is not extreme. Toilet flushing is related to a penological interest – allowing inmates the proper facilities to relieve themselves. (Fact 19.) Plaintiff herself admits that allowing inmates the ability to use the restroom at night is necessary and would be "inhuman" if they were prevented to do so. (Fact 29.)

> ### v.   *Plaintiff's Claim that she was Denied Hygienic supplies is Meritless*

Plaintiff further claims that she was not given shampoo and commissary supplies were more expensive than a regular store. (FAC, ¶ 60.) "[A]n institution's obligation… is at an end if it furnishes sentenced prisoners with *adequate* food, clothing, shelter, sanitation, medical care and personal safety." *(Hoptowit*, 682 F.2d at 1246.) (Emphasis added). A belief that shampoo is necessary for hygiene does not rise to the level of a constitutional violation. (*See Scher v. Purkett*, 758 F.Supp. 1316, 1317 (E.D.Mo. 1991) no constitutional violation when inmates deprived of deodorant and shampoo), aff'd, 62

*FILE # 22348*

**DEFENDANTS' MEMO OF P&A ISO MSJ OR PARTIAL MSJ**

COLLINS & COLLINS LLP
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone  (714) 823-4100
Fax      (714) 823-4101

F.3d 1421 (8th Cir. 1995)). Further, inflated commissary prices do not provide a basis for a constitutional claim because there is no constitutional right to purchase items from the commissary. (*Sanchez v. Lerdo Kern County Detention Facility*, 2015 WL 1345808, at \*7 (E.D. Cal. 2015).)

Plaintiff was not denied adequate personal hygiene items. Plaintiff was first provided with a free kit that contained soap, a toothbrush, toothpaste, and a comb. (Fact 30.) Additional supplies, including shampoo, were made available for Plaintiff to purchase. (Fact 33.) Inmates without any funds were also to be able to order a "Welfare Pack" of free hygiene items once per week. (Fact 34.) If an inmate runs out of allowable personal hygiene articles, articles from a Welfare Pack will be provided upon request. (Fact 35.) WCJ also gives out tampons, pads, or other feminine products upon request at no charge if she required them. (Fact 36.) Plaintiff admitted that pads were readily available to her. (Fact 37.) Moreover, the Welfare Pack given to inmates is in line with the Title 15. (Fact 32.) Further, per *Sanchez*, Plaintiff's claims that commissary items are higher than regular store prices do amount to a violation of her rights.

### B. Body Searches were reasonable in Scope, Manner, Justification, & Place

Plaintiff claims that her Fourth Amendment rights were violated because she was subjected to a mandatory shower and "strip searches" while at WCJ. (FAC, ¶ 33.) Plaintiff was **not** subjected to strip searches and mischaracterizes the searches. She underwent routine Extended Correctional Searches or a "body search." An Extended Correctional Search is a search which "requires inmates to remove all garments except their undergarments" (defined as bras and panties for females). (Fact 40.) A strip search, on the other hand, is a search to permit a visual inspection of their breasts, buttocks, or genitalia. (Fact 42.) By Plaintiff's own admissions, this did not occur at any time. "Whether a search is reasonable under the Fourth Amendment requires a case-by-case 'balancing of the need for the particular search against the invasion of personal rights that the search entails ....'"(*Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1141 (9th Cir. 2011). Further, "[t]he required factors for courts to consider include: (1) the

*FILE # 22348*

**DEFENDANTS' MEMO OF P&A ISO MSJ OR PARTIAL MSJ**

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone   (714) 823-4100
Fax      (714) 823-4101

scope of the particular intrusion, (2) the manner in which it is conducted, (3) the justification for initiating it, and (4) the place in which it is conducted." (*Id.*) The United States Supreme Court has held that body searches are a routine in county jail with pretrial detainees, including low-level non-violent offenders, and do not violate Fourth or Fourteenth Amendments. (*Florence,* 566 U.S. at 318.) Visual searches of people who are arrested prior to placement in general population, including pretrial detainees, are reasonable. (*Bull v City & Cnty of San Francisco,* 595 F.3d 964 (9th Cir. 2010).)

