JANE DOE

█████████████████████

Plaintiff in Pro Se

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JANE DOE, | No. 8:20-cv-00322- JWH -GJS |
| Plaintiff, | |
| v. | **PLAINTIFF'S RESPONSES TO DEFENDANT DEVONNA FALCONER'S REQUESTS FOR ADMISSION, SET ONE** |
| COUNTY OF ORANGE, et al | |
| Defendants. | |

| Propounding Party | : | DEVONNA FALCONER ("Defendant" or "FALCONER") |
|---|---|---|
| Responding Party | : | JANE DOE ("Plaintiff") |
| Set No. | : | One (1) |

Plaintiff, pursuant to Rules 33 of the Federal Rules of Civil Procedure and the Local Rules of this Court, responds and objects to Defendant DEVONNA FALCONER's First Set of REQUESTS FOR ADMISSION as follows:

**PRELIMINARY STATEMENT**

1.  The following responses are made solely for the purpose of this action. Plaintiff's investigation and development of all facts and circumstances relating to this action is ongoing. At this time, Plaintiff has not yet fully completed her investigation of the facts related to this action, and has not yet fully completed her discovery in this action, and consequently has not yet fully completed her preparation for trial.

2.  The following responses are based only upon information, materials, and documents that

1

1   are currently available to and specifically known by Plaintiff.

2       3.  It is anticipated that further discovery, independent investigation, legal research, and

3   analysis will supply additional facts and add meaning to known facts, as well as established

4   entirely new factual conclusion and legal contentions, all of which may lead to substantial

5   additions to, changes in, and variation from the contentions herein set forth.

6       4.  The following responses are given without prejudice to the right to produce at trial any

7   and all subsequently-discovered evidence relating to the proof of presently known material facts,

8   if any, and to produce all evidence, whenever discovered, relating to the proof of subsequently

9   discovered material facts. These responses and objections are made without prejudice to, and are

10  not a waiver of, Plaintiff's right to rely on other facts or documents at trial.

11      5.  Plaintiff expressly reserves the right to supplement, clarify, revise, or correct any or all of

12  the responses and objections herein, and to assert additional objections or privileges, in one or

13  more subsequent supplemental response(s).

14      6.  Except for explicit facts submitted herein, no admissions of any nature whatsoever are

15  implied nor should they be inferred. The fact that Plaintiff has responded to any Request for

16  Admission should not be taken as an admission or acceptance of the existence of any fact or facts

17  set forth or assumed by any interrogatory, or that such answer constitutes admissible evidence.

18      7.  This Preliminary Statement is, by this reference, incorporated into each and every one of

19  the following Responses to these interrogatories.

20              **PLAINTIFF'S RESPONSES TO REQUESTS FOR ADMISSION**

21  **RFA NO. 1**

22      Admit that prior to YOUR INCARCERATION at WCJ YOU suffered from PTSD.

23  **RESPONSE TO RFA NO. 1**

24      Objection. This request is overbroad as to time and scope because it seeks information since

25  Plaintiff was born. It is also an invasion of Plaintiff's right to privacy. This request requires

26  improper adoption of an assumption. It is used to cause unwarranted annoyance, embarrassment,

27  or oppression. This request seeks premature disclosure of expert opinion in violation of Code of

28  Civil Procedure sections 2034.210, 2034.220, and 2034.270. Responding Party further objects on

1    the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible

2    evidence. Subject to and without waiving these objections Responding Party responds as follows:

3    Admit to the extent that at some point since Plaintiff was born until prior to her incarceration at

4    WCJ she suffered from PTSD.

5    **RFA NO. 2**

6         Admit that prior to YOUR INCARCERATION at WCJ YOU suffered from anxiety.

7    **RESPONSE TO RFA NO. 2**

8         Objection. This request is overbroad as to time and scope because it seeks information since

9    Plaintiff was born. It is also an invasion of Plaintiff's right to privacy. This request requires

10   improper adoption of an assumption. It is used to cause unwarranted annoyance, embarrassment,

11   or oppression. This request seeks premature disclosure of expert opinion in violation of Code of

12   Civil Procedure sections 2034.210, 2034.220, and 2034.270. Responding Party further objects on

13   the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible

14   evidence. Subject to and without waiving these objections Responding Party responds as follows:

15   Admit to the extent that at some point since Plaintiff was born until prior to her incarceration at

16   WCJ she suffered from anxiety.

17   **RFA NO. 3**

18        Admit that prior to YOUR INCARCERATION at WCJ YOU suffered from depression.

19   **RESPONSE TO RFA NO. 3**

20        Objection. This request is overbroad as to time and scope because it seeks information since

21   Plaintiff was born. It is also an invasion of Plaintiff's right to privacy. This request requires

22   improper adoption of an assumption. It is used to cause unwarranted annoyance, embarrassment,

23   or oppression. This request seeks premature disclosure of expert opinion in violation of Code of

24   Civil Procedure sections 2034.210, 2034.220, and 2034.270. Responding Party further objects on

25   the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible

26   evidence. Subject to and without waiving these objections Responding Party responds as follows:

27   Admit to the extent that at some point since Plaintiff was born until prior to her incarceration at

28   WCJ she suffered from depression.

**DEFTS. MSJ B 109**

1   **RFA NO. 4**

2       Admit that prior to YOUR INCARCERATION at WCJ YOU suffered from social

3   withdrawl.

4   **RESPONSE TO RFA NO. 4**

5       Objection. This request is overbroad as to time and scope because it seeks information since

6   Plaintiff was born. It is also an invasion of Plaintiff's right to privacy. This request requires

7   improper adoption of an assumption. It is used to cause unwarranted annoyance, embarrassment,

8   or oppression. This request seeks premature disclosure of expert opinion in violation of Code of

9   Civil Procedure sections 2034.210, 2034.220, and 2034.270. Responding Party further objects on

10  the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible

11  evidence. Subject to and without waiving these objections Responding Party responds as follows:

12  Admit to the extent that at some point since Plaintiff was born until prior to her incarceration at

13  WCJ she suffered from social withdrawl.

14  **RFA NO. 5**

15      Admit that prior to YOUR INCARCERATION at WCJ YOU suffered from paranoia.

16  **RESPONSE TO RFA NO. 5**

17      Objection. This request is overbroad as to time and scope because it seeks information since

18  Plaintiff was born. It is also an invasion of Plaintiff's right to privacy. This request requires

19  improper adoption of an assumption. It is used to cause unwarranted annoyance, embarrassment,

20  or oppression. This request seeks premature disclosure of expert opinion in violation of Code of

21  Civil Procedure sections 2034.210, 2034.220, and 2034.270. Responding Party further objects on

22  the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible

23  evidence. Subject to and without waiving these objections Responding Party responds as follows:

24  Admit to the extent that at some point since Plaintiff was born until prior to her incarceration at

25  WCJ she suffered from paranoia.

26  **RFA NO. 6**

27      Admit that prior to YOUR INCARCERATION at WCJ YOU suffered from suicidal

28  ideation.

1    **RESPONSE TO RFA NO. 6**

2        Objection. This request is overbroad as to time and scope because it seeks information since

3    Plaintiff was born. It is also an invasion of Plaintiff's right to privacy. This request requires

4    improper adoption of an assumption. It is used to cause unwarranted annoyance, embarrassment,

5    or oppression. This request seeks premature disclosure of expert opinion in violation of Code of

6    Civil Procedure sections 2034.210, 2034.220, and 2034.270. Responding Party further objects on

7    the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible

8    evidence. Subject to and without waiving these objections Responding Party responds as follows:

9    Deny.

10   **RFA NO. 7**

11       Admit that prior to YOUR INCARCERATION at WCJ YOU suffered from mental illness.

12   **RESPONSE TO RFA NO. 7**

13       Objection. This request is overbroad as to time and scope because it seeks information since

14   Plaintiff was born. It is also an invasion of Plaintiff's right to privacy. This request requires

15   improper adoption of an assumption. It is used to cause unwarranted annoyance, embarrassment,

16   or oppression. This request seeks premature disclosure of expert opinion in violation of Code of

17   Civil Procedure sections 2034.210, 2034.220, and 2034.270. Responding Party further objects on

18   the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible

19   evidence. Subject to and without waiving these objections Responding Party responds as follows:

20   Admit to the extent that at some point since Plaintiff was born until prior to her incarceration at

21   WCJ she suffered from mental illness.

22   **RFA NO. 8**

23       Admit that prior to YOUR INCARCERATION at WCJ YOU suffered from dysfunctional

24   or irregular menstrual bleeding/cycles.

25   **RESPONSE TO RFA NO. 8**

26       Objection. This request is overbroad as to time and scope because it seeks information since

27   Plaintiff was born. It is also an invasion of Plaintiff's right to privacy. This request requires

28   improper adoption of an assumption. It is used to cause unwarranted annoyance, embarrassment,

1   or oppression. This request seeks premature disclosure of expert opinion in violation of Code of

2   Civil Procedure sections 2034.210, 2034.220, and 2034.270. Responding Party further objects on

3   the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible

4   evidence. Subject to and without waiving these objections Responding Party responds as follows:

5   Deny.

6   **RFA NO. 9**

7       Admit that YOU remained in YOUR bra and underwear during all alleged cell searches

8   which occurred while YOU were INCARCERATED at WCJ.

9   **RESPONSE TO RFA NO. 9**

10      Objection. This request is overbroad as to time and scope. This request requires improper

11  adoption of an assumption. Subject to and without waiving these objections Responding Party

12  responds as follows: Admit.

13  **RFA NO. 10**

14      Admit that YOU were never fully naked during any alleged cell searches which occurred

15  while YOU were INCARCERATED at WCJ.

16  **RESPONSE TO RFA NO. 10**

17      Objection. This request is overbroad as to time and scope. This request requires improper

18  adoption of an assumption. Subject to and without waiving these objections Responding Party

19  responds as follows: Admit.

20  **RFA NO. 11**

21      Admit that YOUR genital areas were never fully exposed during any alleged cell searches

22  which occurred while YOU were INCARCERATED at WCJ.

23  **RESPONSE TO RFA NO. 11**

24      Objection. This request is overbroad as to time and scope. It requires improper adoption of

25  an assumption. Subject to and without waiving these objections Responding Party responds as

26  follows: Admit.

27  **RFA NO. 12**

28      Admit that YOUR genital areas were never touched by any PERSON during any alleged

**DEFTS. MSJ B 112**

1    cell searches which occurred while YOU were INCARCERATED at WCJ.

2    **RESPONSE TO RFA NO. 12**

3    Objection. This request is overbroad as to time and scope. It requires improper adoption of

4    an assumption. Subject to and without waiving these objections Responding Party responds as

5    follows: Admit.

6    **RFA NO. 13**

7    Admit that all alleged cell searches during YOUR INCARCERATION at WCJ were

8    conducted by female deputies.

9    **RESPONSE TO RFA NO. 13**

10   Objection. This request is overbroad as to time and scope. It requires improper adoption of

11   an assumption. Responding Party further objects on the basis of relevance in that it is not

12   reasonably calculated to lead to the discovery of admissible evidence. Subject to and without

13   waiving these objections Responding Party responds as follows: Admit.

14   **RFA NO. 14**

15   Admit that all alleged cell searches during YOUR INCARCERATION at WCJ were

16   conducted in small groups with other female inmates.

17   **RESPONSE TO RFA NO. 14**

18   Objection. This request is vague and ambiguous as to the term "in small groups." It requires

19   improper adoption of an assumption. Responding Party further objects on the basis of relevance

20   in that it is not reasonably calculated to lead to the discovery of admissible evidence. Subject to

21   and without waiving these objections Responding Party responds as follows: Admit in part and

22   deny in part. Admit that strip searches at WCJ during Plaintiff's incarceration were conducted in

23   groups with other female inmates and deny that they were conducted in small groups.

24   **RFA NO. 15**

25   Admit that during YOUR INCARCERATION at WCJ the inmates were allowed to talk to

26   each other in the dayroom.

27   **RESPONSE TO RFA NO. 15**

28   Objection. This request is overbroad as to time and scope. It requires improper adoption of

1    an assumption. Subject to and without waiving these objections Responding Party responds as

2    follows: Admit in part and deny in part. Admit that in some occasions WCJ the inmates were

3    allowed to talk to each other in the dayroom and deny that WCJ the inmates were always allowed

4    to talk to each other in the dayroom.

5  **RFA NO. 16**

6      Admit that during YOUR INCARCERATION at WCJ the dayroom was available for use

7    from 6:00 a.m. to 11:00 p.m.

8  **RESPONSE TO RFA NO. 16**

9      Objection. This request requires improper adoption of an assumption. Responding Party

10    further objects on the basis of relevance in that it is not reasonably calculated to lead to the

11    discovery of admissible evidence. Subject to and without waiving these objections Responding

12    Party responds as follows: Responding Party has made reasonable inquiry and the information she

13    knows or can readily obtain is insufficient to enable her to admit or deny. Plaintiff has no

14    personal knowledge from what time to what time WCJ dayroom was available for use.

15  **RFA NO. 17**

16      Admit that during YOUR INCARCERATION at WCJ phone service was available for use

17    from 6:00 a.m. to 11:00 p.m.

18  **RESPONSE TO RFA NO. 17**

19      Objection. This request requires improper adoption of an assumption. Responding Party

20    further objects on the basis of relevance in that it is not reasonably calculated to lead to the

21    discovery of admissible evidence. Subject to and without waiving these objections Responding

22    Party responds as follows: Responding Party has made reasonable inquiry and the information she

23    knows or can readily obtain is insufficient to enable her to admit or deny. Plaintiff has no

24    personal knowledge from what time to what time WCJ phone service was available for use.

25

26      I declare under penalty of perjury under the laws of the United States that the foregoing

27    answers are true and correct.

28      Dated: April 1, 2022

PLAINTIFF'S RESPONSES TO DEFENDANT FALCONER'S RFAS (SET 1)

**DEFTS. MSJ B 114**

1    Respectfully submitted.

2

3

4                                                        JANE DOE, Plaintiff in Pro Se

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S RESPONSES TO DEFENDANT FALCONER'S RFAS (SET 1)

**DEFTS. MSJ B 115**

1

**CERTIFICATE OF SERVICE**

2

3        I, JANE DOE, declare and say as follows:

4        I am over the age of eighteen years of age and am a party to this action. I reside in the

5    County of Los Angeles, State of California. My business address is

6                                          n said county and state. My electronic serve address is

7

8        On April 1, 2022 I electronically served the following document(s):

9        Plaintiff's Responses to Defendant FALCONER's REQUESTS FOR ADMISSION (Set 1)

10       Name of person served: Rebecca J. Chmura, Michael L. Wroniak, Justin M. Hazelton, Legal

11   Assistant Services

12       On behalf of: COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE

13   STICHTER; MARK STICHTER; REYNA RIVERA; DEVONNA FALCONER; KASSANDRA

14   MAYER; ELIA RODRIGUEZ; and RACHEL ADDINGTON

15       Electronic service address of person served: rchmura@ccmslaw.com,

16   mwroniak@ccmslaw.com, JHazelton@ccmslaw.com, legalservices@ccmslaw.com.

17

18       Dated: April 1, 2022

19

20

21                                          JANE DOE

22                                          Plaintiff in Pro Se

23

24

25

26

27

28

10

1  JANE DOE

2

3

4  Plaintiff in Pro Se

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11  JANE DOE,                              No. 8:20-cv-00322- JWH-GJS

12              Plaintiff,

13        v.                               **PLAINTIFF'S RESPONSES TO**
                                           **DEFENDANT JOE BALICKI'S FIRST SET**
14  COUNTY OF ORANGE, et al                **OF REQUESTS FOR ADMISSION**

15              Defendants.

16

17     Propounding Party      :    JOE BALICKI ("Defendant")
       Responding Party       :    JANE DOE ("Plaintiff")
18     Set No.                 :    One (1)

19        Plaintiff, pursuant to Rules 33 of the Federal Rules of Civil Procedure and the Local Rules

20  of this Court, responds and objects to Defendant JOE BALICKI's ("BALICKI") First Set of

21  REQUESTS FOR ADMISSION as follows:

22                         **PRELIMINARY STATEMENT**

23     1.  The following responses are made solely for the purpose of this action. Plaintiff's

24  investigation and development of all facts and circumstances relating to this action is ongoing. At

25  this time, Plaintiff has not yet fully completed her investigation of the facts related to this action,

26  and has not yet fully completed her discovery in this action, and consequently has not yet fully

27  completed her preparation for trial.

28     2.  The following responses are based only upon information, materials, and documents that

                                           1

1   are currently available to and specifically known by Plaintiff.

2       3.   It is anticipated that further discovery, independent investigation, legal research, and

3   analysis will supply additional facts and add meaning to known facts, as well as established

4   entirely new factual conclusion and legal contentions, all of which may lead to substantial

5   additions to, changes in, and variation from the contentions herein set forth.

6       4.   The following responses are given without prejudice to the right to produce at trial any

7   and all subsequently-discovered evidence relating to the proof of presently known material facts,

8   if any, and to produce all evidence, whenever discovered, relating to the proof of subsequently

9   discovered material facts. These responses and objections are made without prejudice to, and are

10  not a waiver of, Plaintiff's right to rely on other facts or documents at trial.

11      5.   Plaintiff expressly reserves the right to supplement, clarify, revise, or correct any or all of

12  the responses and objections herein, and to assert additional objections or privileges, in one or

13  more subsequent supplemental response(s).

14      6.   Except for explicit facts submitted herein, no admissions of any nature whatsoever are

15  implied nor should they be inferred. The fact that Plaintiff has responded to any Request for

16  Admission should not be taken as an admission or acceptance of the existence of any fact or facts

17  set forth or assumed by any interrogatory, or that such answer constitutes admissible evidence.

18      7.   This Preliminary Statement is, by this reference, incorporated into each and every one of

19  the following Responses to these interrogatories.

20                          **PLAINTIFF'S RESPONSES TO RFAS**

21  **RFA NO. 1**

22       Admit that YOU had issues sleeping prior to YOUR INCARCERATION at WCJ.

23  **RESPONSE TO RFA NO. 1**

24       Objection. This request is overbroad as to time and scope as it seeks information since

25  Plaintiff was born. It is also an invasion of Plaintiff's right to privacy. This request requires

26  improper adoption of an assumption. It is used to cause unwarranted annoyance, embarrassment,

27  or oppression. This request seeks premature disclosure of expert opinion in violation of Code of

28  Civil Procedure sections 2034.210, 2034.220, and 2034.270. Responding Party further objects on

DEFTS. MSJ B 118

the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible

evidence. Subject to and without waiving these objections Responding Party responds as follows:

Admit to the extent that at some point since Plaintiff was born until prior to her incarceration at

WCJ she had issues sleeping.

**RFA NO. 2**

Admit that YOU were able to sleep during YOUR INCARCERATION at WCJ.

**RESPONSE TO RFA NO. 2**

Objection. This request is overbroad as to time and scope. It is also an invasion of Plaintiff's

right to privacy. This request requires improper adoption of an assumption. It is used to cause

unwarranted annoyance, embarrassment, or oppression. This request seeks premature disclosure

of expert opinion in violation of Code of Civil Procedure sections 2034.210, 2034.220, and

2034.270. Responding Party further objects on the basis of relevance in that it is not reasonably

calculated to lead to the discovery of admissible evidence. Subject to and without waiving these

objections Responding Party responds as follows: Admit in part and deny in part. Admit that

Responding Party was able to have little sleep during incarceration at WCJ and deny that she was

able to sleep as much as needed or whenever she needed at WCJ.

**RFA NO. 3**

Admit that YOU saw other inmates sleeping during YOUR INCARCERATION at WCJ.

**RESPONSE TO RFA NO. 3**

Objection. This request requires improper adoption of an assumption. Responding Party

further objects on the basis of relevance in that it is not reasonably calculated to lead to the

discovery of admissible evidence. Subject to and without waiving these objections Responding

Party responds as follows: Responding Party is unable to admit or deny because she saw other

inmates lying in bed but she did not know whether they were actually asleep.

**RFA NO. 4**

Admit that YOU remained in YOUR bra and underwear during all alleged "strip searches"

which occurred while YOU were INCARCERATED at WCJ.

**RESPONSE TO RFA NO. 4**

3

DEFTS. MSJ B 119

1  Objection. This request is overbroad as to time and scope. This request requires improper

2  adoption of an assumption. Subject to and without waiving these objections Responding Party

3  responds as follows: Deny. During the first strip search Plaintiff was not wearing a bra and was

4  ordered to wear a bra in the view and presence of OCSD personnel and other inmates without

5  giving a chance to use the bathroom.

6  **RFA NO. 5**

7  Admit that YOU were never fully naked during any alleged "strip searches" which occurred

8  while YOU were INCARCERATED at WCJ.

9  **RESPONSE TO RFA NO. 5**

10  Objection. This request is overbroad as to time and scope. This request requires improper

11  adoption of an assumption. Subject to and without waiving these objections Responding Party

12  responds as follows: Deny. During the first strip search Plaintiff was not wearing a bra and was

13  ordered to wear a bra in the view and presence of OCSD personnel and other inmates without

14  giving a chance to use the bathroom.

15  **RFA NO. 6**

16  Admit that YOUR genital areas were never fully exposed during any alleged "strip

17  searches" which occurred while YOU were INCARCERATED at WCJ.

18  **RESPONSE TO RFA NO. 6**

19  Objection. This request is overbroad as to time and scope. It requires improper adoption of

20  an assumption. Subject to and without waiving these objections Responding Party responds as

21  follows: Admit.

22  **RFA NO. 7**

23  Admit that YOUR genital areas were never touched by any PERSON during any alleged

24  "strip searches" which occurred while YOU were INCARCERATED at WCJ.

25  **RESPONSE TO RFA NO. 7**

26  Objection. This request is overbroad as to time and scope. It requires improper adoption of

27  an assumption. Subject to and without waiving these objections Responding Party responds as

28  follows: Admit.

4

**RFA NO. 8**

Admit that all alleged "strip searches" during YOUR INCARCERATION at WCJ were conducted by female deputies.

**RESPONSE TO RFA NO. 8**

Objection. This request is overbroad as to time and scope. It requires improper adoption of an assumption. Responding Party further objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections Responding Party responds as follows: Admit.

**RFA NO. 9**

Admit that YOU went to the patio on the roof during YOUR INCARCERATION at WCJ.

**RESPONSE TO RFA NO. 9**

Objection. This request requires improper adoption of an assumption. Responding Party further objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections Responding Party responds as follows: Admit to the extent that Plaintiff went to the patio on the roof for only one time during a four-day INCARCERATION at WCJ.

I declare under penalty of perjury under the laws of the United States that the foregoing answers are true and correct.

Dated: April 1, 2022

Respectfully submitted.

JANE DOE, Plaintiff in Pro Se

1 | **CERTIFICATE OF SERVICE**

2

3 | I, JANE DOE, declare and say as follows:

4 | I am over the age of eighteen years of age and am a party to this action. I reside in the

5 | County of Los Angeles, State of California. My business address is

6 | in said county and state. My electronic serve address is

7 | .

8 | On April 1, 2022 I electronically served the following document(s):

9 | Plaintiff's Responses and Objections to Defendant BALICKI's RFAs (Set 1)

10 | Name of person served: Rebecca J. Chmura, Michael L. Wroniak, Justin M. Hazelton, Legal

11 | Assistant Services

12 | On behalf of: COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE

13 | STICHTER; MARK STICHTER; REYNA RIVERA; DEVONNA FALCONER; KASSANDRA

14 | MAYER; ELIA RODRIGUEZ; and RACHEL ADDINGTON

15 | Electronic service address of person served: rchmura@ccmslaw.com,

16 | mwroniak@ccmslaw.com, JHazelton@ccmslaw.com, legalservices@ccmslaw.com.

17

18 | Dated: April 1, 2022

19

20

21 | JANE DOE

22 | Plaintiff in Pro Se

6

PLAINTIFF'S RESPONSES TO DEFENDANT JOE BALICKI'S RFAS (SET 1) **DEFTS. MSJ B 122**

1   JANE DOE

2

3

4

5   Plaintiff in Pro Se

6

7

8                 **UNITED STATES DISTRICT COURT**

9                 **CENTRAL DISTRICT OF CALIFORNIA**

10

11  JANE DOE,                                  No. 8:20-cv-00322-ODW-GJS

12              Plaintiff,

13      v.                                     **PLAINTIFF'S RESPONSES TO
                                               DEFENDANT RACHEL ADDINGTON'S**
14  COUNTY OF ORANGE, et al                    **FIRST SET OF  INTERROGATORIES**

15              Defendants.

16

17      Propounding Party    :    RACHEL        ADDINGTON      ("Defendant"   or
        "ADDINGTON")

18      Responding Party     :    JANE DOE ("Plaintiff")
        Set No.              :    One (1)
19
        Plaintiff, pursuant to Rules 33 of the Federal Rules of Civil Procedure and the Local Rules
20
    of this Court, responds and objects to Defendant RACHEL ADDINGTON's First Set of
21
    Interrogatories as follows:
22
                           **PRELIMINARY STATEMENT**
23
    1.  The following responses are made solely for the purpose of this action. Plaintiff's
24
    investigation and development of all facts and circumstances relating to this action is ongoing. At
25
    this time, Plaintiff has not yet fully completed her investigation of the facts related to this action,
26
    and has not yet fully completed her discovery in this action, and consequently has not yet fully
27
    completed her preparation for trial.
28

                                            1
    PLAINTIFF'S RESPONSES TO DEFENDANT ADDINGTON'S INTERROGATORIES (SET 1)

1       2. The following responses are based only upon information, materials, and documents that

2 are currently available to and specifically known by Plaintiff.

3       3. It is anticipated that further discovery, independent investigation, legal research, and

4 analysis will supply additional facts and add meaning to known facts, as well as established

5 entirely new factual conclusion and legal contentions, all of which may lead to substantial

6 additions to, changes in, and variation from the contentions herein set forth.

7       4. The following responses are given without prejudice to the right to produce at trial any

8 and all subsequently-discovered evidence relating to the proof of presently known material facts,

9 if any, and to produce all evidence, whenever discovered, relating to the proof of subsequently

10 discovered material facts. These responses and objections are made without prejudice to, and are

11 not a waiver of, Plaintiff's right to rely on other facts or documents at trial.

12       5. Plaintiff expressly reserves the right to supplement, clarify, revise, or correct any or all of

13 the responses and objections herein, and to assert additional objections or privileges, in one or

14 more subsequent supplemental response(s).

15       6. Except for explicit facts submitted herein, no admissions of any nature whatsoever are

16 implied nor should they be inferred. The fact that Plaintiff has responded to any Request for

17 Admission should not be taken as an admission or acceptance of the existence of any fact or facts

18 set forth or assumed by any interrogatory, or that such answer constitutes admissible evidence.

19       7. This Preliminary Statement is, by this reference, incorporated into each and every one of

20 the following Responses to these interrogatories.

21       **PLAINTIFF'S RESPONSES TO INTERROGATORIES**

22       **INTERROGATORY NO. 1**

23       What do YOU contend ADDINGTON ("ADDINGTON", as used herein, shall mean or

24 refer to Defendant, RACHEL ADDINGTON, a deputy of the Orange County Sheriff Department

25 and where appropriate in the context, her agents, representatives, attorneys, and investigators)

26 herself did to violate YOUR civil rights?

27       **RESPONSE TO INTERROGATORY NO. 1**

28       This request is vague, ambiguous, and confusing particularly with respect to the phrase

**DEFTS. MSJ B 124**

1     "civil rights". Civil rights include the ensuring of peoples' physical and mental integrity, life, and

2     safety; protection from discrimination on grounds such as race, gender, sexual orientation, gender

3     identity, national origin, color, age, political affiliation, ethnicity, religion, and disability; and

4     individual rights such as privacy and the freedom of thought, speech, religion, press, assembly,

5     and movement. See *Fischer & Porter Co. v. Tolson*, et al., 143 F.R.D. 93, 96 (ED. Pa.

6     1992)(Finding that a party filing contention interrogatories must have well-tailored questions that

7     clarify the issues or narrow the scope of dispute.)

8         A responding party has the duty to answer an overly broad or unduly burdensome

9     interrogatory to the extent it is not objectionable. Responding Party responds as follows:

10    On or about August 11, 2019, in the early morning after midnight, Reyna Rivera, Devonna

11    Falconer, Kassandra Mayer, Elia Rodriguez, Rachel Addington, and other OCSD personnel (true

12    names will be identified through formal discovery) acting beyond the scope of their authority,

13    agreed and began a concerted action against Plaintiff and all other inmates. Forty inmates in

14    Plaintiff's cell, were awoken and locked up in the dayroom. While being locked up in the

15    dayroom Plaintiff and all other inmates' bedding were searched without reasonable suspicion.

16    During the shakedown one deputy loudly announced that such searches would continue regularly

17    unless and until all inmates would keep quiet during the day. The deputy went on and declared in

18    a degrading manner that dayroom and phone service would be shut down unless and until all

19    inmates would shut up during the day.

20    **INTERROGATORY NO. 2**

21         State all facts supporting YOUR contention that ADDINGTON violated YOUR First

22    Amendment rights to freedom of expression.

23    **RESPONSE TO INTERROGATORY NO. 2**

24         Interrogatories are generally overly broad and unduly burdensome on their face when they

25    ask for "every" or "all facts" that support identified allegations. This request is premature,

26    overbroad, and improper. See, e.g., *Convolve v. Compaq Computer Corp.*, 223 F.R.D. 162, 173

27    (S.D.N.Y. 2004)(citations omitted)("A contention interrogatory is not simply a vehicle for

28    requiring an adversary to regurgitate all factual information obtained in discovery."); *Hilt v. SFC*

1   *Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997) (Finding that the rules do not require a statement of all

2   of the facts supporting every allegation and the identifications of every knowledgeable person and

3   supporting document); In the Matter of Aspen Tech., Inc., Dkt. No. 9310 (Dec. 23, 2003)(Order

4   Denying Motion to Compel Responses to Respondent's First Set of Interrogatories)(citing

5   *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989)(Finding that an interrogatory asking for

6   all facts supporting the entire claim is impermissible); Mort v. A/S/D/S Svendborg, 41 F.R.D.

7   225, 226 (E.D. Pa. 1966); *Fischer &Porter Co. v. Tolson*, et al., 143 F.R.D. 93, 96 (ED. Pa.

8   1992)(Finding that a party filing contention interrogatories must have well-tailored questions that

9   clarify the issues or narrow the scope of dispute.)

10       This request is vague, ambiguous, and confusing particularly with respect to the phrase "all

11   facts". It seeks "all facts" rather than "material" or "principal" facts which requires the

12   responding party to provide a narrative account of its case. It calls for a legal conclusion or in the

13   alternative, involves an opinion or conclusion that relates to fact or the application of law to fact.

14       A responding party has the duty to answer an overly broad or unduly burdensome

15   interrogatory to the extent it is not objectionable. Responding Party responds as follows: please

16   refer to Plaintiff's fourth amended complaint.

17   **INTERROGATORY NO. 3**

18       State all facts supporting YOUR contention that ADDINGTON violated YOUR Fourth

19   Amendment rights to be free from unreasonable search and seizure.

20   **RESPONSE TO INTERROGATORY NO. 3**

21       Interrogatories are generally overly broad and unduly burdensome on their face when they

22   ask for "every" or "all facts" that support identified allegations. This request is premature,

23   overbroad, and improper. See, e.g., *Convolve v. Compaq Computer Corp.*, 223 F.R.D. 162, 173

24   (S.D.N.Y. 2004)(citations omitted)("A contention interrogatory is not simply a vehicle for

25   requiring an adversary to regurgitate all factual information obtained in discovery."); *Hilt v. SFC*

26   *Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997) (Finding that the rules do not require a statement of all

27   of the facts supporting every allegation and the identifications of every knowledgeable person and

28   supporting document); In the Matter of Aspen Tech., Inc., Dkt. No. 9310 (Dec. 23, 2003)(Order

4

Denying Motion to Compel Responses to Respondent's First Set of Interrogatories)(citing *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989)(Finding that an interrogatory asking for all facts supporting the entire claim is impermissible); Mort v. A/S/D/S Svendborg, 41 F.R.D. 225, 226 (E.D. Pa. 1966); *Fischer &Porter Co. v. Tolson*, et al., 143 F.R.D. 93, 96 (ED. Pa. 1992)(Finding that a party filing contention interrogatories must have well-tailored questions that clarify the issues or narrow the scope of dispute.)

This request is vague, ambiguous, and confusing particularly with respect to the phrase "all facts". It seeks "all facts" rather than "material" or "principal" facts which requires the responding party to provide a narrative account of its case. It calls for a legal conclusion or in the alternative, involves an opinion or conclusion that relates to fact or the application of law to fact.

A responding party has the duty to answer an overly broad or unduly burdensome interrogatory to the extent it is not objectionable. Responding Party responds as follows: please refer to Plaintiff's fourth amended complaint.

**INTERROGATORY NO. 4**

State all facts supporting YOUR contention that ADDINGTON had had no purpose for the cell search conducted on August 11, 2019 as alleged in YOUR Complaint.

**RESPONSE TO INTERROGATORY NO. 4**

Objection. This request is unintelligible.

**INTERROGATORY NO. 5**

State all facts supporting YOUR contention that ADDINGTON conducted the cell search on August 11, 2019 to harass YOU as alleged in YOUR Complaint.

**RESPONSE TO INTERROGATORY NO. 5**

Interrogatories are generally overly broad and unduly burdensome on their face when they ask for "every" or "all facts" that support identified allegations. This request is premature, overbroad, and improper. See, e.g., *Convolve v. Compaq Computer Corp.*, 223 F.R.D. 162, 173 (S.D.N.Y. 2004)(citations omitted)("A contention interrogatory is not simply a vehicle for requiring an adversary to regurgitate all factual information obtained in discovery."); *Hilt v. SFC Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997) (Finding that the rules do not require a statement of all

5

**DEFTS. MSJ B 127**

1  of the facts supporting every allegation and the identifications of every knowledgeable person and

2  supporting document); In the Matter of Aspen Tech., Inc., Dkt. No. 9310 (Dec. 23, 2003)(Order

3  Denying Motion to Compel Responses to Respondent's First Set of Interrogatories)(citing

4  *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989)(Finding that an interrogatory asking for

5  all facts supporting the entire claim is impermissible); Mort v. A/S/D/S Svendborg, 41 F.R.D.

6  225, 226 (E.D. Pa. 1966); *Fischer &Porter Co. v. Tolson*, et al., 143 F.R.D. 93, 96 (ED. Pa.

7  1992)(Finding that a party filing contention interrogatories must have well-tailored questions that

8  clarify the issues or narrow the scope of dispute.)

9       This request is vague, ambiguous, and confusing particularly with respect to the phrase "all

10  facts". It seeks "all facts" rather than "material" or "principal" facts which requires the

11  responding party to provide a narrative account of its case. It calls for a legal conclusion or in the

12  alternative, involves an opinion or conclusion that relates to fact or the application of law to fact.

13       A responding party has the duty to answer an overly broad or unduly burdensome

14  interrogatory to the extent it is not objectionable. Responding Party responds as follows: please

15  refer to Plaintiff's fourth amended complaint.

16  **INTERROGATORY NO. 6**

17       State all facts supporting YOUR contention that ADDINGTON conspired to deprive YOU

18  of your First Amendment rights as alleged in YOUR Complaint.

19  **RESPONSE TO INTERROGATORY NO. 6**

20       Interrogatories are generally overly broad and unduly burdensome on their face when they

21  ask for "every" or "all facts" that support identified allegations. This request is premature,

22  overbroad, and improper. See, e.g., *Convolve v. Compaq Computer Corp.*, 223 F.R.D. 162, 173

23  (S.D.N.Y. 2004)(citations omitted)("A contention interrogatory is not simply a vehicle for

24  requiring an adversary to regurgitate all factual information obtained in discovery."); *Hilt v. SFC*

25  *Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997) (Finding that the rules do not require a statement of all

26  of the facts supporting every allegation and the identifications of every knowledgeable person and

27  supporting document); In the Matter of Aspen Tech., Inc., Dkt. No. 9310 (Dec. 23, 2003)(Order

28  Denying Motion to Compel Responses to Respondent's First Set of Interrogatories)(citing

**DEFTS. MSJ B 128**

1   *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989)(Finding that an interrogatory asking for

2   all facts supporting the entire claim is impermissible); Mort v. A/S/D/S Svendborg, 41 F.R.D.

3   225, 226 (E.D. Pa. 1966); *Fischer &Porter Co. v. Tolson*, et al., 143 F.R.D. 93, 96 (ED. Pa.

4   1992)(Finding that a party filing contention interrogatories must have well-tailored questions that

5   clarify the issues or narrow the scope of dispute.)

