1    JANE DOE

2    11151 Valley Blvd #4886,

3    El Monte, CA 91731

4

5    Plaintiff in Pro Se

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   JANE DOE,                          No. 8:20-cv-00322-JWH-GJS

12            Plaintiff,                 **SUPPLEMENT TO PLAINTIFF'S**
                                         **OPPOSITION TO DEFENDANTS'**
13        v.                             **MOTION FOR TERMINATING**
                                         **SANCTIONS AND REQUEST FOR**
14   COUNTY OF ORANGE, et al             **MONETARY SANCTIONS**

15            Defendants.                Date: June 15, 2022
                                         Time: 3:00pm
16                                       Action Filed: Feb 18, 2020
                                         Trial Date: Not set
17

18

19

20

21   **I.      INTRODUCTION**

22        On May 26, 2021 Defendant County of Orange (County) served eight subpoenas upon Jane

23   Doe (Plaintiff)'s five medical providers requesting both Plaintiff's billing and medical records

24   since Jan 1, 2016 to present.

25        Defendants strategically filed a motion for terminating sanction based on false

26   representation. Dkt 126, 128. After being confronted by false representation Defendants created

27   more misrepresentation to cover their false representation. Most obviously, defendants'

28   settlement statement was not confidential as they claimed. Doe Decl., ¶2. Contrary to Defendants'

                                         1

1  allegation that they will be prejudiced with inability to understand Plaintiff's claims or prepare

2  their defenses and ultimately litigate this case on the merits, in their non-confidential statement

3  they proudly claim they will prevail all claims. Doe Decl., ¶2.

4  ## II.   DEFENDANTS' TERMINATING SANCTION WAS NOT BASED ON BILLING

5  RECORDS

6  Defendants once again try to deceive and mislead this Court by disclosing incomplete

7  information. First, Defendants' motion for terminating sanction was not based on billing records.

8  Plaintiff's medical service was all covered by insurance and she did not have any out of pocket

9  medical expense. Second, Defendants did not disclose to this Court that on page 14-15 of their

10  statement, they clearly state that "In her August 15, 2019, visit, just days after she was released,

11  she denied having any suicidal thoughts. On September 6, 2019, the records state that she

12  allegedly told her OBGYN on September 1, 2019, that she wanted to 'jump off a bridge' and

13  reported that she still feels sad about her 'rape case.' In the therapy session on September 9, 2019,

14  she explained that her suicidal ideations are "on and off" and related to wanting 'justice' and

15  'wanting to gather evidence so that he would confess to the rape.' She does not mention her

16  incarceration whatsoever. Any and all suicidal ideation Plaintiff may have or has had are directly

17  related to her alleged rape, not her four-day incarceration in WCJ." In fact, all of these come from

18  Plaintiff's LACDMH medical records. Defense counsel's blatant misrepresentation are

19  outrageous and supports that the motion for terminating sanction is frivolous.

20  ## III.   DEFENDANTS DID NOT COMPLY WITH ANY LOCAL RULES

21  First, Defendants' letter dated on April 25, 2022 is to demand Plaintiff's signature by April

22  27, 2022, instead of a meet and confer letter required by L.R. 37-1. Nowhere in that letter

23  requested a conference. Second, even it arguably was a meet and confer letter for their motion for

24  terminating sanction Plaintiff was supposed to have ten days to respond. However, Defendants

25  filed their motion for terminating sanction on April 28, 2022. Dkt 126, later replaced by Dkt 128.

26  ## IV.   DEFENDANTS SHOULD BE ORDERED TO PROVIDE RETAINAGE

27  AGREEMENT

28  Because Defendants did not provide actual rate for attorney fee the court should order

2

1  Defendants provide their retainage agreement with Collins + Collins LLP to determine their
2  actually incurred attorney fee.

3  **V.    CONCLUSION**

4      Based on the foregoing, Plaintiff respectfully requests that the court deny Defendants'
5  frivolous motion and pose sanction against Defendants.

6      Dated: 6/3/2022

7      Respectfully submitted.

8                                                    */s/ JANE DOE*

9                                                    JANE DOE, Plaintiff in Pro Se

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

**DECLARATION OF PLAINTIFF JANE DOE**

JANE DOE declares and states:

1.      I am the plaintiff in this case. I have personal knowledge of the facts stated herein. If called upon as a witness I could and would competently testify thereto.

2.      Defendants' information to support their assertion that my injuries are not linked to my incarceration on page 14-15 in their settlement statement come from my medical records from LACDMH. A true and correct copy of defendants' non-confidential settlement statement is attached hereto as Exhibit 1.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: 6/3/2022                                              */s/ JANE DOE*

JANE DOE, In Pro Per

**CERTIFICATE OF SERVICE**

I, JANE DOE, declare and say as follows:

I am over the age of eighteen years of age and am a party to this action. I reside in the County of Los Angeles, State of California. My business address is 11151 Valley Blvd #4886, El Monte, CA 91734, in said county and state.

I electronically filed the following document(s):

Plaintiff's Supplement to Opposition to Defendants' Motion For Terminating Sanctions And Request For Monetary Sanctions

with the United States District Court, Central District of California. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Dated: 6/3/2022

*/s/ JANE DOE*

JANE DOE

Plaintiff in Pro Se

EXHIBIT 1

 Gmail

Jane Doe <courtproceeding9@gmail.com>

---

## 8:20-cv-00322-JWH-GJS / 22348 / Jane Doe v. County of Orange et al.

**Jazmin Ruiz** <JRuiz@ccmslaw.com>                                                    Tue, Apr 26, 2022 at 4:32 PM
To: "MAA_Chambers@cacd.uscourts.gov" <MAA_Chambers@cacd.uscourts.gov>, "Courtproceeding9@gmail.com" <Courtproceeding9@gmail.com>
Cc: "Rebecca J. Chmura" <rchmura@ccmslaw.com>, "Michael L. Wroniak" <mwroniak@ccmslaw.com>, FILE <file@ccmslaw.com>

Good Afternoon,


Please find attached and served herewith the following:

- Defendants' Non-Confidential Settlement Conference Statement


Thank you.



**Jazmin Ruiz**

Legal Assistant


**T**: 760-274-2110
**F**: 760-274-2111
2011 Palomar Airport Road, Suite 207
Carlsbad, CA 92011
jruiz@ccllp.law


# COLLINS + COLLINS LLP


www.ccllp.law


Pasadena 626-243-1100 - Orange 714-823-4100 - San Diego 760-274-2110
Northern California 510-844-5100 - Inland Empire 909-581-6100


PLEASE NOTE: The information contained in this e-mail transmission is intended to be sent only to the stated recipient of the

e-mail. If the reader of this message is not the intended recipient or the intended recipient's agent, you are hereby notified that
we do not intend to waive any privilege that might ordinarily attach to this communication and that any dissemination,
distribution, or copying of the information contained in this e-mail is therefore prohibited. You are further asked to notify us of
any such error in transmission as soon as possible at the telephone number shown below and to delete the e-mail.
Thank you for your cooperation.

