JANE DOE
11151 Valley Blvd #4886,
El Monte, CA 91734

Plaintiff in Pro Se

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JANE DOE,

Plaintiff,

v.

COUNTY OF ORANGE; et al

Defendants.

No. 8:20-cv-00322-JWH-GJS

**DECLARATION OF JANE DOE**

I, Jane Doe, declare and state:

1. I am the plaintiff in this case. I have personal knowledge of the facts stated herein. If called upon as a witness I could and would competently testify thereto. My arrest had nothing to do with weapons or contraband. During my arrest I was pat down searched.

2. S.N., P.T., and M.S. have agreed to testify as to WCJ's practice, condition, and the midnight cell search. They were incarcerated with me during the same time period. My therapists and my friends will testify as to my particular injuries due to incarceration in WCJ.

3. Defendants provided the sketch of the cell I was incarcerated and the drawing shows that some of the beds are just one foot apart. Dkt. 93-1 at pp. 31-34. Title 24 Minimum Standards for Local Detention Facilities, § 1231.2.8 Dormitories, requires a minimum of 70 square feet (7 m2) per inmate for a double-bed unit. §1231.2.9 requires a dayrooms must contain 35 square feet

(3.3 m2) of floor area per inmate in width in front of cells/rooms. According to minimum standards, the dorm area for 40 women should have been at least 2800 square feet and the dayroom should have been at least 1400 square feet. In a cramped space like WCJ, no meaningful indoor activities or stimulation could be achieved. If only 50% of inmates went to the dayroom at the same time on average, each inmate had only 18 sq. ft. space when she was in the dayroom. It caused me no desire to go to the dayroom due to the cramped space. I went to the dayroom only once to make a phone call to bail service.

4. Prior to covid-19, Orange County Jail had been operated over the rated capacity for years. See data from Board of State and Community Corrections. Dkt. 93-1 at p. 101. The overcrowding condition in my cell caused limitation of general movement as well as unnecessary physical and mental pain.

5. According to ACLU's report published in June 2017, under Fed.R.Evid. 803(6), inmates in Orange County Jails were not provided with extra clothing or blankets despite complaining of the temperature. The temperature in the jail was described as "freezing cold." Some claim the jail issued uniforms were filthy or dirty and they never received indigent pack (welfare pack) even after they requested it. Some received retaliation due to filing grievances. A true and correct copy of the excerpt of the report is attached hereto as Exhibit 1.

6. I was taken to WCJ in the morning on Aug 8, 2019. Since the afternoon of Aug 8, 2019 after seeing other inmates eating, I repeatedly asked for food, at least three times, but each of my requests was denied. The first meal I received in WCJ was the breakfast on Aug 9, 2019. I received neither food nor snack for the entire day on Aug 8, 2019.

7. My normal pulse is around 90. However, my pulse dropped to 57 after continuous exposure to extremely low temperature on Aug 8, 2019. Dkt. 93-1 at p. 2. Although I repeatedly announced to the deputies that I was cold to death, I was denied anything to keep warm. I first told a female nurse that I was cold to death then she laughed at me. When I told another deputy that I was cold to death and politely asked for clothing or blanket to keep warm, she yelled "It's JAIL. Don't come to jail next time." Then I told a male nurse that I was cold to death he just completely ignored me. When I was placed on the first floor, I saw other inmates feeling cold as I

did.

8. During a medical screening WCJ staff was aware that I had PTSD and I was raped.

9. I was taken to a room that had two standup shower units with translucent curtain. I observed there was no privacy in that entire room. I asked if I could skip shower and the answer was no. In the presence and view of OCSD personnel and other inmates, I was forced to take off all of my clothing, being completely naked, hand over my clothing to OCSD personnel, walk across the entire room to the shower unit, finish the shower, walk across the entire room when naked, receive jail issued uniform, and get dressed. Simply seeing a group of naked women in that room was traumatic. Let alone I was one of them.

10. After shower I was provided with a dirty bra and I was unable to wear it. At the time I did not know I would be strip searched.

11. Over 12 hours after being taken to WCJ, I was finally provided a toothbrush, toothpaste, soap, mattress, sheets, and a blanket, but no shampoo. I was never informed that if I ran out of hygienic items and could not afford more, WCJ would provide them for free. Instead, I was informed to purchase hygienic items once the first pack was run out.

12. During the first strip search, I was ordered to wear a bra in the hallway in the presence and view of WCJ staff and other inmates without giving an opportunity to use a bathroom. Later during that search I didn't run my fingers through my hair properly so the deputy slapped my head.

13. The second strip search was conducted in a group in the hallway before I went up to a fenced-in roof. It was impossible to make outside contact and the roof was monitored by deputies. Even so, after I spent about 45 minutes on the roof and came down I was subject to another strip search in a group.

14. The fourth strip search was conducted in a group in the hallway before I went to court. After the strip search I was handcuffed and chained up. Then I was taken to court by a bus. The entire process was supervised. Even so, I was subject to another strip search upon arrival of the court. Two strip searches were only minutes apart.

15. During the 4.5 days in WCJ, for seven times during the strip searches in a hallway and

in the presence of other inmates, I had to pull down my underwear, lift up my bloody period pad in my underwear so that WCJ personnel could inspect underneath the pad. While the pad was lifted up I had to twist it in front of WCJ personnel so that it could be inspected if there was anything in the pad. I was not provided with a new period pad or allowed to use the restroom before putting my underwear with the used pad back on.

16. Despite there was no outside contact I could make in the superior court, after the court ordered my release I was still subject to two strip searches in groups on Aug 12, 2019. One was conducted after I arrived at jail from court. The other was right before I was released from WCJ.

17. After I came back from court on Aug 12, 2019 I was placed on the first floor quite some time where it was bone chilling cold.

18. In order to retrieve our own clothing before release, all women waiting for release must take off their jail issued uniforms, including bra and underwear, in the presence and view of WCJ staff and other inmates. Forcing inmates to be completely naked and exposed to each other has no legitimate jail security reason but for humiliation.

19. On Aug 11, 2019, in the early morning after midnight, forty inmates in my cell, were awoken and locked up in the dayroom. While being locked up in the dayroom all inmates' bedding were searched without reasonable suspicion. During the shakedown one deputy loudly announced to all 40 inmates that such searches would continue regularly unless and until all inmates would keep quiet during the day. The deputy went on and declared in a degrading manner that dayroom and phone service would be shut down unless and until all inmates would shut up during the day. Dkt. 93-1 at pp. 4-14. During the day after the midnight shakedown, nobody dared to make a sound.

20. I reviewed all 24hr jail logs provided by OCSD, no contraband or weapon was ever found during the group strip searches. A strip search is allowed only if it is done in a reasonable manner. There has not been a lot of violence at WCJ or a real security reason to explain WCJ's constant strip searches. There was no midnight cell search during the entire discoverable period prior to Plaintiff was detained which can be inferred that midnight search was not common practice in WCJ. Dkt. 93-1 at pp. 4-14, 36-99. I reviewed all training materials provided by the

County but saw nothing related to sleep deprivation, cold temperatures, sound and light, body searches, hygiene products, and/or cell searches. Nor did any of the materials suggest that the training was sufficient. A true and correct copy of Reyna Rivera; Devonna Falconer; Kassandra Mayer; Elia Rodriguez; Rachel Addington's responses to interrogatories related to training and all OCSD's training material is attached hereto as Exhibit 3.

21. The 24hr jail logs show that on multiple occasions when altered razors were found no one was written up a major violation. However, during the midnight cell search on Aug 11, 2019 at issue, three inmates were written up a major violation due to the altered razors which demonstrates that the written violation was an arbitrary decision. Dkt. 93-1 at pp. 4-14, 36-99.

22. I was incarcerated for 4.5 days in WCJ. During the entire time, other than going to court, I was permitted access to the patio only one time for about 45 minutes. I was confined in the cell 24 hours per day, except going to court and patio. Through my communication with other inmates, it never happened that inmates could have three hours of outdoor recreation each week. They told me only one time per week to the patio was allowed.

23. 40 women were incarcerated in my cell each day. The dayroom is within the cell next to the toilet. The was no window in the dorm or dayroom.

24. My clothing was never changed during the entire time when I was in WCJ for 4.5 days. WCJ provided only pads at no charge during my incarceration.

25. I told the jail staff that I needed to change pads because I was on period then they pushed my shoulder to force me to sit down. After being pushed to sit down to cause my blood spilled on my pants, after being laughed at for being cold to death, after being yelled at "This is jail. Don't come to jail next time", after being denied food despite repeated requests, after my head being slapped, I was afraid to complain about anything else. The environment in WCJ was very intimidating.

26. Prior to incarceration, I never had issues in changing period pad. After being released, things are no longer the way they used to be. Simply changing a period pad can easily trigger panic attack or cause extreme anxiety. My therapist suggested me to use diaper to reduce the frequency to change pads.

27. Prior to incarceration, I never had issues in shower. After the first mandatory shower in WCJ in the presence and view of other inmates and deputies I never took another shower in the following 4 days in WCJ. Despite I took a shower in the presence and view of deputies I was still subjected to a strip search even though I had no outside contact after the mandatory shower. After being released, I have to sit on a chair to shower at times. It took me a long time to overcome the fear to take a shower.

28. Prior to incarceration, without the assistance of sleeping aid I had a sleep pattern that I would fall asleep around 11 or 12 o'clock and wake up around 3 or 4 am in the morning. The sleeping aid would help me stay in sleep longer. In WCJ the direct light over my bed was not low-wattage. It was never turned off and bright enough to read a book and made me difficult to fall asleep. Being scared was not the only reason that kept me from sleep. Even after I fell asleep my sleep was constantly interrupted by the flushing noise of the toilet. There was an informal rule to prohibit flushing toilets when any deputy was present because the noise of flushing toilet was extremely loud. Even if 50% of the women used the toilet for only one time after midnight that would be 20 flushes of toilet each night.

29. In Arcadia Mental Health Center I received only one session psychotherapy per month. Each session lasted only one hour. My therapists in Pacific Clinics were shocked that I received only one hour treatment per month due to the intensity of my traumas, even so after I was put on suicide watch.

30. I have been preoccupied with fears of being strip searched again and nightmares of seeing myself dying in jail. Prior to incarceration I stayed in bed about 12 hours per day due to depression. However, after being released I have to stay in bed about 14 to 15 hours per day.

31. In August 2021 when I was at risk being put in jail to experience the trauma all over again, my therapist from Pacific Clinics monitored my suicidal thoughts daily. At my therapist's request, my friend Lixian Lu personally managed my medication to reduce my risk of suicide. Also at my therapist's request, Ms Lu called me every weekend to provide emotional support.

32. Although BSCC may not inspect all problems in WCJ as they conducted only sample check, BSCC's inspection for cycle 2016-2018 indicates overcrowding issues in all OCSD

facilities. The report was directly sent to Mark Stichter on September 26, 2018. Due to covid the physical plants were not inspected for cycle 2018-2020 but BSCC refers to the result of previous cycle. A true and correct copy of the reports, under Fed.R.Evid. 803(6), is attached hereto as Exhibit 2.

33. A true and correct copy of the excerpt of OCSD's department manual is attached hereto as Exhibit 4.

34. On May 11, 2022, I provided my first draft of joint statement of undisputed facts and genuine disputes to defendants when I believed I would receive another draft before defendants finalize it. However, on May 13, 2022 defendants file the motion without giving me a chance to finalize the exhibits. A true and correct copy of the email correspondence is attached hereto as Exhibit 5.

35. A true and correct copy of Plaintiff's Responses to Defendant County of Orange's First Set of Requests for Admission is attached hereto as Exhibit 6.

36. The County admits that a pretrial detainee can be punished. A true and correct copy of the County's response is attached hereto as Exhibit 7.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: 6/3/2022

*/s/ Jane Doe*

Jane Doe

EXHIBIT 1



JUNE 2017

# ORANGE COUNTY JAILS

A REPORT BY THE AMERICAN CIVIL LIBERTIES UNION OF SOUTHERN CALIFORNIA JAILS PROJECT

ACLU
AMERICAN CIVIL LIBERTIES UNION of SOUTHERN CALIFORNIA
FOUNDATION



The authors of this report are Esther Lim, MSW and Daisy Ramirez, MSW.

Contributing authors and researchers: David Colker, Ruth Dawson, Peter Eliasberg, Brendan Hamme, Tasha Hill and Ian Kysel.

Copy editor: Henry Fuhrmann.

Design and layout: isondesign.com

Cover photo credit: Daisy Ramirez, MSW.

We are grateful for the advice of Marcus Benigno, Jessica Farris, Eve Garrow, Michelle Ochoa, Jennie Pasquarella, Jennifer Rojas and Hector Villagra.

Special thanks to Kate Summers.

The Orange County Jails Report is available online at www.aclusocal.org/ocjails

An accompanying executive summary is available online at www.aclusocal.org/ocjails

The ACLU of Southern California works to defend the Bill of Rights and apply them equally to all who live in our society. Our Jails Project works to ensure that a basic standard of care is provided to individuals who are incarcerated through advocacy, public education and litigation.

## PERSONAL ACCOUNTS

### IN-CUSTODY

- Ashley claims that inmates are supposed to receive clean clothing twice a week. However, she complained that the underwear and socks are "never really clean."
- Kyle described the jail uniform as "nasty" and said they were "smelly." He complained that clothing is altered and falling apart.
- Michelle claims the jail clothing is "filthy" and "stinky." She said, "The clothing is so dirty that the whites look like gray."
- Norma claims that the undergarments she received were dirty and that they had stains. She described the T-shirts as "brown because they are so filthy" and said, "The socks have skin in them."

### POST-RELEASE

- Amy claims that the clothing she received was filthy and had holes.
- Brenda claims clothing exchange happens once a week. She described the clothing she received as filthy. Brenda said she had to wear the same underwear for two to three days and had to wash all of her undergarments in the sink.
- Paula claims the uniform shirt she received was "completely torn." She also claims that the underwear she received smelled and looked dirty.
- Julie claims that her uniform was not washed well and was given to her with stains. She rewashed the uniform in the shower.
- Reggie described the clothing he was issued as dirty. He had to rewash it in the sink.
- Sonia claims the clothing she received was thin and dirty. She rewashed her uniform and underwear. She said, "I wonder whether they actually wash the clothes. I wouldn't be surprised if they didn't."
- Tiffany claims that she received ripped socks and had to wash her underwear in her dorm.
- Tracy claims inmates who knew inmate workers were the only ones who got decent clothing.
- Victor claims he and other inmates washed their own uniforms in the sink because they did not trust that they had actually been washed. He said he and others had to wait in "freezing temperatures" until their uniforms dried.
- Amanda claims that she and other inmates were not provided with extra clothing or blankets despite complaining of the temperature. She described the temperature in the jail as "freezing cold."
- Yousef claims that the clothing that was provided to him was inadequate for the temperature in the jail.

### GRIEVANCES

- "Nathaniel reported clothing exchange issues. Not enough correct sizes, forced to wear his used, dirty clothing." (Theo Lacy, 5/24/2012)
- "Francisco states he is only receiving underwear and socks clothing exchange once per week." (Theo Lacy, 5/13/2013)
- "Jared grieved that he did not get clean t-shirts and boxers during clothing exchange." (CMJ, 7/5/2012)
- "Alan claims that the clothing and bedding items issued during clothing exchange are dirty, torn, and 'not even worthy of exchanging.'" (CMJ, 5/28/2012)
- "Kenneth states he was given socks with holes in them. Kenneth also states that 2nd floor housing received ripped clothes and sheets. The clothing and bedding are not repaired." (CMJ, 4/7/2013)

## FINDINGS AND ANALYSIS

- **Jail issued clothing is poorly kept and inadequate for the temperatures in the facilities.**

Several individuals reported that they rewash jail uniforms due to foul odor and stains. According to Title 15 regulations, individuals held after arraignment shall receive climatically appropriate clothing, including (a) clean socks and footwear, (b) clean outer garments, and (c)

## PERSONAL ACCOUNTS

### IN-CUSTODY

- Michelle claims that the hot water dispenser in her housing module does not work. She disclosed that she and other inmates purchase commissary items such as coffee, oatmeal and soup that require hot water. In summer 2016, she submitted an inmate request slip for hot water signed by herself and everyone else in her housing module. According to Michelle, she received a response saying the issue would be fixed, but it was not. Michelle also reported that she purchased glasses from the commissary. When she received them, they were broken. She claims to have submitted multiple complaints but has not received a response.

### POST-RELEASE

- Eric claims that he requested an indigent pack but never received it. He resorted to asking other inmates for general hygiene products like soap and deodorant.
- Gina claims she was provided only with a bar of soap despite requesting a "fish kit" (indigent pack). She complained that other jails provide inmates with deodorant and shampoo.
- Hector did not receive an indigent pack even though he needed one.
- Michael claims that he did not receive an indigent pack.
- Otis claims a deputy told him to put in a request for an indigent pack. Otis claims that he did but never received the pack.
- Vernon claims that he had to ask other inmates for toothpaste and soap because he did not have money on his books and was denied an indigent pack.
- Xavier claims "fish kits" are not provided in the OC jails. He claims that he has never received one.
- Darrell claims that he did not receive an indigent pack. He said another inmate gave him a piece of bar soap to shower.

### GRIEVANCES

- "Khalil had money withdrawn from his account by commissary but did not make an order or receive the items. Confirmed by cashiers." (Theo Lacy, 7/17/2012)
- "Corey is grieving account balance discrepancy from commissary." (Theo Lacy, 5/31/2012)
- "Malcolm complained that Commissary Personnel withdrew eighty dollars from his account. Malcolm did not receive his commissary or his money placed back on his account." (Theo Lacy, 2/9/2012)
- "Israel stated he was missing eight (8) items from the commissary order he received on 8-3-11." (James A. Musick, 8/5/2011)
- "Austin claims he was charged for items he did not receive from Commissary." (CMJ, 12/28/2011)
- "Fidencio is unhappy with the commissary being late or not delivered at all." (CMJ, 12/4/2011)
- "Nestor says he ordered commissary and was charged for the order but he has not received the order." (CMJ, 9/9/2012)
- "Howard is grieving that his inmate account is being charged for welfare packs." (CMJ, 9/8/2011)
- "Sam claims his commissary account balance is incorrect." (CMJ, 6/5/2012)
- "Joe states he ordered commissary for 5/4/2013 and did not receive the order. He states his account was deducted for the 5/4/2013 order." (CMJ, 5/21/2013)
- "Ali claimed he submitted several message slips to Commissary about money being deducted from his commissary account that he did not authorize. On 4-3-2013, he was wrongly charged $49.55 that he wants reimbursed." (CMJ, 5/7/2013)
- "Ivan is claiming that Commissary's new pricing on commissary is price gouging, unethical, and monopolizing." (CMJ, 3/6/2013)

## 2. Grievance/Complaint Process

The grievance process is one of the most significant tools for individuals who are incarcerated. It is intended to provide people with an avenue to file complaints regarding jail conditions as well as potential violations of their rights. People who are incarcerated may file grievances related to any condition of confinement, including but not limited to medical care; classification actions; program participation; telephone, mail and visiting procedures; food, clothing and bedding issues; disability discrimination; and staff misconduct.

According to the Office of Independent Review, established by the Orange County Board of Supervisors in 2008, grievance forms are placed in central locations throughout the jail facilities and are protected from interference by locked boxes.[222] According to department policy, sergeants are responsible for reviewing all submitted grievances and determining the appropriate level at which to handle them. This may include delegation to a

deputy, assignment to another sergeant, forwarding to the facility administrative lieutenant or handling the grievance personally.[223] Currently, the chain of command for the grievance process is as follows: deputy, sergeant, facility administrative lieutenant and division commander.[224]

Unfortunately, most people are reluctant to raise complaints for fear of retaliation from custody staff. Others simply do not trust the process and regard it as more of a formality. Such individuals point to a lack of response to issues raised, while others disclose intimidation tactics employed by staff. According to information obtained via a Public Record Acts request, the total number of grievances filed between 2013 and 2016 was 3,654.[225] Figure 24 illustrates the total number of grievances reported by the department annually from 2013 to 2016. In 2016, the top three types of grievances filed concerned medical (296), food services (102) and commissary (81) (see Figure 25).

**FIGURE 25: Grievance Type, 2016 (OCSD)**



Despite reported changes in 2014, including recording grievances to identify patterns that needed to be addressed and submitting grievance slips in locked boxes available only to supervisors,[226] additional changes are required. Several survey participants reported grave issues with the grievance process.

## PERSONAL ACCOUNTS

### IN-CUSTODY

- Anthony claims that he has submitted several grievances. He maintains that deputies do not always provide him with copies and that responses to grievances often do not have a log number.
- Ashley was "re-Looped" and rehoused for submitting a grievance after her personal information, including phone numbers, addresses and photos of her son, was thrown away during a cell search. Ashley said, "It was retaliation. They sent me to the Loop for a day and rehoused me." According to Ashley, she was not given a copy of her grievance. She claims that a deputy accused her of lying and making false allegations. Ashley shared that she has not submitted a grievance since then because she fears further retaliation.
- James claims complaint forms are inadequate and have little space to detail problems. He was directed by a sergeant to cite only one issue per complaint form. After he requested additional forms, the sergeant warned him that additional complaints may be considered an abuse of the grievance system and could result in a disciplinary violation. He also complained that appeals are rejected when additional pages are attached.
- Janet claims that she submitted a grievance at the end of 2016. Janet disclosed that she wore hair ties on her pants because they fit her loose. A deputy directed her to remove the hair ties, to which Janet complied. Even though she followed the deputy's directive, Janet claims, the deputy continued to press the issue, exclaiming, "Don't you know how to follow the damn rules?" Janet responded, "I got it." According to Janet, the deputy then claimed that she was giving her attitude and began to search her cell. Janet shared that her personal belongings were tossed and scattered on the floor. She requested a grievance slip, and when she attempted to submit it, a male deputy asked her to hand the slip to him. The deputy told Janet that he would place the slip into the locked box for her. She followed the deputy's directive and handed the grievance over. She claims that she stood in place waiting for the deputy to place it in the box. The deputy told her to "go to your cell and lock it down." She expressed that she wanted to make sure the slip was submitted. At this point, Janet could see other deputies walking toward them. Fearing trouble, she followed his orders. As she walked back to her cell, she claims, she turned and saw the deputy reading the grievance. Janet never received a response to the grievance and believes that the deputy discarded it.
- Lily claims that grievance forms are "too hard and dangerous to get." According to Lily, inmates must verbally request slips from deputies. She claims that she once witnessed a deputy yell at an inmate for requesting a grievance. She described the experience as intimidating and threatening and complained that the process "protects deputies."
- Michelle claims an inmate in her housing module was moved to a two-person cell the night she submitted a grievance about lost property. Michelle disclosed that she is afraid to submit grievances because of such retaliation.
- Norma claims that she submitted a grievance when a deputy slammed her face against the wall. She received a response indicating that the incident was being investigated. She complained that obtaining the grievance form was difficult because she had to ask a deputy for it and was asked what she wanted it for. She said, "It's intimidating because you never know how the deputy will react."
- Stephanie claims she had to ask a deputy for a grievance slip to complain about the conditions in the kitchen. She claims that although the complaint was not about a specific deputy, the experience of having to ask the staff for a slip was "uncomfortable and unsafe." She says that this is the reason most people do not submit complaints. She said, "People are discouraged by the process; they're afraid. Wouldn't you be?"

- Theresa claims that she submitted several grievances about deputies and inmates "roughing up people." She maintains she has not received a response.
- Norma reported feeling unsafe in jail. She disclosed that she is treated unfairly and stated, "If I speak up I will have to worry about retaliation and physical abuse ... my cell getting tossed, pictures getting ripped and legal paper thrown."

### POST-RELEASE

- Amy claims that a deputy would not give her a grievance slip. She said, "He just told me there weren't any and that was the end of it."
- Amanda submitted two grievances while in custody. She was not provided with a copy of either complaint and never received a response.
- Carol claims that she did not feel safe submitting a grievance although she wanted to. She said, "They make it so hard that I think the signs are only posted for show."
- Karina claims that she did not submit any complaints because she knew she would be in custody for only a few days. She said, "I knew I was going to be released soon, so I didn't want to draw attention to myself." According to Karina, a lot of people are afraid to engage in the grievance process. She said, "It can make you a target overnight."
- Omar said he did not submit a complaint though he wanted to because, as he said, "There's a clear understanding that if you complain, you will be retaliated against."
- Samuel claims that he did not submit a grievance because he was "too scared to make a move."
- Oscar claims he did not submit a grievance because of fear. He claims that he has witnessed deputies harass inmates for doing so.
- Victor claims that he witnessed a deputy mess with another inmate's belongings after the inmate submitted a complaint. According to Victor, the inmate's letters and commissary were thrown around by the deputy.
- Wesley claims that he did not submit any grievances about problems he encountered while in custody because he does not believe it would change anything. He said, "I don't think it leads to any change. If anything, it brings more problems."
- Walter claims that he does not have faith in the grievance system. He said, "I don't think they take any of this seriously ... best-case scenario I won't be retaliated against."
- Yousef claims that he did not submit a grievance because he believes that the process is a "joke." He said, "Even though we have a right to complain, I rather keep my mouth shut and not get roughed up."

### GRIEVANCES

- "Owen claims he was unfairly moved to a single-man cell by a deputy as reprisal for submitting several grievances in the past." (Theo Lacy, 10/26/2011)
- "Scott alleges he was transferred to TLF in retaliation for a grievance filed at CJX." (Theo Lacy, 7/23/2011)
- "Salvador filed a grievance reference not receiving additional copies of a grievance from 12-6-2011. Salvador needs the copies to file a lawsuit to change his housing location." (Theo Lacy, 12/25/2011)
- "Carson claims he was given a jail write up in retaliation for submitting a grievance." (IRC, 4/12/2012)
- "Tristan wishes to grieve the Grievance Procedure and posting of jail rules in the dayrooms." (IRC, 6/15/2011)
- "Moses states he was not given a copy of two of his grievances given to Sgt. Y earlier in the day." (IRC, 8/13/2011)
- "Donald is grieving jail staff refusal to respond to grievances within a reasonable time." (CMJ, 3/22/2012)
- "Shane claims his housing was moved in retaliation for filing a grievance." (CMJ, 3/15/2012)

EXHIBIT 2

# Codes, Statutes, and other Legal Documents

UNIT 3.0

Orange County Sheriff's Department

Jail Compliance and Training Team

# Legal references

- Code Statutes
- Title 15 Minimum Jail Standards
- Title 24 Jail Facilities
- Penal Code
- Welfare and Institutions Code
- Health and Safety Code

# Legal references

- Case law
- Stewart v. Gates
- CV 75-3075 GLT, Formerly in front of the late District Court Judge William P. Gray; a general conditions lawsuit brought to end overcrowding in the Orange County Jails and was successful in capping the population, bringing an end to overcrowding and floor-sleeping. 24 hours to get a bed for an inmate.