Evaluating the factors above, it is clear that the routine body searches are reasonable under the Fourth and Fourteenth Amendments. Plaintiff claims that she was subjected to seven body searches on: (1) August 8, 2019 before being placed into general population; (2) August 10, 2019 before going on the recreation patio; (3) August 10, 2019 after returning from the recreation patio; (4) August 12, 2019 before leaving for court; (5) August 12, 2019 upon arrival at court; (6) August 12, 2019 after returning from court; and (7) before being released on her own recognizance. (FAC, ¶ 33.) First, Plaintiff admits that the first Extended Correctional Search or body search did not occur until after she was placed in general population. (Fact 39.) As to scope, Plaintiff admits that her genitals and breasts were never exposed, she remained in her bra and underwear, and was never fully naked during all searches. (Facts 45-49.) What she describes are Extended Correctional Searches, which can be used without suspicion. (Facts 40-41.)

Second, as to manner, in all searches, Plaintiff was searched by female deputies and with a small group of other female inmates. (Facts 45, 48.) She admits there was no touching or exposure of her intimate areas or genital areas by any deputy. (Fact 47.)

Next, all searches of Plaintiff were supported by a compelling jail need. The Ninth Circuit analyzes search policies "in the light of the central objective of prison administration, safeguarding institutional security" when the policy applies to arrestees introduced into the general jail population for custodial housing. (*Bull,* 595 F.3d at 964, 975.) The Ninth Circuit upheld a prison policy where visual body cavity searches were conducted every time inmate left or returned to unit as constitutional. (*Michenfelder v.*

**COLLINS & COLLINS** LLP
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone  (714) 823-4940
Fax      (714) 823-4101

*Sumner*, 860 F.2d 328, 334-336 (9th Cir.1988).) These searches are conducted to support a penological interest of intercepting and deterring contraband before it gets into the facility as well as for inmate and staff safety. (Facts 40, 53-54.) Even assuming that less invasive searches could achieve the same results, Defendants are not required to use the least intrusive means. (*See Turner v. Safley,* 482 U.S. 78, 90 (1987).) Like *Bull* and *Michenfelder*, searching Plaintiff for contraband and weapons was imperative and necessary for the safety of the inmates and jail staff. Moreover, Plaintiff contends that she was "forced to shower." (FAC, ¶ 33.) The searches done to and from Court are in line with WCJ policy. (Fact 51.) However, forcing inmates to shower supports a compelling jail need by preventing infection and promoting hygiene. (Fact 50.) Thus, if a shower is considered a search, it is supported by a penological interest.

Finally, the place of the searches, similarly demonstrates that no constitutional violation occurred. The Ninth Circuit held that absolute privacy during searches is hardly a guarantee. (*Thompson v. Sousa*, 111 F.3d 694 (9th Cir. 1997) upholding a correctional officers' visual strip search of an inmate that was conducted on a housing tier in full view of inmates and rejecting argument that search should have been conducted in a more private location; *see also Hubbard v. De Ochoa,* 2015 WL 1879983, at *5–6 (E.D.Cal. Apr. 23, 2015) holding that there was no Fourteenth Amendment violation where plaintiff was stripped naked for a search within view of male and female officers and nurses.) Here, there is no violation as the searches were conducted in small groups, with female deputies, in front of female inmates, and in locations that allowed privacy while also ensuring safety and efficiency. (Facts 45-49.)

### C. Plaintiff's Claim for Harassing Cell Searches Fails

Inmates are not entitled to recognizable privacy expectations in their cells. (*Hudson v. Palmer*, 468 U.S. 517, 527-28, (1984); *United States v. Robinson,* 414 U.S. 218, 232 (1973) holding that an individual in custody retains no significant Fourth Amendment interest; *Bell v*, 441 U.S. at 556–557, which upheld a room search rule by pretrial detainees and that "a person confined in a detention facility has no reasonable

*FILE # 22348*

**DEFENDANTS' MEMO OF P&A ISO MSJ OR PARTIAL MSJ**

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone   (714) 823-4100
Fax      (714) 823-4101

expectation of privacy with respect to his room or cell and that therefore the Fourth Amendment provides no protection for such a person.") *Hudson* elaborated that the importance of cell searches outweighs the privacy interests of inmates, "a right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." (*Hudson*, 468 U.S. at 527-28.) Further, penal objectives of safety and preventing contraband "would be literally impossible to accomplish… if inmates retained a right of privacy in their cells. Virtually the only place inmates can conceal weapons, drugs, and other contraband is in their cells." (*Id.* at 527.)