6       This request is vague, ambiguous, and confusing particularly with respect to the phrase "all

7   facts". It seeks "all facts" rather than "material" or "principal" facts which requires the

8   responding party to provide a narrative account of its case. It calls for a legal conclusion or in the

9   alternative, involves an opinion or conclusion that relates to fact or the application of law to fact.

10      A responding party has the duty to answer an overly broad or unduly burdensome

11  interrogatory to the extent it is not objectionable. Responding Party responds as follows: please

12  refer to Plaintiff's fourth amended complaint.

13  **INTERROGATORY NO. 7**

14      State all facts supporting YOUR contention that that ADDINGTON conspired to deprive

15  YOU of your Fourteenth Amendment rights as alleged in YOUR Complaint.

16  **RESPONSE TO INTERROGATORY NO. 7**

17      Interrogatories are generally overly broad and unduly burdensome on their face when they

18  ask for "every" or "all facts" that support identified allegations. This request is premature,

19  overbroad, and improper. See, e.g., *Convolve v. Compaq Computer Corp.*, 223 F.R.D. 162, 173

20  (S.D.N.Y. 2004)(citations omitted)("A contention interrogatory is not simply a vehicle for

21  requiring an adversary to regurgitate all factual information obtained in discovery."); *Hilt v. SFC*

22  *Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997) (Finding that the rules do not require a statement of all

23  of the facts supporting every allegation and the identifications of every knowledgeable person and

24  supporting document); In the Matter of Aspen Tech., Inc., Dkt. No. 9310 (Dec. 23, 2003)(Order

25  Denying Motion to Compel Responses to Respondent's First Set of Interrogatories)(citing

26  *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989)(Finding that an interrogatory asking for

27  all facts supporting the entire claim is impermissible); Mort v. A/S/D/S Svendborg, 41 F.R.D.

28  225, 226 (E.D. Pa. 1966); *Fischer &Porter Co. v. Tolson*, et al., 143 F.R.D. 93, 96 (ED. Pa.

1    1992)(Finding that a party filing contention interrogatories must have well-tailored questions that

2    clarify the issues or narrow the scope of dispute.)

3         This request is vague, ambiguous, and confusing particularly with respect to the phrase "all

4    facts". It seeks "all facts" rather than "material" or "principal" facts which requires the

5    responding party to provide a narrative account of its case. It calls for a legal conclusion or in the

6    alternative, involves an opinion or conclusion that relates to fact or the application of law to fact.

7         A responding party has the duty to answer an overly broad or unduly burdensome

8    interrogatory to the extent it is not objectionable. Responding Party responds as follows: please

9    refer to Plaintiff's fourth amended complaint.

10   **INTERROGATORY NO. 8**

11        State all facts supporting YOUR contention that ADDINGTON engaged in oral, written, or

12   electronic communication with other defendants named in this action to conspire to deprive YOU

13   of YOUR civil rights as alleged in YOUR Complaint.

14   **RESPONSE TO INTERROGATORY NO. 8**

15        Interrogatories are generally overly broad and unduly burdensome on their face when they

16   ask for "every" or "all facts" that support identified allegations. This request is premature,

17   overbroad, and improper. See, e.g., *Convolve v. Compaq Computer Corp.*, 223 F.R.D. 162, 173

18   (S.D.N.Y. 2004)(citations omitted)("A contention interrogatory is not simply a vehicle for

19   requiring an adversary to regurgitate all factual information obtained in discovery."); *Hilt v. SFC*

20   *Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997) (Finding that the rules do not require a statement of all

21   of the facts supporting every allegation and the identifications of every knowledgeable person and

22   supporting document); In the Matter of Aspen Tech., Inc., Dkt. No. 9310 (Dec. 23, 2003)(Order

23   Denying Motion to Compel Responses to Respondent's First Set of Interrogatories)(citing

24   *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989)(Finding that an interrogatory asking for

25   all facts supporting the entire claim is impermissible); Mort v. A/S/D/S Svendborg, 41 F.R.D.

26   225, 226 (E.D. Pa. 1966); *Fischer &Porter Co. v. Tolson*, et al., 143 F.R.D. 93, 96 (ED. Pa.

27   1992)(Finding that a party filing contention interrogatories must have well-tailored questions that

28   clarify the issues or narrow the scope of dispute.)

DEFTS. MSJ B 130

1  This request is vague, ambiguous, and confusing particularly with respect to the phrase "all

2  facts". It seeks "all facts" rather than "material" or "principal" facts which requires the

3  responding party to provide a narrative account of its case. It calls for a legal conclusion or in the

4  alternative, involves an opinion or conclusion that relates to fact or the application of law to fact.

5  A responding party has the duty to answer an overly broad or unduly burdensome

6  interrogatory to the extent it is not objectionable. Responding Party responds as follows: please

7  refer to Plaintiff's fourth amended complaint.

8  **INTERROGATORY NO. 9**

9  State all facts supporting YOUR contention that ADDINGTON was unable to discharge her

10  duties due to her relative inexperience as alleged in YOUR Complaint.

11  **RESPONSE TO INTERROGATORY NO. 9**

12  Interrogatories are generally overly broad and unduly burdensome on their face when they

13  ask for "every" or "all facts" that support identified allegations. This request is premature,

14  overbroad, and improper. See, e.g., *Convolve v. Compaq Computer Corp.*, 223 F.R.D. 162, 173

15  (S.D.N.Y. 2004)(citations omitted)("A contention interrogatory is not simply a vehicle for

16  requiring an adversary to regurgitate all factual information obtained in discovery."); *Hilt v. SFC*

17  *Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997) (Finding that the rules do not require a statement of all

18  of the facts supporting every allegation and the identifications of every knowledgeable person and

19  supporting document); In the Matter of Aspen Tech., Inc., Dkt. No. 9310 (Dec. 23, 2003)(Order

20  Denying Motion to Compel Responses to Respondent's First Set of Interrogatories)(citing

21  *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989)(Finding that an interrogatory asking for

22  all facts supporting the entire claim is impermissible); Mort v. A/S/D/S Svendborg, 41 F.R.D.

23  225, 226 (E.D. Pa. 1966); *Fischer &Porter Co. v. Tolson*, et al., 143 F.R.D. 93, 96 (ED. Pa.

24  1992)(Finding that a party filing contention interrogatories must have well-tailored questions that

25  clarify the issues or narrow the scope of dispute.)

26  This request is vague, ambiguous, and confusing particularly with respect to the phrase "all

27  facts". It seeks "all facts" rather than "material" or "principal" facts which requires the

28  responding party to provide a narrative account of its case. It calls for a legal conclusion or in the

9

1  alternative, involves an opinion or conclusion that relates to fact or the application of law to fact.

2  A responding party has the duty to answer an overly broad or unduly burdensome

3  interrogatory to the extent it is not objectionable. Responding Party responds as follows: please

4  refer to Plaintiff's fourth amended complaint.

5  **INTERROGATORY NO. 10**

6  State all facts supporting YOUR contention that ADDINGTON was unable to discharge her

7  duties due to her incomplete or inadequate training as alleged in YOUR Complaint.

8  **RESPONSE TO INTERROGATORY NO. 10**

9  Interrogatories are generally overly broad and unduly burdensome on their face when they

10  ask for "every" or "all facts" that support identified allegations. This request is premature,

11  overbroad, and improper. See, e.g., *Convolve v. Compaq Computer Corp.*, 223 F.R.D. 162, 173

12  (S.D.N.Y. 2004)(citations omitted)("A contention interrogatory is not simply a vehicle for

13  requiring an adversary to regurgitate all factual information obtained in discovery."); *Hilt v. SFC*

14  *Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997) (Finding that the rules do not require a statement of all

15  of the facts supporting every allegation and the identifications of every knowledgeable person and

16  supporting document); In the Matter of Aspen Tech., Inc., Dkt. No. 9310 (Dec. 23, 2003)(Order

17  Denying Motion to Compel Responses to Respondent's First Set of Interrogatories)(citing

18  *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989)(Finding that an interrogatory asking for

19  all facts supporting the entire claim is impermissible); Mort v. A/S/D/S Svendborg, 41 F.R.D.

20  225, 226 (E.D. Pa. 1966); *Fischer &Porter Co. v. Tolson*, et al., 143 F.R.D. 93, 96 (ED. Pa.

21  1992)(Finding that a party filing contention interrogatories must have well-tailored questions that

22  clarify the issues or narrow the scope of dispute.)

23  This request is vague, ambiguous, and confusing particularly with respect to the phrase "all

24  facts". It seeks "all facts" rather than "material" or "principal" facts which requires the

25  responding party to provide a narrative account of its case. It calls for a legal conclusion or in the

26  alternative, involves an opinion or conclusion that relates to fact or the application of law to fact.

27  A responding party has the duty to answer an overly broad or unduly burdensome

28  interrogatory to the extent it is not objectionable. Responding Party responds as follows: please

10

**DEFTS. MSJ B 132**

1    refer to Plaintiff's fourth amended complaint.

2    **INTERROGATORY NO. 11**

3        State all facts supporting YOUR contention that ADDINGTON was unable to discharge her

4    duties due to her lack of knowledge as alleged in YOUR Complaint.

5    **RESPONSE TO INTERROGATORY NO. 11**

6        Interrogatories are generally overly broad and unduly burdensome on their face when they

7    ask for "every" or "all facts" that support identified allegations. This request is premature,

8    overbroad, and improper. See, e.g., *Convolve v. Compaq Computer Corp.*, 223 F.R.D. 162, 173

9    (S.D.N.Y. 2004)(citations omitted)("A contention interrogatory is not simply a vehicle for

10   requiring an adversary to regurgitate all factual information obtained in discovery."); *Hilt v. SFC*

11   *Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997) (Finding that the rules do not require a statement of all

12   of the facts supporting every allegation and the identifications of every knowledgeable person and

13   supporting document); In the Matter of Aspen Tech., Inc., Dkt. No. 9310 (Dec. 23, 2003)(Order

14   Denying Motion to Compel Responses to Respondent's First Set of Interrogatories)(citing

15   *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989)(Finding that an interrogatory asking for

16   all facts supporting the entire claim is impermissible); Mort v. A/S/D/S Svendborg, 41 F.R.D.

17   225, 226 (E.D. Pa. 1966); *Fischer &Porter Co. v. Tolson*, et al., 143 F.R.D. 93, 96 (ED. Pa.

18   1992)(Finding that a party filing contention interrogatories must have well-tailored questions that

19   clarify the issues or narrow the scope of dispute.)

20       This request is vague, ambiguous, and confusing particularly with respect to the phrase "all

21   facts". It seeks "all facts" rather than "material" or "principal" facts which requires the

22   responding party to provide a narrative account of its case. It calls for a legal conclusion or in the

23   alternative, involves an opinion or conclusion that relates to fact or the application of law to fact.

24       A responding party has the duty to answer an overly broad or unduly burdensome

25   interrogatory to the extent it is not objectionable. Responding Party responds as follows: please

26   refer to Plaintiff's fourth amended complaint.

27   **INTERROGATORY NO. 12**

28       State all facts supporting YOUR contention that ADDINGTON was unfit and/or

DEFTS. MSJ B 133

1    incompetent to perform the work she was hired to do as alleged in YOUR Complaint.

2    **RESPONSE TO INTERROGATORY NO. 12**

3    Interrogatories are generally overly broad and unduly burdensome on their face when they

4    ask for "every" or "all facts" that support identified allegations. This request is premature,

5    overbroad, and improper. See, e.g., *Convolve v. Compaq Computer Corp.*, 223 F.R.D. 162, 173

6    (S.D.N.Y. 2004)(citations omitted)("A contention interrogatory is not simply a vehicle for

7    requiring an adversary to regurgitate all factual information obtained in discovery."); *Hilt v. SFC*

8    *Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997) (Finding that the rules do not require a statement of all

9    of the facts supporting every allegation and the identifications of every knowledgeable person and

10   supporting document); In the Matter of Aspen Tech., Inc., Dkt. No. 9310 (Dec. 23, 2003)(Order

11   Denying Motion to Compel Responses to Respondent's First Set of Interrogatories)(citing

12   *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989)(Finding that an interrogatory asking for

13   all facts supporting the entire claim is impermissible); Mort v. A/S/D/S Svendborg, 41 F.R.D.

14   225, 226 (E.D. Pa. 1966); *Fischer &Porter Co. v. Tolson*, et al., 143 F.R.D. 93, 96 (ED. Pa.

15   1992)(Finding that a party filing contention interrogatories must have well-tailored questions that

16   clarify the issues or narrow the scope of dispute.)

17   This request is vague, ambiguous, and confusing particularly with respect to the phrase "all

18   facts". It seeks "all facts" rather than "material" or "principal" facts which requires the

19   responding party to provide a narrative account of its case. It calls for a legal conclusion or in the

20   alternative, involves an opinion or conclusion that relates to fact or the application of law to fact.

21   A responding party has the duty to answer an overly broad or unduly burdensome

22   interrogatory to the extent it is not objectionable. Responding Party responds as follows: please

23   refer to Plaintiff's fourth amended complaint.

24   **INTERROGATORY NO. 13**

25   State all facts to support YOUR contention that ADDINGTON was involved in the cell

26   search conducted on August 11, 2019 as alleged in YOUR Complaint.

27   **RESPONSE TO INTERROGATORY NO. 13**

28   Interrogatories are generally overly broad and unduly burdensome on their face when they

1   ask for "every" or "all facts" that support identified allegations. This request is premature,

2   overbroad, and improper. See, e.g., *Convolve v. Compaq Computer Corp.*, 223 F.R.D. 162, 173

3   (S.D.N.Y. 2004)(citations omitted)("A contention interrogatory is not simply a vehicle for

4   requiring an adversary to regurgitate all factual information obtained in discovery."); *Hilt v. SFC*

5   *Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997) (Finding that the rules do not require a statement of all

6   of the facts supporting every allegation and the identifications of every knowledgeable person and

7   supporting document); In the Matter of Aspen Tech., Inc., Dkt. No. 9310 (Dec. 23, 2003)(Order

8   Denying Motion to Compel Responses to Respondent's First Set of Interrogatories)(citing

9   *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989)(Finding that an interrogatory asking for

10  all facts supporting the entire claim is impermissible); Mort v. A/S/D/S Svendborg, 41 F.R.D.

11  225, 226 (E.D. Pa. 1966); *Fischer &Porter Co. v. Tolson*, et al., 143 F.R.D. 93, 96 (ED. Pa.

12  1992)(Finding that a party filing contention interrogatories must have well-tailored questions that

13  clarify the issues or narrow the scope of dispute.)

14      This request is vague, ambiguous, and confusing particularly with respect to the phrase "all

15  facts". It seeks "all facts" rather than "material" or "principal" facts which requires the

16  responding party to provide a narrative account of its case. It calls for a legal conclusion or in the

17  alternative, involves an opinion or conclusion that relates to fact or the application of law to fact.

18      A responding party has the duty to answer an overly broad or unduly burdensome

19  interrogatory to the extent it is not objectionable. Responding Party responds as follows: please

20  refer to Plaintiff's fourth amended complaint.

21  **INTERROGATORY NO. 14**

22      State all facts supporting YOUR contention that ADDINGTON acted willfully, wantonly,

23  oppressively, maliciously, fraudulently, and in an extremely offensive and unconscionable

24  manner as alleged in YOUR Complaint.

25  **RESPONSE TO INTERROGATORY NO. 14**

26      Interrogatories are generally overly broad and unduly burdensome on their face when they

27  ask for "every" or "all facts" that support identified allegations. This request is premature,

28  overbroad, and improper. See, e.g., *Convolve v. Compaq Computer Corp.*, 223 F.R.D. 162, 173

1  (S.D.N.Y. 2004)(citations omitted)("A contention interrogatory is not simply a vehicle for

2  requiring an adversary to regurgitate all factual information obtained in discovery."); *Hilt v. SFC*

3  *Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997) (Finding that the rules do not require a statement of all

4  of the facts supporting every allegation and the identifications of every knowledgeable person and

5  supporting document); In the Matter of Aspen Tech., Inc., Dkt. No. 9310 (Dec. 23, 2003)(Order

6  Denying Motion to Compel Responses to Respondent's First Set of Interrogatories)(citing

7  *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989)(Finding that an interrogatory asking for

8  all facts supporting the entire claim is impermissible); Mort v. A/S/D/S Svendborg, 41 F.R.D.

9  225, 226 (E.D. Pa. 1966); *Fischer &Porter Co. v. Tolson*, et al., 143 F.R.D. 93, 96 (ED. Pa.

10  1992)(Finding that a party filing contention interrogatories must have well-tailored questions that

11  clarify the issues or narrow the scope of dispute.)

12      This request is vague, ambiguous, and confusing particularly with respect to the phrase "all

13  facts". It seeks "all facts" rather than "material" or "principal" facts which requires the

14  responding party to provide a narrative account of its case. It calls for a legal conclusion or in the

15  alternative, involves an opinion or conclusion that relates to fact or the application of law to fact.

16      A responding party has the duty to answer an overly broad or unduly burdensome

17  interrogatory to the extent it is not objectionable. Responding Party responds as follows:  please

18  refer to Plaintiff's fourth amended complaint.

19  **INTERROGATORY NO. 15**

20      What do YOU contend ADDINGTON herself did to cause YOU to suffer debilitating

21  psychological damage?

22  **RESPONSE TO INTERROGATORY NO. 15**

23      On or about August 11, 2019, in the early morning after midnight, Reyna Rivera, Devonna

24  Falconer, Kassandra Mayer, Elia Rodriguez, Rachel Addington, and other OCSD personnel (true

25  names will be identified through formal discovery) acting beyond the scope of their authority,

26  agreed and began a concerted action against Plaintiff and all other inmates. Forty inmates in

27  Plaintiff's cell, were awoken and locked up in the dayroom. While being locked up in the

28  dayroom Plaintiff and all other inmates' bedding were searched without reasonable suspicion.

1   During the shakedown one deputy loudly announced that such searches would continue regularly

2   unless and until all inmates would keep quiet during the day. The deputy went on and declared in

3   a degrading manner that dayroom and phone service would be shut down unless and until all

4   inmates would shut up during the day.

5   **INTERROGATORY NO. 16**

6        State all facts to support YOUR contention that ADDINGTON caused YOU to suffer loss

7   of trust, comfort, care, protection, and support as alleged in YOUR Complaint.

8   **RESPONSE TO INTERROGATORY NO. 16**

9        Interrogatories are generally overly broad and unduly burdensome on their face when they

10  ask for "every" or "all facts" that support identified allegations. This request is premature,

11  overbroad, and improper. See, e.g., *Convolve v. Compaq Computer Corp.*, 223 F.R.D. 162, 173

12  (S.D.N.Y. 2004)(citations omitted)("A contention interrogatory is not simply a vehicle for

13  requiring an adversary to regurgitate all factual information obtained in discovery."); *Hilt v. SFC*

14  *Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997) (Finding that the rules do not require a statement of all

15  of the facts supporting every allegation and the identifications of every knowledgeable person and

16  supporting document); In the Matter of Aspen Tech., Inc., Dkt. No. 9310 (Dec. 23, 2003)(Order

17  Denying Motion to Compel Responses to Respondent's First Set of Interrogatories)(citing

18  *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989)(Finding that an interrogatory asking for

19  all facts supporting the entire claim is impermissible); Mort v. A/S/D/S Svendborg, 41 F.R.D.

20  225, 226 (E.D. Pa. 1966); *Fischer &Porter Co. v. Tolson*, et al., 143 F.R.D. 93, 96 (ED. Pa.

21  1992)(Finding that a party filing contention interrogatories must have well-tailored questions that

22  clarify the issues or narrow the scope of dispute.)

23       This request is vague, ambiguous, and confusing particularly with respect to the phrase "all

24  facts". It seeks "all facts" rather than "material" or "principal" facts which requires the

25  responding party to provide a narrative account of its case. It calls for a legal conclusion or in the

26  alternative, involves an opinion or conclusion that relates to fact or the application of law to fact.

27       A responding party has the duty to answer an overly broad or unduly burdensome

28  interrogatory to the extent it is not objectionable. Responding Party responds as follows: please

15

1  refer to Plaintiff's fourth amended complaint.

2  **INTERROGATORY NO. 17**

3        If YOU contend ADDINGTON was involved in any of the strip searches identified in

4  YOUR Complaint, state which strip search ADDINGTON was involved in and the nature of her

5  involvement.

6  **RESPONSE TO INTERROGATORY NO. 17**

7        Additional discovery is necessary to ascertain the identity of the officers involved in any of

8  the strip searches identified in Plaintiff's Complaint.

9

10       I declare under penalty of perjury under the laws of the United States that the foregoing

11  answers are true and correct.

12       Dated: Dec 2, 2020

13       Respectfully submitted.

14

15

16                                                      JANE DOE, Plaintiff in Pro Se

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S RESPONSES TO DEFENDANT ADDINGTON'S INTERROGATORIES (SET 1) **DEF'TS. MSJ B 138**

**CERTIFICATE OF SERVICE**

I, JANE DOE, declare and say as follows:

I am over the age of eighteen years of age and am a party to this action. I reside in the

County of Los Angeles, State of California. My business address is

said county and state. My electronic serve address is

On Dec 2, 2020 I electronically served the following document(s):

Plaintiff's Responses and Objections to Defendant ADDINGTON's Interrogatories (Set 1)

Name of person served: Mariah A. Witt, Michael L. Wroniak, Justin M. Hazelton, Legal

Assistant Services

On behalf of: COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE

STICHTER; MARK STICHTER; REYNA RIVERA; DEVONNA FALCONER; KASSANDRA

MAYER; ELIA RODRIGUEZ; and RACHEL ADDINGTON

Electronic service address of person served: MWitt@ccmslaw.com,

mwroniak@ccmslaw.com, JHazelton@ccmslaw.com, legalservices@ccmslaw.com.

Dated: Dec 2, 2020

JANE DOE

Plaintiff in Pro Se

17

1   JANE DOE

2

3

4

5   Plaintiff in Pro Se

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   JANE DOE,                              No. 8:20-cv-00322-ODW-GJS

12              Plaintiff,

13        v.                                **PLAINTIFF'S FIRST AMENDED**
                                            **RESPONSES TO DEFENDANT COUNTY**
14   COUNTY OF ORANGE, et al                **OF ORANGE'S FIRST SET OF**
                                            **INTERROGATORIES**
15              Defendants.

16

17        Propounding Party    :    COUNTY OF ORANGE ("Defendant" or "the County")
          Responding Party     :    JANE DOE ("Plaintiff")
18        Set No.              :    One (1)

19        Plaintiff, pursuant to Rules 33 of the Federal Rules of Civil Procedure and the Local Rules

20   of this Court, responds to Defendant County of Orange's First Set of Interrogatories as follows:

21                         **PRELIMINARY STATEMENT**

22        1.  The following responses are made solely for the purpose of this action. Plaintiff's

23   investigation and development of all facts and circumstances relating to this action is ongoing. At

24   this time, Plaintiff has not yet fully completed her investigation of the facts related to this action,

25   and has not yet fully completed her discovery in this action, and consequently has not yet fully

26   completed her preparation for trial.

27        2.  The following responses are based only upon information, materials, and documents that

28   are currently available to and specifically known by Plaintiff.

3.   It is anticipated that further discovery, independent investigation, legal research, and analysis will supply additional facts and add meaning to known facts, as well as established entirely new factual conclusion and legal contentions, all of which may lead to substantial additions to, changes in, and variation from the contentions herein set forth.

4.   The following responses are given without prejudice to the right to produce at trial any and all subsequently-discovered evidence relating to the proof of presently known material facts, if any, and to produce all evidence, whenever discovered, relating to the proof of subsequently discovered material facts. These responses and objections are made without prejudice to, and are not a waiver of, Plaintiff's right to rely on other facts or documents at trial.

5.   Plaintiff expressly reserves the right to supplement, clarify, revise, or correct any or all of the responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

6.   Except for explicit facts submitted herein, no admissions of any nature whatsoever are implied nor should they be inferred. The fact that Plaintiff has responded to any Request for Admission should not be taken as an admission or acceptance of the existence of any fact or facts set forth or assumed by any interrogatory, or that such answer constitutes admissible evidence.

7.   This Preliminary Statement is, by this reference, incorporated into each and every one of the following Responses to these interrogatories.

**PLAINTIFF'S RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO. 1**

State all facts supporting YOUR contention that the COUNTY ("COUNTY", as used herein, shall mean or refer to Defendant, County of Orange, and where appropriate in the context, their agents, representatives, attorneys, and investigators) violated YOUR First Amendment rights related to freedom of expression.

**RESPONSE TO INTERROGATORY NO. 1**

"Courts generally disfavor contention interrogatories asked before discovery is undertaken. *Tennison v. City & County of San Francisco*, 226 F.R.D. 615, 618 (N.D.Cal.2005). In fact, courts tend to deny contention interrogatories filed before substantial discovery has taken place, but

2

1   grant them if discovery almost is complete. See, e.g., *Fischer & Porter Co. v. Tolson*, 143 F.R.D.

2   93, 95 (E.D.Pa.1992)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-JLS-MDD, at *20-21 (S.D.

3   Cal. Aug. 19, 2019).

4       "Pursuant to Rule 26, because the contention interrogatories seek "all facts" supporting

5   Plaintiff's allegations, they are overly broad and unduly burdensome on their face. See

6   FED.R.CIV.P. 26(b)(2)(C) (stating that the court must limit discovery if the burden of the

7   proposed discovery outweighs its likely benefit)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-

8   JLS-MDD, at *21 (S.D. Cal. Aug. 19, 2019).

9       Interrogatories are generally overly broad and unduly burdensome on their face when they

10  ask for "every" or "all facts" that support identified allegations. This request is premature,

11  overbroad, and improper. See, e.g., *Convolve v. Compaq Computer Corp.*, 223 F.R.D. 162, 173

12  (S.D.N.Y. 2004)(citations omitted)("A contention interrogatory is not simply a vehicle for

13  requiring an adversary to regurgitate all factual information obtained in discovery."); *Hilt v. SFC*

14  *Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997) (Finding that the rules do not require a statement of all

15  of the facts supporting every allegation and the identifications of every knowledgeable person and

16  supporting document); In the Matter of Aspen Tech., Inc., Dkt. No. 9310 (Dec. 23, 2003)(Order

17  Denying Motion to Compel Responses to Respondent's First Set of Interrogatories)(citing

18  *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989)(Finding that an interrogatory asking for

19  all facts supporting the entire claim is impermissible); *Mort v. A/S/D/S Svendborg*, 41 F.R.D.

20  225, 226 (E.D. Pa. 1966); *Fischer &Porter Co. v. Tolson*, et al., 143 F.R.D. 93, 96 (ED. Pa.

21  1992)(Finding that a party filing contention interrogatories must have well-tailored questions that

22  clarify the issues or narrow the scope of dispute.)

23      This request is vague, ambiguous, and confusing particularly with respect to the phrase "all

24  facts". It seeks "all facts" rather than "material" or "principal" facts which requires the

25  responding party to provide a narrative account of its case. It calls for a legal conclusion or in the

26  alternative, involves an opinion or conclusion that relates to fact or the application of law to fact.

27      A responding party has the duty to answer an overly broad or unduly burdensome

28  interrogatory to the extent it is not objectionable. Responding Party responds as follows: The

3

1    County with deliberate indifference towards the civil rights of detainees, knowingly and willfully

2    did maintain, enforce, and apply a custom, practice, policy and usage tending to encourage,

3    promote, sanction, tolerate and ratify the abuse of authority and harassing cell search. The

4    training policies of the County were not adequate to train and supervise its personnel. As a result,

5    OCSD personnel, are not able to handle the usual and recurring situations with which they must

6    deal.

7    **INTERROGATORY NO. 2**

8         State all facts supporting YOUR contention that the COUNTY violated YOUR Fourth

9    Amendment rights to be free from unreasonable search and seizure.

10   **RESPONSE TO INTERROGATORY NO. 2**

11        "Courts generally disfavor contention interrogatories asked before discovery is undertaken.

12   *Tennison v. City & County of San Francisco*, 226 F.R.D. 615, 618 (N.D.Cal.2005). In fact, courts

13   tend to deny contention interrogatories filed before substantial discovery has taken place, but

14   grant them if discovery almost is complete. See, e.g., *Fischer & Porter Co. v. Tolson*, 143 F.R.D.

15   93, 95 (E.D.Pa.1992)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-JLS-MDD, at *20-21 (S.D.

16   Cal. Aug. 19, 2019).

17        "Pursuant to Rule 26, because the contention interrogatories seek "all facts" supporting

18   Plaintiff's allegations, they are overly broad and unduly burdensome on their face. See

19   FED.R.CIV.P. 26(b)(2)(C) (stating that the court must limit discovery if the burden of the

20   proposed discovery outweighs its likely benefit)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-

21   JLS-MDD, at *21 (S.D. Cal. Aug. 19, 2019).

22        Interrogatories are generally overly broad and unduly burdensome on their face when they

23   ask for "every" or "all facts" that support identified allegations. This request is premature,

24   overbroad, and improper. See, e.g., *Convolve v. Compaq Computer Corp.*, 223 F.R.D. 162, 173

25   (S.D.N.Y. 2004)(citations omitted)("A contention interrogatory is not simply a vehicle for

26   requiring an adversary to regurgitate all factual information obtained in discovery."); *Hilt v. SFC*

27   *Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997) (Finding that the rules do not require a statement of all

28   of the facts supporting every allegation and the identifications of every knowledgeable person and

4

1  supporting document); In the Matter of Aspen Tech., Inc., Dkt. No. 9310 (Dec. 23, 2003)(Order

2  Denying Motion to Compel Responses to Respondent's First Set of Interrogatories)(citing

3  *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989)(Finding that an interrogatory asking for

4  all facts supporting the entire claim is impermissible); Mort v. A/S/D/S Svendborg, 41 F.R.D.

5  225, 226 (E.D. Pa. 1966); *Fischer &Porter Co. v. Tolson*, et al., 143 F.R.D. 93, 96 (ED. Pa.

6  1992)(Finding that a party filing contention interrogatories must have well-tailored questions that

7  clarify the issues or narrow the scope of dispute.)

8      This request is vague, ambiguous, and confusing particularly with respect to the phrase "all

9  facts". It seeks "all facts" rather than "material" or "principal" facts which requires the

10 responding party to provide a narrative account of its case. It calls for a legal conclusion or in the

11 alternative, involves an opinion or conclusion that relates to fact or the application of law to fact.

12     A responding party has the duty to answer an overly broad or unduly burdensome

13 interrogatory to the extent it is not objectionable. Responding Party responds as follows: The

14 County with deliberate indifference towards the civil rights of detainees, knowingly and willfully

15 did maintain, enforce, and apply a custom, practice, policy and usage tending to encourage,

16 promote, sanction, tolerate and ratify the abuse of authority and excessive use of searches. The

17 training policies of the County were not adequate to train and supervise its personnel. As a result,

18 OCSD personnel, are not able to handle the usual and recurring situations with which they must

19 deal.

20 **INTERROGATORY NO. 3**

21     State all facts supporting YOUR contention that the COUNTY violated YOUR Eighth

22 Amendment rights to be free of cruel and unusual punishment.

23 **RESPONSE TO INTERROGATORY NO. 3**

24     Objection. Pursuant to FRCP 26(b)(1), parties may obtain discovery regarding any

25 nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs

26 of the case. The request exceeds the scope of permissible discovery because Plaintiff does not

27 allege Eighth Amendment violation. Eighth Amendment does not apply to pre-trial detainees.

28 **INTERROGATORY NO. 4**

PLAINTIFF'S 1ST AMENDED RESPONSES TO DEFENDANT THE COUNTY'S INTERROGATORIES (SET 1)

**DEFTS. MSJ B 144**

1        State all facts supporting YOUR contention that the COUNTY violated YOUR Fourteenth

2   Amendment rights.

3   **RESPONSE TO INTERROGATORY NO. 4**

4        "Courts generally disfavor contention interrogatories asked before discovery is undertaken.

5   *Tennison v. City & County of San Francisco*, 226 F.R.D. 615, 618 (N.D.Cal.2005). In fact, courts

6   tend to deny contention interrogatories filed before substantial discovery has taken place, but

7   grant them if discovery almost is complete. See, e.g., *Fischer & Porter Co. v. Tolson*, 143 F.R.D.

8   93, 95 (E.D.Pa.1992)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-JLS-MDD, at *20-21 (S.D.

9   Cal. Aug. 19, 2019).

10       "Pursuant to Rule 26, because the contention interrogatories seek "all facts" supporting

11  Plaintiff's allegations, they are overly broad and unduly burdensome on their face. See

12  FED.R.CIV.P. 26(b)(2)(C) (stating that the court must limit discovery if the burden of the

13  proposed discovery outweighs its likely benefit)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-

14  JLS-MDD, at *21 (S.D. Cal. Aug. 19, 2019).

15       Interrogatories are generally overly broad and unduly burdensome on their face when they

16  ask for "every" or "all facts" that support identified allegations. This request is premature,

17  overbroad, and improper. See, e.g., *Convolve v. Compaq Computer Corp.*, 223 F.R.D. 162, 173

18  (S.D.N.Y. 2004)(citations omitted)("A contention interrogatory is not simply a vehicle for

19  requiring an adversary to regurgitate all factual information obtained in discovery."); *Hilt v. SFC*

20  *Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997) (Finding that the rules do not require a statement of all

21  of the facts supporting every allegation and the identifications of every knowledgeable person and

22  supporting document); In the Matter of Aspen Tech., Inc., Dkt. No. 9310 (Dec. 23, 2003)(Order

23  Denying Motion to Compel Responses to Respondent's First Set of Interrogatories)(citing

24  *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989)(Finding that an interrogatory asking for

25  all facts supporting the entire claim is impermissible); Mort v. A/S/D/S Svendborg, 41 F.R.D.

26  225, 226 (E.D. Pa. 1966); *Fischer &Porter Co. v. Tolson*, et al., 143 F.R.D. 93, 96 (ED. Pa.

27  1992)(Finding that a party filing contention interrogatories must have well-tailored questions that

28  clarify the issues or narrow the scope of dispute.)

1    This request is vague, ambiguous, and confusing particularly with respect to the phrase "all

2    facts". It seeks "all facts" rather than "material" or "principal" facts which requires the

3    responding party to provide a narrative account of its case. It calls for a legal conclusion or in the

4    alternative, involves an opinion or conclusion that relates to fact or the application of law to fact.

5    A responding party has the duty to answer an overly broad or unduly burdensome

6    interrogatory to the extent it is not objectionable. Responding Party responds as follows: The

7    County with deliberate indifference towards the civil rights of detainees, knowingly and willfully

8    did maintain, enforce, and apply a custom, practice, policy and usage tending to encourage,

9    promote, sanction, tolerate and ratify the abuse of authority, the denial of life necessities,

10    overcrowding and unconstitutional condition, and limited hygienic supplies. The training policies

11    of the County were not adequate to train and supervise its personnel. As a result, OCSD

12    personnel, are not able to handle the usual and recurring situations with which they must deal.

13    **INTERROGATORY NO. 5**

14    State all facts supporting YOUR contention that the COUNTY implemented and/or

15    maintained policies and/or procedures related to unreasonable strip searches that violated YOUR

16    Fourth Amendment rights as alleged in YOUR Complaint.

17    **RESPONSE TO INTERROGATORY NO. 5**

18    "Courts generally disfavor contention interrogatories asked before discovery is undertaken.

19    *Tennison v. City & County of San Francisco*, 226 F.R.D. 615, 618 (N.D.Cal.2005). In fact, courts

20    tend to deny contention interrogatories filed before substantial discovery has taken place, but

21    grant them if discovery almost is complete. See, e.g., *Fischer & Porter Co. v. Tolson*, 143 F.R.D.

22    93, 95 (E.D.Pa.1992)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-JLS-MDD, at *20-21 (S.D.

23    Cal. Aug. 19, 2019).

24    "Pursuant to Rule 26, because the contention interrogatories seek "all facts" supporting

25    Plaintiff's allegations, they are overly broad and unduly burdensome on their face. See

26    FED.R.CIV.P. 26(b)(2)(C) (stating that the court must limit discovery if the burden of the

27    proposed discovery outweighs its likely benefit)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-

28    JLS-MDD, at *21 (S.D. Cal. Aug. 19, 2019).

DEFTS. MSJ B 146

1   Interrogatories are generally overly broad and unduly burdensome on their face when they

2   ask for "every" or "all facts" that support identified allegations. This request is premature,

3   overbroad, and improper. See, e.g., *Convolve v. Compaq Computer Corp.*, 223 F.R.D. 162, 173

4   (S.D.N.Y. 2004)(citations omitted)("A contention interrogatory is not simply a vehicle for

5   requiring an adversary to regurgitate all factual information obtained in discovery."); *Hilt v. SFC*

6   *Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997) (Finding that the rules do not require a statement of all

7   of the facts supporting every allegation and the identifications of every knowledgeable person and

8   supporting document); In the Matter of Aspen Tech., Inc., Dkt. No. 9310 (Dec. 23, 2003)(Order

9   Denying Motion to Compel Responses to Respondent's First Set of Interrogatories)(citing

10  *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989)(Finding that an interrogatory asking for

11  all facts supporting the entire claim is impermissible); Mort v. A/S/D/S Svendborg, 41 F.R.D.