---

📄 **SETTLEMENT CONF STMT (1).pdf**
631K

**Michael L. Wroniak (State Bar No. 210347)**
**Rebecca J. Chmura (State Bar. 319106)**
**COLLINS + COLLINS LLP**
**750 The City Drive, Suite 400**
**Orange, CA  92868**
**(714) 823-4100 – FAX (714) 823-4101**
**Email:  mwroniak@ccllp.law**
**Email:  rchmura@ccllp.law**

Attorneys for Defendant
COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE
BALICKI; MARK STICHTER; REYNA RIVERA; DEVONNA FALCONER;
KASSANDRA MAYER; ELIA RODRIGUEZ; and RACHEL ADDINGTON

## UNITED STATES DISTRICT COURT

## DISTRICT OF CALIFORNIA, CENTRAL DISTRICT

| | |
|---|---|
| JANE DOE, | CASE NO. 8:20-cv-00322-JWH (GJS) |
| Plaintiffs, | *[Assigned to Judge John W. Holcomb Courtroom 2]* |
| vs. | **DEFENDANTS' NON-CONFIDENTIAL SETTLEMENT CONFERENCE STATEMENT** |
| COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI; MARK STICHTER; and DOES 1-10, inclusive, | **Settlement Conference:** **Date:      May 4, 2022** **Time:      9:00 a.m.** **Dept.:      Zoom Videoconferencing** |
| Defendants. | Complaint Filed: 2/18/20 Trial Date:      None |

## TO THE HONORABLE JUDGE MARIA A. AUDERO:

Please find Defendants County of Orange, Don Barnes, William Baker, Joe Balicki, Mark Stichter, Reyna Rivera, Devonna Falconer, Kassandra Mayer, Elia Rodriguez, and Rachel Addington's Non-Confidential Settlement Conference Statement in advance of the May 4, 2022, Settlement Conference in this matter.

*FILE # 22348*

**COLLINS + COLLINS** LLP
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone   (714) 823-4100
Fax      (714) 823-4101

## I. <u>INTRODUCTION</u>

This case involves Plaintiff Jane Doe's ("Plaintiff") exaggerated and meritless claims of constitutional violations she allegedly experienced while incarcerated from August 8, 2019 to August 12, 2019, at the Women's Central Jail ("WCJ") after she was arrested for vandalism, violating a restraining order, and intent to distribute private videos of another individual. Plaintiff claims that she was subjected to unconstitutional jail conditions (including the temperature, lighting, overcrowding, denial of one meal, and lack of hygiene products), strip searches, and a harassing cell search during her four-day stay at WCJ and as a result, she suffered emotional distress, insomnia, suicidal ideations, and abnormal menstrual bleeding. Plaintiff brings this action against the County of Orange ("County"); Sheriff Don Barnes, Assistant Sheriff William Baker, Commander Joe Balicki, and Lieutenant Mark Stichter ("Individual Defendants"), supervisors at the Orange County Sheriff's Department; and Reyna Rivera, Devonna Falconer, Kassandra Mayer, Elia Rodriquez, and Rachel Addington ("Deputy Defendants"), the deputies at the WCJ (collectively, "Defendants").

As this Court will see, Plaintiff's claims are unsupported by any fact or applicable precedent. Her stay in WCJ was routine and the jail staff followed applicable policy. Moreover, her damages are minimal and there is no causal connection between her damages and the incarceration because she suffered from the same injuries prior to her incarceration and her emotional distress and trauma is linked to a previous trauma other than the incarceration. This is demonstrated by the thirty (30) other lawsuits she has filed up and down the State against a variety of individuals and public entities in which she asserts, in the vast majority of them, the exact same damages as she alleges in this action.

## II. <u>BRIEF STATEMENT OF FACTS</u>

Plaintiff was arrested by the Santa Ana Police on August 8, 2019, and taken to WCJ for processing around 9:00 a.m. At around 4:30 p.m., Plaintiff was provided a jail uniform, including a black bra. During the booking process, Plaintiff was also offered a

**COLLINS + COLLINS** LLP
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone   (714) 823-4100
Fax       (714) 823-4101

sack lunch and testified at her deposition that she saw other inmates eating during booking. Her claims regarding denial of food are limited to one meal during booking and she does not claim that she was denied food at any other time.

After the booking process, Plaintiff was brought to the shower area where she showered, and changed into her jail uniform. There were only two female deputies near where Plaintiff was showering, and she was not touched by any jail staff. Although Plaintiff was provided a bra, she chose not to wear it claiming that it was "dirty." After changing into her jail uniform, Plaintiff was placed in a holding area with other inmates, where she remained for several hours. Once upstairs, a deputy noticed Plaintiff was not wearing a bra, so the deputy called someone to get a bra for Plaintiff.

After putting on the bra, and in her jail tank, Plaintiff and the other inmates were subjected to a routine Extended Correctional Search. The Extended Correctional Search permits jail staff to do a random search of inmates which requires them to remove all clothing other than their undergarments. For all of the alleged searches at issue in this case, Plaintiff was searched while in a small group and the searches were not unique or targeted to Plaintiff. At no point during any search was Plaintiff asked to remove her bra or underwear, her intimate areas were never touched, and the searches were observed by female deputies. Plaintiff was also never fully naked during any search. After the initial search, Plaintiff was provided additional items including a toothbrush, toothpaste, soap, mattress, sheets, and a blanket. She had the option to purchase shampoo and other hygiene products from commissary. Plaintiff was then escorted to Module G, Tank 2. Plaintiff's tank contained twenty bunkbeds, two showers, a bathroom, and a dayroom.

On August 11, 2019, at approximately 12:16 a.m., Deputy Defendants conducted a routine, random Facility Assigned Search Team ("FAST") search of Plaintiff's tank. During this FAST search, the Deputy Defendants entered the tank and instructed all of the inmates to stand up in full jail issued clothing and file into the day room. Each bunk and surrounding areas were checked for weapons, contraband, or drugs. From this

**COLLINS + COLLINS** LLP
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone   (714) 823-4100
Fax       (714) 823-4101

*FILE # 22348*

**DEFTS.' SETTLEMENT CONFERENCE STATEMENT**

search it was found that three inmates had altered razors and were subsequently written up for this major jail rule violation. Once the FAST search was completed, inmates were permitted to return to their respective bunks. Plaintiff and other inmates continued to talk after the search was conducted. None of the Deputy Defendants worked a shift during the daytime on August 10, 2019. Deputy Defendants were assigned to different areas of WCJ on August 10, 2019.