# Legal references

- Case Law
- Scott v. Gates
- CV 84-8647 BG, McGregor v. County of San Bernardino, CV 87-5596 RG, County of Riverside v. McLaughlin, 500 U.S. 44, 111 S.CT. 1661,114 L.Ed.2d 49 (1991). The three cases above were federal class action lawsuits which resulted in a landmark Supreme Court decision which held that arrested persons have the right to prompt judicial determination of probable cause for continued detention.

# Legal references

- Regulations
- Department Policy
- Performance Based National Detention Standards (PBNDS)

# Court Orders

- An order issued by a judge for a specific inmate
- Issued to Sheriff or Police Chief
- Shoes
- Extra issue
- Medical or Mental evaluation
- Privileges such as visits or phone calls
- Release to a program

# Penal Code Sections

- **Assault - PC 240**
  - Elements:
    - Any person who
    - With present ability,
    - Willfully and unlawfully
    - Attempts to use
    - Force or violence
    - On the person of another
  - Classification - Misdemeanor

# Penal Code Sections

- **Battery – PC 242**
  - Elements:
    - Any person who
    - Uses willful and unlawful
    - Force or violence
    - On the person of another
  - Classification - Misdemeanor

# Penal Code Sections

- **Battery on a Custodial Officer - PC 243(c)(1)**
  - Classification - Felony
- **Battery with serious bodily injury – PC 243 (d)**
  - Classification - Felony

# Penal Code Sections

- **Assault with a deadly weapon – PC 245(a)(1)**
  - Elements:
    - Any person who
    - With an unlawful attempt and The present ability
    - To commit violent injury
    - Upon the person of another
    - By use of deadly weapon or instrument Which is not a firearmOr force likely to cause great bodily injury
  - Classification - Felony

# Penal Code Sections

- **Robbery – PC 211**
  - Elements:
    - Taking of personal property of another
    - From a person or their immediate presence
    - Against the person's will
    - Accomplished by means of force or fear
  - Classification - Felony

# Penal Code Sections

- **Theft – PC 484**
  - Elements:
    - Taking the personal property of another
    - Carrying the property away – Asportation
    - Without the person's consent
    - With the intent to permanently deprive the owner of the property
- Classification
    - Misdemeanor $950 and under – PC 488
    - Felony – over $950 – PC 487
    - Felony – certain items – PC 487

# Cite and Release Misdemeanor

- **PC 853.6**
  - Cite and release for many misdemeanor crimes
  - Can be released in the field or booked into jail
- Petty Theft – PC 488
- Assault and Battery – PC 240-242
- Vandalism – PC 594 (less than $400)
- Trespassing – PC 602
- County and City Code Violations

# Cite and Release Misdemeanor

- **PC 853.6**
  - Cannot cite and release for:
    - Violation of domestic violence protective order
    - Refuses to sign citation (includes infractions)
    - Too intoxicated (DUI)
    - Warrants (certain warrants and number of warrants)
    - Likely to continue to occur
    - And other reasons keep updated on this

# Title 15 Minimum Jail Standards for local detention facilities

- Why is it important for you to understand Title 15
- Professionalism
- Retain your career
- Liability
- Risk management
- Assist department to be in compliance (leadership)

# Facility Types

- "Type I facility" means a local detention facility used for the detention of persons for not more than 96 hours excluding holidays after booking. Such a Type I facility may also detain persons on court order either for their own safekeeping or sentenced to a city jail as an inmate worker, and may house inmate workers sentenced to the county jail provided such placement in the facility is made on a voluntary basis on the part of the inmate.

# Facility Types

- "Type II facility" means a local detention facility used for the detention of persons pending arraignment, during trial, and upon a sentence of commitment.

- "Type III facility" means a local detention facility used only for the detention of convicted and sentenced persons.

# Facility Types

- "Type IV facility" means a local detention facility or portion thereof designated for the housing of inmates eligible under Penal Code Section 1208 for work/education furlough and/or other programs involving inmate access into the community.

# Title 15 Minimum Jail Standards

- Use Title 15 as a resource when you need to for:
  - Training
  - Fire Life Safety
  - Population Accounting (counts)
  - Records and Public Information
  - Death in Custody
  - Classification
  - Segregation (Ad-seg, PC, Pro-per)

# Title 15 Minimum Jail Standards

- Inmate Programs and Services
- Education
- Correspondence
- Library
- Law Library (limited access)
- Exercise and Recreation
- Dayroom with showers
- Outdoor
- Books and other written material
- Access to Telephone

# Title 15 Minimum Jail Standards

- Inmate Orientation
- Individual and Family Services
- Voting
- Religious Observances
- Inmate Grievance Procedures
- Inmate Discipline (Minor and Major)
- Minors in Jails, Temporary Custody, and Court Holding
- Medical and Mental Health
- Food Services (1 hot meal per day)

# Title 15 Minimum Jail Standards

- Inmate Clothing and Hygiene
- Clothing Exchange
- Personal Care Items
- Showering
- Vermin Control
- Hair Care Services
- Bedding and Exchange
- Facility Sanitation and Security

# Title 15 Minimum Jail Standards

- If you do not know, look it up in Title 15.
- Department Policy Manual should be consistent with minimum
- Departments tend to exceed minimum

# Legal Source

- Case Law
- Chaidez v. County of Orange
- CV 77-2611 RMT, (" Naked Women") Federal class action lawsuit on behalf of prisoners in the Orange County Women's Jail which established privacy for women prisoners, the end to strip searches in front of male guards, and mass stripping of women prisoners as punishment.

# Legal Source

- Case Law
- Hughes v. County of Orange
- CV 77-0633 PAR Federal class action litigation on behalf of prisoners of the Orange County Jail which resulted in the end of the "disciplinary diet" ("dog food").

# Legal Source

- Case Law
- Arreguin v. Gates
- CV 88-6128 WPG, Federal class action mental health care lawsuit which resulted in severe restrictions on use of rubber rooms/safety cells in the Orange County Jail.

# Legal Source

- Case Law
- Pierce v. County of Orange
- SACV 01-981 GLT ( MLGx), Stewart v. Gates orders, consolidation of and revisions of these matters, also addressing Americans with Disabilities Act in all of the jails.

# Crimes inside detention facilities

- Some crimes that occur inside the facilities:
- Assaults (PC 240-242)
- Major Assaults (PC 245)
- Murder (PC 187)
- Rape (PC 261) (PREA)
- Sodomy (PC 288) (PREA)
- Narcotic Violations (H&S 11350 and PC 4573)
- Theft (PC 484)
- Burglary (PC 459)
- Vandalism (PC 594)

# Crimes inside detention facilities

- Crimes that occur inside the facilities:
- Must be safely investigated
- Safety of all involved is a primary concern
- Victims protected (Protective Custody)
- Jail Rules can still apply (no double jeopardy)
- General searches in a detention facility do not need a warrant (Medical Exceptions)
- Strip searches need permission BEFORE conducted
- Body cavity needs warrant and medically approved

# COBSCC

## Correction Officer Basic Supplemental Core Course

## Unit 13.3-13.9
## Supervising Inmates

OC0328

# Supervising Inmates

WELCOME TO THE
ORANGE COUNTY SHERIFF'S DEPARTMENT

INMATE SUPERVISION MODELS

- DIRECT OR INDIRECT SUPERVISION?
  - WHAT ARE THE ADVANTAGES OR DISADVANTAGES?

## INMATE MOVEMENT

## INMATE MOVEMENT

### Important Considerations:

- Classification of inmate(s) being moved
  - (e.g., PC, assaultive, white band vs. orange band, etc.)
- Knowledge of housing layout
  - Understanding of routes from point A to point B, doorways, blind spots, doors that require keying by staff, elevators, etc.

**Why is this information essential in escorting inmates within the facility?**

Provides important information affecting decision making, such as:

- Where a person is housed (Classification) indicates security risks/concerns
- Can inmates can be moved in groups vs. individually?
  - How will we maintain order/separate inmates?
- Restraints needed
- Number of staff needed vs. how many officers are available
- What communication is needed between areas in the facility?
  - Will inmate movement in other areas be affected?
- What are the time requirements?

## INMATE MOVEMENT

### Procedure:

- Determine the destination
- Identify the security risks (Classification, Number of inmates, Reason for movement, route, restraints, personnel, etc.)
- Determine if individual or mass movement is appropriate, based on all available information (Number of inmates)
- Account for all inmates (Count and Identify each inmate before movement)
- Secure the area (including starting location, the route to be taken, and end location as appropriate)
- Communicate within the facility regarding movement (e.g. advising destination guard station, areas along route, radio communication, etc.)
- Give instructions to inmates (Face forward, no talking, etc.)
- Escort inmates (walk behind inmates, use distance and tactical positioning, keep group together, watch for potential security issues or problems along the route)
- When using the escalator, always maintain the high ground over those being escorted
- Account for all inmates before, during and after movement (Count and Identify all inmates)

## INMATE MOVEMENT

A ← → B

MOVING INMATE(S) WITHIN THE FACILITY

BREAK INTO GROUPS AND DISCUSS MOVING INMATES IN THE FOLLOWING SCENARIOS:

1. Moving a protective custody inmate (sex offender/high profile case) from Module housing to the booking loop
2. Moving several white band inmates (low level) from a barrack housing to the chow hall
3. Moving an administrative segregation (AD SEG) inmate (highly assaultive to staff, 187 charges) from Module housing to disciplinary isolation

Identify all of the considerations outlined in the previous slide

## INMATE MOVEMENT

WHAT ARE THE CONSEQUENCES OF FAILING TO MOVE AN INMATE SAFELY?

- LOSS OF OFFICER CREDIBILITY
  - INMATES ACCUSE STAFF OF FAILING TO ENSURE THEIR SAFETY. ACCUSATIONS BY INMATES OF "SETTING THEM UP"
- LOSS OF INMATE DISCIPLINE
- PASSING CONTRABAND OR INFORMATION
- RIOT
- ESCAPE
- INJURY OR DEATH

## INMATE MOVEMENT

SUPERVISING ROLL-UP

NECESSARY STEPS:

- IMMEDIATE ENFORCEMENT OF THE ORDER
- VERIFY IDENTITY OF INMATE
- RECORD ACTION IN THE LOG
- HAVE INMATE CLEAN THE AREA
- HAVE THE INMATE RETRIEVE JAIL ISSUED ITEMS

## SUPERVISING MEALS

## SUPERVISING MEALS

### CHOW HALL

WHAT ARE YOUR BASIC DUTIES?

- ENSURE APPROPRIATE SEATING
- ENSURE SECURITY
- RESPOND QUICKLY TO PROBLEMS
- TRAYS, UTENSILS AND FOOD ARE ACCOUNTED FOR AND LEFT IN CHOW HALL
- ENSURE ALL INMATES HAVE CHANCE TO EAT

Title 15. 1240:
A minimum of fifteen minutes shall be allowed for the actual consumption of each meal except for those inmates on medical diets where the responsible physician has prescribed additional time.

CCOM 1604.1 Inmate Rights:
A minimum of fifteen (15) minutes shall be allowed for the actual consumption of each meal (Minimum Jail Standards, Title 15, Section 1240). The diet will be wholesome, properly prepared, and nutritionally adequate.

## SUPERVISING MEALS

RELEASING INMATES FOR MEALS:

- WHAT ARE SOME SECURITY ISSUES WHEN INMATE ARE RELEASED TO AND FROM MEALS?
- WHAT CAN WE DO TO MINIMIZE RISK?

KEYS TO MAINTAINING CONTROL:

- TIMED RELEASE OF SMALL GROUPS OF INMATES
- ENSURE ALL INMATES FROM EACH MODULE OR HOUSING AREA ARE ACCOUNTED FOR DURING MEALS

SAFETY CONSIDERATIONS:

- CONSIDER TACTICAL POSITIONS IN RELATION TO INMATES, OTHER PERSONNEL AND BUILDING LAYOUT (WALLS, DOORS, ESCAPE ROUTES)
- BE AWARE OF POTENTIAL FOR ASSAULTS THROUGH CELL HATCHES

## SUPERVISING MEALS

GROUP DISCUSSION

LIST INMATE BEHAVIORS THAT MAY INDICATE SIGNS OF AN IMPENDING DISTURBANCE:

- ANGER
- ARGUMENTS
- QUICK MOVEMENTS
- PASSING ITEMS
- THROWING ITEMS
- UNUSUAL CONGREGATION OF GROUPS AND CLIQUES

## SUPERVISING MEALS

GROUP DISCUSSION

LIST SECURITY ISSUES/PROBLEMS WITH INMATES IN A CHOW HALL:

- FIGHTS
- INMATES PREVENTING OTHER INMATES FROM EATING
- STEALING FOOD
- PASSING / RECEIVING CONTRABAND
- DIVERSION FOR ESCAPE OR ASSAULT
- LARGER NUMBERS OF INMATES
- ACCESS TO UTENSILS/TRAYS

## CALL IT OUT!

- YOU ARE WORKING MOD M AT THEO LACY WHEN DEPUTIES PERFORM AS FAST SEARCH

7/29/2019

CALL IT OUT!

CALL IT OUT!

CALL IT OUT!

6

OC0334

SUPERVISING CLEANING

CLEANING OF CELLS

**MUST INMATES KEEP THEIR CELLS CLEAN?**

***YES***

- INMATES MUST KEEP THEIR QUARTERS AND SURROUNDINGS NEAT, CLEAN AND SANITARY. INMATES MAY NOT ALTER THEIR QUARTERS OR EQUIPMENT WITHOUT SPECIFIC AUTHORIZATION TO DO SO. (TITLE 15)

SUPERVISING CLEANING

CLEANING CHEMICALS (OFTEN CAUSTIC) OR SUPPLIES CAN BE USED AS A WEAPON AGAINST US, OTHER INMATES, OR AS A MEANS FOR INMATES TO HARM THEMSELVES.

SUPERVISING CLEANING

CLEANING OF CELLS AND DORMS

IDENTIFY OUR RESPONSIBILITIES WHEN SUPERVISING INMATES CLEANING THEIR CELLS AND COMMON AREAS:

- ENSURE EQUITABLE DISTRIBUTION OF WORK
- MAINTAIN CONTROL OVER SUPPLIES
- ENSURE PROPERTY IS NOT STOLEN
- PREVENT PASSING OF CONTRABAND
- PREVENT SUICIDAL PERSONS FROM OBTAINING CLEANING SUPPLIES

## SUPERVISING CLEANING

POTENTIAL DANGERS TO STAFF AND INMATES FROM CLEANING SUPPLIES:

- Cleaning tools can be fashioned into weapons
- Cleaning chemicals can be consumed
- Inmates cover cell floor with cleaning supply to cause deputies to slip upon entry

## SUPERVISING RECREATION

**WHAT ARE THE LEGAL REQUIREMENTS FOR RECREATION?**

...IN AN AREA DESIGNED FOR RECREATION, WHICH WILL ALLOW A ***MINIMUM OF THREE HOURS*** OF EXERCISE DISTRIBUTED OVER A PERIOD OF ***SEVEN DAYS***. (TITLE 15, 1065)

FRESH AIR AND NATURAL LIGHT EXPOSURE ARE REQUIRED TO BE CONSIDERED "OUTDOOR RECREATION"

## SUPERVISING RECREATION

**WHAT ARE POTENTIAL SAFETY AND SECURITY HAZARDS REGARDING RECREATION TIME?**

- OPPORTUNITIES FOR ESCAPE
- PASSING CONTRABAND OVER THE FENCE
- ROUGH HOUSING THAT DEVELOPS/ESCALATES INTO FIGHTS
- ASSAULTS

## SUPERVISING RECREATION

**What precautions can we use to minimize the safety and security hazards that can occur during recreation time?**

- Ensure proper security and classification restrictions are enforced (same security classifications together)
- Close control over level of activity
- Strict enforcement of time schedule
- Breaking up unusual groupings
- Searching area before and after using

## SUPERVISING USE OF THE TELEPHONE

**What are the legal requirements for allowing inmates to use the telephone?**

The inmates must have reasonable access to telephones... (Title 15, 1067)

Sample policy:

CCOM 1904 - Inmate Telephone Calls

Inmates confined in any Jail Operations facility will have access to telephones in order to maintain community and family ties and communicate with legal representatives or the courts.

## SUPERVISING USE OF THE TELEPHONE

**List the issues that can arise when inmates use the telephone:**

- One person or group monopolizing phone
- Making obscene or threatening phone calls
- Court order violation
- Property damage to phones
- Used as a weapon

DISTURBANCES & DISPUTES

Where do 99% of the inmate dispute/disturbances originate from?

DISTURBANCES & DISPUTES

MINOR DISTURBANCES
- HORSEPLAY

**WHAT ARE THE CONSEQUENCES OF INMATE HORSEPLAY?**

- ACCIDENTAL INJURY
- RUSE OR DISTRACTION
- ESCALATION TO A REAL FIGHT

DISTURBANCES & DISPUTES

**WHAT QUALIFIES AS A MAJOR DISTURBANCE?**

## DISTURBANCES & DISPUTES

RESPONDING TO A MAJOR INCIDENT

- TIME DISCRETIONARY
- NON-TIME DISCRETIONARY

GIVE AN EXAMPLE OF EACH TYPE

SCENARIOS:

1. INMATE WON'T LOCK IT DOWN. NO OTHER INMATES INVOLVED. IS NOT A THREAT TO HIMSELF.
2. INMATE IS TYING A SHEET AROUND HIS NECK AND THE OTHER END TO HIS BARS.

## DISTURBANCES & DISPUTES

## DISTURBANCES & DISPUTES

LIST THE SIGNS OF A POTENTIAL DISTURBANCE:

- GATHERINGS
- DIVERSIONARY TACTICS
- RISING NOISE LEVELS
- UNUSUALLY QUIET
- INMATE ATTENTION FOCUSED ON DEPUTY/OFFICER
- INMATES AFRAID TO LEAVE BUNK OR GO TO MEAL
- UNUSUAL REQUESTS
- UNUSUAL LEVEL OF DAMAGE TO PROPERTY
- HOARDING OF COMMISSARY GOODS
- GANG INMATE SUBCULTURE AFFILIATION

## DISTURBANCES & DISPUTES

INVESTIGATING A DISTURBANCE

**WHAT ARE SECURITY CONSIDERATIONS BEFORE AND WHILE INVESTIGATING A DISTURBANCE?**

- ASSESS TYPE OF DISTURBANCE
- DON'T RUSH IN BEFORE FORMING A PLAN
- INFORM OTHER OFFICERS/DEPUTIES BEFORE GOING IN
- HAVE SUFFICIENT HELP OR BACK-UP READY
  - KNOW WHEN TO REQUEST BACK
  - KNOW WHERE RESPONDING OFFICERS WILL BE COMING FROM
- SAFETY AND SECURITY ARE FIRST PRIORITIES

## DISTURBANCES & DISPUTES

YOU NOTICE A RISE IN NOISE LEVEL WHILE A GROUP OF INMATES ARE USING DAYROOM. YOU DECIDE TO CHECK IT OUT. WHAT ARE SOME PRECAUTIONS THAT MAY PREVENT A DISPUTE FROM ESCALATING TO A MAJOR DISTURBANCE?

- DO YOU HAVE/NEED BACK-UP?
- BE AWARE OF RECENT INCIDENTS IN YOUR TANK/MODULE
- BE AWARE OF POSSIBLE SET-UP
- STAY CALM
- DON'T TAKE SIDES
- DON'T PHYSICALLY TOUCH SOMEONE UNLESS APPLYING RESTRAINTS OR STOPPING PHYSICAL INJURY
- INVESTIGATE POSSIBLE RESOLUTIONS TO MITIGATE FUTURE PROBLEMS

## DISTURBANCES & DISPUTES

RATE THESE DISPUTE INTERVENTION TACTICS IN LEVEL OF SEVERITY:

1. Verbal Command
2. Isolate
3. Separate

Most

Isolate

Separate

Verbal Command

Least

OC0340

DISTURBANCES & DISPUTES

Theo Lacy Assault on Staff

Forced medication

Refusal to lock down – Mental Mod

Cell extraction – Inmate with weapon

DISTURBANCES & DISPUTES

ASSAULTS ON STAFF

**HOW DO NON-SWORN STAFF COMPLICATE SECURITY WHEN CONTACTING INMATES?**

DISTURBANCES & DISPUTES

**WHAT ARE THE POTENTIAL CONSEQUENCES OF FAILING TO PROPERLY INVESTIGATING A DISTURBANCE?**

- DAMAGE TO THE FACILITY
- INJURY TO INMATES OR STAFF MEMBERS
- ESCAPE
- LEGAL LIABILITY (DEPRAVED INDIFFERENCE)

## DISTURBANCES & DISPUTES

*DEPRAVED INDIFFERENCE (CRIMINAL NEGLIGENCE) DEFINED:*

CONDUCT SO WANTON, SO DEFICIENT IN A MORAL SENSE OF CONCERN, SO LACKING IN REGARD FOR THE LIFE OR LIVES OF OTHERS, AND SO BLAMEWORTHY AS TO WARRANT THE SAME CRIMINAL LIABILITY AS THAT WHICH THE LAW IMPOSES UPON A PERSON WHO INTENTIONALLY CAUSES A CRIME.

CRIMINALLY NEGLIGENT MANSLAUGHTER OCCURS WHERE THERE IS AN OMISSION TO ACT WHEN THERE IS A DUTY TO DO SO, OR A FAILURE TO PERFORM A DUTY OWED, WHICH LEADS TO A DEATH. IN MANY JURISDICTIONS SUCH AS CALIFORNIA, MALICE MAY BE FOUND IF GROSS NEGLIGENCE AMOUNTS TO WILLFUL OR DEPRAVED INDIFFERENCE TO HUMAN LIFE. IN SUCH A CASE, THE WRONGDOER MAY BE GUILTY OF SECOND DEGREE MURDER.

## DISTURBANCES & DISPUTES

DELIBERATE INDIFFERENCE?

YOU DECIDE…

## DISTURBANCES & DISPUTES

**GASSING:**

(A) EVERY PERSON CONFINED IN THE STATE PRISON WHO COMMITS A BATTERY BY GASSING UPON THE PERSON OF ANY PEACE OFFICER, OR EMPLOYEE OF THE STATE PRISON IS GUILTY OF AGGRAVATED BATTERY AND SHALL BE PUNISHED BY IMPRISONMENT IN A COUNTY JAIL OR BY IMPRISONMENT IN THE STATE PRISON FOR TWO, THREE, OR FOUR YEARS.

(B) FOR PURPOSES OF THIS SECTION, "GASSING" MEANS INTENTIONALLY PLACING OR THROWING, OR CAUSING TO BE PLACED OR THROWN, UPON THE PERSON OF ANOTHER, ANY HUMAN EXCREMENT OR OTHER BODILY FLUIDS OR BODILY SUBSTANCES OR ANY MIXTURE CONTAINING HUMAN EXCREMENT OR OTHER BODILY FLUIDS OR BODILY SUBSTANCES THAT RESULTS IN ACTUAL CONTACT WITH THE PERSON'S SKIN OR MEMBRANES. (CPC 4501.1)

## INMATE MANIPULATION

AN INMATE'S ATTEMPT TO MANIPULATE A STAFF MEMBER IS NATURAL BEHAVIOR FOR INMATES.

THE RULES THEMSELVES ARE AS ONLY AS POWERFUL/MEANINGFUL AS THE STAFF MEMBER WHO ENFORCES THEM.

Games Criminals Play
By: Bud Allen

## INMATE MANIPULATION

TARGET SELECTION STRATEGY:

THE SET-UP GAME (3 STEP PROCESS)

Observation → Selection → Testing/Fishing

## INMATE MANIPULATION

THE SET-UP STEP 1: OBSERVATION (INTEL GATHERING)

Visual → Listening → Verbal → Action

**Body Language**
- Body movements
- Nervousness/ease
- Manner of dress
- Confidence
- Ego

**Information**
- Likes/dislikes
- Personal data
- Personal history
- View of job
- View of self
- Hobbies

**Bull Session**
- Confirm listening obs
- Gather more info
- Suggestion of rule violation

**Violate minor rule**
- Test bull session theory

INMATE MANIPULATION

The Set-up Step 2: Victim Selection (Pegging the Victim)

Victim Selection

1. THE NAÏVE
2. THE OVER-FAMILIAR/EXCESSIVELY FRIENDLY
3. THE UNPROFESSIONAL/DISGRUNTLED

**GROUPS:**

**BREAK INTO 3 GROUPS. EACH GROUP SELECT ONE OF THE VICTIM PROFILES ABOVE AND CREATE A PROFILE OF THIS TYPE OF PERSON.**

INMATE MANIPULATION

**NAIVETY**
- LACK OF EXPERIENCE
- GULLIBILITY
- TRUSTING NATURE
- WEAKNESS

**OVER-FAMILIARIZATION**
- EXCESSIVE FRIENDLINESS
- TALKS ABOUT PERSONAL ISSUES
- IDENTIFIES WITH INMATE
- FIRST NAME BASIS

INMATE MANIPULATION

**UNPROFESSIONALISM**
- POOR PERSONAL APPEARANCE
- DISCUSSING INAPPROPRIATE SUBJECTS IN FRONT OF INMATES
- CHRONIC COMPLAINING
- MAKING EXCUSES
- INAPPROPRIATE CONDUCT
- POOR SECURITY HABITS
- ABUSE OF SICK LEAVE
- DISREGARD OF JAIL RULES AND ENFORCEMENT OF RULES

## INMATE MANIPULATION

The Set-up Step 3: Testing of limits/Fish Testing
(Sinking in the hook)



1. Test of Limits (paced)
   - Constant nudge of rules
   - Test tolerance levels
   - Test personality characteristics
     - i.e., Can you refuse?
   - Testing becomes serious
2. Fish Testing
   - Asking for things not supposed to be given
   - *Persistence*

## INMATE MANIPULATION

**Tools of the Set-up**

**Poor-me Game**

- Empathy
  - Sharing similar problems
  - Understanding
  - The you/me syndrome
  - Pegging emotions
- Sympathy
  - Sameness of feelings
  - Victim's response to pity
  - Level of compassion




## INMATE MANIPULATION

**Tools of the Set-up:**

**The Support System**

- Ego Uplifting
  - You're the best
  - Pledge of faith & devotion
  - Strengthening the friendship
- Rely on the inmate to make job easier
  - Developing trust
  - The indispensable inmate

## INMATE MANIPULATION

MANIPULATION TOOLS OR GAMES CONT'D:

**THE WE/THEY SYNDROME**

- SPLIT VICTIM FROM STAFF
  - THEY DON'T UNDERSTAND YOU, BUT WE DO
  - THEY'RE WRONG ABOUT YOU
  - THEY'RE TREATING YOU LIKE THEY TREAT US
  - I'M OKAY, YOU'RE OKAY; THEY'RE NOT OKAY
- SIMILAR BACKGROUNDS
  - ETHNIC
  - NEIGHBORHOOD
  - CIRCUMSTANCES SIMILAR

## INMATE MANIPULATION

Los Angeles Ti

Federal prison guard in San Diego accused of

March 18, 2011
A guard at the federal prison in downtown San
on suspicion of having sex with an inmate offi

Brandon McKinney, 34, a guard at the Metropolit
accused of having sex with a female inmate wh
2010.