Here, Plaintiff alleges that the search of her cell was unreasonable and harassing however, she has no reasonable expectation of privacy in her cell and is not entitled to the protections of the Fourth Amendment. (*Id.* at 527-28.) Even assuming *arguendo* that Plaintiff has a right to privacy in her cell, her claim still fails because she cannot establish the search was unreasonable as maintaining safety in the jail outweighs the alleged intrusion to her. (Facts 53-54.) Plaintiff concedes that cell searches are conducted to "try to look for weapons and contraband or any illegal stuff." (Fact 53.) And it has been held that "random searches of cells renders these searches perhaps the most effective weapon of the prison administrator in the constant fight against the proliferation of knives and guns, illicit drugs, and other contraband." (*Id.* at 528.) She also did not complain about any search, body or cell, to any deputy. (Fact 55.) Plaintiff's claim fails because she does not have an expectation of privacy in her cell and the interest in maintaining the safety of the jail outweighs the alleged intrusion.

### D. **Plaintiff's Fifth Claim for Violations of the First Amendment fails because she Cannot Establish a Constitutional Violation**

"Plaintiff does not have a First Amendment right to speak in prison." (*Asbury v. Brown*, 2017 WL 1837024, at *6 (E.D. Cal. May 8, 2017).) When analyzing inmate speech claims, the Supreme Court has displayed considerable reluctance to second-guess prison officials. (*Turner*, 482 U.S. at 89.) Retaliation claims brought by inmates

*FILE # 22348*

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone  (714) 823-4100
Fax     (714) 823-4101

24

**DEFENDANTS' MEMO OF P&A ISO MSJ OR PARTIAL MSJ**

must be evaluated in light of concerns over "excessive judicial involvement in day-to-day prison management, which 'often squander[s] judicial resources with little offsetting benefit to anyone.'" (*Pratt v. Rowland,* 65 F.3d 802, 807 (9th Cir.1995) (quoting *Sandin v. Conner,* 515 U.S. a 482 (1995).) In particular, the court should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." (*Pratt,* 65 F.3d at 807 *quoting Sandin,* 515 U.S. at 482). Moreover, "[i]t is reasonable to conclude that directing an individual to be quiet during a search, or declining to answer the individual's questions, is reasonably related to the officer's need to concentrate and act quickly, and cannot therefore be said to impermissibly impinge upon the individual's exercise of free speech." (*Whitely v. CDCR*, No. CV 18-1103-AG (AGR), 2018 WL 7269001, at *4 (C.D. Cal. Dec. 19, 2018), report and recommendation adopted, No. CV 18-1103-AG (AGR), 2019 WL 498512 (C.D. Cal. Feb. 7, 2019) *citing Ingram v. Sacramento Police Dep't,* 2009 WL 2905774, at *6 (E.D. Cal. Sept. 4, 2009).)

Within the prison context, "a viable claim of First Amendment retaliation entails five elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal ." (*Rhodes v. Robinson,* 408 F.3d 559, 567–68 (9th Cir.2005); *accord Brodheim v. Cry,* 584 F.3d 1262, 1269 (9th Cir.2009).) Plaintiff has the burden of showing that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind the defendant's actions, and that the actions advanced no legitimate penological interest. (*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977).)

First, under *Asbury*, Plaintiff does not have a protected right to speak in jail. As such, her claim fails outright. Secondly, there is no evidence that Plaintiff was engaged in constitutionally protected speech when the deputies allegedly told inmates to remain quiet during the cell search. Plaintiff admits that the deputy who allegedly told the

COLLINS & COLLINS LLP
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone  (714) 823-4100
Fax     (714) 823-4101

**DEFENDANTS' MEMO OF P&A ISO MSJ OR PARTIAL MSJ**

inmates to "shut up" was not speaking to Plaintiff personally when the deputy said to "shut up." (Fact 56.) Plaintiff also concedes that she was *personally* not talking at any time when deputies told the cell to "shut up." (Fact 57.) Therefore, Plaintiff was not actually engaged in any sort of protected conduct because she was not personally speaking. Finally, Plaintiff concedes that the cell searches were related to a genuine penological interest – for locating weapons and contraband. (Fact 53-54.) Moreover, like *Whitley* and *Ingram,* officers asking inmates to remain quiet during the searches is permissible to allow for concentration and safety. Thus, Plaintiff's claim fails.