12  225, 226 (E.D. Pa. 1966); *Fischer &Porter Co. v. Tolson*, et al., 143 F.R.D. 93, 96 (ED. Pa.

13  1992)(Finding that a party filing contention interrogatories must have well-tailored questions that

14  clarify the issues or narrow the scope of dispute.)

15  This request is vague, ambiguous, and confusing particularly with respect to the phrase "all

16  facts". It seeks "all facts" rather than "material" or "principal" facts which requires the

17  responding party to provide a narrative account of its case. It calls for a legal conclusion or in the

18  alternative, involves an opinion or conclusion that relates to fact or the application of law to fact.

19  A responding party has the duty to answer an overly broad or unduly burdensome

20  interrogatory to the extent it is not objectionable. Responding Party responds as follows: After

21  being forced to be strip naked and a mandatory shower in the view and presence of OCSD

22  personnel and other inmates, between August 8 and 12, 2019 Plaintiff was strip searched for

23  seven times: Before being housed in general population and after a mandatory shower in the

24  presence and view of OCSD personnel on August 8, 2019; Before going up to the patio on

25  August 10, 2019; Upon return from the patio on August 10, 2019; Before leaving for court on

26  August 12, 2019; Upon arrival at court on August 12, 2019; Upon return from court with

27  approval of release on own recognizance on August 12, 2019; Right before leaving WCJ on

28  August 12, 2019.

DEFTS. MSJ B 147

1   **INTERROGATORY NO. 6**

2     State all facts supporting YOUR contention that the COUNTY had no reasonable basis to

3   conduct strip searches of YOU during YOUR time in custody at WCJ.

4   **RESPONSE TO INTERROGATORY NO. 6**

5     "Courts generally disfavor contention interrogatories asked before discovery is undertaken.

6   *Tennison v. City & County of San Francisco*, 226 F.R.D. 615, 618 (N.D.Cal.2005). In fact, courts

7   tend to deny contention interrogatories filed before substantial discovery has taken place, but

8   grant them if discovery almost is complete. See, e.g., *Fischer & Porter Co. v. Tolson*, 143 F.R.D.

9   93, 95 (E.D.Pa.1992)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-JLS-MDD, at *20-21 (S.D.

10   Cal. Aug. 19, 2019).

11     "Pursuant to Rule 26, because the contention interrogatories seek "all facts" supporting

12   Plaintiff's allegations, they are overly broad and unduly burdensome on their face. See

13   FED.R.CIV.P. 26(b)(2)(C) (stating that the court must limit discovery if the burden of the

14   proposed discovery outweighs its likely benefit)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-

15   JLS-MDD, at *21 (S.D. Cal. Aug. 19, 2019).

16     Interrogatories are generally overly broad and unduly burdensome on their face when they

17   ask for "every" or "all facts" that support identified allegations. This request is premature,

18   overbroad, and improper. See, e.g., *Convolve v. Compaq Computer Corp.*, 223 F.R.D. 162, 173

19   (S.D.N.Y. 2004)(citations omitted)("A contention interrogatory is not simply a vehicle for

20   requiring an adversary to regurgitate all factual information obtained in discovery."); *Hilt v. SFC*

21   *Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997) (Finding that the rules do not require a statement of all

22   of the facts supporting every allegation and the identifications of every knowledgeable person and

23   supporting document); In the Matter of Aspen Tech., Inc., Dkt. No. 9310 (Dec. 23, 2003)(Order

24   Denying Motion to Compel Responses to Respondent's First Set of Interrogatories)(citing

25   *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989)(Finding that an interrogatory asking for

26   all facts supporting the entire claim is impermissible); Mort v. A/S/D/S Svendborg, 41 F.R.D.

27   225, 226 (E.D. Pa. 1966); *Fischer &Porter Co. v. Tolson*, et al., 143 F.R.D. 93, 96 (ED. Pa.

28   1992)(Finding that a party filing contention interrogatories must have well-tailored questions that

1    clarify the issues or narrow the scope of dispute.)

2         This request is vague, ambiguous, and confusing particularly with respect to the phrase "all

3    facts". It seeks "all facts" rather than "material" or "principal" facts which requires the

4    responding party to provide a narrative account of its case. It calls for a legal conclusion or in the

5    alternative, involves an opinion or conclusion that relates to fact or the application of law to fact.

6         A responding party has the duty to answer an overly broad or unduly burdensome

7    interrogatory to the extent it is not objectionable. Responding Party responds as follows: Plaintiff

8    went through a full body pat down when she was arrested. Plaintiff was a victim of sexual assault

9    and she was on medication for PTSD. Plaintiff was on period. Plaintiff was forced to be strip

10   naked and a mandatory shower in the view and presence of OCSD personnel and other inmates.

11   Plaintiff's charges are wholly unrelated to weapon or contrabands. Plaintiff was in constant

12   control of OCSD personnel. Plaintiff was released on her own recognizance. OCSD took

13   Plaintiff's urine sample and had full knowledge that Plaintiff had no history of drug use.

14   **INTERROGATORY NO. 7**

15        State all facts supporting YOUR contention that the cell search conducted on August 11,

16   2019 constituted an unreasonable search under the Fourth Amendment as alleged in YOUR

17   Complaint.

18   **RESPONSE TO INTERROGATORY NO. 7**

19        "Courts generally disfavor contention interrogatories asked before discovery is undertaken.

20   *Tennison v. City & County of San Francisco*, 226 F.R.D. 615, 618 (N.D.Cal.2005). In fact, courts

21   tend to deny contention interrogatories filed before substantial discovery has taken place, but

22   grant them if discovery almost is complete. See, e.g., *Fischer & Porter Co. v. Tolson*, 143 F.R.D.

23   93, 95 (E.D.Pa.1992)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-JLS-MDD, at *20-21 (S.D.

24   Cal. Aug. 19, 2019).

25        "Pursuant to Rule 26, because the contention interrogatories seek "all facts" supporting

26   Plaintiff's allegations, they are overly broad and unduly burdensome on their face. See

27   FED.R.CIV.P. 26(b)(2)(C) (stating that the court must limit discovery if the burden of the

28   proposed discovery outweighs its likely benefit)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-

10

1    JLS-MDD, at *21 (S.D. Cal. Aug. 19, 2019).

2         Interrogatories are generally overly broad and unduly burdensome on their face when they

3    ask for "every" or "all facts" that support identified allegations. This request is premature,

4    overbroad, and improper. See, e.g., *Convolve v. Compaq Computer Corp.*, 223 F.R.D. 162, 173

5    (S.D.N.Y. 2004)(citations omitted)("A contention interrogatory is not simply a vehicle for

6    requiring an adversary to regurgitate all factual information obtained in discovery."); *Hilt v. SFC*

7    *Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997) (Finding that the rules do not require a statement of all

8    of the facts supporting every allegation and the identifications of every knowledgeable person and

9    supporting document); In the Matter of Aspen Tech., Inc., Dkt. No. 9310 (Dec. 23, 2003)(Order

10   Denying Motion to Compel Responses to Respondent's First Set of Interrogatories)(citing

11   *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989)(Finding that an interrogatory asking for

12   all facts supporting the entire claim is impermissible); Mort v. A/S/D/S Svendborg, 41 F.R.D.

13   225, 226 (E.D. Pa. 1966); *Fischer &Porter Co. v. Tolson*, et al., 143 F.R.D. 93, 96 (ED. Pa.

14   1992)(Finding that a party filing contention interrogatories must have well-tailored questions that

15   clarify the issues or narrow the scope of dispute.)

16        This request is vague, ambiguous, and confusing particularly with respect to the phrase "all

17   facts". It seeks "all facts" rather than "material" or "principal" facts which requires the

18   responding party to provide a narrative account of its case. It calls for a legal conclusion or in the

19   alternative, involves an opinion or conclusion that relates to fact or the application of law to fact.

20        A responding party has the duty to answer an overly broad or unduly burdensome

21   interrogatory to the extent it is not objectionable. Responding Party responds as follows: August

22   11, 2019, in the early morning after midnight, Reyna Rivera, Devonna Falconer, Kassandra

23   Mayer, Elia Rodriguez, Rachel Addington, and other OCSD personnel (true names will be

24   identified through formal discovery) acting beyond the scope of their authority, agreed and began

25   a concerted action against Plaintiff and all other inmates. Forty inmates in Plaintiff's cell, were

26   awoken and locked up in the dayroom. While being locked up in the dayroom Plaintiff and all

27   other inmates' bedding were searched without reasonable suspicion by Reyna Rivera #9890,

28   Devonna Falconer #10050, Kassandra Mayer #10765, Elia Rodriguez #9052, Rachel Addington

1  #10682, and other OCSD personnel (true names will be identified through formal discovery).

2  During the shakedown one deputy loudly announced that such searches would continue regularly

3  unless and until all inmates would keep quiet during the day. The deputy went on and declared in

4  a degrading manner that dayroom and phone service would be shut down unless and until all

5  inmates would shut up during the day. OCSD personnel are not happy with the fact that forty

6  female inmates locked into a cramped cell talk to each other while they are awake.

7  **INTERROGATORY NO. 8**

8      State all facts supporting YOUR contention that the COUNTY implemented and/or

9  maintained policies and/or procedures that endorsed overcrowding at WCJ as alleged in YOUR

10  Complaint.

11  **RESPONSE TO INTERROGATORY NO. 8**

12      "Courts generally disfavor contention interrogatories asked before discovery is undertaken.

13  *Tennison v. City & County of San Francisco*, 226 F.R.D. 615, 618 (N.D.Cal.2005). In fact, courts

14  tend to deny contention interrogatories filed before substantial discovery has taken place, but

15  grant them if discovery almost is complete. See, e.g., *Fischer & Porter Co. v. Tolson*, 143 F.R.D.

16  93, 95 (E.D.Pa.1992)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-JLS-MDD, at *20-21 (S.D.

17  Cal. Aug. 19, 2019).

18      "Pursuant to Rule 26, because the contention interrogatories seek "all facts" supporting

19  Plaintiff's allegations, they are overly broad and unduly burdensome on their face. See

20  FED.R.CIV.P. 26(b)(2)(C) (stating that the court must limit discovery if the burden of the

21  proposed discovery outweighs its likely benefit)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-

22  JLS-MDD, at *21 (S.D. Cal. Aug. 19, 2019).

23      Interrogatories are generally overly broad and unduly burdensome on their face when they

24  ask for "every" or "all facts" that support identified allegations. This request is premature,

25  overbroad, and improper. See, e.g., *Convolve v. Compaq Computer Corp.*, 223 F.R.D. 162, 173

26  (S.D.N.Y. 2004)(citations omitted)("A contention interrogatory is not simply a vehicle for

27  requiring an adversary to regurgitate all factual information obtained in discovery."); *Hilt v. SFC*

28  *Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997) (Finding that the rules do not require a statement of all

12

1  of the facts supporting every allegation and the identifications of every knowledgeable person and

2  supporting document); In the Matter of Aspen Tech., Inc., Dkt. No. 9310 (Dec. 23, 2003)(Order

3  Denying Motion to Compel Responses to Respondent's First Set of Interrogatories)(citing

4  *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989)(Finding that an interrogatory asking for

5  all facts supporting the entire claim is impermissible); Mort v. A/S/D/S Svendborg, 41 F.R.D.

6  225, 226 (E.D. Pa. 1966); *Fischer &Porter Co. v. Tolson*, et al., 143 F.R.D. 93, 96 (ED. Pa.

7  1992)(Finding that a party filing contention interrogatories must have well-tailored questions that

8  clarify the issues or narrow the scope of dispute.)

9      This request is vague, ambiguous, and confusing particularly with respect to the phrase "all

10  facts". It seeks "all facts" rather than "material" or "principal" facts which requires the

11  responding party to provide a narrative account of its case. It calls for a legal conclusion or in the

12  alternative, involves an opinion or conclusion that relates to fact or the application of law to fact.

13      A responding party has the duty to answer an overly broad or unduly burdensome

14  interrogatory to the extent it is not objectionable. Responding Party responds as follows: Forty

15  inmates, including Plaintiff, were placed in an approximately 800-square foot windowless cell

16  with bunk beds, sharing one dayroom, two stand-up shower stalls and four toilets. Each bunk bed

17  was about one foot apart. The windowless dayroom was about 150 square foot which was located

18  behind the toilets connected to the jail cell. Such condition provides the best opportunity for

19  contagions and puts all inmates' health at risk since the infection may not show symptoms right

20  away. Plaintiff was locked in this cramped jail cell 24 hours of every day and was permitted no

21  sunlight, fresh air, exercise, clocks, and environmental stimulation. Defendants only allowed

22  Plaintiff and other inmates to go up to the patio less than one hour per week which was Plaintiff's

23  only access to fresh air and sunlight. This only chance to get fresh air and sunlight subjected

24  Plaintiff to two times of strip search. This also means Plaintiff spent more than 48 consecutive

25  hours locked down and another 48 consecutive hours locked down was followed by less than one

26  hour of patio time..

27  **INTERROGATORY NO. 9**

28      State all facts supporting YOUR contention that the COUNTY implemented and/or

13

1   maintained policies and/or procedures to deprive YOU of sleep as alleged in YOUR Complaint.

2   **RESPONSE TO INTERROGATORY NO. 9**

3   "Courts generally disfavor contention interrogatories asked before discovery is undertaken.

4   *Tennison v. City & County of San Francisco*, 226 F.R.D. 615, 618 (N.D.Cal.2005). In fact, courts

5   tend to deny contention interrogatories filed before substantial discovery has taken place, but

6   grant them if discovery almost is complete. See, e.g., *Fischer & Porter Co. v. Tolson*, 143 F.R.D.

7   93, 95 (E.D.Pa.1992)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-JLS-MDD, at *20-21 (S.D.

8   Cal. Aug. 19, 2019).

9   "Pursuant to Rule 26, because the contention interrogatories seek "all facts" supporting

10  Plaintiff's allegations, they are overly broad and unduly burdensome on their face. See

11  FED.R.CIV.P. 26(b)(2)(C) (stating that the court must limit discovery if the burden of the

12  proposed discovery outweighs its likely benefit)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-

13  JLS-MDD, at *21 (S.D. Cal. Aug. 19, 2019).

14  Interrogatories are generally overly broad and unduly burdensome on their face when they

15  ask for "every" or "all facts" that support identified allegations. This request is premature,

16  overbroad, and improper. See, e.g., *Convolve v. Compaq Computer Corp.*, 223 F.R.D. 162, 173

17  (S.D.N.Y. 2004)(citations omitted)("A contention interrogatory is not simply a vehicle for

18  requiring an adversary to regurgitate all factual information obtained in discovery."); *Hilt v. SFC*

19  *Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997) (Finding that the rules do not require a statement of all

20  of the facts supporting every allegation and the identifications of every knowledgeable person and

21  supporting document); In the Matter of Aspen Tech., Inc., Dkt. No. 9310 (Dec. 23, 2003)(Order

22  Denying Motion to Compel Responses to Respondent's First Set of Interrogatories)(citing

23  *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989)(Finding that an interrogatory asking for

24  all facts supporting the entire claim is impermissible); Mort v. A/S/D/S Svendborg, 41 F.R.D.

25  225, 226 (E.D. Pa. 1966); *Fischer &Porter Co. v. Tolson*, et al., 143 F.R.D. 93, 96 (ED. Pa.

26  1992)(Finding that a party filing contention interrogatories must have well-tailored questions that

27  clarify the issues or narrow the scope of dispute.)

28  This request is vague, ambiguous, and confusing particularly with respect to the phrase "all

1   facts". It seeks "all facts" rather than "material" or "principal" facts which requires the

2   responding party to provide a narrative account of its case. It calls for a legal conclusion or in the

3   alternative, involves an opinion or conclusion that relates to fact or the application of law to fact.

4        A responding party has the duty to answer an overly broad or unduly burdensome

5   interrogatory to the extent it is not objectionable. Responding Party responds as follows: In the

6   cell the lights were never off. Even at night some of the lights were off but some of the lights

7   were 24-hour on and the lighting was bright enough to read. Plaintiff and other inmates were

8   assumed to be able to sleep with 24-hour lights on in their cell.

9   **INTERROGATORY NO. 10**

10        State all facts supporting YOUR contention that COUNTY employees intentionally denied

11   YOU basic necessities while in the COUNTY's custody as alleged in YOUR Complaint.

12   **RESPONSE TO INTERROGATORY NO. 10**

13        "Courts generally disfavor contention interrogatories asked before discovery is undertaken.

14   *Tennison v. City & County of San Francisco*, 226 F.R.D. 615, 618 (N.D.Cal.2005). In fact, courts

15   tend to deny contention interrogatories filed before substantial discovery has taken place, but

16   grant them if discovery almost is complete. See, e.g., *Fischer & Porter Co. v. Tolson*, 143 F.R.D.

17   93, 95 (E.D.Pa.1992)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-JLS-MDD, at *20-21 (S.D.

18   Cal. Aug. 19, 2019).

19        "Pursuant to Rule 26, because the contention interrogatories seek "all facts" supporting

20   Plaintiff's allegations, they are overly broad and unduly burdensome on their face. See

21   FED.R.CIV.P. 26(b)(2)(C) (stating that the court must limit discovery if the burden of the

22   proposed discovery outweighs its likely benefit)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-

23   JLS-MDD, at *21 (S.D. Cal. Aug. 19, 2019).

24        Interrogatories are generally overly broad and unduly burdensome on their face when they

25   ask for "every" or "all facts" that support identified allegations. This request is premature,

26   overbroad, and improper. See, e.g., *Convolve v. Compaq Computer Corp.*, 223 F.R.D. 162, 173

27   (S.D.N.Y. 2004)(citations omitted)("A contention interrogatory is not simply a vehicle for

28   requiring an adversary to regurgitate all factual information obtained in discovery."); *Hilt v. SFC*

1    *Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997) (Finding that the rules do not require a statement of all

2    of the facts supporting every allegation and the identifications of every knowledgeable person and

3    supporting document); In the Matter of Aspen Tech., Inc., Dkt. No. 9310 (Dec. 23, 2003)(Order

4    Denying Motion to Compel Responses to Respondent's First Set of Interrogatories)(citing

5    *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989)(Finding that an interrogatory asking for

6    all facts supporting the entire claim is impermissible); Mort v. A/S/D/S Svendborg, 41 F.R.D.

7    225, 226 (E.D. Pa. 1966); *Fischer &Porter Co. v. Tolson*, et al., 143 F.R.D. 93, 96 (ED. Pa.

8    1992)(Finding that a party filing contention interrogatories must have well-tailored questions that

9    clarify the issues or narrow the scope of dispute.)

10        This request is vague, ambiguous, and confusing particularly with respect to the phrase "all

11   facts". It seeks "all facts" rather than "material" or "principal" facts which requires the

12   responding party to provide a narrative account of its case. It calls for a legal conclusion or in the

13   alternative, involves an opinion or conclusion that relates to fact or the application of law to fact.

14        A responding party has the duty to answer an overly broad or unduly burdensome

15   interrogatory to the extent it is not objectionable. Responding Party responds as follows: Plaintiff

16   arrived at WCJ at around 10:50 am on August 8, 2019. The arresting police officer demanded the

17   pass code to Plaintiff's cell phone but Plaintiff refused to submit. Because Plaintiff did not

18   memorize any phone numbers, while she requested for her cell phone to get friend or family's

19   phone number the police officer denied her request because Plaintiff didn't submit the pass code

20   to her cell phone. Therefore, Plaintiff was not able to arrange bail through friends or family and

21   had to be housed as a pre-trial detainee which caused Plaintiff to spend four days in hell. After a

22   brief interview Plaintiff was taken to an open area for medical screening. Plaintiff told a deputy

23   that she was on period and she would need to use the restroom. Plaintiff was ordered to sit down

24   but she explained she could not sit down because her pad was full and if she sat down period

25   blood would come out. The deputy didn't care and pushed Plaintiff's shoulder to force her to sit

26   down. Plaintiff, a petite 100 lb soft-spoken woman, was arrested, helpless, shocked, and

27   frightened. She was also unarmed and defenseless, thus, in a vulnerable position in WCJ at the

28   hands of OCSD personnel who had the power to do anything to her. After Plaintiff changed her

1  pad she told a deputy (true name will be identified through formal discovery) that she was cold to

2  death and asked for blanket or clothing to keep warm but the deputy maliciously replied "It's

3  JAIL. Don't come to jail next time." even though the deputy was well aware that Plaintiff was in

4  great discomfort and denial of basic human needs would cause harm which is no different than

5  attempted murder. Plaintiff was only 100 lbs and wearing a T-shirt at the time. The jail facility

6  was kept bone chillingly cold. It was worse than being in winter without heater. Plaintiff told

7  herself "This is not jail. This is hell." Plaintiff told a female nurse (true name will be identified

8  through formal discovery) that she was cold to death but the nurse laughed at Plaintiff

9  intentionally and stated that she didn't feel cold even though the nurse was well aware that

10  Plaintiff was in great discomfort and denial of basic human needs would cause harm. Then

11  Plaintiff was held in a concrete icing cold holding cell while she was shaking from head to toe.

12  Later Plaintiff was transferred to another area and she told a male nurse (true name will be

13  identified through formal discovery) that she was cold to death. Again, the nurse was well aware

14  that Plaintiff was in great discomfort and denial of basic human needs would cause harm but

15  Plaintiff was ignored intentionally. Deliberate indifference to Plaintiff's repeated requests

16  demonstrates a willful rejection to issue blanket or clothing for Plaintiff to keep warm. After

17  Plaintiff's arrival around 11 am she was not provided with lunch in WCJ. Her last meal was a

18  quick and small breakfast around 7 am. Between 5 pm and 9 pm Plaintiff repeatedly requested

19  food but her requests were denied by falsely being told three times she would get food later but

20  she didn't get any food until the next day morning. Each time when Plaintiff requested food

21  OCSD personnel (true name will be identified through formal discovery) was well aware that

22  Plaintiff was starving and food was life necessity.

23  **INTERROGATORY NO. 11**

24      State all facts supporting YOUR contention that the cell search conducted on August 11,

25  2019 was conducted in retaliation of YOUR speech protected under the First Amendment as

26  alleged in YOUR Complaint.

27  **RESPONSE TO INTERROGATORY NO. 11**

28      "Courts generally disfavor contention interrogatories asked before discovery is undertaken.

17

1   *Tennison v. City & County of San Francisco*, 226 F.R.D. 615, 618 (N.D.Cal.2005). In fact, courts

2   tend to deny contention interrogatories filed before substantial discovery has taken place, but

3   grant them if discovery almost is complete. See, e.g., *Fischer & Porter Co. v. Tolson*, 143 F.R.D.

4   93, 95 (E.D.Pa.1992)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-JLS-MDD, at *20-21 (S.D.

5   Cal. Aug. 19, 2019).

6        "Pursuant to Rule 26, because the contention interrogatories seek "all facts" supporting

7   Plaintiff's allegations, they are overly broad and unduly burdensome on their face. See

8   FED.R.CIV.P. 26(b)(2)(C) (stating that the court must limit discovery if the burden of the

9   proposed discovery outweighs its likely benefit)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-

10  JLS-MDD, at *21 (S.D. Cal. Aug. 19, 2019).

11       Interrogatories are generally overly broad and unduly burdensome on their face when they

12  ask for "every" or "all facts" that support identified allegations. This request is premature,

13  overbroad, and improper. See, e.g., *Convolve v. Compaq Computer Corp.*, 223 F.R.D. 162, 173

14  (S.D.N.Y. 2004)(citations omitted)("A contention interrogatory is not simply a vehicle for

15  requiring an adversary to regurgitate all factual information obtained in discovery."); *Hilt v. SFC*

16  *Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997) (Finding that the rules do not require a statement of all

17  of the facts supporting every allegation and the identifications of every knowledgeable person and

18  supporting document); In the Matter of Aspen Tech., Inc., Dkt. No. 9310 (Dec. 23, 2003)(Order

19  Denying Motion to Compel Responses to Respondent's First Set of Interrogatories)(citing

20  *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989)(Finding that an interrogatory asking for

21  all facts supporting the entire claim is impermissible); Mort v. A/S/D/S Svendborg, 41 F.R.D.

22  225, 226 (E.D. Pa. 1966); *Fischer &Porter Co. v. Tolson*, et al., 143 F.R.D. 93, 96 (ED. Pa.

23  1992)(Finding that a party filing contention interrogatories must have well-tailored questions that

24  clarify the issues or narrow the scope of dispute.)

25       This request is vague, ambiguous, and confusing particularly with respect to the phrase "all

26  facts". It seeks "all facts" rather than "material" or "principal" facts which requires the

27  responding party to provide a narrative account of its case. It calls for a legal conclusion or in the

28  alternative, involves an opinion or conclusion that relates to fact or the application of law to fact.

18

**DEFTS. MSJ B 157**

1    A responding party has the duty to answer an overly broad or unduly burdensome

2    interrogatory to the extent it is not objectionable. Responding Party responds as follows: During

3    the shakedown one deputy loudly announced that such searches would continue regularly unless

4    and until all inmates would keep quiet during the day. The deputy went on and declared in a

5    degrading manner that dayroom and phone service would be shut down unless and until all

6    inmates would shut up during the day.

7    **INTERROGATORY NO. 12**

8    State all facts supporting YOUR contention that the COUNTY does not have reasonable

9    bases for conducting randomized cell searches.

10   **RESPONSE TO INTERROGATORY NO. 12**

11   "Courts generally disfavor contention interrogatories asked before discovery is undertaken.

12   *Tennison v. City & County of San Francisco*, 226 F.R.D. 615, 618 (N.D.Cal.2005). In fact, courts

13   tend to deny contention interrogatories filed before substantial discovery has taken place, but

14   grant them if discovery almost is complete. See, e.g., *Fischer & Porter Co. v. Tolson*, 143 F.R.D.

15   93, 95 (E.D.Pa.1992)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-JLS-MDD, at *20-21 (S.D.

16   Cal. Aug. 19, 2019).

17   "Pursuant to Rule 26, because the contention interrogatories seek "all facts" supporting

18   Plaintiff's allegations, they are overly broad and unduly burdensome on their face. See

19   FED.R.CIV.P. 26(b)(2)(C) (stating that the court must limit discovery if the burden of the

20   proposed discovery outweighs its likely benefit)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-

21   JLS-MDD, at *21 (S.D. Cal. Aug. 19, 2019).

22   Interrogatories are generally overly broad and unduly burdensome on their face when they

23   ask for "every" or "all facts" that support identified allegations. This request is premature,

24   overbroad, and improper. See, e.g., *Convolve v. Compaq Computer Corp.*, 223 F.R.D. 162, 173

25   (S.D.N.Y. 2004)(citations omitted)("A contention interrogatory is not simply a vehicle for

26   requiring an adversary to regurgitate all factual information obtained in discovery."); *Hilt v. SFC*

27   *Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997) (Finding that the rules do not require a statement of all

28   of the facts supporting every allegation and the identifications of every knowledgeable person and

19

1    supporting document); In the Matter of Aspen Tech., Inc., Dkt. No. 9310 (Dec. 23, 2003)(Order

2    Denying Motion to Compel Responses to Respondent's First Set of Interrogatories)(citing

3    *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989)(Finding that an interrogatory asking for

4    all facts supporting the entire claim is impermissible); Mort v. A/S/D/S Svendborg, 41 F.R.D.

5    225, 226 (E.D. Pa. 1966); *Fischer &Porter Co. v. Tolson*, et al., 143 F.R.D. 93, 96 (ED. Pa.

6    1992)(Finding that a party filing contention interrogatories must have well-tailored questions that

7    clarify the issues or narrow the scope of dispute.)

8         This request is vague, ambiguous, and confusing particularly with respect to the phrase "all

9    facts". It seeks "all facts" rather than "material" or "principal" facts which requires the

10   responding party to provide a narrative account of its case. It calls for a legal conclusion or in the

11   alternative, involves an opinion or conclusion that relates to fact or the application of law to fact.

12        A responding party has the duty to answer an overly broad or unduly burdensome

13   interrogatory to the extent it is not objectionable. Responding Party responds as follows: During

14   the shakedown one deputy loudly announced that such searches would continue regularly unless

15   and until all inmates would keep quiet during the day. The deputy went on and declared in a

16   degrading manner that dayroom and phone service would be shut down unless and until all

17   inmates would shut up during the day. The nature of the shakedown was not a randomized cell

18   search.

19   **INTERROGATORY NO. 13**

20        State all facts supporting YOUR contention that the COUNTY conspired to deprive YOU of

21   YOUR First Amendment rights as alleged in YOUR Complaint.

22   **RESPONSE TO INTERROGATORY NO. 13**

23        Objection. Pursuant to FRCP 26(b)(1), parties may obtain discovery regarding any

24   nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs

25   of the case. The request exceeds the scope of permissible discovery because Plaintiff does not

26   allege that the County conspired to deprive her of her First Amendment rights.

27   **INTERROGATORY NO. 14**

28        State all facts supporting YOUR contention that the COUNTY conspired to deprive YOU of

20

PLAINTIFF'S 1ST AMENDED RESPONSES TO DEFENDANT THE COUNTY'S INTERROGATORIES (SET 1)

1    YOUR Fourth Amendment rights as alleged in YOUR Complaint.

2    **RESPONSE TO INTERROGATORY NO. 14**

3        Objection. Pursuant to FRCP 26(b)(1), parties may obtain discovery regarding any

4    nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs

5    of the case. The request exceeds the scope of permissible discovery because Plaintiff does not

6    allege that the County conspired to deprive her of her Fourth Amendment rights.

7    **INTERROGATORY NO. 15**

8        State all facts supporting YOUR contention that the COUNTY engaged in oral, written, or

9    electronic communication with other named defendants to this action to conspire to deprive YOU

10   of YOUR Fourth Amendment rights as alleged in YOUR Complaint.

11   **RESPONSE TO INTERROGATORY NO. 15**

12       Objection. Pursuant to FRCP 26(b)(1), parties may obtain discovery regarding any

13   nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs

14   of the case. The request exceeds the scope of permissible discovery because Plaintiff does not

15   allege that the County conspired to deprive her of her Fourth Amendment rights.

16   **INTERROGATORY NO. 16**

17       State all facts supporting YOUR contention that the COUNTY knowing and willfully

18   maintained, applied, or enforced a policy, custom or practice to permit abuse of authority as

19   alleged in YOUR Complaint.

20   **RESPONSE TO INTERROGATORY NO. 16**

21       "Courts generally disfavor contention interrogatories asked before discovery is undertaken.

22   *Tennison v. City & County of San Francisco*, 226 F.R.D. 615, 618 (N.D.Cal.2005). In fact, courts

23   tend to deny contention interrogatories filed before substantial discovery has taken place, but

24   grant them if discovery almost is complete. See, e.g., *Fischer & Porter Co. v. Tolson*, 143 F.R.D.

25   93, 95 (E.D.Pa.1992)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-JLS-MDD, at *20-21 (S.D.

26   Cal. Aug. 19, 2019).

27       "Pursuant to Rule 26, because the contention interrogatories seek "all facts" supporting

28   Plaintiff's allegations, they are overly broad and unduly burdensome on their face. See

21

PLAINTIFF'S 1ST AMENDED RESPONSES TO DEFENDANT THE COUNTY'S INTERROGATORIES (SET 1)

**DEFTS. MSJ B 160**

1   FED.R.CIV.P. 26(b)(2)(C) (stating that the court must limit discovery if the burden of the

2   proposed discovery outweighs its likely benefit)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-

3   JLS-MDD, at *21 (S.D. Cal. Aug. 19, 2019).

4        Interrogatories are generally overly broad and unduly burdensome on their face when they

5   ask for "every" or "all facts" that support identified allegations. This request is premature,

6   overbroad, and improper. See, e.g., *Convolve v. Compaq Computer Corp.*, 223 F.R.D. 162, 173

7   (S.D.N.Y. 2004)(citations omitted)("A contention interrogatory is not simply a vehicle for

8   requiring an adversary to regurgitate all factual information obtained in discovery."); *Hilt v. SFC*

9   *Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997) (Finding that the rules do not require a statement of all

10  of the facts supporting every allegation and the identifications of every knowledgeable person and

11  supporting document); In the Matter of Aspen Tech., Inc., Dkt. No. 9310 (Dec. 23, 2003)(Order

12  Denying Motion to Compel Responses to Respondent's First Set of Interrogatories)(citing

13  *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989)(Finding that an interrogatory asking for

14  all facts supporting the entire claim is impermissible); Mort v. A/S/D/S Svendborg, 41 F.R.D.

15  225, 226 (E.D. Pa. 1966); *Fischer &Porter Co. v. Tolson*, et al., 143 F.R.D. 93, 96 (ED. Pa.

16  1992)(Finding that a party filing contention interrogatories must have well-tailored questions that

17  clarify the issues or narrow the scope of dispute.)

18       This request is vague, ambiguous, and confusing particularly with respect to the phrase "all

19  facts". It seeks "all facts" rather than "material" or "principal" facts which requires the

20  responding party to provide a narrative account of its case. It calls for a legal conclusion or in the

21  alternative, involves an opinion or conclusion that relates to fact or the application of law to fact.

22       A responding party has the duty to answer an overly broad or unduly burdensome

23  interrogatory to the extent it is not objectionable. Responding Party responds as follows:

24  **INTERROGATORY NO. 17**

25       State all facts supporting YOUR contention that the COUNTY knowing and willfully

26  maintained, applied, or enforced a policy, custom or practice to deny YOU of hygienic supplies

27  as alleged in YOUR Complaint.

28  **RESPONSE TO INTERROGATORY NO. 17**

1    "Courts generally disfavor contention interrogatories asked before discovery is undertaken.

2    *Tennison v. City & County of San Francisco*, 226 F.R.D. 615, 618 (N.D.Cal.2005). In fact, courts

3    tend to deny contention interrogatories filed before substantial discovery has taken place, but

4    grant them if discovery almost is complete. See, e.g., *Fischer & Porter Co. v. Tolson*, 143 F.R.D.

5    93, 95 (E.D.Pa.1992)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-JLS-MDD, at *20-21 (S.D.

6    Cal. Aug. 19, 2019).

7    "Pursuant to Rule 26, because the contention interrogatories seek "all facts" supporting

8    Plaintiff's allegations, they are overly broad and unduly burdensome on their face. See

9    FED.R.CIV.P. 26(b)(2)(C) (stating that the court must limit discovery if the burden of the

10    proposed discovery outweighs its likely benefit)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-

11    JLS-MDD, at *21 (S.D. Cal. Aug. 19, 2019).

12    Interrogatories are generally overly broad and unduly burdensome on their face when they

13    ask for "every" or "all facts" that support identified allegations. This request is premature,

14    overbroad, and improper. See, e.g., *Convolve v. Compaq Computer Corp.*, 223 F.R.D. 162, 173

15    (S.D.N.Y. 2004)(citations omitted)("A contention interrogatory is not simply a vehicle for

16    requiring an adversary to regurgitate all factual information obtained in discovery."); *Hilt v. SFC*

17    *Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997) (Finding that the rules do not require a statement of all

18    of the facts supporting every allegation and the identifications of every knowledgeable person and

19    supporting document); In the Matter of Aspen Tech., Inc., Dkt. No. 9310 (Dec. 23, 2003)(Order

20    Denying Motion to Compel Responses to Respondent's First Set of Interrogatories)(citing

21    *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989)(Finding that an interrogatory asking for

22    all facts supporting the entire claim is impermissible); Mort v. A/S/D/S Svendborg, 41 F.R.D.

23    225, 226 (E.D. Pa. 1966); *Fischer &Porter Co. v. Tolson*, et al., 143 F.R.D. 93, 96 (ED. Pa.

24    1992)(Finding that a party filing contention interrogatories must have well-tailored questions that

25    clarify the issues or narrow the scope of dispute.)

26    This request is vague, ambiguous, and confusing particularly with respect to the phrase "all

27    facts". It seeks "all facts" rather than "material" or "principal" facts which requires the

28    responding party to provide a narrative account of its case. It calls for a legal conclusion or in the

1    alternative, involves an opinion or conclusion that relates to fact or the application of law to fact.