Plaintiff claims that she was subjected to several "strip searches" including on: (1) August 8, 2019 before being placed into general population; (2) August 10, 2019 before going on the recreation patio; (3) August 10, 2019 after returning from the recreation patio; (4) August 12, 2019 before leaving for court; (5) August 12, 2019 upon arrival at court; and (6) August 12, 2019 after returning from court before being release on her own recognizance. In reality, each of Plaintiff's alleged "strip searches" was actually an Extended Correctional Search, consisting of having the inmate remove her outer garments, but not undergarments (bra and panties).  The inmate then uses her own fingers to extend the waistband of her panties and underlining of her bra to show that there nothing concealed under the garment. WCJ policy allows for jail staff to conduct the Extended Correctional Searches on inmates leaving the tanks, including to and from recreation time, to and from court, and arrestees being released on their own recognizance. Plaintiff was released on August 12, 2019.

## III.    ITEMIZED STATEMENT OF DAMAGES

Plaintiff's damages are minimal. Plaintiff is seeking recovery for general and special damages, civil penalties, attorney's fees and costs, and punitive and treble damages. As for her special damages, Plaintiff sought treatment for her alleged injuries from Arcadia Mental Health, Greater El Monte Hospital, Heredia Physical Therapy, LAC-USC, Pacific Clinics, Los Angeles County Department of Mental Health ("LACDMH"). Despite having subpoenaed the records, Defendants have not received billing records from Arcadia Mental Health, Pacific Clinics, Heredia Physical Therapy or LACDMH, this is due in large part to Plaintiff's consistent objections to production

FILE # 22348

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone  (714) 823-4100
Fax  (714) 823-4101

4

DEFTS.' SETTLEMENT CONFERENCE STATEMENT

of the records, filing protective orders, and failing to authorization forms despite being ordered to do so. The charges from Greater El Monte were $3,453 for a pelvic exam in August 16, 2019. She incurred $4,620 in charges from LAC-USC which was adjusted 100%. Her records from Arcadia Mental Health and Pacific Clinics start from June 2019, prior to the incident, in which she discusses trauma from a rape she experienced prior to her incarceration, and is the primary focus of her sessions. She may be able to recover from sessions where the incarceration was the main focus of her trauma however, those are minimal. Thus, Defendants do not anticipate that she should be able to recover the full extent of the damages from these providers.

Plaintiff is also seeking recovery for pain and suffering and emotional distress. Given that her time at WCJ was not unusual to other inmates and there are no clear violations of policy or the constitution, her damages are nominal. Her claims for attorney's fees fail as she represents herself. Her costs are also $0 because she was granted the application to proceed without paying fees or costs by this Court on March 20, 2020. Finally, Plaintiff is not entitled to punitive damages as there is no evidence of malice, oppression, or reckless disregard. Assuming liability, which Defendants adamantly deny, an itemized statement of potential damages is as follows:

| | |
|---|---|
| **Special Medicals:** | **$3,000-$6,000** |
| **General Damages:** | **$1,000-$5,000** |
| **Attorney's Fees and Costs:** | **$0-$0** |
| **Civil Penalties:** | **$0** |
| **Punitive Damages:** | **$0** |
| **TOTAL:** | **$4,000-$11,000** |

## IV.   SUMMARY OF PROCEEDINGS

Plaintiff filed her Fourth Amended Complaint on December 1, 2020. She pled the causes of action of: (1) Violations of 42 U.S.C. § 1983 – Denial of Life Necessities against the County; (2) Violations of 42 U.S.C. § 1983 – Overcrowding and sleep deprivation against the County and Individual Defendants; (3) Violations of 42 U.S.C. § 1983 – Strip

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone   (714) 823-4100
Fax       (714) 823-4101

search and bodily privacy against the County and Individual Defendants; (4) Violations of 42 U.S.C. § 1983 – Harassing cell search against the County and Deputy Defendants; (5) Violations of 42 U.S.C. § 1983 – Freedom of expression against the County and Deputy Defendants; (6) omitted by Plaintiff (7) Municipal Liability for Unconstitutional Custom or Policy against the County; (8) Municipal Liability – Failure to Train and Supervise against the County; (9) Violation of California Constitution Article I, Sec. 7 – Denial of Life Necessities against the County; (10) Violation of California Constitution Article I, Sec. 7 – Overcrowding and sleep deprivation against the County and Individual Defendants; (11) Violation of California Constitution Article I, Sec. 13 – Strip search against the County and Individual Defendants; (12) Violation of California Constitution Article I, Sec. 13 – Harassing Cell Search against the County and Deputy Defendants; (13) Violation of California Constitution Article I, Sec. 2 – Freedom of Expression against the County and Deputy Defendants; (14) Violation of California Constitution Article I, Sec. 1 – Right of privacy against Defendants; (15) Negligent Supervising, Training, Disciplining, and Retaining Employees against the County and Individual Defendants; (16) Violation of Penal Code section 4030 against Individual Defendants; and (17) Intentional Infliction of Emotional Distress against all Defendants.

Below is a brief summary of the notable proceedings to date as well as upcoming deadlines set by the Magistrate Judge: **May 18, 2020:** Defendants' opposed Motion to Dismiss to Plaintiff's Third Amended Complaint. It was granted and denied in part; **December 1, 2020**: Plaintiff filed her Fourth Amended Complaint (the operative pleading) and Defendants answered on **December 14, 2020**; **February 17, 2021**: Plaintiff's deposition, which was unsuccessful due to her failure to cooperate on Zoom videoconferencing; **March 10, 2021**: Scheduling Conference was held; **March 31, 2021**: Plaintiff's deposition, Volume I; **June 15, 2021**: Plaintiff's opposed Motion to Quash subpoenas for her medical records which was denied; **July 16, 2021**: Plaintiff's opposed Motion for District Court Review of Plaintiff's Motion to Quash the subpoenas for her medical records which was not denied until **December 14, 2021**; **September 15, 2021**:

COLLINS & COLLINS LLP
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone   (714) 823-4100
Fax       (714) 823-4101

Defendants opposed *ex parte* Application to Continue Scheduling Order Dates given there had been no ruling on the Motion for Review related to the subpoenas, which was granted; **March 18, 2022:** Defendants opposed *ex parte* Application to Extend Fact Discovery Cut-Off which was granted given that by no fault of their own, Defendants had not yet received all of the records from their subpoenas; **April 29, 2022:** Plaintiff's deposition regarding Damages, Volume II; **June 17, 2022:** Dispositive Motion Cut-off; and **July 13, 2022:** Expert Discovery Cut-off.

## V. <u>PAST SETTLEMENT DISCUSSIONS</u>

There have been no past settlement discussions in this case. Plaintiff has not previously made any demands for settlement.