McKinney is charged with sexual abuse of a w
maximum 15 years in prison. Federal Magistra
Friday ordered McKinney held in custody unt

White Supremacist Jail Inmate: Black Orange County Sheriff's Deputy Gave Me An STD!

## INMATE MANIPULATION

MANIPULATION TOOLS OR GAMES CONT'D:

**THE TOUCH GAME**

- IF VICTIM IS FEMALE: SUBTLE GESTURES
  - FLICK OF DUST OFF CLOTHING
  - PAT OR SLIGHT RUB ON THE BACK
  - PROLONGATION
  - THE ACCIDENT
- IF VICTIM IS MALE: FORM BOND
  - HANDSHAKE
  - FRIENDLY NUDGE
  - SLAP ON THE BACK

## INMATE MANIPULATION

**Manipulation tools or games cont'd:**

**The Lever**

- The Lever is created when anything is inappropriately (real or imagined) obtained during the Set-up process.
  - Ignoring rule violation
  - Giving extra food or commissary
  - Doing "little favors" for inmate
  - Major violation of rules/criminal
- Application of the Lever
  - Psychological threats
  - Coercion
  - "You owe me"

## INMATE MANIPULATION

**Final stage and the inmate's reason for manipulation:**

**The Turn-out**

- Contraband or favor demanded
  - Coercion is used
  - Sales pitch – "one-time only" ploy
  - Drugs, alcohol, money, sex is demanded
  - Major violation of rules/criminal
- Application of the Lever
  - Risk disciplinary action
  - No turning back/desperation sets in

## PROTECTORS

1. Be a pro
   - Understand the definition of a professional and strive to be one.
2. Nip it in the bud
   - Recognize the set-up and take proper action.
3. Read between the lines
   - Messages (conversation) sent and received in jail may have a completely different meaning than in the free world.
4. Say "No" and mean it
   - There should be no ambiguity when you say no to an inappropriate request.

## PROTECTORS

5. Know the rules and regulations
   - Know what inmates are and are not entitled to.
6. Know who you are dealing with
   - Look at the inmate's classification or incarceration history.
7. Don't go it alone
   - If you suspect you are being cultivated as a victim, tell your supervisor immediately.
8. Document jail rule violations
   - Write a disciplinary report when the inmate requests or action is an obvious violation of the rules.

## PROTECTORS

9. Re-classification?
   - Is the inmate displaying a level of criminal sophistication that requires they be reclassified?
10. "Danger Will Robinson!"
   - If an inmate presents you with a shopping list, you will be alone with that inmate.
   - An outright refusal may make the inmate revert to force.
   - Buy time: "Let me think about it…I'll see you in a hour or so and we'll talk about it again." – Report incident to supervisor immediately.

## INMATE MANIPULATION

**Scenario 1**

An inmate of the opposite sex said, "I think you are hot/beautiful."

Inmates who are bold enough to make this statement are usually strongly egocentric. A "thank you" remark in the free world might be appropriate, but in jail, inmates may construe the reply to mean: she/he likes the attention and wants me to continue.

## INMATE MANIPULATION

**SCENARIO 2**

AN INMATE OF THE OPPOSITE SEX LEAVES A LOVE NOTE TO A STAFF MEMBER ON A INMATE MESSAGE SLIP.

THE STAFF MEMBER THROWS THE NOTE AWAY AND SAYS NOTHING.

WHAT IS THE APPROPRIATE RESPONSE?

HOW CAN THE STAFF MEMBER'S SILENCE BE INTERPRETED BY THE INMATE?

## INMATE MANIPULATION

**SCENARIO 3**

AN INMATE TELLS YOU HE HAS HAD A DEATH IN THE FAMILY AND IS CONCERNED IF HE PUTS HIS LETTER THROUGH THE INMATE MAIL SYSTEM, IT MIGHT NOT REACH HIS FAMILY ON TIME. HE ASKS YOU TO TAKE HIS LETTER AND DROP IT IN THE MAIL ON YOUR WAY HOME.

IS THE INMATE ACTUALLY WORRIED ABOUT HIS FAMILY OR IS HE TESTING YOUR ADHERENCE TO SECURITY PROTOCOL? CAN YOU HELP THIS INMATE WITHOUT BEING CAUGHT IN A STING?

## INMATE MANIPULATION

**SCENARIO 4**

AN INMATE APPEARS DISTRESSED. HE TELLS YOU HE AND HIS WIFE ARE HAVING PROBLEMS AS WELL AS FINANCIAL DIFFICULTIES. HE ASKS YOU HOW YOU HANDLE THESE TYPES OF PROBLEMS.

THE STAFF MEMBER DISCUSSED HIS PERSONAL STORY OF HOW HE AND HIS WIFE MADE IT THROUGH TOUGH TIMES. THE STAFF MEMBER THOUGHT HE COULD CONTROL HIS AREA BETTER IF HE BUILT A POSITIVE REPORT WITH IS INMATES.

THE INMATE MIGHT BE USING WHAT TOOL TO SET-UP THE STAFF MEMBER?

## INMATE MANIPULATION

DOES YOUR DEPARTMENT HAVE A POLICY ON REPORTING AN INMATE WHO ATTEMPTS TO MANIPULATE A STAFF MEMBER?

HOW TO RESPOND TO A SET-UP/ATTEMPT AT MANIPULATION

- NOTIFY SUPERVISOR
- DOCUMENT INCIDENT
- FORMAL DISCIPLINE FOR INMATE
- EXPECT BACKLASH FROM INMATES

Scenario: You receive a gift from an inmate in the mail at you residence address. How do you handle this? What are the safety/security concerns?

## PROGRESSIVE DISCIPLINE

**WHAT IS THE PURPOSE OF PROGRESSIVE DISCIPLINE?**

TO IMPROVE OR MODIFY INMATE BEHAVIOR BY JUDICIOUS PENAL METHODS.

**PUNISHMENT CANNOT BE?**

IN VIOLATION OF THE 8TH AMENDMENT: CRUEL AND UNUSUAL PUNISHMENT

## PROGRESSIVE DISCIPLINE

MINOR VIOLATION

- DOCUMENTED IN SDS
- ASSIGNMENT TO AN EXTRA WORK DETAIL
- REMOVAL FROM A WORK ASSIGNMENT WITHOUT LOSS OF WORK TIME CREDIT
- ACCESS TO TELEVISION
- TELEPHONES, OR
- COMMISSARY, OR
- LOCKDOWN FOR LESS THAN 24 HOURS

MAJOR VIOLATION

- DOCUMENTED IN SDS AND A REPORT
- LOSS OF GOOD TIME/WORK TIME
- PLACEMENT IN DISCIPLINARY ISOLATION
- DISCIPLINARY ISOLATION DIET, OR
- LOSS OF PRIVILEGES MANDATED BY REGULATIONS

## PROGRESSIVE DISCIPLINE

TITLE 15, 1081(C)

MAJOR VIOLATIONS OR REPETITIVE MINOR ACTS OF NON-CONFORMANCE OR REPETITIVE MINOR VIOLATIONS OF INSTITUTIONAL RULES *SHALL BE*

- REPORTED IN WRITING BY THE STAFF MEMBER OBSERVING THE ACT AND SUBMITTED TO THE DISCIPLINARY OFFICER.
- THE INMATE SHALL BE INFORMED OF THE CHARGE(S) IN WRITING.
- THE CONSEQUENCES OF A MAJOR VIOLATION MAY INCLUDE, BUT ARE NOT LIMITED TO:
  - LOSS OF GOOD TIME/WORK TIME
  - PLACEMENT IN DISCIPLINARY ISOLATION
  - DISCIPLINARY ISOLATION DIET, OR
  - LOSS OF PRIVILEGES MANDATED BY REGULATIONS

## PROGRESSIVE DISCIPLINE

MAJOR VIOLATIONS CONT'D

- INMATES HAVE A 24 HOUR PERIOD TO PREPARE FOR DISCIPLINARY HEARING.
- THE INMATE MAY WAIVE THE 24-HOUR LIMITATION.
- A VIOLATION(S) SHALL BE ACTED ON NO LATER THAN 72 HOURS AFTER AN INMATE HAS BEEN INFORMED OF THE CHARGE(S) IN WRITING.
- THE INMATE SHALL BE ADVISED OF THE ACTION TAKEN BY THE DISCIPLINARY OFFICER BY A COPY OF THE RECORD.

## PROGRESSIVE DISCIPLINE

## PROGRESSIVE DISCIPLINE

**Limitations on Disciplinary Actions (Title 15, 1083, (A - G))**

- Disciplinary isolation for a maximum of 10 days per violation, and cannot exceed a period of 30 consecutive days.
- Occupants of the disciplinary isolation cells shall be issued clothing and bedding ... shall not be deprived of them through any portion of the day except that those inmates who engage in the destruction of bedding or clothing may be deprived of such articles. The decision to deprive inmates of such articles of clothing or bedding shall be reviewed by the facility manager or designee during each 24 hour period.

## PROGRESSIVE DISCIPLINE

**Limitations on Disciplinary Actions (Title 15, 1083, (A - G))**

- Penal Code section 4019.5 expressly prohibits the delegation of authority to any inmate or group of inmates to exercise the right of punishment over any other inmate or group of inmates. (E.G., Accusation in Chamberlin Death)
- In no case shall a safety cell, as specified in Title 24, 470A.2.5, or any restraint device be used for disciplinary purposes.
- No inmate may be deprived personal hygiene items.
- Food shall not be withheld as a disciplinary measure.
- The disciplinary isolation diet (Dis-Iso meatloaf) shall only be utilized for major violations of institutional rules. (OCSD does not utilize the Dis-Iso diet).

## PROGRESSIVE DISCIPLINE

**Staff violation of the Title 15 mandates on inmate discipline is also violation of what Constitutional Amendment?**

The 8th Amendment: Cruel and Unusual Punishment

## INMATE GRIEVANCE (TITLE 15 1073)

- ANY INMATE MAY APPEAL AND HAVE RESOLVED GRIEVANCES RELATING TO ANY CONDITIONS OF CONFINEMENT, INCLUDED BUT NOT LIMITED TO:
  - MEDICAL CARE;
  - CLASSIFICATION ACTIONS;
  - DISCIPLINARY ACTIONS;
  - PROGRAM PARTICIPATION;
  - TELEPHONE,
  - ...L, AND
  - ...PROC...ES, A...
  - ...OOD...
  - ...HING, AND
  - ...DDING.

Anyt... ...ed

## INMATE GRIEVANCE (TITLE 15 1073)

An inmate grievance should be submitted in writing

PER TITLE 15, GRIEVANCE POLICIES AND PROCEDURES SHALL INCLUDE:

1. A GRIEVANCE FORM OR INSTRUCTIONS FOR REGISTERING A GRIEVANCE;
2. RESOLUTION OF THE GRIEVANCE AT THE LOWEST APPROPRIATE STAFF LEVEL;
3. APPEAL TO THE NEXT LEVEL OF REVIEW;
4. WRITTEN REASONS FOR DENIAL OF GRIEVANCE AT EACH LEVEL OF REVIEW WHICH ACTS ON THE GRIEVANCE;
5. PROVISION FOR RESPONSE WITHIN A REASONABLE TIME LIMIT; AND,
6. PROVISION FOR RESOLVING QUESTIONS OF JURISDICTION WITHIN THE FACILITY.

**The END...**
**QUESTIONS?**

OC0354

# NOTES

OC0355

OC0356

# MONITORING PHYSICAL HEALTH

## ORANGE COUNTY SHERIFF ACADEMY CLASS

Dianna Mohrhoff, RN, BSN, PHN, CCRN II, NCCHP

# Unique Challenges Providing Medical Care to the Incarcerated

Currently 2.2 Million In US Jails and Prisons

California in 2016 over 202,000 population

- 58% substance abuse/dependence
- 55% alcohol abuse/dependence
- TB is 6-10 times more prevalent in incarcerated
- Viral Hepatitis is demonstrated in 30-40% of inmates
- AIDS is at least 5 times greater among inmates
- More women & juveniles
- Sicker & older
- Transgenders

# IMQ Accreditation

**Deputy Role**

**Title 15**

## Title 15 Standards

Evolution of standards: a **community level** of medical care is provided to inmates

California Code of Regulations / Minimum Standards for Local Detention Facilities

- Mental/ Medical Health Care
- Nutrition
- Facility Sanitation
- Safety

Security regulations apply to medical personnel as they do to all facility personnel

- *__Security__ takes precedence over treatment
- Medical staff are to be **accompanied as indicated** to insure their **safety***



OC0360



# Examples of Standards

- Title 15,1216: Outlines legal mandates for proper control & storage of medications

- Title 15,1220: First aid kits shall be available in all facilities
- Title 15,1211: Mandates **daily sick call***
- Title 15,1216 (b)(7): **Only** a physician, dentist, pharmacist or other person authorized by law (e.g. medical staff0 **acting on a prescriber's order** may dispense any type of medication
  - **Security staff may not** dispense medicine, especially prescriptions
- Title 15,1205 (D), 1216 (A)(6): **Inmates are not** used to provide health services including performing direct patient care & administration of drugs
- Title 15,1206(f): All facilities that house female inmates need P&P's relating to the special needs of females
- Penal Code Section 4028: Eligible inmates are permitted to obtain an abortion

# Three Basic Rights to Medical Care

1. The right to access to care
   - Intake screening: **all** inmates at **entry** into correctional facility
   - Sick call
   - Specialists
   - Hospitalization

Contract Hospitals: Anaheim Global Medical Center
Orange County Global Medical Center (Santa Ana)

2. The right to care that is ordered

3. The right to a professional medical judgment:
   - Made by a medical professional
   - Using equipment designed for medical use
   - In locations conducive to medical functions

Inmates access medical care by submitting an "Inmate Health Message Slip" (Pink Slip) in designated medical boxes (*No inmate/deputy handling allowed)

- ***HIPAA:** Health Insurance Portability & Accountability Act
**P**ersonal, **P**rivate, **P**rotected

Title 15,1214: A **competent*** inmate has the right to accept or refuse any proposed treatment & has the right to revoke his/her consent **(*Written refusal)**

# Sharing of Medical Information/ Communication Issues

- Health staff are to be **informed of the classifications** of all persons they visit & are oriented to security rules, regulations & procedures
  - Custody staff should be informed of the duties & responsibilities of health staff

- Title 15 encourages a collaborative relationship between custody & health care staff
  - The responsible health authority shall communicate information obtained in the course of medical/mental health screening & care to jail facilities for protection & welfare of the inmate or others

EX: Pregnancy: A pink tag is placed on inmate in receiving to alert security staff

- J112 is given to OCSD indicating: pregnancy, low bunk / low tier, no work status

("Medical expedite" if >28 weeks pregnancy or complications)

**The best person to observe an inmate's daily activities is the *Correctional Officer**

# Situations that may Result in Lawsuits

*__8th Amendment__: **"Cruel & unusual punishment" (Prohibition of torture)**

**"__Deliberate indifference to serious medical needs__"***

Supreme Court decision requiring inmate to receive appropriate care for serious medical needs

- There must be **__excessive risk__** to the health & safety of the inmate
- Official with **__knowledge of the risk__** & **__consciously disregards the risk__**

- Ex. A correctional officer refusing to allow an inmate with an serious injury to see medical staff because the inmate is in disciplinary isolation for violating jail rules

- Estelle v Gamble
- Tlamka v Serrell

**__ADA__** (Pierce 2008) – Federal Court Order

- Inmates with mobility/dexterity impairments **__must__** be in **ADA compliant cells** (Vision, hearing, cognitive, ambulatory, self-care & independent living)
- Activities are __documented__

(REVIEW # 1)

OC0364

# CORRECTIONAL HEALTH SERVICES (CHS)

Provides medical & dental care (Medical Roles : MD; NP; RN; LVN; MA)

- Each facility is staffed 24 / 7 by nursing
- Physician in-house or on-call 24 / 7
- Sick call is conducted daily

## MEDICAL SCREENING (Intake Screening Triage: "IRC")

- **All** arrestees must be cleared by medical **prior** to being booked
  - Questions to Identify Medical and/or Mental Problems
  - Assessed & referred as appropriate (e.g. immediate)
  - Medically unstable are "refused"
  - Uncooperative, but stable, are reassessed when cooperative
  - Chronic conditions: Inmates are advised to submit IHMS (Pink Slip)

Conditions that require immediate medical housing are **"expedited" within 4 hours**

*__Pregnancy__: a pregnant, healthy inmate with no medical complications, in her **first trimester**, may be housed in general population with a low bunk/no work slip

# MEDICAL HOUSING CLASSIFICATIONS

A permanent, temporary, or intermittent condition that requires close medical intervention or impacts a major life activity

**"Special Handling / Special Housing/ Special Treatment"**

## Types of special housing needs:

- Severe drug/alcohol withdrawal
- Severe medical/mental
- ***Insulin Dependent Diabetics**
- ***Missing limbs,** ***Walking cast**
- Appliances/Orthopedic/catheters
- **Blind, Deaf**, C-PAP
- Special needs: Cardiac, Elderly
- ADA needs
- Isolation
- Step Down for Psych
- Post surgical or ***Wired jaw**
- Head trauma, Seizure activity, Unstable
- Advanced Pregnancy or Complications
- Assistance with ADL's **(paras, quads)**

OC0366

# MEDICAL HOUSING CLASSIFICATIONS

**Men's Central Jail**: Observation Unit (**Ward C**); Ward D; Sheltered Living

**Women's Central Jail**: Observation Unit; Sheltered Living Cells 1-2; P-13-14

**IRC Mod L**: Individual cells to house inmates who are a danger to themselves or others (suicidal or homicidal)

**THEO LACY:**

- **Mod O:**
  - Insulin Dependent Diabetics
  - C-pap
  - Appliances & ADA needs
  - Special Needs Housing
  - Other Medical needs

**Transgenders, PC's, etc,**

**ICE**: Immigration & Customs Enforcement

- **"Detainees"**



# Sobering Cells

Title 15,1056: Inmates who cannot or will not complete the booking process due to intoxication and/or under the influence will be placed in a "Sobering Cell"

**Prior to placement**: an RN or higher assessment is completed including: mental status, vital signs, any visible signs of trauma, etc.

**Security staff** are responsible for direct personal safety checks **every 30 minutes** (documented)

- No inmate will be left in Sobering Cell longer than **6 hours without a medical evaluation** by an RN or higher
- Inmates are removed from a Sobering Cell as they are able to continue with the booking process

---

## Safety Cells ("Rubber Room")

- Initiated by CMH
- Medically monitored by CHS
- Cell checks by security staff

**Documentation every 15 minutes**

OC0368

# Restraint Chair

Used as last resort for safety of security and the inmate

Housed in a specific area within the facility and separated from other inmates

Restraint Chair

- 4 point system designed to hold the most violent inmate at wrists, ankles, waist, chest & across the shoulders
- Initiated by CMH & Security only
- **Medical assessment every hour**
- After **2 hours**, the Watch Commander, CHS & CMH will evaluate appropriateness of use
- No inmate may stay longer than **4 hours** in "The Chair"

  Either the inmate is returned to the booking process or sent out for evaluation at the hospital

# Medication Administration: Security's Role

**Correctional officers may not* dispense any medicines, especially prescription meds**

*Medications are dispensed as *ordered by the medical provider*

- Never leave the nurse alone
- Be sure inmates are wearing IDs
- Control inmates in line
- Watch for the passing of contraband
- *Watch for **hoarding** of medications
- Do not allow inmate to discuss problems
- *Verify the inmate **swallowed** the medication (in front of the nurse)

**TLF**: Medical staff are **NOT** to enter an occupied dayroom for med distribution

**Only** deputies are to have door hatch keys & are responsible for opening hatches

## Self Carry Medications

*__TB__ & __Psychiatric meds__ are **NEVER** self carry

**Inmate should always carry authorized preprinted medical information sheet with med**

**Only at James A. Musick Facility** Inmates may carry up to a 14-day supply of a **prescription**

- Random spot checks are performed weekly
- Non-compliance is referred to corrections for disciplinary action

**REVIEW # 2**

OC0370

# PREVENTION

**Always** wear gloves & **thoroughly wash your hands** after **any contact** with an inmate or their property

- Wash your hands before **and** after using gloves (Nitrile); Sanitize
- Use a barrier device during CPR; protective eye goggles

## Biohazard Disposal: Sharps Containers/ Red Bags

**Biohazard Trash**: **Gloves with blood*;** Blood-soaked bandages*

*OSHA: Saturated to the point of releasing blood

***Clothing** is never discarded in biohazard containers

- If contaminated: place in ***hot water-soluble bags first** ("double bag")
  - Label as "Contaminated Laundry"

**Non Biohazard Trash**: feces, saliva, nasal secretions, sweat, tears, vomit toilet paper, gloves not contaminated by blood

# COMMUNICABLE DISEASES

Treat **EVERYONE** as if they had a **communicable disease** : *"**STANDARD PRECAUTIONS**"

***Bloodborne pathogens** are infectious **micro-organisms*** carried in human blood that can cause disease to humans including, but not limited to: HBV, HCV, HIV

**Modes of Transmission/Exposure:**
- **Direct** Contact
- **Indirect** Contact
- **Airborne** (Respiratory)
- **Vector**

**Preventive Measures:**

- **Vaccines:**
  - Active Immunization: use of a live, generally attenuated infectious agent
    Example: Measles virus
  - Passive Immunization: temporary immunity in an un-immunized person
    Example: Rabies vaccine

- ***Medical Isolation cells:** (*active or infectious diseases*)
  Use masks, gloves, aprons, disposable eating trays & utensils when possible

- **Other:**
  Keep open communication with health staff
  *Get vaccinated for Hepatitis B (Employee Health)
  Other immunizations **available***: Hepatitis A, Influenza (Flu), Chickenpox

# INFECTIOUS DISEASES

- HEPATITIS
- LICE & SCABIES
- TUBERCULOSIS
- MEASLES, MUMPS, CHICKENPOX
- HIV
- VENEREAL DISEASES

# Hepatitis

**A**

**B**

**C**

## General Symptoms of Hepatitis*

- Fever
- Nausea & vomiting
- Abdominal pain (beneath lower ribs)
- Fatigue
- Loss of Appetite
- Possible Jaundice
    - clay colored stools

OC0374

# Hepatitis A

(Infectious Hepatitis)

-Transmission: person to person though contaminated food, water* (fecal-oral) OR by direct contact with an infectious individual

- Incubation: 2 to 6 weeks

- Symptoms: vary from mild to severe

-Treatment: supportive; isolate if infectious (until 10 days after jaundice begins)

- Preventive vaccine
  - Close contacts should be offered post-exposure prophylaxis (PEP)

(Close contact: those individuals who share the same cell)



# Hepatitis B
(Serum Hepatitis)

- **Transmission**: **blood and body fluids, needles, sexual contact, tattoos (saliva has been linked to HBV transmission)**
- **Incubation: 6 weeks to 6 months**
- **Mild symptoms**
- **Treatment is supportive; isolate if infectious**
- **Risk** of infection if exposed to infected blood or body fluid is **7- 30%**
- **Preventive vaccine**: draw blood to evaluate effectiveness of vaccine
  - Chronic carrier
  - Routine Hepatitis B Vaccine of U.S. children began in 1991
  - Since, the incidence of Hepatitis B among children & adolescents has dropped 95% (75% in all ages)

# Hepatitis C

- **Same transmission as Hepatitis B**

- **Incubation**:  2 weeks to 6 months

- **Symptoms** vary from mild to severe

- **Treatment**: Harvoni, Sovaldi, Epclusa etc. (No preventive vaccine*)

 - 75% are unaware they are infected until signs of liver damage emerge
    - Virus develops slowly over decades
- **Risk** of infection if exposed to blood or body fluids is **3-10%**

   - Baby Boomers (1945 – 1965)

Healthy Liver



Hepatitis C  Liver



# Hepatitis: Liver Ascites

**(5 year survival rate of 30%)**

Diagram showing fluid in the abdomen
Copyright © CancerHelp UK

# HIV+ vs AIDS

**HIV +** means having the virus in your body

**AIDS:** the HIV virus has reduced the number of healthy CD4 T-cells (lymphocytes: WBC)

**Transmission**: Sexual contact; IVDA: sharing needles; Infected mother to baby

- **Infectious fluids**: Blood, semen, vaginal fluids, breast milk
- **Non-infectious fluids:** Saliva, tears, urine, feces, sweat (unless contaminated)

**Treatment** of +HIV is based on individual laboratory studies & physical findings ("cocktail")

- With treatment, life expectancy is nearing normal (age 78)
- **PreP**: "Pre-exposure Prophylaxis": ("Truvada") for people who are HIV- but are at high risk of getting infected

Exposure Risk if blood is HIV infected: - Percutaneous: 0.3%
- Mucous membrane: 0.09%

***Housed in general population (May** be housed in special medical areas for **other needs**)

CHS policy: **No Kitchen duty**

# TUBERCULOSIS

Tuberculosis
Lungs
Tuberculosis bacteria
Copyright © 2001 WebMD Corporation

Bacterial infection spread by **respiratory droplets***
May infect any body system or organ: commonly the lungs

**Incubation**: 2 to 12 weeks

**Signs & Symptoms**: Abnormal chest x-ray

- Recent exposure to a known case of active TB
- *Unexplained weight loss, fatigue, night sweats, fever
- Persistent cough for more than 3 weeks; Bloody sputum

- 80% of those who contract TB will never experience symptoms
  - "Latent TB": no symptoms; not infectious

**PPD Test**: All inmates are given a CXR or PPD test (rfa); **(BCG)**

- Inmates with a + PPD are started on treatment if in custody longer than 6 months & < 35yrs
- A positive skin test does not always mean the individual has active disease!