### E.  Individual and Deputy Defendants are Entitled to Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (*Pearson v. Callahan*, 555 U.S. 223, 231 (2009).) Qualified immunity is intended to protect "all but the plainly incompetent or those who knowingly violate the law." (*Malley v Briggs*, 475 U.S. 335, 341 (1986).) This standard turns on the "objective legal reasonableness" of the official's conduct. (*Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982).) Given that qualified immunity is an entitlement not to go to trial, not merely a defense from liability, it should be resolved "at the earliest possible stage in litigation." (*Saucier v. Katz*, 533 U.S. 194, 200-01 (2001); *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).)

An initial inquiry is whether, a constitutional right has been violated. If no such right has been violated, Plaintiff cannot prevail. (*Saucier,* 533 U.S. at 200-01.)[1] "An officer conducting a search is entitled to qualified immunity where clearly established law does not show that the search violated the Fourth Amendment." (*Pearson*, 555 U.S. 223 at 243–44.) If a violation of a constitutional right does or may exist, the court must then consider whether that right was "clearly established." (*Id.*) To establish whether or

---

[1]  It should be noted that *Pearson*, 555 U.S. at 242, receded from the mandatory two-step inquiry in *Saucer*. However, the "decision does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." (*Id.*)

FILE # 22348

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone  (714) 823-4100
Fax      (714) 823-4101

**DEFENDANTS' MEMO OF P&A ISO MSJ OR PARTIAL MSJ**

not the right(s) is "clearly established," the court examines the contours of the right to determine whether or not it was sufficiently clear such that a reasonable officer would understand that what he or she is doing violates that right. (*Id*. at 201, *citing Anderson v Creighton*, 483 U.S. 635, 640 (1987).)

First, as discussed *supra*, there were no constitutional violations pertaining to Plaintiff's claims of overcrowding, sleep deprivation, cold temperatures, lighting, flushing toilets, body searches, lack of hygiene products, and/or cell searches. (Facts 1-57.) As such, because there are no constitutional violations, the Individual and Deputy Defendants are entitled to qualified immunity.

Secondly, there is no evidence that the Individual and Deputy Defendants acted within direct defiance or knowledge that their actions violated clearly established law. First, Individual Defendants were never on-site during Plaintiff's incarceration nor personally involved in her incarceration. (Facts 58-61.) Secondly, the Deputy Defendants, acted in accordance with their training and their knowledge of the law as it pertains. (Fact 63.) To succeed on her claims a section 1983 plaintiff must offer more than general conclusory allegations that the defendants violated some right, law, or constitution provision. (*Backlund v. Burnhart*, 778 F.2d 1386, 1389 (9th Cir. 1985). Plaintiff does not do that. Qualified immunity is appropriate for prison officials who act reasonable considering information available to them at the time of the incident. (*See Alexander v. City of San Francisco*, 29 F.3d 1355, 1363-64 (9th Cir. 1994).) Individual and Deputy Defendants acted reasonably and thus are entitled to qualified immunity.

### F.  Individual Defendants have No Direct Involvement

"To state a claim against an individual official under § 1983, a plaintiff must allege that the official, 'through the official's own individual actions, has violated the Constitution.' (*Ashcroft v. Iqbal*, (2009) 556 U.S. 662, 676.) There is no *respondeat superior* or vicarious liability. (*Id*.) There must be 'a sufficient causal connection' between the supervisor's own conduct and the violation. (*Wesley v. Davis,* 333 F. Supp. 2d 888, 892 (C.D. Cal. 2004*)*.) "A supervisor is only liable for constitutional violations

COLLINS + COLLINS ᴸᴸᴾ
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone  (714) 823-4100
Fax    (714) 823-4101