2         A responding party has the duty to answer an overly broad or unduly burdensome

3    interrogatory to the extent it is not objectionable. Responding Party responds as follows: Hygienic

4    supplies sufficient to meet basic needs are constitutionally required. Only the first set of hygienic

5    supplies (soap and toothpaste), enough for two days in use, was provided by OCSD free of

6    charge. Shampoo was not included in hygienic supplies. Despite inmates' financial ability

7    hygienic supplies were on their own expenses. The purchase price set by OCSD is way higher

8    than regular store. As inmates cannot possess money during confinement they have to make

9    purchase through their family or friends which causes unnecessary inconvenience

10   **INTERROGATORY NO. 18**

11        State all facts supporting YOUR contention that the COUNTY knowingly and willfully

12   maintained, applied, or enforced a policy, custom or practice to strip search YOU as alleged in

13   YOUR Complaint.

14   **RESPONSE TO INTERROGATORY NO. 18**

15        "Courts generally disfavor contention interrogatories asked before discovery is undertaken.

16   *Tennison v. City & County of San Francisco*, 226 F.R.D. 615, 618 (N.D.Cal.2005). In fact, courts

17   tend to deny contention interrogatories filed before substantial discovery has taken place, but

18   grant them if discovery almost is complete. See, e.g., *Fischer & Porter Co. v. Tolson*, 143 F.R.D.

19   93, 95 (E.D.Pa.1992)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-JLS-MDD, at *20-21 (S.D.

20   Cal. Aug. 19, 2019).

21        "Pursuant to Rule 26, because the contention interrogatories seek "all facts" supporting

22   Plaintiff's allegations, they are overly broad and unduly burdensome on their face. See

23   FED.R.CIV.P. 26(b)(2)(C) (stating that the court must limit discovery if the burden of the

24   proposed discovery outweighs its likely benefit)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-

25   JLS-MDD, at *21 (S.D. Cal. Aug. 19, 2019).

26        Interrogatories are generally overly broad and unduly burdensome on their face when they

27   ask for "every" or "all facts" that support identified allegations. This request is premature,

28   overbroad, and improper. See, e.g., *Convolve v. Compaq Computer Corp.*, 223 F.R.D. 162, 173

24

1    (S.D.N.Y. 2004)(citations omitted)("A contention interrogatory is not simply a vehicle for

2    requiring an adversary to regurgitate all factual information obtained in discovery."); *Hilt v. SFC*

3    *Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997) (Finding that the rules do not require a statement of all

4    of the facts supporting every allegation and the identifications of every knowledgeable person and

5    supporting document); In the Matter of Aspen Tech., Inc., Dkt. No. 9310 (Dec. 23, 2003)(Order

6    Denying Motion to Compel Responses to Respondent's First Set of Interrogatories)(citing

7    *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989)(Finding that an interrogatory asking for

8    all facts supporting the entire claim is impermissible); Mort v. A/S/D/S Svendborg, 41 F.R.D.

9    225, 226 (E.D. Pa. 1966); *Fischer &Porter Co. v. Tolson*, et al., 143 F.R.D. 93, 96 (ED. Pa.

10   1992)(Finding that a party filing contention interrogatories must have well-tailored questions that

11   clarify the issues or narrow the scope of dispute.)

12        This request is vague, ambiguous, and confusing particularly with respect to the phrase "all

13   facts". It seeks "all facts" rather than "material" or "principal" facts which requires the

14   responding party to provide a narrative account of its case. It calls for a legal conclusion or in the

15   alternative, involves an opinion or conclusion that relates to fact or the application of law to fact.

16        A responding party has the duty to answer an overly broad or unduly burdensome

17   interrogatory to the extent it is not objectionable. Responding Party responds as follows: After

18   being forced to be strip naked and a mandatory shower in the view and presence of OCSD

19   personnel and other inmates, between August 8 and 12, 2019 Plaintiff was strip searched for

20   seven times: Before being housed in general population and after a mandatory shower in the

21   presence and view of OCSD personnel on August 8, 2019; Before going up to the patio on

22   August 10, 2019; Upon return from the patio on August 10, 2019; Before leaving for court on

23   August 12, 2019; Upon arrival at court on August 12, 2019; Upon return from court with

24   approval of release on own recognizance on August 12, 2019; Right before leaving WCJ on

25   August 12, 2019. Policy of strip searching all arrestees who are returned to a jail facility from

26   court violates the Fourth Amendment. Even after Plaintiff was released on her own recognizance,

27   right before leaving WCJ she was strip searched without any "reasonable suspicion".

28   **INTERROGATORY NO. 19**

**DEFTS. MSJ B 164**

1   State all facts supporting YOUR contention that the COUNTY knowingly and willfully

2   maintained, applied, or enforced a policy, custom or practice to conduct harassing cell searches as

3   alleged in YOUR Complaint

4   **RESPONSE TO INTERROGATORY NO. 19**

5   "Courts generally disfavor contention interrogatories asked before discovery is undertaken.

6   *Tennison v. City & County of San Francisco*, 226 F.R.D. 615, 618 (N.D.Cal.2005). In fact, courts

7   tend to deny contention interrogatories filed before substantial discovery has taken place, but

8   grant them if discovery almost is complete. See, e.g., *Fischer & Porter Co. v. Tolson*, 143 F.R.D.

9   93, 95 (E.D.Pa.1992)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-JLS-MDD, at *20-21 (S.D.

10  Cal. Aug. 19, 2019).

11  "Pursuant to Rule 26, because the contention interrogatories seek "all facts" supporting

12  Plaintiff's allegations, they are overly broad and unduly burdensome on their face. See

13  FED.R.CIV.P. 26(b)(2)(C) (stating that the court must limit discovery if the burden of the

14  proposed discovery outweighs its likely benefit)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-

15  JLS-MDD, at *21 (S.D. Cal. Aug. 19, 2019).

16  Interrogatories are generally overly broad and unduly burdensome on their face when they

17  ask for "every" or "all facts" that support identified allegations. This request is premature,

18  overbroad, and improper. See, e.g., *Convolve v. Compaq Computer Corp.*, 223 F.R.D. 162, 173

19  (S.D.N.Y. 2004)(citations omitted)("A contention interrogatory is not simply a vehicle for

20  requiring an adversary to regurgitate all factual information obtained in discovery."); *Hilt v. SFC*

21  *Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997) (Finding that the rules do not require a statement of all

22  of the facts supporting every allegation and the identifications of every knowledgeable person and

23  supporting document); In the Matter of Aspen Tech., Inc., Dkt. No. 9310 (Dec. 23, 2003)(Order

24  Denying Motion to Compel Responses to Respondent's First Set of Interrogatories)(citing

25  *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989)(Finding that an interrogatory asking for

26  all facts supporting the entire claim is impermissible); Mort v. A/S/D/S Svendborg, 41 F.R.D.

27  225, 226 (E.D. Pa. 1966); *Fischer &Porter Co. v. Tolson*, et al., 143 F.R.D. 93, 96 (ED. Pa.

28  1992)(Finding that a party filing contention interrogatories must have well-tailored questions that

1   clarify the issues or narrow the scope of dispute.)

2       This request is vague, ambiguous, and confusing particularly with respect to the phrase "all

3   facts". It seeks "all facts" rather than "material" or "principal" facts which requires the

4   responding party to provide a narrative account of its case. It calls for a legal conclusion or in the

5   alternative, involves an opinion or conclusion that relates to fact or the application of law to fact.

6       A responding party has the duty to answer an overly broad or unduly burdensome

7   interrogatory to the extent it is not objectionable. Responding Party responds as follows: The

8   policies, practices and customs that caused Plaintiff's injuries include Defendant Orange

9   County's failure to train its staff in the face of an obvious need for training to prevent the

10  violations. The County with deliberate indifference towards the civil rights of detainees,

11  knowingly and willfully did maintain, enforce, and apply a custom, practice, policy and usage

12  tending to encourage, promote, sanction, tolerate and ratify the abuse of authority and harassing

13  cell search. The training policies of the County were not adequate to train and supervise its

14  personnel. As a result, OCSD personnel, are not able to handle the usual and recurring situations

15  with which they must deal.

16  **INTERROGATORY NO. 20**

17      State all facts supporting YOUR contention that the COUNTY had actual knowledge of the

18  alleged deficient policies, customs or practices as alleged in YOUR Complaint.

19  **RESPONSE TO INTERROGATORY NO. 20**

20      "Courts generally disfavor contention interrogatories asked before discovery is undertaken.

21  *Tennison v. City & County of San Francisco*, 226 F.R.D. 615, 618 (N.D.Cal.2005). In fact, courts

22  tend to deny contention interrogatories filed before substantial discovery has taken place, but

23  grant them if discovery almost is complete. See, e.g., *Fischer & Porter Co. v. Tolson*, 143 F.R.D.

24  93, 95 (E.D.Pa.1992)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-JLS-MDD, at *20-21 (S.D.

25  Cal. Aug. 19, 2019).

26      "Pursuant to Rule 26, because the contention interrogatories seek "all facts" supporting

27  Plaintiff's allegations, they are overly broad and unduly burdensome on their face. See

28  FED.R.CIV.P. 26(b)(2)(C) (stating that the court must limit discovery if the burden of the

1 | proposed discovery outweighs its likely benefit)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-
2 | JLS-MDD, at *21 (S.D. Cal. Aug. 19, 2019).

3 |      Interrogatories are generally overly broad and unduly burdensome on their face when they
4 | ask for "every" or "all facts" that support identified allegations. This request is premature,
5 | overbroad, and improper. See, e.g., *Convolve v. Compaq Computer Corp.*, 223 F.R.D. 162, 173
6 | (S.D.N.Y. 2004)(citations omitted)("A contention interrogatory is not simply a vehicle for
7 | requiring an adversary to regurgitate all factual information obtained in discovery."); *Hilt v. SFC*
8 | *Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997) (Finding that the rules do not require a statement of all
9 | of the facts supporting every allegation and the identifications of every knowledgeable person and
10 | supporting document); In the Matter of Aspen Tech., Inc., Dkt. No. 9310 (Dec. 23, 2003)(Order
11 | Denying Motion to Compel Responses to Respondent's First Set of Interrogatories)(citing
12 | *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989)(Finding that an interrogatory asking for
13 | all facts supporting the entire claim is impermissible); Mort v. A/S/D/S Svendborg, 41 F.R.D.
14 | 225, 226 (E.D. Pa. 1966); *Fischer &Porter Co. v. Tolson*, et al., 143 F.R.D. 93, 96 (ED. Pa.
15 | 1992)(Finding that a party filing contention interrogatories must have well-tailored questions that
16 | clarify the issues or narrow the scope of dispute.)

17 |      This request is vague, ambiguous, and confusing particularly with respect to the phrase "all
18 | facts". It seeks "all facts" rather than "material" or "principal" facts which requires the
19 | responding party to provide a narrative account of its case. It calls for a legal conclusion or in the
20 | alternative, involves an opinion or conclusion that relates to fact or the application of law to fact.

21 |      A responding party has the duty to answer an overly broad or unduly burdensome
22 | interrogatory to the extent it is not objectionable. Responding Party responds as follows: It's self-
23 | evident that all unconstitutional polices are approved and implemented by the County.

24 | **INTERROGATORY NO. 21**

25 |      State all facts supporting YOUR contention that the COUNTY had constructive knowledge
26 | of the alleged deficient policies, customs or practices as alleged in YOUR Complaint.

27 | **RESPONSE TO INTERROGATORY NO. 21**

28 |      "Courts generally disfavor contention interrogatories asked before discovery is undertaken.

1    *Tennison v. City & County of San Francisco*, 226 F.R.D. 615, 618 (N.D.Cal.2005). In fact, courts

2    tend to deny contention interrogatories filed before substantial discovery has taken place, but

3    grant them if discovery almost is complete. See, e.g., *Fischer & Porter Co. v. Tolson*, 143 F.R.D.

4    93, 95 (E.D.Pa.1992)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-JLS-MDD, at *20-21 (S.D.

5    Cal. Aug. 19, 2019).

6        "Pursuant to Rule 26, because the contention interrogatories seek "all facts" supporting

7    Plaintiff's allegations, they are overly broad and unduly burdensome on their face. See

8    FED.R.CIV.P. 26(b)(2)(C) (stating that the court must limit discovery if the burden of the

9    proposed discovery outweighs its likely benefit)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-

10   JLS-MDD, at *21 (S.D. Cal. Aug. 19, 2019).

11       Interrogatories are generally overly broad and unduly burdensome on their face when they

12   ask for "every" or "all facts" that support identified allegations. This request is premature,

13   overbroad, and improper. See, e.g., *Convolve v. Compaq Computer Corp.*, 223 F.R.D. 162, 173

14   (S.D.N.Y. 2004)(citations omitted)("A contention interrogatory is not simply a vehicle for

15   requiring an adversary to regurgitate all factual information obtained in discovery."); *Hilt v. SFC*

16   *Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997) (Finding that the rules do not require a statement of all

17   of the facts supporting every allegation and the identifications of every knowledgeable person and

18   supporting document); In the Matter of Aspen Tech., Inc., Dkt. No. 9310 (Dec. 23, 2003)(Order

19   Denying Motion to Compel Responses to Respondent's First Set of Interrogatories)(citing

20   *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989)(Finding that an interrogatory asking for

21   all facts supporting the entire claim is impermissible); Mort v. A/S/D/S Svendborg, 41 F.R.D.

22   225, 226 (E.D. Pa. 1966); *Fischer &Porter Co. v. Tolson*, et al., 143 F.R.D. 93, 96 (ED. Pa.

23   1992)(Finding that a party filing contention interrogatories must have well-tailored questions that

24   clarify the issues or narrow the scope of dispute.)

25       This request is vague, ambiguous, and confusing particularly with respect to the phrase "all

26   facts". It seeks "all facts" rather than "material" or "principal" facts which requires the

27   responding party to provide a narrative account of its case. It calls for a legal conclusion or in the

28   alternative, involves an opinion or conclusion that relates to fact or the application of law to fact.

29

A responding party has the duty to answer an overly broad or unduly burdensome interrogatory to the extent it is not objectionable. Responding Party responds as follows: It's self-evident that all unconstitutional polices are approved and implemented by the County.

**INTERROGATORY NO. 22**

State all facts supporting YOUR contention that the COUNTY acted willfully, wantonly, oppressively, maliciously, fraudulently, and in an extremely offensive and unconscionable manner as alleged in YOUR Complaint.

**RESPONSE TO INTERROGATORY NO. 22**

"Courts generally disfavor contention interrogatories asked before discovery is undertaken. *Tennison v. City & County of San Francisco*, 226 F.R.D. 615, 618 (N.D.Cal.2005). In fact, courts tend to deny contention interrogatories filed before substantial discovery has taken place, but grant them if discovery almost is complete. See, e.g., *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 95 (E.D.Pa.1992)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-JLS-MDD, at *20-21 (S.D. Cal. Aug. 19, 2019).

"Pursuant to Rule 26, because the contention interrogatories seek "all facts" supporting Plaintiff's allegations, they are overly broad and unduly burdensome on their face. See FED.R.CIV.P. 26(b)(2)(C) (stating that the court must limit discovery if the burden of the proposed discovery outweighs its likely benefit)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-JLS-MDD, at *21 (S.D. Cal. Aug. 19, 2019).

Interrogatories are generally overly broad and unduly burdensome on their face when they ask for "every" or "all facts" that support identified allegations. This request is premature, overbroad, and improper. See, e.g., *Convolve v. Compaq Computer Corp.*, 223 F.R.D. 162, 173 (S.D.N.Y. 2004)(citations omitted)("A contention interrogatory is not simply a vehicle for requiring an adversary to regurgitate all factual information obtained in discovery."); *Hilt v. SFC Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997) (Finding that the rules do not require a statement of all of the facts supporting every allegation and the identifications of every knowledgeable person and supporting document); In the Matter of Aspen Tech., Inc., Dkt. No. 9310 (Dec. 23, 2003)(Order Denying Motion to Compel Responses to Respondent's First Set of Interrogatories)(citing

30

1   *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989)(Finding that an interrogatory asking for

2   all facts supporting the entire claim is impermissible); Mort v. A/S/D/S Svendborg, 41 F.R.D.

3   225, 226 (E.D. Pa. 1966); *Fischer &Porter Co. v. Tolson*, et al., 143 F.R.D. 93, 96 (ED. Pa.

4   1992)(Finding that a party filing contention interrogatories must have well-tailored questions that

5   clarify the issues or narrow the scope of dispute.)

6          This request is vague, ambiguous, and confusing particularly with respect to the phrase "all

7   facts". It seeks "all facts" rather than "material" or "principal" facts which requires the

8   responding party to provide a narrative account of its case. It calls for a legal conclusion or in the

9   alternative, involves an opinion or conclusion that relates to fact or the application of law to fact.

10         A responding party has the duty to answer an overly broad or unduly burdensome

11  interrogatory to the extent it is not objectionable. Responding Party responds as follows: Plaintiff

12  arrived at WCJ at around 10:50 am on August 8, 2019. After a brief interview Plaintiff was taken

13  to an open area for medical screening. Plaintiff told a deputy that she was on period and she

14  would need to use the restroom. Plaintiff was ordered to sit down but she explained she could not

15  sit down because her pad was full and if she sat down period blood would come out. The deputy

16  didn't care and pushed Plaintiff's shoulder to force her to sit down. Plaintiff, a petite 100 lb soft-

17  spoken woman, was arrested, helpless, shocked, and frightened. She was also unarmed and

18  defenseless, thus, in a vulnerable position in WCJ at the hands of OCSD personnel who had the

19  power to do anything to her. After Plaintiff changed her pad she told a deputy (true name will be

20  identified through formal discovery) that she was cold to death and asked for blanket or clothing

21  to keep warm but the deputy maliciously replied "It's JAIL. Don't come to jail next time."

22  Plaintiff told a female nurse (true name will be identified through formal discovery) that she was

23  cold to death but the nurse laughed at Plaintiff intentionally and stated that she didn't feel cold

24  even though the nurse was well aware that Plaintiff was in great discomfort and denial of basic

25  human needs would cause harm. Then Plaintiff was held in a concrete icing cold holding cell

26  while she was shaking from head to toe.  Later Plaintiff was transferred to another area and she

27  told a male nurse (true name will be identified through formal discovery) that she was cold to

28  death. Again, the nurse was well aware that Plaintiff was in great discomfort and denial of basic

1    human needs would cause harm but Plaintiff was ignored intentionally. Deliberate indifference to

2    Plaintiff's repeated requests demonstrates a willful rejection to issue blanket or clothing for

3    Plaintiff to keep warm. After Plaintiff's arrival around 11 am she was not provided with lunch in

4    WCJ. Her last meal was a quick and small breakfast around 7 am. Between 5 pm and 9 pm

5    Plaintiff repeatedly requested food but her requests were denied by falsely being told three times

6    she would get food later but she didn't get any food until the next day morning. Each time when

7    Plaintiff requested food OCSD personnel (true name will be identified through formal discovery)

8    was well aware that Plaintiff was starving and food was life necessity. After being forced to be

9    strip naked and a mandatory shower in the view and presence of OCSD personnel and other

10   inmates, between August 8 and 12, 2019 Plaintiff was strip searched for seven times: Before

11   being housed in general population and after a mandatory shower in the presence and view of

12   OCSD personnel on August 8, 2019; Before going up to the patio on August 10, 2019; Upon

13   return from the patio on August 10, 2019; Before leaving for court on August 12, 2019; Upon

14   arrival at court on August 12, 2019; Upon return from court with approval of release on own

15   recognizance on August 12, 2019; Right before leaving WCJ on August 12, 2019.

16   **INTERROGATORY NO. 23**

17       State all facts supporting YOUR contention that the COUNTY did not adequately train its

18   personnel as alleged in the Complaint.

19   **RESPONSE TO INTERROGATORY NO. 23**

20       "Courts generally disfavor contention interrogatories asked before discovery is undertaken.

21   *Tennison v. City & County of San Francisco*, 226 F.R.D. 615, 618 (N.D.Cal.2005). In fact, courts

22   tend to deny contention interrogatories filed before substantial discovery has taken place, but

23   grant them if discovery almost is complete. See, e.g., *Fischer & Porter Co. v. Tolson*, 143 F.R.D.

24   93, 95 (E.D.Pa.1992)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-JLS-MDD, at *20-21 (S.D.

25   Cal. Aug. 19, 2019).

26       "Pursuant to Rule 26, because the contention interrogatories seek "all facts" supporting

27   Plaintiff's allegations, they are overly broad and unduly burdensome on their face. See

28   FED.R.CIV.P. 26(b)(2)(C) (stating that the court must limit discovery if the burden of the

32

1   proposed discovery outweighs its likely benefit)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-

2   JLS-MDD, at \*21 (S.D. Cal. Aug. 19, 2019).

3         Interrogatories are generally overly broad and unduly burdensome on their face when they

4   ask for "every" or "all facts" that support identified allegations. This request is premature,

5   overbroad, and improper. See, e.g., *Convolve v. Compaq Computer Corp.*, 223 F.R.D. 162, 173

6   (S.D.N.Y. 2004)(citations omitted)("A contention interrogatory is not simply a vehicle for

7   requiring an adversary to regurgitate all factual information obtained in discovery."); *Hilt v. SFC*

8   *Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997) (Finding that the rules do not require a statement of all

9   of the facts supporting every allegation and the identifications of every knowledgeable person and

10  supporting document); In the Matter of Aspen Tech., Inc., Dkt. No. 9310 (Dec. 23, 2003)(Order

11  Denying Motion to Compel Responses to Respondent's First Set of Interrogatories)(citing

12  *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989)(Finding that an interrogatory asking for

13  all facts supporting the entire claim is impermissible); Mort v. A/S/D/S Svendborg, 41 F.R.D.

14  225, 226 (E.D. Pa. 1966); *Fischer &Porter Co. v. Tolson*, et al., 143 F.R.D. 93, 96 (ED. Pa.

15  1992)(Finding that a party filing contention interrogatories must have well-tailored questions that

16  clarify the issues or narrow the scope of dispute.)

17        This request is vague, ambiguous, and confusing particularly with respect to the phrase "all

18  facts". It seeks "all facts" rather than "material" or "principal" facts which requires the

19  responding party to provide a narrative account of its case. It calls for a legal conclusion or in the

20  alternative, involves an opinion or conclusion that relates to fact or the application of law to fact.

21        A responding party has the duty to answer an overly broad or unduly burdensome

22  interrogatory to the extent it is not objectionable. Responding Party responds as follows: The

23  policies, practices and customs that caused Plaintiff's injuries include Defendant Orange

24  County's failure to train its staff in the face of an obvious need for training to prevent the

25  violations. The County with deliberate indifference towards the civil rights of detainees,

26  knowingly and willfully did maintain, enforce, and apply a custom, practice, policy and usage

27  tending to encourage, promote, sanction, tolerate and ratify the abuse of authority. The training

28  policies of the County were not adequate to train its personnel. As a result, OCSD personnel, are

1    not able to handle the usual and recurring situations with which they must deal.

2    **INTERROGATORY NO. 24**

3        State all facts supporting YOUR contention that the COUNTY failed to implement training

4    policies to prevent violation of pretrial detainees' rights as alleged in YOUR Complaint.

5    **RESPONSE TO INTERROGATORY NO. 24**

6        "Courts generally disfavor contention interrogatories asked before discovery is undertaken.

7    *Tennison v. City & County of San Francisco*, 226 F.R.D. 615, 618 (N.D.Cal.2005). In fact, courts

8    tend to deny contention interrogatories filed before substantial discovery has taken place, but

9    grant them if discovery almost is complete. See, e.g., *Fischer & Porter Co. v. Tolson*, 143 F.R.D.

10   93, 95 (E.D.Pa.1992)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-JLS-MDD, at *20-21 (S.D.

11   Cal. Aug. 19, 2019).

12       "Pursuant to Rule 26, because the contention interrogatories seek "all facts" supporting

13   Plaintiff's allegations, they are overly broad and unduly burdensome on their face. See

14   FED.R.CIV.P. 26(b)(2)(C) (stating that the court must limit discovery if the burden of the

15   proposed discovery outweighs its likely benefit)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-

16   JLS-MDD, at *21 (S.D. Cal. Aug. 19, 2019).

17       Interrogatories are generally overly broad and unduly burdensome on their face when they

18   ask for "every" or "all facts" that support identified allegations. This request is premature,

19   overbroad, and improper. See, e.g., *Convolve v. Compaq Computer Corp.*, 223 F.R.D. 162, 173

20   (S.D.N.Y. 2004)(citations omitted)("A contention interrogatory is not simply a vehicle for

21   requiring an adversary to regurgitate all factual information obtained in discovery."); *Hilt v. SFC*

22   *Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997) (Finding that the rules do not require a statement of all

23   of the facts supporting every allegation and the identifications of every knowledgeable person and

24   supporting document); In the Matter of Aspen Tech., Inc., Dkt. No. 9310 (Dec. 23, 2003)(Order

25   Denying Motion to Compel Responses to Respondent's First Set of Interrogatories)(citing

26   *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989)(Finding that an interrogatory asking for

27   all facts supporting the entire claim is impermissible); Mort v. A/S/D/S Svendborg, 41 F.R.D.

28   225, 226 (E.D. Pa. 1966); *Fischer &Porter Co. v. Tolson*, et al., 143 F.R.D. 93, 96 (ED. Pa.

**DEFTS. MSJ B 173**

1  1992)(Finding that a party filing contention interrogatories must have well-tailored questions that

2  clarify the issues or narrow the scope of dispute.)

3      This request is vague, ambiguous, and confusing particularly with respect to the phrase "all

4  facts". It seeks "all facts" rather than "material" or "principal" facts which requires the

5  responding party to provide a narrative account of its case. It calls for a legal conclusion or in the

6  alternative, involves an opinion or conclusion that relates to fact or the application of law to fact.

7      A responding party has the duty to answer an overly broad or unduly burdensome

8  interrogatory to the extent it is not objectionable. Responding Party responds as follows: The

9  policies, practices and customs that caused Plaintiff's injuries include Defendant Orange

10  County's failure to train its staff in the face of an obvious need for training to prevent the

11  violations. The County with deliberate indifference towards the civil rights of detainees,

12  knowingly and willfully did maintain, enforce, and apply a custom, practice, policy and usage

13  tending to encourage, promote, sanction, tolerate and ratify the abuse of authority. The training

14  policies of the County were not adequate to train its personnel. As a result, OCSD personnel, are

15  not able to handle the usual and recurring situations with which they must deal.

16  **INTERROGATORY NO. 25**

17      State all facts to support that YOUR psychological damage is not attributable to pre-existing

18  conditions YOU had prior to YOUR custody at WCJ.

19  **RESPONSE TO INTERROGATORY NO. 25**

20      "Courts generally disfavor contention interrogatories asked before discovery is undertaken.

21  *Tennison v. City & County of San Francisco*, 226 F.R.D. 615, 618 (N.D.Cal.2005). In fact, courts

22  tend to deny contention interrogatories filed before substantial discovery has taken place, but

23  grant them if discovery almost is complete. See, e.g., *Fischer & Porter Co. v. Tolson*, 143 F.R.D.

24  93, 95 (E.D.Pa.1992)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-JLS-MDD, at *20-21 (S.D.

25  Cal. Aug. 19, 2019).

26      "Pursuant to Rule 26, because the contention interrogatories seek "all facts" supporting

27  Plaintiff's allegations, they are overly broad and unduly burdensome on their face. See

28  FED.R.CIV.P. 26(b)(2)(C) (stating that the court must limit discovery if the burden of the

35

1   proposed discovery outweighs its likely benefit)." *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-

2   JLS-MDD, at *21 (S.D. Cal. Aug. 19, 2019).

3       Interrogatories are generally overly broad and unduly burdensome on their face when they

4   ask for "every" or "all facts" that support identified allegations. This request is premature,

5   overbroad, and improper. See, e.g., *Convolve v. Compaq Computer Corp.*, 223 F.R.D. 162, 173

6   (S.D.N.Y. 2004)(citations omitted)("A contention interrogatory is not simply a vehicle for

7   requiring an adversary to regurgitate all factual information obtained in discovery."); *Hilt v. SFC*

8   *Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997) (Finding that the rules do not require a statement of all

9   of the facts supporting every allegation and the identifications of every knowledgeable person and

10  supporting document); In the Matter of Aspen Tech., Inc., Dkt. No. 9310 (Dec. 23, 2003)(Order

11  Denying Motion to Compel Responses to Respondent's First Set of Interrogatories)(citing

12  *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989)(Finding that an interrogatory asking for

13  all facts supporting the entire claim is impermissible); Mort v. A/S/D/S Svendborg, 41 F.R.D.

14  225, 226 (E.D. Pa. 1966); *Fischer &Porter Co. v. Tolson*, et al., 143 F.R.D. 93, 96 (ED. Pa.

15  1992)(Finding that a party filing contention interrogatories must have well-tailored questions that

16  clarify the issues or narrow the scope of dispute.)

17      This request is vague, ambiguous, and confusing particularly with respect to the phrase "all

18  facts". It seeks "all facts" rather than "material" or "principal" facts which requires the

19  responding party to provide a narrative account of its case. It calls for a legal conclusion or in the

20  alternative, involves an opinion or conclusion that relates to fact or the application of law to fact.

21      A responding party has the duty to answer an overly broad or unduly burdensome

22  interrogatory to the extent it is not objectionable. Responding Party responds as follows:

23      The California Supreme Court in *In re Lifschutz*, supra, 2 Cal.3d 415 rejected the

24  defendants' contention that plaintiff, by filing a personal injury claim asking for recovery from

25  "mental and emotional distress," had totally waived psychotherapist-patient privilege for records

26  relating to the treatment of a mental ailment 10 years earlier.

27      The court's analysis rested in part on right to privacy aspects of psychotherapeutic

28  communications. (Id. at pp. 431-432.) The court noted: "If the provision had as broad an effect as

36

DEFTS. MSJ B 175

1   is suggested by petitioner, it might effectively deter many psychotherapeutic patients from

2   instituting any general claim from mental suffering and damage out of fear of opening up all past

3   communications to discovery. This result would clearly be an intolerable and overbroad intrusion

4   into the patient's privacy, not sufficiently limited to the legitimate state interests embodied in the

5   provision and would create opportunities for harassment and blackmail." (Id. at p. 435.) Further,

6   "disclosure can be compelled only with respect to those mental conditions the patient-litigant has

7   `disclosed ... by bringing an action in which they are in issue' [citation]." (Ibid., italics in original.)

8       In *Mendez v. Superior Court* (1988) 206 Cal. App. 3d 557 the Court held that Defendants'

9   argument, that plaintiff's claimed injury of severe emotional distress is somehow apportionable

10  between preexisting anxieties and the mental trauma caused by the defendants' alleged conduct,

11  would allow inquiry into anything that might conceivably cause some measure of distress or

12  anxiety without regard to its protected nature. It creates the very Catch-22 the Legislature was

13  seeking to avoid. The Legislature has emphatically stated that such inquiry would at most

14  generate results of minimal probative value and should be discouraged.

15      The legislative statement of purpose compels the conclusion that because emotional distress

16  is inextricably intertwined in the cause of action that to allow privacy intrusion in the ordinary

17  case would have a chilling effect on the pursuit of a cause of action for emotional injuries. Any

18  other conclusion would render the statute meaningless in the face of a simple claim for damages

19  involving consequential mental distress. Thus, the legislative requirement that only in

20  extraordinary circumstances (as opposed to ordinary circumstances) is inquiry to be permitted,

21  compels the conclusion that the Legislature did not intend, and its statement of purpose disavows,

22  that a simple claim for derivative emotional trauma waives the right of privacy.

23      Fishing expedition is not allowed when dealing with constitutionally protected, private

24  matters. Rather, constitutionally protected information is treated like privileged information in the

25  discovery process. "The party seeking the constitutionally protected information has the burden of

26  establishing that the information sought is directly relevant to the claims." (*Tylo v. Superior Court*

27  (1997) 55 Cal.App.4th 1379, 1387.) Further: "Even when discovery of private information is

28  found directly relevant to the issues of ongoing litigation, it will not be automatically allowed ...

1  The scope of any disclosure must be narrowly circumscribed, drawn with narrow specificity, and

2  must proceed by the least intrusive manner." (*Davis*, supra, 7 Cal.App.4th at 1014.)

3      Various matters which the courts have found to be constitutionally protected include:

4  personnel files (*Board of Trustees v. Superior Court* (1981) 119 Cal.App.3d 516, 528-530);

5  educational records (*Porten v. University of San Francisco* (1976) 64 Cal.App.3d 825, 829);

6  medical records (*Board of Medical Quality Assurance v. Gherardini* (1979) 93 Cal.App.3d 669,

7  678); mental health/ psychological history (*Davis*, supra, 7 Cal.App.4th at p. 1013-1014); sex life

8  (*Vinson v. Superior Court* (1987) 43 Cal.3d 833, 841); (John B. v. Superior Court (Bridget B.)

9  (2006) 38 Cal.4th 1177, 1198;); and financial information (*Moskowitz v. Superior Court* (1982)

10 137 Cal.App.3d 313).)

11     The courts recognize that a person's medical history is an especially private area, "infinitely

12 more intimate, more personal in quality and nature" than other areas protected by the

13 constitutional right to privacy. (*Gherardini*, supra, 93 Cal.App.3d at 678.) The purposes for zone

14 of privacy surrounding medical records are (1) 'to preclude humiliation of the patient that might

15 follow disclosure of his ailments' [Citations] and (2) to encourage the patient's full disclosure to

16 the physician of all information necessary for the effective diagnosis and treatment of the patient.

17 (Citations.) (Ibid.) Both these purposes would be severely undermined if courts allowed litigants

18 to overstep privacy rights by granting them unrestricted access to medical and psychiatric records.

19     A plaintiff's right of privacy remains protected as to physical and mental conditions

20 unrelated to the claim or injury sued upon. (See id. at p. 864.) The burden is on the party seeking

21 the discovery to demonstrate that the information sought is directly relevant. (Id. at 859-862.)

22 Disclosure may only be ordered if it would serve a "compelling public interest." (*Britt*, supra, 20

23 Cal.3d at 855-856; *John B.*, supra, 38 Cal.4th at 1199.)

24     The state Constitution expressly grants Californians a right of privacy. (Cal. Const., art. I, §

25 1.) Protection of informational privacy is the provision's central concern. (*Hill v. National*

26 *Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 35 [26 Cal.Rptr.2d 834, 865 P.2d 633].) The *Hill*

27 Court established a framework for evaluating potential invasions of privacy. The party asserting a

28 privacy right must establish a legally protected privacy interest, an objectively reasonable

1    expectation of privacy in the given circumstances, and a threatened intrusion that is serious. (Id.

2    at pp. 35-37.) The party seeking information may raise in response whatever legitimate and

3    important countervailing interests disclosure serves, while the party seeking protection may

4    identify feasible alternatives that serve the same interests or protective measures that would

5    diminish the loss of privacy. A court must then balance these competing considerations. (Id. at pp.

6    37-40.) See *Williams v Superior Court* (2017) 3 Cal.5th 531, 538.

7        A responding party has the duty to answer an overly broad or unduly burdensome

8    interrogatory to the extent it is not objectionable. Responding Party responds as follows: After a

9    mandatory shower with no privacy, in the presence and view of OCSD personnel and other

10   inmates, Plaintiff did not take any shower for four days until she was released and got home due

11   to the significant and negative impact on her grown out of the horrible shower and strip search

12   experience she endured in WCJ. Until today, each time when Plaintiff showers she repeatedly

13   double-checks the bathroom door over and over again for fear of being watched. Each night

14   before Plaintiff goes to bed she repeatedly double-checks the door over and over again for fear of

15   being searched during midnight.

16       After Plaintiff was strip searched seven times while she was on period, on or about Aug 16,

17   2019 Plaintiff ended up in ER for dysfunctional menstrual bleeding due to the unbearable

18   emotional distress she suffered from multiple traumas. On or about Aug 30, 2019 Plaintiff was

19   transported to the hospital and put on suicide watch for five days. On or about Nov 28, 2019

20   Plaintiff attempted suicide by trying to overdose sleeping aid. In late June 2020 Plaintiff went

21   through a surgery for her menstrual-related problems associated with depression and anxiety. In

22   2020 the dose and quantity of anti-depression medications were gradually increased due to

23   Plaintiff's symptoms and emotional stability.

24       Plaintiff cannot read more than a few paragraphs without losing focus and needing to start

25   over. She cannot maintain a normal life without interruption of suicidal thoughts, anxiety,

26   memory loss, fear, and depression. From time to time Plaintiff has nightmares seeing herself

27   dying in WCJ. She suffers from serious insomnia and continuous fatigue. She is preoccupied with

28   fears of being strip searched again.