## VI.   <u>DEFENDANTS WILL PREVAIL ON ALL CLAIMS</u>

Plaintiff's complaints about the jail conditions and procedures are outlandish. The Fourteenth Amendment does not require a pretrial detainee's stay in jail to be comfortable. (*Farmer v. Brennan,* 511 U.S. 825, 832; *Rhodes v. Chapman,* 452 U.S. 337, 349 (1982). Moreover, there is no causal connection between Plaintiff's alleged injuries and her incarceration as Plaintiff was admittedly already suffering from emotional trauma prior to her incarceration. She also has over 34 other cases in California, including the Superior Court of the counties of Los Angeles, Orange, Contra Costa, and Sonoma; First, Second, and Fourth District Appellate Courts; California Supreme Court; United States District Courts for the Central District (Western and Southern Division); United States Court of Appeals for the Ninth Circuit where she asserts similar if not identical injuries for emotional distress and suicidal ideations. Defendants are likely to succeed on their defenses to each of Plaintiff's claims for the following reasons:

### a.   <u>Plaintiff's 14th Amendment Claims (42 U.S.C. § 1983) (One-Four) Fail</u>

#### i.  *WCJ is Generally Kept at Room Temperature*

Plaintiff will not succeed on her first claim against the County because she is not entitled to a comfortable temperature under the Constitution and was not

**COLLINS + COLLINS** LLP
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone   (714) 823-4100
Fax      (714) 823-4101

unconstitutionally denied food. As to temperature, the Constitution requires adequate heating, but not necessarily a "comfortable" temperature. (*Graves v. Arpaio,* 623 F.3d 1043, 1049 (9th Cir.2010).) Plaintiff's only claims were that the jail was "bone-chillingly cold." However, WCJ is generally kept at 70 degrees Fahrenheit, which is room temperature. Although that may have been cold to Plaintiff, that is not an actionable claim under the Constitution.

### ii.   Plaintiff Alleges to Have Been Denied One Meal Only

Plaintiff's first claim against the County will fail because she was only allegedly denied one-meal, if taking her version as true, and that is not enough to be deemed a Constitutional Violation. According to the Ninth Circuit, "[t]he *sustained* deprivation of food can be cruel and unusual punishment when it results in pain without any penological purpose." (*Foster v. Runnels,* 554 F.3d 807, 814 (9th Cir. 2009) *citing Phelps v. Kapnolas*, 308 F.3d 180, 182 (2d Cir. 2002).)(Emphasis added.) In *Foster*, the inmate was denied sixteen meals over twenty-three days and was considered to be sustained deprivation. Conversely, in this case, Plaintiff testified she was only allegedly denied one meal during the intake/booking process. She does not claim to have been denied any other meals during her entire incarceration. Thus, her claim fails.

### iii.   WCJ was Not Overcrowded

Plaintiff's second claim for overcrowding against the County and Individual Defendants fails because exclusive reliance on square footage or the jail's rated capacity is insufficient to establish unconstitutional overcrowding. (*Hoptowit v. Ray,* 682 F.2d 1237, 1249 (9th Cir.1982).) Consideration must also be given to how much time inmates must spend in their cells each day and whether overcrowding has caused other constitutional deprivations. (*Id.*) While incarcerated at WCJ, Plaintiff was permitted to leave her cell to use the dayroom from 6:00 a.m. to 11:00 p.m. everyday. Moreover, Plaintiff was permitted to have outdoor recreation time on the patio up to three times per week. Thus, given that Plaintiff was only required to be in her cell during sleeping hours and could use other jail facilities, her claim fails. Regardless, there were only

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone   (714) 823-4100
Fax       (714) 823-4101

*FILE # 22348*

8

**DEFTS.' SETTLEMENT CONFERENCE STATEMENT**

about 20-30 other inmates in the same Module as Plaintiff, with each dorm area measuring about 1000 square feet.

### iv.  Permissible Sound and Light Annoyances

Plaintiff complains of lights and sounds which allegedly deprived her of sleep during her incarceration. As to lighting, "[n]either the Ninth Circuit nor any other federal court have held that pretrial detainees have a right to sleep in complete darkness. Rather, other courts have held that continuous low-wattage lighting is permissible in jails or prisons." (*Walker v. Woodford*, 454 F.Supp.2d 1007, 1014 (S.D. Cal. 2006), aff'd in part, 393 F.App'x 513 (9th Cir. 2010).) Plaintiff admits that she was able to sleep during her time at WCJ and she saw other inmates sleeping. The only lights that were left on were in the security areas where the guards were for safety. This is permissible for penological reasons. As to sound, Plaintiff complains that there was a constant sound of toilets flushing. The Ninth Circuit has held that "[inmates] be housed in an environment that, if not quiet, is at least reasonably free of excess noise. (*Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir.1996).) The level of noise is considered extreme when "it adversely affects prisoners' hearing and mental processes. Constant exposure to such a level of noise inflicts pain without penological justification.'" (*Lancaster v. Tilton*, No. C 79-01630WHA, 2007 WL 4570185, at *17 (N.D. Cal. Dec. 21, 2007).) Thus, toilets flushing so that inmates can use the restrooms would not be considered "excess." Plaintiff herself testified in her deposition that inmates should be permitted to use the restrooms as being prevented from doing so would be "inhuman."

### v.  Plaintiff was Given Adequate Hygienic Supplies

Plaintiff's claims that she was not given adequate hygienic supplies is meritless. Plaintiff was given a basic Welfare Pack when entering WCJ, consisting of a toothbrush, toothpaste, and soap. If she ran out of these items and could not afford more, WCJ would provide them. Plaintiff was also given tampons, pads, or other feminine products upon request at no charge if she required them. Moreover, Plaintiff was able to purchase shampoo and other hygiene products from commissary. WCJ is only required to provide

**COLLINS + COLLINS** LLP
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone   (714) 823-4100
Fax       (714) 823-4101

inmates with adequate food, clothing, shelter, etc., which it did and thus her claims fail. (*Hoptowit v. Ray,* 682 F.2d 1237, 1249 (9th Cir.1982).)

### vi.  Body Searches were Reasonable

Plaintiff claims that she was subjected to strip searches, however, she is incorrect. She underwent routine Extended Correctional Searches. These body searches have been deemed a routine part of county jail intake of pretrial detainees, including those suspected of low-level non-violent offenses, and do not violate the Fourth or Fourteenth Amendments. (*Florence v. Board of Chosen Freeholders of County of Burlington,* 566 U.S. 318, 326 (2012).) The courts must consider the scope, manner, justification, and place of the search. (*Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1141 (9th Cir. 2011). Here, Plaintiff claims to have been "strip searched" seven times during her incarceration. Plaintiff admits that during all searches, they were performed by female deputies, in front of other groups of female inmates, she was never fully naked or exposed, and her genitals or breasts were never touched or exposed. (Exhibit "2.") The searches occurred only before and after coming in from the recreation patio and to and from court, both places where it is possible that inmates could have acquired some sort of contraband and it would be within the jail's interest to search inmates to prevent them from bringing it into the facility. In other words, by her own description, Plaintiff was subjected to Extended Correctional Searches. Thus, the searches were reasonable and permissible.