**Treatment: Meds must be taken exactly as prescribed**

- **Suspected / confirmed active TB are** housed in **respiratory isolation** cell
- 9 to 18 months duration (drugs may have side effects)

# MEASLES, MUMPS & CHICKENPOX

**All viral diseases**

**Transmission**: **Respiratory spread***

- Chickenpox: also through contact with vesicular (**fluid filled***) rash

**Symptoms:** Fever, loss of appetite, lethargic

- Conjunctivitis with Measles
- Rash with Measles & Chickenpox
- Parotid swelling with Mumps

**Treatment:** Supportive

- **Isolation**
- Preventive vaccines

# MEASLES

**Rubeola: Red, Hard Measles**
"10 day measles"
(Incubation: 1-2 weeks)

**Rubella: German Measles**
"3 day measles"
(Incubation: 2 – 3 1/2 weeks)



## MUMPS

**(Incubation: 2-3 weeks)**

## Chicken Pox

(Incubation: 2-3 weeks)

## Shingles

**(Contact only with fluid)***

Lice

Scabies

**aka "ECTOPARASITES"**

**Transmitted by intimate personal <u>contact</u> and facilitated by - overcrowding**
**- uncleanliness**
**- sexual promiscuity**

Crabs

OC0384



# LICE

Lice are small parasites (louse)

- 3 Types: head, body, pubic (crabs)

**Transmission**: *Direct and Indirect contact:**

- Do not fly or jump
- Must feed at least daily on human blood
- Females cement nits firmly to hair or clothing

**Incubation**: 1 week to hatch; mature adult 2 weeks

**Medical Isolation:** housed separately, no dayroom, no work**,** court hold until 24 hrs after treatment **and** inmate is determined to be non-infectious

*__Treatment:__ Lice shampoo for 10 minutes (nit comb)

- Must have clean clothing and linen exchange after treatment
- A second treatment **MUST** be done 7-10 days to kill any newly hatched lice

# SCABIES

A parasitic mite that burrows into the superficial layers of the skin

**Transmission:** ***Direct:** prolonged (more than casual) skin-to skin contact

***Indirect**: to a limited extent from undergarments or soiled bedclothes

- Mites generally do not survive more than 3-4 days away from human skin

**Incubation**: 2-6 weeks (re-infection 1-4 days)

**Medical (conact) Isolation:** housed separately, no dayroom, no work, court hold until 24 hrs after treatment **and** inmate is determined to be non-infectious

- **Must** have 2 sets clean clothing, linen & plastic bags: for before **and** after treatment

**Treatment**: Lotion applied neck down for at least 8-12 hours (typical vs crusted)

**Notification** is given to **OCSD** housing area re possible scabies infestation

- Contacts (including staff) interviewed/examined for possible treatment

OC0386

# MRSA

## (Methicillin-resistant Staphlococcccus Aureus)

- A type of "Staph" Infection resistant to certain antibiotics; aka "super-bug"
- Common in Hospitals & Institutions
- Often lives on the skin without causing symptoms
    - More dangerous if they enter bloodstream (heart damage etc)
    - Heroin users are 16x more likely than others to develop severe illnesses
- *"**Spider bite**"

**Transmission:** Predominately through **direct physical contact**

- **Indirectly:** by touching clothes, towels, workout equipt, sharing personal property, etc.

Most infections are mild

**Treatment:** Wound care & antibiotics

**Prevention:**
- Wash hands
- Clean uniform
- Good Hygiene
- Wear gloves

OC0387

# Potential Job-related Risks for Correctional Officers*

- Biting & scratching by inmates
- Fights between inmates when correctional officers must intervene
- Exposure of blood and/or body fluids on personal items
- Searching sleeping quarters
- Touching beds & sheets contaminated with blood

If you become exposed:

**Notify your supervisor as soon as possible**

**Follow policy & procedures**

- An "exposure" is assessed, evaluated & recommendations made
- HIV exposure: Testing is performed at time of exposure & 6 weeks, 12 weeks and 6 months (Rare to convert after six months post-exposure)

**REVIEW # 3**

# Common Medical Emergencies / Sudden Illness

**Symptom***: a complaint or observation: nausea, vomiting, abdominal pain, rash, blood, chest pain, alteration in mental status etc.

**Awareness of reactions to meds**: vomiting, hives, drowsiness, behavior changes, etc.

If an inmate tells you an inmate is sick in his cell, ***talk to the inmate first**

- **Be professional**

**If you have any doubts about the severity of an inmate's medical condition, *consult the medical staff!!**

## Chest Pain

- All Chest pain must be referred to medical staff immediately
- Some causes: muscular, indigestion or cardiac!
- Unresolved chest pain will be treated as a heart attack!

"**Angina**": severe pain around the heart caused by a deficiency of oxygen supply to the heart muscle (Increases with stress or activity)

- **Nitroglycerin** medication is needed immediately
  - Carried in its original bottle & labeled for the specific inmate

# HEART ATTACK

A condition where there is a disruption of the electrical rhythm of the heart; or a coronary artery is blocked & part of the heart muscle dies

**Warning signs may include:**

***Crushing chest pain** (may radiate to arm, jaw, neck, back); **SOB, HA**

***Sweating** (less w/ females}, **weakness, indigestion, nausea, vomiting, anxiety**

- **Males:** Impending doom: "I'm going to die!"
- **Females**: chest pain not as crushing, more "pressure," "back pain," or muscular
  Tend to put off evaluation longer, causing more damage

- ***Diabetics**: sick to their stomach or SOB (even w/o chest pain*) is more common

**Symptoms may be vague, or none at all!!**

**Be prepared to give CPR!**

# STROKE

**A rupture or blockage in the brain**

**Warning signs occur suddenly:**

**"BE FAST!"**

- Balance: loss of balance; dizziness; severe headache
- Eyes: vision loss in one or both eyes; eye not blinking with other eye
- Face: weakness or numbness of face; one side of face may droop
- Arm: weak or *numbness of arm or leg on one side of the body (one arm drift down when both arms are held up)
- *Speech: unable to repeat a sentence or trouble talking, confused, drooling
- Time: if observed, call medical / 911

**Reassure: Can understand perfectly but may be unable to verbalize**

**Be prepared to give CPR**

# SEIZURES

An electrical or chemical malfunction in the brain

Most common causes: **Epilepsy & Alcohol withdrawal**

**Types:**
- *Tonic/clonic: "grand mal"
- "Petit mal" (Absentia)

**Symptoms*:**
- Appearance of *daydreaming, blank stare
- *Brief unconsciousness or violent convulsion
- Auras*, feeling, smells, tastes, visual, sound, fear

**Stay with the person; Time seizure**
- Protect from injury; Do not restrain
- Roll on side (nothing in the mouth)
- May lose control of body fluids

**Reassure**: May not remember

***May be Confused & Combative***



# ASTHMA

Chronic condition that causes inflammation of the airways & trouble breathing

- Respiratory airway becomes clogged with mucous or swollen

- As attack progresses, muscles surrounding the bronchioles constrict further & breathing becomes more difficult

- Cannot be cured but treated

- In severe cases, death may occur if untreated



healthy airways

**Symptoms**: SOB, chest tightness, constant cough

- Wheezing/difficulty inhaling

- *Anxiety

- *Shoulders hunched, leaning over object to facilitate breathing

**May self-carry inhaler**

# DIABETES

Body is unable to use sugar normally; Insulin :"key" that unlocks the cell to allow sugar to enter

**Symptoms**: overwhelming thirst, increased need to urinate, unexplained wt. loss

- hunger, fatigue, drowsiness, weakness, irritability, dry mouth, nausea
- blurred vision, itchy skin, hot, flushed skin

**Type I** Insulin Dependent: body cannot make insulin **(Special Housing/Treatment)**

**Type II** Non-insulin Dependent: body does not respond well or is resistant to insulin

**Hypoglycemia:** "Insulin shock"; sudden onset (BS<70)

**Too little food, extra exercise; too much insulin**

Dizziness, shaky, confusion, irritability, HA. sweating hunger, anxiety, pounding heart, racing pulse, pale skin poor coordination, passing out, **coma**

**Hyperglycemia:** "Diabetic coma"; gradual onset (BS>200)

**Too much food, illness or stress; too little insulin**

"**Fruity**" breath, nausea & vomiting, weakness, SOB confusion, **coma**

Before
After
Colostomy bag
ADAM.

# COLOSTOMY

**May be allowed in regular housing**

## Common Medical Problems:

- Back pain, strains, dislocations, fractures, abscesses
- Rashes, bites, Infections (incl venereal diseases)
- **Females:** Vaginal bleeding/infections
  Pregnancy complications

## Hanging Attempt

- Neck injuries
- Brain damage may occur within a few min.
- Cutting devices should be
- in each Mod
- CPR & First Aid

## BURNS

## ABDOMINAL PAIN / INJURIES

Blood on clothing

Common causes

- Trauma
- Obstructions
- Gastritis
- Gallstones
- Kidney Stones
- Appendicitis

Eye Injuries

## Fractures

## Amputations

## Spinal Injuries

Always suspect head & spinal injuries when the victim has been injured from:

- A fall
- Any serious impact injury
- Severe blow to head, neck or both

OC0396

**Tips:**
- Hoarding prescribed medications
- Use of illicit drugs
- Cheating on diet, "hunger strikes" (vs "hunger games")
- Ignoring medical advice
- Unusual requests to medical staff

## Common Tips from Inmates

- Assaults, threats, scams
- Behavior changes/mental status, suicide

## Medical Emergency Preparedness at OCJ

- You are a first responder to staff, inmates, visitors
- Your job is to recognize basic signs & symptoms of potential medical/mental problems & notify medical staff
- If necessary, you will perform First Aid & begin CPR!!!!

**REVIEW # 4**

**Michael L. Wroniak (State Bar No. 210347)**
**Mariah A. Witt (State Bar No. 328295)**
**COLLINS COLLINS MUIR + STEWART LLP**
**750 The City Drive, Suite 400**
**Orange, CA 92868**
**(714) 823-4100 – FAX (714) 823-4101**
**Email: mwroniak@ccmslaw.com**
**Email: mwitt@ccmslaw.com**

Attorneys for Defendant
COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI; MARK STICHTER; REYNA RIVERA; DEVONNA FALCONER; KASSANDRA MAYER; ELIA RODRIGUEZ; and RACHEL ADDINGTON

**UNITED STATES DISTRICT COURT**

**DISTRICT OF CALIFORNIA, CENTRAL DISTRICT**

| | |
|---|---|
| JANE DOE,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI; MARK STICHTER; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. SACV 20-00322-ODW (GJS)<br>***[Assigned to Judge John W. Holcomb Courtroom 2]***<br><br>**DEFENDANT RACHEL ADDINGTON'S RESPONSES TO INTERROGATORIES (SET ONE) PROPOUNDED BY PLAINTIFF JANE DOE**<br><br>Complaint Filed: 2/18/20<br><br>Trial Date: None |

**PROPOUNDING PARTY:** **PLAINTIFF, JANE DOE**

**RESPONDING PARTY:** **DEFENDANT, RACHEL ADDINGTON**

**SET NUMBER:** **ONE**

*FILE # 22348*

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

**TO PLAINTIFF JANE DOE, PLAINTIFF IN PRO PER::**

Defendant, RACHEL ADDINGTON ("Responding Party") provides responses to Interrogatories (Set One), propounded by Plaintiff, JANE DOE, as follows:

**PRELIMINARY STATEMENT**

This responding party has not completed discovery in this action and has not completed preparation for trial. All of the responses contained herein are based only upon such information and documents as are presently available to and specifically known by this responding party. The following responses are given without prejudice to responding party's right to produce evidence of any subsequently discovered fact(s) at the time of trial. These responses are made in a good faith effort to supply as much factual information and as much specification of legal contentions as is presently known but should in no way be to the prejudice of the responding party in relation to further discovery.

**GENERAL OBJECTION**

Responding Party objects to the instructions and definitions provided to the extent they purport to impose obligations on Responding Party that are beyond what is required by applicable law.

**RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO. 1:**

State the name, ADDRESS, dates of employment, job title, and nature of work for each employer or self-employment YOU have had from five years before YOUR employment with OCSD.

**RESPONSE TO INTERROGATORY NO. 1:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

of admissible evidence and far exceeds the scope of the present litigation. Subject to and without waiving these objections, Responding Party responds as follows:

Prior to working at the OCSD, I worked at the Santa Ana Police Department as a civilian employee, which was located at 60 Civic Center Plaza, Santa Ana, CA 92701. I was a clerk for the homicide and gang unit and worked there from approximately May of 2015 to March of 2018. Prior to employment at the Santa Ana Police Department, I was a student at Biola University located in La Mirada, California where I received a bachelor's degree in Criminology in May of 2016. I also worked at Applebee's as a Server from January of 2013 to April of 2016.

**INTERROGATORY NO. 2:**

With respect to YOUR employment with OCSD, please state: the title of each position YOU have held with OCSD, a brief description of YOUR duties at each position, and the inclusive dates YOU have held each position.

**RESPONSE TO INTERROGATORY NO. 2:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Subject to and without waiving these objections, Responding Party responds as follows:

1. Deputy at Central Women's Jail; to oversee, assist, and maintain the safety of the Central Women's Jail and inmates and to facilitate and assist in the daily operations of the Jail including but not limited to transport of inmates, conducting necessary searches, maintaining jail schedule and order, and responding to inmate's requests and complaints; October 2018-January 2020.

///

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

2. Classifications at the Intake and Release Center of the Central Women's Jail; to interview, classify and determine new inmate's security level and classification within the jail system; January 2020-current.

**INTERROGATORY NO. 3:**

Describe in detail YOUR role and responsibility throughout YOUR employment with OCSD between Jan 1, 2010 and Dec 31, 2019.

**RESPONSE TO INTERROGATORY NO. 3:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Next, it seeks a legal conclusion and expert opinion. Further is calls for a narrative. Finally, it seeks to invade the attorney-client privilege and attorney work product doctrine. Subject to and without waiving these objections, Responding Party responds as follows:

1. Deputy at Central Women's Jail; to oversee, assist, and maintain the safety of the Central Women's Jail and inmates and to facilitate and assist in the daily operations of the Jail including but not limited to transport of inmates, conducting necessary searches, maintaining jail schedule and order, and responding to inmate's requests and complaints; October 2018-January 2020.

**INTERROGATORY NO. 4:**

Describe in detail the training YOU received between Jan 1, 2010 and Dec 31, 2019 as law enforcement personnel, including the date of training/course, name of program/course, brief training/course description, and duration of training/course (hours).

///

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

**RESPONSE TO INTERROGATORY NO. 4:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Next, it seeks a legal conclusion and expert opinion. Further is calls for a narrative. Finally, it seeks to invade the attorney-client privilege and attorney work product doctrine. Subject to and without waiving these objections, Responding Party responds as follows:

1. Basic Deputy Academy, March 2018-October 2018, a brief overview and training for employment with the Orange County Sheriff's Department, minimum of 664 hours;
2. Jail Academy Training; 2-week program (October-November 2018), to train and educate new deputies on Title 15, the basic policies, procedures, operations and safety within the jails;
3. Central Women's Jail Training Program; 6-week program (November 3, 2018 to December 2018), on-site training to educate new deputies on day-to-day jail operations, become familiar with policies, procedures, and operations of the Central Women's Jail including shadowing of an experienced deputy;
4. CPR, sometime between November 2018 to present, and length unknown;
5. "Less Lethal" Training, to train and educate deputies on less lethal procedures, tactics, and measures, sometime between November 2018 to present, and 4 hours;
6. Human Trafficking Course, sometime between November 2018 to present, and length unknown;

///

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

7. Classification Certification, 3-day class, to train and educate on how to interview, classify and determine new inmates security rank and housing unit, prior to January 2020;
8. Standard and Trainings for Corrections Core Training Program, August 31-September 1, 2020, renewed yearly, consists of entry-level or basic training for newly appointed entry-level, supervisory, and management corrections staff employed in local jails and probation departments including courses that directly relate to the performance of job tasks as established through job analysis;
9. Other trainings required by the OCSD.

**INTERROGATORY NO. 5:**

State each and every fact upon which YOU relied in reaching YOUR decision to participate in the cell search of Plaintiff's holding tank on Aug 11, 2019.

**RESPONSE TO INTERROGATORY NO. 5:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Next, it seeks a legal conclusion and expert opinion. Further is calls for a narrative. Finally, it seeks to invade the attorney-client privilege and attorney work product doctrine. Subject to and without waiving these objections, Responding Party responds as follows:

I do not have an independent recollection of participating in the cell search of Plaintiff's holding tank on August 11, 2019. However, FAST searches are conducted twice per day (once during each shift - day and night) and are done to prevent the unauthorized possession of or use of weapons, contraband, or drugs. FAST searches are conducted at different times during each shift to avoid inmates from pre-determining

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

the search (i.e. the search can occur anytime during the day and/or night shift). Tanks are chosen at random, unless a specific tank or inmate(s) has given Deputies reasonable suspicion that there might be weapons, contraband, or drugs in the tank. During a FAST search, several Deputies and a Sergeant enter the tank and instruct inmates to stand up in full jail issue and file into either the day room or line up in the hallway. Inmates are then subjected to a custodial search, which includes removal and shaking of exterior clothing and thumbing of the bands of undergarments, including bra and underwear. Each bunk and surrounding areas are then checked for weapons, contraband, or drugs. Any and all weapons, contraband, or drugs are confiscated, and citations are written. Once the FAST search is completed, inmates are permitted to return to their respective bunks.

**INTERROGATORY NO. 6:**

Describe in detail what happened during the cell search of Plaintiff's holding tank on Aug 11, 2019 and in particular, what YOU did during the search.

**RESPONSE TO INTERROGATORY NO. 6:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Next, it seeks a legal conclusion and expert opinion. Further is calls for a narrative. Finally, it seeks to invade the attorney-client privilege and attorney work product doctrine. Subject to and without waiving these objections, Responding Party responds as follows:

I do not have an independent recollection of participating in the cell search of Plaintiff's holding tank on August 11, 2019. However, FAST searches are conducted twice per day (once during each shift - day and night) and are done to prevent the unauthorized possession of or use of weapons, contraband, or drugs. FAST searches are

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

conducted at different times during each shift to avoid inmates from pre-determining the search (i.e. the search can occur anytime during the day and/or night shift). Tanks are chosen at random, unless a specific tank or inmate(s) has given Deputies reasonable suspicion that there might be weapons, contraband, or drugs in the tank. During a FAST search, several Deputies and a Sergeant enter the tank and instruct inmates to stand up in full jail issue and file into either the day room or line up in the hallway. Inmates are then subjected to a custodial search, which includes removal and shaking of exterior clothing and thumbing of the bands of undergarments, including bra and underwear. Each bunk and surrounding areas are then checked for weapons, contraband, or drugs. Any and all weapons, contraband, or drugs are confiscated, and citations are written. Once the FAST search is completed, inmates are permitted to return to their respective bunks.

**INTERROGATORY NO. 7:**

IDENTIFY any and all WRITINGS which YOU prepared or made, or helped prepare or make, in connection with this litigation.

**RESPONSE TO INTERROGATORY NO. 7:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Responding Party also objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, confidential, non-public information, and seeks information related to the theory and opinions of the attorneys on the particular case which are protected under law. Responding Party also objects to the extent the request seeks information that is publicly available and/or equally available to the Propounding Party. Subject to and without waiving these objections,

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

Responding Party responds as follows:

None.

**INTERROGATORY NO. 8:**

IDENTIFY each lawsuit in which YOU were named as a defendant arising out of YOUR conduct as a law enforcement deputy.

**RESPONSE TO INTERROGATORY NO. 8:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Responding Party also objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, confidential, non-public information, and seeks information related to the theory and opinions of the attorneys on the particular case which are protected under law. Responding Party also objects to the extent the request seeks information that is publicly available and/or equally available to the Propounding Party. Subject to and without waiving these objections, Responding Party responds as follows:

Not applicable. Other than this matter, I have never been a party to a lawsuit arising from my conduct as a law enforcement deputy.

DATED: November 18, 2020 COLLINS COLLINS MUIR + STEWART LLP

By: ______________________________

MARIAH A. WITT
MICHAEL L. WRONIAK
Attorneys for Defendant COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI; MARK STICHTER; REYNA RIVERA; DEVONNA FALCONER; KASSANDRA MAYER; ELIA RODRIGUEZ; RACHEL ADDINGTON

*FILE # 22348*

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

# VERIFICATION

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I have read the foregoing document entitled **DEFENDANT RACHEL ADDINGTON'S RESPONSES TO INTERROGATORIES (SET ONE) PROPOUNDED BY PLAINTIFF JANE DOE** and know the contents thereof. I am a party to this action. The matters stated in the foregoing document are true of my own knowledge, except those matters that are stated on information and belief and as to those matters, I believe them to be true. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on NOVEMBER 11, 2020, at Santa Ana, California.

RACHEL ADDINGTON

FILE # 22348

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

**PROOF OF SERVICE**

**(CCP §§ 1013(a) and 2015.5; FRCP 5)**

State of California, )
) ss.
County of San Diego. )

I am employed in the County of San Diego, State of California. I am over the age of 18 and not a party to the within action; my business address is 2011 Palomar Airport Road, Suite 207, Carlsbad, California 92011.

On this date, I served the foregoing document described as **DEFENDANT RACHEL ADDINGTON'S RESPONSES TO INTERROGATORIES (SET ONE) PROPOUNDED BY PLAINTIFF JANE DOE** on the interested parties in this action by transmitting the same via electronic mail and by placing same in a sealed envelope, postage fully prepaid, addressed as follows:

Jane Doe
Courtproceeding9@gmail.com

**PLAINTIFF IN PRO SE**

☒ **(BY MAIL)** - I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail in South Pasadena, California to be served on the parties as indicated on the attached service list. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at South Pasadena, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **(BY CERTIFIED MAIL)** – I caused such envelope(s) with postage thereon fully prepaid via Certified Mail Return Receipt Requested to be placed in the United States Mail in Orange, California.

☐ **BY EXPRESS MAIL OR ANOTHER METHOD OF DELIVERY PROVIDING FOR OVERNIGHT DELIVERY**

☒ **(BY ELECTRONIC FILING AND/OR SERVICE)** – I served a true copy, with all exhibits, electronically on Plaintiff at the email address listed above on: **November 18, 2020**

☐ **FEDERAL EXPRESS** - I caused the envelope to be delivered to an authorized courier or driver authorized to receive documents with delivery fees provided for.

☐ **(BY FACSIMILE)** - I caused the above-described document(s) to be transmitted to the offices of the interested parties at the facsimile number(s) indicated on the attached Service List and the activity report(s) generated by facsimile number (714) 823-4101 indicated all pages were transmitted.

☐ **(BY PERSONAL SERVICE)** - I caused such envelope(s) to be delivered by hand to the office(s) of the addressee(s).

Executed on **November 18, 2020** at Carlsbad, California.

☒ **(FEDERAL)** - I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Vicki Wood
VICKI WOOD
vwood@ccmslaw.com | legalservices@ccmslaw.com

*FILE # 22348*

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

**Michael L. Wroniak (State Bar No. 210347)**
**Mariah A. Witt (State Bar No. 328295)**
**COLLINS COLLINS MUIR + STEWART LLP**
**750 The City Drive, Suite 400**
**Orange, CA 92868**
**(714) 823-4100 – FAX (714) 823-4101**
**Email: mwroniak@ccmslaw.com**
**Email: mwitt@ccmslaw.com**

Attorneys for Defendant
COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI; MARK STICHTER; REYNA RIVERA; DEVONNA FALCONER; KASSANDRA MAYER; ELIA RODRIGUEZ; and RACHEL ADDINGTON

**UNITED STATES DISTRICT COURT**

**DISTRICT OF CALIFORNIA, CENTRAL DISTRICT**

| | |
|---|---|
| JANE DOE,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI; MARK STICHTER; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. SACV 20-00322-ODW (GJS)<br>***[Assigned to Judge John W. Holcomb Courtroom 2]***<br><br>**DEFENDANT DEVONNA FALCONER'S RESPONSES TO INTERROGATORIES (SET ONE) PROPOUNDED BY PLAINTIFF JANE DOE**<br><br>Complaint Filed: 2/18/20<br><br>Trial Date: None |

**PROPOUNDING PARTY:** **PLAINTIFF, JANE DOE**

**RESPONDING PARTY:** **DEFENDANT, DEVONNA FALCONER**

**SET NUMBER:** **ONE**

*FILE # 22348*

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

**TO PLAINTIFF JANE DOE, PLAINTIFF IN PRO PER:**

Defendant, DEVONNA FALCONER ("Responding Party") provides responses to Interrogatories (Set One), propounded by Plaintiff, JANE DOE, as follows:

**PRELIMINARY STATEMENT**

This responding party has not completed discovery in this action and has not completed preparation for trial. All of the responses contained herein are based only upon such information and documents as are presently available to and specifically known by this responding party. The following responses are given without prejudice to responding party's right to produce evidence of any subsequently-discovered fact(s) at the time of trial. These responses are made in a good faith effort to supply as much factual information and as much specification of legal contentions as is presently known, but should in no way be to the prejudice of the responding party in relation to further discovery.

**GENERAL OBJECTION**

Responding Party objects to the instructions and definitions provided to the extent they purport to impose obligations on Responding Party that are beyond what is required by applicable law.

**RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO. 1:**

State the name, ADDRESS, dates of employment, job title, and nature of work for each employer or self-employment YOU have had from five years before YOUR employment with OCSD.

**RESPONSE TO INTERROGATORY NO. 1:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

of admissible evidence and far exceeds the scope of the present litigation. Subject to and without waiving these objections, Responding Party responds as follows:

Prior to working at OCSD, I worked as an Amazon Warehouse employee in the San Bernardino location from July of 2015 to May of 2016. Prior to that, I worked as a security guard at the dorms of California State University Dominguez Hills from 2014-2015 where I also was a student from 2013-2015. I graduated from California State University Dominguez Hills with a bachelor's degree in Business Administration. Prior to that, I was a student at Riverside City College.

**INTERROGATORY NO. 2:**

With respect to YOUR employment with OCSD, please state: the title of each position YOU have held with OCSD, a brief description of YOUR duties at each position, and the inclusive dates YOU have held each position.

**RESPONSE TO INTERROGATORY NO. 2:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Subject to and without waiving these objections, Responding Party responds as follows:

1. Correctional Services Assistant in Central Women's and Men's Jail; to assist sworn personnel within the Sheriff-Coroner maximum, medium, and/or minimum-security jail facilities with monitoring inmate movement, maintaining order, and controlling entry and exit to jail facilities; late 2016-April of 2018;
2. Deputy at Central Women's Jail; to oversee, assist, and maintain the safety of the Central Women's Jail and inmates and to facilitate and assist in the daily operations of the Jail including but not limited to transport of

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

inmates, conducting necessary searches, maintaining jail schedule and order, and responding to inmate's requests and complaints; October 2018-current.

**INTERROGATORY NO. 3:**

Describe in detail YOUR role and responsibility throughout YOUR employment with OCSD between Jan 1, 2010 and Dec 31, 2019.

**RESPONSE TO INTERROGATORY NO. 3:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Next, it seeks a legal conclusion and expert opinion. Further is calls for a narrative. Finally, it seeks to invade the attorney-client privilege and attorney work product doctrine. Subject to and without waiving these objections, Responding Party responds as follows:

1. Correctional Services Assistant in Central Women's and Men's Jail; to assist sworn personnel within the Sheriff-Coroner maximum, medium, and/or minimum-security jail facilities with monitoring inmate movement, maintaining order, and controlling entry and exit to jail facilities; late 2016-April of 2018;
2. Deputy at Central Women's Jail; to oversee, assist, and maintain the safety of the Central Women's Jail and inmates and to facilitate and assist in the daily operations of the Jail including but not limited to transport of inmates, conducting necessary searches, maintaining jail schedule and order, and responding to inmate's requests and complaints; October 2018-current.