**DEFENDANTS' MEMO OF P&A ISO MSJ OR PARTIAL MSJ**

of his subordinates if [he] participated in or directed the violations, or knew of the violations and failed to act to prevent them." (*Hunt v. Davis*, 749 Fed. Appx. 552, 524 (9th Cir. Sept. 17, 2018) *citing Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989).) Defendants Don Barnes, William Baker, and Joe Balicki were not at WCJ from August 8, 2019 to August 12, 2019. (Fact 60.) Defendant Mark Stichter may have been at WCJ as part of his usual course of business, but was not involved in the day-to-day of the inmate activities, these were handled by his subordinates, and he too had no contact with Plaintiff. (Fact 61.) Further, Individual Defendants were not involved in Plaintiff's incarceration and did not perform any searches of her. (Fact 59.) They also have no knowledge of Plaintiff, have never encountered her, and lack any knowledge of any alleged misconduct of any jail staff related to her incarceration. (Facts 58, 62.) All claims against the Individual Defendants fail because there is no causal connection.

### G. A Public Entity is Not Liable Solely for Employing a Tortfeasor

Plaintiff's § 1983 claims against the County fail outright since it is well established that a public entity cannot be held liable solely on the basis that it employs a tortfeasor. (*Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 692 (1978).) The County is a public entity. (FAC, ¶ 6.) At the relevant times, Individual Defendants and Deputy Defendants were employed by the County. (FAC, ¶ ) There are no specific allegations against the County and its liability is predicated solely on the conduct of its employees. Thus, Plaintiff's claims 1-5 against the County fail outright.

## V.   PLAINTIFF'S *MONELL* CLAIMS AGAINST THE COUNTY FAIL

### A. Plaintiff cannot Show that she Suffered any Constitutional Violation

As a threshold matter, Plaintiff will not succeed on either claim for *Monell* liability against the County because she has not shown a causal link between the alleged constitutional violation and municipal policy. First, the threshold question in determining whether Plaintiff can establish *Monell* liability is if a constitutional violation occurred. (*Elifritz v. Fender*, 460 F. Supp. 3d 1088, 1117 (D. Or. 2020).) Liability of a public entity only attaches where a municipality itself causes the

*FILE # 22348*

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone   (714) 823-4940
Fax        (714) 823-4101

28

**DEFENDANTS' MEMO OF P&A ISO MSJ OR PARTIAL MSJ**

constitutional violation through a "policy or custom, whether made by its lawmakers or those whose edicts or acts may fairly be said to represent official policy." (*Monell,* 436 U.S. at 694 (1978).) Plaintiff however cannot prove the first element of her *Monell* claims, as per *supra*, that were no constitutional violations. (Facts 1-57.) (*Cotta v. Cty. of Kings*, 79 F. Supp. 3d 1148, 1169 (E.D. Cal. 2015) which held that "Defendants' argument puts the cart before the horse. To establish that the County is liable under *Monell* Plaintiffs must demonstrate that Decedent suffered a constitutional violation that occurred because of Defendants' acts or omissions.) Because she does not establish a constitutional violation, Plaintiff's *Monell* claims fail outright.

## B. <u>Plaintiff Does Not Identify any Custom, Policy, or Practice that amounts to Deliberate Indifference</u>

Even assuming that Plaintiff could establish an underlying constitutional violation, which Defendants disagree with this proposition, Plaintiff cannot prevail on her claims against the County because Plaintiff has not identified, a custom, policy, or practice that amounts to deliberate indifference to Plaintiff's rights. For a municipality to be held liable under Section 1983, a plaintiff must prove "(1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." (*Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992); *Bd. of County Commis. of Bryan County, Okl. v. Brown,* 520 U.S. 397, 404 (1997) which under *Monell,* "it is not enough for a section 1983 plaintiff merely to identify conduct properly attributable to the municipality".) Plaintiff must show that municipal action was taken with requisite degree of culpability and must show a direct causal link between municipal action and deprivation of federal rights. (*Monell,* 436 U.S. at 694.) She must prove "the existence of a widespread practice that ... is so permanent and well settled as to constitute a 'custom or usage' with the force of law." (*Gillette v. Delmore,* 979 F.2d 1342, 1348 (9th Cir.1992) (*quoting City of St. Louis v. Praprotnik,* 485 U.S. 112,127 (1988).)