1    I declare under penalty of perjury under the laws of the United States that the foregoing

2    answers are true and correct.

3         Dated: Dec 31, 2020

4         Respectfully submitted.

5

6                                                JANE DOE, Plaintiff in Pro Se

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          40

**CERTIFICATE OF SERVICE**

I, JANE DOE, declare and say as follows:

I am over the age of eighteen years of age and am a party to this action. I reside in the County of Los Angeles, State of California. My business address is ████████████████ ████████ in said county and state. My electronic serve address is ████████████ ████████

On Dec 31, 2020 I electronically served the following document(s):

Plaintiff's First Amended Responses and Objections to Defendant the County's Interrogatories (Set 1)

Name of person served: Mariah A. Witt, Michael L. Wroniak, Justin M. Hazelton, Legal Assistant Services

On behalf of: COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI; MARK STICHTER; REYNA RIVERA; DEVONNA FALCONER; KASSANDRA MAYER; ELIA RODRIGUEZ; and RACHEL ADDINGTON

Electronic service address of person served: MWitt@ccmslaw.com, mwroniak@ccmslaw.com, JHazelton@ccmslaw.com, legalservices@ccmslaw.com.

Dated: Dec 31, 2020

████████████████

JANE DOE

Plaintiff in Pro Se

41

JI ORIGINAL

**SHERIFF'S DEPARTMENT**
**ORANGE COUNTY**
**SANTA ANA, CALIFORNIA**

Case No.

Jail Incident No.
WJ081119-0116

**DON BARNES, SHERIFF-CORONER**

**SEARCH REPORT**

FACILITY: Central Women's Jail                    LOCATION: Module G Tanks 1 and 2
SUPERVISOR: Sgt. L. Cantrell #7841                    DATE: Sunday 08-11-19
DEPUTIES: R. Rivera #9890, D. Falconer #10050, K. Mayer #10765, E. Rodriguez #9052 and R. Addington #10682

| TANK/<br>SECTOR/<br>BARRACKS | CELL/<br>CUBE | BUNK | INVENTORY OF ITEMS FOUND | J.I. / DR.<br>NO. |
|---|---|---|---|---|
| G-1 | | 9 | Flores #3128766: Major Jail Rule Violation- lying to staff- had a diaper | |
| G-2 | | 3 | Villanueva #3128973: extra sheet- Minor Jail Rule Violation | |
| | | 8 | Mcconnell #3123079: extra sheet- Minor Jail Rule Violation | |
| | | 24 | Neal #3121023: Major Jail Rule Violation- altered razor | |
| | | 27 | Aguayo #316481: Major Jail Rule Violation- altered razor | |
| | | 39 | Sanchez #3125545: Major Jail Rule Violation- altered razor | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

DISPOSITION: A F.A.S.T. Search was conducted in Module G Tanks 1 and Tank 2, bunks 1-40. The above items found and disposed of in the security trash. The extra jail issue returned to the laundry room.

Sgt. L. Cantrell #7841 present for the search.

| SUBMITTED BY<br>CSA K. Lopez Domingo #9460 | DATE<br>Sunday, August 11, 2019 | APPROVED BY |
|---|---|---|

J 098.1 (07/17)

**DEFTS. MSJ B 181**
**OC 0059**

Policy 1600 - Orange County Jail Rules

1600 - Orientation and Jail Rules

To maintain inmate discipline within Jail Operations, a set of rules and regulations has been established that specifies violations and sanctions. Inmate rights will be recognized, and responsible inmate behavior will be required at all times. An efficient operating facility, safe working conditions for jail staff and the security of the inmate population are the primary objectives for the enforcement of jail rules. New inmates will be informed of jail rules at the time of admission.

1600.1 - New Inmate Orientation
   a) The following critical jail rules are posted at Medical Triage and Uncuff:
      1. Inmates must obey all directives of staff
      2. Inmates must be respectful to staff
      3. Inmates cannot create a disturbance in the jail
   b) Violation of these rules may result in loss of privileges (dayroom, recreation, phones and visits) and placement into Disciplinary Housing for disciplinary reasons.
   c) Jail rules, programs and services are posted throughout each facility in the dayrooms, outdoor recreation, and other areas.
   d) Inmates are required to read, understand and comply with inmate orientation provisions and jail rules. Any violation of laws or jail rules may result in jail discipline and/or criminal prosecution. If there are any questions, inmates should ask a member of the jail staff for clarification.

1600.2 - Orange County Jail Rules
   a) Orange County Jail Rules
      1. Inmates are required to read, understand, and comply with all inmate orientation provisions and the Jail Rules. If there are any questions, ask a member of the jail staff for clarification.
   b) Obeying Jail Staff
      1. Inmates shall obey all directives immediately and completely.
      2. Inmates shall not make false statements to jail staff.
   c) Addressing Jail Staff
      1. At all times, inmates shall treat staff and visitors with courtesy and shall address them with their proper title such as "Deputy," "Sir," "Nurse," etc.
      2. At no time will any staff member be addressed by his/her first name.
   d) Smoking
      1. Smoking is not permitted inside any Orange County Jail facility. Possession of any tobacco products and/or paraphernalia is prohibited, (e.g., lighters, matches, rolling paper or any other items used for smoking).
   e) Housing Assignments and Movement
      1. No inmate will occupy a bunk other than the one assigned him/her.
      2. At no time will an inmate be permitted in a sector/tank/tent/barrack or cell to which the inmate is not assigned.
      3. Any unescorted inmate at the Central Jail Complex or Theo Lacy facility will have in his/her possession a movement pass or module card which will be presented at each Guard Station. Inmates are not to proceed further until directed to do so.
      4. Inmates will return his/her movement pass to a deputy upon returning to the module.
      5. Inmates directed to move through any jail facility will proceed promptly and as follows:
         i. Unless otherwise directed, remain along the right hand side of the corridor.
         ii. If floor markings are present, inmate must follow the markings.
         iii. Single file.
         iv. No talking permitted.
         v. Hands in pockets.
         vi. Stay clear of all phones and alarms.

**DEFTS. MSJ B 182**

       vii.    Inmates may not enter marked unauthorized areas.

      viii.    Inmates must walk at all times. Running is not permitted.

   6. Carrying or passing any article from one housing area to another is forbidden.

f) Communications

   1. Inmates are not permitted to communicate in any manner with persons not in custody, except as authorized by the jail staff.

   2. Inmates will not communicate with other inmates outside their immediate housing area without prior approval of the jail staff.

g) Jail Issued Clothing

   1. Inmates shall dress in full jail issue clothing and workers shall shave prior to the morning meal.

   2. Inmates whose gender identity at time of classification differs from their gender assigned at birth shall be permitted to wear undergarments of the gender with which they identify if those particular undergarments are their preference.

   3. Transgender inmates who identify as female, (male gender assigned at birth), have the option of choosing female undergarments to include both bras and female underpants.

   4. Transgender inmates who identify as male, (female gender assigned at birth), have the option of choosing male boxer shorts and will not be required to wear a bra.

   5. Full jail issued clothing consists of:

       i.    Underwear (choice according to gender identity)

       ii.    T-shirt

      iii.    Socks

      iv.    Jumpsuit or pants and shirt

       v.    Shoes

      vi.    Bra (choice according to gender identity)

      vii.    Sweatshirt (optional, facility specific)

     viii.    Face Mask

   6. Inmates shall remain in full jail issue clothing while in the dayrooms, common areas or outside their cell. At all times, jumpsuits will be worn buttoned up, sleeves, pant legs and collars down. Alterations to jail issue clothing may be considered damage to jail property and the inmate may be subject to disciplinary action. The wearing of any item that is not facility issue clothing (e.g., headbands, etc.) is prohibited.

   7. Inmates shall make their bunks up neatly and keep them that way unless the bunk actively occupied by the inmate. Whenever inmates are at ease on their own bunks, they may be permitted to cover themselves with blankets, provided that sufficient anatomy is exposed to establish the presence of a person.

h) Count

   1. During the count, inmates shall stand near their bunks unless otherwise directed by jail staff.

   2. Inmates will respond to the deputy as directed during the count.

   3. Talking, horseplay, or other disruptions are not permitted during the count.

i) Attending Meals

   1. Inmates will be called on line for meals by jail staff.

   2. Inmates desiring to attend or receive a meal must be dressed in full jail issue clothing and come on line promptly.

   3. Inmates who do not wish to attend or receive a meal must remain in their housing location.

   4. Inmates will be afforded a reasonable amount of time to eat.

   5. Upon completion of the meal, inmates will proceed directly to their assigned housing location.

j) Conduct During Meals

   1. Inmates will conduct themselves in an orderly manner at all times.

   2. No food may be removed from the dining hall.

   3. Food may not be passed from one table to another.

4. Food must be handled so as to keep the dining halls and tables neat.

5. Conversation will be limited to the inmates at each table.

6. When the deputy announces the end of the meal, all inmates will promptly line up to turn in plates, utensils and any unconsumed food.

k) Dayrooms/Recreation Areas

1. Inmates shall have access to their assigned dayrooms according to approved schedules. Jail staff will regulate inmate movement into and out of the dayroom.

2. When dayroom is given, all inmates shall move promptly to their assigned dayroom.

3. Inmates in dayrooms shall be in full jail issued clothing at all times.

4. Shower shoes may be worn to and from the showers only, unless authorized by the Division Commander.

5. Dayroom supplies will not be removed from dayrooms.

6. Newspapers shall remain in the dayrooms at all times. Newspapers may not be torn or cut in any manner. Any portion of a newspaper found in any area other than the dayroom or on an inmate's person will be considered contraband and the inmate may be subject to disciplinary action.

7. Blankets, sheets, or other bedding are not permitted in the dayroom. Bedding shall not be used for table cloths, hammocks, etc. All bedding shall remain on the bunk.

8. Tampering with any television set may result in disciplinary action being brought against the inmate. The television may be removed as a result of tampering.

9. Dayrooms will be left in a neat, orderly condition.

10. Moveable chairs shall remain in designated areas.

l) Games and Recreation

1. Inmates may attend scheduled recreation periods and may, while in the dayroom, utilize the games and supplies issued to that dayroom. Violating any jail rules while in the dayroom/ outdoor recreation area, or damaging any books, games or equipment, may result in loss of recreation privileges.

2. Gambling in any form is not permitted.

3. Roughhousing, horseplay or physical exercise by use of the jail fixtures is not permitted.

4. The practice of tattooing, body piercing, body branding and body art is not permitted.

m) Property

1. Inmates may possess only those items identified in this policy.  All other items shall be considered contraband and will result in the item(s) being confiscated and properly disposed of.  Disciplinary action may also be taken.

    i.      Items Issued by jail staff

    ii.     Items purchased through commissary from the Jail Commissary Order Slip

    iii.    Items permitted at the time of booking

    iv.    Items permitted to be received through the mail

    v.     Items permitted by court order

2. Inmates (unless they are Pro-Per) may possess a limited amount of personal items such as letters, photographs (no larger than 8" x 10") and court papers.  Inmates may also possess materials for correspondence.

3. Inmates shall maintain all personal items and/or legal paperwork in two expandable folders.  Any items described in this paragraph that do not fit into two expandable folders shall be discarded or mailed out of the facility at the inmate's expense.  Under no circumstances shall personal items and/or legal paperwork be stored outside two expandable folders, or affixed to a cell or the furnishings therein.

4. Inmates shall not possess more than the quantity limit of any one item listed on the Jail Commissary Order Slip.  Items purchased through commissary and retained in an inmate's cell shall be reasonable in quantity such that storage of such items shall not invade the space Of other inmates in the cell.

    i.      For inmates housed alone, a housing sergeant or above has the discretion to deem the quantity of personal property items unreasonable.

**DEFTS. MSJ B 184**

      ii.   The storage area for an inmate is limited to their property box, two expandable folders for personal property and/or legal paperwork, and a reasonable amount of space for commissary items as per the housing sergeant or above.

      iii.   If the quantity of commissary items possessed by any inmates is determined to be unreasonable by the housing sergeant or above, the inmate will be provided advanced notice (5 days) and the opportunity to reduce the quantity of commissary items to a reasonable level.  Failure to reduce the quantity of commissary items as requested may result in discipline and/or seizure of the excess items determined to be unreasonable.

5. Articles, including food items, personal hygiene items, etc., will not be accepted from Individual's or via the mail.
6. Inmates may only possess the items of clothing issued to them and one complete issue of jail bedding.
7. No food, except that sold in commissary or provided during in-cell feeding, will be permitted in housing areas.
8. Handcrafted or altered items made by inmates are not permitted and will be considered contraband.
9. Possession of articles issued or belonging to another inmate, such as clothing, bedding, commissary, or personal property, is not permitted. The inmate in possession of such property may be punished for a violation of jail rules and the incident may be handled as a criminal matter.
8. No inmate will possess more than a combination of five books and/or magazines. Excess items shall be discarded or mailed out of the facility at the inmate's expense.
      i.   Property that shall not be counted towards an inmate's limit are as follows:
         A.   Holy book (1)
         B.   Religious pamphlets (3)
9. Unauthorized possession or hoarding of medications is not permitted. Possession of another inmate's medication is not permitted.
10. Obscene publications, and mail containing obscene publications are not permitted (Obscene publications include, but are not limited to, photographs showing penetration, oral copulation, defecation, urination or ejaculation. Personal photographs that display nudity of any kind or items that are sexual in nature are not permitted).
11. Any item intending to incite murder, arson, riot, violent racism, or any other form of violence or criminal activity is unacceptable.
12. Any item concerning gambling or a lottery shall be prohibited.

n) Buying, Selling, Trading
1. Inmates are not permitted to buy, sell, trade or give away any item of value to any inmate or member of the jail staff.
2. Possession of any type of currency by an inmate is not permitted.

o) Court
1. When called on line for court, inmates will respond promptly and be in full jail issue clothing.
2. Inmates going to court will not take books, combs, commissary items, etc. without a court order. Inmates may take court papers that pertain to their case or other documents requested by the court (e.g. classroom certificates to show completion of courses ordered by the judge) and authorized self-carry medications with approved documentation.
3. Inmates have an opportunity to comb their hair and prepare for court prior to transport.
4. In Propria Persona (Pro-Per) inmates may take legal books, documents or papers necessary for their court action.

p) Cleanliness
1. Each inmate will be responsible for keeping their assigned bunk and property box neat and orderly.
2. Responsibility for maintaining the cleanliness of each housing area shall be shared by the inmates assigned to that housing area.
      i.   Dayrooms, stairs, floors, windows, showers and toilets will be cleaned by inmates who are assigned by the Barracks/Module CST. The assignment will be changed weekly and be given to inmates not going to court that day. Cleaning closets will be unlocked and supplies will be made available

    immediately after morning court call. Work will be supervised and directed by the Barracks/Module CST. After the cleaning is completed all supplies and cleaning implements will be locked in the cleaning closet.

    ii.    Inmate workers will keep corridors and hallway areas cleaned at all times. The CST assigned to the housing location will direct inmate work crews in the daily cleaning of rooms, guard corridors and other areas.

    iii.    The assigned CST will direct the inmates in the barracks to collect trash from the trash receptacles so it can be picked up by the facility trash crew under supervision of the CST.

    iv.    The Warehouse CST will direct warehouse inmate workers to prepare supplies for use in barrack cleaning. The quantity of supplies to be delivered to each inmate housing location is posted in the warehouse. The assigned CST will ensure that each housing unit receives the proper issue of supplies.

3. Inmates who refuse or neglect to perform their assigned duties will be subject to disciplinary action.

4. Inmates shall shower regularly and maintain a good general appearance.

    i.    Inmates who fail to do so will be subject to disciplinary action.

    ii.    Shower areas will be available every other day (per title 15) and at times specified by the jail staff.

5. All inmates are required to conform to the grooming standards established in which they are housed.

6. Workers must abide by worker standards.

7. Inmates must dispose of all waste matter in the receptacles provided for that purpose.

    i.    Depositing trash in the toilets or urinals is not permitted.

8. Inmates shall not spit on jail floors, walls, ceilings or any place other than a toilet or urinal.

q) Lights Out

1. At the discretion of jail staff, designated inmates may use the dayroom after lights out.

2. Between the hours of lights out and reveille, all inmates will remain on their assigned bunks quietly, except when it is necessary to use toilet facilities.

r) Security Devices/Inmate Identification Cards

1. Tampering, or the attempt to tamper with any manual or automatic door, telephone, window, vent cover, light, or any other security or building device is not permitted and may be handled as a violation of jail rules and/or by criminal prosecution.

2. Each inmate will be issued an identification card.

    i.    Identification card- The inmate will wear the ID card clipped to his/her smock top at the bottom of the V-neck with the picture facing outward whenever he/she is outside of his/her assigned sector, dorm, barracks.

3. Tampering with an ID card, failing to display the ID card as required, or failing to present the ID card to any staff member upon request are violations of the jail rules which will result in disciplinary action.

4. Inmates are prohibited from coming into contact with any part of any security fence or door.

5. Non-emergency use of the in-cell Emergency Communication Button is prohibited.

s) Destruction of Jail Property

1. Destruction of jail property and the writing or marking upon any part of the jail is not permitted and is punishable as a Felony or Misdemeanor under California Penal Code Section 594 and 4600.

2. Burning of any material is not permitted and may be handled as a violation of jail rules and/or by criminal prosecution.

3. No items will be affixed to any walls, ceilings, bars, bunks, fixtures, property box or any part of the building.

t) In-Custody Contact

1. Personal Contact:

    i.    Any inmate who engages in lewd or lascivious acts with the appearance of arousing, appealing to, or gratifying the lust, passions or sexual desires of themselves or others is in violation of "Personal Contact."

    ii.    Inmates shall avoid deliberately placing themselves in situations, or behaving in any way that will encourage sexual activity.

**DEFTS. MSJ B 186**

      iii.    Inmates will not solicit or engage in sexual activity with other inmates.

2. Discipline by Inmates:
   i. "Kangaroo Courts" (mock courts set up by inmates) and/or "Sanitation Committees" (inmate committees set up to enforce sanitation rules) are illegal in any California Jail.
   ii. No inmate will inflict punishment upon another inmate.
   iii. No inmate may ever be given authority over, or permitted to exert control over any other inmate.
   iv. Inmates involved in the above actions will be subject to immediate discipline and/or prosecution.

3. Fighting and Horseplay:
   i. Inmates shall not fight or engage in physical horseplay. This includes wrestling, hitting, or any other physical contact.

u) Self-Carry Medication
1. Under certain circumstances, inmates may be allowed to self-carry personally prescribed medication within the jail facility at the discretion of CHS and the Division Commander.
   i. Inmates must carry approved documentation at all times.
   ii. Inmates found hoarding or possessing another inmate's medication are subject to disciplinary actions. Reference CCOM Policy 1600.2 (m).

## 1600.3 - Orange County Jail Rules-continued

a) Visiting and Communications
1. It is a misdemeanor violation of California Penal Code Section 4570 for any unauthorized person to bring into or take from any jail any letter to or from any inmate.
2. Visitors who have been released from jail or prison within the preceding sixty (60) days are ineligible to visit; however, visits between blood relatives (i.e., mother, father, sister, or brother, or a spouse) may be permitted.
   i. Penal Code Section 4571 prohibits persons convicted of a felony, and who have served time in any California State Prison, from entering upon the jail premises without permission of the Watch Commander.
3. Visitors must be at least eighteen (18) years of age or accompanied by an approved adult visitor such as a parent, legal guardian, or have written, notarized permission to visit from the child's parent or legal guardian. Visitors will be required to produce satisfactory identification.
4. The following will be the only acceptable forms of identification for visiting purposes:
   i. Valid U.S. Government issue picture ID card (including Driver's license and Identification cards)
   ii. Passport
   iii. Military Identification
   iv. US Issued Naturalized Citizen Card
   v. Matricula Consular Card issued after April 22, 2002
5. Upon prior request and approval of the Watch Commander, unaccompanied minor children may visit any relative in custody.
6. Visits will be a minimum of one-half hour. A minimum of two visits totaling at least one hour per inmate per week should be made available. Specific visiting times are posted at each facility.
   i. Official visits are permitted any time of the day, without time restriction.
   ii. Weekenders do not receive public visits.
   iii. Inmates are permitted only one public visit per day.
7. Inmates are not permitted to take property of any kind with them to a visiting session without prior approval from jail staff.
8. If contact visits are permitted, they will comply with the facility policy.

b) Mail

**DEFTS. MSJ B 187**

1. There is no limit on the amount of mail an inmate may send or receive. There is a maximum of 10 items of correspondence allowed per envelope. Only mail written on postcards or white paper (plain or lined, not cardstock) is permitted. All outgoing mail must be delivered unsealed to a Deputy or mail drop box.

2. Legal Mail - There is no limit on the amount of legal mail an inmate may send or receive. Inmates may correspond confidentially with state and federal courts, any member of the State Bar or holder of public office, the State Board of Corrections, or the Division Commander. Legal mail may be sealed by the inmate in the presence of a Deputy and after the mail has been inspected for contraband. The Deputy will initial the letter across the seal and include his/her badge number.

3. Incoming confidential/legal mail may be checked for contraband, checks, or money orders, provided the mail is opened in the presence of the inmate.

4. Outgoing mail must have the inmate's name and address in the upper left corner on the front side of the envelope. Mailing addresses are as follows:

   i. Intake and Release Center (IRC), Central Men's Jail (CMJ) or Central Women's Jail (CWJ)

      A. INMATE'S NAME and Booking Number

         550 N. Flower Street

         Santa Ana, CA 92702

   ii. For inmates at Theo Lacy Facility (TLF)

      A. INMATE'S NAME and Booking Number

         501 City Drive South

         Orange, CA 92868-3390

5. No writing or marks other than the inmate's name and address and the name and address of the person to whom the letter is being sent, or proper directions to the post office, will be permitted on the envelope.

6. All letters must contain the correct amount of postage and a valid return address.

   i. POSTAGE MUST BE PLACED IN THE UPPER RIGHT CORNER OF THE FRONT SIDE OF THE ENVELOPE.

7. Incoming mail may not exceed 9x12 inches (legal documents and material are exempted).

8. Inmates will be permitted to receive through the mail any newspaper, magazine or paperback book. All books must be new and ordered though an online bookstore (e.g.: Amazon.com, BarnesandNoble.com, etc.) and shipped directly to the jail facility.

9. Books may not be purchased at a store and shipped to the jail facility.

   i. The package must be accompanied by an invoice listing the purchaser, recipient, contents, and the name of the online store.

   ii. Exceptions to this policy must be made by the Division Commander.

10. Inmates may correspond with other inmates in any Orange County Jail facility only via the U.S. Postal Service.

11. Packages will not be accepted and will be returned to the sender, unless previously approved by the Watch Commander.

c) Phone Calls

1. Telephone Calls at Time of Booking

   i. The law requires that arrested persons must be provided the opportunity to make three (3) completed telephone calls within three (3) hours after arrest (CPC 851.5), or supplemental booking.

      A. During the normal booking process, additional non-collect phone calls are available in a number of holding cells.

      B. If a custodial parent, two (2) additional phone calls may be made to arrange for child care. It is the responsibility of the arresting or booking officer to ask whether an arrestee is a parent and if so, inform them of their right to make two (2) additional phone calls to arrange for the care of their children (AB 2015). These rights shall be posted in English and Spanish near areas designated for phone call use by arrestees.

2. Telephone Calls After Booking
    i. Phone calls after the time of booking will be permitted by use of housing phones. Phones are available in housing areas, tanks and roof recreation areas. All calls after booking will be made COLLECT to the receiving party. If good cause exists, an inmate may make a non-collect phone call, if approved by the Housing Sergeant. The inmate stating the necessity for the call must submit an Inmate Message Slip.
        A. Telephone availability is also afforded to inmates classified as administrative housing. Limited telephone availability is afforded to inmates housed in disciplinary housing for disciplinary reasons.
        B. Hours and phone availability will be determined by the Division Commander.
        C. Inmates may not receive telephone calls at any Orange County Jail facility.
    ii. A notice that all collect housing phones are monitored and recorded will be prominently posted in the area next to all inmate telephones. These notices will read as follows:
        A. "Notice! Telephone calls may be recorded and monitored."

d) Jail Message Forms
1. Inmate Message Slips will be used by inmates when they desire to communicate in writing with the staff of the Orange County Sheriff's Department, or with persons at other county agencies within the Civic Center Complex. Forms are available from the jail staff. Other written inmate communications will be via United States Postal Service.
2. Inmates desiring to be placed on sick call, or desiring to talk with a member of the medical, dental or mental health staff will complete the pink Inmate Medical Message form and place it in the locked box located in the designated areas throughout each facility. Inmates may request a "confidential contact" by stating so on the message form without describing the nature of the medical need.
3. Requests for legal books will be submitted by the inmate to the deputy on an Inmate Message Slip.
4. Appeals of punishment may be submitted on an Inmate Message Slip.

e) Personal Street Clothing Exchange
1. One exchange of, or addition to personal street clothing, will be permitted during an inmate's incarceration, provided existing clothing is insufficient, improper, or not suitable for court.

f) Prescription Eyeglasses and Contact Lenses
1. Inmates will be allowed to possess one pair of prescription eyeglasses and one pair of eyeglasses that are necessary for reading that are non-prescription. Eyeglasses containing a metal frame or metal temple (arm), decorative eyeglasses or glasses with tinted lenses will not be allowed for security reasons. Decorative eyeglasses are those with frames or lenses which are adorned with colorful stones or other design elements such as flowers, butterflies, name brand insignias, or any other material whose purpose and design is to provide a fashionable appearance. Plastic eyeglasses with metal reinforcement in the plastic temple (arm) or plastic glasses containing a metal hinge will be allowed. However, plastic eyeglasses that have a metal reinforcement with a pointed tip or any eyeglasses that pose a security risk as determined by the Watch Commander or his/her designee shall not be allowed inside any jail facility.
    i. Reading glasses (non-prescription) and prescription eyeglasses provided to the inmate from outside the jail must be delivered to CJX inmates at the Central Men's Jail Attorney Bonds Guard Station or to the Theo Lacy facility inmates at their respective public visiting guard station. Glasses provided from outside the jail will be screened by security staff and if found to be in compliance with the requirements listed in this section will be delivered to the inmate.
    ii. Reading glasses (non-prescription), obtained through commissary are compliant with this policy.
2. Inmates may have new contact lenses mailed to them or dropped off to be put on their property, and they may have up to 12 sets of lenses in their possession at a time. Contact lenses received through the mail shall be forwarded and placed on the inmate's property. Contact lens solution and contact lens cases may only be

obtained by requesting these items on an Inmate Health Message Slip sent to the medical staff. Decorative or colored contacts will not be allowed for security reasons. Decorative or colored contacts are those that change the look of your eye such as with designs to provide a fashionable appearance or change of eye color.

    i.   Inmates may fill out a Property Release Form and send it to Property requesting the contact lenses be delivered to their housing location.

    ii.   The contacts will be taken out of the inmate's property. One copy of the property release form will be placed around the item for delivery to the inmate's housing location. One copy will be filed in the inmate's property and one copy will be placed in the inmate's jacket.

    iii.   Contact lenses will be screened by a CST and/or Deputy prior to being delivered to the inmate's housing location.

g) Inmate Cash Account

1. Inmates may have money (cash); city, county, state or United States Government checks; and money orders deposited to their account at the Cashier's Office. Money orders shall be made out to the "County of Orange – Sheriff's Department" and the inmates name and booking number must be annotated in the reference line of the money order. These will be credited to the inmate's account, not to exceed $500.00.
2. Money orders may also be sent by mail to an inmate for deposit to their account
3. Funds may not be transferred from the account of one inmate to the account of another inmate without the permission of the Watch Commander.

h) Emergencies

1. During any emergency, all inmates shall await instruction from jail staff.
2. In the event of an ill or injured inmate, all other inmates will return to their assigned bunk until jail staff has removed the ill or injured inmate.
3. Falsely reporting an emergency condition is not permitted and will result in disciplinary action.

i) Inmate Voting Procedure

1. Inmates who would like to participate in local, state and Federal elections should contact the Registrar of Voters for information and materials. Registrar of Voters PO Box 15467 Santa Ana CA 92735-9910.

j) Classification of Inmates

1. After booking, each inmate will be interviewed by a Classification Deputy to determine the inmate's classification rating and housing assignment. Background information is reviewed so that inmates of similar backgrounds and characteristics are housed in the same or similar housing units. Inmates who have been sentenced to more than 60 days may request a review of their classification rating no more often than 30 days from their last review. Inmates requesting a review must submit an Inmate Message Slip to the Classification Sergeant. All inmates will be provided with a written response to their respective request(s).

k) Meal Service

1. Each inmate will be offered three meals each day.
2. Meal times are at approximately ██ a.m. (breakfast), ██ a.m. (lunch) and ██ p.m. (dinner). Inmates in the booking or transfer process on the first floor will be offered a sandwich sack lunch. The jail menu and food items comply with all California state standards.

l) Medical/Dental/Psychiatric Care

1. Prior to being booked into the Intake/Release Center each person will be screened by a member of the Correctional Health Services staff. If after booking an inmate wishes to request routine, non-emergency, medical attention they must submit an Inmate Medical Message slip to the medical staff. Slips are available from the medical staff or a deputy. Completed forms are to be deposited in the designated collection box in each module.

2. Sick call will be conducted on a daily basis by medical/mental or dental health care professionals, depending upon the nature of the inmate's complaint. Inmates found to be hoarding medications or possessing another inmate's medication will be subject to disciplinary action.

3. If at any time an inmate expresses the need for immediate medical attention or if the deputy determines that an inmate requires immediate medical attention the medical/ mental health staff will be informed immediately.

4. AIDS testing is available through Correctional Health Services. Inmates may contact the nursing staff on an Inmate Medical Message Slip for testing.

m) Recreation Programs

1. Tabletop games, books and newspapers are provided to inmates in their dayrooms. Each inmate will also be offered an opportunity to have a minimum of three (3) hours of outdoor recreation each week. Volleyball, handball and basketball are sports available in the outdoor recreation yards. Outdoor recreation availability is dependent upon weather conditions, court appearance schedules, etc.

2. Televisions are provided in housing dayrooms. Program selections are made by the Recreation Director.

n) Jail Clothing and Hygiene

1. Undergarments and socks shall be exchanged two times each week. Outer garments (except shoes), sheets and towels shall be exchanged at least once each week (title 15: 1262/1271). Inmates are required to shower regularly to prevent an offensive and unhealthful state of body hygiene. Personal grooming items are provided to inmates who do not have money.

o) Commissary

1. Inmates may purchase commissary items three times each week. Order forms are distributed three times a week.

2. Inmates without sufficient funds can order a Welfare Pack (per Title 15) of hygiene and stationary items once per week.

p) Inmate Work Assignments

1. Pre-trial and sentenced inmates may be screened for work opportunities. The inmate's classification, health status and the need for workers will be considered in the selection process.

q) Jail Records Information

1. Inmates requesting information regarding their bail, sentence expiration date, warrants, out of county holds, etc., may submit an Inmate Message Slip to the housing deputy. Inmates must include their full name, booking number, date of birth and housing location, when they submit their request.

## 1600.4 - Orange County Jail Rules- Violations by Inmates

a) Minor Violations

Deputies may:

1. Counsel the offender

2. Assign up to four (4) hours extra duty with the approval of a sergeant or Watch Commander.

3. Deny the inmate certain privileges, such as telephone, TV, or commissary for up to five (5) days for each violation.

MINOR VIOLATIONS (partial listing):

1. Failure to rise for reveille

2. Straggling/disrupting

3. Not dressed in full jail issue

4. Failure to have bunk made up properly

5. Failure to clean assigned cell/area

6. Taking food from dayrooms

7. Passing food from table to table in chow hall

**DEFTS. MSJ B 191**

8. Possession of contraband
9. Failure to maintain personal hygiene
    i. Minor Violation Appeal Procedure: Any inmate wishing to appeal a minor violation must submit a written request within forty-eight (48) hours to the appropriate Sergeant. The Sergeant will review and advise of decision.

b) Major Violations
   1. Deputies will prepare a report and submit it to a supervisor.
   2. MAJOR VIOLATIONS (partial listing):
      i. Fighting
      ii. Creating a disturbance
      iii. Failure to obey a directive
      iv. Insubordination or disrespect
      v. Possession of contraband which would pose a security threat
      vi. Theft
      vii. Tampering with a security device
      viii. Destruction of jail property
      ix. Unauthorized movement
      x. Habitual violation of rules
      xi. Smoking
   3. Disciplinary Process Major Violations:
      i. Major Violations of jail rules will result in a disciplinary hearing.
      ii. Inmates will receive a copy of the Notice of Disciplinary Violation, on which the rule violation will be documented.
      iii. Disciplinary hearings will take place no sooner than twenty-four (24) hours and no later than seventy-two (72) hours after an inmate is served their Notice of Disciplinary Violation / Hearing, unless their twenty-four (24) hours are waived by the inmate and so noted on the form.
      iv. At the conclusion of the hearing, the Hearing Officer will prepare a Disciplinary Hearing Report and submit it along with a copy of the Notice of Disciplinary Violation and any Jail Incident Reports to the Disciplinary Officer for final disposition and imposition of punishment if required.
      v. Inmates will be formally advised in writing of the Disciplinary Officer's decision on an Inmate's Advice of Punishment Report.
   4. Major Violation Appeal Procedure
      i. Appeals of punishment may be made in writing in the form of a grievance, an Inmate Message Slip, or a letter to the facility and must be submitted within fourteen (14) days after receiving notice of the discipline imposed. Appeals submitted after this period will not be considered timely and will not be evaluated. The Division Commander or designee will review the incident and advise the inmate of the decision on an Inmate's Advisement of Appeal form.

c) Criminal Conduct
   1. If the incident involves criminal conduct, the matter may be referred to the Orange County District Attorney's Office for prosecution.
      i. Regardless of whether or not criminal prosecution is sought, a Major Jail Rule Violation report should be completed.

1600.5 – Inmate Grievance Procedure
   a) Purpose

1. The Department endeavors to meet the legitimate needs of the inmates in its custody. It also recognizes that problems relating to conditions of confinement can and do arise, and can seem especially significant to inmates who have limited control over their own circumstances.
2. The grievance procedure is a formal process for an inmate to address a specific issue or condition of confinement that personally and directly affects him/her. It provides a positive outlet for the expression of concerns, and facilitates their fair and appropriate resolution. It also reduces the likelihood that inmates will resort to misconduct as a means of handling their real or perceived problems. In these ways, the grievance procedure improves custody operations.
3. In order to exhaust administrative remedies as required by the Prison Litigation Reform Act (PLRA), the inmate must follow the grievance procedure outlined in this section.

b) Allowable Grievances
1. Any inmate may file a grievance related to any condition of confinement, including but not limited to:
   i. Medical Care
   ii. Classification Actions
   iii. Program Participation
   iv. Telephone, Mail, and Visiting Procedures
   v. Food, Clothing, and Bedding Issues
   vi. Disability Discrimination
2. The grievance procedure is not to be used for disciplinary appeals. The disciplinary appeal process is covered in CCOM Section 1602.6.
   i. Staff will accept disciplinary appeals even if they are on the wrong form and will forward them pursuant to CCOM Section 1602.6.
3. An inmate may not file a grievance on any issue which the Department has no control over, such as
   i. Federal, State, or Local Laws
   ii. Judicial Proceedings or Decisions of the Courts
   iii. Probation or Parole Actions
4. If a grievance is invalid, staff will document the specific reason on the form. Staff will provide the inmate with a copy and forward the original to Inmate Records for inclusion in the inmate's records file.
   i. Invalid grievances will not be entered into the grievance database and will be kept only for documentation purposes.
   ii. Staff may act on an invalid grievance if it is in the best interest of the Department.

c) Initiating a Grievance
1. Inmates may utilize the grievance procedure regardless of disciplinary status, housing location or classification.
2. Grievance forms are available in all housing locations.
3. Any staff member who receives a verbal or written request for a grievance form shall, as soon as practical, provide one to the requesting inmate.
4. The grievance procedure is to address the specific concerns of the individual inmate filing the grievance.
   i. The inmate shall place a single complaint with related issues on a single grievance form. If multiple, unrelated issues are included on a single form, staff will return the form to the inmate and instruct him/her to submit a separate form for each unrelated complaint.
   ii. An inmate shall not submit a grievance on behalf of another inmate or group of inmates. Petitions or joint grievances involving multiple inmates will not be accepted.
   iii. This shall not prevent an inmate from obtaining assistance in preparing or filing a grievance (e.g., family, attorney, or other inmates).
5. Illiterate, disabled, or non-English speaking inmates shall be provided assistance, upon request.