### vii.  There was No Harassing Cell Search

Plaintiff only claims that one harassing cell search occurred. However, inmates are not entitled to recognizable privacy expectations in their cells. (*Hudson v. Palmer*, 468 U.S. 517, 527-28, (1984); *United States v. Robinson* 414 U.S. 218, 232 (1973), which held that an individual in custody retains no significant Fourth Amendment interest; *Bell v. Wolfish*, 441 U.S. 520, 556–557 (1979), which upheld a room search rule by pretrial detainees and that "a person confined in a detention facility has no reasonable expectation of privacy with respect to his room or cell and that therefore the Fourth

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone  (714) 823-4100
Fax    (714) 823-4101

*FILE # 22348*

**DEFTS.' SETTLEMENT CONFERENCE STATEMENT**

Amendment provides no protection for such a person.") Moreover, "[R]andom searches of cells renders these searches perhaps the most effective weapon of the prison administrator in the constant fight against the proliferation of knives and guns, illicit drugs, and other contraband." (*Hudson*, *supra,* 468 U.S. at 528.) Plaintiff's claim thereby fails because she had no right to privacy in her cell and also the search is related to a genuine penological interest. Plaintiff admits to this, and the FAST search ultimately found weapons and other contraband as a result. (Exhibit "1.")

### b.  Plaintiff's First Amendment Rights Were Not Violated

Plaintiff contends that the cell searches she faced were retaliatory and violated the First Amendment because Plaintiff and the other inmates were told to remain quiet. (FAC, ¶¶ 65, 101.) "Plaintiff does not have a First Amendment right to speak in prison." (*Asbury v. Brown*, 2017 WL 1837024, at *6 (E.D. Cal. May 8, 2017).) Moreover, "[i]t is reasonable to conclude that directing an individual to be quiet during a search, or declining to answer the individual's questions, is reasonably related to the officer's need to concentrate and act quickly, and cannot therefore be said to impermissibly impinge upon the individual's exercise of free speech." (*Whitely v. CDCR*, No. CV 18-1103-AG (AGR), 2018 WL 7269001, at *4 (C.D. Cal. Dec. 19, 2018), report and recommendation adopted, No. CV 18-1103-AG (AGR), 2019 WL 498512 (C.D. Cal. Feb. 7, 2019) *citing Ingram v. Sacramento Police Dep't,* 2009 WL 2905774, at *6 (E.D. Cal. Sept. 4, 2009).) Thus, because Plaintiff and the inmates were asked to remain quiet during the cell searches and this is related to a penological interest, Plaintiff's claim against the County and Deputy Defendants fails.

### c.  Plaintiff will not Succeed on her *Monell* Theories

Plaintiff's *Monell* claims fail outright since it is well established that a public entity cannot be held liable solely on the basis that it employs a tortfeasor. (*Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 692 (1978).) For a municipality to be held liable under Section 1983, a plaintiff must prove "(1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3)

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone  (714) 823-4100
Fax     (714) 823-4101

that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." (*Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992).) Plaintiff does not allege any specific customs or policies that were deliberately indifferent to those rights, thus her claims fail.

### d. There is No Causal Connection to the Claims and Individual Defendants

"To state a claim against an individual official under § 1983, a plaintiff must allege that the official, 'through the official's own individual actions, has violated the Constitution.' (*Ashcroft v. Iqbal*, (2009) 556 U.S. 662, 676.) There is no respondeat superior or vicarious liability. (*Id.*) there must be 'a sufficient causal connection' between the supervisor's own conduct and the violation. (*Id.* at 1207.) Plaintiff does not allege any *specific* unconstitutional acts by the Individual Defendants. In fact, Individual Defendants were not even at WCJ during Plaintiff's incarceration.

### e. State and Federal Claims are Analyzed Equivalently

"The Fourteenth Amendment's guarantee of equal protection and the California Constitution's protection of the same right… are substantially equivalent and are analyzed in a similar fashion." (*Landau v. Superior Ct.,* 81 Cal. App. 4th 191, 207 (1998).) Thus, for all constitutional violations raised in Plaintiff's FAC, California precedent mirrors the Federal findings. (*See People v. Collins*, 115 Cal. App. 4th 137, 154 (2004), which held that a strip search after certain activities such as a visit to the law library, infirmary, exercise room, or outside of prison was reasonable and permissible; *People v. Zepeda*, 87 Cal. App. 4th 1183, 1193 (2001), holding that the Fourth Amendment protection does not apply to a jail cell and random searches are permissible; *Bailey v. Loggins*, 32 Cal. 3d 907, 918 (1982), which held that prison officials can limit First Amendment rights, including speech or association, when it relates to the penological objectives of the institution; *People v. Baker*, 88 Cal. App. 3d 115, 123 (Ct. App. 1978), which held that "[i]t is settled law that a prisoner does not have the right to privacy guaranteed to nonincarcerated citizens."

///

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone  (714) 823-4100
Fax   (714) 823-4101

### f.   Individual Defendants did not Violate Penal Code section 4030

Penal Code section 4030 limits the scope of strip searches regarding misdemeanor pre-trial detainees. In Penal Code section 4030, in strip searches the officers are not permitted to touch the genitals or breasts of the inmates, and they must be conducted by the same sex officer. Plaintiff's claim fails because the Individual Defendants did not personally perform the searches, Penal Code section 4030 only applies to searches conducted on a misdemeanor arrestee *prior* to placement in general population, and she was not subjected to a strip search at any time but a body search. (Pen. Code § 4030(e).) (Emphasis Added.) Plaintiff was not subjected to a body search prior being placed in general population. She was asked to shower in accordance with jail policy and subjected to only body searches or Extended Custodian Searches while after being in the Module. At no time does she allege to have been subjected to a cavity search. Plaintiff was not body searched until several hours after she completed the booking process.

### g.   There is No Evidence to Support Plaintiff's Claim for IIED

A claim for intentional infliction of emotional distress ("IIED") requires: (1) extreme and outrageous conduct by the defendant; (2) the plaintiff suffered severe emotional distress; and (3) the defendant's extreme and outrageous conduct was the actual and proximate cause of the severe emotional distress. (*Crouch v. Trinity Christian Center of Santa Ana, Inc.*, 39 Cal.App.5th 995, 1007 (2019).) Plaintiff does not allege any extreme or outrageous conduct by any Defendant. Instead, she alleges routine policies in WCJ. Moreover, her emotional distress was not severe and her incarceration at the WCJ is not the actual and proximate cause of her distress; the cause of her alleged distress is the rape she experienced several months prior to her incarceration, the criminal charges she faced in the underlying criminal case that led to the incarceration, and the other 30 some lawsuits she has against other public entities for similar injuries. Moreover, the County is immune for liability as public entities are generally immune from liability for IIED. (*Wright v. State of California* 122 Cal.App.4th 659, 672 (2001).)

*FILE # 22348*

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone  (714) 823-4100
Fax      (714) 823-4101

### h. **All Defendants are Immune from Plaintiff's Claims**

At both the Federal and State levels, all Defendants are entitled to immunity. First, at the Federal level, the Individual and Deputy Defendants are entitled to Qualified Immunity." (*Pearson v. Callahan*, 555 U.S. 223, 231 (2009), which held that officials are entitled to qualified immunity where their conduct does not violate clearly established or statutory rights.) Plaintiff shows no conduct specifically link to Deputy or Individual Defendants that violates the constitution or policy. Thus, they are immune from liability under Qualified Immunity.