///

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

**INTERROGATORY NO. 4:**

Describe in detail the training YOU received between Jan 1, 2010 and Dec 31, 2019 as law enforcement personnel, including the date of training/course, name of program/course, brief training/course description, and duration of training/course (hours).

**RESPONSE TO INTERROGATORY NO. 4:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Next, it seeks a legal conclusion and expert opinion. Further is calls for a narrative. Finally, it seeks to invade the attorney-client privilege and attorney work product doctrine. Subject to and without waiving these objections, Responding Party responds as follows:

1. Correctional Services Assistant Academy, March-May 2016, a brief overview and training for employment as a Correctional Services Assistant in the Central Jails; 10-week program;
2. Basic Deputy Academy Intensive; April-October 2018; a brief overview and training for employment with the Orange County Sheriff's Department, 984 hours;
3. Naloxone by Law Enforcement First Responders; September 2020; basic training of administration of Naloxone; 1 hour;
4. CPR/First Responders Course; September 2020; to train deputies on administration of CPR; length unknown;
5. "Less Lethal" Custody; completed September 2020; to train and educate deputies on less lethal procedures, tactics, and measures; 4 hours;
6. Human Trafficking Course; completed September 2020; length unknown;

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

7. Other trainings required by the OCSD.

**INTERROGATORY NO. 5:**

State each and every fact upon which YOU relied in reaching YOUR decision to participate in the cell search of Plaintiff's holding tank on Aug 11, 2019.

**RESPONSE TO INTERROGATORY NO. 5:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Next, it seeks a legal conclusion and expert opinion. Further is calls for a narrative. Finally, it seeks to invade the attorney-client privilege and attorney work product doctrine. Subject to and without waiving these objections, Responding Party responds as follows:

I do not have an independent recollection of participating in the cell search of Plaintiff's holding tank on August 11, 2019. However, FAST searches are conducted twice per day (once during each shift - day and night) and are done to prevent the unauthorized possession of or use of weapons, contraband, or drugs. FAST searches are conducted at different times during each shift to avoid inmates from pre-determining the search (i.e. the search can occur anytime during the day and/or night shift). Tanks are chosen at random, unless a specific tank or inmate(s) has given Deputies reasonable suspicion that there might be weapons, contraband, or drugs in the tank. During a FAST search, several Deputies and a Sergeant enter the tank and instruct inmates to stand up in full jail issue and file into either the day room or line up in the hallway. Inmates are then subjected to a custodial search, which includes removal and shaking of exterior clothing and thumbing of the bands of undergarments, including bra and underwear. Each bunk and surrounding areas are then checked for weapons, contraband, or drugs. Any and all weapons, contraband, or drugs are confiscated, and citations are written.

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

Once the FAST search is completed, inmates are permitted to return to their respective bunks.

**INTERROGATORY NO. 6:**

Describe in detail what happened during the cell search of Plaintiff's holding tank on Aug 11, 2019 and in particular, what YOU did during the search.

**RESPONSE TO INTERROGATORY NO. 6:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Next, it seeks a legal conclusion and expert opinion. Further is calls for a narrative. Finally, it seeks to invade the attorney-client privilege and attorney work product doctrine. Subject to and without waiving these objections, Responding Party responds as follows:

I do not have an independent recollection of participating in the cell search of Plaintiff's holding tank on August 11, 2019. However, FAST searches are conducted twice per day (once during each shift - day and night) and are done to prevent the unauthorized possession of or use of weapons, contraband, or drugs. FAST searches are conducted at different times during each shift to avoid inmates from pre-determining the search (i.e. the search can occur anytime during the day and/or night shift). Tanks are chosen at random, unless a specific tank or inmate(s) has given Deputies reasonable suspicion that there might be weapons, contraband, or drugs in the tank. During a FAST search, several Deputies and a Sergeant enter the tank and instruct inmates to stand up in full jail issue and file into either the day room or line up in the hallway. Inmates are then subjected to a custodial search, which includes removal and shaking of exterior clothing and thumbing of the bands of undergarments, including bra and underwear. Each bunk and surrounding areas are then checked for weapons, contraband, or drugs.

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

Any and all weapons, contraband, or drugs are confiscated, and citations are written. Once the FAST search is completed, inmates are permitted to return to their respective bunks.

**INTERROGATORY NO. 7:**

IDENTIFY any and all WRITINGS which YOU prepared or made, or helped prepare or make, in connection with this litigation.

**RESPONSE TO INTERROGATORY NO. 7:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Responding Party also objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, confidential, non-public information, and seeks information related to the theory and opinions of the attorneys on the particular case which are protected under law. Responding Party also objects to the extent the request seeks information that is publicly available and/or equally available to the Propounding Party. Subject to and without waiving these objections, Responding Party responds as follows:

None.

**INTERROGATORY NO. 8:**

IDENTIFY each lawsuit in which YOU were named as a defendant arising out of YOUR conduct as a law enforcement deputy.

**RESPONSE TO INTERROGATORY NO. 8:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Responding Party also objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, confidential, non-public information, and seeks information related to the theory and opinions of the attorneys on the particular case which are protected under law. Responding Party also objects to the extent the request seeks information that is publicly available and/or equally available to the Propounding Party. Subject to and without waiving these objections, Responding Party responds as follows:

Not applicable. Other than this matter, I have not been a party to a lawsuit arising from my conduct as a law enforcement deputy.

DATED: November 18, 2020 COLLINS COLLINS MUIR + STEWART LLP

By: ______________________

MARIAH A. WITT
MICHAEL L. WRONIAK
Attorneys for Defendant COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI; MARK STICHTER; REYNA RIVERA; DEVONNA FALCONER; KASSANDRA MAYER; ELIA RODRIGUEZ; RACHEL ADDINGTON

*FILE # 22348*

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

**VERIFICATION**

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I have read the foregoing document entitled **DEFENDANT DEVONNA FALCONER'S RESPONSES TO INTERROGATORIES (SET ONE) PROPOUNDED BY PLAINTIFF JANE DOE** and know the contents thereof. I am a party to this action. The matters stated in the foregoing document are true of my own knowledge, except those matters that are stated on information and belief and as to those matters, I believe them to be true. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 16, , 2020, at Santa Ana, California.

DEVONNA FALCONER

FILE # 22348

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

**PROOF OF SERVICE**

**(CCP §§ 1013(a) and 2015.5; FRCP 5)**

State of California, )
) ss.
County of San Diego. )

I am employed in the County of San Diego, State of California. I am over the age of 18 and not a party to the within action; my business address is 2011 Palomar Airport Road, Suite 207, Carlsbad, California 92011.

On this date, I served the foregoing document described as **DEFENDANT DEVONNA FALCONER'S RESPONSES TO INTERROGATORIES (SET ONE) PROPOUNDED BY PLAINTIFF JANE DOE** on the interested parties in this action by transmitting the same via electronic mail and by placing same in a sealed envelope, postage fully prepaid, addressed as follows:

Jane Doe
Courtproceeding9@gmail.com

**PLAINTIFF IN PRO SE**

☒ **(BY MAIL)** - I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail in South Pasadena, California to be served on the parties as indicated on the attached service list. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at South Pasadena, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **(BY CERTIFIED MAIL)** – I caused such envelope(s) with postage thereon fully prepaid via Certified Mail Return Receipt Requested to be placed in the United States Mail in Orange, California.

☐ **BY EXPRESS MAIL OR ANOTHER METHOD OF DELIVERY PROVIDING FOR OVERNIGHT DELIVERY**

☒ **(BY ELECTRONIC FILING AND/OR SERVICE)** – I served a true copy, with all exhibits, electronically on Plaintiff at the email address listed above on: **November 18, 2020**

☐ **FEDERAL EXPRESS** - I caused the envelope to be delivered to an authorized courier or driver authorized to receive documents with delivery fees provided for.

☐ **(BY FACSIMILE)** - I caused the above-described document(s) to be transmitted to the offices of the interested parties at the facsimile number(s) indicated on the attached Service List and the activity report(s) generated by facsimile number (714) 823-4101 indicated all pages were transmitted.

☐ **(BY PERSONAL SERVICE)** - I caused such envelope(s) to be delivered by hand to the office(s) of the addressee(s).

Executed on **November 18, 2020** at Carlsbad, California.

☒ **(FEDERAL)** - I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Vicki Wood

VICKI WOOD
vwood@ccmslaw.com | legalservices@ccmslaw.com

*FILE # 22348*

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

**Michael L. Wroniak (State Bar No. 210347)**
**Mariah A. Witt (State Bar No. 328295)**
**COLLINS COLLINS MUIR + STEWART LLP**
**750 The City Drive, Suite 400**
**Orange, CA 92868**
**(714) 823-4100 – FAX (714) 823-4101**
**Email: mwroniak@ccmslaw.com**
**Email: mwitt@ccmslaw.com**

Attorneys for Defendant
COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI; MARK STICHTER; REYNA RIVERA; DEVONNA FALCONER; KASSANDRA MAYER; ELIA RODRIGUEZ; and RACHEL ADDINGTON

**UNITED STATES DISTRICT COURT**

**DISTRICT OF CALIFORNIA, CENTRAL DISTRICT**

| | |
|---|---|
| JANE DOE,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI; MARK STICHTER; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. SACV 20-00322-ODW (GJS)<br>***[Assigned to Judge John W. Holcomb Courtroom 2]***<br><br>**DEFENDANT ELIA RODRIGUEZ' RESPONSES TO INTERROGATORIES (SET ONE) PROPOUNDED BY PLAINTIFF JANE DOE**<br><br>Complaint Filed: 2/18/20<br><br>Trial Date: None |

**PROPOUNDING PARTY: PLAINTIFF, JANE DOE**

**RESPONDING PARTY: DEFENDANT, ELIA RODRIGUEZ**

**SET NUMBER: ONE**

///

*FILE # 22348*

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

**TO PLAINTIFF JANE DOE, PLAINTIFF IN PRO PER:**

Defendant, ELIA RODRIGUEZ ("Responding Party") provides responses to Interrogatories (Set One), propounded by Plaintiff, JANE DOE, as follows:

**PRELIMINARY STATEMENT**

This responding party has not completed discovery in this action and has not completed preparation for trial. All of the responses contained herein are based only upon such information and documents as are presently available to and specifically known by this responding party. The following responses are given without prejudice to responding party's right to produce evidence of any subsequently-discovered fact(s) at the time of trial. These responses are made in a good faith effort to supply as much factual information and as much specification of legal contentions as is presently known, but should in no way be to the prejudice of the responding party in relation to further discovery.

**GENERAL OBJECTION**

Responding Party objects to the instructions and definitions provided to the extent they purport to impose obligations on Responding Party that are beyond what is required by applicable law.

**RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO. 1:**

State the name, ADDRESS, dates of employment, job title, and nature of work for each employer or self-employment YOU have had from five years before YOUR employment with OCSD.

**RESPONSE TO INTERROGATORY NO. 1:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery

*FILE # 22348*

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

of admissible evidence and far exceeds the scope of the present litigation. Subject to and without waiving these objections, Responding Party responds as follows:

Prior to working at the OCSD, I was employed at Target as a Sales Associate from approximately 2011-2013. I also worked at Forever 21 as a Sales Associate for approximately one month sometime between 2011-2013. During this time I also attended Saddleback Community College which was located in Mission Viejo, California. Prior to 2011, I was a high school student and did not have employment.

**INTERROGATORY NO. 2:**

With respect to YOUR employment with OCSD, please state: the title of each position YOU have held with OCSD, a brief description of YOUR duties at each position, and the inclusive dates YOU have held each position.

**RESPONSE TO INTERROGATORY NO. 2:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Subject to and without waiving these objections, Responding Party responds as follows:

1. Cadet at the Orange County Sheriff's Department; 2013;
2. Correctional Services Assistant in Central Women's and Men's Jail; to assist sworn personnel within the Sheriff-Coroner maximum, medium, and/or minimum-security jail facilities with monitoring inmate movement, maintaining order, and controlling entry and exit to jail facilities; 2014-2016;
3. Deputy at Central Women's Jail; to oversee, assist, and maintain the safety of the Central Women's Jail and inmates and to facilitate and assist in the daily operations of the Jail including but not limited to transport of

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

inmates, conducting necessary searches, maintaining jail schedule and order, and responding to inmate's requests and complaints; 2017-July 2020.

4. Patrol Field Operations Training; training to become a field deputy stationed in Aliso Viejo, California; July 2020-current.

**INTERROGATORY NO. 3:**

Describe in detail YOUR role and responsibility throughout YOUR employment with OCSD between Jan 1, 2010 and Dec 31, 2019.

**RESPONSE TO INTERROGATORY NO. 3:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Next, it seeks a legal conclusion and expert opinion. Further is calls for a narrative. Finally, it seeks to invade the attorney-client privilege and attorney work product doctrine. Subject to and without waiving these objections, Responding Party responds as follows:

1. Cadet at the Orange County Sheriff's Department; approximately 2014-2015;
2. Correctional Services Assistant in Central Women's and Men's Jail; to assist sworn personnel within the Sheriff-Coroner maximum, medium, and/or minimum-security jail facilities with monitoring inmate movement, maintaining order, and controlling entry and exit to jail facilities; approximately December 2015-early 2016;
3. Deputy at Central Women's Jail; to oversee, assist, and maintain the safety of the Central Women's Jail and inmates and to facilitate and assist in the daily operations of the Jail including but not limited to transport of

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

inmates, conducting necessary searches, maintaining jail schedule and order, and responding to inmate's requests and complaints; approximately January 2017-July 2020.

4. Patrol Field Operations Training; training to become a field deputy stationed in Aliso Viejo, California; July 2020-current.

**INTERROGATORY NO. 4:**

Describe in detail the training YOU received between Jan 1, 2010 and Dec 31, 2019 as law enforcement personnel, including the date of training/course, name of program/course, brief training/course description, and duration of training/course (hours).

**RESPONSE TO INTERROGATORY NO. 4:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Next, it seeks a legal conclusion and expert opinion. Further is calls for a narrative. Finally, it seeks to invade the attorney-client privilege and attorney work product doctrine. Subject to and without waiving these objections, Responding Party responds as follows:

1. Correctional Services Assistant Academy, September-December 2015, a brief overview and training for employment as a Correctional Services Assistant in the Central Jails; 3-month program;
2. Basic Deputy Academy, July 31, 2016-January 19, 2017, a brief overview and training for employment with the Orange County Sheriff's Department, minimum of 664 hours;

///

///

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

3. Jail Academy Training; 2-week program (January 2017), to train and educate new deputies on Title 15, the basic policies, procedures, operations and safety within the jails;
4. Custody Training, January 31, 2018, to train and educate deputies on custody policy, procedures, and tactics, 4 hours;
5. CPR, completion date and length unknown;
6. PC 832 Arrest and Firearms Course, completion date unknown, the minimum training standard for California peace officers as specified in Commission Regulation 1005, minimum of 64 hours (40 hours dedicated to arrest and 24 hours dedicated to firearm);
7. "Less Lethal" Training, December 3, 2018, to train and educate deputies on less lethal procedures, tactics, and measures, 4 hours;
8. Deputy Rodriguez has over 1,026 trainings hours completed for the OCSD;
9. Other trainings required by the OCSD.

**INTERROGATORY NO. 5:**

State each and every fact upon which YOU relied in reaching YOUR decision to participate in the cell search of Plaintiff's holding tank on Aug 11, 2019.

**RESPONSE TO INTERROGATORY NO. 5:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Next, it seeks a legal conclusion and expert opinion. Further is calls for a narrative. Finally, it seeks to invade the attorney-client privilege and attorney work product doctrine. Subject to and without waiving these objections, Responding Party responds as follows:

///

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

I do not have an independent recollection of participating in the cell search of Plaintiff's holding tank on August 11, 2019. However, FAST searches are conducted twice per day (once during each shift - day and night) and are done to prevent the unauthorized possession of or use of weapons, contraband, or drugs. FAST searches are conducted at different times during each shift to avoid inmates from pre-determining the search (i.e. the search can occur anytime during the day and/or night shift). Tanks are chosen at random, unless a specific tank or inmate(s) has given Deputies reasonable suspicion that there might be weapons, contraband, or drugs in the tank. During a FAST search, several Deputies and a Sergeant enter the tank and instruct inmates to stand up in full jail issue and file into either the day room or line up in the hallway. Inmates are then subjected to a custodial search, which includes removal and shaking of exterior clothing and thumbing of the bands of undergarments, including bra and underwear. Each bunk and surrounding areas are then checked for weapons, contraband, or drugs. Any and all weapons, contraband, or drugs are confiscated, and citations are written. Once the FAST search is completed, inmates are permitted to return to their respective bunks.

**INTERROGATORY NO. 6:**

Describe in detail what happened during the cell search of Plaintiff's holding tank on Aug 11, 2019 and in particular, what YOU did during the search.

**RESPONSE TO INTERROGATORY NO. 6:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Next, it seeks a legal conclusion and expert opinion. Further is calls for a narrative. Finally, it seeks to invade the attorney-client privilege and attorney work product doctrine. Subject to

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

and without waiving these objections, Responding Party responds as follows:

I do not have an independent recollection of participating in the cell search of Plaintiff's holding tank on August 11, 2019. However, FAST searches are conducted twice per day (once during each shift - day and night) and are done to prevent the unauthorized possession of or use of weapons, contraband, or drugs. FAST searches are conducted at different times during each shift to avoid inmates from pre-determining the search (i.e. the search can occur anytime during the day and/or night shift). Tanks are chosen at random, unless a specific tank or inmate(s) has given Deputies reasonable suspicion that there might be weapons, contraband, or drugs in the tank. During a FAST search, several Deputies and a Sergeant enter the tank and instruct inmates to stand up in full jail issue and file into either the day room or line up in the hallway. Inmates are then subjected to a custodial search, which includes removal and shaking of exterior clothing and thumbing of the bands of undergarments, including bra and underwear. Each bunk and surrounding areas are then checked for weapons, contraband, or drugs. Any and all weapons, contraband, or drugs are confiscated, and citations are written. Once the FAST search is completed, inmates are permitted to return to their respective bunks.

**INTERROGATORY NO. 7:**

IDENTIFY any and all WRITINGS which YOU prepared or made, or helped prepare or make, in connection with this litigation.

**RESPONSE TO INTERROGATORY NO. 7:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Responding Party also objects to this Interrogatory to the extent it seeks information protected by

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

the attorney-client privilege, work product doctrine, confidential, non-public information, and seeks information related to the theory and opinions of the attorneys on the particular case which are protected under law. Responding Party also objects to the extent the request seeks information that is publicly available and/or equally available to the Propounding Party. Subject to and without waiving these objections, Responding Party responds as follows:

None.

**INTERROGATORY NO. 8:**

IDENTIFY each lawsuit in which YOU were named as a defendant arising out of YOUR conduct as a law enforcement deputy.

**RESPONSE TO INTERROGATORY NO. 8:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Responding Party also objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, confidential, non-public information, and seeks information related to the theory and opinions of the attorneys on the particular case which are protected under law. Responding Party also objects to the extent the request seeks information that is publicly available and/or equally available to the Propounding Party. Subject to and without waiving these objections, Responding Party responds as follows:

///

///

///

///

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

Not applicable. Other than this matter, I have never been a party to a lawsuit arising from my conduct as a law enforcement deputy.

DATED: November 18, 2020 COLLINS COLLINS MUIR + STEWART LLP

By: ______________________________
MARIAH A. WITT
MICHAEL L. WRONIAK
Attorneys for Defendant COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI; MARK STICHTER; REYNA RIVERA; DEVONNA FALCONER; KASSANDRA MAYER; ELIA RODRIGUEZ; RACHEL ADDINGTON

*FILE # 22348*

10

DEFENDANT ELIA RODRIGUEZ' RESPONSES TO INTERROGATORIES (SET ONE) PROPOUNDED BY PLAINTIFF JANE DOE

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

**VERIFICATION**

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I have read the foregoing document entitled **DEFENDANT ELIA RODRIGUEZ'S RESPONSES TO INTERROGATORIES (SET ONE) PROPOUNDED BY PLAINTIFF JANE DOE** and know the contents thereof. I am a party to this action. The matters stated in the foregoing document are true of my own knowledge, except those matters that are stated on information and belief and as to those matters, I believe them to be true. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on ___November 11______, 2020, at Santa Ana, California.

ELIA RODRIGUEZ

*FILE # 22348*

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

**PROOF OF SERVICE**

**(CCP §§ 1013(a) and 2015.5; FRCP 5)**

State of California, )
) ss.
County of San Diego. )

I am employed in the County of San Diego, State of California. I am over the age of 18 and not a party to the within action; my business address is 2011 Palomar Airport Road, Suite 207, Carlsbad, California 92011.

On this date, I served the foregoing document described as **DEFENDANT ELIA RODRIGUEZ' RESPONSES TO INTERROGATORIES (SET ONE) PROPOUNDED BY PLAINTIFF JANE DOE** on the interested parties in this action by transmitting the same via electronic mail and by placing same in a sealed envelope, postage fully prepaid, addressed as follows:

Jane Doe
Courtproceeding9@gmail.com

**PLAINTIFF IN PRO SE**

☒ **(BY MAIL)** - I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail in South Pasadena, California to be served on the parties as indicated on the attached service list. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at South Pasadena, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **(BY CERTIFIED MAIL)** – I caused such envelope(s) with postage thereon fully prepaid via Certified Mail Return Receipt Requested to be placed in the United States Mail in Orange, California.

☐ **BY EXPRESS MAIL OR ANOTHER METHOD OF DELIVERY PROVIDING FOR OVERNIGHT DELIVERY**

☒ **(BY ELECTRONIC FILING AND/OR SERVICE)** – I served a true copy, with all exhibits, electronically on Plaintiff at the email address listed above on: **November 18, 2020**

☐ **FEDERAL EXPRESS** - I caused the envelope to be delivered to an authorized courier or driver authorized to receive documents with delivery fees provided for.

☐ **(BY FACSIMILE)** - I caused the above-described document(s) to be transmitted to the offices of the interested parties at the facsimile number(s) indicated on the attached Service List and the activity report(s) generated by facsimile number (714) 823-4101 indicated all pages were transmitted.

☐ **(BY PERSONAL SERVICE)** - I caused such envelope(s) to be delivered by hand to the office(s) of the addressee(s).

Executed on **November 18, 2020** at Carlsbad, California.

☒ **(FEDERAL)** - I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Vicki Wood
VICKI WOOD
vwood@ccmslaw.com | legalservices@ccmslaw.com

*FILE # 22348*

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

**Michael L. Wroniak (State Bar No. 210347)**
**Mariah A. Witt (State Bar No. 328295)**
**COLLINS COLLINS MUIR + STEWART LLP**
**750 The City Drive, Suite 400**
**Orange, CA 92868**
**(714) 823-4100 – FAX (714) 823-4101**
**Email: mwroniak@ccmslaw.com**
**Email: mwitt@ccmslaw.com**

Attorneys for Defendant
COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI; MARK STICHTER; REYNA RIVERA; DEVONNA FALCONER; KASSANDRA MAYER; ELIA RODRIGUEZ; and RACHEL ADDINGTON

**UNITED STATES DISTRICT COURT**

**DISTRICT OF CALIFORNIA, CENTRAL DISTRICT**

| | |
|---|---|
| JANE DOE,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI; MARK STICHTER; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. SACV 20-00322-ODW (GJS)<br>***[Assigned to Judge John W. Holcomb Courtroom 2]***<br><br>**DEFENDANT KASSANDRA MAYER'S RESPONSES TO INTERROGATORIES (SET ONE) PROPOUNDED BY PLAINTIFF JANE DOE**<br><br>Complaint Filed: 2/18/20<br><br>Trial Date: None |

**PROPOUNDING PARTY:** **PLAINTIFF, JANE DOE**

**RESPONDING PARTY:** **DEFENDANT, KASSANDRA MAYER**

**SET NUMBER:** **ONE**

///

*FILE # 22348*

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

**TO PLAINTIFF JANE DOE, PLAINTIFF IN PRO PER:**

Defendant, KASSANDRA MAYER ("Responding Party") provides responses to Interrogatories (Set One), propounded by Plaintiff, JANE DOE, as follows:

**PRELIMINARY STATEMENT**

This responding party has not completed discovery in this action and has not completed preparation for trial. All of the responses contained herein are based only upon such information and documents as are presently available to and specifically known by this responding party. The following responses are given without prejudice to responding party's right to produce evidence of any subsequently-discovered fact(s) at the time of trial. These responses are made in a good faith effort to supply as much factual information and as much specification of legal contentions as is presently known, but should in no way be to the prejudice of the responding party in relation to further discovery.

**GENERAL OBJECTION**

Responding Party objects to the instructions and definitions provided to the extent they purport to impose obligations on Responding Party that are beyond what is required by applicable law.

**RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO. 1:**

State the name, ADDRESS, dates of employment, job title, and nature of work for each employer or self-employment YOU have had from five years before YOUR employment with OCSD.

**RESPONSE TO INTERROGATORY NO. 1:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

of admissible evidence and far exceeds the scope of the present litigation. Subject to and without waiving these objections, Responding Party responds as follows:

Prior to working at OCSD, I worked as a Legal Assistant for the Law Offices of Bruce C. Bridgman which is located at 17500 Red Hill Ave #230, Irvine, California from 2014-2018. Prior to that, I was a student at California State University Fullerton and Santa Ana College. I received my bachelor's degree in criminal justice from Fullerton.

**INTERROGATORY NO. 2:**

With respect to YOUR employment with OCSD, please state: the title of each position YOU have held with OCSD, a brief description of YOUR duties at each position, and the inclusive dates YOU have held each position.

**RESPONSE TO INTERROGATORY NO. 2:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Subject to and without waiving these objections, Responding Party responds as follows:

1. Deputy at Central Women's Jail; to oversee, assist, and maintain the safety of the Central Women's Jail and inmates and to facilitate and assist in the daily operations of the Jail including but not limited to transport of inmates, conducting necessary searches, maintaining jail schedule and order, and responding to inmate's requests and complaints; January 2019-July 2020.
2. Discovery Unit; to collaborate, compile and deliver any type of ESI, tangible, or other information in any form including but not limited to videos, inmate photos, reports, and/or medical records to courts in

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

response to requests for information to the Orange County Public Defender's Office or District Attorney's Office; July 2020-current.

**INTERROGATORY NO. 3:**

Describe in detail YOUR role and responsibility throughout YOUR employment with OCSD between Jan 1, 2010 and Dec 31, 2019.