*FILE # 22348*

**DEFENDANTS' MEMO OF P&A ISO MSJ OR PARTIAL MSJ**

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone   (714) 823-4100
Fax      (714) 823-4101

Plaintiff alleges that the County, with deliberate indifference applied unconstitutional practices that amounted to "the denial of life necessities, overcrowding condition, limited hygienic supplies, and the use of strip searches and harassing cell search." (FAC, ¶102.) Apart from conclusory statements, Plaintiff does not provide any admissible evidence or identify any specific policies which may have caused her harm. Moreover, contrary to Plaintiff's assertions, the undisputed facts show that the County had staff trained on the policies and procedures to help ensure that Plaintiff's civil rights were not violated, including policies to combat unfair body or cell searches, overcrowding, excessive noise, providing inmates with adequate lighting, space, recreational opportunities, and hygienic supplies. (Facts 1-57.) Thus, Plaintiff's seventh claim against the County fails.

## C. Individual and Deputy Defendants were Adequately Trained and Supervised

To prevail on a failure to train claim under *Monell* against the County, Plaintiff must show (1) an inadequate training program, (2) deliberate indifference on the part of the County in adequately training its employees, and (3) that the inadequate training "actually caused" a deprivation of constitutional rights. (*See Merritt v. County of L.A,*. 875 F.2d 765, 770 (9th Cir. 1989).) Evidence of the failure to train a single employee is insufficient to establish a municipality's deliberate policy. (*Blankenhorn v. City of Orange,* 485 F.3d 463, 484 (9th Cir. 2007).)

Here, the Individual and Deputy Defendants were adequately trained and supervised. Individual Defendants and Deputy Defendants were trained on the policies related to overcrowding, sleep deprivation, cold temperatures, sound and light, body searches, hygiene products, and/or cell searches. (Fact 65.) The Deputy Defendants are also supervised by trained staff while on duty. (Fact 67.) Moreover, the Deputy Defendants at all times relevant to this suit acted in accordance with their training. (Fact 66.) Therefore, Plaintiff cannot show that failure to train or supervise actually caused a deprivation of her constitutional rights. Thus, Plaintiff's claims against the County fail.

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone  (714) 823-4100
Fax    (714) 823-4101

## VI.   PLAINTIFF'S STATE LAW CAUSES OF ACTION FAIL

### A. Cal. Constitutional Causes of Action are Equivalent to Federal Analysis

"The Fourteenth Amendment's guarantee of equal protection and the California Constitution's protection of the same right… are substantially equivalent and are analyzed in a similar fashion." (*Landau v. Superior Ct.,* 81 Cal. App. 4th 191, 207 (1998).) Thus, for all constitutional violations raised in Plaintiff's FAC, California precedent mirrors the Federal findings. (*See People v. Collins*, 115 Cal. App. 4th 137, 154 (2004), which held that a body search after certain activities such as a visit to the law library, infirmary, exercise room, or outside of prison was reasonable and permissible; *People v. Zepeda*, 87 Cal. App. 4th 1183, 1193 (2001), holding that the Fourth Amendment protection does not apply to a jail cell and random searches are permissible; *Bailey v. Loggins*, 32 Cal. 3d 907, 918 (1982), which held that prison officials can limit first amendment rights, including speech or association, when it relates to the penological objectives of the institution; *People v. Baker*, 88 Cal. App. 3d 115, 123 (Ct. App. 1978), which held that "[i]t is settled law that a prisoner does not have the right to privacy guaranteed to nonincarcerated citizens." For the same reasons discussed, *supra*, (Facts 1-57) Plaintiff's violations of the California Constitution fail.

### B. Individual Defendants are not Liable for Negligent Supervision/Training/ Hiring, and It is Barred against the County as it is not based on Statute

Plaintiff offers no evidence that the Deputy Defendants were improperly trained, hired, or supervised by the Individual Defendants. It therefore fails against the Individual Defendants. "Negligence liability will be imposed upon the employer if it "knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes." (*Delfino v. Agilent Techs., Inc.,* 145 Cal. App. 4th 790, 815 (2006).) Deputy Defendants were properly trained (Fact 65), regularly supervised (Fact 67), acted in accordance with their training (Fact 68), and Individual Defendants had no reason to believe that Deputy Defendants were unfit or created a particular risk related to body or cell searches. (Fact 71.)