DEFTS. MSJ B 193

6. All properly completed grievance forms shall be submitted within 14 calendar days of the alleged incident. Any grievance form submitted after 14 days will be considered invalid. The inability to obtain assistance is not a valid reason for exceeding the time limit for submissions.

    i. The inmate may drop the completed grievance form in any grievance drop box. These boxes are located throughout the facility and accessible to all inmates. The grievances will be retrieved by the sergeant responsible for the area where the box is located.

    ii. The inmate may submit the grievance form directly to sworn staff.

        A. Any grievance form submitted to non-sworn staff will be considered invalid.

        B. If at the time of submission the staff member who receives a completed grievance form determines the grievance is actually a request (i.e. – sentence ending date, law book request, haircut, etc.) he/she will check the "Handled as Inmate Request" on the form and process the form as a request.

        C. The receiving staff member will legibly print his/her name and PID number and enter the date/time of submission on the "Received By" line of the grievance form.

        D. If the sworn staff member can resolve the grievance upon receipt from the inmate, he/she shall document the resolution in the appropriate sections of the grievance form and assign the grievance a jail incident number (JI number). The staff member will write his/her name and PID number and the date/time of return on the "Response Returned to Inmate" line of the grievance form. The staff member will provide the inmate a completed copy, and place the original completed and signed form in the area's grievance box for supervisor review, database upload, and distribution.

        E. If the staff member cannot resolve the issue, he/she will assign the grievance a JI number and deliver the grievance to the area sergeant before the end of the shift.

d) Supervisor Responsibilities

1. At least once per shift, each sergeant will collect all new grievances from the locations in his/her area of responsibility.

2. The sergeant will review all submitted grievances and determine the appropriate level at which to handle them. This may include delegation to a deputy, assignment to another sergeant or forwarding to the facility Captain. The sergeant may also elect to handle the grievance personally.

3. The sergeant will assign a JI number to each grievance, prior to entering it into the Grievance Database.

4. Once uploaded, the sergeant or his/her designee will assign and/or distribute the grievances to the appropriate staff member for review and response.

5. When the assigned staff member returns the grievance to the sergeant with the written response, the sergeant will update the Grievance Database with any findings, actions taken or the need to elevate the grievance to Administration. The original grievance with the written response will be forwarded to the facility Administrative Sergeant for review, distribution, and will be filed in administration at the originating facility.

e) Grievance Resolution

1. All grievances will be resolved at the lowest possible level. If the assigned staff member is unable to resolve the issue, the form will be forwarded to the next highest level in the chain of command. The chain of command for the grievance process shall be as follows: Deputy, Sergeant, Captain, and Division Commander.

2. Staff investigations and responses shall be completed within a reasonable amount of time. Reasonableness will be based on the type and scope of the grievance submitted, but all inmate grievances will be acted on within ten working days of receipt.

3. All grievance forms will detail the resolution, including any corrective actions taken.

4. Grievances that are denied or cannot be resolved will have written reasons for the denial from each level of review which acted upon the grievance.

5. The Captain will review all completed grievances. The Administrative Sergeant will ensure the Grievance Database has been updated, the original grievance has been filed in administration at the originating facility, a copy of the completed grievance has been provided to the inmate, and a copy of the completed grievance has been placed in the inmate's records jacket.

f) Grievances Requiring Special Handling

1. If the grievance is a complaint about staff misconduct, the sergeant will enter it into the Grievance Database and follow the departmental procedures in Lexipol Policy 347 – Disciplinary Policy and Policy 1020 - Personnel Complaint Procedure for the investigation of citizen complaints.

   i. Return a copy of the grievance form to the inmate with "The matter is being investigated." in the staff response section.

   ii. Document the complaint on an intra-department memorandum form, include any recommendations, attach a copy of the original grievance, and forward it to the Watch Commander or Bureau Commander.

2. If the grievance is about a medical or disability issue, the sergeant will enter the grievance into the Grievance Database and forward it to the facility Administrative Sergeant.

   i. The Administrative Sergeant is the facility Americans with Disabilities Act (ADA) coordinator.

   ii. The Administrative Sergeant will forward medical grievances to the Correctional Health Services (CHS) Administrative Manager for resolution.

   iii. The CHS Support Services Manager will notify the Administrative Sergeant at the facility where the grievance originated when the grievance has been resolved.

3. If the grievance is received from CDCR via ADA Compliance Staff.

   i. The ADA Compliance Deputy will obtain a Jail Incident Number from the 24-hour log where the Inmate is housed and enter the grievance into the Grievance Database.

   ii. ADA Compliance deputy will reply to CDCR with a scanned copy of the grievance receipt from the system.

   iii. Receipt copies of the grievance will be provided to the inmate and the inmate's records file.

   iv. The grievance will be handled per CCOM 1600.5 and staff will involve CHS Medical and the facility Administrative Sergeant as necessary to address the grievance.

4. If the grievance is about an Inmate Services Division (ISD) issue, enter the grievance into the Grievance Database and forward it to the facility Administrative Sergeant.

   i. ISD includes Correctional Programs, Food Services, and Commissary.

   ii. The Administrative Sergeant will forward the grievance to the appropriate ISD contact.

   iii. The ISD will notify the Administrative Sergeant when the grievance has been resolved.

   iv. If the issue has already been resolved by sworn staff, the administrative sergeant will forward a copy to ISD for informational purposes.

   v. If the grievance is related to a religious diet, it will be assigned to the Special Needs Deputy (ADA Deputy) at the facility where the inmate is housed.

      A. The Special Needs Deputy will interview the involved inmate, coordinate with the involved stakeholders and work to resolve the grievance.

      B. The Special Needs Deputy will document the outcome in the Grievance Database.

5. If the grievance is regarding an Inmate Pro-Per issue, enter the grievance into the Grievance Database and assign it to the Custody Pro-Per Sergeant.

g) Grievance Appeals

1. Any staff member who receives a verbal or written request for a grievance appeal form shall, as soon as practical, provide one to the requesting inmate. The form is the same for initial grievances and appeals.

**DEFTS. MSJ B 195**

2. In the event an inmate is dissatisfied with the outcome of the actions taken at the initial level, the grievance may be appealed to the next highest level.

3. All appeals must be submitted in accordance with all procedures established for submitting an initial grievance.

4. Any grievance appeal must be submitted within 14 days of notification of the previous grievance outcome.

5. The inmate must include the original jail incident number from the top right corner of the initial grievance in the appropriate field. The inmate must mark the form "APPEAL."

6. The appeals process will be considered exhausted when the inmate's grievance has been reviewed by the division commander.

h) Emergency Grievances

1. The grievance procedure is a written procedure. As such, it may not be conducive to resolving true emergencies. Inmates should immediately notify staff of any emergency.

2. An emergency grievance involves an immediate or imminent threat to an inmate's health, safety or welfare.

3. When staff receives a grievance marked as an emergency, or determines a grievance may be an emergency, staff will

   i. If necessary, move the inmate and any other inmates potentially affected by the issue, to a safe location pending the grievance review and resolution.

   ii. Deliver the grievance to a supervisor immediately.

i) Protection from Retaliation

1. Staff shall not harass, discipline, punish, or otherwise retaliate against an inmate who uses or participates in the grievance process.

2. The inmate may pursue any alleged or threatened retaliation through the grievance procedure.

j) Grievance Procedure Abuse

1. Abuse of the grievance procedure is defined as the misuse of the process through excessive frivolous complaints or continued complaints of previously resolved issues. The Division Commander or his/her designee has final determination of what is considered grievance procedure abuse.

   i. It shall be considered an abuse of the grievance procedure to file a grievance on an issue that has already been resolved.

   ii. Abuse of the grievance procedure will be considered a violation of jail rules and is subject to appropriate disciplinary action.

   iii. Discipline resulting from grievance procedure abuse is not considered retaliation as covered in 1600.5.9.

## 1600.6 - Orange County Correctional Programs

a) For assistance or information on the following programs, an inmate message slip should be addressed to Correctional Programs, noting which program you are interested in.

b) Academic Programs/Classes

1. General Education Development (GED)

2. High School Subjects Class

3. English as a Second Language (ESL)

4. Adult Basic Education (ABE)

5. United States Government/Citizenship

6. Basic Literacy Program – Provides 1 on 1 tutoring for inmates who are unable to read or write.

c) Developmental Programs/Classes

1. Substance Abuse Class

2. Domestic Violence Class

3. Anger Management Class

    4.  Positive Parenting Class

    5.  Health Class

d)  Vocational Education Programs

    1.  Computer Business Skills Class

    2.  Vocational Job Training Classes – Provides basic skills training for a variety of occupations.

    3.  Job Development Skills Classes – Guides inmates through abilities testing, application preparation, resume writing, etc.

e)  Religious & Inspirational Programs

    1.  The Orange County Sheriff's Correctional Programs Unit offers religious services in several denominations. These services are offered in English, Spanish, and Vietnamese.

    2.  Individual pastoral counseling is also available upon request.

f)  Law Library

    1.  For Law Library books assistance fill out an inmate message slip addressed to "Law Library."

g)  Great Escape Program

    1.  This program helps inmates who want to continue substance abuse treatment after they have been released.

    2.  Great Escape helps arrange inpatient and outpatient treatment upon request.

h)  Re-Entry Center

    1.  Re-entry Center was developed to assist inmates make a seamless transition from jail back into the community.

    2.  Some of the services offered at the Resource Center are referrals to residential treatment programs, sober living homes, counseling, educational assistants, employment information, bus passes, clothing and shelter information.

i)  Criminon Program

    1.  Criminon program is a self-study life skills class.

## 1602 – Discipline

Inmate misconduct will be documented in the Sheriff's Data System and sanctions will be imposed in proportion to the severity of the rule violated. Inmates may utilize the formal appeal process to appeal any disciplinary action against them.

### 1602.1 – General

a)  The discipline of inmates and/or the reporting of rule violations are the responsibility of every employee, regardless of work assignment. This will be done to ensure the good order of the facility.

b)  All personnel who deal with inmates will receive sufficient training to be thoroughly familiar with the rules of inmate conduct, sanctions available and the rationale for the rules.

c)  Discipline will be conducted in an impartial and consistent manner by a facility supervisor.

d)  Each inmate will have continual access to posted rules.

e)  Violation of law or jail rules will result in disciplinary action. Depending upon the conduct, violations will be classified as either minor or major violations with corresponding degrees of punishment.

f)  As punishment for jail rule violations, no inmate shall be deprived of implements necessary to maintain personal hygiene, food, bedding, correspondence or access to counsel.

### 1602.2 - Minor Violations (a partial listing)

a)  Failure to rise for reveille

b)  Straggling/disrupting the count

c)  Not dressed in full jail issue

d)  Failure to have bunk made up properly

e)  Failure to clean assigned cell/area

f) Taking food from dayrooms
g) Passing food from table to table in the chow hall
h) Possession of contraband

## 1602.3 – Major Violations (a partial listing)

a) Fighting
b) Creating a disturbance
c) Failure to obey a directive
d) Insubordination or disrespect
e) Possession of contraband which would pose a security threat
f) Theft
g) Tampering with a security device
h) Destruction of jail property
i) Unauthorized movement
j) Habitual violation of jail rules
k) Smoking

## 1602.4 - Violations of Law

a) Violations of Law/Initial Crime Reports
1. Whenever it is determined that an inmate's actions constitute a violation of law and the circumstances warrant prosecution, the incident will be referred to the District Attorney for a criminal complaint. In such instances, the incident will be reported on an "Initial Crime Report" under a DR number. This may be in addition to discipline being administered by the jail staff.
b) Medical Release Authorization Form
1. In cases where an inmate is the victim of an assault and requests prosecution, a Medical Release Authorization Form will be completed and submitted along with the Initial Crime Report. The Medical Release Authorization Form is located on the intranet under Knowledge Center/Forms-Document Center/Medical Release Authorization.

## 1602.5 – Discipline

a) Counseling an Inmate:
1. If, in a maximum security facility, a deputy believes it is necessary to remove an inmate from his/her cell; whether to address his/her behavior, or restore/maintain order, the deputy will do one or more of the following:
    i. Conduct the counseling in view of a fixed facility video-recording camera.
    ii. Conduct the counseling in view of a handheld video camera.
    iii. Conduct the counseling with a sergeant present.
2. Deputies are ultimately responsible for determining the safest location for conducting the counseling.
b) Minor Violations
1. Minor violations may be handled on an informal or formal basis at the discretion of the deputy. Deputies are encouraged to resolve minor incidents on an informal basis.
2. Deputies may:
    i. Counsel the offender.
    ii. Assign up to four (4) hours extra duty with the approval of a sergeant or Watch Commander.
    iii. Deny the inmate certain privileges, such as telephone or TV for up to five (5) days for each violation. (Under no circumstance should a loss of telephone privileges be used to prevent an inmate from making legal calls to his/her attorney.)
    iv. Deny the inmate commissary for up to five (5) consecutive calendar days (not five commissary days).

3. Deputies may not:

    i. Deny the inmate dayroom, visiting and/or outdoor recreation as a result of a minor jail rule violation.

4. Documentation:

    i. Minor Disciplinary Report - This report may be used whenever a deputy observes a minor violation of jail rules. The report is not intended to replace the Jail Incident Report and should not be used to report major violations. Deputies will log onto the Sheriff's Data System (SDS) and complete all portions of the report, including a brief statement regarding the exact circumstances of the violation. The report shall be submitted to a supervisor for approval and assignment of punishment. This will be done prior to the inmate working any extra duty or losing any privilege.

    ii. Multiple suspects will be entered separately using the SDS system. The same date and time may be used for the incident, but each inmate should have a separate entry, under his/her booking number, describing the violation.

    iii. After approval, all copies of the report shall be retained in the respective module until the punishment is completed. Upon completion of punishment, the Module Deputy will send the original copy of the report to Inmate Records, where it will be filed in the inmate's jail file.

c) Major Violations

1. Major violations of jail rules will result in a disciplinary hearing. The deputy shall complete two (2) copies of "Notice of Disciplinary Violation" using the SDS system along with a Jail Incident Report and submit them to a supervisor. The inmate will be handed the original copy of the Notice of Disciplinary Violation. Deputies shall note on the notice whether the inmate waived the twenty-four (24) hour delay.

2. Disciplinary hearings will take place no sooner than twenty-four (24) hours and no later than seventy-two (72) hours after the inmate is served their Notice of Disciplinary Violation / Hearing, unless their twenty-four (24) hours are waived by the inmate. The inmate(s) involved in the violation, along with any witnesses, will be temporarily segregated until they have been interviewed. The hearing will be conducted by a supervisor who was not involved or a witness to the incident. The Deputy(s) and inmate (s) will be interviewed along with any witnesses they wish to call. Interpreters will be provided as needed. The inmate shall have access to staff or inmate assistance when the inmate is illiterate or the issues are complex.

3. Punishment for major violations of jail rules may consist of one or any combination of the following:

    i. Any of the punishments listed under minor violations

    ii. Loss of privileges (commissary, visiting, recreation, program classes, etc.)

        A. "Loss of All Privileges" does not include group religious services. Exclusion from group religious services may only be based on security concerns.

    iii. Loss of good time/ work time

    iv. Removal from work status

    v. Confinement to disciplinary housing

    vi. Or the combination of any of the above

4. Under no circumstances will an inmate be denied food as a means of punishment.

5. Safety cells (medical restraint) will not be used as a form of punishment.

6. Final disposition of punishment will be made by the Disciplinary Officer and reviewed by the Division Commander.

7. Inmates shall be advised of the action taken by the Disciplinary Officer by means of an "Inmate's Advisement of Punishment Report" which is prepared by the Disciplinary Officer. Distribution of the form is as follows:

    i. One (1) copy to Inmate Records

    ii. Two (2) copies to Classification

    iii. One (1) copy to the inmate

d) Discipline by Inmates

1. No inmate may inflict punishment upon another inmate.
2. "Kangaroo Court" (mock courts set up by inmates) and/or "sanitation committees" (inmates set up to enforce sanitation rules) are illegal in any California jail.
3. Inmates involved in any of the above actions will be subject to immediate discipline and/or prosecution.
4. No inmate may ever be given authority over, or permitted to exert control over any other inmate.

## 1602.6 - Appeal Procedure

a) Minor Violation Appeal Procedure: Any inmate wishing to appeal a minor violation must submit a written request within forty-eight (48) hours of notice of the violation to the appropriate Sergeant. The Sergeant will review the appeal and advise the inmate in writing of his/her decision.

b) Major Violation Appeal Procedure: Appeals of punishment may be made in writing in the form of a grievance, an Inmate Message Slip, or a letter to the facility and must be submitted within fourteen (14) days after receiving notice of the discipline imposed. Appeals submitted after this period will not be considered timely and will not be evaluated. The Division Commander will review the Watch Commander's report and advise the inmate of the decision on an Inmate's Advisement of Appeal form.

c) Inmate Disciplinary Appeal Reporting Process

1. Inmate disciplinary appeals shall be handled by the Watch Commander of the inmate's current housing location. The Watch Commander or their designee will complete a package containing:
   i. Inmate Appeal Hearing Report – completed by the Watch Commander after the inmate interview
   ii. Inmate's Advisement of Appeal – completed by the Watch Commander to be reviewed by the Division Commander or his/her designee
   iii. Copy of the Jail Incident Report – from the inmate records file
   iv. Copy of the Sergeant's Disciplinary Hearing Report – from the inmate records file
   v. Dated Inmate Message Slip
2. The person who issued the discipline shall not be the same as the one who conducts the Inmate Appeal Hearing. The completed package will be returned to the Classification Sergeant for further processing (inmate notification, admin file, inmate file).

## 1602.7 - Disciplinary Housing

a) Disciplinary Housing means a temporary housing status which confines inmates to designated rooms or cells for prescribed periods of time as punishment for major rule violations. This policy is considered integral to maintaining a safe environment for the inmates and jail personnel by providing a system of consequences for behavior that jeopardizes day-to-day jail operations. Disciplinary Housing cells may also be used as alternative housing (i.e. medical quarantine, facility safety and security, other appropriate circumstances) after receiving approval from the Watch Commander.

b) No inmate will be placed in Disciplinary Housing prior to a disciplinary hearing held by the Disciplinary Officer and without permission from the Watch Commander. Correctional Health Services (CHS) will be notified prior to an inmate being housed in a Disciplinary Housing cell. A medical evaluation of the inmate will be conducted within 72 hours prior to the inmate's placement into Disciplinary Housing and a mental health evaluation of the inmate will be conducted within 24 hours prior to the inmate's placement into Disciplinary Housing.

1. To accommodate CHS' resources for these evaluations, inmates will not be placed in Disciplinary Housing on Sundays or Mondays.
2. When emergency placement is required due to a threat to safety and security of the facility, an inmate may be placed in Disciplinary Housing with prior clearance by Medical and Mental Health staff, any day of the week.
3. Due to the nature of the violation, an inmate may be moved to a Disciplinary Housing cell pending his/her hearing. Placement of an inmate in Disciplinary- Housing pending a disciplinary hearing will not include the loss of any regular privileges such as commissary, public visiting, dayroom or outdoor recreation (Full-

**DEFTS. MSJ B 200**

Privileges). If an inmate is moved to another housing location, the Classification/Housing Review Form (J-203) will be completed

(Refer to CCOM section 2104.1(c) for further details).

c) An inmate may be assigned to Disciplinary Housing, as a result of jail discipline, for a period of time determined by the Disciplinary Sergeant based upon the severity of the violation and inmate's disciplinary history.

    1. Frequent jail rule violators shall be assigned progressive discipline.

d) A Correctional Health Services staff member will check the status of all inmates housed in disciplinary housing at least once per shift.

    1. The visit will be to inquire to the inmate's health and/or need for medical services.

    2. These checks will be recorded on the Daily Inmate Activity Log and Disciplinary Housing Master Log.

e) A Correctional Health Services staff member will check the mental health status of any inmate housed in Disciplinary Housing on a weekly basis to determine whether the disciplinary status is to continue.

f) After an inmate has completed thirty (30) consecutive days in Disciplinary Housing, there shall be a review by the Division Commander before the Disciplinary Housing status is continued.

    1. This review shall include a consultation with medical and mental health staff.

    2. Such reviews shall continue at least every fifteen (15) days thereafter until the disciplinary status is discontinued.

g) No inmate, under any circumstances, will spend more than thirty (30) consecutive days on Disciplinary Housing status without three (3) days relief. During the three (3) days of relief, the inmate shall be on full-privileges in the housing location to which he/she is assigned.

h) An inmate assigned to Disciplinary Housing (discipline) will have the following privileges suspended:

    1. Dayroom or television

    2. Outdoor recreation

    3. Public visiting (Official visits are permitted)

    4. Personal telephone calls

    5. Commissary ordering, delivery, consumption or use

    6. Newspapers, magazines or other publications (Exception-One book from the Orange County Jail Library)

    7. Cards or games

    8. Unnecessary inmate movement outside of the cell.

    9. An inmate will not be denied exercise of his religion.

        i. Exclusion from group religious services may only be based on security concerns.

i) Telephone use will be made available on request to contact an attorney, the courts, or for personal emergencies.

j) Correspondence privileges shall not be withheld except in cases where the inmate has violated correspondence regulations, in which case correspondence may be suspended for no longer than seventy-two (72) hours without the review and approval of the Division Commander.

k) Access to legal counsel shall not be suspended as a disciplinary measure.

## 1602.8 - Personal Hygiene Articles in Disciplinary Housing

a) All inmates shall be issued a welfare pack upon placement into Disciplinary Housing. The welfare pack will minimally contain:

    1. One Toothbrush

    2. One Toothpaste

    3. One Comb

    4. One Bar of soap

    5. One Pencil

    6. Two Inmate Message Slips

    7. Two Stamped Envelopes each w/ 2 sheets of lined paper

**DEFTS. MSJ B 201**

b)   If the inmate runs out of allowable personal hygiene articles, the deputies will provide the articles from a welfare pack upon request.

c)   Inmates will not be permitted to keep a shaving razor in their cell, however, they will be permitted to shave daily unless otherwise ordered by the facility administrator (Title 15, Minimum Jail Standards, Section 1267). Deputies will furnish an electric razor or, a safety razor to inmates requesting to shave and supervise the inmate's use of the razor.

## 1602.9 - Pro-Per Privileges in Disciplinary Housing

a)   In order to provide consistency of punishment, Pro-Per inmates shall be permitted to have legal materials in their possession. Pro-Per inmates will be permitted access to legal books, Pro-Per phone calls, or normal visitation with a legal runner during the time they are in Disciplinary Housing (discipline).

b)   When a Pro-Per inmate is placed in Disciplinary Housing for disciplinary reasons, the Housing Sergeant shall be notified in writing. The following court day, the sergeant shall contact the clerk of the court in which the inmate is Pro-Per and advise the clerk of the temporary restrictions placed on the inmate and his/her release date from Disciplinary Housing. The sergeant shall also record this information in the inmate's Pro-Per file.

## 1604 - Inmates Rights

Jail Operations Administration and Staff recognize that inmates have certain rights relative to the conditions of their confinement that will be acknowledged as a matter of law and for the good order of the facility.

## 1604.1 - Inmate Rights

a)   Prompt, legal and thorough booking and release procedures will be utilized to minimize time in custody.

b)   Clean and orderly surroundings.

c)   Adequate toilet, bathing and laundry facilities.

d)   Any inmate shall, upon request, be allowed to continue to use materials necessary for (1) personal hygiene with respect to their menstrual cycle and reproductive system, including, but not limited to, sanitary pads and/or tampons at no cost to the inmate, and (2) birth control measures as prescribed by a physician, nurse practitioner, certified nurse midwife or physician assistant.

e)   Adequate lighting, heating, and ventilation.

f)   Compliance with federal, state/local fire and safety laws/regulations.

g)   A minimum of fifteen (15) minutes shall be allowed for the actual consumption of each meal a Minimum Jail Standards, Title 15, Section 1240). The diet will be wholesome, properly prepared, and nutritionally adequate.

h)   Clean and appropriate clothing.

i)   Medically necessary health care services comparable in quality to those available in the general citizen population.

j)   Any inmate shall have the right to summon and receive the services of any physician, nurse practitioner, certified nurse midwife or physician assistant of their choice in order to determine whether they are pregnant. Any expenses for the services of a physician, nurse practitioner, certified nurse midwife or physician assistant whose services are not provided by Correctional Health Services will be the responsibility of the inmate.

k)   Access to indoor and outdoor recreational opportunities and equipment for a minimum of three (3) hours per week (Minimum Jail Standards, Title 15, Section 1065).

l)   Access to clergy, which allows inmates to adhere to their legitimate religious practices, subject only to limitations necessary to maintain institutional order and security.

m)   Visitation with family members and friends in a visiting area that is limited only by those facility requirements necessary to maintain order and security. Private areas are available for official visitation between inmates and attorneys, except where the restriction can be properly justified. Official visits shall be granted during any reasonable hour.

n)   Freedom from discrimination based on the inmate's race, religion, national origin, sex, age, handicap, or political belief.

**DEFTS. MSJ B 202**

o) A dignified conversational form of address. All inmates will be addressed by name rather than booking number or derogatory forms of address.

p) Protection from personal abuse, corporal punishment, personal injury, disease, property damage and harassment.

q) Inmates will be classified to housing with due consideration for the safety of the public, staff and other inmates. Inmates are allowed to present opinions, preferences and requests regarding their classification and housing assignment.

r) Personal grooming choices regarding appearance. This choice is limited only by facility requirements for:
1. Safety
2. Security
3. Identification
4. Hygiene

s) The expectation that unnecessary force, embarrassment or indignity to the inmate is avoided during searches.

t) The availability of a written grievance procedure that includes at least one level of appeal.

u) Deputies and other Sheriff's Department employees will make every attempt to respond to inquiries of inmates and/or direct them to the correct staff member who may have the answer that is requested.

v) Pursuant to election codes, inmates have the right to participate in local, state, and federal elections via absentee ballots.

w) Uncensored communication and/or correspondence with persons on the outside, limited only as necessary or by law to maintain order and security.

x) Inmates shall not be denied reasonable access to the Courts and Counsel. Access shall consist of unlimited incoming and outgoing mail and confidential consultation with attorneys (Minimum Jail Standards, Title 15, Section 1068).

y) Inmates will have the right to request assistance in their legal matters. This will include persons with legal training, the Public Defender's Office and law library facilities. Inmates seeking judicial or administrative redress will not be subject to reprisals or penalties as a consequence.
1. Inmates may assist one another with legal matters. If documents belonging to one inmate are found in the possession of another inmate, the deputy making the discovery will make every effort to determine if the inmate named on the document gave his/her permission for the other inmate to possess the document. If permission was not given, the inmate who is not named on the document will be in "Possession of Contraband" and a Jail Incident Report will be written.
2. Inmates may request books from the County Law Library by submitting a written request to the Law Librarian. All books previously checked out must be returned prior to obtaining additional books.

z) Inmates may request the assistance from other inmates (jailhouse lawyers). These communications must be for specific legal purposes.

## 1604.2 - Inmate Rights - CCOM Sections

a) Specific procedures to fulfill requirements described in the Inmate Rights Section of this chapter are detailed in other sections and chapters in this manual:
1. Inmate Services and Programs
2. Sanitation and Maintenance
3. Food Service
4. Medical and Health Services
5. Safety and Emergency Procedures
6. Communications, Mail and Visiting
7. Classification of Inmates

## 1604.3 - Rights of Arrested, Detained, or Imprisoned Foreign Nationals

Foreign nationals are those individuals who are not citizens of the United States, whether in the country legally or not.

**DEFTS. MSJ B 203**

a) Article 36 of the Vienna Convention on Consular Relations sets forth certain rights of foreign nationals from member countries when arrested, detained, or imprisoned by law enforcement officials in this country. This article requires that the following procedure be followed whenever a law enforcement agency arrests, detains, or imprisons a foreign national.

1. At the request of the foreign national, the agency must, without delay, inform the appropriate consular officials in California that the foreign national has been arrested, detained, or imprisoned.

2. The agency must, without delay, advise the foreign national of the right to have the appropriate consular officials in California notified.

3. The foreign national must be given the opportunity to communicate, correspond with and be visited by consular officials representing the foreign national's country in California.

4. A sign is posted outside the Receiving sally port advising the arresting officers of their responsibility for Foreign National Consular notification.

b) Notification of Consular Officials

1. If an inmate is identified as a "foreign national requesting consular notifications," the arresting agency will be notified. The arresting agency will make the appropriate notification to the consular officials representing the foreign national's country.

c) Consular Officials, Rights of Visitation

1. If an inmate is identified as a foreign national, he/she will be given the opportunity to communicate, correspond with and be visited by consular officials representing the inmate's country.

2. Visits by consular officials will be conducted in the Attorney-Bonds visiting area. The visitor shall fill out an Official Agency Visitation form. The Watch Commander must be notified prior to the visit and will designate the location of the visit.

d) Deaths of Foreign Nationals in California

1. When a foreign national dies in custody in California, Article 37 of the Vienna Convention requires that the appropriate consular official be notified. Such notification assists consular officials in advising next of kin and other appropriate parties on a timely basis.

e) Current information regarding the appropriate consular office to notify in case of the arrest, detention, imprisonment, or death of a foreign national may be obtained from the "Consular Notification and Access" manual located in the Watch Commander's office. A copy of this manual will also be kept in the Receiving Guard Station and will be made available to arresting agencies for review in the booking area. The complete text is also available on-line at: http://travel.state.gov/law/consular/consular_636.html. The United States Department of State Bureau of Consular Affairs can be contacted at (202) 647-4415. After hours (EST) the State Department Operations Center – Senior Watch Officer can be contacted at (202) 647-1512.

## 1604.4 - Inmate Voting Procedure

a) Inmates who would like to participate in local, state and Federal elections should contact the Registrar of Voters for information and materials.

Registrar of Voters

PO Box 15467

Santa Ana CA 92735-9910

## 1604.5 - Inmate Services

a) Medical/Dental/Psychiatric Care

1. Prior to being booked into the custody of the Sheriff, each person will be screened by a member of the Correctional Health Services (CHS) staff. If after booking, an inmate wishes to request routine, non-emergency, medical attention he/she must submit an Inmate Health Message slip to the healthcare staff. Slips are available from the Module or Prowler Deputies. Completed forms are to be deposited in the collection box in each module where they will be collected twice daily.

2. Medical, mental, or dental health care professionals, depending upon the nature of the inmate's complaint, will conduct sick call daily in each module. Inmates found to hoarding medication or possessing another inmate's medication will be subject to disciplinary action.

3. HIV testing is available through CHS. Inmates may submit an Inmate Health Message Slip for testing.

b) Recreation Programs

1. Tabletop games, books and newspapers are provided to inmates in their dayrooms. Each inmate will also be offered an opportunity to have a minimum of three (3) hours of outdoor recreation each week. Volleyball, handball and basketball are sports available in the outdoor recreation yards. Outdoor recreation availability is dependent upon weather conditions, court appearance schedules, etc.

2. Televisions are provided in the dayrooms.

c) Religious Programs and Bible Study

1. Church services are conducted on a regular schedule.

2. The Module Deputies will announce exact times and locations for these programs in advance.

d) Individual Family Service Programs

1. The Inmate Programs Coordinator and his / her staff maintain an extensive reference log of social service programs and groups available for use for inmate referral. Inmates desiring social service assistance can submit an Inmate Message Slip to the Inmate Programs Coordinator who will furnish the inmate the name, address and/or phone number of the appropriate person or agency to contact.

2. Substance abuse programs / groups are also available. Alcoholics Anonymous and Substance Abuse classes are available through the Correctional Services Education Team. Some one-on-one counseling through the County of Orange Health Care Agency is also available. Any information on any type of substance abuse counseling is available through Correctional Programs. Inmates interested in any of these programs will inquire by use of an Inmate Message Slip addressed to the Correctional Programs Coordinator.

3. The Community Transition Program is designed for inmates who have been released from custody. The individual may contact job developers through Rancho Santiago College and Correctional Program Technicians for a variety of services. These services are free and include interest and abilities testing, enrollment in additional education, job training, and actual job placement.

4. Pre-release counseling is also available. Matters such as transportation upon release, housing, and employment referrals may be addressed to the pre-release counselor.

e) Education Programs

1. Any sentenced or pre-trial inmate who is in-custody longer than 29 days will have the opportunity to enroll in the California State General Education Diploma (GED) program. Inmates interested in enrolling in the GED program will address an Inmate Message Slip to the Correctional Programs Coordinator.

f) Jail Clothing and Hygiene

1. Bed sheets, towels, under/outer garments, and socks are exchanged two times each week. Blankets will be exchanged every three months, or as needed. Inmates are required to shower regularly to prevent an offensive and unhealthful condition of body hygiene. Personal grooming items are provided to inmates who do not have money.

g) Commissary

1. Inmates may purchase candy, writing materials, postage, and personal hygiene items three (3) times each week. Order forms are distributed three (3) times each week. Inmates without any funds can order a "welfare pack" of free grooming items.

h) Library Services

1. A list of legal books available from the jail law library is available for review in each housing location. Requests for legal books must be submitted on an Inmate Message Slip. If a certain book is not available from the jail law library, the request will be taken to the Orange County Law Library. Inmates may request or possess a

maximum of five (5) books. Books may be retained for a twenty-four (24) hour period unless properly renewed.

## 1604.6 - Pregnant Inmate Rights

a) Pregnant inmates shall be advised in writing of the rights afforded to them, which include but are not limited to the following:
   1. Childbirth and infant care education;
   2. Health information related to diet and nutrition;
   3. Prenatal and postpartum health care;
   4. Opportunity to request a review of their eligibility for termination of the pregnancy;
   5. Information on the OCSD policies governing the use of leg restraints, waist restraints, handcuffs and other restraints placed on pregnant inmates. Additional information regarding the use of restraints on pregnant inmates may be found in CCOM section 1800.3.4.
   6. The right to summon and receive the services of any physician and surgeon of her choice, at her own cost.

b) Upon confirmation of a pregnancy, CHS shall provide the inmate with an acknowledgement form (Pregnant Inmate Information form) advising them of the rights afforded to them. The signed form shall be placed in the inmate's health record.

c) If an inmate refuses to sign the acknowledgement form, the staff member providing the form shall write "refused" above the inmate signature line.

d) If a custody staff member is informed of a pregnancy or believes an inmate may be pregnant, the staff member shall immediately refer the inmate to CHS for medical evaluation. CHS shall provide the inmate with a "Pregnant Inmate Information" form. This form shall be provided even if the pregnancy has not yet been confirmed.

e) Pregnant inmates housed in multitier housing units shall be assigned lower bunk and lower tier housing.

f) Pregnant inmates shall not be tased, pepper sprayed, or exposed to other chemical weapons. Additional information regarding the use of restraint on pregnant inmates may be found in CCOM section 1800.3.4

g) A pregnant inmate may elect to have a support person present during labor, childbirth, and during postpartum recovery while hospitalized. The support person may be an approved visitor or the jail's staff designated to assist with prenatal care, labor, childbirth, lactation, and postpartum care.

   1. Support person will be qualified as per CCOM 1902.6 (Special Visits for inmates)

h) A pregnant inmate in labor and delivery shall be given the maximum level of privacy possible during the labor and delivery process. If a deputy is present, they shall be stationed outside the room rather than in the room absent extraordinary circumstances. If a deputy must be present in the room, the deputy shall stand in a place that grants as much privacy as possible during labor and delivery. The deputy shall be removed from the room if a professional who is currently responsible for the medical care of a pregnant inmate during a medical emergency, labor, delivery, or recovery after delivery determines that the removal of the deputy is medically necessary.

i) The rights provided by Penal Code sections 4023.6, 4023.8 and 4028 shall be posted in all holding cells at the Intake Release Center as well as the dayroom areas in all housing facilities.

## 1604.7 – Lactating Inmates

1604.7.1 – Purpose

To establish a policy as required by Penal Code section 4002.5 to allow inmates who are lactating access to a breast pump for the purpose of expression of milk to relieve discomfort, to maintain milk supply for their infant or toddler, and/or to prevent infection.

**1604.7.2 – Policy**

County Health Care Agency (HCA), Correctional Health Services (CHS) has established a program, which allows a lactating inmate the ability to express, store, dispose of, arrange transportation for, and provide proper handling instruction for breast milk.

Information regarding the lactation program shall be posted in all locations in the jails where medical care is provided for female inmates. The provisions of the lactation program shall be communicated to all staff who interact with or oversee pregnant or lactating inmates.