At the state level, Individual and Deputy Defendants are immune under Government Code section 820.8, which states that an employee cannot be liable for the acts of other employees, including their subordinates. Deputy Defendants are immune under section Government Code section 820.2 which provides liability for injuries resulting from discretionary acts in their employment.

The County is immune from liability pursuant to Government Code sections 815.2(b) and 844.6. Government Code section 815.2(b) states that a public entity is not liable when its employee(s) are also immune. Government Code section 844.6 states that a public entity is not liable for an injury to a prisoner, including pretrial detainees.

### i. **Plaintiff's Injuries are Not Linked to Her Incarceration**

It is clear that Plaintiff's damages are not linked to her incarceration. First, Plaintiff admits to having suffered from PTSD, anxiety, mental illness, and emotional distress prior to her incarceration at WCJ. (Exhibit "2.")

Further, her records from Pacific Clinics disclosed that Plaintiff has been treating for emotional trauma, depression, and PTSD since June 2019, she has a history of depression beginning in 2014, and she was sexually abused in 2013-2014 by an ex-boyfriend. From Arcadia Mental Health, a June 2019 record states that she "has been miserable since April 2019 because she was raped by a man she met online." She also has been experiencing depression since May 2019. Moreover, in a July 19, 2019, appointment, Plaintiff stated that she wishes on some days that she "won't wake up." In her August 15,

**COLLINS + COLLINS**
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone  (714) 823-4100
Fax  (714) 823-4101

2019, visit, just days after she was released, she denied having any suicidal thoughts. On September 6, 2019, the records state that she allegedly told her OBGYN on September 1, 2019, that she wanted to "jump off a bridge" and reported that she still feels sad about her "rape case." In the therapy session on September 9, 2019, she explained that her suicidal ideations are "on and off" and related to wanting "justice" and "wanting to gather evidence so that he would confess to the rape." She does not mention her incarceration whatsoever. Any and all suicidal ideation Plaintiff may have or has had are directly related to her alleged rape, not her four-day incarceration in WCJ.

## VII.    APPROXIMATION OF ATTORNEY'S FEES

The attorney's fees and costs incurred by Defendants has been substantial. There have been a number of required motions and discovery in order to seek routine information regarding Plaintiff's claims. To date, Defendants have incurred over approximately $160,000 in attorney's fees, $6,100 in costs, and spent nearly 1,200 hours defending themselves in this matter. If this matter does not resolve, Defendants will need to receive and review her medical records which have not yet been received, incur expert fees and costs, depose Plaintiff's experts, bring a Motion for Summary Judgment, and if not successful, will need to prepare for appear for trial. Thus, Defendants expect to incur an additional 300-500 hours at a minimum through the resolution of this matter/trial and will incur approximately an additional $75,000 to $150,000 in attorney's fees and costs. Again, Plaintiff has not incurred any attorney's fees and has no costs in this suit.

## VIII.  EVALUATION OF SETTLEMENT

It is clear that Defendants do not have liability for the alleged claims as there were no constitutional violations, are immune under various statutes and theories, and Plaintiff's minimal damages span from other past traumas unrelated to this incident. Defendants are sympathetic to Plaintiff's emotional past and experiences, however, they will not monetarily compensate her for damages caused by others. Still, Defendants intend to participate in this Settlement Conference in good faith.

///

*FILE # 22348*

**COLLINS + COLLINS** LLP
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone  (714) 823-4100
Fax  (714) 823-4101

15

**DEFTS.' SETTLEMENT CONFERENCE STATEMENT**

DATED:      April 26, 2022          COLLINS + COLLINS LLP


By: _____
    REBECCA J. CHMURA
    MICHAEL L. WRONIAK
    Attorneys for Defendant COUNTY OF
    ORANGE; DON BARNES; WILLIAM
    BAKER; JOE BALICKI; MARK
    STICHTER; REYNA RIVERA;
    DEVONNA FALCONER; KASSANDRA
    MAYER; ELIA RODRIGUEZ; RACHEL
    ADDINGTON

**DEFTS.' SETTLEMENT CONFERENCE STATEMENT**

*FILE # 22348*

COLLINS + COLLINS LLP
750 The City Drive, Ste 400
Orange, CA  92868-4940
Phone   (714) 823-4100
Fax      (714) 823-4101

**EXHIBIT 1**

JI ORIGINAL

**SHERIFF'S DEPARTMENT
ORANGE COUNTY
SANTA ANA, CALIFORNIA**

Case No.

Jail Incident No.
WJ081119-0116

**DON BARNES, SHERIFF-CORONER**

**SEARCH REPORT**

FACILITY: Central Women's Jail                                              LOCATION: Module G Tanks 1 and 2

SUPERVISOR: Sgt. L. Cantrell #7841                                     DATE: Sunday 08-11-19

DEPUTIES: R. Rivera #9890, D. Falconer #10050, K. Mayer #10765, E. Rodriguez #9052 and R. Addington #10682

| TANK/ SECTOR/ BARRACKS | CELL/ CUBE | BUNK | INVENTORY OF ITEMS FOUND | J.I. / DR. NO. |
|---|---|---|---|---|
| G-1 | | 9 | Flores #3128766: Major Jail Rule Violation- lying to staff– had a diaper | |
| G-2 | | 3 | Villanueva #3128973: extra sheet- Minor Jail Rule Violation | |
| | | 8 | Mcconnell #3123079: extra sheet- Minor Jail Rule Violation | |
| | | 24 | Neal #3121023: Major Jail Rule Violation- altered razor | |
| | | 27 | Aguayo #316481: Major Jail Rule Violation- altered razor | |
| | | 39 | Sanchez #3125545: Major Jail Rule Violation- altered razor | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

DISPOSITION: A F.A.S.T. Search was conducted in Module G Tanks 1 and Tank 2, bunks 1-40. The above items found and disposed of in the security trash. The extra jail issue returned to the laundry room.