**RESPONSE TO INTERROGATORY NO. 3:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Next, it seeks a legal conclusion and expert opinion. Further is calls for a narrative. Finally, it seeks to invade the attorney-client privilege and attorney work product doctrine. Subject to and without waiving these objections, Responding Party responds as follows:

1. Deputy at Central Women's Jail; to oversee, assist, and maintain the safety of the Central Women's Jail and inmates and to facilitate and assist in the daily operations of the Jail including but not limited to transport of inmates, conducting necessary searches, maintaining jail schedule and order, and responding to inmate's requests and complaints; January 2019-July 2020.
2. Discovery Unit; to collaborate, compile and deliver any type of ESI, tangible, or other information in any form including but not limited to videos, inmate photos, reports, and/or medical records to courts in response to requests for information to the Orange County Public Defender's Office or District Attorney's Office; July 2020-current.

///

///

*FILE # 22348*

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

**INTERROGATORY NO. 4:**

Describe in detail the training YOU received between Jan 1, 2010 and Dec 31, 2019 as law enforcement personnel, including the date of training/course, name of program/course, brief training/course description, and duration of training/course (hours).

**RESPONSE TO INTERROGATORY NO. 4:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Next, it seeks a legal conclusion and expert opinion. Further is calls for a narrative. Finally, it seeks to invade the attorney-client privilege and attorney work product doctrine. Subject to and without waiving these objections, Responding Party responds as follows:

1. Basic Deputy Academy Intensive; completed January 25, 2019; a brief overview and training for employment with the Orange County Sheriff's Department, 984 hours;
2. Vehicle Pursuit Policy; completed January 31, 2018, January 14, 2020, ; overview and training of policies, procedures and tactics for pursuits; 1 hour;
3. Naloxone by Law Enforcement First Responders; completed August 30, 2019; basic training of administration of Naloxone; 1 hour;
4. Domestic Violence & Lethality Telecourse; completed January 21, 2020; basic training and overview of responding to domestic violence; 2 hours;
5. Standard and Training for Corrections; completed March 10, 2020; 24 hours;

///

*FILE # 22348*

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

6. Immigrations and Customs Enforcement Training; completed February 19, 2019; 8 hours;
7. Correction Officer Supplemental Course; completed February 15, 2019; 88 hours;
8. "Less Lethal" Custody; completed March 10, 2020; to train and educate deputies on less lethal procedures, tactics, and measures; 4 hours;
9. Cultural Diversity – Tools for Tolerance Course; completed January 22, 2019; 8 hours;
10. Other trainings required by the OCSD.

**INTERROGATORY NO. 5:**

State each and every fact upon which YOU relied in reaching YOUR decision to participate in the cell search of Plaintiff's holding tank on Aug 11, 2019.

**RESPONSE TO INTERROGATORY NO. 5:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Next, it seeks a legal conclusion and expert opinion. Further is calls for a narrative. Finally, it seeks to invade the attorney-client privilege and attorney work product doctrine. Subject to and without waiving these objections, Responding Party responds as follows:

I do not have an independent recollection of participating in the cell search of Plaintiff's holding tank on August 11, 2019. However, FAST searches are conducted twice per day (once during each shift - day and night) and are done to prevent the unauthorized possession of or use of weapons, contraband, or drugs. FAST searches are conducted at different times during each shift to avoid inmates from pre-determining the search (i.e. the search can occur anytime during the day and/or night shift). Tanks

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

are chosen at random, unless a specific tank or inmate(s) has given Deputies reasonable suspicion that there might be weapons, contraband, or drugs in the tank. During a FAST search, several Deputies and a Sergeant enter the tank and instruct inmates to stand up in full jail issue and file into either the day room or line up in the hallway. Inmates are then subjected to a custodial search, which includes removal and shaking of exterior clothing and thumbing of the bands of undergarments, including bra and underwear. Each bunk and surrounding areas are then checked for weapons, contraband, or drugs. Any and all weapons, contraband, or drugs are confiscated, and citations are written. Once the FAST search is completed, inmates are permitted to return to their respective bunks.

**INTERROGATORY NO. 6:**

Describe in detail what happened during the cell search of Plaintiff's holding tank on Aug 11, 2019 and in particular, what YOU did during the search.

**RESPONSE TO INTERROGATORY NO. 6:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Next, it seeks a legal conclusion and expert opinion. Further is calls for a narrative. Finally, it seeks to invade the attorney-client privilege and attorney work product doctrine. Subject to and without waiving these objections, Responding Party responds as follows:

I do not have an independent recollection of participating in the cell search of Plaintiff's holding tank on August 11, 2019. However, FAST searches are conducted twice per day (once during each shift - day and night) and are done to prevent the unauthorized possession of or use of weapons, contraband, or drugs. FAST searches are conducted at different times during each shift to avoid inmates from pre-determining

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

the search (i.e. the search can occur anytime during the day and/or night shift). Tanks are chosen at random, unless a specific tank or inmate(s) has given Deputies reasonable suspicion that there might be weapons, contraband, or drugs in the tank. During a FAST search, several Deputies and a Sergeant enter the tank and instruct inmates to stand up in full jail issue and file into either the day room or line up in the hallway. Inmates are then subjected to a custodial search, which includes removal and shaking of exterior clothing and thumbing of the bands of undergarments, including bra and underwear. Each bunk and surrounding areas are then checked for weapons, contraband, or drugs. Any and all weapons, contraband, or drugs are confiscated, and citations are written. Once the FAST search is completed, inmates are permitted to return to their respective bunks.

**INTERROGATORY NO. 7:**

IDENTIFY any and all WRITINGS which YOU prepared or made, or helped prepare or make, in connection with this litigation.

**RESPONSE TO INTERROGATORY NO. 7:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Responding Party also objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, confidential, non-public information, and seeks information related to the theory and opinions of the attorneys on the particular case which are protected under law. Responding Party also objects to the extent the request seeks information that is publicly available and/or equally available to the Propounding Party. Subject to and without waiving these objections, Responding Party responds as follows:

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

None.

**INTERROGATORY NO. 8:**

IDENTIFY each lawsuit in which YOU were named as a defendant arising out of YOUR conduct as a law enforcement deputy.

**RESPONSE TO INTERROGATORY NO. 8:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Responding Party also objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, confidential, non-public information, and seeks information related to the theory and opinions of the attorneys on the particular case which are protected under law. Responding Party also objects to the extent the request seeks information that is publicly available and/or equally available to the Propounding Party. Subject to and without waiving these objections, Responding Party responds as follows:

Not applicable. Other than this matter, I have never been a party to a lawsuit arising from my conduct as a law enforcement deputy.

DATED: November 18, 2020 COLLINS COLLINS MUIR + STEWART LLP

By: ______________________
MARIAH A. WITT
MICHAEL L. WRONIAK
Attorneys for Defendant COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI; MARK STICHTER; REYNA RIVERA; DEVONNA FALCONER; KASSANDRA MAYER; ELIA RODRIGUEZ; RACHEL ADDINGTON

*FILE # 22348*

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

**VERIFICATION**

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I have read the foregoing document entitled **DEFENDANT KASSANDRA MAYER'S RESPONSES TO INTERROGATORIES (SET ONE) PROPOUNDED BY PLAINTIFF JANE DOE** and know the contents thereof. I am a party to this action. The matters stated in the foregoing document are true of my own knowledge, except those matters that are stated on information and belief and as to those matters, I believe them to be true. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on November 11, 2020, at Santa Ana, California.

K. Mayer
KASSANDRA MAYER

*FILE # 22348*

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

**PROOF OF SERVICE**

**(CCP §§ 1013(a) and 2015.5; FRCP 5)**

State of California, )
) ss.
County of San Diego. )

I am employed in the County of San Diego, State of California. I am over the age of 18 and not a party to the within action; my business address is 2011 Palomar Airport Road, Suite 207, Carlsbad, California 92011.

On this date, I served the foregoing document described as **DEFENDANT KASSANDRA MAYER'S RESPONSES TO INTERROGATORIES (SET ONE) PROPOUNDED BY PLAINTIFF JANE DOE** on the interested parties in this action by transmitting the same via electronic mail and by placing same in a sealed envelope, postage fully prepaid, addressed as follows:

Jane Doe
Courtproceeding9@gmail.com

**PLAINTIFF IN PRO SE**

☒ **(BY MAIL)** - I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail in South Pasadena, California to be served on the parties as indicated on the attached service list. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at South Pasadena, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **(BY CERTIFIED MAIL)** – I caused such envelope(s) with postage thereon fully prepaid via Certified Mail Return Receipt Requested to be placed in the United States Mail in Orange, California.

☐ **BY EXPRESS MAIL OR ANOTHER METHOD OF DELIVERY PROVIDING FOR OVERNIGHT DELIVERY**

☒ **(BY ELECTRONIC FILING AND/OR SERVICE)** – I served a true copy, with all exhibits, electronically on Plaintiff at the email address listed above on: **November 18, 2020**

☐ **FEDERAL EXPRESS** - I caused the envelope to be delivered to an authorized courier or driver authorized to receive documents with delivery fees provided for.

☐ **(BY FACSIMILE)** - I caused the above-described document(s) to be transmitted to the offices of the interested parties at the facsimile number(s) indicated on the attached Service List and the activity report(s) generated by facsimile number (714) 823-4101 indicated all pages were transmitted.

☐ **(BY PERSONAL SERVICE)** - I caused such envelope(s) to be delivered by hand to the office(s) of the addressee(s).

Executed on **November 18, 2020** at Carlsbad, California.

☒ **(FEDERAL)** - I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Vicki Wood

VICKI WOOD
vwood@ccmslaw.com | legalservices@ccmslaw.com

*FILE # 22348*

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

**Michael L. Wroniak (State Bar No. 210347)**
**Mariah A. Witt (State Bar No. 328295)**
**COLLINS COLLINS MUIR + STEWART LLP**
**750 The City Drive, Suite 400**
**Orange, CA 92868**
**(714) 823-4100 – FAX (714) 823-4101**
**Email: mwroniak@ccmslaw.com**
**Email: mwitt@ccmslaw.com**

Attorneys for Defendant
COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI; MARK STICHTER; REYNA RIVERA; DEVONNA FALCONER; KASSANDRA MAYER; ELIA RODRIGUEZ; and RACHEL ADDINGTON

**UNITED STATES DISTRICT COURT**

**DISTRICT OF CALIFORNIA, CENTRAL DISTRICT**

| | |
|---|---|
| JANE DOE,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI; MARK STICHTER; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. SACV 20-00322-ODW (GJS)<br>***[Assigned to Judge John W. Holcomb Courtroom 2]***<br><br>**DEFENDANT REYNA RIVERA'S RESPONSES TO INTERROGATORIES (SET ONE) PROPOUNDED BY PLAINTIFF JANE DOE**<br><br>Complaint Filed: 2/18/20<br><br>Trial Date: None |

**PROPOUNDING PARTY:** **PLAINTIFF, JANE DOE**

**RESPONDING PARTY:** **DEFENDANT, REYNA RIVERA**

**SET NUMBER:** **ONE**

///

*FILE # 22348*

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

**TO PLAINTIFF JANE DOE, PLAINTIFF IN PRO PER:**

Defendant, REYNA RIVERA ("Responding Party") provides responses to Interrogatories (Set One), propounded by Plaintiff, JANE DOE, as follows:

## PRELIMINARY STATEMENT

This responding party has not completed discovery in this action and has not completed preparation for trial. All of the responses contained herein are based only upon such information and documents as are presently available to and specifically known by this responding party. The following responses are given without prejudice to responding party's right to produce evidence of any subsequently-discovered fact(s) at the time of trial. These responses are made in a good faith effort to supply as much factual information and as much specification of legal contentions as is presently known, but should in no way be to the prejudice of the responding party in relation to further discovery.

## GENERAL OBJECTION

Responding Party objects to the instructions and definitions provided to the extent they purport to impose obligations on Responding Party that are beyond what is required by applicable law.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**

State the name, ADDRESS, dates of employment, job title, and nature of work for each employer or self-employment YOU have had from five years before YOUR employment with OCSD.

**RESPONSE TO INTERROGATORY NO. 1:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery

*FILE # 22348*

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

of admissible evidence and far exceeds the scope of the present litigation. Subject to and without waiving these objections, Responding Party responds as follows:

Prior to working at OCSD, I worked at 24 Hour Fitness from 2010 until 2017.

**INTERROGATORY NO. 2:**

With respect to YOUR employment with OCSD, please state: the title of each position YOU have held with OCSD, a brief description of YOUR duties at each position, and the inclusive dates YOU have held each position.

**RESPONSE TO INTERROGATORY NO. 2:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Subject to and without waiving these objections, Responding Party responds as follows:

1. Employee for Professional Standards Committee for OCSD; to assist and facilitate the recruitment, interviewing, investigation and placement of OCSD personnel; 2015-2016.
2. Deputy at Central Women's Jail; to oversee, assist, and maintain the safety of the Central Women's Jail and inmates and to facilitate and assist in the daily operations of the Jail including but not limited to transport of inmates, conducting necessary searches, maintaining jail schedule and order, and responding to inmate's requests and complaints; approximately 2017-August 2020.
3. Patrol Training in Laguna Hills; to train and facilitate a peace officer's transition to solo patrol assignment in a safe, skillful, productive, and professional manner; August 2020-current.

///

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

**INTERROGATORY NO. 3:**

Describe in details YOUR role and responsibility throughout YOUR employment with OCSD between Jan 1, 2010 and Dec 31, 2019.

**RESPONSE TO INTERROGATORY NO. 3:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Next, it seeks a legal conclusion and expert opinion. Further is calls for a narrative. Finally, it seeks to invade the attorney-client privilege and attorney work product doctrine. Subject to and without waiving these objections, Responding Party responds as follows:

1. Employee for Professional Standards Committee for OCSD; to assist and facilitate the recruitment, interviewing, investigation and placement of OCSD personnel; 2015-2016.
2. Deputy at Central Women's Jail; to oversee, assist, and maintain the safety of the Central Women's Jail and inmates and to facilitate and assist in the daily operations of the Jail including but not limited to transport of inmates, conducting necessary searches, maintaining jail schedule and order, and responding to inmate's requests and complaints; approximately 2017-August 2020.
3. Patrol Training in Laguna Hills; to train and facilitate a peace officer's transition to solo patrol assignment in a safe, skillful, productive, and professional manner; August 2020-current.

**INTERROGATORY NO. 4:**

Describe in details the training YOU received between Jan 1, 2010 and Dec 31, 2019 as law enforcement personnel, including the date of training/course, name of

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

program/course, brief training/course description, and duration of training/course (hours).

**RESPONSE TO INTERROGATORY NO. 4:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Next, it seeks a legal conclusion and expert opinion. Further is calls for a narrative. Finally, it seeks to invade the attorney-client privilege and attorney work product doctrine. Subject to and without waiving these objections, Responding Party responds as follows:

1. Patrol Training in Laguna Hills, CA; August-November 2020; to train and facilitate a peace officer's transition to solo patrol assignment in a safe, skillful, productive, and professional manner, 15-week training;
2. Basic Deputy Academy Intensive; completed April 24, 2017; a brief overview and training for employment with the Orange County Sheriff's Department, 984 hours;
3. Vehicle Pursuit Policy; completed January 21, 2018, January 31, 2019, January 15, 2020; overview and training of policies, procedures and tactics for pursuits; 1 hour;
4. Domestic Violence & Lethality Telecourse; completed December 22, 2019, January 21, 2020; basic training and overview of responding to domestic violence; 2 hours;
5. First Responders Course; completed June 30, 2018; to train and educate deputies to provide emergency medical assistance; length unknown;
6. Tactical Communications Course; completed June 23, 2020; to train and educate deputies on the details the use of radio and other devices in tactical

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

communications including proper radio use, media interaction and recovering from communication failures; length unknown;

7. Jail Operations Training; to train and educate deputies on jail policies procedures and operations; completed July 12, 2018; length unknown;

8. Standard and Training for Corrections; completed December 7, 2018; 24 hours;

9. Correction Officer Supplement, completed May 9, 2017; length unknown;

10. Immigrations and Customs Enforcement Training; completed May 11, 2017; 8 hours;

11. Correction Officer Supplemental Course; completed October 4, 2019, February 22, 2019; 88 hours;

12. Brady for Law Enforcement Course; completed December 5, 2019; to train and educate deputies to be in compliance with *Brady v. Maryland* (1963) 373 U.S. 83 which requires disclosure of exculpatory or impeaching information and evidence that is material to the guilt or innocence or to the punishment of a defendant and avoid placement on the Brady list; length unknown;

13. "Less Lethal" Custody; completed December 7, 2017, February 21, 2019, October 3, 2019, December 3, 2019; to train and educate deputies on less lethal procedures, tactics, and measures; 4 hours;

14. Crisis Intervention Training; completed February 15, 2018; to train and educate deputies on crisis intervention, de-escalation and negotiation tactics and methods; length unknown;

15. Mobile Field Force Course; completed May 15, 2018, May 19, 2019; to train and educate deputies on instructions in protest types and actions, legal considerations, responsibilities of mobile field force teams, and crowd-control methods and includes hands-on skill practice; length unknown;

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

16. Driving Under Influence Course; completed September 21, 2018; length unknown;

17. Drug Recognition Expert (DRE) Training and Field Certification; completed January 17, 2019 and February 14, 2019; specialized training certification by the International Association of Chiefs of Police to evaluate suspects and determine: if the subject is impaired, what drug category(s) is/are causing the impairment, and if a medical condition is causing the impairment; length unknown.

18. Other trainings required by the OCSD.

**<u>INTERROGATORY NO. 5:</u>**

State each and every fact upon which YOU relied in reaching YOUR decision to participate in the cell search of Plaintiff's holding tank on Aug 11, 2019.

**<u>RESPONSE TO INTERROGATORY NO. 5:</u>**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Next, it seeks a legal conclusion and expert opinion. Further is calls for a narrative. Finally, it seeks to invade the attorney-client privilege and attorney work product doctrine. Subject to and without waiving these objections, Responding Party responds as follows:

I do not have independent recollection of the cell search of Plaintiff's holding tank on August 11, 2019. However, FAST searches are conducted twice per day (once during each shift - day and night) and are done to prevent the unauthorized possession of or use of weapons, contraband, or drugs. FAST searches are conducted at different times during each shift to avoid inmates from pre-determining the search (i.e. the search can occur anytime during the day and/or night shift). Tanks are chosen at random, unless

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

a specific tank or inmate(s) has given Deputies reasonable suspicion that there might be weapons, contraband, or drugs in the tank. During a FAST search, several Deputies and a Sergeant enter the tank and instruct inmates to stand up in full jail issue and file into either the day room or line up in the hallway. Inmates are then subjected to a custodial search, which includes removal and shaking of exterior clothing and thumbing of the bands of undergarments, including bra and underwear. Each bunk and surrounding areas are then checked for weapons, contraband, or drugs. Any and all weapons, contraband, or drugs are confiscated, and citations are written. Once the FAST search is completed, inmates are permitted to return to their respective bunks.

**INTERROGATORY NO. 6:**

Describe in detail what happened during the cell search of Plaintiff's holding tank on Aug 11, 2019 and in particular, what YOU did during the search.

**RESPONSE TO INTERROGATORY NO. 6:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Next, it seeks a legal conclusion and expert opinion. Further is calls for a narrative. Finally, it seeks to invade the attorney-client privilege and attorney work product doctrine. Subject to and without waiving these objections, Responding Party responds as follows:

I do not have an independent recollection of participating in the cell search of Plaintiff's holding tank on August 11, 2019. However, FAST searches are conducted twice per day (once during each shift - day and night) and are done to prevent the unauthorized possession of or use of weapons, contraband, or drugs. FAST searches are conducted at different times during each shift to avoid inmates from pre-determining the search (i.e. the search can occur anytime during the day and/or night shift). Tanks

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

are chosen at random, unless a specific tank or inmate(s) has given Deputies reasonable suspicion that there might be weapons, contraband, or drugs in the tank. During a FAST search, several Deputies and a Sergeant enter the tank and instruct inmates to stand up in full jail issue and file into either the day room or line up in the hallway. Inmates are then subjected to a custodial search, which includes removal and shaking of exterior clothing and thumbing of the bands of undergarments, including bra and underwear. Each bunk and surrounding areas are then checked for weapons, contraband, or drugs. Any and all weapons, contraband, or drugs are confiscated, and citations are written. Once the FAST search is completed, inmates are permitted to return to their respective bunks.

**INTERROGATORY NO. 7:**

IDENTIFY any and all WRITINGS which YOU prepared or made, or helped prepare or make, in connection with this litigation.

**RESPONSE TO INTERROGATORY NO. 7:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Responding Party also objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, confidential, non-public information, and seeks information related to the theory and opinions of the attorneys on the particular case which are protected under law. Responding Party also objects to the extent the request seeks information that is publicly available and/or equally available to the Propounding Party. Subject to and without waiving these objections, Responding Party responds as follows:

None.

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

**INTERROGATORY NO. 8:**

IDENTIFY each lawsuit in which YOU were named as a defendant arising out of YOUR conduct as a law enforcement deputy.

**RESPONSE TO INTERROGATORY NO. 8:**

Objection. Responding Party asserts that this Interrogatory is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Responding Party also objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, confidential, non-public information, and seeks information related to the theory and opinions of the attorneys on the particular case which are protected under law. Responding Party also objects to the extent the request seeks information that is publicly available and/or equally available to the Propounding Party. Subject to and without waiving these objections, Responding Party responds as follows:

Not applicable. Other than this matter, I have not been a party to a lawsuit arising from my conduct as a law enforcement deputy.

DATED: November 18, 2020 COLLINS COLLINS MUIR + STEWART LLP

By: ______________________________
MARIAH A. WITT
MICHAEL L. WRONIAK
Attorneys for Defendant COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI; MARK STICHTER; REYNA RIVERA; DEVONNA FALCONER; KASSANDRA MAYER; ELIA RODRIGUEZ; RACHEL ADDINGTON

*FILE # 22348*

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

**VERIFICATION**

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I have read the foregoing document entitled **DEFENDANT REYNA RIVERA'S RESPONSES TO INTERROGATORIES (SET ONE) PROPOUNDED BY PLAINTIFF JANE DOE** and know the contents thereof. I am a party to this action. The matters stated in the foregoing document are true of my own knowledge, except those matters that are stated on information and belief and as to those matters, I believe them to be true. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 16, 2020, at Santa Ana, California.

REYNA RIVERA

*FILE # 22348*

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

**PROOF OF SERVICE**

**(CCP §§ 1013(a) and 2015.5; FRCP 5)**

State of California, )
) ss.
County of San Diego. )

I am employed in the County of San Diego, State of California. I am over the age of 18 and not a party to the within action; my business address is 2011 Palomar Airport Road, Suite 207, Carlsbad, California 92011.

On this date, I served the foregoing document described as **DEFENDANT REYNA RIVERA'S RESPONSES TO INTERROGATORIES (SET ONE) PROPOUNDED BY PLAINTIFF JANE DOE** on the interested parties in this action by transmitting the same via electronic mail and by placing same in a sealed envelope, postage fully prepaid, addressed as follows:

Jane Doe
Courtproceeding9@gmail.com

**PLAINTIFF IN PRO SE**

☒ **(BY MAIL)** - I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail in South Pasadena, California to be served on the parties as indicated on the attached service list. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at South Pasadena, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **(BY CERTIFIED MAIL)** – I caused such envelope(s) with postage thereon fully prepaid via Certified Mail Return Receipt Requested to be placed in the United States Mail in Orange, California.

☐ **BY EXPRESS MAIL OR ANOTHER METHOD OF DELIVERY PROVIDING FOR OVERNIGHT DELIVERY**

☒ **(BY ELECTRONIC FILING AND/OR SERVICE)** – I served a true copy, with all exhibits, electronically on Plaintiff at the email address listed above on: **November 18, 2020**

☐ **FEDERAL EXPRESS** - I caused the envelope to be delivered to an authorized courier or driver authorized to receive documents with delivery fees provided for.

☐ **(BY FACSIMILE)** - I caused the above-described document(s) to be transmitted to the offices of the interested parties at the facsimile number(s) indicated on the attached Service List and the activity report(s) generated by facsimile number (714) 823-4101 indicated all pages were transmitted.

☐ **(BY PERSONAL SERVICE)** - I caused such envelope(s) to be delivered by hand to the office(s) of the addressee(s).

Executed on **November 18, 2020** at Carlsbad, California.

☒ **(FEDERAL)** - I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Vicki Wood

VICKI WOOD
vwood@ccmslaw.com | legalservices@ccmslaw.com

*FILE # 22348*

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

EXHIBIT 3

BSCC CALIFORNIA

STATE OF CALIFORNIA
BOARD OF STATE AND COMMUNITY CORRECTIONS
2590 VENTURE OAKS WAY, SUITE 200 • SACRAMENTO CA 95833 • 916.445.5073 • BSCC.CA.GOV

LINDA M. PENNER
*Chair*

KATHLEEN T. HOWARD
*Executive Director*

EDMUND G. BROWN, JR.
*Governor*

September 26, 2018

Sandra Hutchens, Sheriff-Coroner
Orange County Sheriff's Department
550 N. Flower Street
Santa Ana, CA 92703

Dear Sheriff Hutchens:

2016-2018 BIENNIAL INSPECTION
ORANGE COUNTY'S TYPE II AND COURT HOLDING FACILITIES
PENAL CODE SECTION 6031

In May and June 2018, staff of the Board of State and Community Corrections (BSCC) conducted the 2016-2018 biennial inspection of the following Orange County local detention facilities:

| Intake/Release Center | Central Men's Jail | Women's Jail |
|---|---|---|
| Theo Lacy Facility | James A. Musick Facilities | |
| Lamoreaux Juvenile Justice Center | Harbor Justice Center | North Justice Center |

Pursuant to Penal Code Section 6031, these inspections were performed to determine compliance with the Minimum Standards for Local Detention Facilities as outlined in Titles 15 and 24, California Code of Regulations. In addition, BSCC staff conducted compliance monitoring pursuant to Welfare and Institutions Code Section 209(f) for the federal Juvenile Justice and Delinquency Prevention Act (JJDPA) for the separation requirements of juveniles from incarcerated adults.

The complete BSCC inspection report is enclosed and consists of: this transmittal letter; one Title 15 Procedures checklist outlining Title 15 requirements for the Type II facilities and one for the court holding facilities; a Physical Plant Evaluation outlining Title 24 requirements for design for each of the above facilities; and, a Living Area Space Evaluation summarizing the physical plant configuration and showing the capacity of each of the above facilities.

**Local Inspections**

In addition to the biennial inspection by the BSCC, inspections are also required annually by the County Health Officer and biennially by the State Fire Marshal or an authorized representative (Health and Safety Code Sections 101045 and 13146.1). Please consider our report in conjunction with the reports from the County Health Officer and the respective fire authorities for a comprehensive perspective of your facilities.

We encourage the practice of maintaining a permanent file for historical copies of all inspections that would also include documentation of corrections made following the inspection. This file should be the first point of reference when preparing for all future inspections.