*FILE # 22348*

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone  (714) 823-4940
Fax     (714) 823-4101

31

**DEFENDANTS' MEMO OF P&A ISO MSJ OR PARTIAL MSJ**

Further, as to the County, summary judgment is appropriate because Plaintiff's 15th cause of action is not based upon statute. The California Tort Claims Act provides that "[a] public entity is not liable for an injury," "[e]xcept as otherwise provided by statute." (*Eastburn v. Regional Fire Protection Authority,* 31 Cal. 4th 1175, 1179 (2003); Gov. Code § 815(a).) "[A] direct claim against a governmental entity asserting negligent hiring and supervision, when not grounded in the breach of a statutorily imposed duty owed by the entity to the injured party, may not be maintained. (*de Villers v. Cty. of San Diego*, 156 Cal. App. 4th 238, 255–56 (2007).) "Liability for negligent supervision and/or retention of an employee is one of direct liability for negligence, not vicarious liability." (*Delfino*, 145 Cal.App.4th at 815.) Plaintiff cannot assert a general negligence cause of action against the County since it is not provided by statute and cannot be based upon vicarious liability.

### C. <u>Penal Code section 4030 Fails against Individual Defendants</u>

Penal Code section 4030 limits the scope of strip searches regarding misdemeanor pre-trial detainees. Plaintiff's claim that the Individual Defendants violated Penal Code section 4030 fails outright because no Individual Defendants were involved with or conducted any search of Plaintiff at any time (Fact 59) and no Individual Defendant had contact with Plaintiff during her incarceration (Fact 61). Moreover, Plaintiff was never subjected to a strip search but an Extended Correctional Search or body search. (Facts 40-42.) Finally, her claim fails because section 4030 only applies to searches conducted on a misdemeanor arrestee *prior* to placement in general population. (Pen. Code § 4030(e).) Section 4030, by its plain language does not prohibit strip searches once a misdemeanor arrestee has been placed in general population. Here, Plaintiff was placed in general population and all searches were conducted concurrent with or after she was so placed. (Facts 39, 43-44). Thus, her cause of action fails.

### D. <u>Plaintiff's Claim for IIED Fails Against all Defendants</u>

A claim for intentional infliction of emotional distress ("IIED") requires: (1) extreme and outrageous conduct by the defendant; (2) the plaintiff suffered severe

**COLLINS + COLLINS** LLP
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone   (714) 823-4100
Fax       (714) 823-4101

emotional distress; and (3) the defendant's extreme and outrageous conduct was the actual and proximate cause of the severe emotional distress. (*Crouch v. Trinity Christian Center of Santa Ana, Inc.*, 39 Cal.App.5th 995, 1007 (2019).) A defendant must have engaged in conduct *intended to inflict injury* or engaged in with the realization that injury will result." (*Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993).) The element of extreme and outrageous conduct is rigorous and difficult to satisfy. (*Okorie v. Los Angeles Unified School Dist.,* 14 Cal.App.5th 574, 597 (2017).) "A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.' And the defendant's conduct must be 'intended to inflict injury or engaged in with the realization that injury will result.' " (*Hughes v. Pair*, 46 Cal.4th 1035, 1050-1051(2009).)

First, the County is immune from liability as public entities are generally immune from liability for IIED. (*Wright v. State of California* 122 Cal.App.4th 659, 672 (2001).) Secondly, the Individual Defendants cannot be liable for IIED because they did not have any personal contact with Plaintiff during her 4-day incarceration at WCJ. (Facts 59-61.) As to the Deputy Defendants, their conduct does not amount to extreme and outrageous conduct as they merely carried out a routine, random cell search. (Facts 52, 70.) This search was not limited to Plaintiff but applied to all inmates housed in Module G at the time. (*Id*.) The Deputy Defendants did not act with intent to harm or cause Plaintiff distress and were just doing their jobs. (Fact 72.) Finally, there is no direct causation as Plaintiff has not suffered extreme emotional distress; she admits that she suffered similar injuries alleged herein before being incarcerated (Fact 73) and has alleged identical injuries in several other lawsuits unrelated to this incarceration (Fact 74.) Thus, her cause of action fails against all Defendants.