**1604.7.3 – Procedure**

A lactating inmate, who desires to maintain lactation to supply breast milk for their infant or toddler, will be permitted to do so during their incarceration. Inmates who wish to discontinue lactation or has been removed from the program by a CHS prescriber will be provided access to a breast pump for the purpose of preventing discomfort and/or to prevent infection.

j) Screening for Lactating Inmates
   1. CHS will screen female arrestees upon entry to determine if they are postpartum and breastfeeding.
   2. Admittance to the program may be denied only if, in the professional medical opinion of a CHS prescriber it will not be possible to provide milk that is safe for an infant's consumption while maintain the health of the mother.
   3. Lactating inmates with positive urine drug screen results will be referred to the OB/GYN prescriber to determine continuance in the program.
   4. Manual breast pumps will be kept on person (KOP), made readily available, and may be used when electric pumps are not available.

k) Correctional Health Services (CHS)
   1. CHS will provide the proper education and instruction to safely and effectively collect, store, and/or dispose of the inmate's breast milk.
   2. CHS will provide instruction on the procedure for the inmate to arrange the pick-up of their breast milk.
   3. CHS will ensure the required documentation and forms are completed by both the inmate and the designated caregiver.
   4. CHS will provide the necessary equipment for the inmate to collect their breast milk.
   5. CHS will properly store the expressed milk in a designated freezer as soon as it is collected from the lactating inmate.
   6. CHS will be responsible for coordinating the exchange of breast milk with a designated caregiver.
   7. The exchange of breast milk will take place at the IRC or Theo Lacy Visiting area depending on the housing of the lactating inmate.

l) Sheriff's Personnel
   1. If a custody staff member is informed of an inmate's desire to maintain lactation or to stop lactation, the staff member will refer the inmate to CHS for medical evaluation or advise the inmate to fill out an "Inmate Health Message Slip" to notify CHS of their request.

For Areas of Responsibility/ Goals – Sheriff's Department refer to CCOM Policy Section 2100.5.

## 1606 - Inmates with Disabilities

The Federal Americans with Disabilities Act (ADA) and the California Disabled Persons Act (CDPA) provide, in general, that qualified individuals with disabilities shall not be excluded from participation in, denied the benefits of, or subjected to

discrimination in a public entity's services, programs, or activities, based upon a disability. The ADA and CDPA apply to all OCSD jail facilities.

For the purpose of this policy, when referring to the term "inmate," the Orange County Sheriff's Department is referring to incarcerated individuals within our custody, including but not limited to: sentenced and un-sentenced inmates, civil detainees, US Marshals inmates, CPC 1170(h) inmates, etc.

Inmates with disabilities are entitled to the same rights, privileges, and services as other inmates of the same classification level. While the ADA does not specify specific impairments, an inmate is covered by the ADA when the inmate has a permanent, temporary, or intermittent condition that impacts a major life activity. Some examples of major life activities include bathing, caring for one's self, moving from place to place, understanding or interpreting instructions, and eating.

Each inmate covered under the ADA must be reasonably accommodated through some means, such as modified housing for wheelchair access, or closed-captioning on the television for someone with a hearing impairment.

DEFINITIONS:

Disability: An individual has a disability if there is a physical or mental impairment that substantially limits one or more major life activities; or the individual has a record of such an impairment; or the individual is regarded as having such an impairment.

   a) Physical or mental impairment:
      1. Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, hemic and lymphatic, skin, and endocrine.
      2. Any mental or psychological disorder such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities
      3. The phrase physical or mental impairment includes, but is not limited to, contagious and non-contagious diseases; orthopedic, vision, speech and hearing impairments; cerebral palsy; epilepsy; muscular dystrophy; multiple sclerosis; cancer; heart disease; diabetes; mental retardation; emotional illness; specific learning disabilities; HIV disease (whether symptomatic or asymptomatic); tuberculosis; and issues caused by past drug addiction and alcoholism.
      4. The phrase physical or mental impairment does not include homosexuality or bisexuality.
   b) Major life activities: Functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.
   c) Has a record of such an impairment: Has a history of, or has been classified as having, a mental or physical impairment that substantially limits one or more major life activities.
   d) Is regarded as having an impairment:
      1. Has a physical or mental impairment that does not substantially limit major life activities, but that is treated by a public entity as constituting such a limitation.
      2. Has a physical or mental impairment that substantially limits major life activities but only as a result of the attitudes of others toward such impairment or, has none of the impairments defined in paragraph 1 of this definition, but is treated by a public entity as having such an impairment.
   e) The term disability does not include:
      1. Transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, gender identity disorders not resulting from physical impairments, or other sexual behavior disorders.

2. Compulsive gambling, kleptomania, or pyromania; psychoactive substance use disorders resulting from current illegal use of drugs.

Reasonable Accommodation: Any change in the facility or field environment, policies, procedures, or the manner in which tasks are completed that enables a qualified individual with a disability to participate in and receive the same benefits from a program or service. This includes ensuring a qualified individual's opportunity to receive the same benefit of service. Reasonable accommodation does not require fundamental alteration of the nature of a program or activity.

Auxiliary Aids and Services: Includes, but is not limited to, assistive communication devices for the deaf, hard of hearing, and visually impaired (e.g., TDD/TYY, closed caption video as necessary and appropriate, Braille, audio technology, large print); a qualified interpreter (or, in some circumstances, an interpreter who demonstrates proficiency adequate to the task); providing a reader or note taker; use of an elevator by mobility-impaired inmates to enable access to programs; and modification or acquisition of adaptive equipment and devices.

Undue Burden: An accommodation(s) which would result in a fundamental alteration in the nature of a program or activity, or an undue financial and administrative hardship. An accommodation will not impose undue hardship on the Department or compromise the safety or security of staff, inmates or others at facility or field sites.

Qualified Individual With a Disability: An individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

1606.1 – ADA Procedures
a) Intake
1. The Booking Loop will be utilized to receive, book, and process all incoming qualified inmates with disabilities. The booking process includes self-commitment bookings and the pre-booking process.
2. When CHS becomes aware of a qualified inmate with a disability, an interview will occur between CHS, Classification, ADA Compliance Staff and the inmate to determine reasonable accommodations and auxiliary aids for the inmate. The decision as to what type of accommodation/modification is appropriate is made on a case-by-case basis. Reference CCOM section 1201.13 "Inmates with Disabilities."
3. Inmates with disabilities may arrive with an assistive device, such as a cane, crutch, walker, wheelchair, etc. Unless a Captain or Watch Commander determines and documents, based on an individualized assessment, that the said device constitutes an immediate risk of bodily harm to inmates, staff or threatens the security of the facility, the inmate shall be allowed to retain the device. If there is a security issue with a specific device (e.g. metal tipped cane), the inmate will be provided a County-approved substitute device. These inmates will be permitted to possess their assistive device in a temporary holding cell at all times.
4. Triage Medical Staff will contact the IRC Operations Sergeant and the ADA Deputy whenever a qualified inmate with a disability enters triage. If the Sergeant is not available, the telephone call will automatically transfer to the Receiving Guard Station Deputy (available 24 hours-a-day).
5. The ADA Deputy shall complete periodic reviews during the period where the device has been removed and/or they have been issued an alternate accommodation, in order to determine whether the inmate is a risk of harm or otherwise can function adequately.
6. For inmates requiring the use of orthopedic or prosthetic devices while in custody, please refer to CCOM section 2108.1(h).
7. Triage Medical Staff will complete a Classification/Housing Review/ADA Booking Checklist form (J-112) according to medical protocol. Triage Medical Staff will indicate "ADA" and the specific impairment on the

form. (Face- to- face interviews are required for inmates in a wheelchair or those who cannot stand for the interview). A copy of this form will be given to Classification.

8. Classification staff will email a copy of the (J-112) to ███████████████, as well as provide a copy of the (J-112) to the Receiving Guard Station Deputy.

9. The Operations Sergeant or the Receiving Guard Station Deputy will designate a First Floor Deputy to ensure reasonable accommodations are made during the booking process.

10. If an inmate is wheelchair bound, mobility impaired, or requires the use of a wheelchair accessible holding cell, the Classification Deputy will complete the bottom portion of the Classification/Housing Review/ADA Booking Checklist form confirming all booking activities are completed. The deputy will checkmark "yes" or "no" in the boxes provided and place his/her initials and PID number next to each activity. Completed forms will be delivered to the IRC Operations Sergeant's Office by the assigned deputy. Completed forms will be collected by the Administrative/ADA Deputy.

11. The Operations Sergeant will enter the following information into the Corrections Sergeant Log under the drop down menu, "ADA Booking Process:"
    i. The date and time the inmate enters the triage area.
    ii. The name of the deputy assigned to ensure reasonable accommodations are made.

12. Reasonable accommodations will be made during the intake process. Some examples are:
    i. Using a counter modified for accessibility to assist inmates who are not able to reach or see over standard counters.
    ii. Conducting face-to-face interviews by Medical and Classification Staff, for inmates who are not able to stand.
    iii. Fingerprint using a portable rolling cart or clipboard, so the inmate does not have to reach up above his/her shoulder height.

13. Inmates who have special or chronic medical needs will be accommodated and/or expedited through the booking process per CHS instructions.

b) Accessible Housing

1. Qualified inmates with a disability will have access to the same services, programs, and activities offered to other inmates of the same classification level.

2. Inmates will have proper access to showers, toilets, sinks, necessary accessibility equipment, etc.

3. Inmates with disabilities may arrive with an assistive device, such as a cane, crutch, walker, wheelchair, etc. Unless a Captain or Watch Commander determines and documents, based on an individualized assessment, that the said device constitutes an immediate risk of bodily harm to inmates, staff or threatens the security of the facility, the inmate shall be allowed to retain the device. If there is a security issue with a specific device (e.g., metal tipped cane), the inmate will be provided a County-approved substitute device. These inmates will be permitted to possess their assistive device in their housing location at all times.

4. When an inmate requiring an assistive device is moved outside of their assigned housing location for court, visiting, chow hall, medical appointment, etc., while being moved between floors, up or down stairs and/or escalators, a deputy may escort the inmate on a case-by-case basis in order to maintain the inmate's safety.

c) Court Transfer Procedures

1. Inmates requiring the use of accessible holding cells will either be held in cells designed to be accessible, or be prepared for court in their respective housing units and moved directly from their housing units to awaiting vehicles in the court transfer area.

d) Release Procedures

1. Reasonable accommodations will be provided to inmates during the release process. Inmates requiring the use of accessible cells will either be held in cells designed to be accessible, or be prepared for release in their respective housing units and expedited through the release process.

e) System-wide Functions

1. The ADA Coordinator will manage the Sheriff's Department's ADA compliance.
2. The Administrative Sergeant at each facility will serve as the ADA compliance officer for their respective facility. The Administrative Sergeants will receive training on accessibility standards, their application in jail settings, and the compliance officer's responsibilities to process and respond to requests for accommodation and/or complaints of denial of access to programs and services.
3. In addition to the facility Administrative Sergeants, one deputy from the Central Jail Complex (CJX) and one deputy from the Theo Lacy Facility (TLF) will be assigned to monitor ADA compliance under the Jail Compliance and Training Team Supervisor.
4. Inmates identified by CHS staff will be interviewed by the facility ADA Deputy. Each inmate will be notified in writing regarding what level of programs and services he/she is eligible to receive based on classification level and medical needs. In addition, each inmate will receive a copy of the jail rules and correctional programs brochure.
5. Each week, the ADA Deputy will forward a current list of qualified inmates with disabilities to each area where they are housed. The list will specify what level of programs each inmate is eligible to participate in based on his/her classification level and medical needs.
6. Initial training will be given to all safety personnel through the Jail Academy, to ensure that they are aware of the guidelines in this administrative directive and their duties, if any, related to it. Updated training for transportation personnel, programs staff members, and security staff members assigned to housing locations where disabled inmates are housed will be provided as necessary.
7. Tracking logs will be maintained for qualified inmates with disabilities. The logs will include outdoor recreation times and locations, dayroom, shower access (if separate from dayroom), and any other specific information documenting accommodations made for the inmate. The log will also include the dates, times, and locations of public visits.
8. Documentation will be maintained according to the department records retention schedule for that type of information.
9. Documentation of staff training will be maintained according to the department records retention schedule for that type of information.

## 1606.2 — Programs and Services

a) Qualified inmates with disabilities will have access to visiting, church services, inmate programs, dayroom/recreation, etc. consistent with their classification level.
b) Staff will provide reasonable modifications to jail rules, policies, and practices to enable inmates to participate in the services, programs, and activities offered to other inmates of the same classification level. Some examples of reasonable accommodations include:
   1. Using a sign language interpreter, Video Remote Interpreter (VRI), or other means to ensure proper communication with deaf inmates (e.g., jail rules & rights, Miranda admonishments, interviews, disciplinary hearings.) The complexity and importance of the communication, the number of people involved, and the length of the communication are some factors to consider when deciding on the best method of assistance.
   2. Providing Telecommunications Devices for Deaf Persons (TDDs), Video Relay Services (VRS), or other texting devices to allow deaf inmates to make telephone calls. These devices, and directions for usage, are maintained inside the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.
   3. The device used to provide VRI and texting usage for deaf and/or hard-of-hearing inmates will be stored in a ▮▮▮▮▮▮, located in the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The directions for usage will be located inside the ▮▮▮▮▮. Watch Commander's approval is required for its usage. This device must be used under direct supervision of a deputy. The deputy must remain with the device during the entire length of its use.
   4. Providing wheelchairs, crutches, canes or other assistive devices when necessary.
   5. Including the special needs of inmates in emergency evacuation plans and drills.

**DEFTS. MSJ B 211**

1606.3 – Disability Discrimination Allegations

a) Any qualified inmate with a disability who believes that he/she is the subject of disability discrimination should use the grievance procedure described in Jail Operations Manual 1600.5 and posted in all housing areas. The inmate must indicate in the box provided on the grievance form that the grievance is disability related. The grievance should be addressed to the facility Administrative Sergeant, who is the designated ADA coordinator for each facility.

1606.4(a) California Department of Corrections and Rehabilitation ADA Notifications

a) Pursuant to Federal Court Order, the CDCR is required under Armstrong v. Brown to send daily electronic notifications to county jails regarding newly booked parolees, who are Armstrong class members, providing information about their disability status and accommodations previously provided while in state prison. Keep in mind the person's disability or accommodations may have changed since release from state incarceration or while on parole. The OCSD guidelines for sharing CDCR notifications are as follows:

1. ADA Compliance and CHS Case Management staff receives CDCR notifications via email.
2. Inmate is located in OCSD Sheriff's Data System.
3. ADA Compliance and CHS Case Management staff collaborate as necessary to determine course of action.
4. CHS Case Management staff may follow up regarding medical issues. This may include a face to face interview with Case Management, including a follow up appointment(s) with a nurse or doctor, if needed.
5. ADA compliance staff may follow up, as necessary to provide appropriate housing and programming accommodations.
6. Every CDCR notification received is inputted into a database maintained by OCSD ADA Compliance staff according to the department records retention schedule.

1606.4(b) California Department of Corrections and Rehabilitation ADA Grievance Notifications

a) Pursuant to Federal Court Order, under Armstrong v. Brown, CDCR Parole/Notice Agents are required to ask Armstrong class members to self-identify any disability needs related to assistive devices, housing and programming. They will provide class members with a Reasonable Modification or Accommodation Request CDCR form and a self-addressed, postage-paid envelope. CDCR Parole/Notice Agents inform Armstrong class members they can use the form to file a grievance if they believe they are not receiving assistive devices, housing or programming accommodations in the county jail.

b) Upon receipt of a CDCR Grievance from an Agent of CDCR, OCSD, and more specifically the ADA Compliance Team will follow the processing outlined in CCOM 1600.5.

A FAST search is the process of picking a random area (tank, series of cells, etc.) to search.

1. Each facility will be responsible for creating and maintaining a rotating search schedule that will be approved by the Division Commander to ensure all operational and housing areas are searched regularly.
2. The schedule will be posted in the Watch Commander's office. The Watch Commander will be responsible for making the proper notifications and adhering to the schedule.
3. The Watch Commander can deviate from the schedule based on the needs of the facility.
4. If a FAST search cannot be completed as scheduled or is deviated from, the Watch Commander shall document the reason in the Custody Operations Supervisor's Log.
5. A sergeant will be present during the entire FAST search.
6. At the conclusion of the FAST search, the sergeant will designate a staff member to document the FAST search on the 24 Hour Jail Operations Log and a Search Report.
7. The Deputy/CSA/SSO assigned to the housing area of where the search occurred will document the FAST search on the Guard Station Log.

1710.4 - Body Searches of Inmates

a) General
   1. Staff will maintain the health and safety of inmates and staff, and the security of our facilities by searching inmates to restrict the introduction, possession, and distribution of contraband substances and objects.
   2. Staff will conduct searches in a professional and dignified manner. Staff will not make degrading or insulting remarks.
   3. Staff will not use searches to punish, harass, or embarrass any inmate.

b) Gender Restrictions
   1. Refer to Section 2900.1 for definitions of the following: Gender, Gender Expression, Gender Identity, Gender Non-Conforming, Intersex and Transgender.
   2. Staff conducting a body search will be the same gender as the inmate being searched unless as noted in Section 1710.4(b)(5). "Body search" means a pat down/grasping hand search or an Extended Correctional Search. For strip/visual body cavity searches, see Section 1710.4(e). At no time will any search be conducted solely for the purpose of determining an inmate's genital status.
   3. All body searches of inmates shall be conducted in a manner that complies with current law.
      i.  California Penal Code Section 4021 states in part: "It shall be unlawful for any officer, station officer, jailer, or custodial personnel to search the person of any prisoner of the opposite sex, or to enter into the room or cell occupied by any prisoner of the opposite sex, except in the company of an employee of the same sex as the prisoner. Except as provided herein, the provisions of this subdivision shall not be applied to discriminate against any employee by prohibiting appointment or work assignment on the basis of the sex of the employee."
      ii. According to the Attorney General, "the word 'sex' is consistently defined throughout the codes to mean 'gender' and 'gender' is consistently defined to mean 'sex' and includes 'gender identity' and 'gender expression.'" (Cal. Attorney General Opinion, No. 17-302.)
   4. If there is prior knowledge that an inmate is gender non-conforming or has a gender identity which differs from their genital status, staff will do the following when determining the appropriate staff to conduct the body search:

          i.     Staff will take into account the gender identity offered by the inmate. If the inmate declines to state their gender identity, staff will take into account the gender expression of the inmate.

         ii.    Staff will ask the inmate their preference regarding the gender of staff who will conduct the search. This preference will be documented on the Search Preference Form.

         iii.   Staff will conduct body searches utilizing staff of the same gender as the inmate's gender identity or gender expression, while also considering the preference of the inmate indicated above.

         iv.   It is not a cross gender body search if an inmate is searched by staff who is of the same gender as the inmate's gender identity, even if the inmate's genital status differs from their gender identity.

    5.  Notwithstanding any of the above sections, cross-gender body searches may be conducted:

         i.     In exigent circumstances.

         ii.    At the direction of the watch commander.

    Staff conducting a cross gender body search must document the search in an information, jail incident, or crime report as appropriate. The report will include the circumstances which necessitated the cross gender body search and the name of the authorizing supervisor.

c) Pat Down/Grasping Hand Search

    1.  Definition

         i.     A pat down search is a search of an inmate's clothing and body. It generally does not require the inmate to remove clothing other than shoes and socks. Jackets, sweaters, sweatshirts, and other extra clothing may be removed as long as one layer of clothing remains covering the inmate's undergarments.

         ii.    The search is conducted using the "grasping hand" technique as taught in the OCSD Academy. The deputy conducts an initial pat/frisk to locate any sharp objects which may be a hazard. The deputy then uses his or her hand to grasp, pull, and twist the clothing, using the sense of touch to locate contraband concealed within or underneath the clothing.

    2.  Use and Restrictions of the Pat Down Search

         i.     The pat down search is the least intrusive search. It may be used to search any arrestee or inmate in our custody. Pat down searches may be conducted on a routine or random basis without a threshold level of suspicion.

         ii.    Staff conducting a pat down search will be the same gender as the inmate in accordance with 1710.4.b.

d) Extended Correctional Search

    1.  Definition

         i.     An Extended Correctional Search requires inmates to remove all garments except their undergarments. Undergarments are defined as boxer shorts for males and bra and panties for females.

         ii.    The Extended Correctional Search allows staff to more thoroughly examine the outer garments and to visually inspect the undergarments.

    2.  Use and Restrictions of the Extended Correctional Search

         i.     An Extended Correctional Search will not be conducted on any arrestee in the intake process, prior to housing. This includes, but is not limited to:

             A.  Off the street bookings.

        B.  Cite and release bookings.
        C.  Quick release bookings.
        D.  Arrestees being released on their own recognizance.
        E.  Arrestees who have not had a reasonable time (at least three hours) to post bail.

    ii.  An Extended Correctional Search may be used to search any inmate who is housed in our jail system. Staff may use an Extended Correctional Search to search multiple inmates of the same gender in a group. Extended Correctional Searches may be conducted on a routine or random basis without a threshold level of suspicion.

    iii.  Staff conducting an Extended Correctional Search shall be of the same gender as the inmates they are searching in accordance with 1710.4.b.

    iv.  Staff will not ask or require the inmate to expose any area covered by the undergarments.

e) Strip and Visual Body Cavity Searches

  1. Definition

    i.  A strip search requires an inmate to remove or arrange some or all of their clothing to permit a visual inspection of their breasts, buttocks, or genitalia.

    ii.  A visual body cavity search is the visual inspection of the rectal cavity or the vaginal cavity.

    iii.  A physical body cavity search means a physical intrusion into a body cavity for the purpose of discovering or retrieving any object concealed in the body cavity.

    iv.  The legal and procedural requirements for conducting either a strip search or a visual body cavity search are the same. For simplicity, the term "strip search" will be used to refer to both types of searches.

    v.  The strip search allows staff to locate contraband which is not readily discoverable through less intrusive searches.

    vi.  For purposes of this section, "housing" refers to all housing areas of the jails, as distinguished from temporary holding areas.

f) Use and Restrictions of Strip Searches

  1.  No strip search will be conducted on an inmate until at least six hours have elapsed from the time of booking, which is sufficient time for inmates to post bail or be released on their own recognizance. An exception is if there is reasonable suspicion to believe the inmate is concealing contraband. In those instances, deputies are to follow section "Strip Searches Requiring Reasonable Suspicion" (CCOM 1710.4(n)).

  2.  Inmates with "no bail" warrants or probation/parole holds may be strip searched without regard to the time elapsed from booking.

  3.  Strip searches will not be conducted on "Cite and Release" inmates unless there is reasonable suspicion to believe they are concealing contraband. In those instances, deputies are to follow section "Strip Searches Requiring Reasonable Suspicion" (CCOM 1710.4(n)).

  4.  Inmates may be strip searched under the following conditions:

  5.  All inmates going into housing upon completion of the booking process requirements noted above.

    i.  Inmates returning from court, out of facility work assignment, hospital appointment, contact visit, or any event that caused the inmate to be removed from the secure area of the facility should be strip searched.

       ii.    Inmate workers returning to their housing locations after performing their assigned duties.

6. In addition to those times when strip searches are authorized by this policy, an inmate may be strip searched before it is determined he or she will be placed in housing, or at any other time whenever there is reasonable suspicion to believe the inmate is concealing contraband or weapons. In those instances, deputies are to follow section "Strip Searches Requiring Reasonable Suspicion" (CCOM 1710.4(n)).

7. Strip searches will not be conducted for the purpose of determining an inmate's gender.

8. If a strip search is requested by an outside agency picking up and/or transporting an in-custody release:
    
    i.    The search may be authorized by the on-duty Watch Commander or their designee.
    
    ii.   The inmate will be released from the custody of the Sheriff's Department prior to the search.
    
    iii.  As a courtesy, a private area/room may be provided for use by the transporting agency.
    
    iv.  Deputies will not assist with the strip search.

g) Location for Strip Searches

1. Each facility will designate appropriate areas in which to conduct strip searches.

2. Individual privacy and sanitary conditions must be provided for each inmate during strip searches. Retractable stalls or curtains are suitable to create barriers between small/manageable groups of inmates.

3. The search area should be equipped with fixed video cameras that capture the movement of staff members, but do not show the inmates while the strip search is conducted.
    
    i.    If fixed cameras are not available or in use, a portable or hand held camera operated by a Deputy may be used to record the search.
    
        A.  The deputy operating the hand held camera will be the same gender as the inmate(s) being searched.
    
        B.  The camera operator will ensure the recording captures the movement of staff members, but does not show the inmates while the strip search is conducted.

h) Strip Search Procedure

1. Inmates may be searched individually or in reasonably sized groups, with partitions between the inmates and provided there is appropriate staffing and privacy for the inmates. No inmate shall be permitted to observe the strip search of another inmate. Staff not participating in the search will not be permitted to observe the search. Staff are considered to be participating in the search if their official duties require them to be present at the time the search is conducted.

2. When inmates are searched in groups, all inmates will be of the same gender.

3. Persons conducting or otherwise present or within sight of the inmate during a strip search must be sworn peace officers and the same gender as the inmate(s) being searched, except for physicians or licensed medical personnel. This shall not preclude deputies of the opposite gender from coming to the immediate aid of deputies conducting the search if the inmate becomes disruptive.
    
    i.    See section (CCOM 1710.4(m)). for Gender Non-Conforming Inmates

DEFTS. MSJ B 216
OC 0063

4. Persons conducting the strip search will not touch the breasts, buttocks, or genitalia of the inmate being searched.

5. If a supervisor is present, the supervisor should be the same gender as the inmate being searched. If the supervisor is the opposite gender of the inmate being searched, the supervisor will move to an area where they can hear the directives being given but are not in a position to see the inmate's breasts, buttocks or genitalia.

6. One deputy will give clear directives to the inmate being searched. Vulgar or inappropriate language will not be used during the search.

7. If contraband is discovered, the deputy will direct the inmate to remove the item. The deputy should try to secure the inmate's cooperation in the voluntary removal of the contraband. If contraband is discovered presents an immediate safety and security concern and is accessible without a physical body cavity search (such as a weapon between the buttocks), the deputy will take immediate action to handcuff the inmate and secure the contraband.

    i.   If the person is in the intake process, the deputy will give the contraband to the arresting/transporting officer or deputy.

    ii.  If the person is an inmate in OCSD's custody, the deputy will process the object as contraband or evidence as appropriate.

8. If the person refuses to remove the object, the requirements for a physical body cavity search or hospital monitoring will apply. The inmate will be handcuffed and removed from other inmates and monitored for his/her safety.

    i.   Arrestees prior to booking will be returned to the arresting/transporting officer.

    ii.  Inmates in our custody will be kept under continuous observation to prevent the destruction, use, or disposal of the contraband.

9. Contraband will not be removed from a body cavity without a search warrant unless exigent circumstances exist which require the immediate removal of the contraband. If exigent circumstances exist which require the immediate removal of the contraband, the removal will be done under sanitary conditions and only by a physician, nurse practitioner, registered nurse, licensed vocational nurse, or emergency medical technician Level II licensed to practice in this state. These circumstances must be documented in detail on an initial crime report or follow-up report.

i) Housing Transfers from Other Facilities
   1. All inmate transfers from other facilities will be subject to being strip searched prior to going into housing at the new facility.

j) Weekend Commitment Bookings
   1. All inmates reporting for weekend commitments will be strip searched each time they enter custody facilities for each commitment period.

k) Civil Detainees
   1. All Civil Detainees are subject to being strip searched when they return from court, hospital appointments, contact visits or any out of facility event.

l) Inmates Refusing Strip Searches
   1. Reasonable force may be used on inmates who meet the requirements for a strip search.
   2. Inmates known to be pregnant will not be forcibly strip searched.
   3. Prior to using force, the shift supervisor will advise the Watch Commander and both will respond to the search area.

DEFTS. MSJ B 217
OC 0064

4. The supervisor and Watch Commander should be the same gender as the inmate being searched. If they are not the same gender as the inmate, they will remain in the immediate area during the search, but not be in a position to see the inmate's breasts, buttocks or genitalia. This shall not preclude the supervisor and Watch Commander from coming to the immediate aid of deputies conducting the search if the person becomes combative.

5. The supervisor and/or Watch Commander should not assist in restraining /searching the inmate, other than noted in section 4 above.

6. The search will be recorded with a handheld video camera.

    i. While being video recorded, the supervisor will request the inmate to voluntarily comply with the strip search.

    ii. If the inmate refuses to cooperate, then the supervisor will explain force will be used to conduct the search.

7. Deputies will handcuff the inmate prior to the search.

8. Absent exigent circumstances, in order to minimize potential injuries a forced strip search should be conducted utilizing some type of padding on the floor. Each facility should designate an appropriate cell or area with sufficient padding (such as a safety cell), or utilize alternative padding material such as an inmate mattress.

9. Deputies will place the inmate on the floor and remove the inmate's clothing in order to visually inspect the inmate's body.

10. Once clothing has been removed, staff will not touch the breasts, buttocks, genitalia or body cavities of the person being searched.

11. The search will be documented as a directed use of force and all participants will write the appropriate reports for the incident with the same departmental report number.

12. Video from the incident will be retained per policy for review of the use of force incident.

m) Gender Non-Conforming Inmates

1. If there is prior knowledge an inmate is gender non-conforming or has a gender identity which differs from their genital status, deputies should take the following steps to determine the appropriate staff to conduct the strip search:

    i. Deputies will take into account the gender identity offered by the inmate. If the inmate declines to state their gender identity, deputies will take into account the gender expression of the inmate.

    ii. Deputies will ask the inmate their preference regarding the gender of deputies who will conduct the search. This preference will be documented on the Search Preference Form.

    iii. Deputies will conduct strip searches utilizing deputies of the same gender as the inmate gender identity or gender expression, while also considering the preference of the inmate indicated above.

    iv. Gender non-conforming inmates will only be searched individually and not in groups.

n) Strip Searches requiring Reasonable Suspicion

1. Under certain circumstances, strip searches may be authorized only when reasonable suspicion exists to conduct the search.

    i. In addition, an inmate may be strip searched before it is determined he or she will be placed in housing, or at any other time, when there is reasonable suspicion to believe the inmate is concealing contraband or weapons.

**DEFTS. MSJ B 218**

**OC 0065**

2. Reasonable Suspicion Strip Search Procedure

    i. Under this section, a deputy may conduct a strip search only if the deputy determines there is reasonable suspicion to believe the person is concealing contraband, based upon specific and articulable facts and circumstances, and a strip search will likely result in the discovery of the contraband.

    ii. The deputy seeking the strip search will document the facts and circumstances which establish reasonable suspicion on a "Custody Operations Strip Search Authorization" form and present the completed form to their Sergeant for review.

        A. Reasonable suspicion must be based on factors observed by staff and may not be based solely on the nature of the charges. These factors may include:

            1. Observation of unusual or suspicious appearance or behavior

            2. Evasive or inconsistent responses to questions

            3. Discovery of contraband during a less intrusive search

            4. Alert from an electronic scanning device

            5. The inmate's criminal history, particularly prior felony or misdemeanor convictions for crimes involving violence, weapons, or possession of controlled substances; and/or participation in criminal gangs

            6. The inmate's custodial history, particularly any record of acts of violence or possession of contraband

            7. Booking charges involving weapons, possession of controlled substances, or violence

            8. Information received from the arresting officer or credible source

    iii. The Sergeant will review the completed form. If the Sergeant determines reasonable suspicion exists to believe the person is concealing contraband and a strip search will likely result in the discovery of the contraband, the sergeant will sign the form and approve the strip search.

        A. The Sergeant will notify the Watch Commander

    iv. A strip search will be conducted in accordance with all applicable policies and procedures outline in (CCOM 1710.4(3)) Strip and Visual Body Cavity Search

    v. The deputy will document the search on a "Custody Operations Strip Search Report" and any applicable crime report, jail incident or other report.

    vi. The Custody Operations Strip Search Authorization and Custody Operations Strip Search Report will be retained together in accordance with the Department's records retention policies. Copies will be placed in the inmate's records jacket.

        A. Copies will be made available, upon request, to the person searched or their authorized representative

        B. A statement of the search results including a list of any items recovered

    vii. The authorization/report will be retained together in accordance with the Department's records retention policies. Copies will be placed in the inmate's records jacket

    viii. A copy of the authorization/report will be made available, upon request, to the person searched or their authorized representative.

o) Physical Body Cavity Search

  1. Definition

**DEFTS. MSJ B 219**

**OC 0066**

      i.    A physical body cavity search involves the physical intrusion into a body cavity for the purpose of discovering any object concealed in a body cavity. A valid search warrant is required to conduct a physical body cavity search.

2.  Use and Restrictions of the Physical Body Cavity Search

      i.    When an inmate is suspected of swallowing, or secreting contraband or weapons, the deputy shall notify a sergeant. The sergeant will inform the watch commander. The watch commander will decide if the situation requires a search warrant for a physical body cavity search or x-ray. In all cases, medical staff shall be notified so that appropriate medical precautions will be implemented.

     ii.    No person shall be subjected to a physical body cavity search except under the authority of a search warrant issued by a magistrate specifically authorizing the physical body cavity search.

   iii.    A physical body cavity search shall be conducted under sanitary conditions, and only by a physician, nurse practitioner, registered nurse, licensed vocational nurse, or emergency medical technician level II licensed to practice in California.

   iv.    All provisions of privacy outlined in the strip search section shall also apply to physical body cavity searches. All persons present during a physical body cavity search shall be of the same gender as the person being searched, except for physicians or licensed medical personnel who may be of either gender.

    v.    The deputy will document the search in a report. The report must contain the following information:

        A.   The date, time, and location of the search

        B.   The name, identification number, and gender of all personnel present for the search

        C.   The name, gender, and booking number (if applicable) of the person searched

        D.   The name of the supervisor who authorized the search

        E.   A statement of the search results including a list of any items recovered

   vi.    A copy of the search warrant and the report will be placed in the inmate's records file. A copy of the warrant and the report will be made available, upon request, to the person searched or their authorized representative.

p)  Hospital Monitoring

   1.  Definition

      i.    Monitoring at the hospital of an inmate who is suspected of ingesting or concealing contraband in a body cavity is used when other methods are determined to be inappropriate or are likely to be ineffective.

   2.  Use and Restrictions of Hospital Monitoring

      i.    The watch commander will determine whether hospital monitoring is appropriate. If the watch commander approves monitoring, a deputy will escort the inmate to the hospital.

     ii.    The deputy will advise the appropriate medical staff at the hospital what substance(s) the inmate is suspected of ingesting or concealing.

   iii.    A deputy will remain with the inmate at all times.

   iv.    The inmate will not have access to regular toilet facilities. The inmate will urinate and defecate into a bedpan or other appropriate receptacle. The deputy shall inspect the receptacle and any stool for contraband.

    v.    The deputy will report the status of the inmate to the Operations Sergeant at least once per shift, or as soon as practical if contraband is discovered.

vi.    The Operations Sergeant will notify the watch commander, who will determine if subsequent stool inspections are necessary.

## 1710.5 - Search of Inmate Property

a)  Deputies will search each inmate's property/commissary.

b)  Inmates may only possess items that have been issued by jail staff, purchased through Commissary, permitted at the time of booking, permitted to be received through the mail, or by court order.

    1. All other items shall be considered contraband and will result in the item being discarded.

    2. Disciplinary action may also be taken.

    3. When conducting a search of an inmate's property/commissary, the limitations on the items that inmates may possess are set forth in policies 1202.5 and 1600.2(m), except as otherwise set forth herein.

## 1710.6 - Documentation and Disposition

a)  Post Search Reports

    1.  A verbal report detailing the search activities will be made to the watch commander by the supervising sergeant.

    2.  The sergeant will sign and approve any Incident or Search Reports that were prepared.

    3.  Search results will be noted in the 24 Hour Jail Operations Log and if necessary noted in the Custody Operations Supervisor's log.

b)  Evidence of a crime will be brought to the sergeant's attention at its point of discovery.

    1.  Deputies are to inspect the condition of item(s) found to determine if they were used to aid in an escape, produce contraband or any other non-authorized use.

    2.  Deputies are to inspect the area where contraband was found to confirm if the item(s) was used to alter or damage the facility or any other county property.

    3.  The discovering deputy shall retain control of the collected item until it is booked into the Sheriff's Property/Evidence locker.

    4.  All evidence should be booked into the Sheriff's Property/Evidence locker by the end of shift.

    5.  The Sergeant may require photographs.

    6.  The item(s) will be placed into the Sheriff's Property/Evidence Room using the procedures described in the Field Operations Manual, Section 19/Evidence and Section 44/Tagging and Booking Property

    7.  If the item is suspected to have been used in an escape or attempted escape refer to CCOM Policy Section 2610/Escape

## 1712 - Maintenance and Tool Control

For the safety of staff and inmates, maintenance personnel will maintain constant control and accountability of all tools and equipment used in jail facilities.