Sgt. L. Cantrell #7841 present for the search.

| SUBMITTED BY CSA K. Lopez Domingo #9460 | DATE Sunday, August 11, 2019 | APPROVED BY |
|---|---|---|

J 098.1 (07/17)

OC 0059

**EXHIBIT 2**

1    JANE DOE

2    11151 Valley Blvd #4886,

3    El Monte, CA 91731

4    Plaintiff in Pro Se

5

6

7

8                        **UNITED STATES DISTRICT COURT**

9                        **CENTRAL DISTRICT OF CALIFORNIA**

10

11   JANE DOE,                              No. 8:20-cv-00322- JWH -GJS

12              Plaintiff,

13        v.                                **PLAINTIFF'S RESPONSES TO**
                                            **DEFENDANT DEVONNA FALCONER'S**
14   COUNTY OF ORANGE, et al                **REQUESTS FOR ADMISSION, SET ONE**

15              Defendants.

16

17        Propounding Party    :    DEVONNA FALCONER ("Defendant" or "FALCONER")
          Responding Party     :    JANE DOE ("Plaintiff")
18        Set No.              :    One (1)

19        Plaintiff, pursuant to Rules 33 of the Federal Rules of Civil Procedure and the Local Rules

20   of this Court, responds and objects to Defendant DEVONNA FALCONER's First Set of

21   REQUESTS FOR ADMISSION as follows:

22                        **PRELIMINARY STATEMENT**

23        1.   The following responses are made solely for the purpose of this action. Plaintiff's

24   investigation and development of all facts and circumstances relating to this action is ongoing. At

25   this time, Plaintiff has not yet fully completed her investigation of the facts related to this action,

26   and has not yet fully completed her discovery in this action, and consequently has not yet fully

27   completed her preparation for trial.

28        2.   The following responses are based only upon information, materials, and documents that

                                            1

1   are currently available to and specifically known by Plaintiff.

2   3. It is anticipated that further discovery, independent investigation, legal research, and

3   analysis will supply additional facts and add meaning to known facts, as well as established

4   entirely new factual conclusion and legal contentions, all of which may lead to substantial

5   additions to, changes in, and variation from the contentions herein set forth.

6   4. The following responses are given without prejudice to the right to produce at trial any

7   and all subsequently-discovered evidence relating to the proof of presently known material facts,

8   if any, and to produce all evidence, whenever discovered, relating to the proof of subsequently

9   discovered material facts. These responses and objections are made without prejudice to, and are

10   not a waiver of, Plaintiff's right to rely on other facts or documents at trial.

11   5. Plaintiff expressly reserves the right to supplement, clarify, revise, or correct any or all of

12   the responses and objections herein, and to assert additional objections or privileges, in one or

13   more subsequent supplemental response(s).

14   6. Except for explicit facts submitted herein, no admissions of any nature whatsoever are

15   implied nor should they be inferred. The fact that Plaintiff has responded to any Request for

16   Admission should not be taken as an admission or acceptance of the existence of any fact or facts

17   set forth or assumed by any interrogatory, or that such answer constitutes admissible evidence.

18   7. This Preliminary Statement is, by this reference, incorporated into each and every one of

19   the following Responses to these interrogatories.

20   **PLAINTIFF'S RESPONSES TO REQUESTS FOR ADMISSION**

21   **RFA NO. 1**

22   Admit that prior to YOUR INCARCERATION at WCJ YOU suffered from PTSD.

23   **RESPONSE TO RFA NO. 1**

24   Objection. This request is overbroad as to time and scope because it seeks information since

25   Plaintiff was born. It is also an invasion of Plaintiff's right to privacy. This request requires

26   improper adoption of an assumption. It is used to cause unwarranted annoyance, embarrassment,

27   or oppression. This request seeks premature disclosure of expert opinion in violation of Code of

28   Civil Procedure sections 2034.210, 2034.220, and 2034.270. Responding Party further objects on

2

the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections Responding Party responds as follows: Admit to the extent that at some point since Plaintiff was born until prior to her incarceration at WCJ she suffered from PTSD.

**RFA NO. 2**

Admit that prior to YOUR INCARCERATION at WCJ YOU suffered from anxiety.

**RESPONSE TO RFA NO. 2**

Objection. This request is overbroad as to time and scope because it seeks information since Plaintiff was born. It is also an invasion of Plaintiff's right to privacy. This request requires improper adoption of an assumption. It is used to cause unwarranted annoyance, embarrassment, or oppression. This request seeks premature disclosure of expert opinion in violation of Code of Civil Procedure sections 2034.210, 2034.220, and 2034.270. Responding Party further objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections Responding Party responds as follows: Admit to the extent that at some point since Plaintiff was born until prior to her incarceration at WCJ she suffered from anxiety.

**RFA NO. 3**

Admit that prior to YOUR INCARCERATION at WCJ YOU suffered from depression.

**RESPONSE TO RFA NO. 3**

Objection. This request is overbroad as to time and scope because it seeks information since Plaintiff was born. It is also an invasion of Plaintiff's right to privacy. This request requires improper adoption of an assumption. It is used to cause unwarranted annoyance, embarrassment, or oppression. This request seeks premature disclosure of expert opinion in violation of Code of Civil Procedure sections 2034.210, 2034.220, and 2034.270. Responding Party further objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections Responding Party responds as follows: Admit to the extent that at some point since Plaintiff was born until prior to her incarceration at WCJ she suffered from depression.

**RFA NO. 4**

Admit that prior to YOUR INCARCERATION at WCJ YOU suffered from social withdrawl.

**RESPONSE TO RFA NO. 4**

Objection. This request is overbroad as to time and scope because it seeks information since Plaintiff was born. It is also an invasion of Plaintiff's right to privacy. This request requires improper adoption of an assumption. It is used to cause unwarranted annoyance, embarrassment, or oppression. This request seeks premature disclosure of expert opinion in violation of Code of Civil Procedure sections 2034.210, 2034.220, and 2034.270. Responding Party further objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections Responding Party responds as follows: Admit to the extent that at some point since Plaintiff was born until prior to her incarceration at WCJ she suffered from social withdrawl.

**RFA NO. 5**

Admit that prior to YOUR INCARCERATION at WCJ YOU suffered from paranoia.

**RESPONSE TO RFA NO. 5**

Objection. This request is overbroad as to time and scope because it seeks information since Plaintiff was born. It is also an invasion of Plaintiff's right to privacy. This request requires improper adoption of an assumption. It is used to cause unwarranted annoyance, embarrassment, or oppression. This request seeks premature disclosure of expert opinion in violation of Code of Civil Procedure sections 2034.210, 2034.220, and 2034.270. Responding Party further objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections Responding Party responds as follows: Admit to the extent that at some point since Plaintiff was born until prior to her incarceration at WCJ she suffered from paranoia.

**RFA NO. 6**

Admit that prior to YOUR INCARCERATION at WCJ YOU suffered from suicidal ideation.

**RESPONSE TO RFA NO. 6**

Objection. This request is overbroad as to time and scope because it seeks information since Plaintiff was born. It is also an invasion of Plaintiff's right to privacy. This request requires improper adoption of an assumption. It is used to cause unwarranted annoyance, embarrassment, or oppression. This request seeks premature disclosure of expert opinion in violation of Code of Civil Procedure sections 2034.210, 2034.220, and 2034.270. Responding Party further objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections Responding Party responds as follows: Deny.

**RFA NO. 7**

Admit that prior to YOUR INCARCERATION at WCJ YOU suffered from mental illness.