**Health Inspections**

The health inspections for each facility were current. There were two noncompliance issues.

| Facility | Noncompliance Issue |
|---|---|
| Theo Lacy Facility | 1242, Menus |
| James A. Musick Facilities | 1245, Kitchen Facilities, Sanitation, and Food Storage |

Please see the 2017 health inspections for further detail.

The County health inspector will verify the above issues have been addressed when they perform their 2018 inspection.[1]

**Fire and Life Safety Inspections**

The fire and life safety inspections for each facility were current.

**BSCC Inspection**

Our inspection of Orange County's jails began with a review of the Custody and Courts Operations Manual (CCOM). Our audit consisted of a review of only those policies and procedures related specifically to the applicable regulations included in Title 15, Minimum Standards for Local Detention Facilities.[2]

There were no issues of noncompliance identified in our review of the CCOM.

**Title 15 Inspection – Policies, Procedures and Documentation**

After the review of the manual, we reviewed pertinent documentation including that of hourly safety checks, the use of sobering cells, safety cells, restraints, incident reports, inmate orientation material, grievances and disciplinary actions to ensure that practices and policies are consistent with Title 15.

The department instituted a renewed focus on the hourly safety checks. We noted a dramatic improvement in the quality of those checks starting in April 2018. Globally, the documentation was very good.

We also reviewed documentation on the placement and management of inmates in sobering cells, safety cells and in restraints (when used as defined in Section 1058, Use of Restraints). Such placements can be a major source of jail litigation, but when operated and managed according to regulation, exposure to litigation may be reduced. Documentation for the use of those cells conformed to applicable regulations.

---

[1] BSCC lacks the authority to remove or change a local inspector's compliance decision. The local agency must work with the individual inspector to resolve the matter, then inform BSCC of the results. BSCC will then remove the issue from our records.
[2] BSCC does not review all policies and procedures. We do not "approve" policies and procedures nor do we review them for constitutional or legal issues. We recommend agencies seek review through their legal advisor, risk manager and other persons deemed appropriate.

We reviewed a sampling of grievances and discipline reports. The documentation showed timely and appropriate responses.

Please see the Procedures checklists for further information.

**Title 24 Physical Plant Inspection**

All the facilities were very clean and no deferred maintenance issues were reported. Crowding was evident in all facilities.

The Intake/Release Center has a rated capacity of 407. On the day of the inspection, the facility housed 520 male and 335 female inmates. This facility is evaluated under the 1980 Title 24, Minimum Standards for Local Detention Facilities.[3]

*There was one Title 24 noncompliance issue.*

- Section 2.6 Single Occupancy Cells allows for one bed in a cell rated for single occupancy. Many of the single occupancy cells were fitted with a second bed. Because these cells can regularly be found occupied by two inmates it results in noncompliance with this regulation.

The Central Men's Jail has a rated capacity of 1,219 inmates. On the day of the inspection, the facility housed 1,068 inmates. This facility is evaluated under the 1963 Title 24, Minimum Standards for Local Detention Facilities. Several units were closed for refurbishing and painting.

*There was one Title 24 noncompliance issue.*

- Section 2.8 Dormitories establishes the standards for capacities of dormitories. Each of the eight dormitories located in Modules A, C, D, and F contained extra beds which are used on a regular basis. The dormitories have insufficient square footage for the additional population resulting in noncompliance with this regulation.

The Women's Jail has a rated capacity of 274 inmates. On the day of the inspection, the facility housed 336 inmates. This facility is evaluated under the 1963 Title 24, Minimum Standards for Local Detention Facilities.

*There was one Title 24 noncompliance issue.*

- Section 2.8 Dormitories establishes the standards for capacities of dormitories. Each of ten dormitories located in Modules G, H, and P contained extra beds which are used on a regular basis. The dormitories have insufficient square footage for the additional population resulting in noncompliance with this regulation.

Theo Lacy has a rated capacity of 2,080. Previously, the rated capacity was 2,480 inmates. Because four 100 bed dormitories are being used for federal detainees, 400 beds were removed from the rated capacity. [2,480 – 400 = 2,080]. On the day of the inspection, the facility housed 2,691 male inmates.[4] This facility

[3] Facilities are inspected under the regulations in effect at the time of the submittal of the Letter of Intent for initial construction or significant remodel as specified in Title 24, Section 13-102 (C) 1.

[4] This number only includes county jail inmates.

is evaluated under the 1963, 1980, 1988, 1994 and 2001 Title 24, Minimum Standards for Local Detention Facilities.

*There were several Title 24 noncompliance issues:*

- Section 2.6 Single Occupancy Cells allows for one bed in a cell rated for single occupancy. Many of the single occupancy cells in Building B were fitted with a second bed. Because these cells can regularly be found occupied by two inmates it results in noncompliance with this regulation.
- Section 2.7 Double Occupancy Cells establishes the minimum requirements for double occupancy cells. Eight of the double occupancy cells in Building C lack sufficient square footage for double occupancy resulting in noncompliance with this regulation.
- Section 2.8 Dormitories establishes the standards for capacities of dormitories. Barracks A-H contained extra beds which are used on a regular basis. The dormitories have insufficient square footage for the additional population resulting in noncompliance with this regulation.
- Section 2.9 Dayrooms establishes the minimum requirements for dormitory dayrooms. The dayrooms for Barracks A-H have insufficient square footage, plumbing fixtures and tables with seating for the additional population resulting in noncompliance with this regulation.

The James A. Musick Facility has a rated capacity of 449 male inmates.[5] Previously, the rated capacity was 713 inmates. Because 264 dormitory beds are being used for federal detainees, 264 beds were removed from the rated capacity. [713 – 264 = 449]. On the day of the inspection, there were 546 male inmates and 69 female inmates in custody. This facility is evaluated under the 1973 and 1986 Title 24, Minimum Standards for Local Detention Facilities.

*There were two Title 24 noncompliance issues:*

- Section 2.8 Dormitories establishes the standards for capacities of dormitories. The dormitories in the East, West, and South Compounds contained extra beds which are used on a regular basis. The dormitories have insufficient square footage for the additional population resulting in noncompliance with this regulation.
- Section 2.9 Dayrooms establishes the minimum requirements for dormitory dayrooms. The dormitories in the East, West, and South Compounds have insufficient square footage for the additional population resulting in noncompliance with this regulation.

The Lamoreaux Juvenile Justice Center is evaluated using the 1986 Title 24 regulations. There were no Title 24 noncompliance issues.

The Harbor Justice Center is evaluated using the 1986 Title 24 regulations. There were no Title 24 noncompliance issues.

The North Justice Center is evaluated using the 1986 Title 24 regulations. There were no Title 24 noncompliance issues.

**Juvenile Justice and Delinquency Prevention Act Compliance Monitoring**

In accordance with the JJDPA, BSCC monitors jail facilities for compliance with one of four core requirements of the Act, Separation of Juveniles from Incarcerated Adults. Minors are not housed at any of these facilities; therefore, no violations of the JJDPA were identified.

---

[5] This number only includes county jail inmates.

**Corrective Action Plan**

All five of the jails were noncompliant with various Title 24 regulations that are directly related to crowding. If crowded conditions change in any of the facilities, let us know and we will reevaluate our findings.

This concludes our inspection report for the 2016-2018 inspection cycle. Inspections create significant demands on your already very busy staff. Despite their workload, staff at all the facilities were very well prepared and actively engaged in the inspection process. We would like to express our gratitude to all involved. If you have any questions, please contact me at (916) 324-1914 or email charlene.aboytes@bscc.ca.gov or Kim Moule at (916) 322.8081 or email kim.moule@bscc.ca.gov .

Sincerely,

CHARLENE ABOYTES
Field Representative
Facilities Standards and Operations Division

Enclosures

cc: Chair, Board of Supervisors, Orange County *
Presiding Judge, Superior Court, Orange County *
County Executive Officer, Orange County *
Grand Jury Foreperson, Superior Court, Orange County *
Captain Jared Dahl, Orange County Sheriff's Department
Captain Luke South, Orange County Sheriff's Department
Captain Mark Stichter, Orange County Sheriff's Department
Captain Lisa VanNordeim, Orange County Sheriff's Department
Captain Cindi Coppock, Orange County Sheriff's Department (electronically)

* Complete copies of this inspection are available upon request.



BSCC CALIFORNIA

STATE OF CALIFORNIA
BOARD OF STATE AND COMMUNITY CORRECTIONS
2590 VENTURE OAKS WAY, SUITE 200 ♦ SACRAMENTO CA 95833 ♦ 916.445.5073 ♦ BSCC.CA.GOV

LINDA M. PENNER
*Chair*

KATHLEEN T. HOWARD
*Executive Director*

GAVIN NEWSOM
*Governor*

February 22, 2021

Sheriff Don Barnes
Orange County Sheriff's Office
Central Justice Center
700 Civic Center Drive West Suite M-100
Santa Ana, Ca 92701

**2018-2020 BIENNIAL INSPECTION – ORANGE COUNTY'S TYPE II JAIL FACILITIES AND COURT HOLDING FACILITIES; PENAL CODE SECTION 6031**

Dear Sheriff Barnes:

On June 11, 2020, (Pursuant to Penal Code section 6031.1, Welfare and Institutions Code sections 209 and 855) Board of State and Community Corrections (BSCC) staff conducted the 2018-2020 biennial inspection of Orange County's Intake Release Center, Central Men's Jail, Central Women's Jail, Theo Lacy, James A. Musick Facilities, the Orange County Harbor Justice Center and the North Justice Center Court Holding Facilities, via a desk audit.

This inspection was performed to determine compliance with the Minimum Standards for Local Detention Facilities as outlined in Titles 15 and 24, California Code of Regulations. In addition, BSCC staff conducted compliance monitoring pursuant to Welfare and Institutions Code Section 209(f) for the Federal Juvenile Justice and Delinquency Prevention Act (JJDPA) for the separation requirements of juveniles from incarcerated adults.

Due to the Coronavirus Pandemic and the issuance of statewide and local shelter-in-place orders, BSCC staff were prohibited from traveling and were unable to complete the on-site inspection. BSCC staff conducted a virtual inspection via desk audit of all facilities originally scheduled for inspection during this timeframe. Desk audits are comprised of a comprehensive review of all applicable policies and procedures and associated documentation to support that practices meet the agency policies. BSCC staff intend to conduct comprehensive onsite inspections of all local detention facilities as soon as travel restrictions are no longer in effect.

During the desk audit, I was provided with electronic files containing a sampling of the following: facility safety checks, exercise and recreation logs, safety cell placements, discipline records, grievances, local inspection reports, fire suppression pre-planning and inspections, suicide prevention, incident reports, restraint device documentation, the inmate orientation handbook and access to all agency policies, procedures and post orders.

The complete BSCC inspection report is enclosed and consists of: this transmittal letter; the Title 15 Procedures checklist outlining Title 15 requirements for each facility; a Physical Plant Evaluation outlining Title 24 requirements for design for each facility; and, a Living Area Space

Evaluation summarizing the physical plant configuration and showing the rated capacity of each facility. A copy of the PHY and LASE are included for your information only; if there have been significant changes to your physical plant at either jail facility, the changes will be updated during

the next on-site visit. Compliance for this inspection cycle is indicated by policy and documentation review. Please refer to the Title 15 Procedures Checklists for indication of compliance or noncompliance, and information specific to each regulation.

**LOCAL INSPECTIONS**

In addition to the biennial inspection by the BSCC, inspections are also required annually by the County Health Officer and biennially by the State Fire Marshal or an authorized representative (Health and Safety Code Sections 101045 and 13146.1). Please consider our report in conjunction with the reports from the County Health Officer and the respective fire authorities for a comprehensive perspective of your facilities.

We encourage the practice of maintaining a permanent file for historical copies of all inspections that would also include documentation of corrections made following the inspection. This file should be the first point of reference when preparing for all future inspections.

All local health inspections were completed as follows:

| Local Inspections | Intake Release Center | Central Men's Jail | Central Women's Jail | Theo Lacy Facility | James A. Musick Facility | Harbor Justice Center | North Justice Center |
|---|---|---|---|---|---|---|---|
| Fire | 5/15/2019 | 5/15/2019 | 5/15/2019 | 7/01/2020 | 5/14/2019 | 9/9/2020 | 5/15/2019 |
| Environmental Health | 7/25/2019 | 6/11/2019 | 6/18/2019 | 7/09/2019 | 7/11/2018 | 6/18/2019 | 6/18/2019 |
| Medical/Mental | 7/25/2019 | 6/11/2019 | 6/18/2019 | 7/09/2019 | 7/12/2019 | N/A | N/A |
| Nutrition | 7/25/2019 | 6/11/2019 | 6/11/2019 | 7/09/2019 | 7/11/2019 | N/A | N/A |

There were no items of non-compliance noted.

**BSCC INSPECTION**

**Title 15 Inspection – Policies, Procedures and Documentation**

Our inspection of the Orange County jails and court holding facilities began with desk audit to review the Orange County Sheriff's Department Custody and Courts Operational Manual. Our audit included a review of only those policies and procedures related specifically to the applicable regulations included in Title 15, Minimum Standards for Local Detention Facilities.

After reviewing the agency manual, we reviewed a sampling of hourly safety checks for each facility and found that staff were performing their checks within the 60 minutes required by Title 15, Section 1027, and by policy. We also reviewed documentation on the use of safety cells and restraints (when used as defined in Section 1058, Use of Restraints). All documentation for safety cell placement and restraints were found to conform to applicable policy and regulations. The sobering cell logs were reviewed and were found to be timely and contained necessary approvals and justifications. Our review of a sampling of grievances and discipline reports revealed timely and appropriate responses.

Our review of policies, procedures and documentation resulted in no findings of non-compliance with Title 15 regulations. Please review the attached Procedures checklists for detailed findings.

**Title 24 – Physical Plant Inspection**

**Intake Release Center:** Due to COVID 19 and travel restrictions, the physical plant was not inspected during this cycle. A copy of the 16-18 inspection is being attached for reference.

**Central Men's Jail**: Due to COVID 19 and travel restrictions, the physical plant was not inspected during this cycle. A copy of the 16-18 inspection is being attached for reference.

**Central Women's Jail**: Due to COVID 19 and travel restrictions, the physical plant was not inspected during this cycle. A copy of the 16-18 inspection is being attached for reference.

**Theo Lacy Facility:** Due to COVID 19 and travel restrictions, the physical plant was not inspected during this cycle. A copy of the 16-18 inspection is being attached for reference.

**James A. Musick Facility:** Due to COVID 19 and travel restrictions, the physical plant was not inspected during this cycle. A copy of the 16-18 inspection is being attached for reference.

**Orange County Harbor Justice Center:** Due to COVID 19 and travel restrictions, the physical plant was not inspected during this cycle. A copy of the 16-18 inspection is being attached for reference.

**Orange County North Justice Center:** Due to COVID 19 and travel restrictions, the physical plant was not inspected during this cycle. A copy of the 16-18 inspection is being attached for reference.

**Juvenile Justice and Delinquency Prevention Act Compliance Monitoring**

In accordance with the JJDPA, BSCC monitors jail facilities for compliance with one of four core requirements of the Act: Separation of Juveniles from Incarcerated Adults. Minors are not housed or supervised in these facilities; therefore, no violations of the JJDPA were identified.

This concludes our inspection report for the 2018-2020 inspection cycle. We would like to express our gratitude all involved, specifically to Lieutenant James Peak. He devoted the extra

time and effort needed to prepare and complete a successful virtual inspection. His professionalism, courtesy and flexibility with this unprecedented method of inspection and documentation review was appreciated. If you should have any questions, please contact me at (916) 322-8081or by email at kim.moule@BSCC.CA.GOV.

Sincerely,

KIMBERLY MOULE, CJM
Field Representative
Facilities Standards and Operations Division

Enclosures

cc: Chair, Board of Supervisors, Orange County *
Presiding Judge, Superior Court, Orange County *
County Administrator, Orange County *
Grand Jury Foreperson, Superior Court, Orange County *
Captain Martin Ramirez, Orange County Sheriff's Office
Lieutenant James A. Peak, Orange County Sheriff's Office

* Complete copies of this inspection are available upon request.

EXHIBIT 4

(a) The Executive Command is commanded by the Undersheriff whose responsibility is to provide general management, direction, and control for administration related services.

2. ADMINISTRATIVE SERVICES COMMAND

(a) The Administrative Services Command is commanded by an Executive Director whose primary responsibility is to provide general management, direction, and control for communications, technology, and financial related services.

3. CUSTODY OPERATIONS

(a) The Custody Operations Command is commanded by an Assistant Sheriff whose primary responsibility is to provide general management, direction, and control for all jail related operations.

4. FIELD OPERATIONS & INVESTIGATIVE SERVICES COMMAND

(a) The Field Operations and Investigative Services Command is commanded by an Assistant Sheriff whose primary responsibility is to provide general management direction and control for field related operations and investigative related services.

5. PROFESSIONAL SERVICES COMMAND

(a) The Professional Services Command is commanded by an Assistant Sheriff whose primary responsibility is to provide general management direction and control for administrative, training, and court related services.

## 200.13 DUTIES AND RESPONSIBILITIES OF OFFICERS

### 200.13.1 SHERIFF-CORONER

The Sheriff-Coroner, as a constitutional officer, is the Chief Law Enforcement Officer of the county and the Chief Executive Officer of the Department. The Sheriff is the final authority in all matters of Departmental policy, operations, and discipline. The Sheriff exercises all lawful powers of the office and issues such orders as are necessary to assure the effective operation of the Department.

By law, the Sheriff is charged with the responsibility for the preservation of the peace within the county through the enforcement of all laws and ordinances; the prevention and suppression of affrays, breaches of the peace, riots and insurrections and for the investigation of offenses committed in his/her jurisdiction. The Sheriff is charged with the maintenance and operation of the county jail system and the custody of all prisoners confined therein.

It is the duty of the Coroner to inquire into and determine the circumstances, manner, medical cause of death and classification of all violent, sudden unexplained, unusual deaths, and deaths wherein the attending physician has not been in attendance for 20 days prior to death or is unable to certify the medical cause of death.

Copyright Lexipol, LLC 2019/12/06, All Rights Reserved.
Published with permission by Orange County Sheriff-Coroner Department

200.13.2 UNDERSHERIFF

The Undersheriff reports directly to the Sheriff and is responsible for the operational oversight of the entire Sheriff's Department. The Undersheriff assumes duties of the Sheriff of Orange County in the absence of the Sheriff.

200.13.3 ASSISTANT SHERIFF/EXECUTIVE DIRECTOR

Assistant Sheriffs/Executive Directors are subordinate to the Sheriff-Coroner and Undersheriff. In the absence of the Sheriff-Coroner and Undersheriff, they are responsible to carry out all the duties and responsibilities of the Sheriff-Coroner. They are accountable to the Sheriff-Coroner for the efficient and orderly operation of the Department.

Assistant Sheriffs/Executive Directors are responsible for the fulfillment of all Department objectives and for the enforcement of all policies, orders, rules and regulations of the Sheriff-Coroner. They are accountable for the maintenance of discipline, as well as overall Department efficiency and morale.

The Assistant Sheriffs/Executive Directors shall investigate or cause to be investigated all complaints of laxity or misconduct on the part of Members of the Department and make recommendations to the Sheriff-Coroner of such disciplinary measures deemed necessary and appropriate.

The Assistant Sheriffs/Executive Director are responsible for the planning, directing, coordinating and controlling of all activities of the Department and shall formulate rules and procedures necessary to carry out the policies and directives of the Sheriff-Coroner.

200.13.4 COMMANDER/SENIOR DIRECTOR

A Commander/Senior Director is subordinate to an Assistant Sheriff or Executive Director. Commanders or Senior Directors provide direct support to an Assistant Sheriff or Executive Director. Commanders or Senior Directors are responsible for ensuring that commands under their control are meeting Department and command standards of operation.

200.13.5 CAPTAIN/DIRECTOR/CHIEF DEPUTY

A Captain/Director/Chief Deputy is subordinate to a Commander. A Captain/Director/Chief Deputy plans, organizes, controls and directs the work of a division of the Sheriff-Coroner Department.

200.13.6 LIEUTENANT/POLICE SERVICE CHIEF

A Lieutenant/Police Services Chief has charge of and manages the activities of a major subdivision, facility, or function of the Sheriff-Coroner Department and acts as the Police Services Chief in a city contracting with the Sheriff-Coroner for police services.

200.13.7 SERGEANT/SUPERVISOR

Sergeants/supervisors supervise the work of law enforcement officers and professional staff engaged in general or specialized law enforcement and related activities. Sergeants/supervisors are charged with the supervision of auxiliary law enforcement activities or functions.

Copyright Lexipol, LLC 2019/12/06, All Rights Reserved.
Published with permission by Orange County Sheriff-Coroner Department

200.13.8 INVESTIGATOR

An investigator is responsible for the investigation of all assigned cases. An investigator's function is to determine all facts possible relating to the case and may include identifying persons guilty of the commission of an offense.

200.13.9 DEPUTY SHERIFF

The deputy is the first line representative of the Sheriff-Coroner Department and deputy must conduct all contacts with the public in a manner conducive to good public and community relations. The deputy may be called on to perform a wide variety of assignments under many different circumstances and to assist the citizenry in a variety of non-criminal capacities.

200.13.10 SHERIFF'S SPECIAL OFFICER

Sheriff's Special Officers are first line representatives of the Sheriff-Coroner Department. The Sheriff's Special Officer must conduct all contacts with the public in a manner conducive to good public and community relations.

A Sheriff's Special Officer is a public officer, employed by the Sheriff of a county, whose primary duty is the security of locations or facilities as directed by the Sheriff (Penal Code 831.4(a)).

As a public officer, a Sheriff's Special Officer may carry or possess a firearm, baton, and other safety equipment and weapons authorized by the Sheriff while performing the duties authorized in this section, and under the terms and conditions specified by the Sheriff (Penal Code 831(b)).

A Sheriff's Special Officer is authorized to write citations for infractions.

A Sheriff's Special Officer may arrest a person without a warrant whenever the Sheriff's Special Officer has reasonable cause to believe that the person to be arrested has committed a misdemeanor in the presence of the Sheriff's Special Officer that is a violation of a statute or ordinance that the Sheriff's Special Officer has the duty to enforce (Penal Code § 836.5(a); Orange County Codified Ordinance 1-2-127(a)). The statutes and ordinances that a Sheriff's Special Officer has the duty to enforce are the State of California codes, the Codified Ordinances of the County of Orange and the municipal codes of the cities in which County buildings or facilities are located where the Sheriff's Special Officer provides security (Orange County Codified Ordinance 1-2-127(b)).

In making an arrest, the Sheriff's Special Officer will prepare a citation and release the arrestee for the misdemeanor in accordance with Penal Code § 853.6. If the arrestee demands to be taken before a magistrate or the arrestee does not qualify for citation and release under Penal Code § 853.6, the Sheriff's Special Officer will request a peace officer to take the person into custody for transport to jail. (Orange County Codified Ordinance 1-2-127(c)).

Copyright Lexipol, LLC 2019/12/06, All Rights Reserved.
Published with permission by Orange County Sheriff-Coroner Department

EXHIBIT 5

 Jane Doe <courtproceeding9@gmail.com>

**22348: Jane Doe v. County - Motion for Summary Judgment**

**Rebecca J. Chmura** <rchmura@ccmslaw.com> Mon, May 16, 2022 at 10:34 AM
To: Jane Doe <courtproceeding9@gmail.com>
Cc: "Michael L. Wroniak" <mwroniak@ccmslaw.com>, Jazmin Ruiz <JRuiz@ccmslaw.com>

Ms. Doe,

Please see attached and provide your responses as soon as possible.

Thank you,

**Rebecca J. Chmura**

Attorney at Law

**T**: 714-823-4100 | **C**: 626-840-9484
**F**: 714-823-4101
750 The City Drive, Suite 400
Orange, CA 92868
rchmura@ccllp.law

COLLINS + COLLINS LLP

www.ccllp.law

Pasadena 626-243-1100 - Orange 714-823-4100 - San Diego 760-274-2110
Northern California 510-844-5100 - Inland Empire 909-581-6100

PLEASE NOTE: The information contained in this e-mail transmission is intended to be sent only to the stated recipient of the e-mail. If the reader of this message is not the intended recipient or the intended recipient's agent, you are hereby notified that we do not intend to waive any privilege that might ordinarily attach to this communication and that any dissemination, distribution, or copying of the information contained in this e-mail is therefore prohibited. You are further asked to notify us of any such error in transmission as soon as possible at the telephone number shown below and to delete the e-mail.
Thank you for your cooperation.

---

**From:** Rebecca J. Chmura <rchmura@ccmslaw.com>
**Sent:** Friday, May 13, 2022 6:43 PM
**To:** Jane Doe <courtproceeding9@gmail.com>
**Cc:** Michael L. Wroniak <mwroniak@ccmslaw.com>; Jazmin Ruiz <JRuiz@ccmslaw.com>; James C. Jardin <jjardin@ccmslaw.com>
**Subject:** Re: 22348: Jane Doe v. County - Motion for Summary Judgment

Yes, I can send it to you on Monday.

Rebecca J. Chmura

Attorney at Law

COLLINS + COLLINS LLP

T: 714-823-4100 | C: 626-840-9484

F: 714-823-4101

750 The City Drive, Suite 400

Orange, CA 92868

rchmura@ccllp.law

www.ccllp.law

PLEASE NOTE: The information contained in this e-mail transmission is intended to be sent only to the stated recipient of the e-mail. If the reader of this message is not the intended recipient or the intended recipient's agent, you are hereby notified that we do not intend to waive any privilege that might ordinarily attach to this communication and that any dissemination, distribution, or copying of the information contained in this e-mail is therefore prohibited. You are further asked to notify us of any such error in transmission as soon as possible at the telephone number shown below and to delete the e-mail. Thank you for your cooperation.

---

**From:** Jane Doe <courtproceeding9@gmail.com>
**Sent:** Friday, May 13, 2022 5:02:35 PM
**To:** Rebecca J. Chmura <rchmura@ccmslaw.com>
**Cc:** Michael L. Wroniak <mwroniak@ccmslaw.com>; Jazmin Ruiz <JRuiz@ccmslaw.com>; James C. Jardin <jjardin@ccmslaw.com>
**Subject:** Re: 22348: Jane Doe v. County - Motion for Summary Judgment

Would you send me the joint statement in editable format?