### E.  Deputy Defendants are Immune under Government Code § 820.2

The Deputy Defendants are immune from liability against all Plaintiff's state causes of action under Government Code section 820.2. Section 820.2 recognizes the exercise of discretion and provides the breathing room necessary for government

**COLLINS + COLLINS** LLP
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone   (714) 823-4100
Fax      (714) 823-4101

officials to do their job. Under such, no public employee is liable for injuries resulting from discretionary acts within the scope of employment—even if that discretion is abused. (*Holland v. City of San Francisco*, 2010 WL 5071597, at *11-12 holding defendant sheriff immune from liability under state law under Section 820.2 where the plaintiff did not allege that the sheriff had any role in the body search.) "The decision, requiring as it does, comparisons, choices, judgments, and evaluations, comprises the very essence of the exercise of "discretion" and... such decisions are immunized under section 820.2." (*Thompson v. Cty. of Alameda*, 27 Cal. 3d 741, 749, 614 P.2d 728, 732 (1980).) Here, the Deputy Defendants are immune from liability because the actions which form the basis of Plaintiff's FAC (cell searches) stem from the discretionary acts they, as government employees and jail staff, are authorized to make. (Fact 69.) As part of that discretionary duty, jail staff select tanks at random to search for contraband, unless there is reasonable suspicion to select a specific tank. (Fact 70.) Plaintiff's cell during her incarceration happened to be selected for a FAST search. (Fact 52.) Other than being inconvenienced from the search she has no real injuries as a result. The Deputy Defendants followed WCJ policy during the cell search, which is under their scope of employment. (Facts 68-69.) As to the speech claims, Plaintiff's rights were not personally violated because she was not speaking nor told specifically to be quiet. (Facts 56-57.) Thus, Deputy Defendants are immune from all state causes of action.

**F.  Individual and Deputy Defendants are Immune per Gov. Code § 820.8**

The Individual and Deputy Defendants cannot be liable for the acts of other employees, including their subordinates under Government Code section 820.8. (*See Weaver v. State of Cal.*, 63 Cal. App. 4th 188, 202 (1998) (holding CHP commissioner immune from liability based on the acts of his subordinates pursuant to Government Code § 820.8.) Here, the Individual Defendant cannot be liable for their subordinates, the Deputy Defendants, for the actions taken at WCJ. Moreover, the Deputy Defendants cannot be liable for actions taken by their colleagues. Thus, Individual and Deputy Defendants are entitled to immunity under California Government Code section 820.8.

COLLINS+COLLINS LLP
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone   (714) 823-4940
Fax   (714) 823-4101

### G. **The County is Immune from all State Causes of Action**

The County is immune from liability pursuant to Government Code sections 815.2(b) and 844.6. Government Code section 815.2(b) states that a public entity is not liable when its employee(s) are also immune. Government Code section 844.6 states that a public entity is not liable for an injury to a prisoner, including pretrial detainees. (Gov't. Code §§ 844, 844.6; *Teter v. City of Newport Beach*, 30 Cal. 4th 446, 449, holding that the City was entitled to immunity for pretrial detainee's claims; *Cabral v. Cty. of Glenn*, 624 F. Supp. 2d 1184 (E.D. Cal. 2009) which held that the City was immune under § 844.6 against pretrial detainee's claims).

Here, the County is a public entity. (FAC, ¶ 6.) Plaintiff was a pretrial detainee who is now claiming injuries. (Fact 75.) As established herein and above, the Individual and Deputy Defendants are immune from liability, thus the County has no liability, and given the statute's plain terms is entitled to immunity against all of Plaintiff's state law causes of action (nos. 9-15, 17).

## VII.  **CONCLUSION**

Defendants respectfully request that this Court grant its Motion for Summary Judgment, or in the alternative, Partial Summary Judgment, in full and enter judgment in favor of Defendants as there is no triable issue of any material fact.

DATED:  May 13, 2022                          COLLINS + COLLINS LLP


By: _____
    REBECCA J. CHMURA
    MICHAEL L. WRONIAK
    Attorneys for Defendants COUNTY OF
    ORANGE; DON BARNES; WILLIAM
    BAKER; JOE BALICKI; MARK
    STICHTER; REYNA RIVERA;
    DEVONNA FALCONER; KASSANDRA
    MAYER; ELIA RODRIGUEZ; RACHEL
    ADDINGTON

*FILE # 22348*

**DEFENDANTS' MEMO OF P&A ISO MSJ OR PARTIAL MSJ**

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone  (714) 823-4100
Fax     (714) 823-4101