## 1712.1 - Tool Storage and Control

a)  Only workers assigned to the Orange County Sheriff-Coroner/Facility Operations (OCSC/FO) will store tools and equipment in the Maintenance Shop or warehouse.

b)  Toolboxes, cabinets and drawers will be closed and locked when not in use.

c)  The Maintenance Shop door(s) will be closed and locked when the shop is unoccupied.

d)  At the end of each workday, all tools and equipment will be returned to the shop. To ensure all tools are accounted for, maintenance personnel will complete a daily inventory of their tools. Tools or equipment will never be stored in housing areas or areas accessible to inmates.

e)  Inmates will be removed from areas where contractors or maintenance personnel are assigned to work. Only in emergency situations, will work be performed with inmates nearby and only while being supervised by deputies. This will only be allowed when there is no other practical solution.

**DEFTS. MSJ B 221**

**OC 0068**

can be made based upon inmate behavior or by a request to the Classification Sergeant. Any inmate may appeal his/her classification assignment at any time, but no more frequently than thirty (30) days from the last review. Inmates requesting a review must submit an Inmate Message Slip to the Classification Sergeant. All inmates will be provided with a written response to their respective request(s).

k) Meal Service
  1. Each inmate will be offered three meals each day.
  2. Meal times are at approximately 5:00 a.m. (breakfast), 11:00 a.m. (lunch) and 4:00 p.m. (dinner). Inmates in the booking or transfer process on the first floor will be offered a sandwich sack lunch. The jail menu and food items comply with all California state standards.

l) Medical/Dental/Psychiatric Care
  1. Prior to being booked into the Intake/Release Center each person will be screened by a member of the Correctional Health Services staff. If after booking an inmate wishes to request routine, non-emergency, medical attention they must submit an Inmate Medical Message slip to the medical staff. Slips are available from the medical staff or a deputy. Completed forms are to be deposited in the designated collection box in each module.
  2. Sick call will be conducted on a daily basis by medical/mental or dental health care professionals, depending upon the nature of the inmate's complaint. Inmates found to be hoarding medications or possessing another inmate's medication will be subject to disciplinary action.
  3. If at any time an inmate expresses the need for immediate medical attention or if the deputy determines that an inmate requires immediate medical attention the medical/ mental health staff will be informed immediately.
  4. AIDS testing is available through Correctional Health Services. Inmates may contact the nursing staff on an Inmate Medical Message Slip for testing.

m) Recreation Programs
  1. Tabletop games, books and newspapers are provided to inmates in their dayrooms. Each inmate will also be offered an opportunity to have a minimum of three (3) hours of outdoor recreation each week. Volleyball, handball and basketball are sports available in the outdoor recreation yards. Outdoor recreation availability is dependent upon weather conditions, court appearance schedules, etc.
  2. Televisions are provided in housing dayrooms. Program selections are made by the Recreation Director.

n) Jail Clothing and Hygiene
  1. Undergarments and socks shall be exchanged two times each week. Outer garments (except shoes), sheets and towels shall be exchanged at least once each week (title 15: 1262/1271). Inmates are required to shower regularly to prevent an offensive and unhealthful state of body hygiene. Personal grooming items are provided to inmates who do not have money.

o) Commissary
  1. Inmates may purchase commissary items three times each week. Order forms are distributed three times a week.
  2. Inmates without sufficient funds can order a Welfare Pack (per Title 15) of hygiene and stationary items once per week.

p) Inmate Work Assignments

DEFTS. MSJ B 222
OC 0069

1600.3 - Orange County Jail Rules-continued

a) Visiting and Communications

1. It is a misdemeanor violation of California Penal Code Section 4570 for any unauthorized person to bring into or take from any jail any letter to or from any inmate.

2. Visitors who have been released from jail or prison within the preceding sixty (60) days are ineligible to visit; however, visits between blood relatives (i.e., mother, father, sister, or brother, or a spouse) may be permitted.

    i. Penal Code Section 4571 prohibits persons convicted of a felony, and who have served time in any California State Prison, from entering upon the jail premises without permission of the Watch Commander.

3. Visitors must be at least eighteen (18) years of age or accompanied by an approved adult visitor such as a parent, legal guardian, or have written, notarized permission to visit from the child's parent or legal guardian. Visitors will be required to produce satisfactory identification.

4. The following will be the only acceptable forms of identification for visiting purposes:

    i. Valid U.S. Government issue picture ID card (including Driver's license and Identification cards)

    ii. Passport

    iii. Military Identification

    iv. US Issued Naturalized Citizen Card

    v. Matricula Consular Card issued after April 22, 2002

5. Upon prior request and approval of the Watch Commander, unaccompanied minor children may visit any relative in custody.

6. Visits will be a minimum of one-half hour. A minimum of two visits totaling at least one hour per inmate per week should be made available. Specific visiting times are posted at each facility.

    i. Official visits are permitted any time of the day, without time restriction.

    ii. Weekenders do not receive public visits.

    iii. Inmates are permitted only one public visit per day.

7. Inmates are not permitted to take property of any kind with them to a visiting session without prior approval from jail staff.

8. If contact visits are permitted, they will comply with the facility policy.

b) Mail

1. There is no limit on the amount of mail an inmate may send or receive. There is a maximum of 10 items of correspondence allowed per envelope. Only mail written on postcards or white paper (plain or lined, not cardstock) is permitted. All outgoing mail must be delivered unsealed to a Deputy or mail drop box.

2. Legal Mail - There is no limit on the amount of legal mail an inmate may send or receive. Inmates may correspond confidentially with state and federal courts, any member of the State Bar or holder of public office, the State Board of Corrections, or the Division Commander. Legal mail may be sealed by the inmate in the presence of a Deputy and after the mail has been inspected for contraband. The Deputy will initial the letter across the seal and include his/her badge number.

3. Incoming confidential/legal mail may be checked for contraband, checks, or money orders, provided the mail is opened in the presence of the inmate.

**DEFTS. MSJ B 223**
**OC 0070**

4. Outgoing mail must have the inmate's name and address in the upper left corner on the front side of the envelope. Mailing addresses are as follows:
   i. Intake and Release Center (IRC), Central Men's Jail (CMJ) or Central Women's Jail (CWJ)
      A. INMATE'S NAME and Booking Number
         550 N. Flower Street
         Santa Ana, CA 92702
   ii. For inmates at Theo Lacy Facility (TLF)
      A. INMATE'S NAME and Booking Number
         501 City Drive South
         Orange, CA 92868-3390
5. No writing or marks other than the inmate's name and address and the name and address of the person to whom the letter is being sent, or proper directions to the post office, will be permitted on the envelope.
6. All letters must contain the correct amount of postage and a valid return address.
   i. POSTAGE MUST BE PLACED IN THE UPPER RIGHT CORNER OF THE FRONT SIDE OF THE ENVELOPE.
7. Incoming mail may not exceed 9x12 inches (legal documents and material are exempted).
8. Inmates will be permitted to receive through the mail any newspaper, magazine or paperback book. All books must be new and ordered though an online bookstore (e.g.: Amazon.com, BarnesandNoble.com, etc.) and shipped directly to the jail facility.
9. Books may not be purchased at a store and shipped to the jail facility.
   i. The package must be accompanied by an invoice listing the purchaser, recipient, contents, and the name of the online store.
   ii. Exceptions to this policy must be made by the Division Commander.
10. Inmates may correspond with other inmates in any Orange County Jail facility only via the U.S. Postal Service.
11. Packages will not be accepted and will be returned to the sender, unless previously approved by the Watch Commander.
c) Phone Calls
1. Telephone Calls at Time of Booking
   i. The law requires that arrested persons must be provided the opportunity to make three (3) completed telephone calls within three (3) hours after arrest (CPC 851.5), or supplemental booking.
      A. During the normal booking process, additional non-collect phone calls are available in a number of holding cells.
      B. If a custodial parent, two (2) additional phone calls may be made to arrange for child care. It is the responsibility of the arresting or booking officer to ask whether an arrestee is a parent and if so, inform them of their right to make two (2) additional phone calls to arrange for the care of their children (AB 2015). These rights shall be posted in English and Spanish near areas designated for phone call use by arrestees.
2. Telephone Calls After Booking

    i.   Phone calls after the time of booking will be permitted by use of housing phones. Phones are available in housing areas, tanks and roof recreation areas. All calls after booking will be made COLLECT to the receiving party. If good cause exists, an inmate may make a non-collect phone call, if approved by the Housing Sergeant. The inmate stating the necessity for the call must submit an Inmate Message Slip.

        A.   Telephone availability is also afforded to inmates classified as administrative housing. Limited telephone availability is afforded to inmates housed in disciplinary housing for disciplinary reasons.

        B.   Hours and phone availability will be determined by the Facility Commander.

        C.   Inmates may not receive telephone calls at any Orange County Jail facility.

    ii.   A notice that all collect housing phones are monitored and recorded will be prominently posted in the area next to all inmate telephones. These notices will read as follows:

        A.   "Notice! Telephone calls may be recorded and monitored."

d) Jail Message Forms

    1.   Inmate Message Slips will be used by inmates when they desire to communicate in writing with the staff of the Orange County Sheriff's Department, or with persons at other county agencies within the Civic Center Complex. Forms are available from the jail staff. Other written inmate communications will be via United States Postal Service.

    2.   Inmates desiring to be placed on sick call, or desiring to talk with a member of the medical, dental or mental health staff will complete the pink Inmate Medical Message form and place it in the locked box located in the designated areas throughout each facility. Inmates may request a "confidential contact" by stating so on the message form without describing the nature of the medical need.

    3.   Requests for legal books will be submitted by the inmate to the deputy on an Inmate Message Slip.

    4.   Appeals of punishment may be submitted on an Inmate Message Slip.

e) Personal Street Clothing Exchange

    1.   One exchange of, or addition to personal street clothing, will be permitted during an inmate's incarceration, provided existing clothing is insufficient, improper, or not suitable for court.

f) Prescription Eyeglasses and Contact Lenses

    1.   Inmates will be allowed to possess one pair of prescription eyeglasses and one pair of eyeglasses that are necessary for reading that are non-prescription. Eyeglasses containing a metal frame or metal temple (arm), decorative eyeglasses or glasses with tinted lenses will not be allowed for security reasons. Decorative eyeglasses are those with frames or lenses which are adorned with colorful stones or other design elements such as flowers, butterflies, name brand insignias, or any other material whose purpose and design is to provide a fashionable appearance. Plastic eyeglasses with metal reinforcement in the plastic temple (arm) or plastic glasses containing a metal hinge will be allowed. However, plastic eyeglasses that have a metal reinforcement with a pointed tip or any eyeglasses that pose a security risk as determined by the Watch Commander or his/her designee shall not be allowed inside any jail facility.

        i.   Reading glasses (non-prescription) and prescription eyeglasses provided to the inmate from outside the jail must be delivered to CJX inmates at the Central Men's

Jail Attorney Bonds Guard Station or to the Theo Lacy facility inmates at their respective public visiting guard station. Glasses provided from outside the jail will be screened by security staff and if found to be in compliance with the requirements listed in this section will be delivered to the inmate.

    ii.    Reading glasses (non-prescription), obtained through commissary are compliant with this policy.

  2.  Inmates may have new contact lenses mailed to them or dropped off to be put on their property, and they may have up to 12 sets of lenses in their possession at a time. Contact lenses received through the mail shall be forwarded and placed on the inmate's property. Contact lens solution and contact lens cases may only be obtained by requesting these items on an Inmate Health Message Slip sent to the medical staff. Decorative or colored contacts will not be allowed for security reasons. Decorative or colored contacts are those that change the look of your eye such as with designs to provide a fashionable appearance or change of eye color.

    i.    Inmates may fill out a Property Release Form and send it to Property requesting the contact lenses be delivered to their housing location.

    ii.    The contacts will be taken out of the inmate's property. One copy of the property release form will be placed around the item for delivery to the inmate's housing location. One copy will be filed in the inmate's property and one copy will be placed in the inmate's jacket.

    iii.    Contact lenses will be screened by a CST and/or Deputy prior to being delivered to the inmate's housing location.

g)  Inmate Cash Account

  1.  Inmates may have money (cash); city, county, state or United States Government checks; and money orders deposited to their account at the Cashier's Office. Money orders shall be made out to the Orange County Sheriff's Department and the inmates name and booking number must be annotated in the reference line of the money order. These will be credited to the inmate's account, not to exceed $500.00.

  2.  Money orders may also be sent by mail to an inmate for deposit to their account

  3.  Funds may not be transferred from the account of one inmate to the account of another inmate without the permission of the Watch Commander.

h)  Emergencies

  1.  During any emergency, all inmates shall await instruction from jail staff.

  2.  In the event of an ill or injured inmate, all other inmates will return to their assigned bunk until jail staff has removed the ill or injured inmate.

  3.  Falsely reporting an emergency condition is not permitted and will result in disciplinary action.

i)  Inmate Voting Procedure

  1.  Inmates who would like to participate in local, state and Federal elections should contact the Registrar of Voters for information and materials. Registrar of Voters PO Box 15467 Santa Ana CA 92735-9910.

j)  Classification of Inmates

  1.  After booking, each inmate will be interviewed by a Classification Deputy to determine the inmate's housing assignment. Background information is reviewed so that inmates of similar charges and personal dispositions are housed in the same or similar housing units. Changes



# Title 15 Minimum Standards
# For Local Detention Facilities
### Title 15-Crime Prevention and Corrections
### Division I, Chapter 1, Subchapter 4

## *Effective April 1, 2017*

DEFTS. MSJ B 227

*Adult Title 15 Minimum Standards*

**This page intentionally left blank.**

DEFTS. MSJ B 228

# Minimum Standards for Adult Facilities
## Title 15. Crime Prevention and Corrections
## Division 1, Chapter 1, Subchapter 4

*Effective April 1, 2017*

## Table of Contents

ARTICLE 1. GENERAL INSTRUCTIONS .................................................................8
§ 1004. Severability. ...........................................................................8
§ 1005. Other Standards and Requirements. ..................................................8
§ 1006. Definitions. .............................................................................8
§ 1007. Pilot Projects. .........................................................................14
§ 1008. Alternate Means of Compliance. ....................................................16

ARTICLE 2. INSPECTION AND APPLICATION OF STANDARDS ................................17
§ 1010. Applicability of Standards. ...........................................................17
§ 1012. Emergency Suspensions of Standards or Requirements. .........................20
§ 1013. Criminal History Information. .........................................................20
§ 1016. Contracts for Local Detention Facilities. ...........................................20
§ 1018. Appeal. .................................................................................21

ARTICLE 3. TRAINING, PERSONNEL AND MANAGEMENT ....................................23
§ 1020. Corrections Officer Core Course. ....................................................23
§ 1021. Jail Supervisory Training. .............................................................23
§ 1023. Jail Management Training. ............................................................23
§ 1024. Court Holding and Temporary Holding Facility Training. ........................23
§ 1025. Continuing Professional Training. ...................................................24
§ 1027. Number of Personnel. .................................................................24
§ 1027.5 Safety Checks. ......................................................................25
§ 1028. Fire and Life Safety Staff. ...........................................................25
§ 1029. Policy and Procedures Manual. ......................................................25
§ 1030. Suicide Prevention Program. .........................................................26
§ 1032. Fire Suppression Preplanning. .......................................................27

ARTICLE 4. RECORDS AND PUBLIC INFORMATION .........................................27
§ 1040. Population Accounting. ................................................................27

**DEFTS. MSJ B 229**

§ 1041. Inmate Records. ............................................................................ 27

§ 1044. Incident Reports. ........................................................................... 27

§ 1045. Public Information Plan. .................................................................. 28

§ 1046. Death in Custody. .......................................................................... 28

§ 1047. Serious Illness or Injury of a Minor in an Adult Detention Facility. ..................... 29

ARTICLE 5. CLASSIFICATION AND SEGREGATION ............................................ 29

§ 1050. Classification Plan. ........................................................................ 29

§ 1051. Communicable Diseases. ................................................................ 30

§ 1052. Mentally Disordered Inmates. ........................................................... 30

§ 1053. Administrative Segregation. ............................................................. 30

§ 1054. Administrative Removal-Type IV Facility. ............................................. 31

§ 1055. Use of Safety Cell. ......................................................................... 31

§ 1056. Use of Sobering Cell. ...................................................................... 32

§ 1057. Developmentally Disabled Inmates. ................................................... 32

§ 1058. Use of Restraint Devices. ................................................................ 32

§ 1058.5. Restraints and Pregnant Inmates. .................................................. 33

§ 1059. DNA Collection, Use of Force .......................................................... 34

ARTICLE 6. INMATE PROGRAMS AND SERVICES ............................................ 34

§ 1061. Inmate Education Plan. ................................................................... 34

§ 1062. Visiting. ....................................................................................... 35

§ 1063. Correspondence. ........................................................................... 35

§ 1064. Library Service. ............................................................................. 36

§ 1065. Exercise and Recreation. ................................................................ 36

§ 1066. Books, Newspapers, Periodicals, and Writings. ................................... 36

§ 1067. Access to Telephone. ..................................................................... 37

§ 1068. Access to the Courts and Counsel. ................................................... 37

§ 1069. Inmate Orientation. ........................................................................ 37

§ 1070. Individual/Family Service Programs. .................................................. 38

§ 1071. Voting. ......................................................................................... 38

§ 1072. Religious Observances. .................................................................. 38

§ 1073. Inmate Grievance Procedure ........................................................... 39

ARTICLE 7. DISCIPLINE ............................................................................. 39

§ 1080. Rules and Disciplinary Penalties. ...................................................... 39

**DEFTS. MSJ B 230**

§ 1081. Plan for Inmate Discipline....................................................................... 39

§ 1082. Forms of Discipline.................................................................................. 41

§ 1083. Limitations on Disciplinary Actions. ....................................................... 41

§ 1084. Disciplinary Records................................................................................ 42

ARTICLE 8. MINORS IN JAILS............................................................................... 42

§ 1100. Purpose.................................................................................................... 42

§ 1101. Restrictions on Contact with Adult Prisoners......................................... 43

§ 1102. Classification. .......................................................................................... 43

§ 1103. Release Procedures. ............................................................................... 43

§ 1104. Supervision of Minors. ............................................................................ 44

§ 1105. Recreation Programs. ............................................................................. 44

§ 1106. Disciplinary Procedures. ......................................................................... 44

§ 1120. Education Program for Minors in Jails.................................................... 45

§ 1121. Health Education for Minors in Jails. ...................................................... 45

§ 1122. Reproductive Information and Services for Minors in Jails.................... 45

§ 1122.5. Pregnant Minors .................................................................................. 45

§ 1123. Health Appraisals/Medical Examinations for Minors in Jails................. 46

§ 1124. Prostheses and Orthopedic Devices for Minors in Jails. ....................... 46

§ 1125. Psychotropic Medications for Minors in Jail........................................... 46

ARTICLE 9. MINORS IN TEMPORARY CUSTODY IN A LAW ENFORCEMENT FACILITY ................... 47

§ 1140. Purpose.................................................................................................... 47

§ 1141. Minors Arrested for Law Violations. ....................................................... 48

§ 1142. Written Policies and Procedures. ........................................................... 48

§ 1143. Care of Minors in Temporary Custody.................................................... 48

§ 1144. Contact Between Minors and Adult Prisoners. ...................................... 48

§ 1145. Decision on Secure Custody. ................................................................. 49

§ 1146.  Conditions of Secure Custody. .............................................................. 49

§ 1147. Supervision of Minors in Secure Custody Inside a Locked Enclosure............. 49

§ 1148. Supervision of Minors in Secure Custody Outside of a Locked Enclosure. ...... 50

§ 1149. Criteria for Non-Secure Custody. ........................................................... 50

§ 1150. Supervision of Minors in Non-Secure Custody. ..................................... 50

§ 1151. Minors Under the Influence of Any Intoxicating Substance in Secure or Non-Secure Custody.................................................................................................... 51

**DEFTS. MSJ B 231**

ARTICLE 10. MINORS IN COURT HOLDING FACILITIES ................................................. 51
§ 1160. Purpose. ................................................................................................ 51
§ 1161. Conditions of Detention. ....................................................................... 51
§ 1162. Supervision of Minors. .......................................................................... 52
§ 1163. Classification. ........................................................................................ 52

ARTICLE 11. MEDICAL/MENTAL HEALTH SERVICES .................................................. 52
§ 1200. Responsibility for Health Care Services. ............................................... 52
§ 1202. Health Service Audits. ........................................................................... 53
§ 1203. Health Care Staff Qualifications. ........................................................... 53
§ 1204. Health Care Staff Procedure. ................................................................ 53
§ 1205. Health Care Records. ............................................................................ 53
§ 1206. Health Care Procedures Manual. ........................................................... 54
§ 1206.5. Management of Communicable Diseases in a Custody Setting. ........ 55
§ 1207. Medical Receiving Screening. ............................................................... 56
§ 1207.5. Special Mental Disorder Assessment. ............................................... 56
§ 1208. Access to Treatment. ............................................................................ 56
§ 1208.5. Health Care Maintenance ................................................................... 57
§ 1209. Mental Health Services and Transfer to Treatment Facility. ................. 57
§ 1210. Individualized Treatment Plans. ............................................................ 58
§ 1211. Sick Call. ............................................................................................... 58
§ 1212. Vermin Control. ..................................................................................... 58
§ 1213. Detoxification Treatment. ...................................................................... 59
§ 1214. Informed Consent. ................................................................................. 59
§ 1215. Dental Care. .......................................................................................... 59
§ 1216. Pharmaceutical Management. ............................................................... 59
§ 1217. Psychotropic Medications. .................................................................... 61
§ 1220. First Aid Kit(s). ....................................................................................... 62
§ 1230. Food Handlers. ...................................................................................... 62

ARTICLE 12. FOOD ................................................................................................... 62
§ 1240. Frequency of Serving. ........................................................................... 62
§ 1241. Minimum Diet. ........................................................................................ 63
§ 1242. Menus. ................................................................................................... 64
§ 1243. Food Service Plan. ................................................................................ 64

**DEFTS. MSJ B 232**

*Adult Title 15 Minimum Standards*

§ 1245. Kitchen Facilities, Sanitation, and Food Storage. ................................................ 65

§ 1246. Food Serving and Supervision. ....................................................................... 65

§ 1247. Disciplinary  Separation Diet. ......................................................................... 65

§ 1248. Medical Diets. ................................................................................................ 66

ARTICLE 13. INMATE CLOTHING AND PERSONAL HYGIENE ............................................ 67

§ 1260. Standard Institutional Clothing. ..................................................................... 67

§ 1261. Special Clothing. ........................................................................................... 67

§ 1262. Clothing Exchange. ....................................................................................... 67

§ 1263. Clothing Supply. ........................................................................................... 67

§ 1264. Control of Vermin in Inmates' Personal Clothing. ........................................... 68

§ 1265. Issue of Personal Care Items. ....................................................................... 68

§ 1266. Showering. ................................................................................................... 68

§ 1267. Hair Care Services. ....................................................................................... 69

ARTICLE 14. BEDDING AND LINEN .............................................................................. 69

§ 1270. Standard Bedding and Linen Issue. ............................................................... 69

§ 1271. Bedding and Linen Exchange ........................................................................ 69

§ 1272. Mattresses. .................................................................................................. 70

ARTICLE 15. FACILITY SAFETY AND SECURITY ............................................................ 70

§ 1280. Facility Sanitation, Safety, and Maintenance. ................................................ 70

**DEFTS. MSJ B 233**

*Adult Title 15 Minimum Standards*

**ARTICLE 13. INMATE CLOTHING AND PERSONAL HYGIENE**

**§ 1260. Standard Institutional Clothing.**

The standard issue of climatically suitable clothing to inmates held after arraignment in all but Court Holding, Temporary Holding and Type IV facilities shall include, but not be limited to:

> (a) clean socks and footwear;
> (b) clean outergarments; and,
> (c) clean undergarments;
> > (1) for males - shorts and undershirt, and
> > (2) for females - bra and two pairs of panties.

The inmates' personal undergarments and footwear may be substituted for the institutional undergarments and footwear specified in this regulation. This option notwithstanding, the facility has the primary responsibility to provide the personal undergarments and footwear.

Clothing shall be reasonably fitted, durable, easily laundered and repaired.

Note: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

**§ 1261. Special Clothing.**

Provision shall be made to issue suitable additional clothing, essential for inmates to perform such special work assignments as food service, medical, farm, sanitation, mechanical, and other specified work.

Note: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

**§ 1262. Clothing Exchange.**

There shall be written policies and procedures developed by the facility administrator for the scheduled exchange of clothing. Unless work, climatic conditions, illness, or California Retail Food Code necessitates more frequent exchange, outergarments, except footwear, shall be exchanged at least once each week. Undergarments and socks shall be exchanged twice each week.

Note: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

**§ 1263. Clothing Supply.**

There shall be a quantity of clothing, bedding, and linen available for actual and replacement needs of the inmate population.

DEFTS. MSJ B 234

*Adult Title 15 Minimum Standards*

Written policy and procedures shall specify handling of laundry that is known or suspected to be contaminated with infectious material.

Note: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

### § 1264. Control of Vermin in Inmates' Personal Clothing.

There shall be written policies and procedures developed by the facility administrator to control the contamination and/or spread of vermin in all inmates' personal clothing. Infested clothing shall be cleaned, disinfected, or stored in a closed container so as to eradicate or stop the spread of the vermin.

Note: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

### § 1265. Issue of Personal Care Items.

There shall be written policies and procedures developed by the facility administrator for the issue of personal hygiene items. Each female inmate shall be issued sanitary napkins and/or tampons as needed. Each inmate to be held over 24 hours who is unable to supply himself/herself with the following personal care items, because of either indigency or the absence of an inmate canteen, shall be issued:

>    (a) toothbrush,
>    (b) dentifrice,
>    (c) soap,
>    (d) comb, and
>    (e) shaving implements.

Inmates shall not be required to share any personal care items listed in items "a" through "d."

Inmates will not share disposable razors. Double edged safety razors, electric razors, and other shaving instruments capable of breaking the skin, when shared among inmates, must be disinfected between individual uses by the method prescribed by the State Board of Barbering and Cosmetology in Sections 979 and 980, Division 9, Title 16, California Code of Regulations.

Note: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

### § 1266. Showering.

There shall be written policies and procedures developed by the facility administrator for inmate showering/bathing. Inmates shall be permitted to shower/bathe upon assignment to a housing unit and at least every other day or more often if possible.

Note: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

DEFTS. MSJ B 235

*Adult Title 15 Minimum Standards*

## § 1267. Hair Care Services.

(a) Hair care services shall be available.

(b) Inmates, except those who may not shave for reasons of identification in court, shall be allowed to shave daily and receive hair care services at least once a month. The facility administrator may suspend this requirement in relation to inmates who are considered to be a danger to themselves or others.

(c) Equipment shall be disinfected, after each use, by a method approved by the State Board of Barbering and Cosmetology to meet the requirements of Title 16, Division 9, Sections 979 and 980, California Code of Regulations.

Note: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

## ARTICLE 14. BEDDING AND LINEN

## § 1270. Standard Bedding and Linen Issue.

The standard issue of clean suitable bedding and linens, for each inmate entering a living area who is expected to remain overnight, shall include, but not be limited to:
(a) one serviceable mattress which meets the requirements of Section 1272 of these regulations;
(b) one mattress cover or one sheet;
(c) one towel; and,
(d) one blanket or more depending upon climatic conditions.

Two blankets or sleep bag may be issued in place of one mattress cover or one sheet.

Temporary Holding facilities which hold persons longer than 12 hours shall meet the requirements of (a), (b) and (d) above.

Note: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

## § 1271. Bedding and Linen Exchange.

There shall be written policies and procedures developed by the facility administrator for the scheduled exchange of laundered and/or sanitized bedding and linen issued to each inmate housed. Washable items such as sheets, mattress covers, and towels shall be exchanged for clean replacement at least once each week. If a top sheet is not issued, blankets or sleep bags shall be laundered or dry cleaned at least once a month or more often if necessary. If a top sheet is issued, blankets shall be laundered or dry cleaned at least every three months.

Note: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

DEFTS. MSJ B 236

*Adult Title 15 Minimum Standards*

## § 1272. Mattresses.

Any mattress issued to an inmate in any facility shall be enclosed in an easily cleaned, non-absorbent ticking, and conform to the size of the bunk as referenced in Title 24, Part 2, Section 1231.3.5, Beds. Any mattress purchased for issue to an inmate in a facility which is locked to prevent unimpeded access to the outdoors shall be certified by the manufacturer as meeting all requirements of the State Fire Marshal and the Bureau of Home Furnishings' test standard for penal mattresses at the time of purchase.

Note: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

## ARTICLE 15. FACILITY SAFETY AND SECURITY

## § 1280. Facility Sanitation, Safety, and Maintenance.

The facility administrator shall develop written policies and procedures for the maintenance of an acceptable level of cleanliness, repair and safety throughout the facility. Such a plan shall provide for a regular schedule of housekeeping tasks and inspections to identify and correct unsanitary or unsafe conditions or work practices which may be found.

Medical care housing as described in Title 24, Part 2, Section 1231.2.14, shall be cleaned and sanitized according to policies and procedures established by the health authority.

Note: Authority cited: Section 6030, Penal Code. Reference: Section 6030, Penal Code.

DEFTS. MSJ B 237

# TITLE 24
## MINIMUM STANDARDS FOR
## LOCAL DETENTION FACILITIES

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

**PART ONE, ADMINISTRATIVE REGULATIONS FOR THE BOARD OF STATE AND COMMUNITY CORRECTIONS CHAPTER 13, ARTICLE 1, SECTION 13-102**
**AND**
**PART TWO, SECTION 1231, MINIMUM STANDARDS FOR ADULT DETENTION FACILITIES**



**BOARD OF STATE AND COMMUNITY CORRECTIONS**

600 Bercut Drive, Sacramento, CA 95811
916.445.5073 PHONE
916.327.3317 FAX
bscc.ca.gov

Leadership  Excellence  Support

DEFTS. MSJ B 238

**TITLE 24, Minimum Standards for the Design and Construction of Local Detention Facilities**
**PART 1, SECTION 13-102**
**AND PART 2, SECTION 1231**
*(2013 California Building Code)*

PART 1, SECTION 13-102 ............................................................................................ 1

13-102 (A) DEFINITIONS ........................................................................................ 1

13-102 (B) EXCLUSIONS. ........................................................................................ 6

13-102 (C) INITIAL PLANNING FOR A LOCAL DETENTION FACILITY. ................................... 7

    13-102 (C) 1. LETTER OF INTENT. ...................................................................... 7

    13-102 (C) 2. NEEDS ASSESSMENT STUDY ......................................................... 7

    13-102 (C) 3. OPERATIONAL PROGRAM STATEMENT ............................................. 7

    13-102 (C) 4. TYPE III AND TYPE IV FACILITIES IN EXISTING BUILDINGS .................... 9

    13-102 (C) 5. SUBMITTAL OF PLANS AND SPECIFICATIONS ................................... 9

    13-102 (C) 6. DESIGN REQUIREMENTS ............................................................... 9

    13-102 (C) 7. PILOT PROJECTS ................................................................... 11

    13-102 (C) 8. ALTERNATE MEANS OF COMPLIANCE .......................................... 13

PART 2, SECTION 1231 ............................................................................................ 15

MINIMUM STANDARDS FOR LOCAL DETENTION FACILITIES .......................................... 15

1231.1 DEFINITIONS ............................................................................................. 15

1231.2 DESIGN CRITERIA FOR REQUIRED SPACES ...................................................... 16

    1231.2.1 RECEPTION AND BOOKING ........................................................... 16

    1231.2.2 TEMPORARY HOLDING CELL OR ROOM ............................................ 16

    1231.2.3 TEMPORARY STAGING CELL OR ROOM ............................................ 16

    1231.2.4 SOBERING CELL ........................................................................... 17

    1231.2.5 SAFETY CELL ............................................................................... 17

    1231.2.6 SINGLE-OCCUPANCY CELLS ........................................................... 18

    1231.2.7 DOUBLE-OCCUPANCY CELLS ......................................................... 18

    1231.2.8 DORMITORIES .............................................................................. 18

    1231.2.9 DAYROOMS ................................................................................. 18

    1231.2.10 EXERCISE AREA .......................................................................... 19

i

**DEFTS. MSJ B 239**

1231.2.11 CORRECTIONAL PROGRAM/MULTIPURPOSE SPACE ......................................... 19

1231.2.12 MEDICAL EXAMINATION ROOM ...................................................................... 19

1231.2.13 PHARMACEUTICAL STORAGE SPACE ............................................................... 19

1231.2.14 MEDICAL CARE HOUSING ............................................................................... 20

1231.2.16 COMMISSARY ................................................................................................. 20

1231.2.17 DINING FACILITIES .......................................................................................... 20

1231.2.18 VISITING SPACE .............................................................................................. 20

1231.2.19 SAFETY EQUIPMENT STORAGE ...................................................................... 20

1231.2.20 JANITORS' CLOSET .......................................................................................... 20

1231.2.21 STORAGE ROOMS ........................................................................................... 20

1231.2.22 AUDIO MONITORING SYSTEM ........................................................................ 20

1231.2.23 LAUNDRY FACILITIES ...................................................................................... 21

1231.2.24 EMERGENCY POWER ...................................................................................... 21

1231.2.25 CONFIDENTIAL INTERVIEW ROOMS ............................................................... 21

1231.2.26 ATTORNEY INTERVIEW SPACE ........................................................................ 21

1231.3 DESIGN CRITERIA FOR FURNISHINGS AND EQUIPMENT ............................................ 21

1231.3.1 TOILETS/URINALS ............................................................................................ 21

1231.3.2 WASH BASINS .................................................................................................. 21

1231.3.3 DRINKING FOUNTAINS .................................................................................... 22

1231.3.4 SHOWERS ........................................................................................................ 22

1231.3.5 BEDS ................................................................................................................ 22

1231.3.6 LIGHTING ......................................................................................................... 22

1231.3.7 WINDOWS ....................................................................................................... 22

1231.3.8 CELL PADDING ................................................................................................. 23

1231.3.9 MIRRORS .......................................................................................................... 23

1231.3.10 SEATING ......................................................................................................... 23

1231.3.11 TABLE/SEAT .................................................................................................... 23

1231.3.12 WEAPONS LOCKER ........................................................................................ 23

TABLE 1231A REQUIRED SPACES AND EQUIPMENT IN LOCAL DETENTION FACILITIES ............ 24

DEFTS. MSJ B 240

2. In dormitories, wash basins must be provided in a ratio to inmates of 1:10.

3. Wash basins must be accessible to the occupants of day-rooms and exercise areas.

4. In temporary holding cells and temporary staging cells, wash basins must be provided in a ratio to inmates of 1:16.

5. In sobering cells, wash basins must be provided in a ratio to inmates of 1:8.

6. Wash basins must be provided with hot and cold or tempered water.

7. Two feet (610 mm) of wash basin trough may be substituted for each basin required.

**1231.3.3 Drinking fountains.** There must be a minimum of one drinking fountain in every single-occupancy cell, double-occupancy cell, dormitory, temporary holding cell, temporary staging cell, sobering cell, and be accessible to the occupants of day rooms and exercise areas. Additional drinking fountains shall be located in other areas of the facility so that drinking water will be available to inmates and staff. Such drinking fountains must meet the following minimum health requirements:

1. The drinking fountain bubbler shall be on an angle which prevents waste water from flowing over the drinking fountain bubbler.

2. Water flow shall be actuated by mechanical means.

**1231.3.4 Showers** must be available to all inmates on a ratio of at least one shower to every 20 inmates or fraction thereof and must provide hot and cold water or tempered water. Shower stalls/shower areas must be designed and constructed of materials which are impervious to water and soap so they may be easily cleaned.

**Note.** Shower areas shall provide modesty for inmates with staff being able to visually supervise.

**1231.3.5 Beds** must be elevated off the floor, have a solid bottom, and a sleeping surface of at least 30 inches (762 mm) wide and 76 inches (1930 mm) long. Multiple beds must have a minimum of 21 inches (533 mm) between bed pans. Except in minimum security areas, beds must be securely fastened to the floor or the wall.

**1231.3.6 Lighting.** Lighting in housing units, dayrooms and activity areas must be sufficient to permit easy reading by a person with normal vision, and shall not be less than 20 footcandles (215.2 lux) at desk level and in the grooming area. Lighting shall be centrally controlled and/or occupant controlled in housing cells or rooms. Night lighting in these areas shall be sufficient to give good visibility for purposes of supervision. In minimum-security areas, lighting may be supplied by ordinary lighting fixtures, and in areas of higher security, light fixtures must be of secure design.

**1231.3.7 Windows.** In housing areas of higher than minimum security, exterior windows which are constantly accessible to inmates for escape must be designed and constructed so that if broken out, the net area accessible for escape is no greater than 5 inches (127 mm) in one dimension.