**RESPONSE TO RFA NO. 7**

Objection. This request is overbroad as to time and scope because it seeks information since Plaintiff was born. It is also an invasion of Plaintiff's right to privacy. This request requires improper adoption of an assumption. It is used to cause unwarranted annoyance, embarrassment, or oppression. This request seeks premature disclosure of expert opinion in violation of Code of Civil Procedure sections 2034.210, 2034.220, and 2034.270. Responding Party further objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections Responding Party responds as follows: Admit to the extent that at some point since Plaintiff was born until prior to her incarceration at WCJ she suffered from mental illness.

**RFA NO. 8**

Admit that prior to YOUR INCARCERATION at WCJ YOU suffered from dysfunctional or irregular menstrual bleeding/cycles.

**RESPONSE TO RFA NO. 8**

Objection. This request is overbroad as to time and scope because it seeks information since Plaintiff was born. It is also an invasion of Plaintiff's right to privacy. This request requires improper adoption of an assumption. It is used to cause unwarranted annoyance, embarrassment,

or oppression. This request seeks premature disclosure of expert opinion in violation of Code of

Civil Procedure sections 2034.210, 2034.220, and 2034.270. Responding Party further objects on

the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible

evidence. Subject to and without waiving these objections Responding Party responds as follows:

Deny.

**RFA NO. 9**

Admit that YOU remained in YOUR bra and underwear during all alleged cell searches

which occurred while YOU were INCARCERATED at WCJ.

**RESPONSE TO RFA NO. 9**

Objection. This request is overbroad as to time and scope. This request requires improper

adoption of an assumption. Subject to and without waiving these objections Responding Party

responds as follows: Admit.

**RFA NO. 10**

Admit that YOU were never fully naked during any alleged cell searches which occurred

while YOU were INCARCERATED at WCJ.

**RESPONSE TO RFA NO. 10**

Objection. This request is overbroad as to time and scope. This request requires improper

adoption of an assumption. Subject to and without waiving these objections Responding Party

responds as follows: Admit.

**RFA NO. 11**

Admit that YOUR genital areas were never fully exposed during any alleged cell searches

which occurred while YOU were INCARCERATED at WCJ.

**RESPONSE TO RFA NO. 11**

Objection. This request is overbroad as to time and scope. It requires improper adoption of

an assumption. Subject to and without waiving these objections Responding Party responds as

follows: Admit.

**RFA NO. 12**

Admit that YOUR genital areas were never touched by any PERSON during any alleged

1  cell searches which occurred while YOU were INCARCERATED at WCJ.

2  **RESPONSE TO RFA NO. 12**

3      Objection. This request is overbroad as to time and scope. It requires improper adoption of

4  an assumption. Subject to and without waiving these objections Responding Party responds as

5  follows: <mark>Admit.</mark>

6  **RFA NO. 13**

7      Admit that all alleged cell searches during YOUR INCARCERATION at WCJ were

8  conducted by female deputies.

9  **RESPONSE TO RFA NO. 13**

10      Objection. This request is overbroad as to time and scope. It requires improper adoption of

11  an assumption. Responding Party further objects on the basis of relevance in that it is not

12  reasonably calculated to lead to the discovery of admissible evidence. Subject to and without

13  waiving these objections Responding Party responds as follows: <mark>Admit.</mark>

14  **RFA NO. 14**

15      Admit that all alleged cell searches during YOUR INCARCERATION at WCJ were

16  conducted in small groups with other female inmates.

17  **RESPONSE TO RFA NO. 14**

18      Objection. This request is vague and ambiguous as to the term "in small groups." It requires

19  improper adoption of an assumption. Responding Party further objects on the basis of relevance

20  in that it is not reasonably calculated to lead to the discovery of admissible evidence. Subject to

21  and without waiving these objections Responding Party responds as follows: Admit in part and

22  deny in part. <mark>Admit that strip searches at WCJ during Plaintiff's incarceration were conducted in</mark>

23  <mark>groups with other female inmates</mark> and deny that they were conducted in small groups.

24   **RFA NO. 15**

25      Admit that during YOUR INCARCERATION at WCJ the inmates were allowed to talk to

26  each other in the dayroom.

27  **RESPONSE TO RFA NO. 15**

28      Objection. This request is overbroad as to time and scope. It requires improper adoption of

an assumption. Subject to and without waiving these objections Responding Party responds as follows: Admit in part and deny in part. Admit that in some occasions WCJ the inmates were allowed to talk to each other in the dayroom and deny that WCJ the inmates were always allowed to talk to each other in the dayroom.

**RFA NO. 16**

Admit that during YOUR INCARCERATION at WCJ the dayroom was available for use from 6:00 a.m. to 11:00 p.m.

**RESPONSE TO RFA NO. 16**

Objection. This request requires improper adoption of an assumption. Responding Party further objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections Responding Party responds as follows: Responding Party has made reasonable inquiry and the information she knows or can readily obtain is insufficient to enable her to admit or deny. Plaintiff has no personal knowledge from what time to what time WCJ dayroom was available for use.

**RFA NO. 17**

Admit that during YOUR INCARCERATION at WCJ phone service was available for use from 6:00 a.m. to 11:00 p.m.

**RESPONSE TO RFA NO. 17**

Objection. This request requires improper adoption of an assumption. Responding Party further objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections Responding Party responds as follows: Responding Party has made reasonable inquiry and the information she knows or can readily obtain is insufficient to enable her to admit or deny. Plaintiff has no personal knowledge from what time to what time WCJ phone service was available for use.

I declare under penalty of perjury under the laws of the United States that the foregoing answers are true and correct.

Dated: April 1, 2022

8

1    Respectfully submitted.

2

3                                                         */s/ Jane Doe*

4                                                         JANE DOE, Plaintiff in Pro Se

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S RESPONSES TO DEFENDANT FALCONER'S RFAS (SET 1)

**CERTIFICATE OF SERVICE**

I, JANE DOE, declare and say as follows:

I am over the age of eighteen years of age and am a party to this action. I reside in the County of Los Angeles, State of California. My business address is 11151 Valley Blvd #4886, El Monte, CA 91734, in said county and state. My electronic serve address is courtproceeding9@gmail.com.

On April 1, 2022 I electronically served the following document(s):

Plaintiff's Responses to Defendant FALCONER's REQUESTS FOR ADMISSION (Set 1)

Name of person served: Rebecca J. Chmura, Michael L. Wroniak, Justin M. Hazelton, Legal Assistant Services

On behalf of: COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE STICHTER; MARK STICHTER; REYNA RIVERA; DEVONNA FALCONER; KASSANDRA MAYER; ELIA RODRIGUEZ; and RACHEL ADDINGTON

Electronic service address of person served: rchmura@ccmslaw.com, mwroniak@ccmslaw.com, JHazelton@ccmslaw.com, legalservices@ccmslaw.com.


Dated: April 1, 2022


                                        */s/ Jane Doe*

                                        JANE DOE

                                        Plaintiff in Pro Se

PLAINTIFF'S RESPONSES TO DEFENDANT FALCONER'S RFAS (SET 1)