On Fri, May 13, 2022 at 4:27 PM Rebecca J. Chmura <rchmura@ccmslaw.com> wrote:

> Ms. Doe,
>
> We mentioned that we reserved our right to add additional facts or make changes prior to the filing of our moving papers. We have left those spaces blank on the statement so that you may insert your response, if any, and we can add our replies.
>
> Thank you,
>
> Rebecca J. Chmura
>
> Attorney at Law
>
> COLLINS + COLLINS LLP
>
> T: 714-823-4100 | C: 626-840-9484
>
> F: 714-823-4101
>
> 750 The City Drive, Suite 400
>
> Orange, CA 92868
>
> rchmura@ccllp.law
>
> www.ccllp.law
>
> PLEASE NOTE: The information contained in this e-mail transmission is intended to be sent only to the stated recipient of the e-mail. If the reader of this message is not the intended recipient or the intended recipient's agent, you are hereby notified that we do not intend to waive any privilege that might ordinarily attach to this communication and that any dissemination, distribution, or copying of the information contained in this e-mail is therefore prohibited. You are further asked to notify us of any such error in transmission as soon as possible at the telephone number shown below and to delete the e-mail. Thank you for your cooperation.
>
> ---
>
> **From:** Jane Doe <courtproceeding9@gmail.com>
> **Sent:** Friday, May 13, 2022 4:19:59 PM
> **To:** Rebecca J. Chmura <rchmura@ccmslaw.com>
> **Cc:** Michael L. Wroniak <mwroniak@ccmslaw.com>; Jazmin Ruiz <JRuiz@ccmslaw.com>; James C. Jardin <jjardin@ccmslaw.com>
> **Subject:** Re: 22348: Jane Doe v. County - Motion for Summary Judgment
>
> Ms Chmura,

You added some proposed facts in the joint statement without letting me to respond. I thought you would send me another draft prior to filing with the court.

Regards,

On Wed, May 11, 2022 at 7:06 PM Rebecca J. Chmura <rchmura@ccmslaw.com> wrote:

Received.

**Rebecca J. Chmura**

Attorney at Law

**T**: 714-823-4100 | **C**: 626-840-9484
**F**: 714-823-4101
750 The City Drive, Suite 400
Orange, CA 92868
rchmura@ccllp.law

COLLINS + COLLINS LLP

www.ccllp.law

Pasadena 626-243-1100 - Orange 714-823-4100 - San Diego 760-274-2110
Northern California 510-844-5100 - Inland Empire 909-581-6100

PLEASE NOTE: The information contained in this e-mail transmission is intended to be sent only to the stated recipient of the e-mail. If the reader of this message is not the intended recipient or the intended recipient's agent, you are hereby notified that we do not intend to waive any privilege that might ordinarily attach to this communication and that any dissemination, distribution, or copying of the information contained in this e-mail is therefore prohibited. You are further asked to notify us of any such error in transmission as soon as possible at the telephone number shown below and to delete the e-mail.
Thank you for your cooperation.

---

**From:** Jane Doe <courtproceeding9@gmail.com>
**Sent:** Wednesday, May 11, 2022 6:04 PM
**To:** Rebecca J. Chmura <rchmura@ccmslaw.com>
**Cc:** Michael L. Wroniak <mwroniak@ccmslaw.com>; Jazmin Ruiz <JRuiz@ccmslaw.com>; James C. Jardin <jjardin@ccmslaw.com>
**Subject:** Re: 22348: Jane Doe v. County - Motion for Summary Judgment

Attached please find the joint statement. Thanks.

On Tue, May 10, 2022 at 10:44 AM Rebecca J. Chmura <rchmura@ccmslaw.com> wrote:

Ms. Doe,

Attached is the latest draft of the Joint Statement to be submitted with our Motion for Summary Judgment. Defendants reserve their right to make changes and/or add additional facts, exhibits, evidence, etc. prior to the filing of our moving papers.

**Rebecca J. Chmura**

EXHIBIT 6

JANE DOE
11151 Valley Blvd #4886,
El Monte, CA 91731
Plaintiff in Pro Se

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JANE DOE,

Plaintiff,

v.

COUNTY OF ORANGE, et al

Defendants.

No. 8:20-cv-00322- JWH -GJS

**PLAINTIFF'S RESPONSES TO DEFENDANT COUNTY OF ORANGE'S FIRST SET OF REQUESTS FOR ADMISSION**

Propounding Party : COUNTY OF ORANGE ("Defendant")
Responding Party : JANE DOE ("Plaintiff")
Set No. : One (1)

Plaintiff, pursuant to Rules 33 of the Federal Rules of Civil Procedure and the Local Rules of this Court, responds and objects to Defendant COUNTY OF ORANGE ("COUNTY") 's First Set of REQUESTS FOR ADMISSION as follows:

**PRELIMINARY STATEMENT**

1. The following responses are made solely for the purpose of this action. Plaintiff's investigation and development of all facts and circumstances relating to this action is ongoing. At this time, Plaintiff has not yet fully completed her investigation of the facts related to this action, and has not yet fully completed her discovery in this action, and consequently has not yet fully completed her preparation for trial.

2. The following responses are based only upon information, materials, and documents that

are currently available to and specifically known by Plaintiff.

3. It is anticipated that further discovery, independent investigation, legal research, and analysis will supply additional facts and add meaning to known facts, as well as established entirely new factual conclusion and legal contentions, all of which may lead to substantial additions to, changes in, and variation from the contentions herein set forth.

4. The following responses are given without prejudice to the right to produce at trial any and all subsequently-discovered evidence relating to the proof of presently known material facts, if any, and to produce all evidence, whenever discovered, relating to the proof of subsequently discovered material facts. These responses and objections are made without prejudice to, and are not a waiver of, Plaintiff's right to rely on other facts or documents at trial.

5. Plaintiff expressly reserves the right to supplement, clarify, revise, or correct any or all of the responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

6. Except for explicit facts submitted herein, no admissions of any nature whatsoever are implied nor should they be inferred. The fact that Plaintiff has responded to any Request for Admission should not be taken as an admission or acceptance of the existence of any fact or facts set forth or assumed by any interrogatory, or that such answer constitutes admissible evidence.

7. This Preliminary Statement is, by this reference, incorporated into each and every one of the following Responses to these interrogatories.

**PLAINTIFF'S RESPONSES TO RFAS**

**RFA NO. 1**

Admit that YOU did not suffer any physical injury from YOUR INCARCERATION at WCJ.

**RESPONSE TO RFA NO. 1**

Objection. This request is overbroad as to time and scope. It is also an invasion of Plaintiff's right to privacy. This request requires improper adoption of an assumption. It is used to cause unwarranted annoyance, embarrassment, or oppression. This request seeks premature disclosure of expert opinion in violation of Code of Civil Procedure sections 2034.210, 2034.220, and

2034.270. Responding Party further objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections Responding Party responds as follows: Deny.

**RFA NO. 2**

Admit that during YOUR INCARCERATION at WCJ YOU were given food during the booking process.

**RESPONSE TO RFA NO. 2**

Objection. This request is overbroad as to time and scope. It requires improper adoption of an assumption. Subject to and without waiving these objections Responding Party responds as follows: Deny.

**RFA NO. 3**

Admit that during YOUR INCARCERATION at WCJ YOU were given a sack lunch during the booking process.

**RESPONSE TO RFA NO. 3**

Objection. This request requires improper adoption of an assumption. Subject to and without waiving these objections Responding Party responds as follows: Deny.

**RFA NO. 4**

Admit that YOU were given food throughout YOUR INCARCERATION at WCJ.

**RESPONSE TO RFA NO. 4**

Objection. This request is overbroad as to time and scope. This request requires improper adoption of an assumption. Subject to and without waiving these objections Responding Party responds as follows: Deny.

**RFA NO. 5**

Admit that YOUR complaints related to the cold temperature of WCJ relate only to the time YOU were in the WCJ booking area.

**RESPONSE TO RFA NO. 5**

Objection. This request is vague and ambiguous as to the term "booking area." This request requires improper adoption of an assumption. Subject to and without waiving these objections

Responding Party responds as follows: Admit in part and deny in part. Admit that Plaintiff's complaints related to the cold temperature of WCJ relate to the time she was in the WCJ booking area. Deny that Plaintiff's complaints related to the cold temperature of WCJ relate only to the time she was in the WCJ booking area. After Plaintiff was brought back from court she was placed in the holding cell in first floor waiting to be readmitted into general public while she also suffered from bone chilling temperature.

I declare under penalty of perjury under the laws of the United States that the foregoing answers are true and correct.

Dated: April 1, 2022

Respectfully submitted.

*/s/ Jane Doe*

JANE DOE, Plaintiff in Pro Se

**CERTIFICATE OF SERVICE**

I, JANE DOE, declare and say as follows:

I am over the age of eighteen years of age and am a party to this action. I reside in the County of Los Angeles, State of California. My business address is 11151 Valley Blvd #4886, El Monte, CA 91734, in said county and state. My electronic serve address is courtproceeding9@gmail.com.

On April 1, 2022 I electronically served the following document(s):

Plaintiff's Responses and Objections to Defendant COUNTY's RFAs (Set 1)

Name of person served: Rebecca J. Chmura, Michael L. Wroniak, Justin M. Hazelton, Legal Assistant Services

On behalf of: COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE STICHTER; MARK STICHTER; REYNA RIVERA; DEVONNA FALCONER; KASSANDRA MAYER; ELIA RODRIGUEZ; and RACHEL ADDINGTON

Electronic service address of person served: rchmura@ccmslaw.com, mwroniak@ccmslaw.com, JHazelton@ccmslaw.com, legalservices@ccmslaw.com.

Dated: April 1, 2022

*/s/ Jane Doe*

JANE DOE

Plaintiff in Pro Se

EXHIBIT 7

**Michael L. Wroniak (State Bar No. 210347)**
**Mariah A. Witt (State Bar No. 328295)**
**COLLINS COLLINS MUIR + STEWART LLP**
**750 The City Drive, Suite 400**
**Orange, CA 92868**
**(714) 823-4100 – FAX (714) 823-4101**
**Email: mwroniak@ccmslaw.com**
**Email: mwitt@ccmslaw.com**

Attorneys for Defendants
COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI; MARK STICHTER; REYNA RIVERA; DEVONNA FALCONER; KASSANDRA MAYER; ELIA RODRIGUEZ; and RACHEL ADDINGTON

**UNITED STATES DISTRICT COURT**

**DISTRICT OF CALIFORNIA, CENTRAL DISTRICT**

| | |
|---|---|
| JANE DOE,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI; MARK STICHTER; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. 8:20-cv-00322-JWH (GJS)<br>***[Assigned to Judge John W. Holcomb Courtroom 2]***<br><br>**DEFENDANT COUNTY OF ORANGE'S RESPONSES TO REQUEST FOR ADMISSIONS (SET ONE) PROPOUNDED BY PLAINTIFF JANE DOE**<br><br>Complaint Filed: 2/18/20<br><br>Trial Date: None |

**PROPOUNDING PARTY: PLAINTIFF, JANE DOE**

**RESPONDING PARTY: DEFENDANT, COUNTY OF ORANGE**

**SET NUMBER: ONE**

///

*FILE # 22348*

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

**TO PLAINTIFF JANE DOE, PLAINTIFF IN PRO PER:**

Defendant, COUNTY OF ORANGE, ("Responding Party") provides responses to Requests for Admission (Set One), propounded by Plaintiff, JANE DOE, as follows:

**PRELIMINARY STATEMENT**

This responding party has not completed discovery in this action and has not completed preparation for trial. All of the responses contained herein are based only upon such information and documents as are presently available to and specifically known by this responding party. The following responses are given without prejudice to responding party's right to produce evidence of any subsequently discovered fact(s) at the time of trial. These responses are made in a good faith effort to supply as much factual information and as much specification of legal contentions as is presently known but should in no way be to the prejudice of the responding party in relation to further discovery.

**GENERAL OBJECTION**

Responding Party objects to the instructions and definitions provided to the extent they purport to impose obligations on Responding Party that are beyond what is required by applicable law.

**RESPONSES TO REQUESTS FOR ADMISSION**

**REQUEST FOR ADMISSION NO. 1:**

Admit that WCJ is funded by YOU and operated by YOU through OCSD.

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Objection. Responding Party asserts that this request is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Responding

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

Party also objects to the extent the request seeks information that is publicly available and/or equally available to the Propounding Party. Finally, this request is vague and ambiguous as to the term "YOU" as that term is not defined by the Propounding Party. Subject to and without waiving these objections, and assuming YOU is limited to the Responding Party, Responding Party responds as follows:

Admit.

**REQUEST FOR ADMISSION NO. 2:**

Admit that between Aug 8 and Aug 12, 2019 WCJ was operating over its capacity.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Objection. Responding Party asserts that this request is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Responding Party also objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, confidential, non-public information, and seeks information related to the theory and opinions of the attorneys on the particular case which are protected under law. Responding Party also objects to the extent the request seeks information that is publicly available and/or equally available to the Propounding Party. Subject to and without waiving these objections, Responding Party responds as follows:

Deny.

**REQUEST FOR ADMISSION NO. 3:**

Admit that pretrial detainees are innocent until proven guilty.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Objection. Responding Party asserts that this request is vague, ambiguous, unduly

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Responding Party also objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, confidential, non-public information, and seeks information related to the theory and opinions of the attorneys on the particular case which are protected under law. Responding Party also objects to the extent the request seeks information that is publicly available and/or equally available to the Propounding Party. Next it calls for a legal conclusion. Subject to and without waiving these objections, Responding Party responds as follows:

Admit.

**REQUEST FOR ADMISSION NO. 4:**

Admit that pretrial detainees are not convicted of any crime even though they are incarcerated in WCJ.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Objection. Responding Party asserts that this request is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Responding Party also objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, confidential, non-public information, and seeks information related to the theory and opinions of the attorneys on the particular case which are protected under law. Responding Party also objects to the extent the request seeks information that is publicly available and/or equally available to the Propounding Party. Next, this is an incomplete hypothetical and calls for

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

speculation. Subject to and without waiving these objections, Responding Party responds as follows:

Admit that a pretrial detainee is not convicted of the crime for which he/she was arrested, but this does not mean he/she has not been convicted of "any crime" previously.

**REQUEST FOR ADMISSION NO. 5:**

Admit that a pretrial detainee may be entitled to a higher level of constitutional protection than a convicted prisoner.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Objection. Responding Party asserts that this request is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Responding Party also objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, confidential, non-public information, and seeks information related to the theory and opinions of the attorneys on the particular case which are protected under law. Next, this is an incomplete hypothetical and calls for speculation. It also calls for a legal conclusion and expert opinion. Subject to and without waiving these objections, Responding Party responds as follows:

Deny.

**REQUEST FOR ADMISSION NO. 6:**

Admit that pretrial detainees cannot be punished.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Objection. Responding Party asserts that this request is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Responding Party also objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, confidential, non-public information, and seeks information related to the theory and opinions of the attorneys on the particular case which are protected under law. Next, this is an incomplete hypothetical and calls for speculation. It also calls for a legal conclusion and expert opinion. Subject to and without waiving these objections, Responding Party responds as follows:

Deny.

**REQUEST FOR ADMISSION NO. 7:**

Admit that as of August 7, 2019 Plaintiff had never been arrested by any law enforcement agencies, either for misdemeanor or felony.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

Objection. Responding Party asserts that this request is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Responding Party also objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, confidential, non-public information, and seeks information related to the theory and opinions of the attorneys on the particular case which are protected under law. Next, this is an incomplete hypothetical and calls for speculation. It also calls for a legal conclusion and expert opinion. Subject to and without waiving these objections, Responding Party responds as follows:

Responding Party is unable to admit or deny.

///

///

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

**REQUEST FOR ADMISSION NO. 8:**

Admit that as of September 30, 2020 Plaintiff had never been convicted of a crime, either misdemeanor or felony.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

Objection. Responding Party asserts that this request is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Responding Party also objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, confidential, non-public information, and seeks information related to the theory and opinions of the attorneys on the particular case which are protected under law. Next, this is an incomplete hypothetical and calls for speculation. It also calls for a legal conclusion and expert opinion. Subject to and without waiving these objections, Responding Party responds as follows:

Responding Party is unable to admit or deny.

**REQUEST FOR ADMISSION NO. 9:**

Admit that during Plaintiff's entire confinement at WCJ between Aug 8 and Aug 12, 2019, no OCSD personnel ever explained to her about the grievance procedure at WCJ, how she could make a complaint, and to whom she could complain.

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

Objection. Responding Party asserts that this request is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Responding Party also objects to this request to the extent it seeks information protected by the

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

attorney-client privilege, work product doctrine, confidential, non-public information, and seeks information related to the theory and opinions of the attorneys on the particular case which are protected under law. Next, this is an incomplete hypothetical and calls for speculation. It also calls for a legal conclusion and expert opinion. Subject to and without waiving these objections, Responding Party responds as follows:

Responding Party lacks sufficient information to enable it to unable to admit or deny this request. However, based on information and belief, deny.

**REQUEST FOR ADMISSION NO. 10:**

Admit that during Plaintiff's entire confinement at WCJ between Aug 8 and Aug 12, 2019, no OCSD personnel ever explained to her about any procedure of the request of life necessities at WCJ, how she could make a request, and to whom she could make a request.

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

Objection. Responding Party asserts that this request is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Responding Party also objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, confidential, non-public information, and seeks information related to the theory and opinions of the attorneys on the particular case which are protected under law. Next, this is an incomplete hypothetical and calls for speculation. It also calls for a legal conclusion and expert opinion. Subject to and without waiving these objections, Responding Party responds as follows:

Responding Party lacks sufficient information to enable it to unable to admit or deny this request. However, based on information and belief, deny.

///

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

**REQUEST FOR ADMISSION NO. 11:**

Admit that exercise is a basic necessity of life and is constitutionally required.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

Objection. Responding Party asserts that this request is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Responding Party also objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, confidential, non-public information, and seeks information related to the theory and opinions of the attorneys on the particular case which are protected under law. Next, this is an incomplete hypothetical and calls for speculation. It also calls for a legal conclusion and expert opinion. Subject to and without waiving these objections, Responding Party responds as follows:

As phrased, Responding Party is unable to admit or deny this request.

**REQUEST FOR ADMISSION NO. 12:**

Admit that hygienic and cleaning supplies sufficient to meet basic needs are constitutionally required.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

Objection. Responding Party asserts that this request is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Responding Party also objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, confidential, non-public information, and seeks information related to the theory and opinions of the attorneys on the

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

particular case which are protected under law. Next, this is an incomplete hypothetical and calls for speculation. It also calls for a legal conclusion and expert opinion. Subject to and without waiving these objections, Responding Party responds as follows:

As phrased, Responding Party is unable to admit or deny this request.

**REQUEST FOR ADMISSION NO. 13:**

Admit that on Aug 8, 2019 before being admitted to general population in WCJ Plaintiff was ordered to be completely naked and shower in the presence and view of OCSD personnel and other inmates.

**RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

Objection. Responding Party asserts that this request is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Responding Party also objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, confidential, non-public information, and seeks information related to the theory and opinions of the attorneys on the particular case which are protected under law. Next, this is an incomplete hypothetical and calls for speculation. It also calls for a legal conclusion and expert opinion. Subject to and without waiving these objections, Responding Party responds as follows:

Responding Party is unable to admit or deny this request.

**REQUEST FOR ADMISSION NO. 14:**

Admit that on Aug 12, 2019 before retrieving Plaintiff's own clothing prior to being released Plaintiff was ordered to be completely naked in the presence and view of OCSD personnel and other inmates.

///

///

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

Objection. Responding Party asserts that this request is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Responding Party also objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, confidential, non-public information, and seeks information related to the theory and opinions of the attorneys on the particular case which are protected under law. Next, this is an incomplete hypothetical and calls for speculation. It also calls for a legal conclusion and expert opinion. Subject to and without waiving these objections, Responding Party responds as follows:

Responding Party is unable to admit or deny this request.

**REQUEST FOR ADMISSION NO. 15:**

Admit that twenty plus hour without food and blanket, overcrowding with risk of infectious decease, 24/7 light on, 24 hours locked up per day, cleaning and hygienic supplies at inmates' own expense, amount to punishment of Plaintiff as a pretrial detainee.

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

Objection. Responding Party asserts that this request is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Responding Party also objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, confidential, non-public information, and seeks information related to the theory and opinions of the attorneys on the

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

particular case which are protected under law. Next, this is an incomplete hypothetical and calls for speculation. It also calls for a legal conclusion and expert opinion. Finally, it seeks to admit facts not in evidence and requires the Responding Party to adopt and admit those facts in order to respond to this request.

**REQUEST FOR ADMISSION NO. 16:**

Admit that there are alternative and less harsh methods rather than repeated strip searches of inmates to maintain order and security in WCJ.

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

Objection. Responding Party asserts that this request is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Responding Party also objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, confidential, non-public information, and seeks information related to the theory and opinions of the attorneys on the particular case which are protected under law. Next, this is an incomplete hypothetical and calls for speculation. It also calls for a legal conclusion and expert opinion. Finally, it seeks to admit facts not in evidence and requires the Responding Party to adopt and admit those facts in order to respond to this request.

**REQUEST FOR ADMISSION NO. 17:**

Admit that Plaintiff's alleged offenses have nothing to do either with weapon or contraband.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

Objection. Responding Party asserts that this request is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Responding Party also objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, confidential, non-public information, and seeks information related to the theory and opinions of the attorneys on the particular case which are protected under law. Next, this is an incomplete hypothetical and calls for speculation. It also calls for a legal conclusion and expert opinion.

**REQUEST FOR ADMISSION NO. 18:**

Admit that as of Aug 12, 2019 Plaintiff had no prior history of drug use.

**RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

Objection. Responding Party asserts that this request is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Responding Party also objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, confidential, non-public information, and seeks information related to the theory and opinions of the attorneys on the particular case which are protected under law. Next, this is an incomplete hypothetical and calls for speculation. It also calls for a legal conclusion and expert opinion. Subject to and without waiving these objections, Responding Party responds as follows: Responding Party is unable to admit or deny this request.

Responding Party is unable to admit or deny this request.

**REQUEST FOR ADMISSION NO. 19:**

Admit that there was no probable cause to search Plaintiff's body between Aug 8 and Aug 12, 2019 while she was in WCJ.

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

**RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

Objection. Responding Party asserts that this request is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Responding Party also objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, confidential, non-public information, and seeks information related to the theory and opinions of the attorneys on the particular case which are protected under law. Next, this is an incomplete hypothetical and calls for speculation. It also calls for a legal conclusion and expert opinion. Subject to and without waiving these objections, Responding Party responds as follows:

Deny.

**REQUEST FOR ADMISSION NO. 20:**

Admit that even if there was a valid penological reason for the strip searches, the manner in which the searches were conducted must itself pass constitutional muster.

**RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

Objection. Responding Party asserts that this request is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Responding Party also objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, confidential, non-public information, and seeks information related to the theory and opinions of the attorneys on the particular case which are protected under law. Next, this is an incomplete hypothetical and calls for speculation. It also calls for a legal conclusion and expert opinion.

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

**REQUEST FOR ADMISSION NO. 21:**

Admit that Plaintiff did not take any medication between Aug 8 and Aug 12, 2019 while she was in WCJ.

**RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

Objection. Responding Party asserts that this request is vague, ambiguous, unduly burdensome, oppressive, compound, and overbroad. It also exceeds the scope of discovery per Federal Rules of Civil Procedure Rule 26(b)(1). Responding Party objects on the basis of relevance in that it is not reasonably calculated to lead to the discovery of admissible evidence and far exceeds the scope of the present litigation. Responding Party also objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, confidential, non-public information, and seeks information related to the theory and opinions of the attorneys on the particular case which are protected under law. Next, this is an incomplete hypothetical and calls for speculation. It also calls for a legal conclusion and expert opinion. Subject to and without waiving these objections, Responding Party responds as follows:

Responding Party admits it did not provide Plaintiff with any medications while she was in custody.

DATED: November 18, 2020

COLLINS COLLINS MUIR + STEWART LLP

By: ______________________

MARIAH A. WITT
MICHAEL L. WRONIAK
Attorneys for Defendants COUNTY OF ORANGE; DON BARNES; WILLIAM BAKER; JOE BALICKI; MARK STICHTER; REYNA RIVERA; DEVONNA FALCONER; KASSANDRA MAYER; ELIA RODRIGUEZ; RACHEL ADDINGTON

*FILE # 22348*

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

VERIFICATION

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am an employee of the County of Orange and am authorized to sign this verification on its behalf. I have read the foregoing document entitled **DEFENDANT COUNTY OF ORANGE'S RESPONSES TO REQUEST FOR ADMISSIONS (SET ONE) PROPOUNDED BY PLAINTIFF JANE DOE** and know the contents thereof. I have made reasonable efforts to obtain and review relevant documents, records and information possessed by or known to the County and specifically the Orange County Sheriff's Department, and based on such review and the information provided to me, the facts stated herein are believed to be true and correct, except those matters that are stated on information and belief and as to those matters, I believe them to be true. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 18, 2020, at Santa Ana, California.

CALVIN WONG

FILE # 22348

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

**PROOF OF SERVICE**

**(CCP §§ 1013(a) and 2015.5; FRCP 5)**

State of California, )
) ss.
County of San Diego. )

I am employed in the County of San Diego, State of California. I am over the age of 18 and not a party to the within action; my business address is 2011 Palomar Airport Road, Suite 207, Carlsbad, California 92011.

On this date, I served the foregoing document described as **DEFENDANT COUNTY OF ORANGE'S RESPONSES TO REQUEST FOR ADMISSIONS (SET ONE) PROPOUNDED BY PLAINTIFF JANE DOE** on the interested parties in this action by transmitting the same via electronic mail and by placing same in a sealed envelope, postage fully prepaid, addressed as follows:

Jane Doe
Courtproceeding9@gmail.com

**PLAINTIFF IN PRO SE**

☒ **(BY MAIL)** - I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail in South Pasadena, California to be served on the parties as indicated on the attached service list. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at South Pasadena, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **(BY CERTIFIED MAIL)** – I caused such envelope(s) with postage thereon fully prepaid via Certified Mail Return Receipt Requested to be placed in the United States Mail in Orange, California.

☐ **BY EXPRESS MAIL OR ANOTHER METHOD OF DELIVERY PROVIDING FOR OVERNIGHT DELIVERY**

☒ **(BY ELECTRONIC FILING AND/OR SERVICE)** – I served a true copy, with all exhibits, electronically on Plaintiff Jane Doe at the email address above on: **November 18, 2020**

☐ **FEDERAL EXPRESS** - I caused the envelope to be delivered to an authorized courier or driver authorized to receive documents with delivery fees provided for.

☐ **(BY FACSIMILE)** - I caused the above-described document(s) to be transmitted to the offices of the interested parties at the facsimile number(s) indicated on the attached Service List and the activity report(s) generated by facsimile number (714) 823-4101 indicated all pages were transmitted.

☐ **(BY PERSONAL SERVICE)** - I caused such envelope(s) to be delivered by hand to the office(s) of the addressee(s).

Executed on **November 18, 2020** at Carlsbad, California.

☒ **(FEDERAL)** - I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Vicki Wood

VICKI WOOD
vwood@ccmslaw.com | legalservices@ccmslaw.com

*FILE # 22348*

COLLINS COLLINS MUIR + STEWART LLP
750 The City Drive, Ste 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101